IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, <br><br> and <br><br> TAIWAN SCOTT, on behalf of himself and all other similarly situated persons, <br><br>               Plaintiffs, <br><br>       v. <br><br> HENRY D. MCMASTER, in his official capacity as Governor of South Carolina; HARVEY PEELER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNABB, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, JOANNE DAY, CLIFFORD J. ELDER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina State Election Commission, <br><br>               Defendants. | Civil Action No. 3:21-cv-03302-JMC <br><br><br> **RESPONSE AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR APPOINTMENT OF THREE-JUDGE PANEL** <br><br> (***Oral Argument Requested***) |

        Defendants James H. Lucas, Chris Murphy, and Wallace H. Jordan (collectively, the "House Defendants") respectfully submit this response in opposition to Plaintiffs' motion for appointment of a three-judge panel. Plaintiffs' motion—just like its underlying action—is a wolf

in sheep's clothing. Plaintiffs do not challenge the constitutionality of a meaningful reapportionment plan, but instead challenge the district lines that the South Carolina General Assembly enacted in 2011 and intends never to use again. Plaintiffs request that a three-judge panel of the federal judiciary insert itself into and actively manage *an ongoing state legislative process* despite no judicial precedent supporting its request or constitutional right for the Court to do so. Plaintiffs' constitutional challenge is without question premature. In addition to being filed too soon, this suit does not meet the statutory requirements for a three-judge panel as set forth in 28 U.S.C. § 2284(a). For this reason, as more fully described herein, the House Defendants respectfully ask this Honorable Court to refuse the unwarranted invitation to burden and infringe on the important legislative task of redistricting State House, State Senate, and Congressional district lines in South Carolina and deny Plaintiffs' motion.[1] Additionally, this Court should stay the action until the General Assembly has passed, and the Governor has signed into law, newly drawn district lines.

## ARGUMENT

Plaintiffs' motion relies heavily, if not exclusively, on the United States Supreme Court's decision in *Shapiro v. McManus*. 577 U.S. 39 (2015). In *Shapiro*, the Supreme Court "consider[ed] under what circumstances, *if any*, a district judge is free to 'determin[e] that three judges are not required' for an action 'challenging the constitutionality of the apportionment of congressional districts.'" 577 U.S. 39, 40 (2015) (emphasis added). Plaintiffs' complaint presents one of the "if

---

[1] The House Defendants first learned of this lawsuit through various media reports of press releases by Plaintiff South Carolina State Conference of the NAACP ("SC NAACP") announcing the lawsuit. Following the appearance of counsel, the House Defendants were asked to accept service via email on October 14, 2021 when Plaintiffs sought consent to the instant motion. The House Defendants requested that if service was accepted, Plaintiffs would agree to stay the House Defendants' responsive pleading deadline until the Court ruled on the instant motion. Plaintiffs ultimately agreed to this request, and undersigned counsel accepted service for the House Defendants on October 19, 2021.

any" cases contemplated by the Supreme Court as falling outside the Section 2284(b)(1) requirement for a three-judge panel.

In *Shapiro* the Supreme Court reversed the lower court's dismissal of an action challenging what the Supreme Court described as Maryland's enactment of "a statute in October 2011 establishing—or, more pejoratively gerrymandering—the districts for the State's eight congressional seats." *Id.* at 41-42. While certainly the Supreme Court "consider[ed] under what circumstances, if any, a district judge is free to 'determin[e] that three judges are not required' for an action 'challenging the constitutionality of the apportionment of congressional districts,'" it can hardly be claimed the facts in *Shapiro* have any similarity to the circumstances before this Court. *See id.* at 40.

In a portion of the *Shapiro* opinion that is absent from Plaintiffs' motion, the Supreme Court recognized that not all cases cast as falling within the ambit of Section 2284(a) make the cut, noting that, "a party may—whether in good faith or bad, through ignorance or hope or malice—file a request for a three-judge court even if the case does not merit one under §2284(a)." *Id*. at 44. Plaintiffs appear to suggest that because they make a facial challenge to old and inapplicable district lines, the Court must give them what they want: a three-judge federal judicial panel supervising an ongoing state legislative process. This Court need not determine whether Plaintiffs are acting "in good faith or bad, through ignorance or hope or malice." [2] *Id.* The Court need only decide whether this action is covered by Section 2284(a)—if it is not, the Court should deny the motion no matter how the action is styled. The correct conclusion becomes clear after

---

[2] Worth noting relative to the veracity of Plaintiffs' claims, the complaint repeatedly quotes a passage from the properly convened (post actual reapportionment) three-judge panel's opinion in *Burton v. Sheheen*, 793 F.Supp. 1329 (D.S.C. 1992), with total disregard of Footnote 11 and the panel's observation: "'In respect to the reapportionment of the House of Representatives, South Carolina's General Assembly is one of those which has faithfully complied with its constitutional obligations.'" (quoting *O'Shields v. McNair*, 254 F.Supp. 708, 717 (D.S.C. 1966)).

the Court answers the threshold question of whether Plaintiffs are indeed challenging a redistricting plan that is to be used by the State of South Carolina in the upcoming 2022 elections. The answer to this question is clearly "No."

The labeling of the challenge as a constitutional matter involving redistricting is nothing more than that—a label—and there is no information nor even an assertion by Plaintiffs that the House Defendants plan or intend for the 2022 elections to occur using the apportionment plan adopted in 2011. There is no such allegation, because it is not true. Despite numerous false, contradictory allegations *implying* that the General Assembly intends the 2011 electoral maps to be used in the 2022 elections, (Compl. ¶¶ 16-18), Plaintiffs cannot escape the fact that they are well aware that the House Defendants are ***currently engaged***[3] in the redistricting process. Defendant Chris Murphy, Chairman of the House Judiciary Committee ("Mr. Murphy"), has responded personally on two separate occasions to lengthy, aggressive demands (insisting on responses in short order by arbitrary dates) for detailed information sought from the SC NAACP regarding the activities underlying the current redistricting cycle. In Mr. Murphy's most recent letter of October 8, 2021, he explained:

> As has been repeatedly noted in public hearings and otherwise, ***the job of the Ad Hoc Committee is to produce an initial draft plan and present it to the Judiciary Committee***, a committee of which I have the honor of serving as Chair. The goal of redistricting is for each South Carolina House district to have "substantially equal" populations.
>
> After the map room has closed, the Ad Hoc Committee will develop and propose a draft plan that will be posted on the Redistricting Website for public review and comment prior to action by the Judiciary Committee, hopefully by late November, 2021. ***The Judiciary Committee will then proceed to consider and approve a***

---

[3] Plaintiffs allege that the General Assembly's redistricting process "thus far has been insufficiently transparent and inaccessible to the public," (Compl. ¶ 19), and note that the House's South Carolina Redistricting Ad Hoc Committee has held weeks of public meetings, two of which had remote options. Compl. ¶¶ 66-69.

> *plan for consideration by the full House membership. I understand that the full House may return for a special session to consider the redistricting plan at some point in December, 2021*—please be advised that as soon as any dates concerning this process are finalized, those dates will be [announced publicly].
>
> As you know, the historical timing of redistricting activities has been delayed substantially by factors well beyond the control of anyone in the House—namely, the belated release of final population data by the U.S. Census Bureau. Despite these delays and the continuing challenges attendant to a pandemic world today, ***the Ad Hoc Committee and the House Judiciary Committee are fully committed to the continued pursuit of a redistricting process that is fully transparent, maximizes public engagement, and to develop a plan that protects and preserves the voting rights of all South Carolinians.***

*See* **Exhibit A** [Murphy Letter, 10/8/21] (emphasis added). This letter was preceded by an earlier letter from Mr. Murphy on September 3, 2021 in response to similar demands for information in August 2021 (**Exhibit B**). In addition to these personal communications transmitted directly to the SC NAACP that constitute *actual notice*, the interested public is regularly apprised of the ways that redistricting activities are underway in the House and the Senate.[4] Any suggestion that the 2011 plan is intended to (or will likely) govern the 2022 election cycle is knowingly false and, therefore, frivolous. Indeed, Plaintiffs' ongoing participation in the House's redistricting process by way of testimony at multiple public hearings, the aforementioned substantive written demands for information, and most recently the submission of a proposed redistricting plan through the House's public submission portal further demonstrate that Plaintiffs are fully aware that redistricting is underway and a process is in place to allow for the House's timely compliance with

---

[4] For example, the concurrent resolution adopted unanimously by the House and the Senate upon *sine die* adjournment explicitly identified redistricting as a matter to be taken up between May and January. H.R. 4285 § (D)(8), 124th Sess. S.C. Gen. Assem. (2021). Similarly, both Houses have published and continuously updated websites dedicated to the 2021 redistricting process. *See* South Carolina House of Representatives Redistricting 2021 (last accessed Oct. 16, 2021), at https://redistricting.schouse.gov/; South Carolina Redistricting 2021 – Senate Judiciary Committee (last accessed Oct. 16, 2021), at https://redistricting.scsenate.gov/.

Article III of the South Carolina Constitution.[5]

At its core, Plaintiffs' complaint is nothing more than a thinly veiled invitation (or, it could be argued, an inappropriate demand) for the federal judiciary to actively participate in a state legislative process reserved for the South Carolina General Assembly. S.C. Const. art. III, § 3; S.C. Const. art. VII, § 13. As multiple federal courts have held, the federal judiciary's role in this process is to enforce the constitution in reapportionment and, where ***necessary***, ensure that states hold elections on constitutionally drawn district lines. The federal judiciary should refuse to actively police the South Carolina General Assembly's reapportionment process. Well-established redistricting law that is often invoked by the Supreme Court makes clear that judicial intervention should occur only ***after*** a state legislature has had a meaningful opportunity to draw new election lines in accordance with the federal constitution ***and*** the state legislature has failed or refused to do so:

> From the beginning, we have recognized that 'reapportionment is primarily a matter for legislative consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so.'

---

[5] Material to the overall infirmity of Plaintiffs' case is perhaps its own proposed redistricting plan for South Carolina, which Plaintiffs ***only just submitted on October 8, 2021***, the Friday afternoon before filing this case with its accompanying media blitz on Tuesday, October 12, 2021. As evidenced by the cover email, Plaintiffs identify their proposal as a plan that exemplifies how the House may develop a plan that is constitutionally sound.

> The NAACP Legal Defense and Educational Fund, Inc., American Civil Liberties Union, South Carolina State Conference of the NAACP—which has 77 branches and over 13,000 members throughout South Carolina—and ACLU of South Carolina *write to submit Congressional and state House of Representatives redistricting plans that are illustrative of ways **this Committee may comply** with its affirmative constitutional and statutory obligations and other guiding redistricting principles*.

**Exhibit C** (SC NAACP email, 10/8/2021) (emphasis added).

*White v. Weiser*, 412 U.S. 783, 794-95 (1973) [6] (quoting *Reynolds v. Sims*, 377 U.S. 533, 586 (1964)). Indeed, the Supreme Court has stated that even as to congressional (*i.e. federal office*) reapportionment, "***a district court should not pre-empt [a state's] legislative task*** nor intrude upon state policy any more than necessary." *White* at 795 (quotation omitted, emphasis added). *Shapiro* does not control and Section 2284(b)(1) does not require a three-judge panel here.

The province of the judicial department is "to say what the law is." *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803). Even so, however, "the judicial department has no business entertaining [a] claim of unlawfulness—because the question is entrusted to one of the political branches or involves no judicially enforceable rights." *Rucho v. Common Cause*, 139 S.Ct. 2484, 2494 (2019) (quoting *Vieth v. Jubelirer*, 541 U.S. 267, 277 (2004) (plurality opinion) (internal quotations omitted)). Plaintiffs ask this Court to recommend the empaneling of a three-judge court to make certain that the 2011 district lines are not used in the 2022 election cycle, which will not begin for almost six months. And, further relying on its straw man constitutionality argument directed at out-dated district lines, Plaintiffs ask this Court to schedule and actively participate in the already ongoing legislative process of drawing new legislative districts in South Carolina. This would amount to nothing more than federal interference in a state legislative process, which is already well underway. Everything Plaintiffs seek is improper.

The federal courts are clear that "'apportionment of congressional districts' [for purposes of] § 2284(a) does not include practices or actions that may lead to or affect a future apportionment." *Alabama v. U.S. Dep't of Commerce*, 493 F. Supp.3d 1123, 1128 (N.D. Ala.

---

[6] Congress amended 28 U.S.C. § 2284(a) in 1976. The amendment pared down the types of cases eligible for three-judge panels, but did not fundamentally reset the balance between the state legislative and federal judicial roles in the redistricting process. The holdings in the pre-1976 cases relied upon in this memorandum are still good law notwithstanding congressional amendment to Section 2284.

2020). In such cases, district judges have refused to accept the exceedingly rare step of requesting the appointment of a three-judge panel, *see also City of Philadelphia v. Klutznick*, 503 F. Supp. 657, 658 (E.D. Pa. 1980) ("[I]n order to necessitate the convening of a three-judge court, the challenge must be to an existing apportionment. No existing apportionment is challenged here. That the 1980 census will, in the future, be relied upon in the design of reapportionment legislation for Philadelphia and that there may result some reapportionment effect adverse to the city is not enough to trigger the requirement of § 2284.") Courts have cautioned in Section 2284 cases that three-judge panels should be used "sparingly considering the heavy burden on judicial resources consumed by convening a three-judge court and direct review to the Supreme Court." *Alabama*, 493 F. Supp.3d at 1129 (warning if three-judge panels were used under a broad reading of Section 2284(a), then a three-judge panel would hear any challenge to matters outside its purview potentially affecting future apportionment). Therefore, "[t]hree-judge courts are reserved for challenges to an actual apportionment." *Id*.

Further, more than 40 years ago, one of the most distinguished jurists to serve on this Court, The Honorable Sol Blatt, Jr., carefully considered an invitation for the empanelment of a three-judge court in a matter challenging the Senate's reapportionment just days before an election deadline in 1980. Judge Blatt's reasoning was sound then, and equally so now:

> Of course, as a single judge, this Court is not at liberty to pass upon the merits of the plaintiffs' claims, if such claims present substantial constitutional questions. On the other hand, this Court is charged with the duty to carefully scrutinize all applications seeking the convening of a Three-Judge Court to determine whether such applications are substantial or insubstantial.

*Simkins v. Gressette*, 495 F. Supp. 1075, 1084 (D.S.C. 1980). Judge Blatt denied plaintiffs' improvident request to disrupt and duplicate a state legislative process. *Id.* at 1082 ("The Court is not faced with a recalcitrant legislature which has refused to reapportion itself in the face of clear constitutional or judicial mandate. . . . Because this Court is of the opinion that it is clear beyond

doubt that equitable relief should be denied in this case, it would serve no purpose to convene a Three-Judge Court merely to dismiss the action.")

The Fourth Circuit affirmed Judge Blatt's decision, recognizing "that general equitable principles would prevent a three-judge court from granting relief, the district court determined that it would be inappropriate to convene such a court." *Simkins v. Gressette*, 631 F.2d 287, 290 (4th Cir. 1980). In fact, the Fourth Circuit not only affirmed Judge Blatt's decision on the general equitable grounds that denial was appropriate, but also because the plaintiffs' claims were insubstantial. *Id.*

Importantly, the Fourth Circuit's adoption of Judge Blatt's reasoning in *Gressette* remains consistent with the Supreme Court's decision in *Shapiro*. General equitable principles prevent a court—whether comprised of one judge or three—from granting Plaintiffs' request for preemptive federal judicial management of an exclusively state legislative process. Furthermore, Plaintiffs' complaint is unmistakably insubstantial, replete with information demonstrating an ongoing attempt by both Houses of the General Assembly to perform their constitutional mandate to reapportion South Carolina's electoral districts as soon as reasonably practical following the extremely delayed release of 2020 census data by the U.S. Census Bureau.[7] Compl. ¶ 48, 66-69. In light of the prematurity and impropriety of the matter before the Court, declining Plaintiffs' request for appointment of a three-judge panel would be consistent with both *Shapiro* and *Gressette*.

---

[7] Notably, Plaintiffs criticize the House Defendants' redistricting process, but regardless cannot dispute that their activity has been underway since at least early August 2020. Plaintiffs also falsely suggest a lack of information, when as detailed above, Mr. Murphy has responded to multiple letters of criticism from Plaintiff SC NAACP and its fellow public interest groups. *See* **Exhibit A**; **Exhibit B**. Plaintiffs' allegations are also easily dispelled by reference to multiple publicly available sources, including the House Redistricting Website (https://redistricting.schouse.gov/) and the *sine die* resolution: https://www.scstatehouse.gov/sess124_2021-2022/bills/4285.htm.

Additionally, Plaintiffs' prayer for relief seeks many things, none of which trigger Section 2284, and none of which is proper at this stage as they would only serve to disrupt the ***ongoing*** legislative redistricting process. Compl., Prayer for Relief, ¶¶ i – viii. Plaintiffs demand that this Court "declare the current configurations of South Carolina's U.S. Congressional districts" and "state House districts" unconstitutional (Compl., Prayer for Relief, ¶¶ i and ii). Plaintiffs do so even though they are aware that the General Assembly does not intend to use the 2011-drawn electoral districts in the 2022 primary election. This only goes to highlight the fact that the relief Plaintiffs actually seek is for a three-judge panel made of the federal district court to supervise and manage the independent state legislative process.

Indeed, Plaintiffs further ask this Court to "[p]ermanently enjoin Defendants and all persons acting on their behalf or in concert with them from implementing, enforcing, or conducting any elections under South Carolina's current U.S. Congressional or state House districts," and request that the Court "[e]stablish a schedule that will enable the Court, in the absence of timely enacted and lawful plans for South Carolina's U.S. Congressional and state House districts, to adopt and implement new plans for South Carolina's U.S. Congressional and state House districts." Compl., Prayer for Relief, ¶¶ iii and iv. Neither of these demands requires a three-judge panel because the General Assembly has repeatedly told Plaintiffs that it is currently engaged in the redistricting process and does not intend to use the 2011-drawn maps for the 2022 elections. Additionally, setting a schedule before the General Assembly has had ample time to draw district lines based on the 2020 census results would "disrupt and duplicate" a process that lies exclusively within the South Carolina General Assembly. *See Gressette*, 631 F.2d 290; *Gressette*, 495 F. Supp. 1075.

Finally, the Plaintiffs ask this Court to stay the statutory deadlines and retain jurisdiction while Defendants enact plans. Compl. ¶¶ iv and v. A stay of statutory deadlines is unnecessary

and would be highly inappropriate at this juncture. The General Assembly is currently engaged in the redistricting process and, notwithstanding the delay in the release of the 2020 census data, has more than enough time to finish the process before the 2022 election cycle begins. Plaintiffs seek relief that is patently premature and, regardless, does not require the appointment of a three-judge panel.

## CONCLUSION

For the reasons stated herein, this Court should allow all parties an opportunity to be served and then respond to Plaintiffs' motion, conduct oral argument and thereafter deny Plaintiffs' request for the empanelment of a three-judge district court. The Court should also stay this action until the General Assembly is given the opportunity to enact a redistricting plan prior to the 2022 election cycle free from involvement of the judiciary. Only after that opportunity might it be appropriate for the federal judiciary to participate in the redistricting process in South Carolina.

*(signature page to follow)*

Respectfully submitted,

*s/ William W. Wilkins*

William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900 (29601)
Post Office Box 10648
Greenville, SC  29603-0648
Telephone: 864.370.2211
bwilkins@nexsenpruet.com
amathias@nexsenpruet.com


Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Hamilton B. Barber (Fed. ID No. 13306)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Post Office Drawer 2426
Columbia, SC 29202
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
HBarber@nexsenpruet.com

*Attorneys for James H. Lucas, Chris Murphy and Wallace H. Jordan*

October 19, 2021
Greenville, South Carolina