# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, <br><br> and <br><br> TAIWAN SCOTT, on behalf of himself and all other similarly situated persons, <br><br>                 Plaintiffs, <br><br>     v. <br><br> HENRY D. MCMASTER, in his official capacity as Governor of South Carolina; HARVEY PEELER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNABB, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, JOANNE DAY, CLIFFORD J. ELDER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina State Election Commission, <br><br>                 Defendants. | Civil Action No. 3:21-cv-03302-JMC <br><br><br> **RESPONSE AND MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR APPOINTMENT OF THREE-JUDGE COURT** |

Defendants Harvey Peeler and Luke A. Rankin (collectively, the "Senate Defendants") respectfully oppose Plaintiffs' motion for the appointment of a three-judge court under 28 U.S.C. § 2284(a). "The Constitution leaves to the State the primary responsibility for apportionment of their federal congressional and state legislative districts," *Growe v. Emison*, 507 U.S. 25, 34 (1993), and the South Carolina General Assembly is actively engaged in the decennial process of developing and adopting new maps for the State House of Representatives, State Senate, and United States House of Representatives. The General Assembly still has several months to approve new maps before the 2022 elections, and there is no reason to believe that the General Assembly "will fail timely to perform" its redistricting obligations. *Id.* Accordingly, this Court should "defer" to the General Assembly to undertake "that highly political task itself" in the first instance. *Id.* at 33. In short, a three-judge court is "not required" here, 28 U.S.C. § 2284(b)(1), because Plaintiffs' claims are speculative, not ripe, and "not justiciable in the federal courts," *Shapiro v. McManus*, 577 U.S. 39, 44–45 (2015) (citation omitted). The Court should deny Plaintiffs' motion.

## BACKGROUND

The South Carolina General Assembly has primary responsibility for redistricting in the state, subject to the approval of the Governor. *See* U.S. Const. art. I, § 2; S.C. Const., art. III, § 3. Every ten years, the General Assembly is required by law to redraw state legislative and congressional districts to comply with the one-person, one-vote mandate in accordance with the results of the decennial census. *See, e.g.*, *Reynolds v. Sims*, 377 U.S. 533, 577–80 (1964).

The General Assembly is currently engaged in the process of redrawing the state's legislative and congressional district maps. Special redistricting committees are up and running in both chambers, and each redistricting committee has published guidelines and criteria for redistricting, solicited the submission of proposed maps, and held numerous public hearings. *See*

S.C. House of Representatives, *South Carolina House of Representatives Redistricting 2021*, https://bit.ly/3EfTv3z (last accessed Oct. 26, 2021); S.C. Senate, *South Carolina Redistricting 2021 - Senate Judiciary Committee*, https://bit.ly/3pD02kY (last accessed Oct. 26, 2021).

The General Assembly is currently operating under a *sine die* resolution. *See* S.C. H. 4285 (adopted May 13, 2021), https://bit.ly/2Zw7F1m (last accessed Oct. 26, 2021). That resolution specifically authorizes the reapportionment of legislative districts to proceed even during a time of year when the General Assembly is not normally in session. The resolution also authorizes the President of the Senate and the Speaker of the House to "call" the Senate and House, respectively, back from recess for the "introduction, receipt, and consideration of redistricting legislation." *Id.* ¶ F(1)(8). Under the resolution, the General Assembly does not adjourn *sine die* until January 11, 2012, unless the General Assembly takes action to adjourn *sine die* on an earlier date. *See id.* ¶ H.

The Senate has taken advantage of the *sine die* resolution to continue its redistricting process unabated. For example, on October 19, the Senate Redistricting Subcommittee called for submissions of proposed "congressional redistricting plans from the public." S.C. Senate Judiciary Redistricting Subcommittee, *Press Release: Senate Redistricting Subcommittee Receiving Congressional Plans* (Oct. 19, 2021), https://bit.ly/3bbIFiA (last accessed Oct. 26, 2021). To date, the NAACP and other members of the public have submitted proposed House and congressional redistricting plans. *See, e.g.*, S.C. House of Representatives Redistricting 2021, *2021 Plan Submissions*, https://bit.ly/3me7C3t (last accessed Oct. 26, 2021). The Senate Redistricting Subcommittee also held a public hearing on October 21, 2021 in which representatives of the NAACP participated. *See* S.C. Senate Judiciary Committee Redistricting Subcommittee, *Hearing Video* (Oct. 21, 2021), https://bit.ly/3ntfU6L (last accessed Oct. 26, 2021); S.C. Senate Judiciary Committee Redistricting Subcommittee, *Notice of October 21, 2021, Meeting*, https://bit.ly/3vJGufG (last accessed Oct. 26, 2021).

The General Assembly will return to a regular session in January 2022. The first elections to be conducted under the new district maps are the primary elections currently scheduled for June 14, 2022. The statewide general election will take place on November 8, 2022. The statutory deadline to file a statement of candidacy for these elections is March 30, 2022.

On October 12, 2021, Plaintiffs nevertheless filed this lawsuit alleging that the current State House of Representatives and congressional district lines, which are based on the results of the 2010 Census, are now malapportioned in light of the results of the 2020 Census. *See* Compl. (ECF 1). Plaintiffs bring no claim against the current State Senate Plan. *See id.* at 5 n.5. A few days later, Plaintiffs moved for appointment of a three-judge court. *See* Mot. (ECF 17). Because enactment of new redistricting plans by the General Assembly will moot Plaintiffs' claims that the current plans are unconstitutional and should be replaced by court-drawn plans, *see, e.g.*, Compl. ¶¶ 80–100, this response in opposition follows.

**ARGUMENT**

The Supreme Court "has repeatedly held that redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to pre-empt." *Wise v. Lipscomb*, 437 U.S. 535, 539 (1978) (collecting cases). "[L]egislative reapportionment is primarily a matter for legislative consideration and determination, for a state legislature is the institution that is by far the best situated to identify and then reconcile traditional state policies within the constitutionally mandated framework of substantial population equality." *Connor v. Finch*, 431 U.S. 407, 414–15 (1977). "The federal courts by contrast possess no distinctive mandate to compromise sometimes conflicting state apportionment policies in the people's name." *Id.* at 415.

Thus, "[a]bsent evidence that [a state] will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used

4

to impede it." *Growe*, 507 U.S. at 34. Indeed, federal judicial drawing of districting plans—which is what Plaintiffs seek here—is an "unwelcome obligation" to be undertaken only as a last resort. *Id.* After all, the Supreme Court has instructed federal courts "to defer consideration of disputes involving redistricting" to allow the state maximum time to complete "that highly political task" of redistricting "itself." *Id.* at 33; *see also Upham v. Seamon*, 456 U.S. 37, 41 (1982) ("Judicial relief becomes appropriate only when a legislature fails to reapportion . . . in a timely fashion *after having an adequate opportunity to do so*." (emphasis added)).

The three-judge court statute, 28 U.S.C. § 2284, confirms these rules. In particular, when a plaintiff challenges the constitutionality of congressional or statewide legislative apportionment in federal court, the presiding judge is required to convene a three-judge panel "unless [s]he determines that three judges are not required." 28 U.S.C. § 2284(b)(1). A three-judge court "is not required" under § 2284 "where the district court itself lacks jurisdiction of the complaint," such as when the complaint does not present a "substantial federal question" or "is not justiciable in the federal courts." *Shapiro*, 577 U.S. at 44–45 (citation omitted).

Here, the Court is not required to convene a three-judge panel because Plaintiffs' claims are not ripe and, thus, not justiciable. Plaintiffs' alleged constitutional injury is voting in districts that are malapportioned because of the unequal population levels demonstrated by the 2020 Census. *See, e.g.*, Compl. ¶ 92. But, of course, redistricting occurs every ten years to reflect the new census data. Therefore, Plaintiffs' injury will not occur unless and until the General Assembly seeks to hold elections without equalizing population through a new redistricting plan based on the latest census. Plaintiffs, however, offer no non-conclusory allegations that the General Assembly will fail to enact new districting plans in the nearly eight months between now and the primary elections currently scheduled for June 14, 2022. *See* Mot. at 2–3. For that reason alone, Plaintiffs' claims are not ripe and not justiciable: they are entirely "dependent on future

uncertainties," *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006), and Plaintiffs' unadorned speculation that the General Assembly "will fail timely to perform" its legislative task of redistricting, *Growe*, 507 U.S. at 34. "As there is no reason to suspect that [South Carolina's] lawmakers will fail to enact appropriate redistricting legislation in a timely manner, there is no basis for [Plaintiffs'] requested relief." *Carter v. Va. State Bd. of Elections*, No. 3:11-CV-7, 2011 WL 665408, at *2 (W.D. Va. Feb. 15, 2011) (declining to grant request for three-judge panel less than four months before date of primary elections).

Indeed, convening a three-judge panel is particularly improper at this juncture because the General Assembly is *already* engaged in the redistricting process—a process in which the NAACP is an active participant. *See supra* pp. 2–3. The General Assembly still has several months to adopt new plans in time for the 2022 elections and should be accorded an "adequate opportunity" to do so. *Upham*, 456 U.S. at 41. In past cases, federal courts have concluded that redistricting litigation is not sufficiently cognizable to begin taking steps toward drafting redistricting plans until approximately four months before primary elections.[1] South Carolina's primary elections are currently scheduled for June 14, 2022, *see* Compl. ¶ 73, so this four-month mark does not arrive until February 14, 2022, approximately three and a half months from now. Plaintiffs' request that

---

[1] *See, e.g.*, *Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 867–68 (E.D. Wis. 2001) (staying impasse suit until February of election year); *Rodriguez v. Pataki*, 207 F. Supp. 2d 123, 125 (S.D.N.Y. 2002) (appointing special master four-and-a-half months before primaries); *Flateau v. Anderson*, 537 F. Supp. 257, 266 (S.D.N.Y. 1982) (according New York Legislature until approximately five months before the primaries to adopt a redistricting plan); *Smith v. Clark*, 189 F. Supp. 2d 503, 504–05 (S.D. Miss. 2002) (beginning to draft redistricting plan less than two months before deadline to declare candidacy), *aff'd sub nom. Branch v. Smith*, 538 U.S. 254, 262 (2003) ("there is no suggestion that the District Court failed to allow the state court adequate opportunity to develop a redistricting plan"); *Carter*, 2011 WL 665408, at *2; *Miss. State Conf. of NAACP v. Barbour*, No. 3:11-cv-159, 2011 WL 1870222, * 9 (S.D. Miss. May 16, 2011) (staying impasse suit until end of election-year state legislative session), aff'd, 2011 WL 5118830 (U.S. Oct. 31, 2011); *Favors v. Cuomo*, No. 11-cv-5632, 2012 WL 928223 (S.D.N.Y. Mar. 19, 2012) (three-judge court convened approximately four and a half months before primary election).

the Court step into the redistricting fray now is premature to say the least. *See Growe*, 507 U.S. at 33–34; *Upham*, 456 U.S. at 41; *supra* n.1.

Moreover, deferring to the General Assembly for at least several more months is especially warranted due to the Census Bureau's unprecedented delays in releasing the 2020 Census data—a fact that Plaintiffs nowhere mention in their complaint or motion. Federal law required the Census Bureau to release the 2020 Census redistricting data for redrawing congressional and legislative districts by April 1, 2021. *See* 13 U.S.C. § 141. But due to the COVID-19 pandemic and other challenges, the Census Bureau did not release that data until August 12, 2021 and did not release it in final format until September 16, 2021. *See* Census Bureau, Press Release: *Census Bureau Delivers 2020 Redistricting Data in Easier-to-Use Format* (Sept. 16, 2021), https://bit.ly/3baEnbu (last accessed Oct. 26, 2021); *see also* Compl. ¶ 64. Thus, in prior cycles, map drawers received census data by April 1 in the year following the census, and federal courts deferred until approximately four months before the primary election before taking steps toward drawing judicial plans. *See supra* n.1. By contrast, this year the General Assembly did not receive the census data until August 12—yet Plaintiffs ask the Court to convene a three-judge court barely two months later and nearly *eight months* before the current primary election date. *See* Compl. ¶ 64. Merely to point out the audacious timing of Plaintiffs' request is to demonstrate that their motion should be denied. *See, e.g.*, *Growe*, 507 U.S. at 33–34; *Upham*, 456 U.S. at 41; *supra* n.1.

Plaintiffs make passing reference to the drawing of South Carolina's maps by a three-judge panel of this Court in 2002, *see* Mot. at 2, but that case only confirms that Plaintiffs' suit is not ripe for appointment of a three-judge panel. All parties in that case *stipulated* that the General Assembly would fail to enact plans in time for the 2002 elections after the governor vetoed the General Assembly's enacted plans and the General Assembly fell a few votes short of the two-thirds supermajority required to override the veto. *See Colleton Cnty. Council v. McConnell*, 201

F. Supp. 2d 618, 623–24 (D.S.C. 2002); *id.* at 627 ("All parties before us have stipulated, and presented persuasive evidence, that the [Republican-controlled] General Assembly is at an impasse with the [Democratic] Governor and that there is no chance that the governing officials will reach a compromise in time for the impending 2002 elections."). Even then, the three-judge panel did not issue court-drawn plans until March 20, 2002, less than three months before the June 11, 2002 primary. *See id.* This time around, there is no stipulation or evidence that the General Assembly "will fail timely to perform" its redistricting task, *Growe*, 507 U.S. at 34; the General Assembly timely enacted plans during the last redistricting cycle following the 2010 Census; and next year's June primary is still nearly eight months away. Thus, there is no basis for the Court to take action toward superintending—much less supplanting—the General Assembly's ongoing redistricting efforts.

Plaintiffs' attempt to make something of their allegation that the "current timeline" will make it more difficult to "seek judicial review" and to conduct "meaningful review" of the new maps, Compl. ¶ 76, likewise fails. Plaintiffs cite precisely no authority for the notion that the General Assembly must build in time to be sued or that past litigation requires the General Assembly to enact new maps a mere two months after release of the census data and nearly eight months before the next primary election. Nor could Plaintiffs cite any such authority because there is none. *See, e.g.*, *Growe*, 507 U.S. at 33–34; *Upham*, 456 U.S. at 41; *supra* n.1.

Finally, Plaintiffs attempt to manufacture urgency by highlighting the March 30, 2022, deadline for filing a statement of candidacy. *See* Compl. ¶ 99. But federal courts in prior malapportionment cases have not taken this bait: they have looked to the primary election date rather than filing deadlines to determine the appropriate timing for any judicial involvement in redistricting. *See supra* n.1. Indeed, the filing deadline is a matter of statute. *See* S.C. Code Ann. § 7-11-15(A). Plaintiffs are not constitutionally entitled to this particular filing date or to have

district maps approved by a certain amount of time in advance of a statutory filing date. Indeed, filing deadlines—and the dates of primary elections, for that matter—are subject to change by the General Assembly, which, in the unlikely event of a future impasse, would counsel against federal-court involvement. *See, e.g.*, *Carter*, 2011 WL 665408, at *2 n.2. In any event, any suggestion that the General Assembly will not adopt new maps before March 30, 2022, is speculative and underscores that Plaintiffs' lawsuit is not ripe for adjudication by a three-judge court.

## CONCLUSION

The General Assembly still has several months to complete its constitutionally entrusted redistricting task—and it is well on its way to doing so. Because Plaintiffs' claims are not ripe, and may never ripen, appointment of a three-judge panel is "not required." 28 U.S.C. § 2284(b)(1); *Shapiro*, 577 U.S. at 44–45. The Court should deny Plaintiffs' motion.

October 28, 2021                              Respectfully submitted,

/s/Robert E. Tyson Jr.
Robert E. Tyson, Jr. (7815)
Vordman Carlisle Traywick, III (12483)
La'Jessica Stringfellow (13006)
ROBINSON GRAY STEPP & LAFFITTE, LLC
1310 Gadsden Street
Post Office Box 11449 (29211)
Columbia, South Carolina 29201
(803) 929-1400
rtyson@robinsongray.com
ltraywick@robinsongray.com
lstringfellow@robinsongray.com

John M. Gore (admitted *pro hac vice*)
Stephen J. Kenny*
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
skenny@jonesday.com

*Counsel for Senate Defendants*

*\*Pro hac vice* application forthcoming