IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> HENRY D. MCMASTER, *et al.*, <br><br> *Defendants*. | Case No. 3:21-cv-03302-JMC |

## SENATE DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THE CASE

Defendants Harvey Peeler and Luke A. Rankin (collectively, "Senate Defendants") respectfully move to dismiss Plaintiffs' Complaint or, in the alternative, to stay the proceedings in this case pending action by the South Carolina General Assembly. As explained below, this lawsuit requesting that the Court intervene in South Carolina's redistricting process is unripe, and principles of federalism and comity require this Court to accord the General Assembly sufficient time to perform its constitutionally delegated redistricting function before any such intervention. Therefore, the Court should dismiss Plaintiffs' Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, stay the proceedings in this case.[1]

### INTRODUCTION

"[T]he Constitution leaves with the States primary responsibility for apportionment of their federal congressional and state legislative districts." *Growe v. Emison*, 507 U.S. 25, 34 (1993). The South Carolina General Assembly is actively engaged in the decennial process of developing

---

[1] Under Local Civil Rule 7.04 (D.S.C.), "a supporting memorandum is not required" because this motion contains "a full explanation" of the Senate Defendants' arguments and a separate "memorandum would serve no useful purpose."

1

and adopting new maps for the State House of Representatives, State Senate, and United States House of Representatives.  Plaintiffs' own Complaint underscores that the General Assembly still has several months to approve new maps: as Plaintiffs point out, South Carolina's primary elections for the State House of Representatives and Congress are currently scheduled for June 14, 2022, *see* Compl. ¶¶ 11, 73 (ECF 1), *more than seven months from now*.  Yet Plaintiffs' Complaint pleads no facts to suggest that the General Assembly "will fail timely to perform" its redistricting obligations in the coming months.  *Growe*, 507 U.S. at 34.  Accordingly, the Court should "defer" to the General Assembly to undertake "that highly political task itself." *Id.* at 33.

In particular, the Court should dismiss Plaintiffs' Complaint because it is unripe and, therefore, not within the Court's "subject matter jurisdiction."  *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019); *see also Shapiro v. McManus*, 577 U.S. 39, 44–45 (2015) (holding that "[a] three-judge court is not required where the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts").  In the alternative, and at a minimum, the Court should stay this case pending the General Assembly's adoption of redistricting plans.

## BACKGROUND

The South Carolina General Assembly has primary responsibility for redistricting in the state, subject to the approval of the Governor.  *See* U.S. Const. art. I, § 2; S.C. Const. art. III, § 3.  Every ten years, the General Assembly is required by law to redraw state legislative and congressional districts to comply with the one-person, one-vote mandate in accordance with the results of the decennial census.  *See, e.g.*, *Reynolds v. Sims*, 377 U.S. 533, 577–80 (1964).

As Plaintiffs are aware, the General Assembly is currently engaged in the process of redrawing the state's legislative and congressional district maps.  Special redistricting committees are up and running in both chambers, and each redistricting committee has published guidelines

and criteria for redistricting, solicited the submission of proposed maps, and held numerous public hearings.  *See* S.C. House of Representatives, *South Carolina House of Representatives Redistricting 2021*, https://bit.ly/3EfTv3z; S.C. Senate, *South Carolina Redistricting 2021 - Senate Judiciary Committee*, https://bit.ly/3pD02kY.

Indeed, the Senate has taken advantage of the *sine die* resolution under which the General Assembly is currently operating to continue its redistricting process unabated.  *See* H. 4285, 124th Gen. Assemb. (S.C. 2021) (adopted May 13, 2021), https://bit.ly/2Zw7F1m.  For example, on October 19, the Senate Redistricting Subcommittee called for submissions of proposed "congressional redistricting plans from the public."  Press Release, S.C. Senate Judiciary Committee, *Senate Redistricting Subcommittee Receiving Congressional Plans* (Oct. 19, 2021), https://bit.ly/3bbIFiA.  To date, the NAACP and other members of the public have submitted proposed House, Senate, and congressional redistricting plans.  *See, e.g.*, S.C. House of Representatives, *S.C. House of Representatives Redistricting 2021: 2021 Plan Submissions*, https://bit.ly/3me7C3t; S.C. Senate, *2021 Senate Plan Proposals – Staff Plan*, https://bit.ly/2ZTJn1s.  The Senate Redistricting Subcommittee also held a public hearing on October 21, 2021 in which representatives of the NAACP participated.  *See* S.C. Legislature Archive Video, *Senate Judiciary Committee – Redistricting Subcommittee* (Oct. 21, 2021, 12:00 PM), https://bit.ly/3ntfU6L; S.C. Senate Judiciary Committee Redistricting Subcommittee, *Agenda and Notice of October 21, 2021, Meeting*, https://bit.ly/3vJGufG.

The Senate Redistricting Subcommittee held another public hearing just last week.  *See* S.C. Senate Judiciary Committee Redistricting Subcommittee, *Agenda and Notice of November 4, 2021, Meeting*, https://bit.ly/3o0TIRE.  At that hearing, the Subcommittee adopted a draft State Senate Plan (the "Staff Plan") as a working draft and invited public input and comment on that draft.  *See* S.C. Senate, *2021 Senate Plan Proposals – Staff Plan*, https://bit.ly/2ZTJn1s.  The

3

Subcommittee is meeting again this Friday, November 12. *See* South Carolina Senate Meeting Schedule, https://bit.ly/3n1dgq1. For its part, the House Redistricting Subcommittee will hold a public hearing regarding the State House of Representatives redistricting on November 10, 2021, and, if necessary, on November 12, 2021. *See* S.C. House Judiciary Committee Redistricting Subcommittee, *Agenda and Notice of November 10, 2021, Meeting*, https://bit.ly/2YfCM0W.

On October 12, 2021, Plaintiffs nevertheless filed this lawsuit alleging that the current State House of Representatives and congressional district lines, which are based on the results of the 2010 Census, are now malapportioned in light of the results of the 2020 Census. *See* Compl. Plaintiffs bring no claim against the current State Senate Plan. *See id.* at 5 n.5. Because Plaintiffs' claims rest on the contingent future event of the General Assembly failing to enact new State House of Representatives and congressional maps in time for the June 2022 primary elections more than seven months from now, *see, e.g.*, *id.* ¶¶ 80–100, this matter comes before the Court on the Senate Defendants' motion to dismiss or, alternatively, to stay.

## ARGUMENT

The Court should dismiss the case under Rule 12(b)(1) because it is not ripe. *See* Fed. R. Civ. P. 12(b)(1) (permitting a motion to dismiss for "lack of subject-matter jurisdiction"). Plaintiffs' claims are premised on a purely speculative allegation that the General Assembly will not enact redistricting plans in time for the June 2022 primary elections. But the General Assembly is currently and actively engaged in the redistricting process, and Plaintiffs offer no reason to believe it will not complete the process in a timely manner. Because Plaintiffs' claims are based entirely on a contingent future event—i.e., a hypothetical future failure to enact redistricting plans—that is not likely to occur, the Court should dismiss the Complaint on ripeness grounds. In the alternative, and at a minimum, the Court should stay the case pending the General Assembly's timely enactment of redistricting plans.

### I. THIS CASE SHOULD BE DISMISSED BECAUSE IT IS NOT RIPE.

A case that is not ripe for adjudication is properly dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction. *See South Carolina*, 912 F.3d at 730 ("[R]ipeness is a question of subject matter jurisdiction."); *Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013) (same). The ripeness doctrine "originates in the 'case or controversy' constraint of Article III." *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (citation omitted). "Ripeness is peculiarly an issue of timing. Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985). A plaintiff's claim is not ripe for judicial review "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Scoggins*, 718 F.3d at 270 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

Plaintiffs' alleged constitutional injury is voting in districts that are malapportioned because of the unequal population levels demonstrated by the 2020 Census. *See, e.g.*, Compl. ¶ 92. But, of course, redistricting occurs every ten years to reflect the new census data. Therefore, Plaintiffs' injury will not occur unless and until the General Assembly seeks to hold elections without equalizing population through a new redistricting plan based on the latest census. For that reason alone, Plaintiffs' claims are not ripe and not justiciable: they are entirely "dependent on future uncertainties." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006).

Indeed, Plaintiffs offer only unadorned speculation that the General Assembly "will fail timely to perform" its legislative task of redistricting and allege no facts suggesting that the General Assembly is "either unwilling or unable to adopt" redistricting plans in the many months between now and the primary elections currently scheduled for June 14, 2022. *Growe*, 507 U.S. at 34, 37. In fact, Plaintiffs attempt to shift their burden of proof, arguing that the General

5

Assembly has not shown that new redistricting plans will be enacted on the timeline Plaintiffs demand.  But, of course, the General Assembly bears no such burden.  Rather, Plaintiffs bear the burden to show that the General Assembly will eschew its constitutional duty to enact redistricting plans.  *See id.*  Plaintiffs, however, point to precisely nothing to carry that burden.  Accordingly, Plaintiffs' claims are not ripe and should be dismissed.  *See, e.g.*, *South Carolina*, 912 F.3d at 730; *Scoggins*, 718 F.3d at 270; *Miller*, 462 F.3d at 319.

Principles of federalism, comity, and judicial economy further underscore that the Court should dismiss Plaintiffs' unripe Complaint.  Indeed, premature involvement by federal courts in redistricting disputes raises particularly thorny issues.  Such premature action not only improperly adjudicates speculative disputes in violation of Article III, but also impermissibly usurps the constitutionally assigned prerogatives of state legislatures.  The Supreme Court "has repeatedly held that redistricting and reapportioning legislative bodies is a legislative task which the federal courts should make every effort not to pre-empt."  *Wise v. Lipscomb*, 437 U.S. 535, 539 (1978) (collecting cases).  "[L]egislative reapportionment is primarily a matter for legislative consideration and determination, for a state legislature is the institution that is by far the best situated to identify and then reconcile traditional state policies within the constitutionally mandated framework of substantial population equality."  *Connor v. Finch*, 431 U.S. 407, 414–15 (1977) (citation omitted).  "The federal courts by contrast possess no distinctive mandate to compromise sometimes conflicting state apportionment policies in the people's name."  *Id.* at 415.  Accordingly, "[a]bsent evidence that [a state] will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it."  *Growe*, 507 U.S. at 34; *see also Upham v. Seamon*, 456 U.S. 37, 41 (1982) ("[J]udicial relief becomes appropriate only when a legislature fails to reapportion . . . in a timely fashion *after having had an adequate opportunity to do so*." (emphasis added)).

Plaintiffs' conclusory allegations of "a substantial and imminent risk," Compl. ¶ 11, that the General Assembly will not enact redistricting plans in time for the 2022 elections rest on nothing more than speculation and are especially implausible. In fact, the General Assembly is *already* engaged in the redistricting process—a process in which the NAACP is an active participant. *See supra* pp. 2–3. The General Assembly still has several months to adopt new plans in time for the 2022 elections and should be accorded an "adequate opportunity" to do so. *Upham*, 456 U.S. at 41. In past cases, federal courts have concluded that redistricting litigation is not sufficiently cognizable to begin taking steps toward drafting redistricting plans until approximately four months before primary elections.[2] South Carolina's primary elections are currently scheduled for June 14, 2022, *see* Compl. ¶ 73, so this four-month mark does not arrive until February 14, 2022, more than three months from now. "As there is no reason to suspect that [South Carolina's] lawmakers will fail to enact appropriate redistricting legislation in a timely manner, there is no basis for [Plaintiffs'] requested relief." *Carter v. Va. State Bd. of Elections*, No. 11-CV-7, 2011 WL 665408, at *2 (W.D. Va. Feb. 15, 2011) (dismissing complaint on ripeness grounds).

Moreover, deferring to the General Assembly for at least several more months is especially warranted due to the Census Bureau's unprecedented delays in releasing the 2020 Census data—

---

[2] *See, e.g.*, *Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 867–68 (E.D. Wis. 2001) (staying impasse suit until February of election year); *Rodriguez v. Pataki*, 207 F. Supp. 2d 123, 125 (S.D.N.Y. 2002) (appointing special master four-and-a-half months before primaries); *Flateau v. Anderson*, 537 F. Supp. 257, 266 (S.D.N.Y. 1982) (according New York Legislature until approximately five months before the primaries to adopt a redistricting plan); *Smith v. Clark*, 189 F. Supp. 2d 503, 504–05 (S.D. Miss. 2002) (beginning to draft redistricting plan less than two months before deadline to declare candidacy), *aff'd sub nom. Branch v. Smith*, 538 U.S. 254, 262 (2003) ("there is no suggestion that the District Court failed to allow the state court adequate opportunity to develop a redistricting plan"); *Carter v. Va. State Bd. of Elections*, No. 11-CV-7, 2011 WL 665408, at *2 (W.D. Va. Feb. 15, 2011); *Miss. State Conf. of NAACP v. Barbour*, No. 11-cv-159, 2011 WL 1870222, at *9 (S.D. Miss. May 16, 2011) (staying impasse suit until end of election-year state legislative session), *aff'd*, 565 U.S. 972 (2011); *Favors v. Cuomo*, No. 11-cv-5632, 2012 WL 928223 (E.D.N.Y. Mar. 19, 2012) (three-judge court convened approximately four and a half months before primary election).

a fact that Plaintiffs nowhere mention in their Complaint. Federal law required the Census Bureau to release the 2020 Census redistricting data for redrawing congressional and legislative districts by April 1, 2021. *See* 13 U.S.C. § 141. But due to the COVID-19 pandemic and other challenges, the Census Bureau did not release that data until August 12, 2021 and did not release it in final format until September 16, 2021. *See* Press Release, U.S. Census Bureau, *Census Bureau Delivers 2020 Redistricting Data in Easier-to-Use Format* (Sept. 16, 2021), https://bit.ly/3baEnbu; *see also* Compl. ¶ 64. Thus, in prior cycles, map drawers received census data by April 1 in the year following the census, and federal courts deferred until approximately four months before the primary election before taking steps toward drawing judicial plans. *See supra* n.1. By contrast, this year the General Assembly did not receive the census data until August 12—yet Plaintiffs sought federal-court intervention barely two months later and more than *seven months* before the current primary election date. *See* Compl. ¶ 64. Merely to point out the audacious timing of Plaintiffs' request is to demonstrate that their lawsuit is premature and should be dismissed. *See, e.g.*, *Growe*, 507 U.S. at 33–34; *Upham*, 456 U.S. at 41; *supra* n.1.

Plaintiffs make passing reference to the drawing of South Carolina's maps by a three-judge panel of this Court in 2002, Compl. ¶ 56, but that case only confirms that Plaintiffs' suit is not ripe. All parties in that case *stipulated* that the General Assembly would fail to enact plans in time for the 2002 elections after the governor vetoed the General Assembly's enacted plans and the General Assembly fell a few votes short of the two-thirds supermajority required to override the veto. *See Colleton Cnty. Council v. McConnell*, 201 F. Supp. 2d 618, 623–24 (D.S.C. 2002); *id.* at 627 ("All of the parties appearing before us have stipulated, and have presented persuasive evidence, that the [Republican-controlled] General Assembly is at an impasse with the [Democratic] Governor and that there is no chance that the governing officials will reach a compromise in time for the impending 2002 elections."). Even then, the court did not issue court-drawn plans until March 20,

2002, less than three months before the June 11, 2002 primary. *See id.* This time around, there is no stipulation or evidence that the General Assembly "will fail timely to perform" its redistricting task, *Growe*, 507 U.S. at 34; the General Assembly timely enacted plans during the last redistricting cycle following the 2010 Census; and next year's June primary is still more than seven months away. Thus, there is no basis for the Court to take action toward superintending—much less supplanting—the General Assembly's ongoing redistricting efforts.

Plaintiffs' attempt to make something of their allegation that the "current timeline" will make it more difficult to "seek judicial review" and to conduct "meaningful review" of the new maps, Compl. ¶ 76, likewise fails. Plaintiffs cite precisely no authority for the notion that the General Assembly must build in time to be sued or that past litigation requires the General Assembly to enact new maps a mere two months after release of the census data and more than seven months before the next primary election. Nor could Plaintiffs cite any such authority because there is none. *See, e.g.*, *Growe*, 507 U.S. at 35 (noting the "improbability of completing judicial review" of a redistricting plan before an election); *supra* n.1. And, of course, that Plaintiffs give notice of their intent to sue on future plans that have not yet been enacted is quite telling.

Finally, Plaintiffs attempt to manufacture urgency by highlighting the March 30, 2022, deadline for filing a statement of candidacy. *See* Compl. ¶ 99. But federal courts in prior malapportionment cases have not taken this bait: they have looked to the primary election date rather than filing deadlines to determine the appropriate timing for any judicial involvement in redistricting. *See supra* n.1. After all, the filing deadline is a matter of statute. *See* S.C. Code Ann. § 7-11-15(A). Plaintiffs are not constitutionally entitled to this particular filing date or to have district maps approved by a certain amount of time in advance of a statutory filing date. Indeed, filing deadlines—and the dates of primary elections, for that matter—are subject to change by the General Assembly, which, in the unlikely event of a future impasse, would counsel against

federal-court involvement. *See, e.g.*, *Carter*, 2011 WL 665408, at *2 n.2. In any event, any suggestion that the General Assembly will not adopt new maps before March 30, 2022, is speculative and underscores that Plaintiffs' lawsuit is not ripe for adjudication.

In short, Plaintiffs' challenge to the existing plans is a straw man. No one disputes that the current plans are malapportioned. To be sure, South Carolina—like most states—experienced significant population shifts. That is why the General Assembly engages in redistricting every ten years and is actively engaged in the redistricting process now. So are Plaintiffs. The Court should therefore reject Plaintiffs' request to retain jurisdiction and act as a superlegislature while this case ripens on the vine. The Court should dismiss the Complaint for want of jurisdiction. *See Bilbro v. Haley*, 229 F. Supp. 3d 397, 404 (D.S.C. 2017) (recognizing "[a] dismissal for . . . .defect[s] in subject matter jurisdiction" is "without prejudice").

## II.     IN THE ALTERNATIVE, THE COURT SHOULD STAY THE CASE.

If the Court nonetheless determines that it has subject-matter jurisdiction over this case, it should, at a minimum, stay any further proceedings pending the General Assembly's enactment of new redistricting plans. The Supreme Court has instructed that a district court must "stay[] its hand" and afford the relevant state bodies a "reasonable time" to complete the redistricting process on their own. *Scott v. Germano*, 381 U.S. 407, 409 (1965). Indeed, it is "clear error" for a federal court to intervene in the state redistricting process absent record evidence that the state is "either unwilling or unable to adopt" a redistricting plan "in time for the elections." *Growe*, 507 U.S. at 34, 37. Because "comity requires that [federal courts] refrain from initiating redistricting proceedings . . . until the appropriate state bodies have attempted—and failed—to do so on their own," a federal court must, at the very least, stay such proceedings until the state has had a reasonable opportunity to complete its redistricting process. *Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 867 (E.D. Wis. 2001); *see also Miss. State Conf. of NAACP v. Barbour*, No. 11-cv-

159, 2011 WL 1870222, at *9 (S.D. Miss. May 16, 2011) (staying impasse suit until end of election-year state legislative session), *aff'd*, 565 U.S. 972 (2011).

Thus, in the alternative, because there is no evidence that the General Assembly is "unwilling or unable to adopt" a redistricting plan in time for the 2022 elections still months from now, *Growe*, 507 U.S. at 37, a stay of these proceedings is appropriate to afford the General Assembly a "reasonable time" to complete its redistricting process, *Germano*, 381 U.S. at 409.

## CONCLUSION

The General Assembly still has several months to complete its constitutionally entrusted redistricting task—and it is well on its way to doing so. Accordingly, because Plaintiffs' claims are not ripe for adjudication, the Court should dismiss the Complaint. Alternatively, and at a minimum, the Court should stay the case pending the General Assembly's timely enactment of redistricting plans.

11

November 9, 2021                               Respectfully submitted,

                                                                        */s/*Robert E. Tyson Jr.
Robert E. Tyson, Jr. (7815)
Vordman Carlisle Traywick, III (12483)
La'Jessica Stringfellow (13006)
ROBINSON GRAY STEPP & LAFFITTE, LLC
1310 Gadsden Street
Post Office Box 11449 (29211)
Columbia, South Carolina 29201
(803) 929-1400
rtyson@robinsongray.com
ltraywick@robinsongray.com
lstringfellow@robinsongray.com

John M. Gore (admitted *pro hac vice*)
Stephen J. Kenny (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
skenny@jonesday.com

*Counsel for Senate Defendants*