# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, <br><br>and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>       Plaintiffs,<br><br>       v.<br><br>HENRY D. MCMASTER, in his official capacity as Governor of South Carolina; HARVEY PEELER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. ELDER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina State Election Commission,<br><br>       Defendants. | **Case No.: 3:21-cv-03302-JMC**<br><br>**RESPONSE IN OPPOSITION TO HOUSE DEFENDANTS' MOTION TO STAY** |

## INTRODUCTION

Plaintiffs filed suit to prevent irreparable harms caused by Defendants' unnecessary delay in enacting legally compliant state House and U.S. Congressional maps. *See generally* Compl., ECF No. 1. The House Defendants have responded by moving to stay this action in its entirety, offering little more than vague assurances that they and the other Defendants plan to enact valid maps.[1] ECF 51 ("Motion to Stay" or "Motion"). However, the House Defendants have conspicuously avoided any representations as to dates by which such plans will be in place. Given the absence of any concrete indication that Defendants will enact legally compliant maps in time to be implemented by South Carolina's March 30, 2022 candidate filing deadline[2]—and five decades of protracted South Carolina redistricting litigation providing evidence to the contrary, *see* ECF No. 1 at ¶ 8—the House Defendants' Motion should be denied.

The House Defendants' Motion is premised on a fundamental mischaracterization of what Plaintiffs seek in this action. Plaintiffs do not deny the primacy of state actors in redistricting. Rather, Plaintiffs seek a concrete, publicized schedule for state actors to complete that redistricting. This will ensure that legally compliant maps are in place with sufficient time for meaningful public and court review and implementation before the March candidate filing period. Courts routinely

---

[1] Hours before Plaintiffs filed this Response, the Senate Defendants moved to dismiss or alternatively stay the case. ECF No. 57. The Senate Defendants also filed their own "Response" to the House Defendants' Motion to Stay, in which the Senate Defendants "agree that the Court should dismiss or, alternatively, stay this case. ECF No. 58. Plaintiffs will respond to these filings in due course, although it is likely that Senate Defendants' efforts fail for the same reasons as the House Defendants', as outlined herein.

[2] S.C. Const., art. III, § 9 ("The annual session of the General Assembly shall convene at the State Capitol Building in the City of Columbia on the second Tuesday of January of each year."); S.C. Code Ann. § 7-11-15 (requiring candidates to file statement of intent between March 16 and March 30); S.C. Code Ann. § 7-13-45 (requiring election officials to publicize certain information two weeks before March 16).

set such schedules in redistricting cases, not to usurp any state functions, but simply to be prepared to step in and ensure that significant constitutional and federal interests are protected, should the need arise—bearing in mind that the more time that passes, the more precarious the prospect of timely enacting legally compliant redistricting plans becomes. *See, e.g.*, Order Requiring Parties to Meet and Confer at 3, *Hunter v. Bostelmann*, No. 3:21-cv-000512 (W.D. Wis. Sept. 21, 2021), ECF No. 45 (three-judge court) ("Wisconsin Sept. 21 Order") ("Establishing the trial-completion date and setting a corresponding pretrial schedule does not mean that this court will inevitably adjudicate [the state's] maps."); *Brown v. Kentucky*, No. 13-CV-25 DJB-GFVT-WOB, 2013 WL 3280003, at *2–3 (E.D. Ky. June 27, 2013) (three-judge court) (finding that "setting deadlines" and having a court "process in place" for redistricting would "do nothing to obstruct the work of the legislature, which would retain the primary responsibility to produce constitutional districts").

In their Motion to Stay, House Defendants also conspicuously neglect to address Plaintiffs' First Amendment claims. *See* ECF No. 1 ¶¶ 96–100. Given these current, ongoing, and irreparable harms to Plaintiffs and other South Carolinians, the equities weigh strongly in favor of proceeding and setting a deadline for Defendants to timely enact maps before the candidate filing deadline on March 30, 2022.[3] As the following sections make clear, the House Defendants have not met their high burden for a stay.

As detailed in their Complaint and Motion for Preliminary Injunction (filed concurrently with this Response), ECF No. 59, Plaintiffs make a simple request of this court: impose on the Legislative Defendants and the Governor a December 15, 2021 deadline to pass state House and

---

[3] The Supreme Court has approved the use of the candidate filing deadline, in lieu of an election date, to establish a deadline by which states must enact maps to avoid federal adjudication, *Branch v. Smith*, 538 U.S. 254, 260–62 (2003), and the Court should do so here.

3

U.S. Congressional maps into law. If Defendants miss this deadline, Plaintiffs ask this court to set (1) a schedule for trial that will resolve this case in sufficient time before any candidate declaration period begins, and (2) a status conference immediately after the December 15, 2021 deadline to discuss any further appropriate remedies. *See* ECF No. 59 at 2–3. The modest nature of Plaintiffs' requested relief—which has repeatedly been recognized as "appropriate" by the Supreme Court—belies any notion that a stay is necessary to prevent harm to the House Defendants or to preserve judicial resources. Indeed, Plaintiffs' requested relief is necessary to protect their constitutional rights, such that a stay would necessarily cause Plaintiffs irreparable harm.[4]

## ARGUMENT

As the party seeking a motion to stay, House Defendants bear a heavy burden of proof and "must justify [this motion] by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983); *see generally Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (a party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward"). House Defendants note that courts have looked to factors such as judicial economy, hardship and inequity to the moving party in the absence of a stay, and prejudice to the non-moving party. ECF No. 51 at 14–15.[5] None of these factors weighs in favor of a stay.

---

[4] House Defendants' novel request that the Court dismiss this case as unripe via a motion to stay, ECF 51 at 1, n.1, is meritless. Courts have consistently found plaintiffs to have "alleged a sufficient injury" for justiciability "by stating that their votes would be diluted by unconstitutional maps." *Hunter v. Bostelmann*, No. 21-CV-000512-JDP-AJS-EEC, 2021 WL 4206654, at *3 (W.D. Wis. Sept. 16, 2021) (citing *Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 862–64 (E.D. Wis. 2001)). Plaintiffs have so alleged here. See ECF No. 1 at ¶¶ 89–95.

[5] To determine whether to exercise discretion in granting a stay, courts also consider traditional factors like the likelihood of success on the merits, whether the moving party will be irreparably injured absent a stay, whether a stay would substantially injure other parties interested in the

**I.     Plaintiffs merely seek a schedule—a modest remedy that would respect the legislature's role in the redistricting process, and would require relatively minimal judicial resources.**

House Defendants hyperbolically claim that "Plaintiffs seek relief that would require this Court to alter fundamentally the balance of power in American government." ECF No. 51 at 3–4. Not so. As the Supreme Court recognized in the key case House Defendants rely on, it is "appropriate for" a district court to enter the precise relief sought here—"to establish a deadline by which, if the [state redistricting body] had not acted, the federal court would proceed." *Growe v. Emison*, 507 U.S. 25, 36 (1993) (cited ECF No. 51 at 7). This relief is commonly entered: for the court to "[e]stablish a schedule that will enable [it], in the absence of timely enacted and lawful plans for South Carolina's U.S. Congressional and state House districts, to adopt and implement new plans for South Carolina's U.S. Congressional and state House districts."[6] ECF No. 1 at 28. Such relief is not, as House Defendants claim, an unprecedented intrusion into legislative prerogatives; it is granted routinely in redistricting cases.

---

proceeding, and the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). As these factors parallel those used in courts' preliminary injunction analyses, Plaintiffs incorporate by reference their arguments as to these factors, which all weigh in favor of preliminary relief, rather than a stay, as detailed further in Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction. *See* ECF No. 59.

[6] Many courts have permitted or even encouraged establishing such schedules or deadlines in the context of redistricting. *See, e.g.*, *Scott v. Germano*, 381 U.S. 407, 409 (1965) (remanding a redistricting case with instructions for a federal district court to "enter an order fixing a reasonable time within which the appropriate [state agencies] may validly redistrict"); *Smith v. Clark*, 189 F. Supp. 2d 503, 505–06 (S.D. Miss. 2002) (noting a date by which the court "would assert [its] jurisdiction" if "it was not clear" by such time that the state would timely enact redistricting plans); *Balderas v. Texas*, No. 6:01CV158, 2001 WL 36403750, at *1 (E.D. Tex. Nov. 14, 2001) (noting that state actors had been given a deadline to adopt a redistricting plan).

For example, a three-judge court in Wisconsin in an ongoing malapportionment challenge recently set a date by which new maps must be drawn to ensure that legally compliant redistricting plans are in place and may be implemented by the relevant candidate filing deadlines. The three-judge court acknowledged "that responsibility for redistricting falls first to the states," but held that because "[f]ederal rights are at stake, . . . this court will stand by to draw the maps—should it become necessary." Op. & Order at 4, *Hunter v. Bostelmann*, No. 3:21-cv-000512 (W.D. Wis. Oct. 6, 2021), ECF No. 103 (three-judge court). Consistent with this order, the *Hunter* court set a trial date of January 31, 2022, on plaintiffs' malapportionment claims. *See id.* at 4. This will be about ten weeks before the opening of the signature-gathering period in Wisconsin (April 15), and about four months before the candidate filing deadline (June 1), to ensure adequate time for orderly implementation of legally compliant redistricting plans. *Id.*

In a Kentucky malapportionment case during the most recent redistricting cycle, the plaintiffs sought a remedy similar to that requested by Plaintiffs in their motion for preliminary injunction: to find that maps from the previous cycle were unconstitutionally malapportioned, enjoin their use, and have a "process in place to provide for constitutional districts should the legislature fail" to enact valid new maps. *Brown*, WL 3280003, at *3. In denying the defendants' motion for a stay, the three-judge court noted that the "remedy sought by the Plaintiffs is deferential and would neither obstruct state reapportionment nor use federal litigation to impede it." *Id.*

Although the House Defendants claim that they will be injured by the setting of a simple deadline, their Motion to Stay is conclusory, relies on clearly inapposite legal principles like

6

*Younger* abstention, ECF No. 51 at 2–3,[7] and does not meet their burden under *Landis* or *Williford*. Defendants repeatedly assert that they will enact new redistricting plans in a timely manner, but they assiduously avoid providing any deadlines for the redistricting process—offering only a date for a House Redistricting Ad Hoc Committee meeting on November 10, 2021 (and possibly an additional meeting on November 12, 2021) to consider proposed district lines, including one of its own that will have only been released shortly beforehand. ECF No. 51 at 7. Instead, the House Defendants repeatedly offer vague and conclusory statements throughout their Motion that, despite the unusual delays of this redistricting cycle and all evidence from prior cycles to the contrary, ECF No. 1 at ¶¶ 8, 16, they still have plenty of time before the March 30, 2022 candidate filing deadline to enact valid maps, ECF No. 51 at 9–10, 11–12. But if, as the House Defendants assert, they are on track and are actively engaging in the redistricting process with the same aim of timely enacting legally compliant redistricting maps, simply setting and making public a deadline to facilitate that goal, with reasonable and meaningful opportunities for the public to participate, cannot possibly be considered an undue hardship.

House Defendants also allege "hardship" in the event that this Court "will have prematurely and unnecessarily engaged in the ongoing state legislative redistricting process." ECF No. 51 at 5. This is misleading. Plaintiffs request only that the Court ensure that adequate time is allotted so that any enacted maps can be vetted for compliance with constitutional and other significant legal requirements and adjudicated as necessary. ECF No. 1 at ¶ 8. It is entirely appropriate for a federal court to set a schedule to prepare for potential litigation in the event that valid maps are not timely

---

[7] As the Fourth Circuit has noted, abstention "may be justified only in the exceptional circumstances," and *Younger* abstention is only applicable where "there is an ongoing state judicial proceeding"—a circumstance not presented here. *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 251 (4th Cir. 1993).

enacted. *Brown*, 2013 WL 3280003, at \*3. As the *Hunter* court recently explained, courts may "provide a date by which the state must act to *avoid* federal involvement in redistricting." Wisconsin Sept. 21 Order at 3 (three-judge court) (emphasis added) (citation omitted).

Finally, setting a deadline for the adoption of a map and litigation schedule would not involve significant judicial resources. Plaintiffs simply ask the Court to establish a timeline for map adoption and to prepare itself to step in if—and only if—the Legislature fails to "timely perform that duty." *Growe*, 507 U.S. at 34. This is a narrow, commonplace remedy; as discussed above, courts frequently set deadlines by which states must act to avoid federal court intervention. *See id.*; *Brown*, 2013 WL 3280003, at \*3; Wisconsin Sept. 21 Order at 3 (three-judge court). Preparation for this eventuality helps ensure that lawful maps are timely adopted, to avoid voter and candidate confusion close to filing deadlines.

## II.     Plaintiffs and other South Carolinians would be prejudiced and irreparably harmed by a stay.

As set forth in Plaintiffs' Memorandum in Support of their Motion for Preliminary Injunction, ECF. No. 59, Plaintiffs will suffer irreparable harm without preliminary relief; a stay would only compound such injury.[8] Despite the House Defendants' mischaracterization of the complaint, Plaintiffs simply ask the Court to set a deadline to ensure that the South Carolina Legislature provides adequate time for legally compliant maps to be set in place prior to March 30, 2022, "to give the court time to consider the evidence, make the necessary factual findings,

---

[8] House Defendants "also request that the Court defer any decision on the motion for a three-judge panel until new districts are put in place prior to the 2022 election cycle and Plaintiffs declare an intention to challenge those districts." ECF No. 51 at 13. For similar reasons that a schedule is needed now, a stay in the decision on the motion for a three-judge panel would also prejudice Plaintiffs and other South Carolinians.

and issue a reasoned decision." *See* Wisconsin Order, *Hunter v. Bostelmann*, No. 3:21-cv-000512 (W.D. Wis. Sept. 21, 2021), ECF No. 45 (three-judge court).

Although redistricting remains the role of the Legislature in South Carolina, the Constitution and the Voting Rights Act put important, substantive limitations on how the Legislature can draw its maps. Without a schedule to guide this process, the timeline for redistricting could become so compressed as to render its maps unreviewable, at least before statutory deadlines for the 2022 elections. *See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). This could mean elections conducted under maps that violate those limitations, and South Carolinians would have no remedy. Instead, setting a reasonable schedule for the Legislature to release its maps is a simple and crucial way to protect the rights of South Carolinians before it is too late.

## CONCLUSION

For these reasons, this Court should deny the House Defendants' Motion to Stay.

Dated: November 9, 2021                               Respectfully submitted,

Leah C. Aden**                                        */s/ Christopher J. Bryant*
Stuart Naifeh**                                       Christopher J. Bryant, Fed. ID 12538
Raymond Audain**                                      Boroughs Bryant, LLC
John S. Cusick**                                      1122 Lady St., Ste. 208
NAACP Legal Defense & Educational Fund, Inc.          Columbia, SC 29201
40 Rector St, 5th Fl.                                 Tel.: (843) 779-5444
NY, NY 10006                                          chris@boroughsbryant.com
Tel.: (212) 965-7715
laden@naacpldf.org                                    Somil B. Trivedi**
                                                      Patricia Yan**
Samantha Osaki**                                      American Civil Liberties Union Foundation
American Civil Liberties Union Foundation             915 15th St., NW
125 Broad Street, 18th Floor                          Washington, DC 20005
New York, NY 10004                                    Tel.: (202) 457-0800
Tel.: (212) 549-2500                                  strivedi@aclu.org
sosaki@aclu.org                                       pyan@aclu.org

John A. Freedman*                                     Allen Chaney, Fed. ID 13181
Elisabeth S. Theodore*

Gina M. Colarusso*
John "Jay" B. Swanson*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel: (202) 942-5000

Jeffrey A. Fuisz*
Paula Ramer*
Jonathan I. Levine*
Theresa M. House*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000

Sarah Gryll**
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300

American Civil Liberties Union
of South Carolina
Charleston, SC 29413-0998
Tel.: (843) 282-7953
Fax: (843) 720-1428
achaney@aclusc.org

*Attorneys for Plaintiffs*

\* Motion for admission *Pro Hac Vice* forthcoming
\*\* Admitted *Pro Hac Vice*