IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| The South Carolina State Conference of the NAACP, and Taiwan Scott, on behalf of himself and all other similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> Henry D. McMaster, *in his official capacity as Governor of South Carolina*; Harvey Peeler, *in his official capacity as President of the Senate*; Luke A. Rankin, *in his official capacity as Chairman of the Senate Judiciary Committee*; James H. Lucas, *in his official capacity as Speaker of the House of Representatives*; Chris Murphy, *in his official capacity as Chairman of the House of Representatives Judiciary Committee*; Wallace H. Jordan, *in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee*; Howard Knabb, *in his official capacity as interim Executive Director of the South Carolina State Election Commission*; John Wells, *Chair*, Joanne Day, Clifford J. Elder, Linda McCall, and Scott Moseley, *in their official capacities as members of the South Carolina State Election Commission*, <br><br> Defendants. | Civil Action No.: 3:21-cv-03302-JMC <br><br><br><br><br> **ORDER AND OPINION** |

Before the court is Plaintiffs' Motion Requesting a Three-Judge Panel pursuant to 28 U.S.C. § 2284. (ECF No. 17.) Plaintiffs request the appointment of a three-judge panel to adjudicate their constitutional challenges of the apportionment of the South Carolina House of Representatives and South Carolina's Congressional districts. (*Id*. at 4.) Defendants oppose

1

Plaintiffs' Motion, insisting it was filed prematurely and, in either case, does not meet the statutory requirements set forth under 28 U.S.C. § 2284(a). (ECF No. 18 at 2.) Defendants contend Plaintiffs' suit amounts to an improper intrusion into the State's legislative processes. (*Id*.) For the following reasons, the court **GRANTS** Plaintiffs' Motion Requesting a Three-Judge Panel pursuant to 28 U.S.C. § 2248(a) (ECF No. 17).

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The United States Constitution guarantees all South Carolinians an equal voice in the electoral process. In this light, the Constitution "requires South Carolina's governing officials enact new districting plans for the South Carolina Senate, the South Carolina House of Representatives, and the United States Congressional districts within the state on an equipopulous basis every ten years," in accordance with the results of the decennial census and release of data by the U.S. Census Bureau. *Colleton Cty. Council v. McConnell*, 201 F. Supp. 2d 618, 623 (D.S.C. 2002), *opinion clarified* (Apr. 18, 2002); *see* U.S. Const. art. I, § 2. Following a delay in administering the 2020 U.S. Census due to the COVID-19 pandemic, the 2020 census results were released on August 12, 2021. The results revealed that South Carolina experienced significant population growth and substantial population shifts among the existing Congressional districts. (*See* ECF No. 1 at 15, ¶ 48; *Id.* at 25, ¶ 83.) It is now undisputed that South Carolina's House and Senate districts must be redrawn in accordance with the constitutional mandate. (ECF No. 51 at 3 (stating that "inevitably, the decennial census exposes that the then-current districts are no longer apportioned appropriately").)

In South Carolina, the Legislature is responsible for drawing United States Congressional districts, *See* S.C. Const., art. III, § 3; *id.* art. VII, § 13. The Legislature is currently effectively

2

adjourned,[1] "with no plans to reconvene for a special session." (ECF No. 1 at 22, ¶ 71(citing Jay Lucas (@schousespeaker), Twitter (Sep. 22, 2021, 2:23 PM), https://twitter.com/ schousespeaker/ status/ 1440743475549401088).) However, the Legislature has been working diligently to propose a new redistricting plan. But Plaintiffs contend that while the resolution is in place and absent a special session, the Legislature cannot consider a redistricting plan until the start of the next regular legislative session, slated to begin on January 11, 2022. (ECF No. 1 at 22; ECF No. 18 at 5 n.4.)

Plaintiffs argue the delay in redistricting will affect elections for both the United States and State Houses of Representatives that will take place during 2022. (*See* ECF No. 17 at 2-3.) The next primary is scheduled for June 14, 2022, and the next general election is scheduled for November 8, 2022. (ECF No. 1 at 23, ¶ 73.) Candidates for the State House and U.S. Congressional primary elections must file by noon on March 30, 2022. (*Id.*) If district lines remain undetermined by that date, Plaintiffs argue, potential candidates will not know where to run and interested organizations will not be able to communicate with voters and plan effectively for their campaigns. (*Id*. at 6, ¶ 12-14.)

On October 12, 2021, Plaintiffs filed this action to address the "substantial and imminent risk that constitutionally compliant district lines will not be redrawn in time to cure the current unconstitutional malapportionment for the 2022 elections." (ECF No. 1 at 5, ¶ 11.) Plaintiffs also allege several immediate and presently ongoing harms grounded in their associational and expressive rights under the First and Fourteenth Amendments ("associational harms"). (*Id*. at 27,

---

[1] On May 13, 2021, the South Carolina Legislature unanimously adopted a concurrent resolution upon *sine die* adjournment. H.R. 4285, 124th Sess. S.C. Gen. Assem. (2021). Under this resolution, the General Assembly technically remains in session until it "reconvenes for a regular legislative session in January." (ECF No. 17 at 2 n.1.) No Special Session may therefore be called. (*Id*.) Moreover, both the South Carolina Senate and the South Carolina House have adjourned for the fall. (ECF No. 1 at 4, ¶ 6.)

3

¶¶ 96-100.) Specifically, Plaintiffs contend the uncertainty about future district lines "impedes candidates' ability to effectively run for office" and prevents voters from "assessing candidate positions and qualifications, advocate for their preferred candidates, and associate with likeminded voters." (*Id*. at 27, ¶ 97.) Plaintiff NAACP alleges similar harms: the uncertainty hinders its ability as an organization to encourage candidates to run, educate voters on the positions held by candidates in their districts, and organize voters on behalf of candidates who share their views. (*Id*. at 9-10, at ¶ 25.)

Pursuant to 28 U.S.C. § 2284, Plaintiffs now request a three-judge court to adjudicate their constitutional claims. (ECF No. 17.)

Defendants oppose Plaintiffs' Motion on the grounds that a three-judge panel of the federal judiciary is improper because it would unnecessarily interfere with an ongoing state legislative process (*see e.g.,* ECF No. 18 at 2), and that 28 U.S.C. 2248(a) does not reach challenges to existing apportionments (*see e.g.,* ECF No. 47 at 5-17).

On November 12, 2021, the court stayed this case until January 18, 2022, to give the South Carolina Legislature time to perform its constitutional duty and propose new district plans.

## II.     LEGAL STANDARD

### A. Three Judge Panels Under 28 U.S.C. § 2248

Congress mandates three-judge district courts for actions "challenging the constitutionality of the apportionment of congressional districts or the apportionment of any legislative body." 28 U.S.C. § 2248(a). The statute additionally defines the membership, composition, and special procedures for such courts as follows:

> "Upon the filing of a request for three judges, the judge to whom the request is presented *shall*, unless he determines that three judges are not required, immediately notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a

4

circuit judge. The judges so designated, and the judge to whom the request was presented, shall serve as members of the court to hear and determine the action or proceeding."

28 U.S.C. § 2284(b)(1) (emphasis added). This prescription "could not be clearer." *Shapiro v. McManus*, 577 U.S. 39, 43 (2015). Here, the "mandatory 'shall' normally creates an obligation impervious to judicial discretion." *Id.* (citing *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)). The district judge's task, therefore, is merely to "'determin[e]' whether the 'request for three judges' is made in a case covered by § 2284(a)—no more, no less." *Shapiro,* 577 U.S. at 44. Of course, where "even a single district judge lacks jurisdiction" to hear a case, a panel of three cannot overcome the jurisdictional deficiency. *Id.* at 44-45 (citing *Gonzalez v. Automatic Emps. Credit Union*, 419 U.S. 90, 100 (1974)).

This is not a demanding standard. While a "substantial federal question" must be presented to satisfy the jurisdictional requirement, "'constitutional claims will not lightly be found insubstantial for purposes of' the three-judge-court statute." *Id*. (quoting *Washington v. Confederated Tribes of Colville Reservation,* 447 U.S. 134, 147-148 (1980)). Notably, failing to state a claim for relief on the merits does not fall below this statutory threshold. *Id.* at 45-46. Instead, a claim which fails to raise a "substantial federal question" for the purposes of § 2284 must be "wholly insubstantial and frivolous."[2] *Id.* at 45 (citations omitted). Ultimately, the case at issue may succeed or fail on the merits. Section 2284 merely "'entitles' the [litigants] to make [their] case 'before a three-judge district court.'" *Indep. Inst. v. FEC*, 816 F.3d 113, 117 (D.C. Cir. 2016).

---

[2] These terms are significant. *Shapiro* emphasizes that "'[c]onstitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit' . . . [and] [t]he limiting words 'wholly' and 'obviously' have cogent legal significance.'" *Shapiro*, 577 U.S. at 45–46 (quoting *Goosby v. Osser*, 409 U.S. 512, 518 (1973)).

The inquiry here is two-fold. First, the court must determine whether even a single federal district judge has jurisdiction under the ordinary strictures of Article III. Then, the court must consider whether the case, as presented, constitutes "an action challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a). The court considers these issues in turn below.

### B. Relationship between Standing and Ripeness

Article III, Section 2 of the United States Constitution limits the jurisdiction of the federal courts to "[c]ases" and "[c]ontroversies." The Supreme Court of the United States has stressed that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976). The doctrine of standing curtails the disputes before the court in accordance with this limitation. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) ("The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'" (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992))). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).

An injury confers standing under Article III if it is "'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper*, 568 U.S. at 409 (citations omitted). To establish such an injury-in-fact, plaintiffs must show "a 'realistic danger of sustaining a direct injury,'" *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir.), cert. denied, 140 S. Ct. 392 (2019).

6

While an injury-in-fact cannot be hypothetical or conjectural, *id*., threatened injuries can satisfy Article III when they are sufficiently concrete "in both a qualitative and temporal sense." *Id*. (quoting *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017)). Thus, "an alleged harm is too 'speculative' to support Article III standing when the harm lies at the end of a 'highly attenuated chain of possibilities.'" *South Carolina*, 912 F.3d at 727.

Ripeness is a related concept, borne from the jurisdictional "case or controversy" limitation of Article III. It "presents a 'threshold question of justiciability'" for a federal court. *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (citing *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 195 (4th Cir. 2013)). The ripeness doctrine constrains federal courts from "taking premature judicial action, thereby preventing them from becoming entangled in 'abstract disagreements.'" *Scoggins*, 718 F.3d at 269 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)). The doctrine serves the goals of judicial economy because it requires the court to refrain from issuing a decision before the record is fully developed and the action underlying the harm is "formalized." *Id*.

When plaintiffs allege threatened or prospective harms, the standing and ripeness inquiries merge. *Susan B. Anthony List*, 573 U.S. at 157 ("As the parties acknowledge, the Article III standing and ripeness issues in this case 'boil down to the same question.'"). In this light, "a claim should be dismissed as unripe if the . . . [alleged] future impact 'remains wholly speculative.'" *Doe v. Va. Dept. of State Police*, 713 F.3d 745, 757 (4th Cir. 2013) (citing *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir.1996)).

Two considerations color the ripeness inquiry: First, the court must consider "the hardship to the parties of withholding court consideration, and second, it must look to "the fitness of the

issue for judicial decision." *Abbott Labs.*, 387 U.S. at 149.

The first prong focuses on the imminence of the harm alleged by the plaintiffs. The question becomes whether, if the court denies review, the plaintiffs will suffer some concrete harm to a cognizable legal interest. The Supreme Court has found "hardship" primarily in cases where litigants seek pre-enforcement review. *See, e.g., Abbott Labs.*, 387 U.S. at 152-153 (plaintiffs lack of compliance could result in criminal and civil penalties); *Susan B. Anthony List*, 573 U.S. at 159 (plaintiffs had alleged "credible threat of prosecution"). Even if the alleged harm is uncertain to occur, the Supreme Court has recognized that other collateral injuries may suffice to satisfy the ripeness requirement of Article III. *See Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 80-82 (1978).

The second prong requires the court to consider, for example, whether the harm alleged is "purely legal," or whether "further factual development could help the court resolve the issues in the case." *See Susan B. Anthony List*, 573 U.S. at 168-69.

### III. ANALYSIS

#### A. <u>Article III Jurisdiction</u>

In its Order staying the case until January 18, 2022 (ECF No. 63), the court grouped Plaintiffs' alleged injuries into two analytical categories: (1) ongoing associational harms (*see* ECF No. 1 at 4-5, ¶¶ 6-10), and (2) the threatened future harm of vote dilution due to the risk that redistricting will not be completed before upcoming election deadlines (*see* ECF No. 60 at 2-3). (ECF No. 63 at 8-9.)

Turning first to the associational harms in Plaintiffs' Complaint, the court finds Plaintiffs have standing to raise these claims under Article III. The injury Plaintiffs allege is concrete and ongoing. It is neither uncertain, nor dependent on future contingencies which may not come to

pass. *See, e.g., South Carolina*, 912 F.3d at 727. Moreover, the harm to Plaintiffs' associational rights is "fairly traceable to the challenged action." *Id.* at 726. If redistricting had been completed, Plaintiffs claims would fail at the outset.[3]

The second category of harms – arising from the risk that redistricting will not be timely completed – poses a different question. These claims are not yet ripe for adjudication because the injury alleged remains speculative before the Legislature has a chance to act. Nonetheless, the court can retain jurisdiction over these claims throughout the duration of the stay in accordance with two precedential cases, *Scott v. Germano*, 381 U.S. 407 (1965) and *Growe v. Emison*, 507 U.S. 25 (1993), which ostensibly require the federal courts' "deferral, not abstention." The district court is not required to *dismiss* the case for lack of jurisdiction while state legislators act. The proper balance of the weighty federal rights asserted by Plaintiffs and the interests of federalism asserted by Defendants requires the court to "stay its hand," while standing ready, if necessary, to draw the maps. (ECF No. 63 at 10-11.)

In this light, the court recognizes that redistricting is first and foremost a state legislative function. The court has appropriately "stayed its hand" to await action by the South Carolina Legislature. (*Id.* at 10.) This deference is not indefinite. Courts can, and historically have,

---

[3] Again, the court notes that it is unnecessary and premature to adjudicate the merits of Plaintiffs' First Amendment claims at this stage. (*See* ECF No. 63 at 8 n.2) The only issue at this point is whether a credible, present injury has been alleged. The court finds it has. Defendants have not demonstrated that *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019) categorically foreclosed First Amendment-based claims in all redistricting cases to the extent that Plaintiffs cannot even establish the requisite injury to attain standing. Whether these claims can survive a motion to dismiss for failure to state a claim is a separate issue which does not bear on the court's decision here. It is clear, however, that Plaintiffs' claims survive the modest bar set in *Shapiro*, which only prohibits claims that are "constitutional[ly] insubstantial," "essentially fictious," "wholly insubstantial," "obviously frivolous," or "obviously without merit." Since cogent distinctions can be drawn between this case and *Rucho*, the court is not persuaded that Plaintiffs' claims fall short of this paltry limitation.

indicated their willingness to assert jurisdiction to "allow for the timely resolution of the case should the state process languish or fail." *Hunter v. Bostelmann*, 21-cv-512, 2021 WL 4206654, at *4 (W.D. Wis. Sept. 16, 2021). In this case, the timeframe for action is necessarily compressed because the publication of the 2020 census results was delayed. If it becomes apparent by January that no constitutionally appropriate redistricting maps have been proposed, the federal court has a duty to step in. *See, e.g.*, *Brown v. Kentucky*, No. 13-cv-25, 2013 WL 3280003, at *4 (E.D. Ky. June 27, 2013) ("However, the Court also has a statutory job to do.")

Come January, with state election deadlines mere weeks away, the court's inability to call on a fully briefed, well-informed three-judge panel will create unnecessary administrative delays that will multiply the risk that the court cannot hear and judiciously decide the weighty issues in this case. All parties acknowledge that time is short. And, of course, the pandemic-related delays necessitating this action are unprecedented. The appointment of the three-judge panel is therefore an administrative step to ensure that, if necessary, the court can step in without delay to perform its duty and timely adjudicate the claims at issue here. State legislative action may well make federal court intervention unnecessary. In that case, the three-judge panel may not need to act at all. However, the short timeframe for adjudication combined with the serious issues in this case require the court to set its house in order administratively while the case is stayed.

    B. <u>Application of 28 U.S.C. § 2248(a)</u>

The statutory text clarifies that a three-judge panel *must* be appointed for actions "challenging the constitutionality of the apportionment of congressional districts or the apportionment of any legislative body." 28 U.S.C. § 2248(a). At the outset, the court notes Plaintiffs' suit rests fundamentally on the notion that the 2020 census caused South Carolina's existing district lines to become malapportioned. (ECF No. 1 at 5, ¶ 9.) Regardless of Defendants'

insistence that these lines will not be used in upcoming elections, the case arises from the alleged presently unconstitutional malapportionment of electoral districts today.

The court finds that this case falls within the strictures of 28 U.S.C. § 2248(a). Defendants' assertion that the word "apportionment" does not encompass challenges to maps that have not yet been adopted, draws an impractical distinction which is supported neither by the purpose of the statute nor the long history of redistricting cases adjudicated before three-judge courts.

A three-judge panel ensures that issues of special constitutional importance are not relegated to a single decisionmaker. Whether a group of plaintiffs challenges lines that are already enacted or alleges that gridlock between state actors prevents timely redistricting altogether, the ultimate outcome is the same: the federal court must step in to draw the maps. Neither logic nor sense commands a single district judge to undertake this momentous task in one scenario, but not in the other.

The court further notes that this distinction is neither mandated by the statutory text nor by controlling precedent. Indeed, a long line of cases supports the appointment of three-judge panels to adjudicate preemptive challenges to existing district lines. The Supreme Court affirmed the jurisdiction of the three-judge panel in *Growe*, despite admonishing the court that the state legislature should be given time to act. *Growe*, 507 U.S. at 36. *See also Schatzle v. Kirkpatrick*, 456 U.S. 966 (1982) (affirming *Shayer v. Kirkpatrick*, 541 F. Supp. 922, 925 (W.D. Mo. 1982), in finding that a three-judge court was proper because "Missouri has not enacted a redistricting law[,] . . . and failure to do so could result in a deprivation of the right to select representatives . . . . [and] the constitutionality of the present, ten-district apportionment [was] called into question."); *Branch v. Smith*, 538 U.S. 254, 259 (2003) (affirming the decision of a three-judge panel which created a

redistricting plan to be used in case state authorities failed to have a timely plan in place).[4]

Defendant Governor, too, admits that "three-judge panels []have exercised jurisdiction over preemptive challenges like this one." (ECF No. 47 at 12 (citing *Arrington*, 173 F. Supp. 2d 856).) And, as Plaintiffs emphasize, "three-judge courts have exercised jurisdiction in South Carolina in three of the past four redistricting cycles before maps were adopted." (ECF No. 54 at 3 (citing ECF No. 1 at ¶¶ 53-60).)

Defendants correctly state that when it legislates, "Congress is presumed to know existing law." (ECF No. 47 at 9.) Numerous three-judge courts have adjudicated preemptive challenges to existing district lines, many of which have been reviewed and affirmed by the Supreme Court of the United States. Therefore, the court is not persuaded by Defendants' argument that cases challenging existing apportionments are categorically excluded from the scope of 28 U.S.C. § 2248.

---

[4] Three-judge panels regularly adjudicate similar claims in other district courts. *See, e.g., Arrington v. Elections Bd.*, 173 F. Supp. 2d 856, 862 (E.D. Wis. 2001) (three-judge panel retained jurisdiction in case state legislature failed to act); *Hunter v. Bostelmann*, C/A No. 21-cv-512-JDP-AJS-EEC, 2021 WL 4206654, at *4 (W.D. Wis. Sept. 16, 2021) (three-judge panel stayed proceedings, similar to those in this case and set a schedule); *Favors v. Cuomo*, 866 F. Supp. 2d 176, 180-181 (E.D.N.Y. 2012) (three-judge panel appointed where legislative redistricting task force had "yet to issue a new congressional map"); *Flateau v. Anderson*, 537 F. Supp. 257 (S.D.N.Y. 1982) (three-judge court adjudicated constitutionality of existing district lines and set a deadline for the legislature to enact new, constitutionally appropriate districts); *Carstens v. Lamm*, 543 F. Supp. 68, 75 (D. Colo. 1982) (three-judge court adjudicated the "constitutionality of the current apportionment of Colorado's congressional districts").

## IV.     CONCLUSION

The court concludes that a three-judge panel is appropriate here.  Accordingly, the court **GRANTS** Plaintiffs' Motion Requesting a Three-Judge Panel pursuant to 28 U.S.C. § 2248(a) (ECF No. 17).

**IT IS SO ORDERED**.

*J. Michelle Childs*
United States District Judge

December 9, 2021
Columbia, South Carolina