## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| The South Carolina State Conference of the NAACP, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 3:21-3302-JMC-TJH-RMG |
| v. | ) ) | |
| Henry D. McMaster, in his official capacity as the Governor of South Carolina, *et. al.*, | ) ) ) | |
| | ) | **ORDER** |
| Defendants. | ) ) ) | |

Defendants James H. Lucas, Chris Murphy, and Wallace Jordon ("Movants") have moved to disqualify the undersigned as a member of the three-judge panel in this matter under 28 U.S.C. § 455(a), (b)(1), and (b)(2). This motion is based on the undersigned's representation of litigants as a private attorney in 1995-1996 and 2001-2002 legislative reapportionment litigation. The Movants argue that this representation two decades or more ago provides the undersigned "personal knowledge of disputed evidentiary facts," involves the same "matter in controversy" as the previous litigation, and creates a situation where his "impartiality might reasonably be questioned." For reasons set forth below, the undersigned declines to recuse and denies the motion.

### Legal Standard

A motion to recuse is governed by two different standards under § 455. First, a court must determine if facts exist which make recusal mandatory under § 455(b). These include situations where a judge has a personal bias or prejudice, personal knowledge of disputed evidentiary facts, past participation in "the matter in controversy," financial interests, or a familial relationship to a

1

party or counsel.  Second, a judge must recuse where "his impartiality might reasonably be questioned."  § 455(a).  This provision provides for an objective standard and lacks a scienter requirement or a showing of any actual bias.  *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859 (1988).  The question is whether "a reasonably, well-informed observer" outside the judiciary "might reasonably question [the judge's] impartiality on the basis of all of the circumstances."  *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998).  It is well settled that prior litigation experience in the same area of law involving similar types of legal issues does not form a basis to mandate recusal of a judge.  *Wessman by Wessman v. Boston School Committee*, 979 F. Supp. 915, 917 (D. Mass. 1997).

## Discussion

The undersigned was an active litigator for over 30 years before his appointment to the bench.   This involved experience in a variety of areas of complex litigation, including medical malpractice, copyright law, catastrophic personal injury cases, Title VII, voting rights, and reapportionment.  The undersigned also represented sitting governors of both parties, the South Carolina Budget and Control Board, the South Carolina Supreme Court, and numerous state agencies, as well as the City of Columbia.  Since being sworn in as a United States District Judge in August 2010, the Court has handled cases on his docket in all these areas of past litigation experience.  This has included sitting on another three-judge panel involving a voting rights case challenging the right of a sitting Republican state senator, Paul Thurmond, to offer for reelection due to alleged filing defects, in which the undersigned drafted the unanimous panel decision ruling for defendants.  *Williams v. South Carolina Election Commission*, C.A. No. 2:12-2760 (2012).  As the late Chief Justice Rehnquist observed in declining to disqualify himself in a case in which he had worked on a related issue while at the Department of Justice, "it would be unusual" for a judge

not to encounter legal issues which overlap with areas from his prior practice, and this does not create a basis for disqualification. *Laird v. Tatum*, 409 U.S. 824, 835 (1972).

The Movants posit that the undersigned was involved in prior legislative reapportionment litigation against "a Republican controlled legislature." (Dkt. No. 90 at 6). This is an oversimplified characterization of the prior litigation. The first of these cases arose over 25 years ago and the undersigned represented a diverse group of citizens, which included Democrats, Republicans, and independents, who challenged the South Carolina House legislative reapportionment plan. Supporters of the legislatively adopted reapportionment plan included persons from both major political parties. A three-judge panel, consisting of Fourth Circuit Judge Robert Chapman and District Judges Joseph Anderson and Matthew Perry, unanimously found the challenged plan unconstitutional. *Smith v. Beasley*, 946 F. Supp. 1174 (D.S.C. 1996). The undersigned was also involved in a second round of reapportionment litigation in 2001-2002, representing then South Carolina Governor James Hodges after the State failed to adopt a reapportionment plan following the 2000 census.

The undersigned was appointed to a three-judge panel in 2011 challenging South Carolina's legislative reapportionment plan following the 2010 census. Certain parties moved to disqualify the undersigned based on alleged prior knowledge of disputed facts and that his impartiality might reasonably be questioned. The undersigned rejected the claim he had any prior knowledge of the current legislative reapportionment plan. However, the undersigned noted that the House's two key witnesses, then Speaker of the House Bobby Harrell and House Judiciary Committee Chair James Harrison, had been vigorously deposed and cross examined by the undersigned in the prior litigation. This situation persuaded the undersigned that recusal was proper under § 455(a). *Backus v. State of South Carolina*, C.A. No. 3:11-3120 (Dkt. No. 36 at 4).

With the passage now of nearly 20 years and significant turnover in the leadership of the State, such a situation no longer exists.

The Movants contend that the undersigned has "personal knowledge of disputed evidentiary facts," making recusal mandatory under § 455(b)(1). They do not, however, identify these disputed facts. The undersigned's last involvement with the factual background of legislative reapportionment is two decades old. Every reapportionment plan involves a unique set of maps, census data, and competing interests. The undersigned, like all members of the panel, will learn the relevant facts as the case unfolds. The undersigned's prior experience in litigation 20 or 25 years ago will provide no personal knowledge of disputed evidentiary facts, making recusal under § 455(b)(1) wholly without merit.

The Movants further argue that the 2022 legislative reapportionment litigation is essentially the same "matter" as the 1995 and 2012 litigation, requiring recusal under § 455(b)(2). Any legislative reapportionment plan is a universe unto itself, driven by the specific maps, census data, legislative record, and defenses involved in the case. In the years since the undersigned's last involvement with reapportionment, South Carolina's population has grown more than 20% and has become increasingly urban, which necessarily would require significant changes in the design of the reapportionment plan. The Movants set forth in their brief what they view as common issues from the prior litigation, but the same could be said for any type of complex litigation, where there are similar legal issues and defenses. Under the Movants' reasoning, any judge who practiced previously as a lawyer in an area of law would be disqualified from sitting on any case involving the same area of law where there may have been similar issues litigated. This would turn on its head the reason why most judges are nominated in the first place—to apply their expertise, experience, and knowledge in the furtherance of the system of justice. Simply stated,

4

the present reapportionment challenge is plainly not the same matter as was litigated two decades or more ago.[1]

The Movants have referenced several instances where the undersigned has recused himself but omit highly material facts that compelled recusal. The undersigned recused himself in civil litigation involving the victims of the Emmanuel Nine tragedy after the Court consolidated all pending related cases, which led to the discovery that the law firm where the undersigned's son was an associate represented one of the parties. This ultimately led to the Court's decision to recuse. The undersigned also disqualified himself in the case of *United States v. Dong*, which involved alleged illegal campaign contributions to United States Senator Lindsey Graham by the Defendant without the senator's knowledge. The Government, on the eve of trial, disclosed that it would offer into evidence a fundraising invitation for Senator Graham to which the Defendant reportedly responded by making a contribution. The difficulty was that the list of sponsors for the event also included the undersigned, who was then a practicing attorney and supporter of the senator. Both the Government and the Defendant urged the Court not to recuse but the undersigned viewed recusal necessary under such highly unusual circumstances. C.A. No. 2:11-510 (Dkt. No. 189).

Finally, the Movants have attempted to make an innocuous comment by the undersigned regarding the organization of this compressed litigation into some type of statement of bias. The

---

[1] The late United States District Judge Matthew Perry sat on the three-judge panel in the 1996 and 2002 legislative reapportionment litigation after serving as counsel for the plaintiffs in the legislative reapportionment litigation which led to the establishment of single member districts in the South Carolina General Assembly. Under the Movants' theory, Judge Perry's service on the three judge panels would have been improper because the plans under review were the "same matter" as his prior legislative reapportionment litigation. To the contrary, Judge Perry's prior knowledge and expertise were invaluable to the panels in which he sat and there was never a suggestion that his service raised any recusal issues.

panel is charged with addressing claims involving the legislatively adopted House and Senate plans and may subsequently be required to address issues in the yet adopted congressional plan. In the initial court hearing on this matter, the undersigned stated that the panel and parties need not wait for the adoption of a congressional plan to begin work since "we've got plenty of work to do before then. . . . We can attack the House and Senate." (Dkt. No. 90-1 at 8). The Movants raise the specter of the undersigning suggesting a biased assault on the position of certain parties when the plain meaning was the need to get to work on the plans that have been adopted because of the tight time frame the Court and the parties are confronting.

The undersigned has not been reluctant to recuse when the circumstances support the need to do so. But § 455 is not designed to be a sword with which litigants can pick and choose their judges. *Bivens Gardens Office Building Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898, 913 (11th Cir. 1998). The Court finds that a reasonably informed observer would not have a basis to reasonably question the undersigned's impartiality, making recusal not required or appropriate under § 455(a).

## Conclusion

Based on the foregoing, the Movants' motion for recusal under § 455(a) and (b)(1) and (b)(2), (Dkt. No. 90), is **DENIED**.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

January 10, 2022
Charleston, South Carolina