# EXHIBIT E
**(*Backus* Disqualification Order)**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Vandroth Backus, et. al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 2:11-cv-3120-RMG-HFF-MBS |
| vs. ) | |
| ) | |
| The State of South Carolina, et. al., ) | **ORDER** |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

This matter comes before the Court, pursuant to 28 U.S.C. § 455, on Defendants' motion to recuse the undersigned as one of the three judges assigned to hear the pending challenge to the South Carolina State House, State Senate and Congressional reapportionment plans. (Dkt. No. 30). Responses to the motion to recuse have been filed by the Plaintiffs and the State Election Commission defendants. (Dkt. No. 34, 35). Defendants assert that there is a close factual and legal relationship between the present reapportionment litigation and the last round of legislative reapportionment that ended nearly a decade ago. *Colleton County Council v. McConnell*, 201 F. Supp.2d 618 (D.S.C. 2002). Defendants accurately note the undersigned served as lead counsel for Governor James Hodges, a named defendant in that 2002 litigation.[1] Defendants assert that the undersigned has "personal knowledge of material facts that might be disputed here" and "also

---

[1] The undersigned also served as lead counsel for a group of plaintiffs of all partisan persuasions who successfully challenged the State House reapportionment plan in *Smith v. Beasley*, 946 F. Supp. 1174 (D.S.C. 1996).

may be aware of non-public facts that bear on these matters . . . ." (Dkt. No. 30 at 10, 11). Defendants do not, however, identify the specific "material facts" or "non-public facts" that form the basis of their assertions.

Any motion for recusal under § 455 must be evaluated under two different standards. First, the court must determine whether there exist facts which make disqualification mandatory, such as personal bias or prejudice, personal knowledge of disputed evidentiary facts, financial interests or familial relationship to a party or counsel. 28 U.S.C. § 455(b)(1) - (5). Second, a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." § 455(a). This provision provides an objective standard and lacks a scienter requirement or any showing of actual bias. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859 (1988). The question in a potential § 455(a) recusal is whether "a reasonable well informed observer" outside the judiciary "might reasonably question [the judge's] impartiality on the basis of all of the circumstances." *United States v. DeTemple*, 162 F.3d 279, 286 (4th Cir. 1998).

The undersigned is unpersuaded that the present litigation contains "disputed evidentiary facts" in which he has "personal knowledge." While it is certainly true that the undersigned has acquired considerable exposure to previous legislative redistricting plans and the underlying evidence offered at trial in the 1996 and 2002 litigation, such information is summarized in the comprehensive court orders issued in those two cases and will be reviewed carefully by all judges sitting in this present litigation. The undersigned simply acquired the information in the course of the earlier litigation from others and has no first hand evidence that would constitute "personal knowledge". § 405(b)(1). Moreover, as indicated above, Defendants have not identified the

alleged "disputed evidentiary facts" or "non-public information" relating to the present legislative reapportionment plan that they assert is possessed by the undersigned.

The undersigned is also comfortable that he has no personal bias or prejudice that would prevent him from sitting on this case. It is well settled that prior litigation experience in the same area of law and/or involving similar issues does not form the basis to mandate the recusal of a judge. *Wessman by Wessman v. Boston School Committee*, 979 F. Supp. 915, 917 (D. Mass. 1997) ("[R]epresentation of civil rights plaintiffs–without more–does not create a reasonable doubt about one's impartiality in future civil rights cases."). Indeed, in both *Smith* and *Colleton County* reapportionment litigation, the late Senior United States District Judge Matthew Perry sat on the three judge panels following a legendary career as a civil rights attorney and lead counsel in the South Carolina legislative reapportionment litigation which led to the establishment of single member districts for the State House and State Senate.

The undersigned recognizes, however, that the question of § 455(a) recusal is broader than the issues of personal bias or the possession of personal knowledge of disputed evidentiary facts and involves the potential *appearance* of partiality and public confidence in the integrity and fairness of the judicial process. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. at 860. When Congress revised the disqualification statute in 1974, it abolished the preexisting standard known as the "duty to sit", which created a presumption against disqualification in close cases. In its stead, Congress established an objective standard for addressing recusal motions, mandating disqualification where the judge's "impartiality might reasonably be questioned." § 455(a); *United States v. DeTemple*, 162 F.3d at 286. This standard anticipates evaluation from the standpoint of "a reasonable well informed observer" outside the judiciary with knowledge of

-3-

all of the facts and circumstances. *Id.* In passing upon a recusal motion, the court must weigh the risk of parties utilizing the recusal motion for strategic advantage against the need to preserve the public's confidence in the integrity and impartiality of the judiciary. *Id.* at 287.

While the undersigned views each legislative redistricting challenge as distinct and separate and based upon the specific reapportionment plans presented to the court, Defendants' motion reflects an alternative view that the various South Carolina legislative reapportionment cases are closely linked, with similar legal and factual disputes, overlapping witnesses and common disputed legislative districts. If one were to take this latter view, the fact that a lead attorney (and for some parties an adversarial attorney) in the allegedly related litigation was now one of the members of the three judge panel might create an appearance of partiality and lessen the public's confidence in the independence and integrity of the judiciary. The undersigned is also aware that state legislative reapportionment cases constitute some of the most sensitive and intrusive litigation involving federal judicial review of state political and legislative processes, making it particularly important that all participants and the public have confidence in the fairness of the judicial process.

The undersigned finds that a reasonable well informed observer might view his prior involvement in the 2002 reapportionment litigation as lead counsel for one of the parties as creating, under the particular circumstances present here, an appearance of partiality that on balance suggests the need to recuse.[2] Therefore, Defendants' motion to recuse on the basis of

---

[2] According to Defendants' memorandum, a number of the likely witnesses in defense of the present reapportionment plan played a key role in the proposed legislative plan under consideration in the *Colleton County* case and were extensively deposed and cross examined by the undersigned in the course of the 2002 litigation. While that prior representation nearly a decade ago would have no impact on the undersigned 's personal view of this case, a reasonable

§ 455(a) (Dkt. No. 30) is hereby granted.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

December 1*Y*, 2011
Charleston, South Carolina

---

person outside the judiciary might conclude that service of the former adversarial attorney in the 2002 reapportionment litigation in the present legislative reapportionment case on the three judge panel would create an *appearance* of partiality. Under the standards of § 455(a), recusal under these highly unusual circumstances would appear to be the better course.