# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| The South Carolina State Conference ) <br> of the NAACP, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> Henry D. McMaster, in his official capacity ) <br> as the Governor of South Carolina, *et. al.*, ) <br> ) <br> Defendants. ) <br> _____ ) | C.A. No.: 3:21-cv-3302-JMC-TJH-RMG <br><br> **ORDER** |

This matter comes before the Court on the motion of Defendants James H. Lucas, Chris Murphy, and Wallace H. Jordan ("Movants") to reconsider the denial of their previous motion and renewal of their motion to recuse the undersigned as a member of the panel in the above referenced litigation. (ECF No. 102.) The Movants repeat many of the same arguments previously made and now assert that the undersigned's authorship of a book of legal history regarding events more than 70 years ago should be a basis for recusal. For the reasons set forth below, the motions are denied.

## I. LEGAL STANDARD

It is well settled that a motion to reconsider is granted in only a narrow set of circumstances: (1) to accommodate an intervening change in the controlling law; (2) to account for new evidence not previously available; (3) to correct a clear error of law; and (4) to prevent manifest injustice. *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002).

## II.     DISCUSSION

The Movants' motion attempts to relitigate issues already addressed in the previous Order, which the undersigned will not address again. The Movants have raised the following new issues:

1.     The Movants complain that the undersigned issued his decision without allowing the opposing party to file a response, which they acknowledge would have been in opposition to their motion. (ECF No. 102 at 2, n.1). It is the undersigned's practice to address and rule on motions that need no further briefing. The undersigned did not believe that further briefing was necessary in this instance or in this motion to reconsider. This is the first occasion in the undersigned's eleven years on the bench that a party has complained because his opposing party did not have the opportunity to file a brief in opposition to his motion.

2.     The Movants reference the fact that the present round of reapportionment litigation raises many of the same issues (alleged vote dilution, packing and cracking of districts, etc.) as reapportionment litigation in which the undersigned participated more than twenty (20) years ago. This argument misapprehends the nature of reapportionment litigation, whether at the state or local government level. Reapportionment cases routinely involve similar common issues and claims. This is also true in Title VII litigation, copyright litigation, and many other areas of law in which the undersigned litigated in his more than thirty (30) years on the trial bar.

The Supreme Court has made plain that each litigation plan rises and falls on the specific maps, data, legislative history, and defenses asserted, and must be examined district by district. *See Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 262-63 (2015). Each plan is a universe unto itself. The State's history of reapportionment litigation, much of which predates the 1996 and 2002 litigations the undersigned was involved in, provides general background, and is

available in the reported decisions in each of those cases. *See*, *e.g.*, *Smith v. Beasley*, 946 F. Supp. 1174, 1177-78 (D.S.C. 1996). This is public information available to all.

The Movants nonetheless argue that the undersigned's prior participation in reapportionment litigation twenty (20) years ago or more should lead to recusal. Under this theory, Associate Justice Thurgood Marshall should not have participated in civil rights cases pending before the Supreme Court since he had handled race discrimination cases as General Counsel for the NAACP Legal Defense Fund. Under this same reasoning, Associate Justice Ruth Bader Ginsburg should not have participated in cases before the Supreme Court that involved allegations of sex discrimination since she had been lead counsel in numerous landmark sex discrimination cases. In the 1996 and 2002 reapportionment litigation, the panel included United States District Judge Matthew Perry, who had been lead counsel in earlier actions regarding South Carolina legislative reapportionment.

In *Laird v. Tatum*, 409 U.S. 824 (1972), the late Chief Justice William Rehnquist denied a motion to recuse himself premised on his involvement in related issues while serving in the Department of Justice. He laid out in detail the long history of Supreme Court justices sitting on cases in which they had been involved in related subject matter prior to assuming the bench. *Id.* at 831-34. The Chief Justice explained that most judges come to the bench in middle age and it "would [not] be unusual" to have some prior involvement in subject matters that would come before the Court. He stated this was not evidence of a lack of qualification or bias. *Id.* at 835. Experienced attorneys are nominated and confirmed for the federal bench for just such experience—and such prior experience is not a basis for recusal.

3.     The Movants make much of the fact that the present Speaker of the House, Defendant Lucas, was deposed by the undersigned in a prior round of reapportionment. Numerous

legislators were summoned and deposed by the multiple parties in that litigation. The undersigned has no recollection of deposing Defendant Lucas, although with the volume of legislators deposed by the various parties, it would not be surprising that he was. The Movants acknowledge they have not even been able to locate his deposition. At the time of the 2001-2002 reapportionment round, Defendant Lucas was serving his second term in the House and was not a major player in the litigation. Taking Defendant Lucas' deposition twenty (20) years ago does not form a basis for recusal.

4.     The Movants argue that the undersigned's authorship of *Unexampled Courage: The Blinding of Sgt. Isaac Woodard and the Awakening of President Harry Truman and Judge J. Waties Waring* should be a basis for recusal because the undersigned has "been a chronicler of South Carolina's history of racial discrimination." (ECF No. 102 at 6 n. 7). *Unexampled Courage* recounts a 1946 trial before United States District Judge J. Waties Waring which heavily influenced his later dissent in a three-judge panel decision in *Briggs v. Elliott*, 98 F. Supp. 529, 538-48 (E.D.S.C. 1951), finding that government mandated racial segregation was *per se* unconstitutional. Three years later, Judge Waring's reasoning and language became the central holding of *Brown v. Board of Education*, the most important case in American history.

The Movants note that the undersigned also has given speeches regarding *Unexampled Courage*. This is certainly true. The undersigned has spoken about this historical topic at numerous meetings, including multiple federal circuit court conferences, the American Bar Association, the Truman Presidential Library, and the South Carolina Bar Association annual meeting. Talks have also been delivered on this topic to law students across the country, including Harvard Law School, Duke Law School, and the University of South Carolina School of Law.

The Movants also note that the undersigned has earned royalties from the sale of *Unexampled Courage*. The Guide to Judicial Policy explicitly authorizes a sitting federal judge to earn royalty income from the sale of books. Volume 2C, Ch. 10 § 1020.25(b)(5). Multiple members of the Supreme Court have published books in recent years and have earned royalty income, including the late Associate Justice Antonin Scalia and current Associate Justices Stephen Breyer and Sonia Sotomayor. One of the outstanding books of American legal history, *In the Matter of Color: Race and the American Legal Process*, was authored by Judge A. Leon Higginbotham, Jr. while he was a member of the Third Circuit Court of Appeals. Judge Higginbotham's authorship of this classic work certainly did not disqualify him from sitting on cases involving alleged racial discrimination.

### III.   CONCLUSION

The Movants' motion to reconsider does not satisfy any of the narrow circumstances where such a motion should be granted. The motion to reconsider and renewed motion to disqualify (ECF No. 102) are **DENIED**.

**AND IT IS SO ORDERED.**

> s/Richard Mark Gergel
> Richard Mark Gergel
> United States District Judge

January 19, 2022
Charleston, South Carolina