# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>        Plaintiffs,<br><br>        v.<br><br>HENRY D. MCMASTER, in his official capacity as Governor of South Carolina; THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,<br><br>        Defendants. | **Case No. 3-21-cv-03302-JMC-TJH-RMG**<br><br>**THREE-JUDGE PANEL**<br><br>**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INFORMATION REQUESTED FROM HOUSE DEFENDANTS** |

# INTRODUCTION

In response to Plaintiffs' First Request for Production of Documents and Plaintiffs' First Set of Interrogatories to Defendants James H. Lucas (in his official capacity as Speaker of the South Carolina House of Representatives), Chris Murphy (in his official capacity as Chairman of the South Carolina House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee) (collectively, the "House Defendants"), House Defendants have failed to produce responsive documents and information beyond publicly available materials, such as legislative transcripts, website archives, and legislative manuals.  Although such documents partially respond to Plaintiffs' requests, House Defendants object to producing other discoverable documents and information that are highly relevant and uniquely probative of legislative intent and motivation on the grounds that they are protected by legislative privilege and/or immunity.  During a February 1, 2022 meet-and-confer telephone conference, House Defendants refused to produce non-public materials essential to this case on the grounds of legislative privilege.  House Defendants also stated they could provide a preliminary privilege log by Friday, February 4, 2022, but this date is too late—and their blanket refusal to produce non-public documents at the meet-and-confer makes waiting for a privilege log at best fruitless and at worse prejudicial.  Depositions of House witnesses had been set to begin on Friday, February 4, but cannot meaningfully proceed until this issue is resolved, as it is clear that House Defendants would object to key questions on the basis of legislative privilege. Counsel for Plaintiffs has consulted with counsel for House Defendants pursuant to Local Rule 7.02, and they are unable to resolve their differences without a motion.

Plaintiffs challenge South Carolina's House Bill 4493 ("H. 4493") and allege that the racially gerrymandered districts it enacted into law were motivated, at least in part, by an intent

to discriminate against Black voters in violation of the U.S. Constitution. *See* Plaintiffs' Am. Compl. ¶¶ 112-167 (ECF 84); Plaintiffs' Second Am. Compl. ¶¶ 175-229; 247-254 (ECF 116-2). Plaintiffs allege such intentional racial discrimination violated the Fourteenth and Fifteenth Amendments of the U.S. Constitution. *See* Plaintiffs' Am. Compl. ¶¶ 168-173 (ECF 84); Plaintiffs' Proposed Second Am. Compl. ¶¶ 255-260 (ECF 116-2) Plaintiffs also assert that the Legislature enacted South Carolina House Districts 7, 8, 9, 11, 41, 43, 51, 54, 55, 57, 59, 60, 63, 67, 70, 72, 73, 74, 75, 76, 77, 78, 79, 90, 91, 93, 95, 101, 105 in H. 4493 (the "Challenged Districts") using race as a predominant factor in a manner not narrowly tailored to serve a compelling state interest, including compliance with the Voting Rights Act. Thus, Plaintiffs argue, H. 4493 violates Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. *See* Plaintiffs Am. Compl. ¶¶ 160-167 (ECF 84); Plaintiffs' Proposed Second Am. Compl. ¶¶ 247-254 (ECF 116-2).

The legislators' discriminatory intent is central to Plaintiffs' claims. To resolve those, this Court will need to determine whether race was a "motivating" factor in enacting H. 4493. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1997). That requires a "sensitive inquiry into such circumstantial and direct evidence of [legislative] intent as may be available," including, among other things, the extent to which legislators knew H. 4493 would have a racially discriminatory impact and the sequence of events leading up to its enactment. *Arlington Heights*, 429 U.S. at 266. The documents and information Plaintiffs seek from Defendants relate to the circumstances surrounding the South Carolina Legislature's enactment of H. 4493 and legislators' motivation for the enactment. They are essential to resolving Plaintiffs' claims.

Despite the relevance of the requested documents and information and Plaintiffs' need for them, House Defendants have objected to Plaintiffs' requests, claiming that they are immune from production of nearly all documents, communications, and information in the custody of legislators and their staff. Specifically, in response to Plaintiffs' First Request for Production and First Set of Interrogatories, House Defendants objected on the basis of legislative privilege 14 times. *See* Exhibit 1, House Defs.' Response to Pls.' First Request for Production of Documents, dated Jan. 24, 2022) (hereinafter "RFP Responses", at RFP Response 2-3, 5-6, 11-14, 17-19; Exhibit 2, House Defs.' Responses and Objections to Pls.' First Set of Interrogatories, dated Jan. 24, 2022 (hereinafter "Interrogatory Responses", at Response to Interrogatory 2, 12, and 17. House Defendants' position would prevent the disclosure of information and documents in the custody of legislators, their staff, and other public officials that are essential to resolving the issues before the Court, thereby limiting any effective recourse.

For the foregoing reasons, and in light of this proceedings' expedited nature, Plaintiffs respectfully request that the Court enter an order holding that it is improper for House Defendants to withhold requested documents, information, or testimony on the basis of legislative privilege and directing Defendants to produce:

(1)     All documents responsive to Plaintiffs' requests for production;

(2)     All information responsive to Plaintiffs' interrogatories; and

(3)     A privilege log identifying documents which House Defendants refuse to produce based on other privileges, such as attorney/client privilege or work product doctrine and the specific grounds for that privilege, with sufficient factual information about the documents that Plaintiffs and the Court can make a meaningful assessment of the strength of the privilege claim.

## BACKGROUND

On January 7, 2022, Plaintiffs served a request for production of documents and first set of interrogatories on House Defendants, directed to documents and information in the custody of members of the South Carolina House Legislature and relevant to Plaintiffs' intentional discrimination claims. *See, e.g.*, Pls.' First Request for Production of Documents to House Defs. ("RFPs") and Pls. First Set of Interrogatories to Defs. ("Interrogatories"). The RFPs request documents available to legislators and the circumstances surrounding the passage of H. 4493. For example, Plaintiffs request: documents and communications between legislative Defendants, members of the South Carolina General Assembly and their staff or employees, and organizations and third parties related to H. 4493, Predecessor Maps, and redistricting in South Carolina, *see* RFPs 1 and 17; analysis, maps, memorandum, expert reports or analyses concerning the drawing of the districts adopted in H. 4493, Predecessor Maps, and redistricting in South Carolina, *see* RFPs 1 and 3; documents and communications concerning the rationale(s) and purpose(s) behind the Challenged Districts and the Districts Bordering the Challenged Districts adopted in H. 4493 and any Predecessor Maps, *see* RFP 11; and documents and communications between House Defendants and other individuals, including members of the South Carolina General Assembly and their staff or employees concerning the Map Room, *see* RFP 18. Likewise, the Interrogatories request information related to the process of drawing and adopting maps in H. 4493. For example, Plaintiffs request that House Defendants "describe the process for how information and proposed maps and amendments to maps adopted in H. 4493 and Predecessor Maps were conveyed to You in the Map Room." *See* Interrogatory 12. Interrogatory 17 asks House Defendants to "[i]dentify any racially polarized voting analysis conducted by You and any persons who conducted it."

On January 24, 2022, House Defendants served written responses to those requests and interrogatories. *See* RFP Responses; Interrogatory Responses. Defendants' written responses lodged a common objection to 14 of Plaintiffs' requests and interrogatories: "House Defendants object to the extent this Request seeks the production of documents or information that is not subject to disclosure under Fed. R. Civ. P. 26(b) and/or is protected by legislative privilege, the attorney/client privilege, or the work-product doctrine."[1] *See, e.g.*, RFP Response 11. In their general objections to the RFPs and Interrogatories, Defendants object to Plaintiffs' RFPs and Interrogatories "to the extent that they seek information protected from disclosure by applicable privilege or protection, including without limitation, the legislative privilege or immunity, the attorney/client privilege, and/or the work-product doctrine." *See* RFP Responses at p. 3; Interrogatory Response at p. 3. Despite their objection, House Defendants have yet to provide a privilege log or otherwise specify the documents and information that they are withholding based on their assertion of legislative privilege. House Defendants have provided thousands of pages of public information, which is partially responsive to Plaintiffs' RFPs, but none of the documents provided address the key issue in this dispute.

On February 1, 2022, the parties held a meet-and-confer telephone conference to discuss these issues. During that call, House Defendants stated that they are asserting legislative privilege over (1) all non-public documents, communications, information, and analyses within the possession or knowledge of house legislators and their staff concerning drawn maps; (2) all non-public documents, information, and communications between legislators and their staff regarding the process for drawing maps and the districts adopted in H. 4493; and (3) all non-

---

[1] *See* Exhibit 1, House Defs.' RFP Responses at RFP 2, 3, 5, 6, 11, 12, 13, 14, 17, 18; Exhibit 2, House Defs.' Interrogatory Responses at Interrogatory 1, 2, 12, and 17.

public documentation, information, and communications between legislators and their staff concerning the Map Room.[2] Moreover, House Defendants stated that their position is that the privilege covers all documents, information, and communications exchanged throughout the entire redistricting process, from its inception to the adoption of H. 4493.[3]

During the February 1, 2022, meet-and-confer House Defendants stated that they could produce a preliminary privilege log identifying and describing the nature of the withheld documents, communications or information by Friday, February 4, 2022. This date is too late. Plaintiffs were scheduled to begin depositions of House witnesses on Friday, February 4, 2022. Plaintiffs anticipate that House Defendants will withhold information during the depositions on the basis of legislative privilege; thus, the parties need resolution of this matter before depositions of House Defendants and House witnesses can meaningfully begin. Without a privilege log, which Plaintiffs submit should have been included with House Defendants' RFP Responses and Interrogatory Responses, in which they first asserted legislative and other privileges, Plaintiffs (and the Court) cannot know what documents and information Defendants

---

[2] Plaintiffs note that during the February 1, 2022 meet-and-confer, House Defendants reiterated their objection to Plaintiffs' "overbroad" RFPs. The parties are working to resolve the matter of overbreadth. Plaintiffs' motion to compel production and information addresses only House Defendants' objection and unwillingness to produce documents and information on the basis of legislative privilege. As discussed below, because House Defendants have failed to produce a privilege log, Plaintiffs cannot be certain whether documents were withheld based on House Defendants' assertion of privilege and or whether the responses were limited due to assertions of overbreadth.

[3] During the February 1, 2022 meet-and-confer, House Defendants stated that they would not assert legislative privilege over documents and communications between legislators and third parties, *see, e.g.*, RFPs 17 and 19. Thus, it is Plaintiffs' understanding that House Defendants will produce any and all such documents, and for that reason this motion does not address the fact that there is no applicable "legislative privilege" that shields from production documents that have been disclosed by a legislator to a third party non-legislator, even if those documents were created by the legislator.

are withholding on the basis of legislative privilege.  Thus, Plaintiffs base this Motion to Compel on House Defendants' position as stated in the February 1 meet-and-confer.

In short, House Defendants have made clear they are unwilling to produce key documents from legislators and legislative staff.  Despite Plaintiffs' best efforts, the parties could not resolve their disagreements regarding House Defendants' refusal to produce documents responsive to the RFPs, requiring the Court's intervention.

## **ARGUMENT**

The documents and information requested in Plaintiffs' RFPs and Interrogatories are relevant, discoverable and highly probative to the constitutional claims at issue in this litigation. In their RFP Responses, House Defendants assert that requested documents or information is "protected by legislative privilege, the attorney/client privilege, or the work-product doctrine" without bothering to provide a distinction of further detail on the basis for their objection.  *See, e.g.*, RFP Response 14.  In their Interrogatory Responses, House Defendants assert that "some or most" of the requested information "is subject to legislative immunity or privilege."  *See, e.g.*, Interrogatory Response 12.  The two doctrines—state legislative privilege and state legislative immunity—are distinct in their scope, however, and must be addressed separately.

Contrary to House Defendants' assertions, the principle of "legislative immunity" does not shield them from providing testimony regarding the process of redistricting in South Carolina and the adoption of H. 4493.  Rather, legislative immunity generally refers to a protection for legislators from civil liability.  *See Tenney v. Brandhove*, 341 U.S. 367, 378-79 (1951) (finding that Congress did not intend for 42 U.S.C. §§ 1983 and 1985 to override the immunity from suit that state legislators hold at common law).  But even if state legislators might be immune from civil lawsuits seeking to hold them liable for legislative acts, they do not have an absolute privilege to refuse to provide relevant evidence in a civil case.

The legislative privilege is qualified. It can be overcome where important constitutional issues are at stake and other factors (*see infra*) are met. A redistricting case such as that now before the Court is a "'particularly appropriate circumstance' for qualifying the privilege claimed by state legislators since judicial inquiry into legislative intent is specifically contemplated as part of the resolution of the core issue' in the case." *Benisek v. Lamone*, 263 F. Supp. 3d 551, 553 (D. Md. 2017) (citing *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 337 (E.D. Va. 2015) (three-judge panel). At that point, "the legislative privilege becomes qualified" so it does not "stand[] as a barrier to the vindication of important federal interests and insulate[] against effective redress of public rights." *Id.*; *see also Harris*, 993 F. Supp. 2d at 1070 ("State legislators do not have an absolute right to refuse deposition or discovery requests in connection with their legislative acts."); *Rodriguez*, 280 F. Supp. 2d at 95 ("[N]otwithstanding their immunity from suit, legislators may, at times, be called upon to produce documents or testify at depositions."); *supra* note 1. In this particular challenge, the qualified privilege should, on balance, yield to Plaintiffs' need for the documents.

## I.  LEGISLATIVE PRIVILEGE IS OVERCOME IN THIS CASE

Because the legislative privilege is qualified in civil cases, the key question for the Court is whether the privilege "must yield." *United States v. Gillock*, 445 U.S. 360, 373 (1980) (holding no legislative privilege for state legislators in federal criminal prosecution based on balancing of interests). Courts have been clear that "the argument that 'legislative privilege is an impenetrable shield that completely insulates any disclosure of documents' is not tenable." *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 665 (E.D. Va. 2014) (quoting *E.E.O.C. v. Wash. Suburban Sanitary Comm'n*, 666 F. Supp. 2d 526, 532 (D.Md.2009), *aff'd* 631 F.3d 174 (4th Cir.2011)). Accordingly, courts in the Fourth Circuit apply a "qualified privilege analysis in

9

the redistricting context." *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 337 (E.D. Va. 2015). As part of that qualified analysis, in the face of a defendant's broad invocation of the legislative privilege, courts apply the five factor analysis as laid out in *Bethune-Hill*. *See, e.g.*, *Church v. Montgomery Cnty.*, 335 F. Supp. 3d 758, 767 (D. Md. 2018). The "five-factor balancing test imported from deliberative process privilege case law" examines "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of government in the litigation;' and (v) the purposes of the privilege." *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 337-38 (E.D. Va. 2015). A party asserting the legislative privilege "has the burden of demonstrating its applicability." *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir. 2011).

Here, all five factors compel disclosure of the evidence that Plaintiffs seek: the evidence sought is highly relevant; no other evidence would be as probative of unlawful motive as the evidence sought; the federal constitutional issues in this litigation are of the utmost seriousness; government officials played a direct, central, and essential role in the constitutional violations here; and compelling disclosure of the evidence sought will not conflict with the purposes of the privilege. The motion to compel accordingly should be granted.

### A.     The evidence sought is highly relevant to Plaintiffs' claims.

Plaintiffs allege that the Legislature drew new state House districts following the 2020 decennial census that intentionally discriminated against communities of color and communities of interest in violation of the First and Fourteenth Amendments. As a result, "[t]he state government's role in the events giving rise to the present litigation is central to the Plaintiffs' claims." *Page*, 15 F. Supp. 3d at 666. This is not a case where "the government tries to prevent its decision-making process from being swept up unnecessarily into the public domain," but,

rather, "the [legislature's] decision making process itself *is* the case." *Bethune-Hill*, 114 F. Supp. 3d at 339 (quoting *Comm. for a Fair and Balance Map v. Ill. State Bd. of Elections*, 2011 WL 4837508, at *8 (N.D. Ill. Oct. 12, 2011)).

Therefore, evidence regarding the intent and motive of the officials and legislators who drafted and approved the challenged state House districts go to the very heart of this case. *Page*, 15 F. Supp. 3d at 666 (noting that in redistricting cases, "[t]he subjective decision-making process of the legislature is at the core of the" claim); *Baldus v. Brennan*, No. 11–CV–562, 2011 WL 6122542, at *1 (E.D. Wis. 2011) ("[P]roof of a legislative body's discriminatory intent is relevant and extremely important as direct evidence in" redistricting cases.). "[A]ny documents containing the opinions and subjective beliefs of legislators or their key advisors would be relevant to the broader inquiry into legislative intent and the possibility of racially motivated decisions that were not adequately tailored to a compelling government interest." *Page*, 15 F. Supp. 3d at 666. Even "purely factual material can shed light on what factors and considerations were foremost in the legislature's mind while the legislation was pending." *Id.* Documents from the Legislators could be direct evidence of their intent to pack and crack Black-majority districts during the redistricting process in order to prevent BVAPs from electing Black and Black-preferred candidates. *See Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 279 (2015); *see also Harris v. Arizona Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1070 (D. Ariz. 2014), *aff'd* 136 S. Ct. 1301 (2016) ("[W]hat motivated the [Legislature] . . . is at the heart of this litigation" and "evidence bearing on what justifies [its actions] is highly relevant."). Accordingly, because the documents from House Defendants have the potential of being highly relevant, this factor weighs in favor of disclosure.

**B.     No other evidence would be as probative of unlawful motive as the evidence sought.**

It comes as no surprise that government officials, "seldom, if ever, announce on the record that they are pursuing a particular course of action because of [a] desire to discriminate." *Smith v. Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982). Because of this immutable fact of the legislative process, "the limited availability of other evidence weighs in favor of the plaintiffs, especially since direct evidence, as well as circumstantial evidence, may be used to prove the element of intent." *Benisek v. Lamone*, 241 F. Supp. 3d 566, 575 (D. Md. 2017) (three-judge panel) *aff'd* 263 F. Supp. 3d 551 (D. Md. 217).

Although Plaintiffs will certainly have access to, and submit into evidence, "special interest group position papers, press releases, newspaper articles, census reports, registered voter data and election returns," *Bethune-Hill*, 114 F. Supp. 3d at 341 (citation and internal quotations omitted), that does not negate Plaintiffs' need for legislative materials because "such evidence may provide only part of the story," *Flavors v. Cuomo*, 285 F.R.D. 187, 219 (E.D.N.Y. 2012). Although this "evidence is valuable, it is not a substitute for the ability to . . . obtain direct evidence of motive and intent, thus avoiding the potential ambiguity of circumstantial evidence." *Benisek*, 241 F. Supp. 3d at 576. Therefore, the existence of other evidence in the public domain does not tip the second factor towards nondisclosure. This is because plaintiffs in redistricting cases "need not confine their proof to circumstantial evidence" because "[t]he real proof is what was in the contemporaneous record in the redistricting process." *Bethune-Hill*, 114 F. Supp. 3d at 341 (internal quotation marks omitted). The second factor weighs in favor of disclosure.

**C.     The federal constitutional issues in this litigation are of the utmost seriousness.**

Courts in the Fourth Circuit have been clear that distorting district lines to dilute the voting power of minority voters is a grave threat to our democracy. "In a republican government, there is no more foundational right than meaningful representation. A legislature

reflective of the democratic body is the root from which all rights and laws derive." *Bethune-Hill*, 114 F. Supp. 3d at 341. "[W]hen a State draws the boundaries of its electoral districts so as to dilute the votes of certain of its citizens, the practice imposes a burden on those citizens' right to 'have an equally effective voice in the election' of a legislator to represent them." *Shapiro v. McManus*, 203 F. Supp. 3d 579, 595 (D. Md. 2016) (quoting *Reynolds v. Sims*, 377 U.S. 533, 565 (1964)). Given the serious threats that redistricting imposes on a citizen's right to vote, the third factor strongly weighs in favor of disclosure. *See, e.g.*, *Flavors*, 285 F.R.D. at 219 (observing that the third factor is "intended to give due consideration to some of the most invidious forms of government malfeasance"); *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *8 ("There can be little doubt that plaintiffs' allegations are serious. Plaintiffs raise profound questions about the legitimacy of the redistricting process[.]").

> **D.  Government officials played a direct, central, and essential role in the constitutional violations here.**

The Legislature had complete and total control over the redistricting process that produced the racially gerrymandered state House districts. In similar circumstances, Fourth Circuit courts have held that where the legislature's subjective "'decision-making process remains at the core of the plaintiffs' claims," "the legislature's direct role in the litigation supports overcoming the privilege." *Bethune-Hill*, 114 F. Supp. 3d at 341 (quoting *Flavors*, 285 F.R.D. at 220). As a result of the House Defendants' critical role in drafting the state House districts, this factor weighs in favor of disclosure.

> **E.  Compelling disclosure of the evidence sought will not conflict with the purposes of the privilege.**

Finally, the final factor also favors disclosure. "[T]he threat to [the legislative-independence] interest is substantially lowered when individual legislators are not subject to liability." *Bethune-Hill*, 144 F. Supp. 3d at 342; *see Gillock*, 445 U.S. at 372 (suggesting that

legislative independence is only implicated in a "civil action brought by a private plaintiff to vindicate private rights"). Even though "individual legislators are the targets of litigation . . . the [legislators] have no personal stake in the litigation and face no direct adverse consequence if the plaintiffs prevail." *Benisek*, 241 F. Supp. 3d at 576. Plaintiffs brought this suit "not against individual state legislators but against the State's agents who are, in their official capacity, responsible for the electoral process in [South Carolina], and the adverse impact on the individual legislators is minimal." *Id.*

The legislators will likely argue that requiring them to produce legislative documents will impede their legislative deliberations. But the Supreme Court has already dismissed these concerns: even though the denial of the legislative privilege "may have some minimal impact on the exercise of his legislative function," any harms would be offset by the "impair[ment of] the legitimate interest of the Federal Government" to see federal constitutional rights vindicated. *Gillock*, 445 U.S. at 373; *see also United States v. Irvin*, 127 F.R.D. 169, 174 (C.D. Cal. 1989) ("This Court is not convinced that the occasional instance in which disclosure may be ordered in a civil context will add measurably to the inhibitions already attending legislative deliberations."); *Baldus*, 2011 WL 6122542, at *2 ("Allowing the plaintiffs access to these items may have some minimal future 'chilling effect' on the Legislature, but that fact is outweighed by the highly relevant and potentially unique nature of the evidence."). Therefore, because the individual legislators will face no harm as a result of this suit, this factor weighs in favor of disclosure.

\* \* \* \*

"For better or worse, lawsuits concerning constitutional matters such as equal protection, the First Amendment, and substantive due process all require judicial inquiry of the legislator's

motive." *Carver v. Foerster*, 102 F.3d 96, 104 (3d Cir. 1996). In such cases, "the balance of interests calls for the legislative privilege to yield." *Bethune-Hill*, 114 F. Supp. 3d at 343.

In sum, all of the *Bethune-Hill* factors for determining the validity of a House Defendants' legislative privilege assertion weigh in favor of disclosure of the requested documents and information. This is due to the nature of the suit and the type of information needed to prove Plaintiffs' constitutional claims. Thus, the Court should grant Plaintiffs' motion to compel production of requested documents and information and reject House Defendants' legislative privilege assertions.

## II. EVEN IF HOUSE DEFENDANTS PROVIDE A PRIVILGE LOG, THE COURT SHOULD REJECT THEIR ASSERTIONS OF LEGISLATIVE PRIVILEGE

House Defendants cannot assert blanket legislative privilege for documents and information in the custody of House members and their legislative staff without making any effort to identify any individual documents being withheld on that basis. Federal Rule of Civil Procedure 45(d)(2) requires that privilege claims be stated with clarity and specificity: "A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Moreover, legislative privilege is individually held, and must be waived or asserted by each individual legislator. *See Perez v. Perry*, No. 5:011-cv-00360, 2014 WL 106927, at *1 (W.D. Tex. Jan. 8, 2014) ("The legislative privilege is a personal one and may be waived or asserted by each

15

individual legislator." (*citing ACORN v. Cnty. of Nassau*, No. CV 05-2301, 2007 WL 2815810, at *2 (E.D.N.Y. Sept. 25, 2007)).

Even if House Defendants do provide a preliminary privilege log by Friday, February 4, 2022, the legislative privilege portion of any log would, at this point, be practically moot and stand only to delay resolution of this matter. Moreover, "[w]here, as here, challenges have been lodged against the withholding of allegedly privileged documents, the production of a privilege log that satisfies the requirements of the Federal and Local Rules is insufficient, standing alone, to defeat those challenges." *Favors v. Cuomo*, 285 F.R.D. 187, 221-22 (E.D.N.Y. 2012). House Defendants have confirmed their refusal to provide (1) any non-public document, communication, information, or analysis within the possession or knowledge of house legislators and their staff concerning drawn maps; (2) any non-public document, information, or communication between legislators and their staff regarding the process for drawing maps and the districts adopted in H. 4493; and (3) any non-public document, information, or communication between legislators and their staff concerning the Map Room, on the basis of legislative privilege. For the reasons provided above, the Court should reject this assertion.

In light of the expedited timeline of this proceeding, Plaintiffs respectfully request that the Court grant this motion finding it improper for House Defendants to withhold documents, information, and testimony based on legislative privilege, rather than wait for House Defendants to complete a privilege log that should have accompanied their RFP and Interrogatory Responses. The Court should compel House Defendants to produce all requested materials in their possession (and that of their staff) that they are currently withholding on the basis of legislative privilege. As for the remaining documents that House Defendants are withholding based on other privileges, including attorney/client privilege and the work product doctrine, the

16

Court should order House Defendants to provide a detailed log with sufficiently descriptive information about the document that Plaintiffs and the Court can make a meaningful assessment of the strength of the privilege claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order that (1) holds it is improper for House Defendants to withhold requested documents, information, or testimony on the basis of legislative privilege alone and (2) directs House Defendants to produce:

(i) All documents responsive to Plaintiffs' requests for production;

(ii) All information responsive to Plaintiffs' interrogatories; and

(iii) A privilege log identifying documents which House Defendants refuse to produce based on other privileges, such as attorney/client privilege or work product doctrine and the specific grounds for that privilege, with sufficient factual information about the documents that Plaintiffs and the Court can make a meaningful assessment of the strength of the privilege claim.

Dated: February 2, 2022                    Respectfully submitted,

Leah C. Aden**                             /s/ Christopher J. Bryant
Stuart Naifeh**                            Christopher J. Bryant, Fed. ID 12538
Raymond Audain**                           Boroughs Bryant, LLC
John S. Cusick**                           1122 Lady St., Ste. 208
NAACP Legal Defense & Educational Fund,    Columbia, SC 29201
Inc.                                       Tel.: (843) 779-5444
40 Rector St, 5th Fl.                      chris@boroughsbryant.com
NY, NY 10006
Tel.: (212) 965-7715                       Somil B. Trivedi**
laden@naacpldf.org                         Patricia Yan**
                                           American Civil Liberties Union
Antonio L. Ingram II*                      Foundation
NAACP Legal Defense & Educational Fund,    915 15th St., NW
Inc.                                       Washington, DC 20005
700 14th St, Ste. 600                      Tel.: (202) 457-0800

Washington, D.C. 20005
Tel.: (202) 682-1300
aingram@naacpldf.org

Samantha Osaki**
Adriel I. Cepeda Derieux **
Sophia Lin Lakin *
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
sosaki@aclu.org

John A. Freedman*
Elisabeth S. Theodore*
Gina M. Colarusso*
John "Jay" B. Swanson*
John M. Hindley*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel: (202) 942-5000

Jeffrey A. Fuisz*
Paula Ramer*
Jonathan I. Levine*
Theresa M. House*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000

Sarah Gryll**
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300

strivedi@aclu.org
pyan@aclu.org

Allen Chaney, Fed. ID 13181
American Civil Liberties Union
of South Carolina
Charleston, SC 29413-0998
Tel.: (843) 282-7953
Fax: (843) 720-1428
achaney@aclusc.org

Janette M. Louard*
Anthony P. Ashton*
Anna Kathryn Barnes*
NAACP OFFICE OF THE GENERAL COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org
aashton@naacpnet.org
abarnes@naacpnet.org

*Attorneys for Plaintiffs*

* Motion for admission *Pro Hac Vice* forthcoming
** Admitted *Pro Hac Vice*