IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, <br><br> and <br><br> TAIWAN SCOTT, on behalf of himself and all other similarly situated persons, <br><br>       *Plaintiffs*, <br>  v. <br><br> HENRY D. MCMASTER, in his official capacity as Governor of South Carolina; HARVEY PEELER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, JOANNE DAY, CLIFFORD J. ELDER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina State Election Commission, <br><br>       *Defendants*. | Case No.: 3:21-cv-3302-JMC-TJH-RMG <br><br><br><br><br><br><br> **GOVERNOR MCMASTER'S REPLY IN SUPPORT OF MOTION TO DISMISS** |

   Defendant Henry D. McMaster, in his official capacity as Governor of South Carolina ("Governor McMaster" or "Governor"), by and through the undersigned counsel, submits this Reply in Support of his Motion to Dismiss (ECF No. 94).

**INTRODUCTION**

Before getting to what Plaintiffs argue in their Response to the Motion to Dismiss, it's first worth noting what they concede. They have explicitly disavowed their First Amendment claim, *see* ECF No. 125, at 3, and they offer no opposition whatsoever in response to the Governor's arguments on legislative immunity, standing, or *Doyle v. Hogan*, 1 F.4th 249 (4th Cir. 2021), and *Ex parte Young*, 209 U.S. 123 (1908). When a plaintiff fails to respond to an argument raised in a motion to dismiss, "the Court can only assume that Plaintiff concedes the argument." *Campbell v. Rite Aid Corp.*, No. 7:13-CV-02638-BHH, 2014 WL 3868008, at *2 (D.S.C. Aug. 5, 2014); *see also Oliver v. Baity*, 208 F. Supp. 3d 681, 690 (M.D.N.C. 2016) ("Courts have recognized that a party's failure to address an issue in its opposition brief concedes the issue." (collecting cases)).

Rather than attempting to counter the Governor's arguments, Plaintiffs instead seek shelter in a prudential-mootness theory. This effort to avoid a ruling on the merits of the Governor's Motion to Dismiss fails for two reasons. First, the doctrine of prudential mootness is not compatible with current Supreme Court case law. Second, even if the doctrine had some life left in it, Plaintiffs are wrong that it applies here.

**ARGUMENT**

**I.     Mootness is now a constitutional—not a prudential—doctrine.**

Tellingly, Plaintiffs can muster nothing more than a 22-year-old district court case to define prudential mootness. *See* ECF No. 125, at 2 (citing *Smyth v. Carter*, 88 F. Supp. 2d 567, 571 (W.D. Va. 2000)). Looking a little deeper into this outdated legal doctrine, however, quickly reveals its conflict with current, and controlling, Supreme Court and Circuit precedent.

*Smyth* cited two Fourth Circuit cases from the 1980s to define prudential mootness. *See* 88 F. Supp. 2d at 571 (citing *S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir. 1987); *United States v.*

*(Under Seal)*, 757 F.2d 600, 602 (4th Cir. 1985)). Both of those cases, in turn, focused heavily on the fact that the court "lack[ed] the ability to give any effective and suitable remedy" based on factual developments. *Under Seal*, 757 F.2d at 603; *see also S-1*, 832 F.2d at 297 ("the specific relief sought here no longer has sufficient utility to justify decision of this case on the merits"). *Under Seal* cited no binding precedent on that point, and *S-1* relied on a Supreme Court decision that a court may decline to award declaratory or injunctive relief even when a case is not moot. *See S-1*, 832 F.2d at 297 (citing *United States v. W. T. Grant Co.*, 345 U.S. 629 (1953)). That is a well-established rule distinct from mootness. *See, e.g.*, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites"). And it is hardly the same as the concept of prudential mootness that Plaintiffs push here.

Moreover, whatever older cases may have said about mootness, more recent cases have recognized that that "mootness goes to the heart of the Article III jurisdiction of the courts." *Castendet-Lewis v. Sessions*, 855 F.3d 253, 260 (4th Cir. 2017). Indeed, as the Supreme Court now frames mootness, a critical question for whether a constitutionally cognizable controversy remains is whether the plaintiff has "a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Or, as the Fourth Circuit has put it, the jurisdictional inquiry is whether the court "has effective relief to offer." *Williams v. Ozmint*, 716 F.3d 801, 809 (4th Cir. 2013). Thus, mootness is now an Article III inquiry. *Compare Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("the doctrine of mootness can be described as the doctrine of standing set in a time frame" (internal quotation mark omitted)), *with Uzuegbunam*

*v. Preczewski*, 141 S. Ct. 792, 797 (2021) (discussing the "the irreducible constitutional minimum of Article III standing" (internal quotation mark omitted)).

When a case is not moot and "a federal court has jurisdiction, [that court] also has a virtually unflagging obligation to exercise that authority." *Mata v. Lynch*, 576 U.S. 143, 150 (2015) (cleaned up). Here, neither this case nor the Governor's Motion is moot. The First Amended Complaint is still the operative complaint, and the First Amended Complaint asserts claims against the Governor. *See* ECF No. 84. Moreover, Plaintiffs' positions up until now have insisted the Governor is necessary for them to obtain relief, *see, e.g.*, ECF No. 115-1, and even now in their Response to the Motion to Dismiss, they specifically leave open the possibility that the Governor may be have to be subject to a court order for them to obtain the relief they seek, *see* ECF No. 125, at 4. Because this case is not moot, the Court should decide—and grant—the Governor's Motion to Dismiss.

**II.      Prudential mootness does not apply in this case.**

Even assuming prudential mootness is a viable doctrine, it does not apply here. None of the three factors Plaintiffs identify supports applying that doctrine in this case.

    **A.      Effective relief to the Governor is available.**

Plaintiffs' argument that effective relief is not available presupposes that the Court will grant their opposed motion for leave to amend (again) the complaint (so that they can quietly drop the Governor as a defendant—at least for now), such that they can continue to avoid having to address the deficiencies and inconsistencies in their position that the Governor has repeatedly called to the Court's attention. But again, the First Amended Complaint remains the operative pleading, and that document alleges claims against the Governor. *See* ECF No. 84. A live controversy therefore exists, meaning Plaintiffs' worries about an advisory opinion are misplaced.

4

To be sure, there is an effective remedy available in this case: dismissal of the Governor with prejudice. (There's a second remedy too: summary judgment in the Governor's favor. *See* ECF No. 115.) An order granting the Motion to Dismiss is not equivalent to a dismissal of the Governor by an amended complaint. The Governor is a frequent litigation target of various public-interest groups, which are often happy to name him as a defendant to make a splash, only to later quietly admit they never had a basis to sue him in the first place. *See, e.g.*, Voluntary Dismissal, *Thomas v. Andino*, No. 3:20-cv-1552 (D.S.C. Aug. 10, 2020), ECF No. 107 (seeking to dismiss claims against Governor McMaster in the amended complaint on the day his summary judgment motion was due). *Compare* Mot. to Dismiss 7–11, *Voltz-Loomis v. McMaster*, No. 5:20-cv-1533 (D.S.C. May 8, 2020), ECF No. 36 (explaining why the Governor was not a proper party in a lawsuit demanding inmates in the South Carolina Department of Corrections be released from prison due to COVID-19), *with* Voluntary Dismissal, *Voltz-Loomis v. McMaster*, No. 5:20-cv-1533 (D.S.C. July 7, 2020), ECF No. 105 (dismissing the Governor as the lead defendant after extensive, expedited proceedings).[1] The time has come for the Court to stop letting plaintiffs get away with such litigation tactics, which only serve to distract and waste state resources.

One other troubling thing exists with Plaintiffs' argument on this front: If they are right about prudential mootness, it does not appear that there was ever a live controversy when it comes to the Governor. In deciding to stay this case, the Court recognized that Plaintiffs' claims were "not yet ripe" when this case was filed. ECF No. 63, at 12. The Court set a January 18 deadline to determine if the claims had "become ripe." *Id.* Yet by then (which was after Plaintiffs had already amended the Complaint once), the General Assembly was back in session. And under Plaintiffs'

---

[1] Notably, both of these two cases—by way of illustration rather than an exhaustive compilation—involve some combination of the same parties, lawyers, law firms, or entities as those in this case.

latest theory of why they named the Governor as a defendant (that is, so that he could call the General Assembly into extra session), their claims against the Governor had become moot by January 18. Thus, even as alleged, Plaintiffs never had a ripe claim against the Governor. Despite that and despite his invocations of legislative immunity, the Governor has had to engage in discovery while Plaintiffs have avoided responding to any of the arguments the Governor has raised with successive extension motions. Such a result is antithetical not only to the doctrine of legislative immunity but also to our judicial system. *Cf.* Fed. R. Civ. P. 1 (rules are designed "to secure the just, speedy, and inexpensive determination of every action").

### B.     The dispositive issues are not difficult.

None of the issues in the Governor's Motion to Dismiss is difficult, and Plaintiffs' failure to drum up any response to those issues confirms the point. First, legislative immunity is easy because there is U.S. Supreme Court and S.C. Supreme Court caselaw directly on point. *See Smiley v. Holm*, 285 U.S. 355, 372–73 (1932) (a governor's signing or vetoing of a bill constitutes part of the legislative process); *Williams v. Morris*, 320 S.C. 196, 206, 464 S.E.2d 97, 102 (1995) (state constitution "clearly envisions gubernatorial participation in the legislative process" and "require[es] the Governor's participation in enacting statutes").

Second, standing is easy because Plaintiffs have not alleged a harm traceable to the Governor or, despite asserting he is necessary to afford them the requested relief, demonstrated how an injunction against the Governor could redress any alleged harm, given his lack of a role in administering elections. *See* ECF No. 94, at 12–14; *see also* ECF No. 115, at 11–13.

Third, the "chief magistrate" argument is easy because the Fourth Circuit reaffirmed just days ago (in the context of Governor McMaster, no less) that a governor is not a proper defendant

6

simply because a plaintiff challenges the constitutionality of state law. *See Disability Rights S.C. v. McMaster*, ___ F.4th ___, No. 21-2070, 2022 WL 214094, at *3 (4th Cir. Jan. 25, 2022).

### C. Plaintiffs do not disavow seeking relief against the Governor later in this litigation.

Finally, Plaintiffs' own arguments underscore the need for the Court to resolve the Governor's Motion. On the one hand, Plaintiffs want to dismiss the Governor now, presumably because they don't have any answers to the jurisdictional issues he has raised. On the other hand, they want to leave open the possibility of the Governor being needed for relief if they succeed on their claims and constitutionally acceptable maps are not in place by the time the General Assembly adjourns in May. *See* ECF No. 125, at 4.[2] And Plaintiffs took the position in their interrogatory responses that the Governor was necessary for relief, claiming he must "be involved in the compliance and enforcement of any remedial map," to include exercising his "authority under the South Carolina Constitution to sign or veto" any "remedial map in response to a Court ruling." ECF No. 115-1, at 7. Given the condensed schedule of this case and looming election deadlines, Plaintiffs' continued refusal to state unequivocally that they will not, at any point, seek relief against the Governor makes untenable their contention that prudential considerations weigh in favor of not deciding the Governor's Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, the Court should grant Governor McMaster's Motion to Dismiss.

---

[2] Whether Plaintiffs could actually obtain this relief about calling the General Assembly into extra session is beside the point. *See* ECF No. 117, at 3 nn.2 & 3 (explaining how the Governor's power is both unreviewable and inapplicable). What matters is that Plaintiffs continue to suggest that they may seek this relief.

7

Respectfully submitted,

s/Wm. Grayson Lambert
Thomas A. Limehouse, Jr. (Fed. Bar No. 12148)
*Chief Legal Counsel*
Wm. Grayson Lambert (Fed. Bar No. 11761)
*Senior Legal Counsel*
Michael G. Shedd (Fed. Bar No. 13314)
*Deputy Legal Counsel*
OFFICE OF THE GOVERNOR
South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
(803) 734-2100
tlimehouse@governor.sc.gov
glambert@governor.sc.gov
mshedd@governor.sc.gov

Christopher E. Mills (Fed. Bar No. 13432)
SPERO LAW LLC
557 East Bay Street #22251
Charleston, South Carolina 29413
(843) 606-0640
cmills@spero.law

*Counsel for Governor McMaster*

February 4, 2022
Columbia, South Carolina