IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HENRY D. MCMASTER, *et al.*, <br><br> Defendants. | Case No.  3:21-cv-03302-JMC-TJH-RMG |

**SENATE DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND INFORMATION
<u>REQUESTED FROM HOUSE DEFENDANTS</u>**

Thomas C. Alexander, in his official capacity as President of the Senate, and Luke A. Rankin, in his official capacity as Chairman of the Senate Judiciary Committee, (collectively, the "Senate Defendants") agree with the House Defendants that the Court should deny Plaintiffs' Motion to Compel Production of Documents and Information Requested from House Defendants (ECF No. 119).  As explained below and in the House Defendants' forthcoming response, Plaintiffs have not narrowed their discovery requests or noticed a single deposition, and they failed to defeat the House Defendants' legislative privilege claims.[1]

Ten years ago during the last redistricting cycle, a three-judge panel of this Court held that South Carolina legislators and their agents enjoy an absolute legislative privilege against "questions concerning communications or deliberations involving legislators or their agents

---

[1] Plaintiffs' motion "addresses only House Defendants' objection . . . to produce documents and information on the basis of legislative privilege" and seeks a blanket and premature ruling overriding any and all of the House Defendants' legislative privilege objections to document discovery, interrogatories, and testimony. ECF No. 119 at 7 n.2, 17. Plaintiffs do not seek a ruling on defendants' overbreadth objection or on any other objection, including any objection based upon attorney-client privilege or the work product doctrine. *See id.* at 7 n.2, 16.

1

regarding their motives in enacting legislation." Order at 2, *Backus v. South Carolina*, No. 3:11-cv-03120 (D.S.C. Feb. 8, 2012) (Duffy, J.) ("Backus Order") (Ex. A); *see also* Def. McConnell's Mot. to Quash & for Limited Protective Order, *Backus v. South Carolina*, No. 3:11-cv-03120 (D.S.C. Jan. 23, 2012) (Ex. B). This Court so held in a case that—like this one—brought racial gerrymandering and intentional discrimination claims against a South Carolina redistricting plan. *See* Pls.' First Am. Compl., *Backus v. South Carolina*, No. 3:11-cv-03120 (D.S.C. Nov. 23, 2011) (Ex. C).

Judge Duffy's holding in *Backus* was correct and comports with the controlling law from the U.S. Supreme Court and the Fourth Circuit, which this Court is bound to follow. *See, e.g.*, *Ala. Leg. Black Caucus v. Ala.*, 988 F. Supp. 2d 1285, 1305–06 (D. Ala. 2013) (three-judge court) (collecting cases for the "well[-]settled" proposition that a "three-judge court" is "bound by" the precedent of the circuit in which it sits); *see also Jacobs v. Tawes*, 250 F.2d 611, 614 (4th Cir. 1957) ("The court of three judges is not a different court from the District Court, but is the District Court composed of two additional judges sitting with the single District Judge before whom the application for injunction has been made." (internal citation omitted)). Indeed, the Supreme Court and the Fourth Circuit have held that state legislators and their agents possess in civil cases a privilege against producing evidence or testimony on deliberations and communications regarding legislative activity. *See, e.g.*, *Tenney v. Brandhove*, 341 U.S. 367, 372–75 (1951); *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 180–81 (4th Cir. 2011). In civil cases such as this one, the legislative privilege possessed by state legislators and their agents is co-extensive with the constitutionally rooted privilege that members of Congress enjoy under the Speech or Debate Clause, *see Sup. Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 733 (1980); *Wash. Suburban*, 631 F.3d at 180–81, which extends to protection against compelled production of

evidence or testimony, *see, e.g.*, *Gravel v. United States*, 408 U.S. 606, 616 (1972) ("We have no doubt that Senator Gravel may not be made to answer . . . for the events that occurred at the subcommittee hearing.").

This robust protection is premised on the bedrock principle that "the exercise of legislative discretion should not be inhibited by judicial interference." *Bogan v. Scott-Harris*, 523 U.S. 44, 52 (1998). In fact, as the Fourth Circuit has observed, the "practical import" of legislative privilege "is difficult to overstate." *Wash. Suburban*, 631 F.3d at 181. Most importantly, the privilege enables legislators and those who assist them "to focus on their public duties by removing the costs and distractions attending those lawsuits." *Id.* Moreover, legislative privilege serves as a bulwark against "political wars of attrition in which [legislators'] opponents try to defeat them through litigation rather than at the ballot box." *Id.*

Accordingly, the privilege extends to protection "against compulsory evidentiary process." *Id.* (citing *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988) ("Discovery procedures can be just as intrusive" as defending litigation)). "The existence of testimonial privilege is the prevailing law in this circuit." *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996) ("[Plaintiff's] attempt to establish a prima facie case [of intentional discrimination] will have to be accomplished without the testimony of members of the Board as to their motives in abolishing [Plaintiff's] job and establishing the new job.").

Therefore, to the extent that the Court addresses the merits of Plaintiffs' Motion to Compel, it should hold that legislative privilege shields South Carolina legislators and their aides from compelled production of documents or of information or testimony "concerning communications or deliberations involving legislators or their agents regarding their motives in enacting

legislation." *Backus* Order at 2; *see also Sup. Ct. of Va.*, 446 U.S. at 733; *Tenney*, 341 U.S. at 372–75; *Wash. Suburban*, 631 F.3d at 180–81; *Burtnick*, 76 F.3d at 613.

Plaintiffs do not address the Court's prior holding in *Backus*, much less explain why the Court should now depart from it. Plaintiffs also do not address the controlling Supreme Court and Fourth Circuit precedent upholding an absolute legislative privilege. Instead, they cite a handful of cases in which district courts have deemed legislative privilege "qualified" and subject to a five-factor analysis in redistricting cases involving claims of intentional discrimination. *See* ECF No. 119, at 9–14. But neither the Supreme Court nor *any* circuit court has adopted that approach to date. Moreover, of course, nonbinding district court decisions do not overrule *Backus*, much less the Supreme Court and Fourth Circuit precedent that this Court is bound to follow. *See Ala. Leg. Black Caucus*, 988 F. Supp. 2d at 1305–06; *see also Jacobs*, 250 F.2d at 614.

In all events, those cases are wrongly decided—and the arguments Plaintiffs offer based upon them are fatally flawed. *First*, the five-factor analysis originated in a wholly inapposite context that had nothing to do with legislative privilege, redistricting, or even a legislative enactment. Instead, the first district court to apply that analysis did so in a case involving an assertion of "official information privilege" between two agencies of the federal government. *In re Franklin Nat. Bank Securities Litig.*, 478 F. Supp. 577, 583 (E.D.N.Y. 1979); *see also Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 100 (S.D.N.Y. 2003) (magistrate judge opinion) (adopting *Franklin* factors) (cited at ECF No. 119, at 9). And even in that context, the court refused to compel disclosure of internal drafts or memoranda because they pertained to the agency's policymaking functions and deliberations. *See In Re Franklin Nat. Bank*, 478 F. Supp. at 587–89. Thus, even under *Franklin*, the Court should deny Plaintiffs' request for evidence of internal legislative

4

documents, communications, and deliberations related to the enactment of South Carolina's redistricting plans.

*Second*, in an effort to support extending the five-factor analysis to legislative privilege questions, Plaintiffs and the district courts point to *United States v. Gillock*, 445 U.S. 360 (1980), for the proposition that legislative privilege "yield[s] . . . where important federal interests are at stake." *See, e.g.*, *Benisek v. Lamone*, 241 F. Supp. 3d 566, 574 (D. Md. 2017); *Bethune-Hill v. Va. Bd. of Elecs.*, 114 F. Supp. 3d 323, 333 (E.D. Va. 2015); ECF No. 119, at 9. But Plaintiffs and those district courts do not tell the full story: *Gillock* was a criminal prosecution brought by the federal government, not a "civil action brought by a private plaintiff." *Gillock*, 445 U.S. at 372. As the Supreme Court recognized in *Gillock* and a later case, *Gillock* turned on the federal interest in federal "criminal actions" and did not erode the general rule that state legislators enjoy in civil suits the same legislative immunity and privilege "accorded to Congressmen under the Constitution." *Sup. Ct. of Va.*, 446 U.S. at 733; *see also Gillock*, 445 U.S. at 372.

Indeed, *no* Supreme Court or Fourth Circuit case has compelled a legislator to produce evidence or to provide testimony regarding her legislative actions in a civil case—and Plaintiffs have identified none. In fact, those courts have recognized that legislative privilege protects "against compulsory evidentiary process" in civil suits. *Wash. Suburban*, 631 F.3d at 181; *see also Gravel*, 408 U.S. at 616; *Burtnick*, 76 F.3d at 613. And even Plaintiffs suggest that "legislative independence" is "implicated in a 'civil action brought by a private plaintiff to vindicate private rights.'" ECF No. 119, at 13–14 (quoting *Gillock*, 445 U.S. at 372).

*Third*, Plaintiffs and those district courts assert that courts should override legislative privilege in redistricting cases where plaintiffs allege intentional discrimination. *See, e.g.*, *Benisek*, 241 F. Supp. 3d at 575; *Bethune-Hill*, 114 F. Supp. 3d at 337, 339; ECF No. 119, at 10–11. That

assertion, however, is impossible to square with this Court's holding in *Backus*. Moreover, the legislative privilege would be a dead letter if it were defeated in every case where a plaintiff alleges intentional discrimination or an unlawful motive. Plaintiffs attempt to cabin their proposed qualified privilege analysis to "redistricting" cases, but they offer no explanation as to why such cases are entitled to a special legislative privilege analysis different from the absolute immunity applicable in all other Equal Protection and intentional discrimination cases. *See* ECF No. 119, at 10.

In all events, Plaintiffs' and the district courts' suggestion that cases alleging intentional discrimination, in the redistricting context or otherwise, vitiate the well-established legislative privilege is impossible to reconcile with the governing law. "The claim of an unworthy purpose does not destroy the privilege." *Tenney*, 341 U.S. at 378. "The privilege would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives." *Id.* Thus, in *Tenney*, the Supreme Court held that a legislator was immune from a civil suit even though the plaintiff alleged that the legislator had called the plaintiff to testify before a legislative committee with the intent "to intimidate and silence plaintiff and deter and prevent him from effectively exercising his constitutional rights of free speech and to petition the Legislature for redress of grievances, and also to deprive him of the equal protection of the laws, due process of law, and of the enjoyment of equal privileges and immunities as a citizen of the United States." *Id.* at 371; *see also Burtnick*, 76 F.3d at 613 ("The existence of testimonial privilege is the prevailing law in this circuit. . . . [Plaintiff's] attempt to establish a prima facie case [of intentional discrimination] will have to be accomplished without the testimony

6

of members of the Board as to their motives in abolishing [Plaintiff's] job and establishing the new job.").

*Fourth*, the district courts note that a board member performing a legislative function testified at trial in *Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252 (1977). *See Benisek*, 241 F. Supp. 3d at 574 n.8; *Bethune-Hill*, 114 F. Supp. 3d at 337. But nothing in *Arlington Heights* suggests that the board member asserted legislative privilege. *Arlington Heights*, 429 U.S. at 268. Thus, because legislative privilege may be waived, that the board member testified in *Arlington Heights* says nothing about the scope of the privilege. In fact, to the extent that *Arlington Heights* addressed legislative privilege at all, it recognized that "[i]n extraordinary circumstances the members might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege." *Id.*; *see also id.* at 268 n.18.

For all of these reasons, the Court should decline to adopt the five-factor analysis here. But even if the Court were to do so, it still should deny Plaintiffs' motion—particularly where Plaintiffs have not narrowed their overbroad requests, meaningfully engaged in the meet-and-confer process required by the local rules, sent a single Rule 30(b)(6) notice with proposed topics, or noticed a single deposition. Indeed, each of the five factors underscores that the Court should uphold the legislative privilege against Plaintiffs' discovery demands in this case.

1.  <u>Relevance</u>: Plaintiffs' discovery requests seek to pierce the House Defendants' private internal deliberations regarding the new House Plan in an attempt to discover their motivations for enacting it. *See* ECF No. 119, at 10–12. But the individual motivations of the House Defendants or any other legislator are wholly irrelevant even to Plaintiffs' claims of intentional discrimination. Indeed, "no case in [the Supreme] Court has held that a legislative act

7

may violate equal protection solely because of the motivations of the men who voted for it." *Palmer v. Thompson*, 403 U.S. 217, 224 (1971). And with good reason: "what motivates one legislator" to vote for a statute "is not necessarily what motivates scores of others to enact it." *Hunter v. Underwood*, 471 U.S. 222, 228 (1985).

Moreover, much of the evidence Plaintiffs seek—including technical information and data, as well as drafts of redistricting maps, correspondence, and legislation from as far back as the 1990s—would not even begin to bear on the intent of any legislator, let alone the South Carolina General Assembly as a whole, in enacting the House Plan in 2022. *See, e.g.*, *Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018) ("Past discrimination cannot, in the manner of original sin, condemn government action that is not itself unlawful,"). This factor favors upholding legislative privilege.

2.     <u>Availability of other evidence</u>: Plaintiffs acknowledge that vast amounts of evidence relevant to this case is publicly available and has been produced to them. *See* ECF No. 119, at 12. But they fail to appreciate that these maps; papers; data; letters; videos of public hearings and debates in subcommittee, committee, and on the House floor; and written public testimony *are* "what was in the contemporaneous record in the redistricting process." *Bethune-Hill*, 114 F. Supp. 3d at 341. At a minimum, Plaintiffs should explain why the available evidence is insufficient to prove their claims before they ask the Court to "intru[de] into the workings" of the South Carolina General Assembly, *Arlington Heights*, 429 U.S. at 268 n.18, and to distract legislators from their important public duties by compelling them to respond to discovery requests or to provide testimony, *see Wash. Suburban*, 631 F.3d at 181.

Plaintiffs, however, have not even attempted to offer such an explanation. The best they can muster is the assertion that piercing legislative privilege is necessary because "'government officials seldom, if ever, announce on the record that they are pursuing a particular course of action

because of [a] desire to discriminate.'" ECF No. 119, at 12 (quoting *Smith v. Town of Clarkton*, 682 F.2d 1055, 1064 (4th Cir. 1982)). Plaintiffs identify no basis to support their outrageous implication that, if the Court grants their motion, they will uncover evidence that the House Defendants—or other individuals involved in South Carolina's recent redistricting process— announced *off the record* a desire to discriminate against anyone. *See id.* And, if anything, Plaintiffs' position implicitly concedes that their claims fail if they do not uncover some secret "announce[ment]" that the General Assembly adopted redistricting plans "because of a desire to discriminate." *Id.* This factor also weighs in favor of upholding legislative privilege.

3. <u>Seriousness of the litigation and issues involved</u>: Redistricting cases undoubtedly present serious issues. Indeed, because redistricting "is primarily the duty and responsibility of the State," federal-court "review of districting legislation represents a serious intrusion on the most vital local functions." *Abbott*, 138 S. Ct. at 2324. This Court, therefore, must "presume[]" the General Assembly's "good faith." *Id.*; *see also Miller v. Johnson*, 515 U.S. 900, 915 (1995). Thus, particularly at this juncture of the case, this factor weighs in favor of upholding legislative privilege.

4. <u>Role of government</u>: To be sure, the General Assembly enacted the House Plan that Plaintiffs now challenge. But *every* constitutional challenge necessarily involves the government. Moreover, the House Defendants and the Senate Defendants are involuntary defendants that have been thrust into this litigation and have not filed suit against any party. The legislative privilege would be meaningless if it were defeated merely because a plaintiff brought suit against a legislator or legislative body for official legislative acts. That, of course, is not the law. *See, e.g.*, *Sup. Ct. of Va.*, 446 U.S. at 733; *Tenney*, 341 U.S. at 372–75; *Wash. Suburban*, 631 F.3d at 180–81; *Burtnick*, 76 F.3d at 613. This factor favors upholding legislative privilege.

9

5.  <u>Purpose of the privilege</u>: All of the purposes animating the legislative privilege underscore that the Court should uphold it here. After all, the privilege enables legislators and those who assist them "to focus on their public duties by removing the costs and distractions attending" lawsuits and discovery demands. *Wash. Suburban*, 631 F.3d at 181. It also serves as a bulwark against "political wars of attrition in which [legislators'] opponents try to defeat them through litigation rather than at the ballot box." *Id.* The "practical import" of these purposes "is difficult to overstate." *Id.* And, as explained, neither the Supreme Court, the Fourth Circuit, nor this Court has ever compelled a legislator to produce evidence or to testify on an official legislative action in a civil case: quite to the contrary, all of those courts have upheld legislative immunity and privilege claims in all such cases. *See Backus* Order at 2; *see also Sup. Ct. of Va.*, 446 U.S. at 733; *Tenney*, 341 U.S. at 372–75; *Wash. Suburban*, 631 F.3d at 180–81. This Court should adhere to this controlling precedent and uphold legislative privilege in this case.

## CONCLUSION

The Court should deny Plaintiffs' motion.

| | |
|---|---|
| February 4, 2022 | Respectfully submitted,<br><br>/s/Robert E. Tyson Jr.<br>Robert E. Tyson, Jr. (7815)<br>Vordman Carlisle Traywick, III (12483)<br>La'Jessica Stringfellow (13006)<br>ROBINSON GRAY STEPP & LAFFITTE, LLC<br>1310 Gadsden Street<br>Post Office Box 11449 (29211)<br>Columbia, South Carolina 29201<br>(803) 929-1400<br>rtyson@robinsongray.com<br>ltraywick@robinsongray.com<br>lstringfellow@robinsongray.com<br><br>John M. Gore (admitted *pro hac vice*)<br>Stephen J. Kenny (admitted *pro hac vice*)<br>JONES DAY<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001<br>Phone: (202) 879-3939<br>Fax: (202) 626-1700<br>jmgore@jonesday.com<br>skenny@jonesday.com<br><br>*Counsel for Senate Defendants* |