<u>SC NAACP v. McMaster, et al</u>

CA No.: 3:21-cv-03302-JMC-TJH-RMG

# EXHIBIT B

*Senate Defendants' Response to Plaintiffs' Motion to Compel Production of Documents and Information Requested from House Defendants*

McConnell's Motion to Quash and for Protective Order (ECF 79)

*Backus, et al v. South Carolina, et al*

*CA No.: 3:11-cv-03120-HFF-MBS-PMD*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| VANDROTH BACKUS, WILLIE ) <br> HARRISON BROWN, CHARLESANN ) <br> BUTTONE, BOOKER MANIGAULT, ) <br> EDWARD MCKNIGHT, MOSES MIMS, JR, ) <br> ROOSEVELT WALLACE, and WILLIAM ) <br> G. WILDER, on behalf of themselves and all ) <br> other similarly situated persons, ) <br>                                   Plaintiffs, ) <br>        v.                             ) <br>                                          ) <br> THE STATE OF SOUTH CAROLINA, ) <br> NIKKI R. HALEY, in her capacity as ) <br> Governor, KEN ARD, in his capacity as ) <br> Lieutenant Governor, GLENN F. ) <br> MCCONNELL, in his capacity as President ) <br> Pro Tempore of the Senate and Chairman of ) <br> the Senate Judiciary Committee, ROBERT W. ) <br> HARRELL, Jr., in his capacity as Speaker of ) <br> the House of Representatives, JAMES H. ) <br> HARRISON, in his capacity as Chairman of ) <br> the House of Representatives' Judiciary ) <br> Committee, ALAN D. CLEMMONS, in his ) <br> capacity as Chairman of the House of ) <br> Representatives' Elections Law ) <br> Subcommittee, MARCI ANDINO, in her ) <br> capacity as Executive Director of the Election ) <br> Commission, JOHN H. HUDGENS, III, ) <br> Chairman, CYNTHIA M. BENSCH, ) <br> MARILYN BOWERS, PAMELLA B. ) <br> PINSON, and THOMAS WARING, in their ) <br> capacity as Commissioners of the Elections ) <br> Commission, ) <br>                                   Defendants. ) | Civil Action No. <br> 3:11-cv-03120-PMD-HFF-MBS |

**DEFENDANT GLENN F. MCCONNELL'S MOTION TO QUASH AND FOR A
LIMITED PROTECTIVE ORDER AND ACCOMPANYING
MEMORANDUM OF POINTS AND AUTHORITIES**

As shown below, it is well-established that state legislators and their legislative agents possess an absolute privilege against being questioned on their communications or deliberations concerning legislative activity. Plaintiffs have served a deposition notice that infringes on this privilege with respect to certain topics. Accordingly, Defendant Glenn F. McConnell moves to quash Plaintiffs' Rule 30(b)(6) Notice of Deposition of the South Carolina Senate ("Deposition Notice") (attached as Exhibit A), as to those topics, as well as for a protective order on all topics.

The topics identified in Plaintiffs' Deposition Notice either directly or potentially invade the legislative privilege. Specifically, deposition topics 5, 12, and 14, which relate to the drafting of redistricting plans, and deposition topics 7, 13, and 16, which concern communications involving legislators and/or their legislative agents, directly invade the privilege and are facially impermissible.[1] Defendant McConnell therefore respectfully moves this Court to quash Plaintiffs' Deposition Notice as to those topics. All other topics in Plaintiffs' Deposition Notice potentially involve legislative matters that are shielded for the same reasons. Thus, as to those topics, Defendant McConnell requests a protective order precluding any questions concerning deliberations and communications regarding legislative activity. (A Proposed Order is attached.)

Under clear Supreme Court and Fourth Circuit precedent, state legislators and their agents possess a privilege against being questioned on deliberations and communications regarding legislative activity. *See, e.g.*, *Tenney v. Brandhove*, 341 U.S. 367, 372-75 (1951);

---

[1] Deposition topic 5 seeks information on "[t]he drafting of S. 815 as originally proposed on June 8, 2011," and topics 12 and 14 seek exactly the same information for "'staff plans' originally proposed in the Senate Redistricting Subcommittee" and the Congressional Plan "ultimately passed into law by the General Assembly," respectively. *See* Exhibit A. Deposition topic 13, meanwhile, seeks information regarding "[a]ny and all communication, whether written or verbal, between the Senate and the South Carolina House of Representatives concerning the passage of" the Congressional Plan, and deposition topics 7 and 16 seek information about "communications between the Senate" and outside groups, consultants, and experts regarding the Senate and Congressional Plans. *Id.*

2

*EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 180-81 (4th Cir. 2011). This legislative privilege is firmly rooted in history and tradition, and is incorporated into federal law through Rule 501 of the Federal Rules of Evidence. *See, e.g.*, *Tenney*, 341 U.S. at 372; *Lake Country Estates v. Tahoe Planning Agency*, 440 U.S. 391, 403 (1979); *Sup. Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732 (1980); *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998); *Wash. Suburban*, 631 F.3d at 181 (citing *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996)); Fed. R. Evid. 501 ("[T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."). And in civil cases, such as this one, the legislative privilege possessed by state legislators and their staff is co-extensive with the constitutionally-rooted privilege that members of Congress enjoy pursuant to the Speech or Debate Clause. *See S. Ct. of Va.*, 446 U.S. at 733; *Wash. Suburban*, 631 F.3d at 180-81 ("In recognition of the [Speech or Debate privilege's] historical pedigree and practical importance the Supreme Court has extended it to a wide range of legislative actors . . . , and it covers all those properly acting in a legislative capacity, not just actual officeholders."); U.S. Const. art. I, § 6, cl. 1.

This robust protection is premised on the bedrock principle that "the exercise of legislative discretion should not be inhibited by judicial interference." *Bogan*, 523 U.S. at 52. Indeed, the Fourth Circuit recently observed that the "practical import" of the legislative privilege "is difficult to overstate." *Wash. Suburban*, 631 F.3d at 181. Most importantly, the privilege enables legislators and those who assist them "to focus on their public duties by removing the costs and distractions attending lawsuits." *Id.* In addition, and of particular relevance here, legislative privilege serves as bulwark against "political wars of attrition in which

[legislators'] opponents try to defeat them through litigation rather than at the ballot box." *Id.* Accordingly, the privilege protects "against compulsory evidentiary process." *See id.* (citing *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859 (D.C. Cir. 1988) (holding that "[d]iscovery procedures can prove just as intrusive" as defending oneself against suit)); *Burtnick*, 76 F.3d at 613 ("The existence of testimonial privilege is the prevailing law in this circuit."). And the same privilege enjoyed by legislators extends to their "aides and assistants," who are "treated as one" with the legislators they serve. *Gravel v. United States*, 408 U.S. 606, 616 (1972) (internal quotation marks omitted).

Plaintiffs' Deposition Notice runs squarely up against these well-established protections because it purports to compel testimony on a number of categorically and conclusively privileged topics. In particular, all questions concerning "[t]he drafting of" the Senate Plan, Congressional Plan, and any "staff plans"—deposition topics 5, 12, and 14—and all questions concerning "communications" involving any Senator or any of his agents—deposition topics 7, 13, and 16—necessarily and solely concern legislative matters.

Indeed, any questioning on these topics would cut right to the heart of the Senate's "legislative activity." It is impossible for Plaintiffs to seek information on how the enacted plans and any staff plans were "drafted" without inquiring into the very fabric of the legislative redistricting process and thereby "interfer[ing]" with "the exercise of legislative discretion." *Bogan*, 523 U.S. at 52. Likewise, any inquiries about communications related to the proposed and enacted redistricting plans would unavoidably expose discussions among or between legislators and their staff regarding their legislative actions. Because these topics aim at core legislative activity, they are conclusively off-limits. Thus, this Court should quash Plaintiffs'

4

Deposition Notice as to these topics, prohibiting Plaintiffs from seeking any information on these topics in the future.

For all the same reasons, many of Plaintiffs' other deposition topics could potentially encroach on privileged material as well. As just one example, questions regarding the "legislative procedure for drawing election districts" for the Senate and Congressional Plans (deposition topics 1 and 8) could encompass information on the internal deliberative procedures in the Senate—an area of "legislative activity" clearly protected by the privilege. We do not seek to foreclose any and all inquiry into these topics, because they also encompass permissible topics such as the text of public hearings. Thus, Defendant McConnell requests a protective order precluding any questions regarding these topics that concern communications or deliberations among legislators or their agents regarding the redistricting legislative activity.

Finally, many of the topics in Plaintiffs' Deposition Notice also directly or potentially infringe on attorney-client privilege and work product privilege. For instance, deposition topics 7 and 16 seek information about "[a]ny and all communications between the Senate and . . . private consultants or experts" regarding the Senate and Congressional Plans. Exhibit A. Such questioning potentially encompasses communications between the Senate and its lawyers, which are protected by attorney-client privilege, or substantive materials prepared in anticipation of litigation, which are protected by work product privilege. Moreover, the potential for encroachment on these privileges is heightened here because the Senate's Rule 30(b)(6) witness will be Charles Terreni, the Chief Counsel to the Senate Judiciary Committee's Redistricting Subcommittee. Thus, Defendant McConnell reserves the right to assert attorney-client privilege and work product privilege in response to any deposition questioning.

\* \* \*

5

For the foregoing reasons, Defendant McConnell's motion to quash and for a limited protective order should be granted.

Respectfully submitted,

s/ William W. Wilkins
William W. Wilkins    Fed ID No. 4662
Kirsten E. Small      Fed ID No. 10005
Andrew A. Mathias     Fed ID No. 10166
NEXSEN PRUET, LLC
55 East Camperdown Way, Suite 400 (29601)
Post Office Drawer 10648
Greenville, SC 29603-0648
Telephone: 864.370.2211
BWilkins@nexsenpruet.com

Michael A. Carvin (admitted *pro hac vice*)
Louis K. Fisher (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001-2113
Telephone: 202.879.3637
macarvin@jonesday.com

*Attorneys for Defendant Glenn F. McConnell*

January 23, 2012
Greenville, South Carolina

# Exhibit A

# (Notice of Deposition of the South Carolina Senate)

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| VANDROTH BACKUS, WILLIE HARRISON BROWN, CHARLESANN BUTTONE, BOOKER MANIGAULT, EDWARD MCKNIGHT, MOSES MIMS, Jr, ROOSEVELT WALLACE, and WILLIAM G. WILDER, on behalf of themselves and all other similarly situated persons,<br><br>                Plaintiffs,<br><br>v.<br><br>THE STATE OF SOUTH CAROLINA, NIKKI R. HALEY, in her capacity as Governor, KEN ARD, in his capacity as Lieutenant Governor, GLENN F. MCCONNELL, in his capacity as President Pro Tempore of the Senate and Chairman of the Senate Judiciary Committee, ROBERT W. HARRELL, Jr, in his capacity as Speaker of the House of Representatives, JAMES H. HARRISON, in his capacity as Chairman of the House of Representatives' Judiciary Committee, ALAN D. CLEMMONS, in his capacity as Chairman of the House of Representatives' Elections Law Subcommittee, MARCI ANDINO, in her capacity as Executive Director of the Election Commission, JOHN H. HUDGENS, III, Chairman, CYNTHIA M. BENSCH, MARILYN BOWERS, PAMELLA B. PINSON, and THOMAS WARING, in their capacity as Commissioners of the Elections Commission,<br>                Defendants. | Case No.: 3:11-cv-03120-PMD-HFF-MBS<br><br>NOTICE OF DEPOSITION OF THE SOUTH CAROLINA SENATE |

TO:    WILLIAM W. WILKINS, ESQUIRE, ATTORNEY FOR DEFENDANT GLENN F. MCCONNELL:

3:11-cv-03120-JMC-DFHFF-MBS  Date Filed 02/23/22  Entry Number 139-2  Page 2 of 52

1

YOU WILL PLEASE TAKE NOTICE that the Plaintiffs in the above-captioned action will take the testimony by oral deposition of the person or persons identified by you as the most knowledgeable to give evidence about the matters described below pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Oral testimony will be given before a Notary Public, or before some other officer authorized by law to take depositions. You are notified to designate a person or persons to give testimony about the following matters:

1) The legislative procedure for drawing election districts for the South Carolina Senate (hereinafter "Senate") following the 2010 Census;

2) Software and data used to draw election district maps for the Senate;

3) Data and analysis of racial block voting, racially polarized voting, or any other racial data or analysis commissioned, considered, or used in drawing Senate districts;

4) Formal or informal standards, objectives, and/or goals, whether written or not, adopted or followed by the Senate for the purpose of drawing election districts for the Senate;

5) The drafting of S. 815 as originally proposed on June 8, 2011;

6) Any and all communication with the United States Department of Justice about the Senate redistricting plan;

7) Any and all communications between the Senate and a state or federal political party or any agent thereof, private consultants or experts, or any advocacy group regarding the Senate redistricting plan;

8) The legislative procedure for drawing election districts for the United State House of Representatives (or "congressional districts") following the 2010 Census;

9) Software and data used to draw election district maps for congressional districts;

10) Data and analysis of racial block voting, racially polarized voting, or any other racial data or analysis commissioned, considered, or used in drawing congressional districts;

11) Formal or informal standards, objectives, and/or goals, whether written or not, adopted or followed by the Senate for the purpose of drawing congressional election districts;

12) The drafting of "staff plans" originally proposed in the Senate Redistricting Subcommittee;

13) Any and all communication, whether written or verbal, between the Senate and the South Carolina House of Representatives concerning the passage of H. 3992, including, but not limited to, efforts to reconcile the different versions of H. 3992 following the Senate's vote on June 29, 2011.

14) The drafting of the Amendment to H. 3992 adopted on July 26, 2011 and ultimately passed into law by the General Assembly;

15) Any and all communication with the United States Department of Justice about the congressional redistricting plan;

16) Any and all communications between the Senate and a state or federal political party or any agent thereof, private consultants or experts, or any advocacy group regarding the congressional redistricting plan.

You are notified to appear and take such part in the examination as you may be advised and as shall be fit and proper. Notice is further given as follows:

Date: Thursday, February 9, 2012
Time: 9:00 a.m.
Place: Richard A. Harpootlian, P.A.
1410 Laurel Street
Columbia, SC 29201

s/ Richard A. Harpootlian
Richard A. Harpootlian
Graham L. Newman
M. David Scott
RICHARD A. HARPOOTLIAN, P.A.
1410 Laurel Street
Post Office Box 1090
Columbia, SC 29202
Telephone: (803) 252-4848
Facsimile: (803) 252-4810

Columbia, South Carolina
January 9, 2011

3:11-cv-03120-MGL-JHR-MBS Date Filed 02/02/12 Entry Number 339-1 Page 12 of 12