# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>      Plaintiffs,<br><br>   v.<br><br>THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,<br><br>      Defendants. | Civil Action No. 3:21-cv-03302-JMC-TJH-RMG<br><br><br><br>**MOTION TO COMPEL DISCOVERY BY DEFENDANTS JAMES H. LUCAS, CHRIS MURPHY, AND WALLACE H. JORDAN** |

Defendants James H. Lucas (in his official capacity as Speaker of the South Carolina House of Representatives), Chris Murphy (in his official capacity as Chairman of the South Carolina House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee) (collectively, the "**House Defendants**"), by and through undersigned counsel and pursuant to Fed.

R. Civ. P. 26(c), hereby respectfully submit this Motion to Compel ("**Motion**") discovery in response to deficient answers and responses served by Plaintiffs The South Carolina State Conference of the NAACP ("**SC NAACP**") and Taiwan Scott, on behalf of himself and all other similarly situated persons ("**Scott**") (collectively, "**Plaintiffs**").

## RELEVANT FACTUAL BACKGROUND

On October 12, 2021, SC NAACP and Scott filed their Complaint in this Court alleging three causes of action: (1) congressional malapportionment in violation of Article I, § 2 of the United States Constitution; (2) legislative malapportionment in violation of the Fourteenth Amendment of the United States Constitution; and (3) deprivation of the freedom of association in violation of the First and Fourteenth Amendments of the United States Constitution. (ECF No. 1). Following appointment of a Three-Judge Panel on December 16, 2021 (ECF No. 76), a status conference was convened on December 22, 2021 to address, among other things, the manner and means by which efficiency could be brought to bear on the many tasks necessary to prepare this case for trial in the near term.

During the telephonic conference convened by this Panel, it was emphasized that the time available to pursue discovery was limited and the parties were expected to work diligently and with promptness. Indeed, Judge Gergel offered a pointed instruction to the lawyers in attendance:

> [B]ecause of the tight timeframe, I would tell your spouses and partners you're going to be busy on weekends because a lot of these witnesses are very busy people, and you may have the Legislature in session in a couple of weeks, and you're going to have to work nights and weekends. That's the only way you're ever going to get this scheduled and get it done in such a short window of time.

(ECF No. 90-1, 16). The next day, on December 23, 2021, Plaintiffs filed their Amended Complaint, still alleging three causes of action. (ECF No. 84). Only the first and second causes of action challenge the constitutionality of a portion of the state legislative districts approved in House Bill 4493 ("H. 4493"), namely House Districts 7, 8, 9, 11, 41, 43, 51, 54, 55, 57, 59, 60, 63,

67, 70, 72, 73, 74, 75, 76, 77, k78, 79, 90, 91, 93, 101, and 105 (the "Challenged Districts"). (ECF No. 84 at ¶¶ 161-166, 169-172). Shortly after this filing, the Court issued its Scheduling Order establishing deadlines for fact and expert discovery[1], and ordered that "[d]iscovery shall be completed no later than **February 17, 2022**." (ECF No. 97 ¶ 4).

With regard to written discovery, Plaintiffs served their First Requests for Production and First Set of Interrogatories to Defendants on January 7, 2022, and Second Set of Interrogatories on January 13, 2022. House Defendants served their First Set of Requests for Admission, First Sets of Interrogatories and First Requests for Production of Documents just days later, on January 19, 2022. Pursuant to the Joint 26(f) Report, objections and responses to discovery were due within ten business days of service. (ECF No. 109 ¶ 4(a)). As detailed in House Defendants' Response in Opposition to Plaintiffs' Motion to Compel (ECF No. 134), House Defendants were timely in their written responses to Plaintiffs' discovery requests and produced approximately 4,500 documents and files to Plaintiffs between January 24, 2022, and February 4, 2022. (ECF No. 134, 4-5). House Defendants produced a preliminary privilege log to Plaintiffs on February 4, 2022, and an initial privilege log pursuant to the Court's Text Order on February 9, 2022. (ECF No. 145). On February 12, 2022, House Defendants produced an additional 2,031 documents comprised of non-privileged emails responsive to Plaintiffs' discovery requests.

Despite the expedited nature of this action initiated by Plaintiffs, it is House Defendants who have diligently pursued development of a record, having taken the depositions of four of Plaintiffs' five experts (with the fifth deposition to occur on February 14, 2022), and the deposition of Plaintiff SC NAACP's President, Brenda Murphy. To date, Plaintiffs have not taken a <u>single</u>

---

[1] The parties also entered a Joint 26(f) Report in accordance with Fed. R. Civ. P. 26(f) and L.R. 26.03, which provided for, *inter alia*, expedited deadlines and briefing specifically on discovery matters. (ECF No. 109 ¶ 4).

deposition, and only within the last approximately 72-hours have they (unilaterally) noticed the depositions of House Defendants' three expert witnesses and further (unilaterally and with *no* consultation) noticed the depositions of six currently serving Representatives and the General Counsel of the House, all taking place after the House has returned to session and half of which Plaintiffs propose to take after discovery closes.[2]

Rather than exhibit diligence in readying the case for trial, Plaintiffs have pursued numerous extensions of time (ECF Nos. 73, 103, 111) and unjustifiably failed and refused to meaningfully participate in discovery, such that House Defendants are now forced to pursue this discovery motion as the trial date approaches and House Defendants are increasingly prejudiced by the inability to fairly prepare their defense. Indeed, Plaintiffs' refusal to participate is particularly egregious given how aggressively Plaintiffs have attacked House Defendants for alleged discovery deficiencies, repeatedly posturing to this Court and endeavoring to extract documents and information from House Defendants without disclosing their own shortcomings. To be clear, Plaintiffs filed a scathing Motion to Compel demanding South Carolina's legislative bodies lay bare the inner decisional actions of the very difficult task of redistricting (ECF No. 119), in part condemning House Defendants for not having produced a privilege log despite the rolling nature of House Defendants' productions. *Id.* at 16 (stating a privilege log "should have

---

[2] For clarity, Plaintiffs served notices on February 10 and 11, 2022, for the following depositions: (1) Patrick Dennis, Esq. at 10:00 a.m. on February 16, 2022, (2) Thomas Brunell, Ph.D. at 10:00 a.m. on February 16, 2022, (3) Jason Elliott, Esq. at 10:00 a.m. on February 17, 2022, (4) J. David Woodard, Ph.D. at 10:00 a.m. on February 17, 2022, (5) Sean Trende at 10:00 a.m. on February 17, 2022, (6) Neal Collins, Esq. at 2:00 p.m. on February 17, 2022, (7) Wm. Weston J. Newton, Esq. at 10:00 a.m. on February 18, 2022, (8) Chris Murphy, Esq. at 2:00 p.m. on February 18, 2022, (9) James H. Lucas, Esq. at 10:00 a.m. on [Saturday] February 19, 2022, and (10) Wallace H. Jordan at 2:00 p.m. on [Saturday] February 19, 2022. Again, Plaintiffs made no attempt to consult or coordinate the depositions of any of the witnesses serving in the House of Representatives.

accompanied [House Defendants'] RFP and Interrogatory Responses"). The hypocrisy of those critiques is evidenced by the fact that *Plaintiffs failed to provide a privilege log until nearly midnight on Friday, February 11, 2022*, themselves well past the timing for which they chastised House Defendants for not abiding.[3] Plaintiffs also disparaged the discovery efforts of House Defendants by mischaracterizing the several thousand documents produced in response to Plaintiffs' discovery requests as nothing more than "public information" (*see id.* at 6), and yet Plaintiffs have produced less than 200 documents between them, most of which are the same written submissions Plaintiff SC NAACP previously made to Defendants in anticipation of this very litigation.

With no less than twenty-three (23) attorneys representing Plaintiffs (based on the latest signature block), it is incomprehensible that Plaintiffs cannot demonstrate diligence in their discovery efforts, and it is fundamentally unfair to burden and inconvenience House Defendants with oppressive requests while Plaintiffs eschew even the most basic discovery in return. "Discovery, in other words, is not a one-way proposition. It is available in all types of cases at the behest of any party, individual or corporate, plaintiff or defendant." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "The discovery process is subject to the overriding limitation of good faith.

---

[3] The capriciousness of Plaintiffs' actions is exacerbated by Plaintiffs' lack of standing with respect to the Challenged House Districts. To that point, House Defendants filed their Motion to dismiss Plaintiffs' First Amended Complaint (ECF No. 91) on January 6, 2022, citing various grounds, including Plaintiffs' lack of standing. Plaintiffs filed their response (ECF 124) on February 10, 2022, following which House Defendants filed their Reply in Support of Motion to Dismiss (ECF No. 151) on February 10, 2022. House Defendants intend to expediently file a motion to dismiss all allegations in all complaints with respect to the Challenged House Districts, seeking a stay of the Court's Order on Plaintiff's Motion to Compel (ECF No. 153) as well as all discovery that touches on the issue of legislative privilege, until such time as House Defendants' Motion to Dismiss is heard and decided.

Callous disregard of discovery responsibilities cannot be condoned." *Asea, Inc. v. So. Pac. Transp. Co.*, 669 F.2d 1242, 1246 (9th Cir. 1981).

Finally, again unlike Plaintiffs, who have repeatedly disregarded the obligation to confer in good faith on matters of discovery—indeed confounding House Defendants with a discovery motion that mischaracterized and misstated the positions of the parties on an issue as important as legislative privilege—House Defendants sought to meaningfully engage Plaintiffs first on the larger systemic flaws in Plaintiffs' written discovery responses served on February 2, 2022, by way of a fulsome consultation letter to Plaintiffs on February 4, 2022. **Exhibit A** (2/4/22 Consultation Ltr.). Unfortunately, rather than attempt any remediation of the deficiencies, the response offered little more than Plaintiffs' perception that House Defendants' responses were "similar" and such similarity was justification for Plaintiffs' noncompliance with the discovery rules. **Exhibit B** (2/10/22 Response Ltr.). "That is not how discovery works." *Kehoe Component Sales, Inc. v. Best Lighting Products, Inc.*, No. 2:08-cv-752, 2010 WL 596501 at *4 (S.D. Ohio Feb. 16, 2010) (explaining each party must independently comply with its discovery obligations). House Defendants incorporate by reference the deficiencies identified in **Exhibit A** and further demonstrate herein that an order addressing Plaintiffs' discovery deficiencies should issue pursuant to Fed. R. Civ. P. 36 and 37.

## STANDARD OF REVIEW

Fed. R. Civ. P. 26(b)(2)(C)   provides,

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties resources, the importance of the discovery is resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

6

A party is entitled to conduct discovery on "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Rule(a) empowers the court to determine the sufficiency of responses to requests for admission. Fed. R. Civ. P. 36(a). A refusal to answer an interrogatory or request for production by a party is grounds for the requesting party to "move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). Pursuant to the Rules, an evasive or incomplete disclosure, answer, or response, "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). District courts are afforded "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." *Ardrey v. United Parcel Service*, 798 F.2d 679, 683 (4th Cir. 1986).

## ARGUMENT

### I.     PLAINTIFFS' RESPONSES TO REQUESTS FOR ADMISSION

"Requests for admission are intended to save litigants time and money, which would otherwise have to be spent unnecessarily to prove certain facts at trial, or to establish certain facts through complex and costly discovery procedures, such as interrogatories, depositions, or document requests." *Concerned Citizens of Belle Haven v. Belle Haven Club*, 223 F.R.D. 39, 44 (D. Conn. 2004). Requests for admissions "serve the expedient purpose of eliminating 'the necessity of proving essentially undisputed and peripheral issues of fact.'" *Wigler v. Elec. Data Sys. Corp.*, 108 F.R.D. 204, 205 (D. Md. 1985) (quoting *Syracuse Broadcasting Corp. v. Newhouse*, 271 F.2d 910, 917 (2d Cir. 1959)). "Their proper, strategic use saves time, trouble, and expense for the court and the litigants." *Id.* (quotation omitted). The Northern District of New York

7

offers a thorough analysis of the purpose and procedures attendant to requests for admission under the Federal Rules of Civil Procedure:

> Discovery pleadings are expected to elicit and expound upon the facts of the matters, whereas, the Requests for Admission essentially, and hopefully, limit the factual issues in the case. Considering that one purpose for such Requests is to narrow the issues of the case, a "weeding out of the facts" if you will, they are designed to reduce trial effort and promote litigation efficiency.

*Henry v. Champlain Enter., Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003). With the discovering party obligated to propound simple, direct and unambiguous requests, "[t]he responding party is expected to admit unless they disagree with the request, then he or she must deny or object. That denial must be forthright, specific and unconditional." *Id.* (quotation omitted). With regard to objections, "these objections must be directed and specifically related to a specific request. *General objections without any reference to a specific request to admit are meritless.*" *Id.* (emphasis added) (citing *Diederich v. Dep't of Army*, 132 F.R.D. 614, 616 (S.D.N.Y. 1990).

In response to each and every Request for Admission served by House Defendants, Plaintiffs interposed a boilerplate objection purporting to "incorporate by reference" eleven (11) separate "Continuing Objections" and then for the sheer majority of requests, further respond with additional objections or claim to "lack[] sufficient information to truthfully admit or deny" the requests. As to the blanket "**OBJECTION**" purporting to "incorporate by reference the Continuing Objections" in response to all fifty-five (55) Requests for Admission, the objections should be ignored completely. "This global guard tactic is greatly frowned upon and in the scheme of things are found 'substantially without merit.'" *Henry*, 212 F.R.D. at 80 (quoting *Diederich*, 132 F.R.D. at 616).

Separate from the boilerplate objections, there is an obvious inadequacy in the purported "reasonable investigation" that resulted in the inability to truthfully admit or deny as asserted by one or both Plaintiffs in response to 47 of the 55 Requests for Admission. Exemplified by SC

8

NAACP's response to Request for Admission ("RFA") No. 9, wherein each Plaintiff was asked to "[a]dmit that Plaintiff Scott does not reside in any of the Challenged Districts." Plaintiffs responded:

> **OBJECTION:** Plaintiffs incorporate by reference the Continuing Objections, including the Continuing Objections to Definitions and the Continuing Objections to Instructions, set forth above.
>
> **SPECIFIC RESPONSE OF TAIWAN SCOTT:** Mr. Scott ADMITS that he does not live in state House districts 7, 8, 9, 11, 41, 43, 51, 54, 55, 57, 59, 60, 63, 67, 70, 72, 73, 74, 75, 76, 77, 78, 79, 90, 91, 93, 95, 101, and 105.
>
> **SPECIFIC RESPONSE OF SC NAACP:** After reasonable inquiry, SC NAACP lacks sufficient information to truthfully admit or deny the request because it does not have access to information sufficient to confirm Mr. Scott's place of residence.

**Exhibit C** (Pls' Resp. to RFA) at No. 9. One can hardly conjure a more inadequate response than that of SC NAACP to RFA No. 9. While Rule 36 allows for a party to assert lack of knowledge or information as a basis for failing to admit or deny a request, the Rule provides this is *only* where "the information it knows *or can readily obtain* is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4) (emphasis added). Plaintiffs are *jointly represented* by—on most recent count— at least twenty-three (23) attorneys. Rule 36 requires the responding party "to make a reasonable inquiry, a reasonable effort, to secure information that is readily available from persons and documents within the responding party's relative control." *Henry*, 212 F.R.D. at 78. Indeed, readily obtainable information regarding Plaintiff Scott's place of residence clearly would include the response immediately preceding SC NAACP's response to the Request. It is apparent from review of Plaintiffs' Responses to RFA Nos. 1 through 10, 14 through 27, 30 through 35, 37 through 50, and 52, 54 and 55, that Plaintiffs did not undertake a reasonable inquiry or effort to "secure information that is readily available from persons and documents within [Plaintiffs'] relative control." *Id.*

Plaintiffs' responses are also deficient in numerous instances because Plaintiffs assert the Requests include "undefined terms" where such terms were, in fact, defined in the Definitions that precede the Requests or are terms that are used throughout Plaintiffs' pleadings and/or are words of common understanding. For example, Definitions provided by House Defendants include the terms "cracked," "packed," and "BVAP" (**Exhibit D**, House Defs' RFA to Pls), terms which notably are also used throughout Plaintiffs' complaint filings (ECF No. 154 at ¶¶ 6, 9, 10, 68, 74, 105, 112, etc.), and were defined terms in Plaintiffs' own Interrogatories to Defendants. Despite these specific definitions included and available to Plaintiffs, SC NAACP and Scott improperly refused to sufficiently answer Request Nos. 23, 24, 26, and 41. *See Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994) ("[T]o aid the quest for relevant information parties should not seek to evade disclosure by quibbling and objection. They should admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted . . . [I]f [a] party [is] unable to agree with [the] exact wording of [a] request for admission, it should agree to an alternate wording or stipulation."); *Menoken v. Springer*, No. CV 03-1775 (HHK/AK), 2008 WL 11388553, at *5–6 (D.D.C. June 17, 2008) (finding plaintiff's objection on the ground of vagueness because of an undefined term disingenuous and directing plaintiff respond); *Phoenix Four, Inc. v. Strategic Res. Corp*, No. 05 CIV.4837(HB), 2006 WL 1517583, at *2 (S.D.N.Y. June 2, 2006) (instructing plaintiff to respond to RFAs with its understanding that the undefined words were used in the same way as plaintiff uses them in its amended complaint); *Lane v. ABS*, No. CIV. A. 98-1516, 1999 WL 820196, at *1–2 (E.D. Pa. Sept. 30, 1999) (instructing defendant to admit or deny the RFA after setting forth defendant's definitions of the terms).

Also with regard to multiple RFAs, Plaintiffs interposed unreasonable and improper objections claiming expertise or legal knowledge is required, which is blatantly erroneous. Still

10

other responses incorrectly assert the Request "requests that Plaintiffs admit the truth of a legal conclusion." *See e.g.* **Exhibit C** at Nos. 15, 23, and 24. In response to seventeen (17) Requests[4], Plaintiffs lodged this objection with citation to *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x 169, 172 (4th Cir. 2005). Plaintiffs doubled down in their consultation response, claiming the discovery requests "ask Plaintiffs to admit legal conclusions concerning constitutional or redistricting principles without regard to the facts of any particular case (at times in the form of a hypothetical)". **Exhibit C** at No. 3. Plaintiffs misunderstand the law applicable to Rule 36. The Fourth Circuit's reasoning in *Adventis* has, in fact, been the basis for *rejecting* the very position espoused by Plaintiffs. In *Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. 418 (N.D. W. Va. 2006), the district court explained "Rule 36(a) specifically allows a party to serve a request for admission concerning 'the application of law to fact.' As the Fourth Circuit stated, 'The purpose of such admissions is to narrow the array of issues before the court, and thus expedite both the discovery process and the resolution of the litigation.'" *Wagner*, 238 F.R.D. at 423 (quoting *Adventis*, 124 F. App'x at 172). In that matter, the requests for admissions were "a straightforward application of law to fact. It asks the Plaintiffs to admit that if a certain factual situation is found to exist, a certain legal outcome results. This is precisely the kind of request contemplated by Rule 36(a)." *Id.* at 423-24. Exactly on point here, House Defendants' RFAs Nos. 23 and 24, for example, ask Plaintiffs to admit that a voting district that has had its BVAP decreased (or increased) as a result of a redistricting has not necessary been "cracked" (or "packed"). These are precisely the kind of requests that *Wagner* explains comports with *Adventis*.

Finally, several of Plaintiffs' responses are improper in that they include qualifying answers that go beyond the requested admission. Examples of Plaintiffs' responses that are

---

[4] Referenced Requests are Nos. 15, 20, 23, 24, 26, 27, 28, 29, 31, 37, 39, 44, 46, 48, 49, 52, 53.

deficient in this regard include RFA Nos. 12, 13, 17, 29, 30, 31, 32, 33, 34, 35, 36, 50, and 51. In each of these instances, one or both Plaintiffs interject issues not raised by the Requests. "Where an issue had been raised in the request, a qualification meeting that issue was proper; otherwise, it was not." *U.S. ex rel. Bibby v. Mortgage Investors Corp.*, 323 F.R.D. 424, 430 (N.D. Ga. 2017). "Plaintiff should not unnecessarily complicate its Response by indicating it cannot admit or deny things that it is not being asked to admit or deny." *City of Ann Arbor Empl. Ret. Sys. v. Sonoco Prod. Co.*, No.: 4:08-2348-TLW-SVH, 2011 WL 13199217 (D.S.C. Feb. 17, 2011).

## II.   PLAINTIFFS' ANSWERS TO INTERROGATORIES

Detailed in House Defendants' Consultation Letter at **Exhibit A**, many of the deficiencies described with regard to Plaintiffs' responses to the Requests for Admission are mirrored in the answers of both SC NAACP and Scott to House Defendants' First Set of Interrogatories ("INTs"), particularly the blanket incorporation of numerous "Continuing Objections" without any means to ascertain the parts of each question subject to which any or all said objections are intended to apply. **Exhibit E** (SC NAACP Ans. to INT); **Exhibit F** (Scott Ans. to INT). "All objections must be stated with specificity . . . Mere recitation of familiar litany that interrogatory is overly broad, burdensome, oppressive, and irrelevant does not suffice as a specific objection." *Wagner*, 238 F.R.D. at 422. "[S]uch "boilerplate" language in a discovery objection cannot overcome the broad scope of discovery as contemplated by Rule 26." *Ashmore v. Williams*, No. 8:15-cv-03633-JMC, 2017 WL 2437082 at *4 (D.S.C. June 6, 2017).

As to Plaintiff Scott, even assuming his voluntary abandonment of the constitutional challenges to House Districts enacted by H. 4493 is sufficient to avoid response to properly

12

propounded discovery,[5] his answers to INT Nos. 5, 6, and 9 are insufficient and improper. In answering INT No. 5, Plaintiff Scott arbitrarily narrows the question to only such persons "he personally engaged," which does not fully answer the Interrogatory. Plaintiff Scott's refusal to answer INT No. 6 on the basis of privilege is similarly insufficient and improper. Finally, his answer to INT No. 9 is so vague and qualified that it is non-responsive. *See Wagner*, 238 F.R.D. at 429 (finding answer non-responsive where plaintiff only alleged "wrongful behavior rather than facts showing it").

As to Plaintiff SC NAACP, to the extent meaningful responses can be found, the answers are largely non-responsive and self-serving.[6]

> Federal Rule of Civil Procedure 33(c) provides that 'An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact.' Indeed, parties may use interrogatories to 'ask questions regarding: evidence on which an opposing party bases some specific contention; a position taken by a party and an explanation or defense for that position with respect to how the law applies to the facts; and the legal basis for, or theory behind, some specific contention.'

*Wagner*, 238 F.R.D. at 428 (quoting Fed. R. Civ. P. 33(c) and *ACLU v. Gonzales*, 237 F.R.D. 120, 123 (E.D.Pa. 2006)).

Expounding on the deficiencies identified in **Exhibit A**, SC NAACP should be compelled to provide responsive answers to INT Nos. 4, 5, and 7. First, in objecting to INT No. 4, Plaintiff

---

[5] Scott included in his answer to Interrogatory No. 1: "Mr. Scott is not serving as a plaintiff alleging that certain South Carolina House Districts are racially gerrymandered in violation of the Fourteenth Amendment of the U.S. Constitution or that H. 4493 was enacted with a discriminatory intent in violation of the Fourteenth and Fifteenth Amendments of the U.S. Constitution." **Exhibit F** at No. 9.

[6] It is also fundamentally improper that SC NAACP refused to answer numerous Requests for Admission on the basis that "legal or expert knowledge" was required (*see e.g.* **Exhibit D** at Nos. 19, 23, 38), but then offers a dissertation on associational protections in discussion of irrelevant judicial precedent in answer to Interrogatory No. 4. **Exhibit E** at No. 4. This sort of gamesmanship is improper.

SC NAACP merely references its retained expert's report and cites a 1958 decision with no bearing on the types of claims presented in this case. SC NAACP's vague reliance upon a "disconcerting history of retaliation" against NAACP from at least 50 years ago is not a sufficient answer or a valid basis for objection. *See Veasey v. Abbott*, 830 F.3d 216, 232 (5th Cir. 2016) (stating that "the most relevant 'historical' evidence is relatively recent history, not long-past history.").

Second, the vague nature of SC NAACP's "response" to INT No. 5 effectively renders it non-responsive. The Interrogatory requests that SC NAACP "describe in detail each conversation…you have had with each of your members…*that reside in any of the Challenged Districts.*" **Exhibit E** at No. 4 (emphasis added). This Interrogatory clearly requests a detailed response about conversations regarding the Challenged Districts in this case, yet SC NAACP's response is a vague summary of general discussions that the SC NAACP has with *all* members. The answer fails to provide the requested detail or specifics, and simply states the SC NAACP "discuss[es] a variety of issues that impact Black people . . ." *See id.*

Separately and in addition, SC NAACP should be compelled to fully and fairly answer INT No. 9, as failure to do so, particularly on the grounds of privilege, makes a mockery of the discovery ruling secured by Plaintiffs that invades and violates the legislative privilege held by elected House Representatives.

### III.    PLAINTIFFS SHOULD BE COMPELLED TO PRODUCE DOCUMENTS

A.    <u>Plaintiffs' Claims of Privilege Are Unavailing and Insufficient</u>

Just days ago, Plaintiffs secured an order of this Court (ECF No. 153) that would require House Defendants to lay bare the internal deliberative process and affairs of duly elected lawmakers with no role in this lawsuit solely because an associational plaintiff has challenged fewer than one-third of the 124 House Districts that were redrawn following the 2020 Census,

14

recently enacted in H. 4493. The sweeping elimination of legislative privilege was made despite the continuing (and increasing) indication that Plaintiff SC NAACP lacks standing to pursue such challenge, and the repeated refusal of Plaintiffs to fairly engage in a reasoned and fair discovery process. Seemingly emboldened by the recent privilege ruling, Plaintiffs recently ignored the Court's instruction to meet and confer on House Defendants' privilege log entries and instead summarily advised the Court they are entitled to each and every document, identified as privileged by House Defendants (save for one begrudging allowance of attorney/client privilege). (ECF No. 155).

Plaintiffs' generous view of their entitlement to documents and information from the House Defendants is entirely inconsistent with their responses to House Defendants' Requests for Production ("RFP"), in which Plaintiffs assert privilege in one way or another in response to <u>every single Request</u>. **Exhibit G** (Pls' Resp. to RFP). House Defendants have no way to know what documents Plaintiffs have—or do not have—or have withheld based on the written responses. The voluminous nature of the responses is particularly troubling given the paucity of documents produced by either Plaintiff[7]. As noted earlier, and despite the discovery challenges lodged against House Defendants, Plaintiffs did not provide a privilege log of any kind until nearly midnight on Friday, February 11, 2022. While House Defendants are working to assess the privilege log as quickly as possible, it is noteworthy that Plaintiffs have assailed nearly every claim of privilege made by House Defendants while simultaneously themselves asserting attorney/client and work

---

[7] Plaintiff SC NAACP made a single production of documents on February 3, 2022, representing approximately 23 documents and Plaintiff Scott made a single production of documents on February 10, 2022, representing approximately 123 documents. In both productions, the Plaintiffs included multiple copies of the same documents, including multiple copies of the letters submitted by SC NAACP and its coalition friends to the House and Senate during the redistricting process in late 2021.

15

product privileges for materials dating as far back at 2018. **Exhibit H** (Pls' Priv. Logs) at Nos. 5-6, 9, 70-72. It also appears Plaintiffs have asserted attorney/client privilege and attorney work product for communications from a non-lawyer (*Id.* at Nos. 5 & 70 (communications from Eleanor Lightsey)) and attorney/client privilege for communications between Plaintiff Scott and an unknown third party "don [tmbdab@aol.com]" (*Id.* at Nos. 14, 15, 35, 36, 67, 68, 69), without sufficient information to demonstrate the privilege claimed is applicable. "The party asserting the privilege must identify the elements of the applicable privilege and demonstrate that each element is present for each document for which they claim the existence of a privilege." *U.S. v. Town of Irmo, S.C.*, No. 3:18-cv-03106, 2020 WL 1025686 at *6 (Mar. 3, 2020).

With regard to the single page production log with entries numbered 1 through 8, there is no indication Plaintiffs are entitled to any protection for the noted documents and communications. Not only is there no privilege identified by "NAACP v. Alabama,"[8] but the irreverence of Plaintiffs' suggestion that discoverable documents should be withheld because attendees at a meeting "were promised anonymity" cannot be ignored. Each and every elected Representative that participated in the map drawing process and devoted their time and effort to evaluating the difficult issues that population changes presented in House Districts expected confidentiality and protection of their mental impressions. Plaintiffs should not be permitted to have it both ways.

Separately and importantly, the Court is faced with a blatant waiver of attorney/client privilege that necessitates significant supplementation by Plaintiffs of all discovery responses in

---

[8] Plaintiffs have referenced or cited the 1958 case of *National Ass'n for A of C P v. Alabama,* 357 U.S. 449 (1958) ("NAACP") in countless filings and even during President Murphy's deposition. Plaintiffs' reliance is misguided. "The First Amendment qualified privilege [plaintiffs] seek to invoke, unlike the attorney-client privilege, for example, is not an absolute bar against disclosure." *Perry v. Schwarzenegger*, 264 F.R.D. 576, 579 (N.D.Cal. 2009) (extensive discussion of *NAACP* and related progeny that issued "from the civil rights struggles of the 1950s").

16

this case. "Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege." *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). Like in *Jones*, attorney-client communications were waived where the clients "publicized portions of the legal opinions in brochures and other printed material." 696 F.2d at 1073. Evidenced for example by **Exhibit I** hereto, Plaintiff SC NAACP in its Reapportionment Committee meeting minutes publicized the legal advice of its attorneys[9] (Adriel I. Cepeda Derieux, ACLU, and Leah Aden, LDF) such that waiver of the attorney-client privilege is proper here. A waiver of the attorney-client privilege "extends to all other communications relating to the same subject matter." *Id.* at 1072 (citing *In re Sealed Case*, 676 F.2d 793, 808-09 (D.C. Cir. 1982)).

Here, these meeting minutes reflect legal advice regarding redistricting challenges and strategies provided in the presence of third parties, to include representatives from at least six other organizations. Such voluntary disclosures on the part of Plaintiff SC NAACP and persons now serving as attorneys in this case was in the presence of non-privileged third parties and thus constitutes waiver of any attorney-client privilege. *See R.I. Seekonk Holdings, LLC v. McInerney*, No. CV 04-11682-NMG, 2007 WL 9797498, at *2 (D. Mass. Feb. 13, 2007) (concluding the Town of Seekonk "waived its attorney-client privilege for all communications relating to the issues discussed in the released minutes . . . "); *Chinnici v. Cent. Dupage Hosp. Ass'n*, No. 89 C 07752, 1991 WL 127606, at *1 (N.D. Ill. July 10, 1991) (describing an instance when "voluntary disclosure of their attorney's advice with respect to the special meeting minutes worked as a waiver of the attorney-client privilege 'as to all other communications on that subject.'"). The same is true for communications and information set forth on Plaintiffs' privilege log, as it appears from the

---

[9] It is unclear if or when the relationship of attorney and client was established by any of the 23 attorneys appearing on Plaintiffs' communications in this case, and Plaintiffs refused to respond to RFP No. 38. **Exhibit G**.

17

sparse information provided that third persons were included on receipt of purportedly privileged communications, such that any privilege protection is unwarranted. **Exhibit I** at Nos. 16-18, 46-49, 52-60. Plaintiffs are engaging in a forbidden practice that should not be allowed. "The attorney-client privilege cannot be used as both a sword and a shield." *Sedillos v. Bd. of Ed. Of Sch. Dist. No. 1 in City and County of Denver*, 313 F. Supp. 2d 1091, 1093 (D.D.Colo. 2004).

      B.      <u>Plaintiffs Have Not Produced Responsive Documents</u>

"The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case." *Town of Irmo, S.C.*, 2020 WL 1025686 at *2 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992)). House Defendants detail deficiencies in Plaintiffs' responses to Requests for Production in the Consultation Letter at **Exhibit A**, and as explained therein, Plaintiffs' deficient responses warrant an order compelling compliance with the discovery rules. Indeed, the insufficiency of Plaintiffs' responses, given the need for expediency in discovery, appears disingenuous—asserting in the written responses that "SC NAACP *will search files*" and produce "non-privileged documents, *if any*"—not only reveals it did not engage in the requisite search prior to the deadline to respond, but has repeatedly unilaterally limited the scope of the request without regard to House Defendants' rights to conduct discovery of the associational plaintiff (and not just its President[10]). **Exhibit G** at Nos. 4, 10, 29, 30, 31, 32, 33, 34, 37, 42, 43. Responses merely offering "vague assurance that the requested documents will be

---

[10] It was revealed during the deposition of SC NAACP's President, Brenda Murphy, that she was only asked for a specific and limited number of documents to be produced in discovery, and she was not asked for any other documents nor had she reviewed the discovery requests served on SC NAACP. (ECF No. 151-2 (Depo. Tr. B. Murphy, pp. 18-19, 219, 235)). Her deposition on Friday, February 4, was two days after service of Plaintiff SC NAACP's written responses (February 2, 2022) and its only document production to date (February 3, 2022).

produced 'in the future at a mutually agreeable time and place'" are insufficient and "assures continued wrangling" between the parties. *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 655 (D. Md. 1997).

Again, while every RFP response is materially insufficient, another recurrent theme of the objections includes that certain requests were "improper contention discovery." **Exhibit G** at Nos. 19, 20, 21, 22, 23, 24, 25, 26, 28, 30, 35, 39, 40, 41. Plaintiffs include in each response citation to an unpublished opinion of the Middle District of Tennessee, which in fact contradicts Plaintiffs' suggestion that requests directed to allegations of a complaint are improper or disallowed. *Martinez v. First Class Interiors of Naples, LLC*, No. 3:18-CV-00583, 2020 WL 7027504, at *6 n.3 (M.D. Tenn. Nov. 30, 2020) (acknowledging defendant "is of course, entitled to seek discovery of documents that support the allegations of Plaintiffs' complaint"). Furthermore, any suggestion that the carefully drafted discovery propounded by House Defendants represents "mindlessly generated" requests of the sort discussed in *Martinez* is entirely inaccurate. Accordingly, Plaintiffs' objections to House Defendants' RFPs as "improper contention discovery" are themselves improper.

## CONCLUSION

Based on the foregoing, an immediate order assessing the insufficiency of Plaintiffs' discovery responses and requiring prompt compliance in accordance with the Federal Rules of Civil Procedure should issue.

*[SIGNATURE PAGE FOLLOWS]*

Respectfully submitted,

*/s/ Mark C. Moore*
Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Erica H. Wells (Fed. ID No. 13206)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
EWells@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com

William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900
Greenville, SC 29601
Telephone: 864.370.2211
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com

February 13, 2022                    *Attorneys for James H. Lucas, Chris Murphy, and*
Columbia, South Carolina             *Wallace H. Jordan*