# Exhibit B



Christopher J. Bryant
Boroughs Bryant, LLC
1122 Lady St., Suite 208
Columbia, SC 29201

February 10, 2022

**VIA EMAIL**

Jennifer J. Hollingsworth
1230 Main Street
Suite 700
Columbia, SC 29202

RE:     *The South Carolina State Conference of the NAACP v. McMaster* (3:21-cv-03302)

Dear Jennifer,

On behalf of Plaintiffs in the above-captioned matter, the following is a response to your February 4, 2022 letter concerning Plaintiffs' objections and responses to the House Defendants written discovery requests.

**Boilerplate Objections**

Plaintiffs do not agree with House Defendants' characterization of their objections, and Defendants' citation to the language contained in Plaintiffs' objections is incomplete. Where Plaintiffs specifically objected to requests on the ground that they were "overly broad, unduly burdensome, and not proportional to the needs of the case," Plaintiffs stated the reasons for their objections. For example, House Defendants' RFP 4 seeks "[a]ll written or recorded statements or affidavits, including drafts thereof, from persons who are known or believed to be witnesses to the facts of this case." Although the RFP seeks statements from witnesses or potential witnesses in this case, the RFP is not limited to such individuals' statements concerning the subject matter of this case. Plaintiffs objected to producing "statements or affidavits from witnesses or potential witnesses without regard to the subject matter of this case." By contrast, certain of Defendants' responses to Plaintiffs' RFPs interposed an overbreadth or proportionality objection without explaining the objection. *See, e.g.*, Defendants' Response to Plaintiffs' RFP 2 ("House Defendants object to this Request on the grounds that it is overly broad, unduly burdensome, and purports to command House Defendants to produce documents in a manner not proportional to the needs of this case or that are outside the possession, custody, or control of House Defendants or are publicly or equally available to Plaintiffs.").

In general, Plaintiffs and House Defendants responded to discovery requests using a similar format—both included general and specific objections. Although House Defendants state they are unclear the extent to which information has been withheld, Plaintiffs' responses are consistent and clear in identifying instances in which Plaintiffs are standing on objections. To

the extent that House Defendants have questions about specific responses, Plaintiffs are willing to meet and confer to explain what, if anything, has been withheld.

**Information Asserted to be in the Custody or Control of House Defendants**

Although House Defendants suggest a party may not object to discovery requests on the ground that the request seeks information outside the party's possession, custody, and control, House Defendants asserted that very objection repeatedly in their own responses to discovery:

- House Defendants objected generally to the Plaintiffs' Interrogatories to the extent they sought information "already within the Plaintiffs' possession, custody, or control . . ." and objected to each of the interrogatories to the extent they sought information in the "possession, custody, or control of third parties."

- House Defendants objected generally to the Plaintiffs' RFPs to the extent "outside the possession, custody, or control of House Defendants or that is publicly or equally available to Plaintiffs or in the possession, custody, or control of third parties."

- House Defendants objected Plaintiffs' RFPs 1, 2, 3, 7 to the extent such requests sought documents "outside the possession, custody, or control of House Defendants or are publicly or equally available to Plaintiffs outside the possession, custody, or control of House Defendants or are publicly or equally available to Plaintiffs."

Plaintiffs do not understand how Defendants' concern squares with their own objections.

Plaintiffs cannot produce any document or information that is exclusively within the possession, custody, or control of the House Defendants. And Plaintiffs have not withheld from production any document in their possession, custody, or control on the ground that it is also in the possession, custody, or control of the House Defendants. Given that the House Defendants produced nearly 40 years of South Carolina Legislative Manuals (constituting more than 25,000 pages) at least 20 years of which are readily available online, we understand that House Defendants' productions are not limited to materials exclusively within the House Defendants' possession, custody, or control—if our understanding is incorrect and any such materials have been withheld, please advise immediately so that we can discuss.

**Proper Custodians for Investigation**

Contrary to your suggestion, Plaintiff SC NAACP is not required to search for and produce "all responsive documents in the SC NAACP's possession, custody, or control." To the extent an RFP is not objectionable, Plaintiff SC NAACP is required to conduct a reasonable search. With one exception, each RFP cited in House Defendants' letter—RFPs 4, 10, 29, 30, 31, 32, 33, 34, 42, and 43—is tied to the current redistricting cycle, in nearly each instance explicitly, and therefore Plaintiffs believe that a search by SC NAACP in its "files related to the redistricting cycle at issue" i.e.., "the current redistricting cycle," as stated in the House Defendants' RFPs, is reasonable. As to RFP 37, which focuses on organizational documents, Plaintiff SC NAACP is willing to amend its response.

**Legal Conclusions**

Plaintiffs agree that, as stated in Rule 36, a party may request that another party admit "the application of law to fact." Fed. R. Civ. P. 36(a)(1)(A). House Defendants' letter appears to reflect confusion concerning Plaintiffs' citation to *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x 169, 172 (4th Cir. 2005). Plaintiffs cited that case for the basic proposition that "[u]nder Rule 36, the parties to litigation may request from their adversaries admissions regarding purely factual matters or the application of law to facts, but ***not matters of law***." *Adventis*, 124 F. App'x at 172 (emphasis added). House Defendants have propounded numerous RFAs that ask Plaintiffs to admit legal conclusions concerning constitutional or redistricting principles without regard to the facts of any particular case (at times in the form of a hypothetical), including the RFAs that House Defendants have identified in their letter:

- Request 15: "Admit that an opportunity district in which Black voters would have the ability to influence elections could occur when BVAP < 30%."

- Request 20: "Admit that voting districts need to be bizarrely shaped at time to be fair."

- Request 23: "Admit that a voting district that has had its BVAP decreased through the redistricting process has not necessarily been 'cracked.'"

- Request 24: "Admit that a voting district that has had its BVAP increased through the redistricting process has not necessarily been 'packed.'"

- Request 26: "Admit that a voting district with a supermajority BVAP has not necessarily been 'packed' by virtue of its supermajority BVAP."

- Request 28: "Admit that White voters have the right to not have their votes intentionally diluted."

- Request 29: "Admit that Hispanic voters have the right to not have their votes intentionally diluted."

- Request 39: "Admit that failure to maximize the number of majority-minority districts does not give rise to a violation of § 2 of the Voting Rights Act."

- Request 44: "Admit that the U.S. Supreme Court has not created a 10% maximum population deviation standard, below which all redistricting decisions are deemed constitutional."

- Request 46: "Admit that separating a group of voters who share a community of interest is not necessarily indicative of intentional dilution of the group's voting strength."

- Request 48: "Admit that incumbency protection can be a legitimate factor in districting."

- Request 49: "Admit that the intent of a single legislator is not properly imputed to the entire South Carolina Legislature."

House Defendants' RFAs that are noted above seek the admission of a legal conclusion without regard to facts, and therefore are improper. As to the remainder of RFAs cited in House Defendants' letter (and several of those cited above), Plaintiffs did not stand on their objections.

Plaintiffs objections to House Defendants' RFPs 12, 13, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, , 26, 28, 30, 31, 35 are below under the heading "Contention Discovery."

House Defendants' RFP 3 seeks "[a]ll non-privileged documents and communications, whether written, electronically stored or recorded (including audio) in your possession, custody, or control related to any claim or defense in this case -- in other words it seeks all documents related to any claim or defense in this case. Plaintiffs objected to RFP 3 on the ground that the request is so broad that it appears to subsume all other requests. As explained in Plaintiffs' responses, "Plaintiffs agree to meet and confer with House Defendants concerning the scope of this Request and the specific information sought by House Defendants beyond what is sought in other Requests and beyond what Plaintiffs have otherwise agreed to produce." Plaintiffs remain willing to discuss.

**Protective Order**

House Defendants have requested that Plaintiffs supplement any remaining documents that were withheld because a confidentiality order has not been entered. Plaintiffs have not withheld from production any documents on the basis that a confidentiality order has not been entered.

**Contention Discovery**

Rule 34 requires that a Request describe with "reasonable particularity each item or category of items." A discovery request that requests all documents related to a particular claim does not satisfy Rule 34. As explained in the case Plaintiffs cited in their Objections and Responses to House Defendants' RFPs, *Martinez v. First Class Interiors of Naples, LLC*, No. 3:18-CV-00583, 2020 WL 7027504, at *6 (M.D. Tenn. Nov. 30, 2020), to which House Defendants' letter does not respond: "Requests for production that simply plug a pleading's allegations into boilerplate requests can be almost mindlessly generated, and can be used to impose great burdens on opponents, and do not meet Rule 34's requirement that requests describe with reasonable particularity each item or category of items to be inspected."[1]

---

[1] Although House Defendants' letter cites RFPs 36-38, 42-43, Plaintiffs did not object to those RFPs on the grounds that they constitute improper contention discovery. In addition, although House Defendants propounded 43 RFPs, House Defendants' letter cites as deficient Plaintiffs' response to RFPs 44-59.

House Defendants have served numerous RFPs that either "plug a pleading's allegations into boilerplate requests," *Martinez*, 2020 WL 7027504, at *6, and request all documents "supporting" or "evidencing" the Amended Complaint's allegations, or rather than identify items with "reasonable particularity," seek documents "related to" an entire claim or defense:

- Request 12:  "All documents and communications related to the first cause of action in your Amended Complaint (Racial Gerrymandering in Violation of the Fourteenth Amendment)."

- Request 13:  "All documents and communications related to the second cause of action in your Amended Complaint (Intentional Discrimination in Violation of the Fourteenth and Fifteenth Amendments of the U.S. Constitution)."

- Request 16:  "All documents and communications supporting your allegation that H. 4493 was motivated by a discriminatory purpose. (See, e.g., Am. Compl. at ¶ 4)."

- Request 17:  "All documents and communications supporting your allegation that the Challenged Districts in H. 4493 were adopted with a racially discriminatory intent to discriminate against Black voters. (See, e.g., Am. Compl. at ¶ 170)."

- Request 18:  "All documents and communications supporting your allegation that H. 4493 will have a discriminatory impact on Black South Carolinians. (See, e.g., Am. Compl. at ¶ 171)."

- Request 19:  "For each Challenged District, produce all documents and communications supporting your allegation that the House Defendants used race as the predominant factor in creating the Challenged District. (See, e.g., Am. Compl. at ¶ 4)."

- Request 20:  "For each Challenged District, produce all documents and communications supporting your allegation that the race predominated over traditional redistricting principles, such as compactness, contiguity, and respect for political subdivisions or communities. (See, e.g., Am. Compl. at ¶ 164)."

- Request 21:  "Produce all documents and communications supporting your allegation that Black voters were either "packed" or "cracked" for the purpose of diluting their vote in each of the Challenged Districts. (See, e.g., Am. Compl. at ¶¶ 4-5)."

- Request 22:  "All documents and communications evidencing and demonstrating one or more of your members and constituents would have individual standing to bring your claims in each and evidence Challenged District. (See Am. Compl. at ¶¶ 16-18)."

- Request 23:  "All documents and communications supporting your allegation that your members and constituents currently live in each and every Challenged District. (See Am. Compl. at ¶ 18)."

- Request 24: "All documents and communications supporting your allegation that your members include registered voters in each and every Challenged District. (See Am. Compl. at ¶ 18)."

- Request 25: "All documents and communications supporting your allegation that your members have been or will continue to be harmed by H. 4493. (See Am. Compl. at ¶ 18)."

- Request 26: "All documents and communications establishing the identity and residential address of each of your members who currently lives in any of the Challenged Districts. (See, e.g., Am. Compl. at ¶ 18)."

- Request 28: "All documents and communications supporting your allegations related to the harms allegedly suffered by your members and constituents. (See, e.g., Am. Compl. at ¶¶ 20-21)."

- Request 29: "All documents and communications supporting your allegation that the redistricting hearings held by the House Redistricting Ad Hoc Committee were largely inaccessible to the public. (See, e.g., Am. Compl. at ¶ 67)."

- Request 30: "All documents and communications supporting your allegations that individuals were unable to attend a public hearing held by the House Redistricting Ad Hoc Committee (remotely or in person) due to COVID-19 concerns, work, or family obligations. (See, e.g., Am. Compl. at ¶ 68)."

- Request 31: "All documents and communications evidencing concerns raised by members of the public related to a lack of transparency during the redistricting process or the lack of a meaningful opportunity for the public to review posted maps. (See, e.g., Am. Compl. at ¶ 79)."

- Request 35: "All documents and communications supporting your allegation that inaction of the House Defendants creates the imminent risk of confusion prior to the current candidate declaration deadline in March 2022 and possibly the June 2022 primaries. (See, e.g., Am. Compl. at ¶ 177)."

- Request 39: "All documents and communications evidencing that SC NAACP's members and constituents are unable to communicate their concerns to current members of Congress or congressional candidates. (See, e.g., Am. Compl. at ¶ 20a)."

- Request 41: "All documents and communications evidencing that SC NAACP members and constituents who are hindered from contributing financially to Congressional candidates until Congressional districts are reapportioned. (See, e.g., Am. Compl. at ¶ 20c)."

Plaintiffs disagree with House Defendants' assertion that "each one of these requests . . . were limited, specifically crafted questions."

Moreover, Rule 26 requires parties to take into consideration "the parties' relative access to relevant information," Fed. R. Civ. P. 26(b)(1), and it requires the serving party to certify that that the RFPs "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," Fed. R. Civ. P. 26(g)(1)(A)(B)(ii). Plaintiffs' claims and allegations—and Defendants' RFPs citing them—focus overwhelmingly on *House Defendants' actions and intent*. Setting aside that House Defendants' RFPs are exceedingly duplicative, their demands and in particular their repeated threats to file a motion to compel based on supposed deficiencies in Plaintiff Taiwan Scott and Plaintiff SC NAACP's searches of their own files for evidence of House Defendants intent is inconsistent with Rule 26.

**Mutual Exchange of Anticipated Trial Exhibits**

House Defendants' Request 8 seeks "[a]ll documents you intend to rely on at trial or use to question any witness during a deposition." Among other ways in which the Request is objectionable, the question of which exhibits Plaintiffs currently "intend to rely on" at trial is a request for protected work product.

House Defendants have stated that "it is not clear the extent to which documents have been withheld in response to this Request [RFA 8]." Subject to and without objections, including work product or any protection, Plaintiffs confirm they have not withheld any documents on the grounds that they may use them as an exhibit at trial.

**Privilege Log**

Defendants statement that Plaintiffs did not "even indicate a privilege log is forthcoming" is incorrect. Plaintiffs' Objections and Responses to House Defendants' RFPs, Plaintiffs SC NAACP's Objections and Responses to House Defendants' Interrogatories, and Plaintiff Taiwan Scott's Objections and Responses to House Defendants' Interrogatories each stated that "Plaintiffs will log privileged documents in accordance with their obligations under the Federal Rules or agreement between the parties." On February 9, 2022, Plaintiffs further advised that they intend to produce a privilege log this week.

\* \* \*

To the extent not resolved by the response above, as stated in prior correspondence, Plaintiffs remain available to discuss any concerns raised in your February 4, 2022 letter.

Sincerely,

Christopher J. Bryant
cc:     Counsel of Record