# Exhibit D

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, <br><br> and <br><br> TAIWAN SCOTT, on behalf of himself and all other similarly situated persons, <br><br>       Plaintiffs, <br><br>    v. <br><br> HENRY D. MCMASTER, in his official capacity as Governor of South Carolina; THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission, <br><br>       Defendants. | Civil Action No. 3:21-cv-03302-JMC-TJH-RMG <br><br><br> **FIRST SET OF REQUESTS FOR ADMISSION TO PLAINTIFFS BY DEFENDANTS JAMES H. LUCAS, CHRIS MURPHY, AND WALLACE H. JORDAN** |

Defendants James H. Lucas (in his official capacity as Speaker of the South Carolina House

of Representatives), Chris Murphy (in his official capacity as Chairman of the South Carolina

House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as

Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee) (collectively, the "**House Defendants**"), by and through their undersigned counsel and pursuant to Rule 36 of the Federal Rules of Civil Procedure, hereby propound and serve the following Requests for Admission upon Plaintiff The South Carolina State Conference of the NAACP ("**SC NAACP**") and Plaintiff Taiwan Scott ("**Plaintiff Scott**") (collectively at times, "**Plaintiffs**") to be answered separately, in writing, and under oath, within thirty (30) days from the date of service of these requests, and to supplement such answers as required by Rule 26(e) of the Federal Rules of Civil Procedure. Failure to respond or object to these requests within thirty (30) days of service shall constitute an admission to each request.

## DEFINITIONS

1.     The term "SC NAACP" refer to Plaintiff The South Carolina State Conference of the NAACP, its employees, agents, officers, directors, representatives, consultants, accountants, and attorneys or anyone purporting to act on SC NAACP's behalf, including any person who served in any such capacity at any time during the relevant time period where specified.

2.     The term "Plaintiff Scott" refers to Plaintiff Taiwan Scott, on behalf of himself and all other similarly situated persons.

3.     The term "Plaintiffs" is a collective reference to SC NAACP and Plaintiff Scott.

4.     The term "Complaint" refers to Plaintiffs' Amended Complaint filed on December 23, 2021.

5.     The term "Challenged Districts" refers to South Carolina House Districts 7, 8, 9, 11, 41, 43, 51, 54, 55, 57, 59, 60, 63, 67, 70, 72, 73, 74, 75, 76, 77 ,78, 79, 90, 91, 93, 101, and 105 in H. 4493 as identified in Paragraph 9 of the Complaint.

6.    The terms "person" and "persons" include without limitation, natural persons, corporations, associations, unincorporated associations, partnerships, and any other governmental or non-governmental entity.

7.    The terms "representative" and "representatives" mean a present and former director, officer, employee, agent, attorney, accountant, or any other person acting on behalf of the designated person.

8.    The term "including" shall mean "including, but not limited to."

9.    "Documents" as used herein shall be construed to the full extent of Fed. R. Civ. P. 34, and shall include every original and every non-identical copy of any original of all mechanically written, handwritten, typed or printed material, electronically stored data, microfilm, microfiche, sound recordings, films, photographs, videotapes, slides, and other physical objects or tangible things of every kind and description containing stored information, including but not limited to, transcripts, letters, correspondence, notes, memoranda, tapes, records, telegrams, electronic mail, facsimiles, periodicals, pamphlets, brochures, circulars, advertisements, leaflets, reports, research studies, test data, working papers, drawings, maps, sketches, diagrams, blueprints, graphs, charts, diaries, logs, manuals, agreements, contracts, rough drafts, analyses, ledgers, inventories, financial information, bank records, receipts, books of account, understandings, minutes of meetings, minute books, resolutions, assignments, computer printouts, purchase orders, invoices, bills of lading, written memoranda or notes of oral communications, and any other tangible thing of whatever nature.

10.    The terms "communication" and "communications" shall mean all meetings, interviews, conversations, conferences, discussions, correspondence, messages, telegrams, telefax, electronic mail, mailgrams, telephone conversations, and all oral, written, and electronic

expressions or other occurrences whereby thoughts, opinions, information, or data are transmitted between two or more persons.

11.    The term "cracked" shall refer to the state of a voting district in which a group of voters are divided among multiple districts, so that they fall short of a majority in each.

12.    The term "packed" shall refer to the state of a voting district in which a group of voters are highly concentrated, so they win that district by a large margin, "wasting" many votes that would improve their chances in others.

13.    The term "BVAP" shall refer to Black voting-age percentage of voting-age population.

14.    The words "and" and "or" shall be construed disjunctively or conjunctively to bring within the scope of each Interrogatory all responses which otherwise might be construed to be outside the scope of an interrogatory.

## **INSTRUCTIONS**

1.    Unless you properly object to a request, you must, under Federal Rule of Civil Procedure 36, admit, specifically deny, or state in detail why you cannot truthfully admit or deny each of the following requests based on knowledge and information in your possession, custody, or control, or in the possession, custody, or control of your representatives, agents, or attorneys. If you do not respond to each of these requests within thirty (30) days, the requests will be deemed admitted under Federal Rule of Civil Procedure 36.

2.    If you object or refuse to answer any request for admission on the ground that the answer reflects or would reveal the substance of a confidential or privileged communication, identify:

  a.   The nature of the privilege claimed;

4

  b. The person who made the communication, whether oral or in writing;

  c. If the communication was oral, all persons present while the communication was made;

  d. If the communication was written, the author, addressees, and any other recipients;

  e. The relationship of the author of the communication to each recipient;

  f. The relationship of the persons present to the person who made the communications;

  g. The date and place of the communication; and

  h. The general subject matter of the communication.

3. Unless otherwise specified, these requests for admission are limited to the relevant time period.

4. These requests for admission are continuing in nature. If you receive or otherwise become aware of information that would change your answer to any of these requests for admission after you have served your response, you must comply with Federal Rules of Civil Procedure 26(e) and 36(b) and Local Civ. Rule 5.01 (D.S.C.) by promptly supplementing your answers or filing the appropriate motion.

5. Answers to these requests for admission shall be served upon the undersigned attorneys within thirty (30) days of service of these requests.

## **REQUESTS FOR ADMISSION**

1. Admit that SC NAACP is not a person.

2. Admit that SC NAACP is not a corporation.

3. Admit that SC NAACP is not a limited liability company.

4.     Admit that SC NAACP is not a partnership.

5.     Admit that SC NAACP is not an unincorporated association.

6.     Admit that SC NAACP's Federal Employer Identification Number ("EIN") is 23-7028846.

7.     Admit that SC NAACP's Federal EIN is 57-0327661.

8.     Admit that SC NAACP is not a state subsidiary of an entity formed or organized in New York named the "National Association for the Advancement of Colored People".

9.     Admit that Plaintiff Scott does not reside in any of the Challenged Districts.

10.     Admit that Plaintiff Scott does not intend to file as a candidate for political office in South Carolina in 2022.

11.     Admit that SC NAACP approached Plaintiff Scott to become a plaintiff in the instant matter.

12.     Admit that SC NAACP has not identified an individual member or constituent that currently resides in each of the Challenged Districts in the Amended Complaint.

13.     Admit that the allegations of the Amended Complaint do not identify any individual person who lives in each of the Challenged Districts.

14.     Admit that democrats currently represent 13 of 14 of the most underpopulated voting districts in South Carolina's state legislative voting districts put in place by enactment of the legislation comprising Act No. 72 of 2011 and Act No. 75 of 2011.

15.     Admit that an opportunity district in which Black voters would have the ability to influence elections could occur when BVAP < 30%.

16.     Admit that false positives are possible when using statistical measures of compactness.

17.    Admit that the House Defendants provided race-neutral explanations in its Motion to Dismiss, ECF No. 91, for actions the Plaintiffs allege in the Amended Complaint were predominately based on race.

18.    Admit that there is no universally-accepted standard of statistical measure of compactness whereby a voting district is deemed not to be compact based on that statistical measure.

19.    Admit that factors, such as geography, may make a voting district appear irregularly shaped.

20.    Admit that voting districts need to be bizarrely shaped at time to be fair.

21.    Admit that a voting district's bizarre shape can arise from a "political motivation."

22.    Admit that any voting district line moved during the redistricting process necessarily increases the voting power of a voting bloc and dilutes the voting power of a competing voting bloc.

23.    Admit that a voting district that has had its BVAP decreased through the redistricting process has not necessarily been "cracked."

24.    Admit that a voting district that has had its BVAP increased through the redistricting process has not necessarily been "packed."

25.    Admit that SC NAACP packed Black voters into House District 7 in the map that SC NAACP submitted to the Redistricting Ad Hoc Committee on October 8, 2021.

26.    Admit that a voting district with a supermajority BVAP has not necessarily been "packed" by virtue of its supermajority BVAP.

27.    Admit that evidence that Black voters constitute even a supermajority in one district while amounting to less than a plurality in a neighboring district will not, by itself, suffice to prove

that South Carolina considerations of race predominated the drawing of the district lines when the evidence also shows a high correlation between race and party preference.

28.    Admit that White voters have the right to not have their votes intentionally diluted.

29.    Admit that Hispanic voters have the right to not have their votes intentionally diluted.

30.    Admit that the Redistricting Ad Hoc Committee and the Judiciary Committee provided at least 24-hours' notice before conducting each and every redistricting-related hearing and meeting in 2021.

31.    Admit that the allegations of the Amended Complaint do not specifically identify any individual Plaintiff (i.e., a person) who has been personally subjected to a racial classification in each of the Challenged Districts.

32.    Admit that the House Defendants considerations of race are not prohibited in redistricting decisions.

33.    Admit that the Redistricting Ad Hoc Committee accepted input from the public through electronic and hard copy means.

34.    Admit that the Redistricting Ad Hoc Committee posted to the South Carolina House of Representatives Redistricting 2021 website at least one map that evidenced a change coinciding with feedback received from the public.

35.    Admit that SC NAACP participated in the redistricting process in South Carolina by providing testimony to the Redistricting Ad Hoc Committee.

36.    Admit that the public participated in the redistricting process in South Carolina by providing testimony to the Redistricting Ad Hoc Committee throughout the process.

37.     Admit that an Equal Protection Clause analysis remains the same irrespective of the race burdened or benefitted by a particular statute, law, or decision.

38.     Admit that the maps submitted by SC NAACP prioritized race over traditional race-neutral considerations – such as compactness, contiguity, and respect for political subdivisions or communities.

39.     Admit that failure to maximize the number of majority-minority districts does not give rise to a violation of § 2 of the Voting Rights Act.

40.     Admit the redistricting plan enacted by H. 4493 increases the number of majority-minority House Districts as compared to if the prior enacted map had been used with the most recent Decennial Census P.L. 94-171 Redistricting Data.

41.     Admit the redistricting plan enacted by H. 4493 provides for thirty (30) House Districts with a BVAP of 38% or greater.

42.     Admit the redistricting plan enacted by H. 4493 limits the overall range of deviation from the ideal population to less than five percent, or a relative deviation in excess of plus or minus two and one-half percent for each South Carolina House District.

43.     Admit the redistricting plan enacted by H. 4493 is comprised of House Districts with contiguous territory when accepting that contiguity by water does not render the territory noncontiguous.

44.     Admit that the U.S. Supreme Court has not created a 10% maximum population deviation standard, below which all redistricting decisions are deemed constitutional.

45.     Admit that voters are not limited to being part of only one community of interest.

46.     Admit that separating a group of voters who share a community of interest is not necessarily indicative of intentional dilution of the group's voting strength.

47.     Admit that the voting population in South Carolina is one in which race and political affiliation are highly correlated.

48.     Admit that incumbency protection can be a legitimate factor in districting.

49.     Admit that the intent of a single legislator is not properly imputed to the entire South Carolina Legislature.

50.     Admit that the U.S. Census Bureau's release of Decennial Census P.L. 94-171 Redistricting Data was delayed by several months due, in part, to the COVID-19 pandemic.

51.     Admit that the U.S. Census Bureau released the Decennial Census P.L. 94-171 Redistricting Data in its final format on September 16, 2021.

52.     Admit that the federal district court in the District of South Carolina rejected racial discrimination claims asserted as to South Carolina's state legislative and congressional redistricting plans put in place by enactment of the legislation comprising Act No. 72 of 2011 and Act No. 75 of 2011.

53.     Admit that in 2012 the federal district court in the District of South Carolina concluded, and the U.S. Supreme Court affirmed, that South Carolina's state legislative and congressional redistricting plans were constitutional.

54.     Admit that there is no express language showing discriminatory intent within the text of H. 4493.

55.     Admit that there is no express language showing discriminatory intent within the text of Act No. 117 of 2021.

*s/ Mark C. Moore*

William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900 (29601)
Post Office Box 10648
Greenville, SC 29603-0648
Telephone: 864.370.2211
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Post Office Drawer 2426
Columbia, SC 29202
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com

Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com

January 19, 2022
Columbia, South Carolina

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 19, 2022, a true and correct copy of the foregoing was served on all counsel of record by electronic mail.

<u>*s/ Mark C. Moore*</u><br>Mark C. Moore