# Exhibit E

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and

TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,

        Plaintiffs,

        v.

HENRY D. MCMASTER, in his official capacity as Governor of South Carolina; THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,

        Defendants.

Case No. 3-21-cv-03302-JMC-TJH-RMG

**PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANT JAMES H. LUCAS, CHRIS MURPHY, AND WALLACE H. JORDAN'S FIRST SET OF INTERROGATORIES TO PLAINTIFF SOUTH CAROLINA STATE CONFERENCE OF THE NAACP**

Pursuant to Rules 26 and 33 of the Federal Rule of Civil Procedure, the South Carolina

State Conference of the NAACP ("SC NAACP") hereby objects and responds to Defendants

James H. Lucas, Chris Murphy, and Wallace H. Jordan's ("House Defendants") First Set of

Interrogatories (the "Interrogatories").

## PRELIMINARY STATEMENT

Collectively, Plaintiff's objections contained herein and the forthcoming substantive

responses ("Objections and Responses") are based on information reasonably available to

Plaintiff at this time.  Plaintiff reserves the right to amend and/or supplement their Objections

and Responses based on new information obtained in discovery or otherwise in the course of this

action.

Information contained in any Objections and Responses pursuant to these Interrogatories

is not an admission or acknowledgement by Plaintiff that such information is relevant to any

claim or defense in this action; is without prejudice to Plaintiff's right to contend at any trial or in

any other proceeding, in this action or otherwise, that such information is inadmissible,

irrelevant, immaterial, or not the proper basis for discovery; and is without prejudice to or waiver

of any objection to any future use of such information.

Specific objections to each separate Interrogatory are made below.  Additionally, Plaintiff

makes certain continuing objections to the Interrogatories, also listed below ("Continuing

Objections").  These Continuing Objections, including with respect to the definitions and

instructions, are incorporated by reference into all of the responses made with respect to each

separate Interrogatory.  Plaintiff's response to each individual Interrogatory is submitted without

prejudice to, and without in any respect waiving, any Continuing Objections not expressly set

forth in that response.  Accordingly, the inclusion of any specific objection in any response

2

below is neither intended as, nor shall in any way be deemed, a waiver of any Continuing

Objection or of any other specific objection made herein or that may be asserted at a later date.

## CONTINUING OBJECTIONS

Plaintiff incorporates each of the following Continuing Objections in its response to each

Interrogatory.  In addition to these Continuing Objections, Plaintiff may also state specific

objections to Interrogatories where appropriate, including objections that are not generally

applicable to all the Interrogatories.  By setting forth such specific objections, Plaintiff does not

intend to limit or restrict its Continuing Objections.

1.      Plaintiff objects to each Interrogatory to the extent it imposes on Plaintiff any

obligations that are inconsistent with or beyond those imposed by the Federal Rules of Civil

Procedure, the Local Rules, or any applicable order of the Court.

2.      Plaintiff objects to each Definition, Instruction, or Interrogatory to the extent it

seeks production of documents or information subject to the attorney-client privilege, the work-

product protection doctrine, or any other applicable privilege, rule, doctrine, or immunity,

whether created by statute or common law.  Each Interrogatory has been read to exclude

discovery of such privileged information.  Inadvertent production of any such information does

not constitute a waiver of any privilege or any other ground for objecting to discovery with

respect to such information or document, nor does inadvertent production waive the right of

Plaintiff to object to the use of any such information in any proceeding.

3.      Plaintiff objects to each Interrogatory to the extent it seeks information that is not

relevant to any party's claims or defenses.  *See* Rule 26(b)(1).

4.      Plaintiff objects to each Interrogatory to the extent it is not proportional to the

needs of the case, "considering the importance of the issues at stake in the action . . . the parties'

3

relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Rule 26(b)(1).

5.     Plaintiff objects to each Interrogatory to the extent it seeks discovery of electronically stored information that is not reasonably accessible due to undue burden or cost, in violation of Rule 26(b)(2)(B).

6.     Plaintiff objects to each Interrogatory to the extent that it seeks information that is outside Plaintiff's knowledge, possession, custody, or control.

7.     Plaintiff objects to each Interrogatory to the extent it seeks a legal conclusion or requires Plaintiff to formulate a legal conclusion to fully respond.

### CONTINUING OBJECTIONS TO HOUSE DEFENDANTS' INSTRUCTIONS

1.     Plaintiff objects to Instructions 1-8 to the extent they impose on Plaintiff any obligations that are inconsistent with or beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules, or any applicable Order of the Court or agreement between the parties.

2.     Plaintiff objects to Instruction 6 to the extent that it purports to impose upon Plaintiff any obligations that are broader than or inconsistent with the Federal Rules or any Order of this Court.  Plaintiff will log privileged documents in accordance with their obligations under the Federal Rules or agreement between the parties.

3.     Plaintiff objects to the definitions in Instruction 8 to the extent they render each Interrogatory irrelevant, vague and ambiguous, overly broad, unduly burdensome, and not proportional to the needs of the case.

### CONTINUING OBJECTIONS TO HOUSE DEFENDANTS' DEFINITIONS

4

By submitting these Objections and Responses, Plaintiff does not adopt House Defendants' purported definition of words and phrases contained in the Instructions to House Defendants' Interrogatories. Plaintiff interprets all words contained in the Interrogatories in accordance with their ordinary and customary meanings.

1.    Plaintiff objects to the definitions "you" and "your" on the ground that they purport to require Plaintiff to produce information outside its knowledge, possession, custody, or control. Plaintiff objects to the definitions of "you" and "your" to the extent they purport to request information protected from disclosure by the attorney-client privilege, the work product protection doctrine, or any other applicable privilege or protection. For purposes of these Objections and Responses, Plaintiff responds only on behalf of the SC NAACP.

## **INTERROGATORIES**

**INTERROGATORY NO. 1:**

Identify each person who you believe has knowledge of facts relevant to any of the allegations in the Complaint or any of the defenses raised by the House Defendants, and describe in detail your understanding of the facts of which they have knowledge.

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiff incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and the Continuing Objections to Instructions, set forth above. Plaintiff objects to this Interrogatory on the ground that it is overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to require Plaintiff to identify "each person who you believe has knowledge of facts relevant to any of the allegations" in the Complaint or any of the defenses raised by House Defendants, and to "describe in detail" the facts of which they have knowledge. Plaintiff objects to this Interrogatory to the extent it

5

seeks information protected from disclosure by the attorney-client privilege, the work product protection doctrine, or any other applicable privilege or protection. Plaintiff objects to this Interrogatory on the ground that it seeks information that is outside Plaintiff's knowledge, possession, custody, or control. Discovery is ongoing and this Interrogatory seeks information that is in the possession, custody, or control of the House Defendants.

Subject to and without waiving the foregoing objections, SC NAACP answers as follows: SC NAACP identifies the following individual who may have information with respect to SCNAACP's claims in this action:

1.  Individuals and subchapters identified as Plaintiffs in this action and individuals and subchapters affiliated with Plaintiffs SC NAACP and Taiwan Scott who have general knowledge or information regarding (i) South Carolina's redistricting process and the state's history of redistricting; and (ii) South Carolina's voting population, including voting patterns and demographics, including, and who maybe contacted through Plaintiffs' undersigned counsel:

    a.  Executive leadership of the South Carolina State Conference of the NAACP, including Brenda Murphy, President; and

    b.  Taiwan Scott.

2.  Individuals identified as Defendants in this action, who have general knowledge or information regarding (i) South Carolina's redistricting process and the state's history of redistricting; and (ii) South Carolina's voting population, including voting patterns and demographics, including, and who maybe contacted through Plaintiffs' undersigned counsel, including:

    a.  Henry D. McMaster, in his official capacity as Governor of South Carolina;

    b.  Thomas C. Alexander, in his official capacity as Chairman of the Senate Judiciary Committee;

    c.  Luke A. Rankin, in his official capacity as Chairman of the Senate Judiciary Committee;

    d.  Representative James H. Lucas, in his official capacity as Speaker of the South Carolina House of Representatives;

    e.  Chris Murphy, in his official capacity as Chairman of the South Carlina House of Representatives Judiciary Committee;

6

f.       Representative Wallace H. Jordon, in his official capacity as Chairman of the South Carolina House of Representatives Elections Law Subcommittee;

g.       Howard Knapp, in his official capacity as interim Executive Director of the South Carolina State Election Commission;

h.       John Wells in his official capacity as a member of the South Carolina State Election Commission;

i.       Joanne Day in her official capacity as a member of the South Carolina State Election Commission;

j.       Clifford J. Edler in his official capacity as member of the South Carolina State Election Commission;

k.       Linda McCall in her official capacity as a member of the South Carolina State Election Commission; and

l.       Scott Moseley in his official capacity as member of the South Carolina State Election Commission.

3.       Members of the South Carolina State House of Representatives, 223 Blatt Building, 1105 Pendleton Street, Columbia, SC 29201, who may have information regarding the South Carolina redistricting process and the South Carolina voting population, including, but not limited to:

a.       Representative Justin T. Bamberg;

b.       Representative Beth E. Bernstein;

c.       Representative Wendy C. Brawley;

d.       Representative Neal A. Collins;

e.       Representative Jason Elliot;

f.       Representative Jerry N. Govan, Jr.;

g.       Representative John Richard C. King;

h.       Representative Patricia Moore Henegan; and

i.       Representative Wm. Weston J. Newton.

4.       Staff members for the South Carolina State House of Representatives, including but not limited to, staff members for the Judiciary Committee, Elections Law Subcommittee, and House Redistricting Ad Hoc Committee who may have information regarding: (i) the 2020 South Carolina redistricting process; (ii) South Carolina's history of redistricting; (iii) the district map drawn for the South Carolina State House of Representatives; and (iv) South Carolina's voting population, including, but not limited to:

a.       Patrick Dennis, General Counsel/Chief of Staff to Speaker Lucas

7

       b.      Thomas Hauger, Sarah Grace Williamson, Joleigh "Eliza" Deguit, Megan Goyak, Daniel Ingley, and Sebastian Bass

5.      Third-party organizations focused on redistricting, including their members, employees, and agents, who may have information regarding the redistricting process in South Carolina, including, but not limited to:

       a.      Adam Kincaid, Executive Director, the National Republican Redistricting Trust, 1750 Tysons Boulevard, Suite 1500, McLean, VA, 22102, (703) 245-8020;

       b.      Lynn Teague, Vice President for Issues and Action, League of Women Voters of South Carolina, PO Box 845, Columbia, SC 29202, (803) 556-9802; and

       c.      Frank Rainwater, Executive Director, South Carolina Revenue and Fiscal Affairs Office, 100 Assembly Street, Rembert Dennis Building, Suite 421, Columbia, SC 29201, (803) 734-3793.

6.      Expert witnesses, who have information regarding the manner in which the House district map was drawn and the voting population within each drawn district, identified or to be identified pursuant to the Court's Scheduling Order regarding expert discovery.

7.      Any other witnesses identified by any party in this litigation in initial disclosures or in any other discovery responses.

President Murphy should be contacted through counsel for Plaintiffs in this action.

SC NAACP further states that Defendants (and their employees, agents, and representatives) and all other witnesses who have been previously identified in this action have knowledge of facts with respect to this lawsuit.

Plaintiff reserves the right to amend and/or supplement its response to this Interrogatory.

**INTERROGATORY NO. 2:**

Identify each person that assisted or participated in the drafting, review or editing of the letters submitted to one or more of the House Defendants during the 2021 redistricting cycle on which you are a signatory party, and for each such person, describe in detail the manner of assistance or participation.

8

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiff incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and the Continuing Objections to Instructions, set forth above. Plaintiff object to this Interrogatory on the ground that it is irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to require Plaintiff to identify "each person that assisted or participated in the drafting, review or editing of the letters submitted to one or more of the House Defendants during the 2021 redistricting cycle on which you are a signatory party" and to "describe in detail the manner of assistance or participation." Plaintiff objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product protection doctrine, or any other applicable privilege or protection.

Subject to and without waiving the foregoing objections, SC NAACP answers as follows:

As Defendants are aware, on October 8, 2021, the SC NAACP submitted one proposed state House map to the House during the redistricting cycle which was developed in consultation with the undersigned counsel for the SC NAACP and feedback from organizational leadership like executive members and/or Branch presidents. Accompanying that House map, and in addition to it, the SC NAACP submitted letters or provided verbal or written testimony in consultation with the undersigned counsel for the SC NAACP and feedback from organizational leadership like executive members and/or Branch presidents before the House committees considering redistricting both before, during, and after the Legislature considered state House maps, including on:

- August 9, 2021 to the SC House Redistricting Ad Hoc Committee

  (https://www.naacpldf.org/news/ldf-sends-letter-to-the-south-carolina-house-

9

redistricting-ad-hoc-committee-about-their-obligations-under-section-2-of-the-voting-rights-act-and-the-constitution/)

- August 30, 2021 to the SC House Redistricting Ad Hoc Committee (https://www.naacpldf.org/wp-content/uploads/Follow-Up-Letter-to-SC-House-Redistricting-Ad-Hoc-Committee-8-30-21.pdf)

- September 27, 2021 to the SC House Redistricting Ad Hoc Committee (https://www.naacpldf.org/news/ldf-sends-follow-up-letters-to-south-carolina-house-and-senate-redistricting-subcommittees-urging-transparency-in-the-redistricting-process/)

- November 10, 2021 to  the SC House Redistricting Ad Hoc Committee (https://www.naacpldf.org/news/ldf-submits-testimony-to-south-carolina-house-and-senate-redistricting-subcommittees/)

- November 15, 2021 to the House Redistricting Ad Hoc Committee (https://www.naacpldf.org/news/ldf-submits-testimony-to-south-carolina-house-and-senate-redistricting-subcommittees/)

- November 30, 2021 to the SC House (https://www.naacpldf.org/news/ldf-sends-letters-to-the-south-carolina-association-of-counties-and-house-judiciary-committee-concerning-redistricting/)

Members of the undersigned counsel for SC NAACP provided draft letters and testimony to SC NAACP who reviewed, provided comments, and also delivered comments and testimony.

Plaintiff reserves the right to amend and/or supplement its response to this Interrogatory.

**INTERROGATORY NO. 3:**

Describe in detail all communications you have had with any other party, consultant, expert, technical advisor, or other similar person connected in any way to this litigation regarding

10

redistricting matters in South Carolina.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiff incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and the Continuing Objections to Instructions, set forth above. Plaintiff object to this Interrogatory on the ground that it is overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to require Plaintiff to identify "[d]escribe in detail all communications you have had with any other party, consultant, expert, technical advisor, or other similar person connected in any way to this litigation regarding redistricting matters in South Carolina."  Plaintiff objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product protection doctrine, or any other applicable privilege or protection.

Subject to and without waiving the foregoing objections, SC NAACP answers as follows:

The SC NAACP has not hired any expert or technical advisor to develop the map it proposed to the House. It has from time to time consulted with Dr. John Ruoff about the House redistricting process. The SC NAACP has regularly engaged with its organizational leadership (e.g., executive leadership and Branch presidents), members, and constituents regarding the House redistricting process and proposed maps. It has also engaged with members of the Legislature, including by providing written and verbal testimony to the various committees. It also regularly engaged with a coalition of SC partners like the SC League of Women Voters, SC AFL-CIO, SC National Action Network, SC Southern Christian Leadership Conference, and SC Progressive Network to discuss and strategize about the post 2020 redistricting process and proposed state House maps. The SC NAACP has engaged with undersigned counsel to understand, strategize, provide written comments and testimony and review proposed

11

redistricting maps for the state House to ensure that state House maps do not discriminate against Black voters.

Plaintiff reserves the right to amend and/or supplement its response to this Interrogatory.

**INTERROGATORY NO. 4:**

Provide a list or otherwise identify by name and address all "members and constituents" of SC NAACP as described in the Complaint and specifically identify for each person which House District he/she/they lives in.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiff incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and the Continuing Objections to Instructions, set forth above. Plaintiff object to this Interrogatory on the ground that it is irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to require Plaintiff to identify "identify by name and address all 'members and constituents' of SC NAACP."  SC NAACP further objects to this Interrogatory to the extent it seeks disclosure of the identity of its membership or volunteers that is protected by *NAACP v. Alabama*, 357 U.S. 449 (1958) (holding, inter alia, that "[c]ompelled disclosure of membership in an organization engaged in advocacy of particular beliefs" violates the constitutional right to freedom of assembly), or that otherwise infringes upon SC NAACP's or its members' or volunteers' right to privacy under federal, state, and any other applicable laws.  Plaintiff objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product protection doctrine, or any other applicable privilege or protection.

Subject to and without waiving the foregoing objections, SC NAACP answers as follows:

The NAACP has a long history of being the target of racist attacks as a result of its

12

advocacy for people of color and its fight against segregation and white supremacy both in South

Carolina and across the South.  After its successful role in *Brown v. Board of Education*, the state

of South Carolina "resisted desegregation" and "orchestrated the effective banishment of the

organization . . . using old laws aimed to combat the Ku Klux Klan and other white supremacist

groups, and using alterations of old barratry and champerty laws." Bagley Expert Report at 5.  In

furtherance of its goal to undermine and weaken the mission of the NAACP, the state of South

Carolina "called on the NAACP to produce membership rolls." *Id.*  The NAACP refused to

follow the state's directive "knowing that this would form the basis for economic reprisal." *Id.* at

5-6.  As a result of the NAACP's refusal to produce membership rolls, the state of South

Carolina, "charged the organization with being a foreign corporation that had not met the

requirements for doing business in the state as such and had been instead soliciting plaintiffs."

*Id.* at 6.  Due to this, "[a] state court imposed a fine that the organization could not hope to pay

and refused it the administrative means to rectify the situation even if it could." *Id.* In light of

similar actions taken by Southern states, the Supreme Court held in *NAACP v. Alabama* that

"[c]ompell[ing] [the] disclosure of membership in an organization engaged in advocacy of

particular beliefs" would violate the NAACP's constitutional right to freedom of assembly.  357

U.S. 449, 462 (1958). Due to this disconcerting history of retaliation against the NAACP by state

of South Carolina, including the House Defendants' predecessors, vis-à-vis having possession of

the names of the NAACP's members and constituents, the NAACP declines to provide a list of

its members and constituencies to the House Defendants at this time.

Moreover, consistent with the First Amended Complaint, the SC NAACP is a statewide

nonprofit, nonpartisan membership civil rights organization. It has 77 branches of adult members

13

across South Carolina, including at least one branch in each of the state's 46 counties.[1] Together, the South Carolina NAACP has more than 13,000 members across all 46 counties, who are predominantly but not exclusively Black people. Its membership also includes other racial and ethnic minority residents, as well white South Carolinians. The SC NAACP's members include registered voters in the Challenged Districts.

SC NAACP is willing to meet and confer concerning the scope of this Interrogatory and the specific information sought by House Defendants.

Plaintiff reserves the right to amend and/or supplement its response to this Interrogatory.

**INTERROGATORY NO. 5:**

Describe in detail each conversation, discussion, meeting, call, conference, or any other similar encounter you have had with each of your members and/or constituents that reside in any of the Challenged Districts.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiff incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and the Continuing Objections to Instructions, set forth above. Plaintiff object to this Interrogatory on the ground that it is irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to require Plaintiff to "[d]escribe in detail each conversation, discussion, meeting, call, conference, or any

---

[1] The SC NAACP is a "state wide political caucus" that "the purpose of endorsing candidates for political office who will be responsible to the needs of the blacks and other minorities and poor people." *Ala. Legislative Black Caucus v. Alabama*, 575 U.S. 254, 269-70 (2015) (citations, internal quotations, internal edits omitted). These statements "support an inference that the organization has members in all of the State's majority-minority districts, other things being equal, which is sufficient to meet the Conference's burden of establishing standing. That is to say, it seems highly likely that a 'statewide' organization with members in 'almost every county,' the purpose of which is to help 'blacks and other minorities and poor people,' will have members in each majority-minority district." *Id.* at 270.

14

other similar encounter you have had with each of your members and/or constituents that reside

in any of the Challenged Districts," including without regard to the subject matter of this action.

Plaintiff objects to this Interrogatory to the extent it seeks information protected from disclosure

by the attorney-client privilege, the work product protection doctrine, or any other applicable

privilege or protection.  Defendants.

Subject to and without waiving the foregoing objections, SC NAACP answers as follows:

As part of its organizational mission and regular functions, the SC NAACP regularly

communicates and meets with its organizational executive leadership, leadership of its Branches,

members, and constituents to discuss a variety of issues that impact Black people and other

people who have been historically discriminated against—by government and private entities—

and continue to be discriminated against into the present in South Carolina. These

communications involve issues of education, housing, health care access, political participation,

police reform, business development, transportation and infrastructure access, access to land

ownership, and more.

SC NAACP is willing to meet and confer concerning the scope of this Interrogatory and

the specific information sought by House Defendants.

Plaintiff reserves the right to amend and/or supplement its response to this Interrogatory.

**INTERROGATORY NO. 6:**

Describe in detail all facts that form the basis by which you determined that 37.53% is

sufficient to elect or influence the election of a Black-preferred candidate in your proposed

House District 7, including any communications, documents, analyses, reports, or any other

material.

**RESPONSE TO INTERROGATORY NO. 6:**

15

Plaintiff incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and the Continuing Objections to Instructions, set forth above. Plaintiff object to this Interrogatory on the ground that it is overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to require Plaintiff to describe "all facts" that form the basis for the determination that 37.53% is sufficient to elect or influence the election of a Black-preferred candidate in proposed House District 7, "including any communications, documents, analyses, reports, or any other material."  Plaintiff objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product protection doctrine, or any other applicable privilege or protection.  Plaintiff objects to this Interrogatory on the ground that it seeks information that is outside Plaintiff's knowledge, possession, custody, or control.  Discovery is ongoing and this Interrogatory seeks information that is in the possession, custody, or control of the House Defendants.

Subject to and without waiving the foregoing objections, SC NAACP answers as follows:

SC NAACP refers House Defendants to the First Amended Complaint, specifically paragraphs 112-23, and the expert reports submitted by Drs. Duchin (Section 4.1), Liu (e.g., Parts IV, V VI.2 (pp. 10-12)), and Ragusa (Section #4).  Having the BVAP in House District 7 at 37.5% "provides that Black voters have a chance of electing or influencing the election of the candidate of their choice." First Am. Compl. ¶ 117.

Plaintiff reserves the right to amend and/or supplement its response to this Interrogatory.

**INTERROGATORY NO. 7:**

Describe in detail all facts that form the basis by which you determined that Black voters are unnecessarily packed into each of these House Districts: 51, 59, 70, 73, 74, 76, 77, 79, 90,

101.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiff incorporates by reference the Continuing Objections, including the Continuing

Objections to Definitions and the Continuing Objections to Instructions, set forth above.

Plaintiff object to this Interrogatory on the ground that it is overly broad, unduly burdensome,

and not proportional to the needs of the case to the extent it purports to require Plaintiff to detail

"all facts" that form the basis for the determination that Black voters are unnecessarily packed

into House Districts: 51, 59, 70, 73, 74, 76, 77, 79, 90, 101.  Plaintiff objects to this Interrogatory

to the extent it seeks information protected from disclosure by the attorney-client privilege, the

work product protection doctrine, or any other applicable privilege or protection.  Plaintiff

objects to this Interrogatory on the ground that it seeks information that is outside Plaintiff's

knowledge, possession, custody, or control.  Discovery is ongoing and this Interrogatory seeks

information that is in the possession, custody, or control of the House Defendants.

Subject to and without waiving the foregoing objections, SC NAACP answers as follows:

SC NAACP refers House Defendants to the First Amended Complaint and the expert

reports submitted by Drs. Duchin, Imai, Liu, Ragusa, and Bagley.

| Cluster | Complaint | Expert Reports |
|---|---|---|
| State House District 51 (Sumter County) | ¶¶ 129-33 | Imai Section V.B Liu p. 13 Duchin Section 4.3 Ragusa Section #2 Bagley pp. 10-11, 16-19 |
| State House Districts 59 and 101 (Florence County and Williamsburg County) | ¶¶ 141-47 | Imai Section V.E Liu pp. 14-15 Duchin Section 4.5 Ragusa Section #2 Bagley pp. 10-11, 16-19 |
| State House Districts 70, 73, 74, 76, 77, 79 (Richland | ¶¶ 148-54 | Imai Section V.F Liu pp. 15-16 |

| County) | | Duchin Section 4.6 Ragusa Section #2 Bagley pp. 10-11, 16-19 |
|---|---|---|
| State House Districts 90 (Orangeburg County) | ¶¶ 155-59 | Imai Section V.D Liu pp. 16-17 Duchin Section 4.7 Ragusa Section #2 Bagley pp. 10-11, 16-19 |

Fact evidence and witness testimony will be disclosed consistent with the case scheduling order and at trial.

Plaintiff reserves the right to amend and/or supplement its response to this Interrogatory.

**INTERROGATORY NO. 8:**

Describe in detail all factors, beginning with the predominant factor, that resulted in the proposed House District 7 set forth in the Complaint, and explain how race is not the predominant factor. Include in your response all communications, documents, analyses, reports, or any other material that corroborates your response.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiff incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and the Continuing Objections to Instructions, set forth above. Plaintiff object to this Interrogatory on the ground that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Plaintiff objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product protection doctrine, or any other applicable privilege or protection. Plaintiff objects to this Interrogatory on the ground that it seeks information that is outside Plaintiff's knowledge, possession, custody, or control. Discovery is ongoing and this Interrogatory seeks information that is in the possession, custody, or control of the House Defendants.

18

Subject to and without waiving the foregoing objections, SC NAACP answers as follows:

The SC NAACP considered the following criteria when proposing House District 7: the U.S. Constitution; federal law; 2020 Census data, including racial demographic data; recent statewide and county-level voting patterns, including racially polarized voting patterns; how past and newly proposed districts may perform for voters; communities of interest and other redistricting principles like contiguity, compactness, and any incumbent protection; and, incorporation of community members' feedback. Answering further, SC NAACP refers House Defendants to the Amended Complaint, specifically paragraphs 112-119, 121-23, and the expert reports submitted by Drs. Duchin (Section 4.1), Imai (Section V.C), Liu (e.g., Parts IV, V VI.2 (pp. 10-12)), and Ragusa (Section #1).

Plaintiff reserves the right to amend and/or supplement its response to this Interrogatory.

**INTERROGATORY NO. 9:**

Identify each and every person involved in drawing the map presented in the Amended Complaint and who were involved in making decisions regarding the placement of district lines.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiff incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and the Continuing Objections to Instructions, set forth above. Plaintiff object to this Interrogatory on the ground that it is overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to require Plaintiff to identify "each and every person involved in drawing the map presented in the Amended Complaint and who were involved in making decisions regarding the placement of district lines." Plaintiff objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product protection doctrine, or any other applicable

19

privilege or protection.  Plaintiff objects to this Interrogatory on the ground that it seeks information that is outside Plaintiff's knowledge, possession, custody, or control.  Discovery is ongoing and this Interrogatory seeks information that is in the possession, custody, or control of the House Defendants.

Subject to and without waiving the foregoing objections, SC NAACP answers as follows:

The First Amended Complaint does not contain a map as described by this Interrogatory. SC NAACP is willing to meet and confer concerning the scope of this Interrogatory and the specific information sought by House Defendants.

Plaintiff reserves the right to amend and/or supplement its response to this Interrogatory.

**INTERROGATORY NO. 10:**

Describe in detail the criteria used to draw each map that you submitted or caused to be submitted to the Redistricting Ad Hoc Committee of the House of Representatives and the Court, which includes describing for each map, separately, the criteria used to draw each map.  Such criteria would include, but not be limited to, criteria related to pairing incumbents.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiff incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and the Continuing Objections to Instructions, set forth above. Plaintiff object to this Interrogatory on the ground that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  Plaintiff objects to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the work product protection doctrine, or any other applicable privilege or protection.  Plaintiff objects to this Interrogatory on the ground that it seeks information that is outside Plaintiff's knowledge, possession, custody, or control.  Discovery is ongoing and this Interrogatory seeks information

20

that is in the possession, custody, or control of the House Defendants.

Subject to and without waiving the foregoing objections, SC NAACP answers as follows:

As conveyed in the submission letter to House (https://www.naacpldf.org/wp-content/uploads/Letter-to-H-Redistricting-Ad-Hoc-Comm-Submitting-Congressional-and-House-Maps-10-8-21.pdf), the SC NAACP considered the following criteria when drawing maps for the Redistricting Ad Hoc Committee of the House of Representatives: the U.S. Constitution; federal law; 2020 Census data, including racial demographic data; recent statewide and county-level voting patterns, including racially polarized voting patterns; how past and newly proposed districts may perform for voters; communities of interest and other redistricting principles like contiguity, compactness, and any incumbent protection; and, incorporation of community members' feedback.

Plaintiff reserves the right to amend and/or supplement its response to this Interrogatory.

**INTERROGATORY NO. 11:**

Describe in detail the organization of the "South Carolina State Conference of the NAACP," including, but not limited to, the date of formation or organization, whichever is applicable, and under which National Association for the Advancement of Colored People corporate entity (please include the legal name of that entity and the State where that entity was formed or organized) is the "South Carolina State Conference of the NAACP" aligned.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiff incorporates by reference the Continuing Objections, including the Continuing Objections to Definitions and the Continuing Objections to Instructions, set forth above. Plaintiff object to this Interrogatory on the ground that it is overly broad, unduly burdensome, and not proportional to the needs of the case to the extent it purports to require Plaintiff to "in

detail" the organization of the "South Carolina State Conference of the NAACP.

Subject to and without waiving the foregoing objections, SC NAACP answers as follows:

SC NAACP is a 501(c)(4) organization.  The SC NAACP is a state subsidiary of the National Association for the Advancement of Colored People ("NAACP"), which was founded in 1909.  The NAACP is the nation's largest and oldest civil rights grassroots organization. The NAACP is organized into state or state area and local units, known as conferences, chapters and branches, all of which are part of the NAACP. Every member of a state or local unit is also a member of the NAACP. The South Carolina NAACP, a state conference of the NAACP, was chartered in 1939 and is the oldest civil rights group in South Carolina.

Plaintiff reserves the right to amend and/or supplement its response to this Interrogatory.

Dated: February 2, 2022                    Respectfully submitted,

Leah C. Aden**                             */s/ Christopher J. Bryant*
Stuart Naifeh**                            Christopher J. Bryant, Fed. ID 12538
Raymond Audain**                           Boroughs Bryant, LLC
John S. Cusick**                           1122 Lady St., Ste. 208
NAACP Legal Defense & Educational Fund,    Columbia, SC 29201
Inc.                                       Tel.: (843) 779-5444
40 Rector St, 5th Fl.                       chris@boroughsbryant.com
NY, NY 10006
Tel.: (212) 965-7715                       Somil B. Trivedi**
laden@naacpldf.org                         Patricia Yan**
                                           American Civil Liberties Union Foundation
Antonio L. Ingram II*                      915 15th St., NW
NAACP Legal Defense & Educational Fund,    Washington, DC 20005
Inc.                                       Tel.: (202) 457-0800
700 14th St, Ste. 600                      strivedi@aclu.org
Washington, D.C. 20005                     pyan@aclu.org
Tel.: (202) 682-1300
aingram@naacpldf.org                       Allen Chaney, Fed. ID 13181
                                           American Civil Liberties Union
Samantha Osaki**                           of South Carolina
Adriel I. Cepeda-Derieux **                Charleston, SC 29413-0998
Sophia Lin Lakin *                         Tel.: (843) 282-7953
American Civil Liberties Union Foundation  Fax: (843) 720-1428
125 Broad Street, 18th Floor               achaney@aclusc.org
New York, NY 10004
Tel.: (212) 549-2500                       Janette M. Louard*
sosaki@aclu.org                            Anthony P. Ashton*
                                           Anna Kathryn Barnes*
John A. Freedman*                          NAACP OFFICE OF THE GENERAL
Elisabeth S. Theodore*                     COUNSEL
Adam Pergament*                            4805 Mount Hope Drive
Gina M. Colarusso*                         Baltimore, MD 21215
John "Jay" B. Swanson*                     Tel: (410) 580-5777
John M. Hindley*                           jlouard@naacpnet.org
ARNOLD & PORTER KAYE SCHOLER               aashton@naacpnet.org
LLP                                        abarnes@naacpnet.org
601 Massachusetts Ave., N.W.
Washington, D.C. 20001                     *Attorneys for Plaintiffs*
Tel: (202) 942-5000
                                           * Motion for admission *Pro Hac Vice*
Jeffrey A. Fuisz*                          forthcoming
Paula Ramer*                               ** Admitted *Pro Hac Vice*
Jonathan I. Levine*

23

Theresa M. House*
ARNOLD & PORTER KAYE SCHOLER
LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000

Sarah Gryll**
ARNOLD & PORTER KAYE SCHOLER
LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2022, a true and correct copy of the foregoing was served on all counsel of record by electronic mail.

/s/ *Christopher Bryant*
Christopher Bryant