**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, <br><br> and <br><br> TAIWAN SCOTT, on behalf of himself and all other similarly situated persons, <br><br>                  Plaintiffs, <br><br>      v. <br><br> THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission, <br><br>                  Defendants. | C/A No. 3:21-cv-03302-JMC-TJH-RMG <br><br><br> **THREE JUDGE PANEL** <br><br><br><br> **HOUSE DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND ALL PREDECESSOR COMPLAINTS WITH RESPECT TO THE CHALLENGED HOUSE DISTRICTS AND MEMORANDUM IN SUPPORT** |

     Defendants James H. Lucas (in his official capacity as Speaker of the South Carolina House

of Representatives), Chris Murphy (in his official capacity as Chairman of the South Carolina

House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as

Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee)

(collectively, the "**House Defendants**"), by and through their undersigned counsel, hereby move to dismiss Plaintiffs' Second Amended Complaint (ECF No. 154) pursuant to 12(b)(1) Fed. R. Civ. P., as to the Challenged House Districts, for lack of standing and request to immediately stay (pursuant to Local Civ. Rule 16.00 (D.S.C.)) the Court's Order (ECF No. 153) and any such discovery that touches on the issue of legislative privilege.[1]

## INTRODUCTION

To summarize the already tortured history of this case initially filed on October 12, 2021 (ECF No. 1), House Defendants moved to dismiss Plaintiffs' First Amended Complaint (ECF Nos. 84 & 91) on January 6, 2022. The Motion raised, among other issues, Plaintiffs' lack of standing. Plaintiffs' response was filed on February 3, 2022 (ECF No. 124)[2] and House Defendants replied in further support of that Motion to Dismiss on February 10, 2022 (ECF No. 151), specifically to focus this Court's attention on the singular issue of standing.[3] The Motion to Dismiss has yet to be ruled on by the Court. In the intervening period, Plaintiffs filed a Second Amended Complaint (ECF No. 154), which continues the same claims as to a portion of the reapportioned House Districts enacted by Act No. 117 as the First Amended Complaint, with the notable difference being that Plaintiff Taiwan Scott, on behalf of himself and all other similarly situated persons

---

[1] Local Civ. Rule 7.02 (D.S.C.) exempts from its consultation requirements Motions to Dismiss—and also similarly exempts Motions to Stay pursuant to Local Civ. Rule 16.00 (D.S.C.). Rule 16.00 indicates that while a separate Motion to Stay must be filed, a separate memorandum is not required. House Defendants respectfully request that the Court consider this Motion and Memorandum in its entirety when considering the separate Motion for Immediate Stay filed in conjunction with this Motion.

[2] Plaintiffs' response brief was delayed as they asked for extensions to respond. House Defendants agreed to one extension. Plaintiffs then asked House Defendants to consent to a second extension on the day filing was due and House Defendants did not consent.

[3] House Defendants' Reply was submitted while the Plaintiffs' Motion to Compel was still under consideration by this Court.

("**Scott**"), has abandoned any challenge to the House Districts and Act No. 117. As further detailed herein, the only party remaining that is challenging reapportioned House Districts, Plaintiff The South Carolina State Conference of the NAACP ("**SC NAACP**"), has failed to and has repeatedly refused to identify (in its pleadings, testimony, discovery, or otherwise) a single individual member of SC NAACP who lives in any of the House Districts being challenged—or even to identify a single person who claims to have suffered racial discrimination by enactment Act No. 117. As such, SC NAACP lacks standing.

As this Court is aware, there are significant outstanding discovery issues (many of which involve the issue of legislative privilege) and trial is currently scheduled to begin on February 28, 2022. Although House Defendants have been fully and fairly participating in all phases of pre-trial discovery to date, they should not be forced to engage in overly broad and extremely burdensome discovery that invades the legislative privilege afforded to duly elected Legislators (and certainly not forced to proceed to trial) without the threshold issue of SC NAACP's associational standing with respect to the reapportioned House Districts answered by this Court. Consequently, House Defendants respectfully request a ruling on their Motion to Dismiss, at least as to the matter of standing, or the opportunity for oral argument as to the issue of standing, before being compelled to engage in any further discovery that violates legislative privilege.

In conjunction with this Motion, House Defendants request the Court immediately stay its Order (ECF No. 153) on Plaintiffs' Motion to Compel (ECF No. 119) until it decides the threshold issue of standing pursuant to Fed. R. Civ. P. 26(c) and Local Civ. Rule 16.00(C) (D.S.C.)—and order Plaintiffs to file an immediate response to this Motion, should they wish to respond, and be prepared to address the issue at the status conference set for February 15, 2022 or at the soonest time thereafter available to the Court. House Defendants respectfully submit that they should not

be forced to engage in further discovery, defend depositions, reveal privileged information, and go to trial at the expense of the taxpayers of this State with respect to the Challenged House Districts when Plaintiffs do not have standing to maintain this action with respect to Act No. 117 in the first instance.

## PERTINENT FACTUAL BACKGROUND

On December 22, 2021, prior to Plaintiffs' filing of the First Amended Complaint and prior to the delineation therein of the challenges to Act No. 117, the Court held a Status Conference with all parties where it discussed the possibility of responsive pleadings and dispositive motions, including motions to dismiss. (ECF Nos. 81, 82, 83, and 85). On January 6, 2022, the House Defendants filed their Motion to Dismiss the First Amended Complaint and parallel Answer in light of the Court's stated desire to move expeditiously with pre-trial matters. (ECF Nos. 91, 92). The grounds for the Motion to Dismiss include House Defendants' substantially meritorious argument that Plaintiffs lack standing. (*See* ECF No. 91 at 6-10). On January 19, 2022, House Defendants served their first set of discovery requests one Plaintiffs, consisting of Requests for Admission, Interrogatories, and Requests for Production. (*See* ECF No. 157). Among those discovery requests were several requests for admission, documents, and information specifically aimed as assessing Plaintiffs' standing allegations in their Complaints.

On February 4, 2022, House Defendants commenced the deposition of Brenda Murphy, President of SC NAACP. During her deposition, Ms. Murphy, at times being directed not to answer, refused to identify individual members of SC NAACP who reside in the House Districts challenged in the First Amended Complaint. In discovery responses, as more fully described in House Defendants' Motion to Compel, SC NAACP refused to answer admissions or interrogatories and refused to produce documents evidencing even a single member that lives in a

single House District being challenged (ECF No. 157), insisting that the bare, unsupported allegation of affected membership is all that is required. Plaintiffs are wrong.

## APPLICABLE STANDARD

Article III of the United States Constitution limits the federal judicial power to resolving "Cases" or "Controversies." U.S. Const. art. III § 2; *Ansley v. Warren*, 861 F.3d 512, 517 (4th Cir. 2017). Accordingly, whether a plaintiff has identified an actual case or controversy is a question of subject-matter jurisdiction. *See South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019). The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception." *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884). At the outset, the "threshold jurisdictional question" in this case is whether "the plaintiff … has standing to sue." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 102 (1998).

The requirement of standing is "perhaps the most important" condition of justiciability. *Allen v. Wright*, 468 U.S. 737, 750 (1984). This "standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to render judicial resolution appropriate." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 153 (4th Cir. 2000) (citing *Wright*, 468 U.S. at 750–51). The standing requirement also "tends to assure that the legal questions presented to the court will be resolved, not in the rarefied atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982).

It is well established that an "essential element" of the Constitution's limitation on the power of the federal courts is "that any party who invokes the court's authority must establish

standing." *Ansley v. Warren*, 861 F.3d 512, 517 (4th Cir. 2017). "Standing is a doctrine that refers to a plaintiff's ability to bring a suit before the court." *Holloway v. City of Virginia Beach, Virginia*, No. 2:18-CV-69, 2020 WL 4758362, at *5 (E.D. Va. Aug. 17, 2020). "[I]t is not enough that the party invoking the power of the court have a keen interest in the issue." *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013). Establishing standing requires the plaintiff to show (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that a favorable decision will likely redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). If a litigant does not meet these requirements, the case must be dismissed for lack of subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. at 88-89.

When a motion pursuant to Rule 12(b)(1) raises a challenge to the factual basis for subject-matter jurisdiction, such as standing, the burden of proving subject-matter jurisdiction is on the plaintiff. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–69 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). In determining whether jurisdiction exists, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citing *Trentacosta v. Frontier Pacific Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987)). As such, the Court "should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Trentacosta*, 813 F.2d at 1559 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## ARGUMENTS

I.   **Plaintiff SC NAACP Does Not Have Associational Standing Because It Has Not Identified Any Members Who Were Harmed or Identified What Those Harms Might Be.**

In order to have standing, "a complainant must clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 490 (1975). While an association may have standing to sue as the representative of its members who have been harmed, the organization must show that (1) at least one of its members would have standing to sue in his own right; (2) the organization seeks to protect interests germane to the organization's purpose; and (3) neither the claim asserted nor the relief sought requires the participation of individual members in the lawsuit. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Here, SC NAACP fails to satisfy the first and third requirements for associational standing.

In the Second Amended Complaint, Plaintiffs[4] assert claims of racial gerrymandering (Count One) and intentional discrimination (Count Two) in Act No. 117's enactment of revised House Districts 7, 8, 9, 11, 41, 43, 51, 54, 55, 57, 59, 60, 63, 67, 70, 72, 74, 75, 76, 77, 78, 79, 90, 91, 93, 95, 101, 105 (the "**Challenged House Districts**"). (ECF No. 154 at ¶¶ 12, 13, 248-253, 256-259). The specificity of the Challenged House Districts is important, because the United States Supreme Court has very clearly explained that the analysis (and proof) is by individual district. *Abbott v. Perez*, 138 S.Ct. 2305, 2332 (2018) ("We have made clear that redistricting analysis must take place at the district level. In failing to perform that district-level analysis, the District Court went astray."). The Supreme Court explained in *Alabama Legislative Black Caucus v. Alabama*,

---

[4] Despite using "Plaintiffs" throughout the pleading, including allegations in Counts One and Two, Plaintiff Scott has acknowledged and conceded that he is not a party to the constitutional challenges to any Challenged House Districts. (*See* ECF No. 157-6 at Int. No. 1).

> Our district-specific language makes sense in light of the nature of the harms that underlie a racial gerrymandering claim. Those harms are personal. They include being personally subjected to a racial classification, as well as being represented by a legislator who believes his primary obligation is to represent only the members of a particular racial group. They directly threaten a voter who lives in the *district* attacked. But they do not so keenly threaten a voter who lives elsewhere in the State. Indeed, the latter voter normally lacks standing to pursue a racial gerrymandering claim.

135 S.Ct. 1257, 1265 (2015) (emphasis in original; internal quotations omitted). Therefore, it is not enough for an organization to allege it has members across the state. It is a district-by-district analysis where the organization must show they have at least one member in each challenged district who has suffered the personal harms of racial discrimination or racial gerrymandering.

In the Second Amended Complaint, SC NAACP offers the bare allegation that "members live in the Challenged House Districts" and these members have been and will continue to be harmed by their assignment to unconstitutionally racially gerrymandered districts and purposefully dilutive districts." (ECF No. 154 at ¶ 21). It is apparent that SC NAACP operates under the misconception that such bare allegation suffices for purposes of pleading, and SC NAACP continues to refuse to identify a single member in any of the Challenged House Districts, flagrantly refusing multiple discovery demands therefore. The SC NAACP's "logic" flies in the face of the Supreme Court's clear precedent in *Alabama Legislative Black Caucus*—and unless they can identify at least one of their members who claims to have been harmed by Act No. 117 and reside in each and every Challenged House District, Plaintiffs claims with respect to those districts must be summarily and immediately dismissed.

Looking at the first element for associational standing in *Hunt*, it cannot be disputed that SC NAACP fails to identify even one member who would have standing to sue in an individual right. The Sixth Circuit Court of Appeals has very recently noted that federal courts must "vigilantly ensure that an association's members have incurred a personal injury." *Ass'n of Am.*

*Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th 531, 534 (6th Cir. 2021).[5] Indeed, the Sixth Circuit dismissed a complaint where the plaintiff association "failed to plausibly plead that any member has been injured by the actions of the" defendant. *Id.* Based on the pleadings and incorporating the discovery responses and deposition testimony previously placed in the Court's record[6], SC NAACP does not meet the first prong of *Hunt* and does not have associational standing to litigate the Challenged House Districts.

In addition, the third prong of *Hunt*, the individual participation requirement, reflects the prudential concerns of "administrative convenience and efficiency." *United Food and Commercial Workers Union Local 751 v. Brown Group. Inc.*, 517 U.S. 544, 557 (1996). The organization lacks standing to assert claims of injunctive relief on behalf of its members where "the fact and extent" of the injury that gives rise to the claims for injunctive relief "would require individualized proof," *Warth*, 422 U.S. at 515–16, or where "the relief requested [would] require [ ] the participation of individual members in the lawsuit," *Hunt*, 432 U.S. at 343. Here, the racial gerrymandering and intentional discrimination claims require individualized participation because of the personal and specific harms those claims may carry. The fact that SC NAACP is intentionally shielding those

---

[5] The Sixth Circuit dismissed the complaint for lack of standing as there were not facts alleged in the complaint to support such a showing. *See also Spokeo, Inc. v. Robins*, 578 U.S. 330, 136 (2016) (making clear that a complaint must "clearly ... allege facts demonstrating" standing). Here, the Plaintiffs have not only failed to allege fact sufficient to support standing, but also refused to answer any document requests, interrogatories, requests to admit, or deposition questions. Thus, the Plaintiffs have had multiple opportunities to carry their burden, but have failed at each and every step.

[6] *See* Brenda Murphy Deposition Transcript (ECF No. 151-2); Plaintiffs' Objections and Responses to House Defendants' First Set of Interrogatories (ECF No. 151-1); Plaintiffs' Objections and Responses to House Defendants' First Set of Requests for Admission (ECF No. 157-3); Plaintiff Taiwan Scotts' Objections and Responses to House Defendants First Set of Interrogatories (ECF No. 157-6); Plaintiffs Objections and Responses to House Defendants First Set of Requests for Production (ECF No. 157-7).

potential individuals from this litigation clearly shows the organization lacks standing. In a similar situation, the Fourth Circuit found an organization failed to meet the third prong of the *Hunt* test, noting "the unusual position of not telling the members of its decision to litigate until after the suit had already been filed." *Maryland Highways Contractors Ass'n, Inc. v. State of Md.*, 933 F.2d 1246, 1253 (4th Cir. 1991). The Fourth Circuit added that such "secrecy raises suspicion regarding the motives of the Association." *Id.*

Plaintiffs have repeatedly suggested that *Nat'l Ass'n for Advancement of Colored People ("NAACP") v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958) stands for the proposition that "where compelled membership disclosure could violate individual members' freedom of association and right to privacy, 'particularly where a group espouses dissident beliefs,' associational standing is also appropriate." (ECF No. 124 at 4). However, the Sixth Circuit made clear that *Patterson* "did not address when an entity that has sustained no injury may sue on behalf of those who have." *Ass'n of Am. Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th at 538-39. The Sixth Circuit explained that in *Patterson*, "the NAACP was sued in state court by state officials who sought its membership list," and, because the state was seeking the identities of **all** members, the Supreme Court "held that the NAACP could invoke the constitutional rights of its members in defense against producing this list." *Id.* at 539 (citing *Patterson*, 357 U.S. at 452-60). The Sixth Circuit clearly stated, however, that "[t]hese facts show that *Patterson* concerned third-party standing, not associational standing." *Id.* Thus, *Patterson* "has not jettisoned the usual rule that the plaintiff before the court must have suffered an injury." *Id.*

House Defendants requested SC NAACP "[p]rovide a list or otherwise identify by name and address all 'members and constituents' of SC NAACP as described in the Complaint and specifically identify for each person which House District he/she/they lives in" in order to assess

the factual basis for Plaintiffs' allegations of standing in the pleading. (ECF No. 151-1 at 12). SC NAACP objected to this Interrogatory "to the extent it seeks disclosure of the identity of its membership or volunteers that is protected by *NAACP v. Alabama*, 357 U.S. 449 (1958) (holding, *inter alia*, that "[c]ompelled disclosure of membership in an organization engaged in advocacy of particular beliefs" violates the constitutional right to freedom of assembly), or that otherwise infringes upon SC NAACP's or its members' or volunteers' right to privacy under federal, state, and any other applicable laws." (ECF No. 151-1 at 13-15). During her deposition, the President of SC NAACP, Brenda Murphy, was instructed by NAACP Legal Defense and Education Fund counsel not to provide any information or documents related to her organization's membership in the Challenged House Districts.[7] (*See* ECF No. 151-2).

Despite Plaintiffs' unsupported claims, the Supreme Court has noted that the "requirement of naming the affected members has never been dispensed with in light of statistical probabilities [of being injured], but only where all the members of the organization are affected by the challenged activity." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009) (citing *Patterson*, 357 U.S. at 459) (all organization members affected by release of membership lists). To satisfy associational standing requirements, "an organization must do more than identify a likelihood that the defendant's conduct will harm an unknown member in light of the organization's extensive size or membership base." *Physicians & Surgeons v. United States Food & Drug Admin.*, 13 F.4th at 543 (citing *Summers*, 555 U.S. at 498-99). Rather, the "organization must instead identify a

_____

[7] During Ms. Murphy's deposition on February 4, 2022, NAACP Legal Defense and Education Fund counsel instructed Ms. Murphy not to answer any questions about membership of her organization. *See* ECF No. 151-1 at 22:11-24; 64:20-65:14; 70:2-4; 171:19-24; 182:22-24. House Defendants noted that such an objection was not proper under Local Civ. Rule 30.04(C) (D.S.C.). *See* ECF No. 151-1 at 65:2-3. Still, Plaintiffs have yet to file a motion for a protective order on the matter, despite the agreed upon three-day time period has long since elapsed. (*See* ECF No. 118 at ¶ 4). Moreover, they have yet to provide any written discovery on this issue.

member who has suffered (or is about to suffer) a concrete and particularized injury from the defendant's conduct." *Id.*; *see also S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (explaining, on an appeal from a motion to dismiss, that a homeowners' association had "failed to identify a single specific member" and that "[t]his failure to follow the requirement articulated in *Summers* would seem to doom its representational standing claim" while rejecting attempts to evade *Summers*).

The Supreme Court has stated that mere allegations "that some (unidentified) members …will suffer (unidentified) concrete harm as a result" of the defendants' actions is a "novel approach to the law of organizational standing," which "would make a mockery of our prior cases." *Summers*, 555 U.S. at 499. A "cryptic" reference to the identity of members of an association will not suffice. *Pharm. Rsch. & Manufacturers of Am. v. Becerra*, No. 1:21-CV-1395 (CJN), 2021 WL 5630798, at *5 (D.D.C. Dec. 1, 2021). The complaint, together with materials incorporated by reference, must provide the Court with sufficient information to identify by name at least one member that possesses standing to sue. *Id.*

In the Second Amended Complaint, Plaintiffs allege only the members in the Challenged House Districts "have been and, if H. 4493 … [is] not enjoined, will continue to be harmed by their assignment to unconstitutionally racially gerrymandered districts and purposefully dilutive districts." (ECF No. 154 at ¶ 21). In Plaintiffs' case, the Challenged House Districts consist of 29 of the 124 House Districts enacted by Act No. 117. (ECF No. 154 at ¶ 12). While SC NAACP alleges it has members in every county in South Carolina, the Challenged House Districts do not encompass all 46 counties. House Defendants sought and were refused any evidence demonstrating Plaintiffs can carry their burden of proving the factual basis for standing so as to assure this Court has subject-matter jurisdiction. To this point, Plaintiffs have failed to meet their

burden to establish standing, and instead ask the Court to merely assume, or to trust, that SC NAACP represents the interests of actual members in each Challenged District that have allegedly been injured by the actions of House Defendants.

As detailed in House Defendants' Motion to Compel (ECF No. 157), SC NAACP has been unable, or unwilling, to provide <u>any</u> information about its alleged members—including any allegedly residing in the Challenged House Districts, much less information about any persons in positions of leadership. Consequently, Plaintiffs do not meet their burden of establishing associational standing.

Moreover, a voter who is not directly harmed by the Challenged House Districts "lacks standing to pursue a racial gerrymandering claim." *Alabama Legislative Black Caucus*, 575 U.S. at 263 (citing *United States v. Hays*, 515 U.S. 737, 744–45 (1995)). The Supreme Court's "district-specific language makes sense in light of the nature of the harms that underlie a racial gerrymandering claim." *Id.* "Those harms are personal." *Id.* They include being "personally ... subjected to [a] racial classification," *Bush v. Vera*, 517 U.S. 952, 957 (1996) (principal opinion), as well as being represented by a legislator who believes his "primary obligation is to represent only the members" of a particular racial group, *Shaw v. Reno*, 509 U.S. 630, 648 (1993). Those harms "directly threaten a voter who lives in the district attacked," but the harms "do not so keenly threaten a voter who lives elsewhere in the State." *Alabama Legislative Black Caucus*, 575 U.S. at 263. Indeed, this District had made clear that "[i] is not enough for plaintiffs to allege that they reside in a district adjacent to a racially gerrymandered district and that the racial composition of their district would have been different absent the racial gerrymander." *Backus v. South Carolina*, 857 F. Supp. 2d 553, 560 (D.S.C.), *aff'd*, 568 U.S. 801 (2012) (citing *United States v. Hays*, 515 U.S. 737, 746 (1995)). "Plaintiffs cannot assert a generalized grievance and must show that they

have been personally denied equal protection." *Id*.

In this case, SC NAACP does not point to any specific, personal harm suffered by any one or more members in each of the Challenged House Districts. Indeed, it is impossible to point to personalized harm when not a single person has been identified. Plaintiffs instead do exactly what the court in *Backus* warned was insufficient to establish standing – merely allege a "generalized" equal protection claim. Because SC NAACP has failed to identify any members in the Challenged House Districts and has failed to identify any specific, personalized harm suffered in each and every Challenged District, Plaintiffs do not have standing and this Court does not have subject-matter jurisdiction over their challenges to the House Districts. As such, these claims against the House Defendants must be dismissed.

## II.  Further Discovery Pursuant to The Court's Order On Plaintiffs' Motion to Compel Must Be Stayed Pending Resolution of the Threshold Issue of Standing.

House Defendants' earlier Motion to Dismiss was pending and briefing closed when this Court granted in part and denied in part Plaintiffs' Motion to Compel Discovery (ECF No. 153) on February 10, 2022. In that Order, the Court delineated seven categories of discovery House Defendants were to make available to Plaintiffs, despite expressly acknowledging the "significant" concerns of overbreadth in Plaintiffs' discovery demands and the importance of the legislative privilege and immunity. (*See* ECF 153 at n.1). Because of the significance of the privilege and the burdensome nature of the discovery requests[8], House Defendants respectfully move for an

---

[8] Importantly, and as noted in House Defendants' Motion to Compel (ECF No. 157), Plaintiffs have made no attempt to engage in the meet and confer directed by the Court, and therefore that has been no resolution of the threshold issues of overbreadth—meaning that as served, Plaintiffs' discovery still demands an expansive universe of information yet challenges fewer than a fourth of the 124 House Districts. House Defendants requested consultation with Plaintiffs on these issues on February 12, 2022, but Plaintiffs have yet to respond or schedule a meet and confer.

immediate stay of that Order pending the resolution of the standing issue.[9]

On December 22, 2021, during the first and only status conference that has been held in this case, the Court discussed expectations for how it intended to consider and decide this case. This conference occurred before the First Amended Complaint was filed on December 23, 2021 and before this Court could be aware of the standing deficiencies or discovery issues in this case.[10] Roughly a month and a half after that status conference, there remains no evidence or corroboration of the factual allegations needed to establish standing.

While House Defendants certainly appreciate the Court's concerns about timing and efficiency in this case, neither the Court nor House Defendants could have foreseen Plaintiffs' inability to establish standing or SC NAACP's insistent refusal to put forth even a modicum of evidence to support its standing position. For that reason, and the fact that Court clearly did not take that the standing issue into account in performing any balancing if interests in the Court's Order on the Motion to Compel, (*see* ECF No. 153 at 11-15), House Defendants respectfully request an immediate stay of all discovery that would touch on the issue of legislative privilege. [11]

---

[9] To the extent necessary, the House Defendants are prepared to file a motion seeking other relief such as a motion to reconsider pursuant to Fed. R. Civ. P. 54(b), 59(e), and/or 60(b).

[10] At that conference, Judge Childs observed she "just can't conceive of the case itself going away on a motion to dismiss, which is on these pleadings. So that's just some consideration for you all. I don't want to prejudge anything." (ECF No. 85, 90-1 at 4:24-5:4). In response, counsel for House Defendants noted the option to "file a motion to dismiss and … a parallel answer," to which Judge Childs responded that would be "great." *Id*. at 18:20-19:6. However, Judge Gergel later stated the following: "I mean, Mr. Moore, just as a practical matter, we will likely address any issues you would raise in a motion for to dismiss at the final order stage. It's just something when you're compressing all this into such a short period of time, it's just -- as a Court, it's just so much easier just to address in one comprehensive order." *Id*. at 19:7-13. House Defendants have done their best to accommodate the Court's preferences—but it is now crystal clear that an immediate decision on the standing issue with respect to the Challenged House Districts is required  before discovery that touches on the issue of legislative privilege can continue.

[11] House Defendants specifically requested oral argument on the Plaintiff's Motion to Compel.

The Court's Order extensively relies on *Bethune-Hill v. Va. State Bd. Of Elections*, 114 F. Supp. 3d 323, 337 (E.D. Va. 2015) and the so-called "*Bethune-Hill* factors."[12] However, *Bethune-Hill* is not mandatory authority in the District of South Carolina and is easily distinguishable from the instant case—primarily because the Plaintiffs in Bethune-Hill had standing to sue. The Complaint in *Bethune-Hill* listed by name 12 individual plaintiffs and which challenged district they resided in at the time. *See* Complaint (ECF No. 1) at ¶¶ 1, 7-18, *Bethune-Hill v. Va. State Bd. Of Elections* 2014 WL 7495103 (E.D. Va. 2014). The Court in *Bethune-Hill* was in an appropriate position to do a balancing test in that case because it involved *appropriate* plaintiffs with *proper* standing.

Plaintiffs own pleadings and discovery highlight the deficiencies in their standing argument.[13] Plaintiffs have produced discovery that shows that one Plaintiff may well have standing to sue with respect to the Challenged *Congressional* Districts, but have completely failed

---

House Defendants again respectfully request an opportunity to be heard and to supplement the record as appropriate on the critical and potentially dispositive issues raised in this Motion before House Defendants are required to produce any documents or engage in any discovery that touches in the issue of legislative (or attorney-client) privilege.

[12] The Court's Order does not address precedent from this District in *Backus v. South Carolina*, No. 3:11-cv-03120-HFF-MBS-PMD (D.S.C. Feb. 8, 2012). (*See* ECF No. 134-7). The *Backus* Order prohibited "Plaintiffs from inquiring into any matters protected by legislative privilege," meaning that "Plaintiffs are prohibited from asking any questions concerning communications or deliberations involving legislators or their agents regarding their motives in enacting legislation." *Id.* (citing *Alexander v. Holden*, 66 F.3d. 62, 68 n.4 (4th Cir. 1995); *Berkley v. Common Council of City of Charleston*, 63 F.3d 295,303 n.9 (4th Cir. 1995)). Plaintiffs have not distinguished *Backus* from the present case. Indeed, Plaintiffs did not even attempt to address *Backus* in their Motion to Compel. (*See* ECF No. 119). As this Court is aware, *Backus* involved the last redistricting cycle in the state of South Carolina and is directly applicable to this case. Instead of address that precedent, both Plaintiffs' and the Court's Order focus on district court cases from outside the District of South Carolina.

[13] Mr. Scott's responses to Interrogatories make it clear that he is not a plaintiff with respect to the Challenged House Districts. (*See* ECF No. 157-6).

to produce any discovery that supports an argument that anyone has standing to sue with respect to the Challenged *House* Districts. The only individual named in the Second Amended Complaint, or any other complaint, has indicated he is not a plaintiff to the Challenged House Districts. As a result, this Court must immediately stay its Order and all discovery that would delve into legislatively privileged materials until it reaches a decision on standing.

While the above-discussed issue of standing is pending before this Court, House Defendants request that further discovery be stayed that touches on issues related to legislative privilege be stayed. Local Civ. Rule 16.00 expressly provides that the Court, upon motion by a party, "may stay entry of the scheduling order(s) and all federal and local civil rule disclosures and conference requirements pending resolution of a motion . . . to dismiss or other dispositive motion." Local Civ. Rule 16.00(C) (D.S.C.). The Supreme Court has held that federal courts have broad discretion to stay discovery pending resolution of a motion to dismiss. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In doing so, any delay in discovery must be balanced against the possibility that the motion will be granted and eliminate the need for such discovery, "[i]t may be helpful to take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted." *Simpson v. Specialty Retail Concepts, Inc*., 121 F.R.D. 261, 263 (M.D.N.C. 1988).

As a district judge in this district recently noted, "the potential benefit to both parties in staying discovery for a limited period of time pending a ruling on the Motion to Dismiss/Motion to Stay outweigh[ed] the risk of delay." *Boudreaux Grp., Inc. v. Clark Nexsen, Owen, Barbieri, Gibson, P.C.*, No. 8:18-CV-1498-TMC, 2018 WL 9785308, at *5–6 (D.S.C. Nov. 20, 2018). The Fourth Circuit has also affirmed such stays pending the resolution of a Rule 12 motion. *See Chaudhry v. Mobil Oil Corp.*, 186 F.3d 502 (4th Cir. 1999); *see also Thigpen v. United States*, 800

F.2d 393, 396–97 (4th Cir.1986) ("Nor did the court err by granting the government's motion under Fed. R. Civ. P. 26(c) to stay discovery pending disposition of the 12(b)(1) motion.... Trial courts ... are given wide discretion to control this discovery process ...."), *overruled on other grounds*, *Sheridan v. United States*, 487 U.S. 392 (1988). Other circuits have routinely done the same. *See, e.g.*, *Dynamic Image Tech., Inc. v. United States*, 221 F.3d 34 (1st Cir. 2000) (affirming stay of discovery pending resolution of motion to dismiss on sovereign immunity grounds); *Batchelder v. Kawamoto*, 147 F.3d 915 (9th Cir. 1998) (noting district court's stay of discovery prior to dismissing complaint with prejudice); *Patterson v. United States Postal Serv.*, 901 F.2d 927 (11th Cir. 1990) (affirming stay pending resolution of summary judgment motion where discovery was not likely to produce a genuine issue of material fact and defendant was entitled to judgment as a matter of law); *Ingram Corp. v. Ray McDermott & Co.*, 698 F.3d 1295, 1304 n. 13 (5th Cir. 1983) (noting propriety of stay pending motion to dismiss on statute of limitations and release grounds).

"Federal district courts often stay discovery pending the outcome of dispositive motions that will terminate the case." *Cleveland Const., Inc. v. Schenkel & Schultz Architects, P.A.*, No. 3:08-CV-407RJCDCK, 2009 WL 903564, at *2 (W.D.N.C. Mar. 31, 2009). House Defendants have good cause for this Court to stay discovery. First, as discussed again above, House Defendants have a strong basis in both law and fact for the granting of its Motion to Dismiss on standing grounds, as well as for failure to state a claim upon which relief can be granted. (*See also* ECF No. 91 and 151). Thus, the dispositive motion here has "the potential to dispose of the case without the need for discovery." *Cleveland Const., Inc.*, 2009 WL 903564, at *3.

Second, Plaintiffs' discovery requests are voluminous in nature and not proportional to the needs of this case. In essence, Plaintiffs are engaging in seemingly unguided and unfocused discovery. "Due to the complexity and potential sensitivity of the discovery requests, a stay to

decide the dispositive motion is appropriate inasmuch as a decision favorable to the defendant on the motion to dismiss may obviate the need for some or even all of such expansive discovery." *Blankenship v. Trump*, No. 2:19-CV-00549, 2020 WL 748874, at *3 (S.D.W. Va. Feb. 13, 2020). Such "factors favor granting a stay." In addition, SC NAACP has not shown it requires any discovery in order to respond to House Defendant's standing argument and such discovery on its part is not necessary. Plaintiffs will not be prejudiced by a brief stay in order to resolve this threshold issue.

There are also a number of other factors that weigh in favor of a stay. First, "the interests of judicial economy favor reducing the burden of discovery on parties when the motion to dismiss raises potentially dispositive legal issues and the resolution of which may obviate the need for or limit discovery in this case." *Blankenship v. Trump*, 2020 WL 748874, at *4. In addition, the potential hardship to House Defendants favors granting a stay of discovery, especially in light of the legislative privilege issues present here. Furthermore, House Defendants will be prejudiced if this Court permits discovery to continue and later dismisses the Plaintiffs' Second Amended Complaint because House Defendants would have expended significant resources on discovery litigation and potentially disclosed privileged information to Plaintiffs who were never entitled to such information. Therefore, these factors weigh in favor of a stay of discovery and this Court's Order (ECF No. 153).

Finally, Plaintiffs name James H. Lucas (in his official capacity as Speaker of the South Carolina House of Representatives), Chris Murphy (in his official capacity as Chairman of the South Carolina House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee) in their Second Amended Complaint. However, while these defendants are the

only ones sued, Plaintiffs have not made a showing that the named House Defendants have any control over the documents requested by Plaintiffs, or, indeed, that most of the documents exist. In addition, some of the documents that appear to be covered by the Court's Order on the Motion to Compel implicate attorney-client privilege and for a number of other reasons, it is impossible for the Plaintiffs to comply with the Court's Order as currently written. House Defendants request the opportunity to address this issue if necessary before the Court at oral argument on Tuesday, February 15, 2022.

## CONCLUSION

House Defendants respectfully move this Court to dismiss Plaintiffs' Second Amended Complaint (ECF No. 154) for lack of standing. Plaintiffs also request that the Court stay the implementation of this Court's Order (ECF No. 153) (and/or vacate or reconsider that Order) until this threshold issue is decided. House Defendants also request that the Court order the Plaintiffs to file an immediate response to this Motion and request oral argument on this Motion as soon as practicable.

Respectfully submitted,

*s/ Michael A. Parente*
Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth  (Fed. ID No. 11704)
Erica H. Wells (Fed. ID No. 13206)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
EWells@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com

William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900
Greenville, SC 29601
Telephone: 864.370.2211
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com

February 14, 2022
Columbia, South Carolina

*Attorneys for James H. Lucas, Chris Murphy,*
*and Wallace H. Jordan*