**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, <br><br> and <br><br> TAIWAN SCOTT, on behalf of himself and all other similarly situated persons, <br><br>                 Plaintiffs, <br><br> v. <br><br> THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission, <br><br>                 Defendants. | Civil Action No. 3:21-cv-03302-JMC-TJH-RMG <br><br><br><br> **REPLY TO PLAINTIFFS' OBJECTIONS TO HOUSE DEFENDANTS' PRIVILEGE LOG** |

## INTRODUCTION

Defendants James H. Lucas (in his official capacity as Speaker of the South Carolina House of Representatives), Chris Murphy (in his official capacity as Chairman of the South Carolina House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as

Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee) (collectively, the "**House Defendants**"), by and through undersigned counsel and pursuant to the Court's February 8, 2022 Text Order (ECF No. 139), hereby provide this Reply to Plaintiffs' Objections to House Defendants' Privilege Log.

## BACKGROUND

On February 10, 2022, the Court issued an Order and Opinion (ECF No. 153) (the "**Order**") granting and denying in part Plaintiffs' Motion to Compel (ECF No. 119). Prior to the issuance of the Order, the Court had previously issued a Text Order on February 8, 2022 (ECF No. 139) (the "**Text Order**") that called for House Defendants to submit a privilege log by February 9, 2022, and Plaintiffs were permitted to file any objections thereto by 5pm on Friday, February 11, 2022, to which House Defendants may reply by 5pm on Saturday, February 12, 2022. The Order issued on Plaintiffs' Motion to Compel implicates the Text Order at least to the extent the Court acknowledged House Defendants have repeatedly raised objections to the scope of Plaintiffs' discovery requests and "[w]hile these concerns regarding the scope of discovery are significant, the court notes Plaintiffs' Motion is solely directed to the question of whether legislative privilege applies to the requested documents." (ECF No. 153, n.1). The Order imposes on the parties an explicit obligation to confer on the "permissible scope of discovery" and "the production of any documents or other discovery in which House Defendants have asserted a privilege claim in their privilege log (ECF No. 145) and in which Plaintiffs have objected." (ECF No. 153 at 17-18). Rather than attempt to consult in good faith and promptly meet and confer, Plaintiffs ignored the instruction of the Order and filed with this Court an objection to *each and every* assertion of privilege by the House Defendants. (ECF No. 155).

2

A few hours later at nearly midnight on Friday, February 11, 2022, Plaintiffs provided to House Defendants their privilege logs—which notably came nine days after Plaintiffs provided initial written discovery (with no attendant production) to the House Defendants. **Exhibit A**, (C. Murphy Email with Ps' Priv. Log). In striking contrast to the whole cloth objections to every one of House Defendants' entries, it appears Plaintiffs were generous and broad in their designations of privilege for documents and information for which privileged has been waived or would be nonexistent. For instance, Plaintiffs claim work product protection over documents dated in 2018. **Exhibit A** at Entry Nos. 6, 9, 71-72. For that to be true, which it very well could be, counsel for Plaintiffs would have been anticipating litigation against House Defendants for the Challenged House Districts more than three years prior to the enactment of H. 4493, indeed well before the Census that underpins the current redistricting cycle. Nevertheless, the objections interposed by Plaintiffs regarding the House Defendants' assertions of privilege are largely without merit and, for the reasons outlined below, improper.

## ARGUMENT

I. **PLAINTIFFS ARE NOT ENTITLED TO CHALLENGE THE HOUSE DEFENDANTS' PRIVILEGE DESIGNATIONS BECAUSE PLAINTIFFS HAVE NOT DEMONSTRATED THEY HAVE STANDING TO CHALLENGE ANY HOUSE DISTRICT AS BEING RACIALLY GERRYMANDERED.**

Due to the nature of the harms that underlie a racial gerrymandering claim, the voter that *lives in the district* "attacked" by the legislature has standing. *See Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 263 (2015). Based on the Second Amended Complaint for Injunctive and Declaratory Relief, Taiwan Scott does not live in any one of the House Districts challenged by Plaintiffs (the "**Challenged House Districts**") (ECF No. 154, ¶¶12, 22–23). The South Carolina State Conference of the NAACP ("**Plaintiff SC NAACP**") has not demonstrated that it has any members that reside in the Challenged House Districts, nor is it willing to do so.

3

Without question, Plaintiff Scott is not entitled to obtain discovery from House Defendants on any matter identified on the privilege log. As to Plaintiff SC NAACP, the Plaintiff organization is not entitled to obtain discovery or to assert challenges to the privilege designations in the instant case because it has not met the requisite threshold showing to demonstrate they are proper parties to challenge any of the House Districts put in place by the passage of H. 4493 (Act No. 117). House Defendants incorporate by reference its prior arguments regarding Plaintiffs' standing (ECF Nos. 91 at 6–10; 134 at 15; 151 at 2–8) and discuss the continuing infirmity only in cursory fashion here.

During the deposition of Brenda Murphy, President of Plaintiff SC NAACP, Ms. Murphy in addition to refusing to identify a single member that resides in any one Challenged District[1], confirmed information regarding Plaintiff SC NAACP's federal employment identification number that tends to indicate that Plaintiff SC NAACP may not in fact be "South Carolina State Conference, NAACP." South Carolina State Conference, NAACP is unincorporated, an association, a 501(c)(4) organization, and, according to its registration with the South Carolina Secretary of State, a charitable organization with a federal employment identification number different than the one Ms. Murphy provided during her deposition. South Carolina State Conference, NAACP presumably is the organization that has members in South Carolina. It is therefore unclear whether Plaintiff SC NAACP has a single member in South Carolina. Furthermore, Plaintiff SC NAACP has explicitly and repeatedly refused to identify even a single member in a single Challenged District so as to support standing in this proceeding. Accordingly,

---

[1] During Ms. Murphy's deposition on February 4, 2022, NAACP Legal Defense and Education Fund counsel instructed Ms. Murphy not to answer any questions about membership of her organization. *See* Murphy Dep. 22:11-24; 64:20-65:14; 70:2-4; 171:19-24; 182:22-24 (ECF No. 151-2). House Defendants noted that such an objection was not proper under Local Civ. Rule 30.04(C) (D.S.C.). *See* Murphy Dep. 65:2-3. Still, Plaintiffs failed to file a motion for a protective order on the matter, despite the agreed upon three-day time period has long since elapsed. (*See* ECF No. 118 at ¶ 4).

4

neither Plaintiff has standing in the instant case regarding the Challenged House Districts and cannot challenge the House Defendants' privilege designations.

## II. PLAINTIFFS' CHALLENGES ARE INCONGRUENT WITH THE SCOPE OF ITS CONSTITUTIONAL CHALLENGE AND THE COURT'S ORDER.

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or defense, and (3) proportional to the needs of the case. *See, e.g., Gordon v. T.G.R. Logistics, Inc.*, No. 16-cv-00238-NDF, 2017 WL 1947537, at *2 (D. Wyo. May 10, 2017). In this case, the Plaintiffs sought documents and information "concerning the districts adopted in H. 4493 and Predecessor Maps," with Predecessor Maps defined by Plaintiffs as "any previous South Carolina House of Representatives redistricting map in whole or in part that were considered, created, developed, and/or proposed by Defendants." **Exhibit B** (Pls' Req. for Prod. To Defs at 5, 11). This exceedingly broad scope stands in stark contrast to the allegations of the First and Second Amended Complaint, both of which demonstrate the constitutional challenges are to at most 29 of the 124 House Districts. (*E.g.* ECF No. 154 at ¶ 12). The letter of the law is clear, Plaintiffs' claims of racial discrimination in redistricting require a "district-by-district" analysis, and an analysis of racial gerrymandering in the State "as a whole" would be legally erroneous. *Ala. Legis. Black Caucus*, 575 U.S. at 255. Furthermore, the Order's scope is specific to H. 4493, and neither the South Carolina House of Representatives nor the South Carolina Senate made substantive changes to the House Districts in H. 4493 after December 6, 2021. Governor Henry McMaster signed H. 4493 into law on December 10, 2021. Accordingly, there is simply no support for Plaintiffs' objections for documents in the privilege log <u>after</u> December 10, 2021, notably well after the initial

complaint was filed in this Court (ECF No. 1), and certainly such documents are not evidence of legislative intent in the "development, design and/or revision" of H. 4493.

### III. HOUSE DEFENDANTS' DRAFT MAPS AND DEMOGRAPHICS ARE IN FACT BILL-DRAFTING ACTIVITIES THAT ARE PROTECTED BY LEGISLATIVE PRIVILEGE.

Plaintiffs object to the draft maps and demographic documents that comprise line items 1–495, 498, 501, 504, 508, 521, 529, 538 of the House Defendants' Privilege Log (ECF No. 155-1). Their objection is primarily based on the Order and secondarily a collection of off-point cases. It is clear, however, that the draft maps and resulting demographic data are the core components of the legislative process, and integration of these maps drawn by individual legislators are a part of the rough composite underlying H. 4493, and should be afforded legislative privilege.

> In the redistricting context, full public disclosure would hinder the ability of party leaders to synthesize competing interests of constituents, special interest groups and lawmakers, and draw a map that has enough support to become law. This type of legislative horse trading is an important and undeniable part of the legislative process.

*Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *9 (N.D. Ill. Oct. 12, 2011). Legislators in earnest worked to craft parts of this legislation, some members going to the map room several times, alone or with other legislators. The maps could reflect a complete or incomplete thought, halting the map drawing session midstream, or any other myriad of unknown circumstances or issues. The maps could reflect a legislator's desire to keep his or her mother in the district, regardless of the resulting demographics of the district, or a curiosity about how various precincts or communities impact their constituency and colleagues.

The draft individual maps created by individual legislators prior to the publication of a draft working map by the Redistricting Ad Hoc Committee should be afforded legislative

privilege. Chilling this kind of legislative activity and invading a legislator's individual privilege particularly where the documents cannot prove motive or intent since it cannot demonstrate at what point the legislator stopped drawing his or her map, is, respectfully, shortsighted.

### IV. PLAINTIFFS SUMMARILY OBJECTING TO EVERY PRIVILEGE LOG ENTRY IS IMPROPER AND DOES NOT MEET THE SPIRIT OF THE ORDER

House Defendants are unable to individually respond to what amounts to Plaintiffs' wholesale rejection of every single privilege claim on a several hundred-item privilege log. Moreover, this tactic clearly does not comport with the Court's instruction and expectation that the parties would work in good faith to address both the overbreadth issues and work to lessen privilege disputes. (ECF No. 153 at 17-18). Particularly in light of the other time constraints attendant to this case and the current schedule, House Defendants respectfully request that if the Court desires a line item response, that the Court allow more than 24 hours to do so.

*[SIGNATURE PAGE FOLLOWS]*

Respectfully submitted,

*/s/ Mark C. Moore*
Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Erica H. Wells (Fed. ID No. 13206)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
EWells@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com

William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900
Greenville, SC 29601
Telephone: 864.370.2211
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com

February 12, 2022
Columbia, South Carolina

*Attorneys for James H. Lucas, Chris Murphy, and Wallace H. Jordan*