IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| The South Carolina State Conference of the NAACP, and Taiwan Scott, *on behalf of himself and all other similarly situated persons*,<br><br>                        Plaintiffs,<br><br>v.<br><br>Thomas C. Alexander, *in his official capacity as President of the Senate Judiciary Committee;* James H. Lucas, *in his official capacity as Speaker of the House of Representatives*; Chris Murphy, *in his official capacity as Chairman of the House of Representatives Judiciary Committee*; Wallace H. Jordan, *in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee*; Howard Knapp, *in his official capacity as interim Executive Director of the South Carolina State Election Commission*; John Wells, *Chair*, Joanne Day, Clifford J. Elder, Linda McCall, and Scott Moseley, *in their official capacities as members of the South Carolina State Election Commission*,<br><br>                        Defendants. | Civil Action No.: 3:21-cv-03302-JMC<br><br><br><br><br>**ORDER AND OPINION** |

Before the court are the Motion to Dismiss Plaintiffs' Amended Complaint by House Defendants James H. Lucas, Chris Murphy, and Wallace H. Jordan (ECF No. 91) and House Defendants' Motion to Dismiss Second Amended Complaint and All Predecessor Complaints With Respect to the Challenged House Districts (ECF No. 158), which argue that Plaintiffs lack Article III standing to pursue their racial gerrymandering claims. House Defendants also contend that Plaintiffs failed to plausibly plead racial gerrymandering and that this is, in reality, a non-

1

justiciable partisan gerrymandering action disguised as a racial gerrymandering action. Finally, House Defendants seek a stay of certain discovery deadlines pending a ruling on these motions. (ECF No. 159). For the following reasons, the court **DENIES** the Motions.

## I.     BACKGROUND

This lawsuit alleges that the South Carolina legislature unconstitutionally relied on race when composing certain districts for the State House of Representatives. (ECF No. 154 ¶ 2.) Following a recent amendment to the operative complaint, Plaintiffs also challenge the composition of three of South Carolina's congressional districts for the U.S. House of Representatives (Districts 1, 2, and 5) as unconstitutional racial gerrymanders. (*See id.* at 69.)

There are two Plaintiffs. Plaintiff Taiwan Scott is a Black South Carolina voter residing in South Carolina's first congressional district. (*Id.* ¶ 22.) Plaintiff South Carolina State Conference of the National Association for the Advancement of Colored People ("the State Conference") is a nonprofit civil rights organization that "seeks to remove all barriers of racial discrimination through democratic processes," including discrimination in voting rights. (*Id.* ¶ 18.) The State Conference is a subsidiary of the national NAACP. (*Id.* ¶ 17.) It has 77 branches across the state, "including at least one branch in each of South Carolina's 46 counties." (*Id.* ¶ 19.) It has over 13,000 total members, who "include registered voters in the Challenged House and Congressional Districts." (*Id.* ¶¶ 20, 21.)

## II.     LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). The "court must accept as true all of the allegations contained in a complaint," but cannot accept mere "[t]hreadbare recitals of the elements of a cause

of action." *Id.* The same standard generally applies to both a motion to dismiss for failure to state a claim under Rule 12(b)(6) and a motion to dismiss for lack of standing under Rule 12(b)(1). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (standing "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation"). But when a defendant presents a "factual challenge" by producing evidence that contradicts or undermines the complaint's allegations, the court has "discretion to go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quotation marks omitted).

### III.     ANALYSIS

#### A. Standing

Racial gerrymandering claims apply "district-by-district," not "to a State considered as an undifferentiated 'whole.'" *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 262 (2015). When "a voter lives in" a particular electoral district that is the subject of an illegal racial gerrymander, that voter experiences "personal" harms, including being "subjected to a racial classification" and "being represented by a legislator who believes his primary obligation is to represent only the members of a particular racial group." *Id.* at 263 (quotation marks and alterations omitted). For that reason, a person has "standing to sue in his or her own right when that [person] resides in [a] district that he alleges was the product of a racial gerrymander." *Alabama Black Caucus*, 575 U.S. at 269 (quotation marks omitted). Because these harms "do not so keenly threaten a voter who lives elsewhere," however, such a "voter normally lacks standing to pursue a racial gerrymandering claim." *Id.* at 263; *accord Gill v. Whitford*, 138 S. Ct. 1916, 1930 (2018) ("[A] plaintiff who alleges that he is the object of a racial gerrymander . . . has standing to assert only that his own district has been so gerrymandered.").

Applying these principles, Scott has adequately alleged standing to challenge South Carolina's first congressional district by alleging that he is a Black voter living in that district. (ECF No. 154 ¶ 22.) House Defendants have offered no basis to question that straightforward factual allegation. That is "sufficient" to challenge the district in which Scott resides. *Alabama Black Caucus*, 575 U.S. at 263.

As for the State Conference, "an organization has standing to bring suit on behalf of its members when its members would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires individual members' participation in the lawsuit." *Alabama Black Caucus*, 575 U.S. at 269 (quotation marks and italics omitted). The State Conference therefore has standing if it plausibly alleges (1) it has members who reside in a district that has been racially gerrymandered; (2) combatting racial gerrymandering is germane to its purpose; and (3) there is no need for individual members to participate in the litigation.

Only the first of those factors is seriously at issue here. The second is satisfied because combatting racial gerrymandering is unquestionably "germane" to the NAACP's purpose. As for the third factor, House Defendants assert that "individualized participation" of voters may be necessary, ECF No. 158 at 9, but they have offered no explanation why evidence regarding individual voters would be necessary to resolve the racial gerrymandering claims here, which turn on the intent and actions of the *legislators*, not of individual voters.

At least at the pleading stage, the State Conference also has plausibly alleged that it has members who are voters residing in each challenged district. (ECF No. 154 ¶¶ 19–21.) That allegation is more than plausible, given the State Conference's unchallenged allegation that it has over 13,000 members in South Carolina, including members in all 46 counties. (*Id.* ¶ 21.)

Although the allegations would be even clearer if the complaint specifically alleged that the State Conference has members in "*each*" challenged district, at this early stage the State Conference is entitled to have the language of the complaint read, and reasonable inferences drawn, in its favor. *See Beck*, 848 F.3d at 270; *cf. Alabama Black Caucus*, 575 U.S. at 270 (holding, even after bench trial, that evidence the challenger Caucus had members in "almost every county" and existed specifically to advance minority representation "support[ed] an inference that the organization has members in all of the" relevant "districts"). Further dispelling any doubt raised by the complaint's semantics, the State Conference's opposition to the motion to dismiss plainly states that "its members live in *each* of the Challenged Districts." (ECF No. 124 at 4 (emphasis added).)

House Defendants' contrary arguments misunderstand the State Conference's burden at the pleading stage. They insist that, unless the State Conference "can identify at least one of their members" residing "in each and every Challenged House District," the claims "must be summarily and immediately dismissed." (ECF No. 158 at 8.) But, like other elements of a plaintiff's case, standing must simply be "supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Absent contrary evidence, a plausible allegation suffices. *See Beck*, 848 F.3d at 270; *accord Hancock County Board of Supervisors v. Ruhr*, 487 Fed. Appx. 189, 198 (5th Cir. 2012) (noting that the court is "aware of no precedent holding that an association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing").

House Defendants claim that they have, in fact, introduced countervailing evidence, namely discovery responses refusing to disclose the names of individual members. (*See* ECF No. 158 at 10–11.) But these responses are not evidence that the State Conference *lacks* the alleged members—they merely suggest the State Conference has reservations about revealing those

5

member names to Defendants.  At bottom, this is a discovery dispute about whether the State Conference must disclose its members—one that can and should be handled using the ordinary mechanisms for resolving such disputes.

At trial, of course, the State Conference will have to substantiate its allegations with acceptable proof.  *Gill*, 138 S. Ct. at 1932.  That proof may well need to include some way of identifying individual members residing in each district—the exact nature of the evidence necessary can be resolved at trial based on whether and how Defendants challenge the evidence the State Conference presents.  *See Alabama Black Caucus*, 575 U.S. at 270–271.  The court can, if necessary, take steps to ensure that individual voter privacy remains safeguarded.  *See, e.g.*, Local Rule 5.03.

House Defendants also suggest that the members in question must not merely *reside* in the district, but must do so "*because of the change in boundaries*" in the most recent maps.  (ECF No. 91 at 9 (emphasis added).)  There is no basis for such a requirement, which runs counter to both binding precedent and common sense.  *Alabama Black Caucus* held it is "sufficient" to establish standing if an "organization has members in all of the" challenged districts, without regard to whether they were newly added to those districts.  575 U.S. at 270.  That makes sense given the primary injury in racial gerrymandering cases: being subjected to "racial classification." *Id.* at 263 (quotation marks omitted).  An allegation that a district is racially gerrymandered is an allegation that everyone in the district has been subjected to a "racial classification," not just the most recent marginal additions.  After all, legislators could not know where to make adjustments without considering the racial composition of the entire district.  The State Conference has alleged all it must to survive a motion to dismiss.

6

B. **Failure to State a Claim**[1]

The Equal Protection Clause "prevents a State, in the absence of sufficient justification, from separating its citizens into different voting districts on the basis of race." *Cooper v. Harris*, 137 S. Ct. 1455, 1463 (2017) (quotation marks omitted). A plaintiff states a claim for discrimination by plausibly alleging that a State "'subordinated' other factors—compactness, respect for political subdivisions, partisan advantage, what have you—to 'racial considerations.'" *Id.* at 1464. This showing may be made by direct evidence of legislative intent or circumstantial evidence, including a district's shape and demographics. *Id.* Once the plaintiff makes that showing, the burden "shifts to the State to prove that its race-based sorting of voters serves a 'compelling interest' and is 'narrowly tailored' to that end." *Id.*

The 86-page operative complaint walks through, district-by-district, circumstantial evidence suggesting that South Carolina's legislature was heavily focused on race when drawing district lines, including irregularly shaped districts that either split up contiguous Black communities (suggesting an intent to "crack" those voters to dilute their voting power) or carefully trace Black communities while excluding non-Black voters (suggesting an intent to "pack" those Black voters into as few districts as possible). The complaint also alleges various procedural irregularities in the process leading up to the adoption of the maps. Taken together, these detailed allegations, though far from conclusive, are sufficient to "plausibly" allege that race predominated the redistricting process in the challenged districts. Of course, the evidence at trial may tell a different story. But House Defendants have provided no basis for dismissing Plaintiffs' serious allegations at this early stage.

---

[1] Although the motion to dismiss for failure to state a claim was filed before the amendment, the parties agreed to treat the motion as directed to the second amended complaint to the extent the arguments remained applicable. (ECF No. 111 at 2.)

Perhaps foreshadowing one of their defenses, House Defendants also insist that the complaint is not *really* about racial gerrymandering at all, but rather constitutes a veiled effort to raise non-justiciable allegations of partisan gerrymandering. Defendants identify no authority for the proposition that the court can forcibly recharacterize the allegations of a plaintiff's complaint in ruling on a motion to dismiss. If Plaintiffs attempt to prove their claims of racial gerrymandering exclusively with evidence of partisan gerrymandering, that would cause their racial gerrymandering claims to fail on the merits rather than because the complaint, as pleaded, failed to state a claim in the first place. And if Defendants wish to argue the districts they have drawn are a race-neutral partisan gerrymander, they can attempt to do so at trial.

### IV.    CONCLUSION

After careful consideration, the court **DENIES** the Motions to Dismiss (ECF Nos. 91 and 158). The court further **DENIES** the Motion to Immediately Stay Court Order on Plaintiffs' Motion to Compel (ECF No. 153) Pursuant To Local Civil Rule 16.00 (ECF No. 159) as moot.

**IT IS SO ORDERED.**

United States Circuit Judge

United States District Judge

United States District Judge

February 14, 2022
Columbia, South Carolina