**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>     *Plaintiffs*,<br><br>     v.<br><br>THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,<br><br>     *Defendants*. | **Case No. 3-21-cv-03302-JMC-TJH-RMG**<br><br>**PARTIES' JOINT SUPPLEMENTAL RULE 26(f) REPORT THREE-JUDGE PANEL** |

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure and Local Rule 26.03, the following counsel conducted a meeting by videoconference on February 18, 2022 regarding the two claims added in Plaintiffs' Second Amended Complaint that challenge South Carolina's recently enacted U.S. Congressional map:

| Counsel | Party/Client |
|---|---|
| Christopher J. Bryant<br>Allen Chaney<br>John S. Cusick<br>Adriel I. Cepeda Derieux | Plaintiffs |
| Mark C. Moore | Defendants James H. Lucas, Chris Murphy, Wallace H. Jordan |
| John M. Gore<br>Robert E. Tyson Jr.<br>Vordman Carlisle Traywick | Defendants Thomas C. Alexander and Luke A. Rankin |
| M. Elizabeth Crum<br>Jane W. Trinkley<br>Michael R. Burchstead | Defendants Howard Knapp, John Wells, JoAnne Day, Clifford J. Edler, Linda McCall, and Scott Moseley |

The Parties hereby submit this supplemental joint report and proposed discovery plan concerning matters set forth in Federal Rule of Civil Procedure 26(f), all of which were addressed during the Parties' videoconference.

## I.    NATURE AND BASIS OF CLAIMS AND DEFENSES & LOCAL RULE 26.03 SHORT STATEMENT OF THE FACTS

Plaintiffs South Carolina State Conference of the NAACP and Taiwan Scott (collectively, "Plaintiffs") challenge the constitutionality of South Carolina's recently enacted Senate Bill 865 ("S. 865"), which sets the district lines for the U.S. House of Representatives following the 2020 decennial Census.  Defendants include Senators Alexander and Rankin ("Senate Defendants"); Representatives Lucas, Murphy, and Jordan ("House Defendants"); and Howard Knapp, John

Wells, JoAnne Day, Clifford J. Edler, Linda McCall, and Scott Moseley (the "Election Defendants"), all in their official capacities.

Plaintiffs challenge South Carolina Congressional Districts 1, 2, and 5 (the "Challenged Congressional Districts") as unconstitutional racial gerrymanders because the South Carolina Legislature used race as a predominant factor to draw the Challenged Congressional Districts in a manner not narrowly tailored to comply with Section 2 of the Voting Rights Act ("VRA") or any other compelling government interest.  This claim is brought for violations of the Fourteenth Amendment under 42 U.S.C. § 1983 for injunctive and declaratory relief.  Election Defendants lack knowledge sufficient to form a belief as to the truth of Plaintiffs' allegations and therefore deny the same.  Senate and House Defendants deny that any districts are racially gerrymandered and contend that race-neutral considerations predominated in the drawing of the Challenged Congressional Districts.

Plaintiffs also allege that the Challenged Congressional Districts are a product of intentional racial discrimination because their creation was motivated, at least in part, by a discriminatory purpose.  This claim is brought for violations of the Fourteenth and Fifteenth Amendments under 42 U.S.C. § 1983 for injunctive and declaratory relief.  Election Defendants lack knowledge sufficient to form a belief as to the truth of Plaintiffs' allegations and therefore deny the same.  Senate and House Defendants again deny that any districts are racially gerrymandered and contend that race-neutral considerations predominated in the drawing of the Challenged Congressional Districts.

Senate and House Defendants also raise various jurisdictional arguments to Plaintiffs' claims, including standing and immunity.

## II.    POSSIBILITIES FOR PROMPTLY SETTLING OR RESOLVING THE CASE

The Parties agree that complete settlement is unlikely at this time.  The Parties also agree that mediation or other forms of alternative dispute resolution are not likely to be helpful at this time.

## III.    PROPOSED SCHEDULE

The Parties agree that the schedule set forth in the Second Amended Scheduling Order the Court entered on February 25, 2022 (ECF 180) is appropriate in this case.

Election Defendants provide the attached statutory timeline for the candidate filing dates and primary dates, dates relevant to the general election and general election dates pursuant to which Election Defendants and/or the election commissions of the forty-six (46) South Carolina counties ("Counties") are required to operate the elections and furnish the ballots to electors in 2022. *See* Attachment A, "2022 Election Calendar Relevant Deadlines."  "The ballots must be furnished by the State Election Commission for all except members of the General Assembly, county officers, less than county officers, and circuit solicitors, for which the county boards of voter registration and elections shall furnish the ballots."  S.C. Code Ann. § 7-13-610 (A) (2019).

## IV.    DISCOVERY PLAN

The Parties propose this discovery plan:

1.  <u>Initial Disclosures</u>:  The Parties agree that initial disclosures in accordance with Rule 26(a)(1) and Local Rule 26.03 should be made in this case.

2. <u>Subjects of Discovery</u>:  Plaintiffs anticipate that discovery is necessary on at least the following subjects: (1) data considered and used in the redistricting process; (2) the consideration and development of criteria used for drawing Congressional maps; (3) the process of drawing Congressional maps, including any communications or directions provided to the mapmakers,

4

draft maps developed or considered, data analyzed, and communications (including with external parties) about the redistricting process, draft maps, criteria, or South Carolina's history of redistricting since passage of the VRA; (4) the process of receiving and incorporating public input during the redistricting process; (5) South Carolina's history of discrimination against Black people and other minority groups, including but not limited to the redistricting context; and (6) any analysis prepared or considered during development of the Congressional plan or the redistricting process, including but not limited to any analysis of racially polarized voting, performance, compactness, jurisdiction or precinct splits, or location of incumbents.

Plaintiffs also anticipate depositions to further develop the factual record for trial. Plaintiffs also expect to take the third-party depositions of persons with relevant information. Some of the information sought via discovery may also be addressed via stipulations between the Parties.

Senate and House Defendants anticipate that discovery is necessary on at least the following subjects: (1) Plaintiffs' standing to bring this action; (2) Plaintiff SC NAACP's standing to bring this action, including the basis for its alleged organizational and/or associational standing; (3) Plaintiff SC NAACP's membership, including the identity of members through whom Plaintiff SC NAACP claims associational standing; (4) Plaintiff SC NAACP's redistricting map drawing process; (5) communications, coordination, and interactions between Plaintiff SC NAACP and other organizations both inside and outside South Carolina (including, but not limited to, other NAACP affiliates, the American Civil Liberties Union, ACLU of South Carolina, the NAACP Legal Defense and Educational Fund, South Carolina Progressive Network, South Carolina Appleseed, and the League of Women Voters of South Carolina) regarding South Carolina redistricting and positions they have taken with respect to

South Carolina redistricting; (6) communications, coordination, and interactions between Plaintiffs and any current member of Congress, any candidate for Congress, or any national, state, or local political party or political party official regarding South Carolina redistricting or the Congressional Plan; (7) communications, coordination, and interactions between Plaintiffs and any member of the General Assembly regarding South Carolina redistricting or the Congressional Plan; (8) Plaintiffs' proposed alternative plans to the Congressional Plan; (9) any analysis Plaintiffs or their agents have conducted regarding the Congressional Plan and redistricting in South Carolina, including but not limited to any analysis of Congressional Districts 1, 2, 5, or 6, or of racially polarized voting, performance, partisan performance, compactness, jurisdiction or precinct splits, location of incumbents, preservation of cores, or maintenance of communities of interest; and (10) Plaintiffs' methodology for determining which Congressional districts to challenge and for challenging Districts 1, 2, and 5 but not District 6.

Senate and House Defendants anticipate that Plaintiffs' discovery requests will raise a host of issues and that there may be disputes concerning the scope and applicability of various privileges, including legislative privilege, attorney-client privilege, and work-product protection, as well as the so-called "associational privilege" that Plaintiffs' noted in their discovery responses as to the Challenged House Districts.

Senate and House Defendants also anticipate depositions to further develop the factual record for trial. Senate and House Defendants also expect to take the third-party depositions of persons with relevant information. Some of the information sought via discovery may also be addressed via stipulations between the Parties.

3. Electronic Discovery: The Parties expect that discovery will involve collection and production of electronically storied information ("ESI"): (1) Disclosure or production of

6

electronically stored information will generally be limited to data reasonably available to the Parties in the ordinary course of business; (2) the Parties do not anticipate seeking data beyond what is reasonably available in the ordinary course of business; (3) the Parties agree to produce electronically stored information in accordance with the "Production of ESI Protocols" attached to this report as Exhibit A; (4) the Parties represent that they have taken reasonable measures to preserve potentially discoverable data from alteration or destruction; (5) the Parties will comply with Federal Rule of Civil Procedure 26(b)(5)(B) regarding the inadvertent production of privileged information; and (6) the Parties do not at this moment anticipate that any other problems will arise in connection with electronic or computer-based discovery.

4. <u>Timing of Discovery</u>:  The Parties agree that discovery in this matter should be conducted in the manner provided in the Second Amended Scheduling Order.

5. <u>Forms of Discovery</u>:  The Parties anticipate all forms of written discovery and depositions may be appropriate as provided by the Federal Rules of Civil Procedure.  Plaintiffs anticipate that certain materials produced will be in the form of electronic or computer-based media, including data, spreadsheets, databases of voter information, and electronically-stored documents and emails.

6. <u>Discovery Scope</u>:  The Parties agree to confer in good faith as needed regarding any proposed limitations on discovery.

a.  The Parties agree that each party will issue no more than twenty-five (25) interrogatories, including subparts, to each set of Defendants or to each Plaintiff.

b. The Parties agree, to the extent practicable, that they will coordinate depositions so that each deponent need only appear once.

c.  The Plaintiffs propose that each side (Plaintiffs, collectively, and Defendants,

collectively) take no more than 25 fact depositions per party, without leave of Court—including Rule 30(b)(6) witness depositions but excluding expert witness depositions. Defendants believe that the 10 deposition limit in Federal Rule of Civil Procedure 30(a)(2)(A)(i) is appropriate in this case.

Should a party determine that additional fact witness depositions are necessary, the parties agree to work together in good faith to come to a reasonable agreement with respect to additional depositions. Unless otherwise agreed by the parties, all depositions shall be limited in duration as provided in Fed. R. Civ. P. 30(d).

## V. OTHER LOCAL RULE 26.03 QUERIES

**1. Fact Witnesses**: The Parties will identify the names of individuals likely to have discoverable information in the Rule 26(a)(1) initial disclosures and will disclose trial witnesses in accordance with the Second Amended Scheduling Order.

**2. Expert Witnesses**: The Parties will provide Rule 26(a)(2) expert disclosures in accordance with the Second Amended Scheduling Order.

**3. Claims and Defenses:**

**Plaintiffs' Claims:**

Fourteenth Amendment—racial gerrymandering in violation of the Equal Protection Clause of the Fourteenth Amendment and 42 U.S.C. § 1983. *See, e.g.*, *Cooper v. Harris*, 137 S. Ct. 1455 (2017); *Bethune-Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788, 797 (2017); *Shaw v. Reno*, 509 U.S. 630, 642–43 (1993).

Fourteenth and Fifteenth Amendments—intentional discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, the Fifteenth Amendment and 42 U.S.C. § 1983. *See, e.g.*, *Rogers v. Lodge*, 458 U.S. 613 (1982); *Vill. of Arlington Heights v. Metro.*

*Hous. Dev. Corp.*, 429 U.S. 252 (1977); *NC State Conf. of the NAACP v. McCrory*, 831 F.3d 204 (4th Cir. 2016).

**House Defendants' Defenses:**

House Defendants incorporate the defenses of the Senate Defendants. House Defendants assert these additional and/or similar defenses:

Plaintiffs do not have standing to bring claims. *United States v. Hays*, 515 U.S. 737, 745 (1995); *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 263, 271 (2015).

Race-neutral considerations predominated in drawing the Challenged Districts. *Backus v. South Carolina*, 857 F. Supp. 2d 553, 560 (D.S.C.), *aff'd*, 568 U.S. 801 (2012).

In drawing redistricting lines, any consideration of race was narrowly tailored to a compelling state interest, such as to ensure compliance with Section 2 of the Voting Rights Act (52 U.S.C. § 10301). *Thornburg v. Gingles*, 478 U.S. 30, 50 (1986); *Growe v. Emison*, 507 U.S. 25, 40 (1993).

Plaintiffs raise partisan gerrymandering claims disguised as racial gerrymandering claims for the purpose of securing subject-matter jurisdiction. However, partisan gerrymandering claims are not justiciable in federal court. *Rucho v. Common Cause*, 139 S. Ct. 2484, 2505–08 (2019).

The House Defendants are entitled to legislative immunity when engaged in the sphere of legitimate legislative activity and should be protected from the burden of defending themselves. *Supreme Ct. of Virginia v. Consumers Union of U.S., Inc*., 446 U.S. 719, 731 (1980); *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 343 (E.D. Va. 2015).

The Court must presume the good faith of a state legislature, which includes the House Defendants, and recognize "the intrusive potential of judicial intervention into the legislative realm." *Miller v. Johnson*, 515 U.S. 900, 915-16 (1995).

**Senate Defendants' Defenses**:

Plaintiffs do not have standing to bring claims. *United States v. Hays*, 515 U.S. 737, 745 (1995); *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 263, 271 (2015).

Because redistricting "is primarily the duty and responsibility of the State," "[f]ederal-court review of districting legislation represents a serious intrusion on the most vital of local functions." *Miller v. Johnson*, 515 U.S. 900, 915 (1995). "Electoral districting is a most difficult subject for legislatures, and so the States must have discretion to exercise the political judgment necessary to balance competing interests," and "the good faith of a state legislature must be presumed." *Id.* Accordingly, the Court must "exercise extraordinary caution in adjudicating claims that a State has drawn district lines on the basis of race." *Id.* at 915–16; *see also Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018).

The General Assembly drew every district and enacted every redistricting plan in accordance with the U.S. Constitution and federal and state law, including traditional districting principles and the criteria and guidelines adopted by the South Carolina House and South Carolina Senate. *Backus v. South Carolina*, 857 F. Supp. 2d 553 (D.S.C.), *aff'd*, 568 U.S. 801 (2012).

Race-neutral considerations predominated in drawing the Challenged Districts. *See, e.g.*, *id.* at 560.

The General Assembly did not improperly use race to draw district lines, even if it was aware of race. *See, e.g.*, *id.* at 559.

In drawing redistricting lines, any predominant consideration of race satisfied strict scrutiny. *See, e.g.*, *id.*

The General Assembly did not discriminate, intentionally or otherwise, against any voter or group of voters on any basis, including race, in drawing any district or enacting any redistricting plan. *Abbott*, 138 S. Ct. at 2324–2330; *Backus*, 857 F. Supp. 2d at 567.

The Senate Defendants are entitled to legislative immunity when engaged in the sphere of legitimate legislative activity and should be protected from the burden of defending themselves. *Tenney v. Brandhove*, 341 U.S. 367 (1951); *Supreme Ct. of Virginia v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731 (1980).

**Election Commission Defendants**:

Election Defendants have raised the following defenses:

Plaintiffs' Second Amended Complaint and each and every cause of action therein fails to state a claim on which relief may be granted.

Plaintiffs' Second Amended Complaint seeks relief which Election Defendants lack legal power or authority to effectuate.

Plaintiffs' Second Amended Complaint presents non-justiciable, political questions.

Plaintiffs' Second Amended Complaint alleges no acts by any of the Election Defendants whatsoever.

One or more of the Plaintiffs lack standing to bring this action.

**4. Scheduling**:  Scheduling is addressed in the Second Amended Scheduling Order.

**5. Other Special Circumstances**:

The Parties agree that depositions will be conducted remotely if necessary to protect individuals from COVID-19; the Parties will work together and with the Court in this regard.

Dated: February 28, 2022                                Respectfully submitted,

Leah C. Aden**                                          */s/ Christopher J. Bryant*
Stuart Naifeh**                                         Christopher J. Bryant, Fed. ID 12538
Raymond Audain**                                        BOROUGHS BRYANT, LLC
John S. Cusick**                                        1122 Lady St., Ste. 208
NAACP LEGAL DEFENSE &                                   Columbia, SC 29201
EDUCATIONAL FUND, INC.                                  Tel.: (843) 779-5444
40 Rector St, 5th Fl.                                   chris@boroughsbryant.com
NY, NY 10006
Tel.: (212) 965-7715
laden@naacpldf.org                                      Somil B. Trivedi**
                                                        Patricia Yan**
                                                        AMERICAN CIVIL LIBERTIES
Antonio L. Ingram II**                                  UNION FOUNDATION
NAACP LEGAL DEFENSE &                                   915 15th St., NW
EDUCATIONAL FUND, INC.                                  Washington, DC 20005
700 14th St, Ste. 600                                   Tel.: (202) 457-0800
Washington, D.C. 20005                                  strivedi@aclu.org
Tel.: (202) 682-1300
aingram@naacpldf.org
                                                        Allen Chaney, Fed. ID 13181
                                                        AMERICAN CIVIL LIBERTIES
Adriel I. Cepeda Derieux**                              UNION
Samantha Osaki**                                        OF SOUTH CAROLINA
AMERICAN CIVIL LIBERTIES                                Charleston, SC 29413-0998
UNION FOUNDATION                                        Tel.: (843) 282-7953
125 Broad Street, 18th Floor                            Fax: (843) 720-1428
New York, NY 10004                                      achaney@aclusc.org
Tel.: (212) 549-2500
acepedaderieux@aclu.org
                                                        Jeffrey A. Fuisz**
                                                        Paula Ramer**
John A. Freedman**                                      ARNOLD & PORTER KAYE
Elisabeth S. Theodore*                                  SCHOLER LLP
Adam Pergament**                                        250 West 55th Street
Gina M. Colarusso**                                     New York, NY 10019
John M. Hindley**                                       Tel: (212) 836-8000
ARNOLD & PORTER KAYE                                    jeffrey.fuisz@arnoldporter.com
SCHOLER LLP
601 Massachusetts Ave., N.W.                            Sarah Gryll**
Washington, D.C. 20001                                  ARNOLD & PORTER KAYE
Tel: (202) 942-5000                                     SCHOLER LLP
john.freedman@arnoldporter.com                          70 West Madison Street, Suite 4200
                                                        Chicago, IL 60602-4231
                                                        Tel: (312) 583-2300
* Motion for admission *Pro Hac Vice* forthcoming       sarah.gryll@arnoldporter.com
** Admitted *Pro Hac Vice*

*Counsel for Plaintiffs the South Carolina Conference of the NAACP and Taiwan Scott*

Janette M. Louard*
Anthony P. Ashton*
Anna Kathryn Barnes*
NAACP OFFICE OF THE GENERAL
COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org

* Motion for admission *Pro Hac Vice*
forthcoming
** Admitted *Pro Hac Vice*

*Counsel for Plaintiff the South Carolina
Conference of the NAACP*


s/Jane Trinkley
M. Elizabeth Crum (Fed. Bar #372)
Jane W. Trinkley (Fed. Bar #4143)
Michael R. Burchstead (Fed. Bar #102967)
**BURR & FORMAN LLP**
Post Office Box 11390
Columbia, SC  29211
Telephone:  (803) 799-9800
Facsimile:  (803) 753-3278

Thomas W. Nicholson
tnicholson@elections.sc.gov
**South Carolina State Election Commission**
1122 Lady St., 5th Floor,
Columbia, SC. 29250
Telephone: (803) 734-9060
Facsimile:   (803) 734-9366

*Attorneys for Election Commission Defendants*


s/ William W. Wilkins
William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900
Greenville, SC 29601
Telephone: 864.370.2211

BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Erica H. Wells (Fed. ID No. 13206)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
EWells@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com

Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com
*Attorneys for House Defendants*

*/s/Robert E. Tyson Jr.*
Robert E. Tyson, Jr. (7815)
Vordman Carlisle Traywick, III (12483)
La'Jessica Stringfellow (13006)
ROBINSON GRAY STEPP & LAFFITTE, LLC
1310 Gadsden Street
Post Office Box 11449 (29211)
Columbia, South Carolina 29201
(803) 929-1400
rtyson@robinsongray.com
ltraywick@robinsongray.com
lstringfellow@robinsongray.com

John M. Gore (admitted *pro hac vice*)
Stephen J. Kenny*
JONES DAY
51 Louisiana Avenue, N.W.

Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
skenny@jonesday.com

*Counsel for Senate Defendants*
\**Pro hac vice* application forthcoming

## Exhibit A: PRODUCTION OF ESI PROTOCOLS

### A.  Format

The parties will produce ESI in a litigation database ready format including single page images, searchable text files, native files and Relativity database load files.  Images should be bates numbered single-page, black and white, TIFF Group IV, 300 DPI TIFF images with the exception of spreadsheet type files, source code, audio, and video files, and other file types that cannot be rendered into a usable printed form, which shall be produced in native format.  If an original document contains color and the color is necessary to review a document, it should also be produced in native format or as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image.  TIFFs/JPGs will show any and all text and images which would be visible to the reader using the native software that created the document.  Document level text file should be provided containing original extracted text or OCR text when original text is not available or when document contains redactions.  Each document will be produced in its entirety, with attachments and enclosures.  Documents not otherwise responsive will be produced if attached to a responsive document.

If a document is produced in native, a single page bates stamped image slip-sheet stating the document has been produced in native format will also be provided.  Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.  To the extent that either party believes that specific documents or classes of documents, not already identified within this protocol, should be produced in native format, the parties agree to meet and confer in good faith.

### B.  De-Duplication

Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production,

unless the parent email and all attachments are also duplicates.  Parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the content in those fields, even if all remaining content in the email is identical.  Removal of near-duplicate documents and email thread suppression is not acceptable.  De-duplication will be done across the entire collection (global de-duplication) and the Custodian field will list each Custodian, separated by a semi-colon, who was a source of that document.  Should the custodian metadata field produced become outdated due to rolling productions, an overlay file providing all the custodians for the affected documents will be produced prior to substantial completion of the document production.

### C.  Metadata

All ESI will be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto.  The metadata produced should have the correct encoding to enable preservation of the documents' original language.

### D.  Compressed Files Types

Compressed file types (*i.e.*, .ZIP, .RAR, .CAB, .7Z) should be decompressed so that the lowest level document or file is extracted.

### E.  Structured Data

To the extent a response to discovery requires production of electronic information stored in a database, the parties will discuss methods of production best providing all relevant information, including but not limited to duplication of databases or limited access for the purpose of generating reports.  Parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.  A document reference sheet shall be provided to describe the purpose of the database and meaning of all tables and column headers produced.

**F.  Encryption**

To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

**Table 1 -- Metadata Fields**

| Field Name | Example/Format | Field Description |
|---|---|---|
| ProdBegBates | ABC0000001 (Unique ID) | The Document ID associated with the first page of a document. |
| ProdEndBates | ABC0000003 (Unique ID) | The Document ID associated with the last page of a document. |
| ProdBegAttach | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID associated with the first page of the parent document. |
| ProdEndAttach | ABC0000008 (Unique ID Parent-Child Relationships) | The Document ID associated with the last page of the last attachment. |
| Production  Volume | PROD001 | Production volume name. |
| Document Category | Email, Edoc, Attach | The record type of a document. |
| Custodian | Smith, Joe | Custodian of document. |
| All Custodians | Smith, Joe; Brown, Jane | All of the custodians of a document from which the document originated, separated by semicolons |

| | | |
|---|---|---|
| Sort Date | MM/DD/YYYY HH:MM | The date taken from the Email Sent Date, Email Received Date, or Last Modified Date (in order of precedence), repeated for a parent document and all children items to allow for date sorting. |
| Sent Date/Time | MM/DD/YYYY HH:MM | The date on which an email message was sent. |
| Received Date/Time | MM/DD/YYYY HH:MM | The date and time at which an email message was received. |
| Created Date/Time | MM/DD/YYYY HH:MM | The date and time at which a file was created. |
| Last Modified Date/Time | MM/DD/YYYY HH:MM | The date and time at which changes to a file were last saved. |
| Meeting Start Date/Time | MM/DD/YYYY HH:MM | The date and time at which a meeting item in Outlook or Lotus Notes started. |
| Meeting End Date/Time | MM/DD/YYYY HH:MM | The date and time at which a meeting item in Outlook or Lotus Notes ended. |
| Logical Path | i.e. /JsmithPC/Users/Jsmith/Desktop i.e. /JSmith.pst/Inbox | Data's original source full folder path |

| | | |
|---|---|---|
| Author | jsmith | The name of the original composer of document or the sender of an email message. |
| Last Saved By | jsmith | The internal value indicating the last user to save a file. |
| Email From | Joe Smith <jsmith@email.com> | The name (when available) and email address of the sender of an email message. |
| Email To | Joe Smith <jsmith@email.com>; tjones@email.com | The name(s) (when available) and email address(es) of the recipient(s) of an email message. |
| Email Cc | Joe Smith <jsmith@email.com>; tjones@email.com | The name(s) (when available) and email address(es) of the Carbon Copy recipient(s) of an email message. |
| Email Bcc | Joe Smith <jsmith@email.com>; tjones@email.com | The name(s) (when available) and email address(es) of the Blind Carbon Copy recipient(s) of an email message. |
| Email Subject | | The subject of the email message. |

| | | |
|---|---|---|
| Message Class | Message, Appointment, Contact, Task, etc. | An The type of item from an email client (e.g., email, contact, calendar, etc.). |
| Email Message ID | 0E5698D558B22879524F433@abc.email.net | The message number created by an email application and extracted from the email's metadata. |
| Importance | Normal, Low, High | The notation created for email messages indicating a higher level of importance than other email messages added by the email originator. |
| Delivery Receipt | | The yes/no indicator of whether a delivery receipt was requested for an email. |
| Attachment Count | Numeric | The number of files attached to a parent file. |
| Attachment List | | The attachment file names of all child items in a family group, delimited by semicolon. This is present only on parent items. |

| | | |
|---|---|---|
| File Extension | | The three (or more) character extension of the file that represents the file type to the Windows Operating System (e.g., PDF, DOC, TXT, etc.). |
| File Name | Document Name.docx | The original name of the file. |
| File Type | Adobe Portable Document Format, MS Word 97, Outlook Message File | The description of the file type to the Windows Operating System. For example, Adobe Portable Document Format, Microsoft Word 97 – 2003 Document, or Microsoft Office Word Open XML Format. |
| File Size | Numeric | The decimal number indicating the size in bytes of a file. |
| MD5 Hash | | The identifier of an electronic record that can be used for deduplication and authentication generated using the MD5 hash algorithm. |

23

| | | |
|---|---|---|
| Conversation Family | The relational field for conversation threads. This is a 44-character string of numbers and letters that is created in the initial email. | The relational field for conversation threads. This is a 44-character string of numbers and letters that is created in the initial email. |
| Production Has Redactions | | The yes/no indicator of whether a documents contains a redaction. |
| Production Slip Sheet | | Indicates presence of an image slips sheet and the slip sheet type. |
| Production Branding | | Confidentiality brand. |
| File Path | .\NATIVES\ABC000001.doc | Path to a native copy of a document. |
| Text Precedence | .\TEXT\ABC000001.txt | Path to the full extracted text of the document. |