## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>      Plaintiffs,<br><br>      v.<br><br>THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,<br><br>      Defendants. | **Case No. 3-21-cv-03302-JMC-TJH-RMG**<br><br><br>**THREE-JUDGE PANEL**<br><br><br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO HOUSE DEFENDANTS' MOTION TO COMPEL** |

## INTRODUCTION

The Court should reject House Defendants' motion to compel ("Motion"). ECF 157. As an initial matter, the Motion transparently violates Local Rule 7.02.[1] Defendants first met and conferred with Plaintiffs only after filing their motion. Following this met and confer, now many of the identified disputes are now moot. Yet House Defendants have refused to withdraw or modify their Motion.

Moreover, all three aspects of Plaintiffs' responses and productions that the Motion challenges are unsupported. First, the Motion asks the Court to find a subject matter waiver of privilege based on a single *non-privileged* document produced by Plaintiff South Carolina State Conference of the NAACP ("SC NAACP"). Second, House Defendants continue to press for broad, unspecified relief concerning document productions and responses to RFPs, notwithstanding that after House Defendants filed their Motion, Plaintiffs made three document productions, explained their productions, and amended their responses to House Defendants' RFPs. Third, although the Motion seeks relief for up to 55 RFAs, it specifically addresses only one of them, which Plaintiffs have already answered, and its broad arguments for relief lack merit. The Court should therefore deny the Motion in full.

## BACKGROUND

### A.     Plaintiffs challenge South Carolina's redistricting legislation.

Counts I and II of Plaintiffs' Second Amended Complaint challenge certain South Carolina certain South Carolina House of Representative districts adopted in House Bill 4493 ("H. 4493"), asserting claims for racial gerrymandering and intentional vote dilution in violation of the

---

[1] Local Rule 7.02 requires that "all motions [] contain an affirmation by the movant's counsel that *prior to* filing the motion [they] conferred or attempted to confer with opposing counsel and attempted in good faith to resolve the matter contained in the motion."  (Emphasis added.)).

Fourteenth and/or Fifteenth Amendments to the U.S. Constitution. As the Court summed it, "the heart" of the Complaint is Plaintiffs' "allegation that the district maps enacted . . . violate [their] rights under the Equal Protection Clause of the Fourteenth Amendment." ECF 153, at 2. Plaintiffs claim that in enacting these maps legislators were motivated by intent to discriminate against Black voters. The legislators' discriminatory intent is thus "central to Plaintiffs' claims." *Id.*

Plaintiff Taiwan Scott is a Black registered voter, and a resident of Hilton Head in Beaufort County, South Carolina. Mr. Scott lives in, and challenges, the newly formed Congressional District 1. Mr. Scott does not live in any of the House Districts at issue in this litigation and has not brought any claims relating to the House Districts. *See, e.g.*, ECF 157-6 (Mot. Ex. F), Resp. to Interrogatory No. 1 ("Mr. Scott is not serving as a plaintiff alleging that certain South Carolina House Districts are racially gerrymandered in violation of the Fourteenth Amendment of the U.S. Constitution or that H. 4493 was enacted with a discriminatory intent in violation of the Fourteenth and Fifteenth Amendments of the U.S. Constitution.").

Plaintiff SC NAACP is a nonprofit, nonpartisan membership organization in South Carolina. SC NAACP is a state subsidiary of the National Association for the Advancement of Colored People ("NAACP"), a national civil rights organization. SC NAACP has 77 branches across the state, each comprised of adult members, including at least one branch in each of South Carolina's 46 counties. *See* Ex. 1 (SC NAACP's Am. Obj. and Resp. to House Defs.' First Set of Interrogs., Resp. to Interrog. No. 4). SC NAACP has confirmed that at least one of its members is a registered voter in each of the Challenged Districts[2] through a review process conducted by in-house counsel at the NAACP's national office. *See id.*; *see also* Ex. 2 (Murphy Dep.) at 177:1-18

---

[2] The Challenged Districts include House Districts 7, 8, 9, 11, 41, 43, 51, 54, 55, 57, 59, 60, 63, 67, 70, 72, 73, 74, 75, 76, 77, 78, 79, 90, 91, 93, 95, 101, 105.  *See* Second Am. Compl. ¶ 12.

(confirming that the SC NAACP has members who are registered voters in every Challenged District).

On February 28, 2022, House Defendants filed their Answer to Plaintiffs' Second Amended Complaint. ECF 181. Their Fourth Defense claims Plaintiffs lack standing to bring this action. *See id.* at 35. Otherwise, House Defendants' defenses in no way implicate individual Plaintiff Scott's status as a registered voter or organizational-Plaintiff SC NAACP's members who are registered voters in relevant challenged districts. *See id.* at 34-38.

### B.    House Defendants served extensive discovery requests and requests for admission, to which Plaintiffs responded.

On January 19, 2022, House Defendants served Plaintiffs with 43 RFPs, including 20 contention requests for "all" documents "related to" an entire claim, or for "all" documents" "supporting" or "evidencing" paragraphs in the Plaintiffs' (then operative) Amended Complaint, including many related to House Defendants' intent in enacting H. 4493:

- Request 12: "All documents and communications related to the first cause of action in your Amended Complaint (Racial Gerrymandering in Violation of the Fourteenth Amendment)."

- Request 13: "All documents and communications related to the second cause of action in your Amended Complaint (Intentional Discrimination in Violation of the Fourteenth and Fifteenth Amendments of the U.S. Constitution)."

- Request 16: "All documents and communications supporting your allegation that H. 4493 was motivated by a discriminatory purpose. (See, e.g., Am. Compl. at ¶ 4)."

- Request 17: "All documents and communications supporting your allegation that the Challenged Districts in H. 4493 were adopted with a racially discriminatory intent to discriminate against Black voters. (See, e.g., Am. Compl. at ¶ 170)."

- Request 18: "All documents and communications supporting your allegation that H. 4493 will have a discriminatory impact on Black South Carolinians. (See, e.g., Am. Compl. at ¶ 171)."

- Request 19: "For each Challenged District, produce all documents and communications supporting your allegation that the House Defendants used race as the predominant factor in creating the Challenged District. (See, e.g., Am. Compl. at ¶ 4)."

- Request 20: "For each Challenged District, produce all documents and communications supporting your allegation that the race predominated over traditional redistricting principles, such as compactness, contiguity, and respect for political subdivisions or communities. (See, e.g., Am. Compl. at ¶ 164)."

- Request 21: "Produce all documents and communications supporting your allegation that Black voters were either "packed" or "cracked" for the purpose of diluting their vote in each of the Challenged Districts. (See, e.g., Am. Compl. at ¶¶ 4-5)."

- Request 22: "All documents and communications evidencing and demonstrating one or more of your members and constituents would have individual standing to bring your claims in each and evidence Challenged District. (See Am. Compl. at ¶¶ 16-18)."

- Request 23: "All documents and communications supporting your allegation that your members and constituents currently live in each and every Challenged District. (See Am. Compl. at ¶ 18)."

- Request 24: "All documents and communications supporting your allegation that your members include registered voters in each and every Challenged District. (See Am. Compl. at ¶ 18)."

- Request 25: "All documents and communications supporting your allegation that your members have been or will continue to be harmed by H. 4493. (See Am. Compl. at ¶ 18)."

- Request 26: "All documents and communications establishing the identity and residential address of each of your members who currently lives in any of the Challenged Districts. (See, e.g., Am. Compl. at ¶ 18)."

- Request 28: "All documents and communications supporting your allegations related to the harms allegedly suffered by your members and constituents. (See, e.g., Am. Compl. at ¶¶ 20-21)."

- Request 29: "All documents and communications supporting your allegation that the redistricting hearings held by the House Redistricting Ad Hoc Committee were largely inaccessible to the public. (See, e.g., Am. Compl. at ¶ 67)."

- Request 30: "All documents and communications supporting your allegations that individuals were unable to attend a public hearing held by the House Redistricting Ad Hoc Committee (remotely or in person) due to COVID-19 concerns, work, or family obligations. (See, e.g., Am. Compl. at ¶ 68)."

- Request 31: "All documents and communications evidencing concerns raised by members of the public related to a lack of transparency during the redistricting process or the lack of a meaningful opportunity for the public to review posted maps. (See, e.g., Am. Compl. at ¶ 79)."

- Request 35: "All documents and communications supporting your allegation that inaction of the House Defendants creates the imminent risk of confusion prior to the current candidate declaration deadline in March 2022 and possibly the June 2022 primaries. (See, e.g., Am. Compl. at ¶ 177)."

- Request 39: "All documents and communications evidencing that SC NAACP's members and constituents are unable to communicate their concerns to current members of Congress or congressional candidates. (See, e.g., Am. Compl. at ¶ 20a)."

- Request 41: "All documents and communications evidencing that SC NAACP members and constituents who are hindered from contributing financially to Congressional candidates until Congressional districts are reapportioned. (See, e.g., Am. Compl. at ¶ 20c)."

House Defendants also served 9 interrogatories on Mr. Scott and 11 interrogatories on SC NAACP, *see* ECF Nos. 157-5, 157-6 (Mot. Exs. E, F), and 55 RFAs on both Plaintiffs, *see* ECF 157-4 (Mot. Ex. D).[3] The RFAs include numerous requests that Plaintiffs "admit" conclusions of law, including:

- Request 15: "Admit that an opportunity district in which Black voters would have the ability to influence elections could occur when BVAP < 30%."

- Request 20: "Admit that voting districts need to be bizarrely shaped at time to be fair."

- Request 23: "Admit that a voting district that has had its BVAP decreased through the redistricting process has not necessarily been 'cracked.'"

- Request 24: "Admit that a voting district that has had its BVAP increased through the redistricting process has not necessarily been 'packed.'"

- Request 26: "Admit that a voting district with a supermajority BVAP has not necessarily been 'packed' by virtue of its supermajority BVAP."

- Request 27: "Admit that evidence that Black voters constitute even a supermajority in one district while amounting to less than a plurality in a neighboring district will not, by itself, suffice to prove that South Carolina considerations of race predominated the drawing of the district lines when the evidence also shows a high correlation between race and party preference"

---

[3] Separately, on March 3, 2022, in connection with Plaintiffs' challenge to the Congressional Plan, House Defendants served on Plaintiffs separate sets of RFPs, RFAs, and interrogatories. *See* Ex. 5 (Mar. 3 email attaching RFPs, RFAs, and interrogatories). Plaintiffs' responses to those requests, which are due on April 2, 2022, are not at issue in House Defendants' Motion.

- Request 28: "Admit that White voters have the right to not have their votes intentionally diluted."

- Request 29: "Admit that Hispanic voters have the right to not have their votes intentionally diluted."

- Request 37: "Admit that an Equal Protection Clause analysis remains the same irrespective of the race burdened or benefitted by a particular statute, law, or decision."

- Request 39: "Admit that failure to maximize the number of majority-minority districts does not give rise to a violation of § 2 of the Voting Rights Act."

- Request 44: "Admit that the U.S. Supreme Court has not created a 10% maximum population deviation standard, below which all redistricting decisions are deemed constitutional."

- Request 46: "Admit that separating a group of voters who share a community of interest is not necessarily indicative of intentional dilution of the group's voting strength."

- Request 48: "Admit that incumbency protection can be a legitimate factor in districting."

- Request 49: "Admit that the intent of a single legislator is not properly imputed to the entire South Carolina Legislature."

- Request 52: "Admit that the federal district court in the District of South Carolina rejected racial discrimination claims asserted as to South Carolina's state legislative and congressional redistricting plans put in place by enactment of the legislation comprising Act No. 72 of 2011 and Act No. 75 of 2011."

- Request 53: "Admit that in 2012 the federal district court in the District of South Carolina concluded, and the U.S. Supreme Court affirmed, that South Carolina's state legislative and congressional redistricting plans were constitutional."

*See* ECF 157-4 (Mot. Ex. D).

On February 2, 2022, Plaintiffs served objections and responses to House Defendants' RFPs, RFAs, and interrogatories. *See* ECF Nos. 157-3, 157-5, 157-5, 157-7 (Mot. Exs. C, E, F,G). Plaintiff SC NAACP began producing documents on February 3, 2022, and has since been producing documents on a rolling basis as it has continued to identify discoverable materials, including a further production of hard copy documents on March 1 and productions of electronic materials on March 11 and March 18. *See* Ex. 3 (Pls.' Am. Resp. to House Defs.' RFP); Ex. 4

(Mar. 15 email). More productions are forthcoming. Plaintiff Scott produced documents on February 10, 2022.

### C. House Defendants sent a letter identifying purported deficiencies in Plaintiffs discovery, then filed a motion to compel.

On February 4, 2022, House Defendants sent Plaintiffs a letter identifying purported deficiencies in Plaintiffs' discovery responses. ECF 157-1 (Mot. Ex. A). Plaintiffs offered to meet and confer to discuss those concerns, many of which Plaintiffs believed were mistaken. *See* Ex. 6 (Feb. 10 email chain). House Defendants conditioned any meet and confer on receipt of "a letter from you fully responding to our letter" the next day and a privilege log by the following day. *See id.* On February 10, as requested, Plaintiffs answered each issue in House Defendants' letter and again offered to meet and confer. *See id.* In response, House Defendants wrote that they saw "no need for further exchange on these issues." *See id.* As a result, the parties did not meet and confer.

On February 14, House Defendants filed their wide-ranging Motion. *See* ECF 157. House Defendants challenged Plaintiffs' written responses to nearly every RFP, interrogatory, and RFA. House Defendants also presented the Court with issues not previously raised to Plaintiffs. For example, House Defendants challenged claims in Plaintiffs' February 11 privilege log that they had never identified as disputes. *Compare* ECF 157 at 15-18, *with* ECF 157-1 (not raising issues). Similarly, the Motion argued for the first time that SC NAACP's litigation counsel from ACLU and LDF waived privilege over the subject matter of this lawsuit, purportedly based on counsel's statements at a redistricting coalition meeting attended by several non-plaintiff organizations. Mot. 16-18.

### D. After agreeing to a pause for mediation, the parties met and conferred for the first time to discuss Plaintiffs' objections and responses.

On February 15, 2022, with the Court's permission, the parties hit "pause" on litigation to focus on efforts to resolve Plaintiffs' House Plan challenge. ECF Nos. 167, 170. Those efforts

were unsuccessful. On March 7, counsel conducted a three-hour meet-and-confer to resume discussion on the Motion. *See* ECF 187; *see also* Ex. 8 (Mar. 11 email chain).[4] On March 11, 2022 Plaintiffs served amended responses to House Defendants' RFPs, RFAs, and interrogatories. *See* Exs. 1, 3, 7, 10. On March 14, 2022, the Parties again met and conferred. *See* Ex. 4 (Mar. 15 email).

On March 8, 2022, the Court ordered that the parties file "a joint status report on the issues still in dispute" in the House Defendants' Motion on March 17, 2022. Order, ECF 188. On March 17, 2022, the parties filed a joint status report, explaining that House Defendants have withdrawn their challenges to Plaintiffs' interrogatory responses and their challenges to Mr. Scott's response to their RFPs, but they otherwise have not withdrawn their Motion. *See* ECF 189, at 3-4 (Joint Status Report).

## ARGUMENT

In Part I below, Plaintiffs address House Defendants' challenges to Plaintiffs' privilege log and their alleged privilege waiver. In Part II, Plaintiffs address House Defendants' challenges to their RFP responses and document production. In Part III, Plaintiffs address House Defendants' challenges to Plaintiffs' responses to House Defendants' RFAs. For the reasons stated below, House Defendants' Motion lacks merit and should be denied.[5]

## I.   HOUSE DEFENDANTS' CHALLENGES TO PLAINTIFFS' PRIVILEGE ASSERTIONS LACK MERIT

House Defendants' various arguments on privilege fail for several independent reasons. First, their challenges to Plaintiffs' assertions of privilege, like the Motion as a whole, violate Local

---

[4] The same day, the parties jointly requested that House Defendants' motion to compel continue to be held in abeyance for 10 additional days to allow the Parties further time to narrow the issues raised in the motion.  ECF 187.

[5] To the extent that House Defendants maintain any arguments not addressed here, Plaintiffs oppose them and request the opportunity to brief them.

Rule 7.02. House Defendants failed to meet or confer or meaningfully attempted in good faith to resolve these issues before filing the Motion. *See White v. Eaton Corp. Short Term Disability Plan*, No. 8:04-cv-1848, 2005 WL 8161130, at *1-2 (D.S.C. Aug. 25, 2005) (denying motion where "no evidence" of "good faith effort" to resolve dispute with opponent).

Second, House Defendants failed to identify privilege log entries for which there is a live controversy. They contend that there is "no way to know" what documents Plaintiffs have withheld for privilege, *see* ECF 157 at 15, but ignore that Plaintiffs produced a privilege log on February 11, 2022. *See* ECF 157-8. House Defendants admit that they are still "working to assess the privilege log," and only identify issues as to 13 specific log entries (Nos. 5-6, 9, 14-15, 35-36, & 67-72) on the privilege log for Mr. Scott.[6] Yet Plaintiffs have agreed to provide a corrected log for Mr. Scott and a handful of documents where privilege is no longer asserted.[7] While Defendants insisted during the March 14 meet and confer that they still have unspecified open issues regarding the privilege log, they have not articulated any specific pending or open disputes. *See* Ex. 4 (Mar. 15 email).

Third, House Defendants' argument of a "blatant waiver of attorney/client privilege," ECF 157 at 16-18, lacks merit. It exclusively depends on a set of Reapportionment Committee Meeting Minutes ("Minutes") dated June 21, 2021, which Plaintiffs produced on February 3, 2022 as SCNAACP-000090-94. ECF 157 at 17 (citing ECF 157-9, (Mot. Ex. I)). The Minutes are thus

---

[6] For example, the Motion highlights entries 14-15, 35-36 & 67-69, which are duplicate copies of one email that Plaintiff Scott sent to a friend which contain a draft Paragraph of the Plaintiffs' complaint. ECF 157 at 16. During the Parties' meet and confer, Plaintiffs acknowledged that they incorrectly asserted attorney-client privilege but explained their view that the document was properly withheld as work product because the draft language was shared with a non-adverse party. Plaintiffs agreed to correct this on a revised log.

[7] Plaintiffs have agreed to produce the documents that correspond to entries 5, 6, 9, 70 & 72, which are the other specific entries House Defendants challenged in their motion. *See* ECF No 157 at 16; Ex. 8 (Mar. 11 email).

dated several weeks before the release of U.S. Census data and before South Carolina House's Redistricting Ad Hoc Committee adopted its guidelines and criteria for U.S. Congressional and state legislative redistricting, and approximately five and a half months before Governor McMaster signed H. 4493 into law. As House Defendants note, the Minutes show that the SC NAACP-led Reapportionment Committee Meeting included representatives from several organizations. *Id.* A footer to the Minutes bears the logos of SC NAACP, American Civil Liberties Union, Columbia Urban League, Inc., the South Carolina Progressive Network, the League of Women Voters of South Carolina, the NAACP Legal Defense Fund, and the South Carolina AFL-CIO. *See* ECF 157-9 (Mot. Ex. I).

House Defendants' argument stems from the false premise that the Minutes reflect privileged attorney-client communications. But Plaintiffs do not consider the Minutes privileged and produced the materials unredacted. Indeed, although it cites the Minutes, the Motion does not identify or cite ***any*** communications reflected in the Minutes as privileged. And absent disclosure of privileged communications, there cannot be a waiver. *See, e.g.*, *In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011) (explaining that if the "material was not privileged, revealing the material, including attorneys' discussions, simply could not waive the privilege shielding other material").

In particular, the Minutes do not reveal the contents of an otherwise privileged session to discuss litigation strategy. They do not reflect (1) "legal advice . . . (2) from a professional legal advisor in his capacity as such, (3) . . . relating to that purpose, (4) made in confidence (5) by the client, (6) . . . permanently protected (7) from disclosure by himself or by the legal advisor." *Hege v. Aegon USA, LLC*, No. 1:10-CV-1635-GRA, 2011 WL 1791883, at *4 (D.S.C. May 10, 2011). They reflect a public meeting concerning statewide redistricting attended via

videoconference by numerous civic organizations with an abiding interest in South Carolina's redistricting process, held approximately four months before the start of this litigation.

That Plaintiff SC NAACP hosted these meetings is unremarkable: the organization does not just have a long tradition of engagement as a community leader in advocacy and litigation for fair redistricting maps, it is proud of it. Ex. 2 (Murphy Dep.) at 27:4-27:7 ("Redistricting is not a new initiative for the South Carolina State Conference. It has been something that has been happening here for the -- at least I can say the last thirty years."); *see South Carolina State Conf. Branches of Nat'l Ass'n for Advancement of Colored People*, 533 F. Supp. 1178, 1179-80 (D.S.C. 1982) (involving SC NAACP impasse litigation challenge to state's 1980 congressional districting plan); *Statewide Reapportionment Advisory Committee v. Campbell*, No. 3:91-cv-02983 (D.S.C.) (Complaint filed Nov. 12, 1991 on redistricting challenge to South Carolina congressional maps; SC NAACP named plaintiff); *NAACP, Inc. v. City of Columbia, S.C.*, 850 F. Supp. 404, 406 (D.S.C. 1993) (discussing SC NAACP Voting Rights Act challenge to at-large method of electing Columbia's City Council).[8] The Motion shows only that ACLU and LDF attorneys participated in the SC NAACP-led meeting, and spoke openly about their concerns at that time for the present redistricting cycle. It cites no authority for the proposition that a litigation counsel's participation in a meeting with non-clients on a particular subject matter constitutes a waiver of any potential privilege relating to that subject matter on litigation filed months later.

The case law House Defendants rely upon has no bearing here.[9] House Defendants' reliance on *Sedillos v. Bd. of Educ. of Sch. Dist. No. 1 in City & Cty. of Denver*, 313 F. Supp. 2d

---

[8] *See also* Ex. 2 (Murphy Dep.) at 25:21-27:25; 214:7-217:7.

[9] In each of those cases, the court addressed a potential waiver of communications that were indisputably privileged. For example, in *United States v. Jones*, 696 F.2d 1069, 1071 (4th Cir. 1982), which involved an appeal from an order denying a motion to quash grand jury subpoenas

1091, 1093 (D. Colo. 2004), is noteworthy. In *Sedillos*, the defendant raised his counsel's advice as a defense "while at the same time invoking the attorney-client privilege to prevent the plaintiffs from exploring fully the substance and circumstances of that advice." *Id.* at 1093. But SC NAACP has not raised the attorney-client privilege as to the Minutes, so it cannot possibly shield shielding anything as to those.

SC NAACP also has not used the Minutes as a sword, and could not do so if it tried, because the Minutes have no bearing on any of the claims or defenses in this case, which focus on House Defendants' intent. *See, e.g.*, Order and Op., ECF 153, at 2 (*legislators'* discriminatory intent is central to Plaintiffs' claims; Order and Op., ECF 161, at 4 (explaining racial gerrymandering claims here "turn on the actions of *legislators*, not individual voters"). Although House Defendants challenge SC NAAPC's standing, the Court has recognized that the "only" standing question that is "seriously at issue here" is whether SC NAACP "has members who reside in a district that has been racially gerrymandered." Order and Op., ECF 161, at 4. Apart from their standing argument, House Defendants do not assert any defenses that relate to the Plaintiffs' status as a non-partisan, civil rights organization. *See* Answer, ECF 181, at 34-38. Accordingly, House Defendants' suggestion that Plaintiff have used or somehow intend to use the attorney-client privilege as a sword and shield with respect to the Minutes is baseless.

---

issued to attorneys, the appellants had obtained from counsel "written legal opinions as to the federal income tax consequences flowing from the purchases of coal leases." The appellants then included portions of their counsel's letter opinions—*i.e.*, the privileged communications—"in brochures and other promotional printed material, which they distributed to third parties beginning in 1977 and continuing thereafter." In *R.I. Seekonk Holdings, LLC v. McInerney*, No. CV 04-11682-NMG, 2007 WL 9797498, at *1-2 (D. Mass. Feb. 13, 2007), the Town of Seekonk's Board of Selectman held executive sessions to discuss confidential litigation strategy between the Town and its attorney. The Town subsequently released to the public the minutes from those executive sessions reflecting attorney client communications. *Id.*

## II.    REQUESTS FOR PRODUCTION

The Motion fails to identify any deficiency with Plaintiffs' document productions or their written responses to House Defendants' RFPs.

### 1.    SC NAACP's Document Productions

House Defendants' claim that Plaintiff SC NAACP failed to produce documents in response to Defendants' RFPs is moot. First, SC NAACP did, in fact, produce documents before the Motion. *See* Ex. 3 (Pls.' Am. Resp. to House Defs.' RFP). Second, SC NAACP has made three document productions since then. Following its February 3 production, SC NAACP produced hard copy documents on March 1 and electronic materials on March 11 and March 18. *See id.*; *see also* Ex. 4 (Mar. 15 email). Plaintiffs' March 18 production reflects SC NAACP's production of certain redacted materials previously withheld from the March 11 production as privileged.

During the parties' meet and confer on March 7, Plaintiffs gave House Defendants a detailed description of their process for collecting, reviewing, and producing electronic documents in response to Defendants' RFP. *See* Ex. 8 (Mar. 11 email chain). House Defendants did not articulate any concerns with that process. *See id.* And since then, House Defendants have not requested that SC NAACP apply additional search terms or articulated any similar concern with the scope of materials SC NAACP has agreed to produce. On March 14, Defendants requested for the first time, and Plaintiffs agreed to investigate, the production of any relevant electronic materials from certain additional sources. *See id.* Plaintiffs are investigating House Defendants' request—there is no live dispute as to those materials.[10]

---

[10] At 3:47 pm on March 18, 2022, House Defendants transmitted an email, which among other things, noted the pendency of requests. *See* Ex. 9 (Mar. 18 email). Although Plaintiffs do not address the representations or characterizations in House Defendants' March 18 email here, Plaintiffs reserve the right to respond and correct the representations in the email, and, to the extent

Although House Defendants' have refused to withdraw their challenge to Plaintiffs' <u>written objections and responses</u> to Defendants' RFPs, that challenge is also moot. As with their RFP responses, Plaintiffs gave Defendants with detailed descriptions of their collection and reviewing processes. *See* Ex. 8 (Mar. 11 email chain). Plaintiffs also explained that they have not withheld documents from production of electronic materials solely because they are responsive to those RFPs, *see id.*, and they accordingly amended their RFP objections and responses. *See* Ex. 3 (Pls.' Am. Resp. to House Defs.' RFP). House Defendants have not requested that SC NAACP apply additional search terms or otherwise articulated any concern with the scope of SC NAACP's production. And since Plaintiffs amended their response to the RFP, House Defendants have not identified a single deficiency in the written objections and responses as amended.

Rule 34 requires that a Request describe with "reasonable particularity each item or category of items." A discovery request that requests all documents related to a particular claim does not satisfy Rule 34. As explained in the case Plaintiffs cited in their Objections and Responses to House Defendants' RFPs, *Martinez v. First Class Interiors of Naples, LLC*, No. 3:18-CV-00583, 2020 WL 7027504, at *6 (M.D. Tenn. Nov. 30, 2020): "Requests for production that simply plug a pleading's allegations into boilerplate requests can be almost mindlessly generated, and can be used to impose great burdens on opponents, and do not meet Rule 34's requirement that requests describe with reasonable particularity each item or category of items to be inspected."[11] Although House Defendants criticize the Plaintiffs' citation, they offer no case law to support their purported

---

House Defendants seek additional relief not covered in the Motion based on the email, Plaintiffs object and request the opportunity to respond.

[11] Although House Defendants' letter cites RFPs 36-38, 42-43, Plaintiffs did not object to those RFPs on the grounds that they constitute improper contention discovery. In addition, although House Defendants propounded only 43 RFPs, House Defendants' letter cites as deficient Plaintiffs' purported response to RFPs 44-59.

entitlement to "plug a pleading's allegations into boilerplate requests," *Martinez*, 2020 WL 7027504, at *6, and request all documents "supporting" or "evidencing" allegations or those "related to" an entire claim or defense. Many of Defendants' RFPs, which are exceedingly duplicative, cannot be construed to satisfy the requirement of "reasonable particularity" of Rule 34. *See, e.g.*, ECF 157-7 (Mot. Ex. G), RFP No. 16 ("All documents . . . supporting your allegation that H. 4493 was motivated by a discriminatory purpose. See, e.g., Am. Compl. at ¶ 4."); RFP No. 17 ("All documents . . . supporting your allegation that the Challenged Districts in H. 4493 were adopted with a racially discriminatory intent . . . . See, e.g., Am. Compl. at ¶ 170."); RFP No. 19 ("For each Challenged District, produce all documents . . . supporting your allegation that the House Defendants used race as the predominant factor . . . "); *see also id.* RFP Nos. 12, 13, 18, 20, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, 35, 39, 41.

The RFPs also fail to conform with Rule 26. Although it permits discovery relevant to claims and defenses, Rule 26 requires proportionality, taking into consideration "the parties' relative access to relevant information." Fed. R. Civ. P. 26(b)(1). Plaintiffs' claims and allegations—and Defendants' RFPs citing them—focus overwhelmingly on ***House Defendants' actions and intent***. Setting aside that House Defendants' RFPs fail to satisfy Rule 34, any suggestion that SC NAACP failed to conduct a reasonable search of their own files for evidence of House Defendants cannot be squared with the proportionality factors of Rule 26 or the review and productions that Plaintiffs have undertaken in this case.

## III.    REQUESTS FOR ADMISSIONS

House Defendants broadly challenge the sufficiency of Plaintiffs' objections and responses to nearly every request for admission.

1.    **Purported Insufficient Answers to RFAs that Sought Legal Conclusions.**

House Defendants propounded—and seek an order compelling response to—at least 17 RFAs asking Plaintiffs to admit legal conclusions concerning constitutional or redistricting principles without regard to the facts of any case, none of which serve the basic purpose of narrowing factual disputes for trial. *See* ECF 157 at 11 (citing RFA Nos. 15, 20, 23, 24, 26, 27, 28, 29, 31, 37, 37, 39, 44, 46, 48, 49, 52, 53).[12] The RFAs are improper.

"Under Rule 36, the parties to litigation may request from their adversaries' admissions regarding purely factual matters or the application of law to facts, but not matters of law." *Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x 169, 172 (4th Cir. 2005) (citations omitted). Requests for admission "narrow the array of issues before the court, and thus expedite both the discovery process and the resolution of the litigation." *Id.* (citing *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001). They are meant to "winnow down issues prior to trial." *Id.* A request for admission of a legal conclusion fails that metric, because the Court "is not bound by a party's admission that addresses a purely legal matter." *Adventis*, 124 F. App'x at 172. "[W]here requests for admission . . . seek information as to fundamental disagreement at the heart of the lawsuit . . . a court may excuse a party from responding to the requests." *Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. 2018); *accord Lakehead Pipe Line Co. v. Am. Home Assur. Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997) ("[R]equests for admission are not to be employed as a means 'to establish facts which are obviously in dispute or to answer questions of law.'") (citations omitted).

Courts in this district have repeatedly held as much. *See, e.g., Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 534 (D.S.C. 2018) (request "improper under Rule 36" because it asked party "to admit a legal conclusion by requesting [them] to admit that [another

---

[12] SC NAACP answered RFA Nos. 20 and 31. *See id.*

party] was a "dealer or equipment dealer" under the Fair Practices Act); *Clemson Univ. v. Inter-Indus. Conf. on Auto Collision Repair*, No. CV 8:04-739-HFF-BHH, 2005 WL 8162872, at *3 (D.S.C. Apr. 20, 2005) (holding improper requests that asked defendant to make legal conclusions based on certain "assumptions").

House Defendants' RFAs cited above seek the admission of a legal conclusion without regard to facts, and therefore are improper. *See Mach. Sols.*, 323 F.R.D. at 534.

## 2. Purported Deficiencies in Plaintiffs' Objections to Undefined Terms.

House Defendants argue that Plaintiffs' objections to certain terms in RFAs 23, 24, 26, and 41 as undefined are improper. ECF 157 at 10.[13]

These RFAs do not merely contain certain terms—e.g., "BVAP—that must be defined; each of those terms refers to a measurable concept that can be computed in multiple ways by different experts. For example, House Defendants have requested that SC NAACP "Admit that an opportunity district in which Black voters would have the ability to influence elections could occur when BVAP < 30%." BVAP is an acronym for Black voting-age population and refers to Black voters over the age of 18. But, as is clear from Plaintiffs' complaint, expert reports that have been produced and expert deposition that have been taken, the Census reports the category Black using various self-identified categories. And whether a district will provide Black voters the opportunity to influence an election turns not just on a particular BVAP percentage, but also voting patterns and other conditions. The SC NAACP provided this type of objection and responses to which House Defendants continue to complain. *See* ECF 157-7 (Mot. Ex. G), Resp. to RFA Nos. 23, 24,

---

[13] With one exception (No. 41), the set of RFAs to which this supposed deficiency applies (Nos. 23, 24, 26, 41) overlaps with the above group of RFAs that seek legal conclusions without regard to any facts here. As to RFA No. 41, Plaintiffs offered to meet and confer with Defendants regarding their understanding of "BVAP," see ECF 157-3 (Mot. Ex. C) at 36, and House Defendants chose not to do so.

26, 41. Yet these are issues at the heart of Plaintiffs' case, and it is not unreasonable for Plaintiffs to request that House Defendants at a minimum define terms to which they seek Plaintiffs to admit information and it also it not unreasonable for Plaintiffs to refuse to admit to a RFA that is fact-intensive and requires expert analysis. *Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. 2018) ("[W]here requests for admission are not designed to identify and eliminate matters on which the parties agree, but to seek information as to fundamental disagreement at the heart of the lawsuit, or are unduly burdensome, a court may excuse a party from responding to the requests.").

### 3. Purported Lack of "Reasonable Inquiry" as to RFA Nos. 1-10, 14-27, 30-35, 37-50, 52, 54, 55.

House Defendants complain that "Plaintiffs" failed to undertake a "reasonable inquiry or effort to secure information" in response to several RFAs. ECF 157 at 9. Although House Defendants emphasize the sheer number of RFAs that Plaintiffs supposedly did not answer ("47 of the 55 Requests for Admission," ECF 157 at 8), the Motion ignores the many RFAs that Plaintiffs admitted or denied, as well as the individual responses and objections to those RFAs. Of the RFAs cited, SC NAACP admitted or denied RFA Nos. 1-8, 14, 17, 20, 25, 30-35, and 50. *See* ECF 157-3 (Mot. Ex. C) (Pls.' Resp. to RFA), and Mr. Scott admitted or denied RFA Nos. 9, 10, and 17. House Defendants' motion does not explain how those admissions or denials supposedly reflect a lack of "reasonable inquiry." And most of the remaining RFAs Defendants address (*e.g.*, 15, 23-24, 26-27, 37, 39, 44, 46, 48-50) improperly seek admission of a legal conclusion. As discussed above, these requests are improper, and no admission or denial is warranted.

The only specific RFA actually discussed in House Defendants' motion—RFA No. 9—is telling and reflects the Motion's blunderbuss approach. ECF 157 at 9. RFA No. 9 asks Plaintiffs to: "Admit that Plaintiff Scott does not reside in any of the Challenged [House] Districts." Mr.

Scott responded to the RFA's substance, stating he "ADMITS that he does not live in state House districts 7, 8, 9, 11, 41, 43, 51, 54, 55, 57, 59, 60, 63, 67, 70, 72, 73, 74, 75, 76, 77, 78, 79, 90, 91, 93, 95, 101, and 105." For its part, Plaintiff SC NAACP said it lacked information to admit or deny an RFA that was clearly not targeted to it. Still, Defendants argue that Plaintiffs SC NAACP's answer is deficient, and that the Court should compel SC NAACP to admit or deny the RFA.[14]

House Defendants insistence that SC NAACP admit or deny RFAs about Mr. Scott is illogical. *See*, *e.g.*, *Skean v. Hopkins*, No. CIV.A. 3:12-01837-MB, 2013 WL 3946243, at *9 (D.S.C. July 31, 2013) (denying motion to compel defendants to admit or deny specific diagnoses made by other physicians); *see also Tuvalu v. Woodford*, No. 04–1724, 2006 WL 3201096, at*7 (E.D. Cal. Nov. 2, 2006) ("[R]equests for admission should not be used . . . to ask the party to admit facts of which he or she has no special knowledge."). Defendants argue that Mr. Scott and SC NAACP are jointly represented by the same counsel, but they cite no authority for the proposition that knowledge of one jointly represented party is imputed to the other.

A compelled admission or denial by SC NAACP to RFA No. 9 would also do nothing to narrow the issues for trial. SC NAACP has not denied the RFA, and SC NAACP's standing to challenge those districts is premised on actual SC NAACP members residing in those districts. *See*, *e.g.*, Second Am. Compl. ¶¶ 17-21; Ex. 1 (SC NAACP's Am. Objections and Responses to House Defs.' Interrogs.), Resps. to Interrog. Nos. 4-5. Mr. Scott "is not a member of the SC NAACP or otherwise affiliated with the organization." *See* ECF 157-6 (Mot. Ex. F), Resp. to Interrog. No. 8. In short, whether Mr. Scott lives in any of the Challenged House Districts has no bearing whatsoever on SC NAACP's standing or its claims. It has no bearing on Mr. Scott's claims

---

[14] House Defendants similarly challenge several other requests: RFA Nos. 1-8, which focus only on SC NAACP as an organization; RFA Nos. 9 and 10, which focus only on Mr. Scott.

either, as he has disavowed any challenge to those House Districts. *See* ECF 157-6 (Mot. Ex. F), Resp. to Interrog. No. 1.

House Defendants' broad argument that Plaintiffs failed to conduct a "reasonable inquiry" also ignores specific explanations and objections that SC NAACP and Mr. Scott asserted in response to those RFAs, the particulars of which House Defendants have not attempted to address. For example, SC NAACP and Mr. Scott responded to certain RFAs on the ground that they are unable to do so, either because the requests are vague, or because they require expertise that Plaintiffs lack, *see, e.g.*, SC NAACP Responses to RFA Nos. 14-16, 18-19, 21-24, 26-27, 38-48, which courts have deemed valid reasons for not admitting or denying an RFA. *See, e.g.*, *Dubin v. E.F. Hutton Grp. Inc.*, 125 F.R.D. 372, 376 (S.D.N.Y. 1989); *Meese v. Eaton Mfg. Co.*, 35 F.R.D. 162, 165 (N.D. Ohio 1964) (holding that although requests did not call for legal conclusions, "they do force these laymen to assent to sentences containing terms which might be beyond their full comprehension"). Defendants do not explain why any of these objections are improper as to any specific RFAs; as noted above, the only specific RFA House Defendants discuss in their brief is RFA No. 9, which was directed to Mr. Scott and which Mr. Scott answered.

## <u>CONCLUSION</u>

For the foregoing reasons, House Defendants' motion to compel should be denied.

Dated: March 21, 2022

Respectfully submitted,

Leah C. Aden**
Stuart Naifeh**
Raymond Audain**
John S. Cusick**
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St, 5th Fl.
NY, NY 10006
Tel.: (212) 965-7715
laden@naacpldf.org

Antonio L. Ingram II**
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th St, Ste. 600
Washington, D.C. 20005
Tel.: (202) 682-1300
aingram@naacpldf.org

Adriel I. Cepeda Derieux**
Samantha Osaki**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org

John A. Freedman**
Elisabeth S. Theodore*
Adam Pergament**
Gina M. Colarusso**
John M. Hindley**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel: (202) 942-5000
john.freedman@arnoldporter.com

*/s/ Christopher J. Bryant*
Christopher J. Bryant, Fed. ID 12538
BOROUGHS BRYANT, LLC
1122 Lady St., Ste. 208
Columbia, SC 29201
Tel.: (843) 779-5444
chris@boroughsbryant.com

Somil B. Trivedi**
Patricia Yan**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St., NW
Washington, DC 20005
Tel.: (202) 457-0800
strivedi@aclu.org

Allen Chaney, Fed. ID 13181
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA
Charleston, SC 29413-0998
Tel.: (843) 282-7953
Fax: (843) 720-1428
achaney@aclusc.org

Jeffrey A. Fuisz**
Paula Ramer**
ARNOLD & PORTER KAYE SCHOLER
LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
jeffrey.fuisz@arnoldporter.com

Sarah Gryll**
ARNOLD & PORTER KAYE SCHOLER
LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300
sarah.gryll@arnoldporter.com

*\* Motion for admission Pro Hac Vice
forthcoming*

** *Admitted Pro Hac Vice*

*Counsel for Plaintiffs the South Carolina Conference of the NAACP and Taiwan Scott*

Janette M. Louard*
Anthony P. Ashton*
Anna Kathryn Barnes*
NAACP OFFICE OF THE GENERAL COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org

* Motion for admission *Pro Hac Vice* forthcoming
** Admitted *Pro Hac Vice*

*Counsel for Plaintiff the South Carolina Conference of the NAACP*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 21, 2022, a true and correct copy of the foregoing was

served on all counsel of record by electronic mail.

/s/ *Christopher Bryant*
Christopher Bryant