# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>        Plaintiffs,<br><br>        v.<br><br>THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,<br><br>        Defendants. | **Case No. 3-21-cv-03302-JMC-TJH-RMG**<br><br><br>**THREE-JUDGE PANEL**<br><br><br><br>**PLAINTIFFS' MOTION TO ENFORCE THE FEBRRUARY 10, 2022 ORDER AND FOR _IN CAMERA_ REVIEW** |

## INTRODUCTION

Discovery in this case has confirmed that House Defendants failed to abide by their obligations under the Federal Rules of Civil Procedure and this Court's February 10 Order. They did this by not conducting a reasonable search for documents that the Court ordered produced. February 10, 2022 Order, ECF 153 at 17-18. House Defendants are also improperly withholding documents on the basis of the attorney-client and attorney work product privileges. Plaintiffs therefore request that the Court (1) order House Defendants to conduct a reasonable search of relevant material in House Defendants' possession, custody, and control and (2) conduct an *in camera* review of the 93 documents identified in this motion as being withheld on the basis of the attorney client and attorney work product privileges.[1]

## BACKGROUND

### A.    Plaintiffs' Motion to Compel

On February 2, 2022, Plaintiffs filed their Motion to Compel Production of Documents and Information Requested from House Defendants. *See* Motion to Compel, ECF 119. The Motion was precipitated by House Defendants' broad invocation of the legislative privilege to prevent Plaintiffs from obtaining relevant material about Plaintiffs' allegations that House Defendants engaged in racial gerrymandering and intentional vote dilution of South Carolina's state house districts with the passage of House Bill 4493 ("H. 4493"). Plaintiffs asked the Court to order House Defendants to produce "[a]ll documents responsive to Plaintiffs' requests for production," "[a]ll information responsive to Plaintiffs' interrogatories," and "[a] privilege log identifying documents which House Defendants refuse to produce based on other privileges, such as

---

[1] Pursuant to Local Rule 7.02, Plaintiffs state that the Parties, prior to this filing, met and conferred in good faith on March 4, March 7, and March 14. The Parties were unable to resolve the issues raised in this motion.

attorney/client privilege or work product doctrine and the specific grounds for that privilege, with sufficient factual information about the documents that Plaintiffs and the Court can make a meaningful assessment of the strength of the privilege claim." ECF 119 at 17. Plaintiffs had specifically requested:

- Documents and communications between legislative Defendants, members of the South Carolina General Assembly and their staff or employees, and organizations and third parties related to H. 4493, Predecessor Maps, and redistricting in South Carolina, *see* RFPs 1 and 17;

- Analysis, maps, memorandum, expert reports or analyses concerning the drawing of the districts adopted in H. 4493, Predecessor Maps, and redistricting in South Carolina, *see* RFPs 1 and 3;

- Documents and communications concerning the rationale(s) and purpose(s) behind the Challenged Districts and the Districts Bordering the Challenged Districts adopted in H. 4493 and any Predecessor Maps, *see* RFP 11;

- Documents and communications between House Defendants and other individuals, including members of the South Carolina General Assembly and their staff or employees concerning the Map Room, *see* RFP 18;

- Documents relating to House Defendants' process of drawing and adopting the maps in H. 4493;

- And any racially polarized voting analysis conducted by House Defendants or their aides.

*Id.* at 5. House Defendants opposed Plaintiffs' Motion and asserted privileged over "all documents, information, and communications exchanged throughout the entire redistricting process, from its inception to the adoption of H. 4493." ECF 153 at 4 (quoting ECF 119).

The Court granted Plaintiffs' Motion to Compel in part and rejected House Defendants' assertion of the legislative privilege after balancing the five factors in *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015). *See* ECF 153. The Court held that Plaintiffs were entitled to the following discovery:

1. Depositions of all legislators, staff (including Map Room staff) and consultants involved in the development, design and/or revisions of H. 4493:

2. All versions of maps and related documents produced during the course of the development, design, and/or revisions of H. 4493 and sufficient data to determine the date and time such maps were produced and the persons involved in submitting and reviewing them;

3. All documents which relate in any manner to the intent behind any proposed design and/or revision of the H. 4493 or any individual district referenced in Plaintiffs' Amended Complaint;

4. All documents related to any racially polarized voting analysis utilized in the development, design and/or revision of H. 4493;

5. Documents which identify and/or describe any computer software utilized in the development, design and/or revising of H. 4493;

6. Any documents produced and/or provided by persons not legislators or staff which relate to the development, design and/or revision of H. 4493; and

7. All documents which address any changes in districts from the existing House Plan to H. 4493.

*Id.* at 17. The Court ordered House Defendants to produce these documents by 5:00 PM on February 14, 2022 and ordered the Parties to meet and confer over any remaining privilege disputes. *See id.* at 18.

**B. House Defendants' Document Production**

While House Defendants have produced a significant page count (102,025 pages) since the inception of the lawsuit, and have produced a privilege log, it is readily apparent that they have not searched for or produced key correspondence, deliberations, and analysis that led to H. 4493. Instead, Defendants have padded their production with materials of marginal relevance. For instance, approximately 25,000 pages of House Defendants' production are forty years of the "South Carolina Legislative Manual," each of which is about 400-600 pages long. Another approximately 25,000 pages were a reproduction of materials that were already publicly available on House Defendants' 2001, 2011, and 2021 redistricting website. *See, e.g. South Carolina House of Representatives Redistricting 2021*, https://redistricting.schouse.gov/ (last visited Mar. 21, 2022); *South Carolina House of Representatives Redistricting 2011*, https://redistricting.schouse.gov/archives/2011/ (last visited Mar. 21, 2022).

4

## C.     House Defendants' Failure to Conduct Reasonable Custodial Searches

House Defendants have not made a complete or comprehensive production of their internal correspondence about the map, and instead have largely limited their production or correspondence to emails received by two email addresses established by the Ad Hoc Redistricting Committee to receive public feedback.[2]   The incompleteness of the House Defendants' production is clear from the *de minimis* productions from custodians who were centrally involved in the drawing of maps and the passage of H. 4493.  For example:

- Defendant Chris Murphy, Chairman of the House Judiciary Committee, the key Committee of reference.  Murphy is identified as the custodian for 33 total documents in the production.  House Defendants produced 25 emails to or from Murphy.

- Defendant Jay Jordan, Chairman of the House Redistricting Ad Hoc Committee. Jordan is identified as the custodian for 30 total documents in the production.  House Defendants produced 33 emails to or from Jordan.

- Defendant Jay Lucas, Speaker of the House.  Lucas is identified as the custodian for 55 total documents in the production.  House Defendants produced 51 emails to or from Lucas.

- Patrick Dennis, General Counsel and Chief of Staff to Speaker Lucas.  Dennis is identified as the custodian for 48 documents.  House Defendants produced 87 emails to or from Dennis, most of which are calendar notifications or are non-substantive;

- Thomas Hauger,  House Data/Geographic Information System (GIS) Director.  Hauger is identified as is the custodian for 134 documents in the production.  House Defendants produced 116 emails to or from Hauger.

- Jimmy Hinson, House Judiciary Committee lawyer.  Hinson is identified as the custodian for 15 documents in the production.  House Defendants produced 10 emails to or from Hinson.

- Ashley Harwell-Beach, Code Commissioner and Director of the Legislative Council. Harwell-Beach is not identified as custodian for any documents in the production. Counsel produced 10 emails to or from Harwell-Beach.

---

[2] These are the "House Redistricting" email address (Redistricting@schouse.gov) used to receive emails from individual constituents and groups providing general comments on redistricting, and the "Virtual Testimony" email address (virtualtestimony@schouse.gov)

Given the extensive process House Defendants had to go through to pass H. 4493, it seems implausible that so few documents on the subjects the Court ordered House Defendants to produce exist. The redistricting process lasted 4 months. During the period between September 8 and October 4, 2021 alone, prior to the release of U.S. Census data in August and September 2021, the House Redistricting Committee held eleven public redistricting hearings. After House Defendants released its "House Staff Plan," they held several more hearings before adopting the map on December 9. These meetings were further complicated by the hardships caused by the COVID-19 pandemic. House Defendants received seven public submissions, which they presumably analyzed, and reviewed a number of their own proposals. Therefore, it defies common sense that such a time-consuming, complex endeavor could produce such a small number of relevant emails.

The Court recognized in its February 10 Order that, with regard to communications between and among legislators, staffers, and third parties, "no other evidence would be as probative of an unlawful legislative motive as potential direct or circumstantial evidence which could be obtained through the disclosure of the requested legislative materials." ECF 153. Defendants' production of relevant communications is paltry given its critical value in this case.

The limited production likely derives from several critical flaws in the House Defendants' search, which became apparent over the course of three meet-and-confer sessions.

### 1. Insufficient searches of House Defendants and other designated document custodians

First, although House Defendants designated 11 individuals as document custodians, their searches of those custodians' records were unduly narrow.

For starters, the House Defendants' decision to limit their collection efforts to official email addresses, without searching personal emails, texts, instant messages, or devices did not comply with their obligation to identify, collect, or produce materials in their "possession, custody, or

control" as required by Rule 34.[3]  That these sources contain relevant materials is clear from the following:

- The materials produced reflect that the three named House Defendants used non-legislative email accounts to engage in redistricting discussions.  For example, members of Chris Murphy's staff communicated with him by sending emails to his law firm email address, chris@murphylawfirmllc.com.  *See* **Exhibit A**.

- Legislative staff regularly communicated with members of the Ad Hoc Redistricting Committee, including Defendant Jordan, by sending emails to their personal email accounts.  For example, in **Exhibit B**, it appears that legislative staff regularly communicated with members of the Ad Hoc Redistricting Committee by sending emails to their personal email accounts.  In **Exhibit B**, emails were sent to the personal emails of Jason Elliot (jelliott@jasonelliottlaw.com), Jay Jordan (wallacejordan2@gmail.com), and Neal Collins (collins.neal@gmail.com).

- Members of the House even *requested* that key staffers email information about redistricting to their personal emails.  For example, in **Exhibit C**, Linda Anderson, the executive secretary of the Judiciary Committee, emailed Dean to inform her the Rep. Carl Anderson, asked that "all information [be] sent to his personal account" (repcanderson@yahoo.com).  Similarly, in **Exhibit D**, Robin Heatwole asked Dean to send Rep. Kim Johnson "a copy of the current District 64 map" to her personal

---

[3] It is also important to note that House Defendants were on notice that they had to search these mediums, given that Plaintiffs specifically requested "[a]ll documents and communications related to the current redistricting cycle and/or your claims in this case between you and any member of South Carolina House of Representatives, including but not limited to emails, text messages, social media communications, and other written or electronically stored correspondence."  Request for Production No. 10.

email (kimjohnson@yahoo.com) because she was "unable to revisit" the map room.

Despite House Defendants' custodians using non-governmental accounts for their work on redistricting, counsel have refused to search the custodians' (including the named House Defendants') personal emails, texts, instant messages, or devices for relevant documents. *See* **Exhibit E** (Defs.' Mar. 18 Email). Further, House Defendants, notwithstanding Plaintiffs' repeated requests, also have never provided any meaningful assurances about which accounts contain relevant information. *See* **Exhibit H** (Pls.' Mar. 11 Email); **Exhibit G** (Pls.' Mar. 15 Email).

In a meet and confer on March 4, House Defendants stated that, other than official legislative emails, they have not collected or searched custodians' other email addresses, text messages, devices, instant messages, or any other communication device. *See* **Exhibit F** (Pls.' Mar. 4 Email). Plaintiffs explained that if any of the House Defendants' document custodians have used any such modes of communication in relation to their work on subject matter relevant to this case , House Defendants must collect the relevant accounts/devices/ communications and search for and produce responsive, non-privileged documents that they locate. *See id.* On March 11, House Defendants stated in general terms that they communicated with the named Defendants (and possibly other custodians) concerning non-work-email communications, but did not provide specifics. *See id.* On March 15, Plaintiffs advised they "Plaintiffs remain concerned by the lack of clarity – and absence of any written representations – as to which custodians you have conferred with regarding the existence of such communications and what representations you are making about the existence or lack of existence of such materials for each." *See* **Exhibit G** (Pls.' Mar. 15 Email). Although House Defendants responded extensively to Plaintiffs' March 15 email,

nowhere in their response did they address the existence of relevant documents on personal devices and accounts, let alone their due diligence in evaluating the existence of such materials. *See* **Exhibit E** (Defs.' Mar. 18 email).[4]  Instead, House Defendants wrote—without addressing their non-defendant document custodians—that the three House Defendants are practicing lawyers and that any demand for relevant documents on their personal devices would represent a "substantial infringement on the rights of" those lawyers' clients. *See id.*

Apart from their failure to collect from all relevant sources, defense counsel applied unduly narrow search terms.  For example, House Defendants did not search for basic redistricting concepts like compactness, communities of interest, or racially polarized voting.  House Defendants similarly did not search for the names of key areas of the state where Plaintiffs' alleged that racial gerrymandering and intentional discrimination occurred, like Orangeburg or Sumter, nor the names of key Black legislators whose districts were eliminated through the gerrymandering and discrimination, like Representatives Govan or Jermaine Johnson.  *See*  **Exhibit H** (Pls.' Mar. 11 email).  After the Parties' March 14 meet and confer, Plaintiffs asked that "House Defendants share with Plaintiffs a hit report showing the hits for all proposed additional search terms." *See id*.  To date, Plaintiffs have not received a hit report.[5]  In an email dated March 18, House Defendants refused to conduct any supplemental searches. *See* **Exhibit E** (Defs.' Mar. 18 email).

### 2.    Unduly Narrow Designation of Document Custodians

---

[4] Although Plaintiffs do not address all statements in the House Defendants' March 18 email here, Plaintiffs disagree with many of them and reserve the right to address them as needed.  Plaintiffs disagree with House Defendants' assertion, for example, that they "find it difficult to formulate appropriate responses when Plaintiffs have yet to identify in a formal letter any perceived deficiencies with House Defendants' productions or response." *See* **Exhibit E** (Defs.' Mar. 18 email).

[5] House Defendants did state during the meet and confer that they were open to sharing a hit report of some, but not all of Plaintiffs' proposed search terms. *See* **Exhibit G** (Pls.' Mar. 15 email)

Second, the individuals that House Defendants' designated as document custodians was unduly narrow. It did not include key staffers or legislators, such as other members of the Ad Hoc Redistricting Committee. After House Defendants stated their position that they cannot collect documents from those members without consent, Plaintiffs served subpoenas on those members. During the March 14 meet-and-confer, House Defendants, for the first time after several months of discovery, informed Plaintiffs that they were in the process of seeking consent from all the members of the House Ad Hoc Redistricting Committee to obtain and search the PST files from their emails controlled by the Legislative Services Agency. *See* **Exhibit G** (Pls.' Mar. 15 email), **Exhibit E** (Defs.' Mar. 18 email).

### 3.    House Defendants' Failure to Produce Data from Third Parties

House Defendants made no effort to collect documents from consultants or third parties they relied on in drafting the house maps, including the enacted map in H. 4493.

### 4.    House Defendants' Failure to Produce Data Sufficient to Determine the Date and Time of Each Map and the Persons Involved in Submitting and Reviewing Them

House Defendants have also produced hundreds of maps, but without information sufficient to allow Plaintiffs to determine when the maps were generated or who was involved in creating, submitting, or reviewing the map. In particular, almost all of these maps have been produced unattached to any email or communication or metadata indicating who generated the map or when it was generated. Worse yet, House Defendants indicated that the maps being produced were from not only the 2021 redistricting cycle, but the 2011 and 2001 cycles as well.

Accordingly, the production of these maps and data frustrates, rather than aids in, Plaintiffs' entitlement to discovery of information relevant to the Plaintiffs' claims under the Federal Rules and the Court's Order. House Defendants have defied the Court's order that all maps be produced with "sufficient data to determine the date and time such maps were produced

and the persons involved in submitting and reviewing them." ECF 153 at 17. This has also made it virtually impossible to prepare for or even notice depositions related to the mapmaking process, with trial less than two months away.

**D.     Privilege Log**

House Defendants served privilege logs on February 9, 2021 and February 11, 2021 that outlined documents being withheld on the basis of the legislative, attorney-client, and work-product privileges. First, for the reasons described above, these logs represent materials withheld from patently insufficient searches. Second, with regard to the materials identified, Plaintiffs served their objections to House Defendants' privilege assertions on February 11, 2022. During the meet and confer on March 4, after the Court ordered House Defendants to produce documents being withheld on the basis of the legislative privilege, House Defendants informed Plaintiffs that they were reviewing their privilege logs with the intention of downgrading and producing documents that could not justifiably be withheld on the basis of the attorney client communication and work product doctrine privileges. *See* **Exhibit F** (Pls.' Mar. 4 email).

On Sunday, March 13, House Defendants served Plaintiffs their amended privilege log. According to that log, House Defendants are withholding 93 relevant documents on the basis of the attorney client communication and work product doctrine privileges. Defense counsel has made clear that most of these withheld documents relate to attorneys who work for particular Committees or members and every other individual legislators. *See* **Exhibit I** (Pls.' Challenges to Defs.' Amended Privilege Log). In other words, they are highly relevant and not privileged.

## LEGAL STANDARD

**I.     STANDARD FOR MOTION TO ENFORCE AND FOR *IN CAMERA* REVIEW**

Federal Rule of Civil Procedure 26 provides the general rule regarding the scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to

any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

"Relevancy under this rule has been broadly construed to encompass any possibility that the

information sought may be relevant to the claim or defense of any party." *Equal Emp't

Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06-CV-889, 2007 WL 1726560, at *3

(M.D.N.C. June 13, 2007). "Generally, the burden is on the party resisting discovery to clarify

and explain precisely why its objections are proper given the broad and liberal construction of the

federal discovery rules." *Sky Angel U.S., LLC v. Discovery Communications, LLC*, 28 F. Supp.

3d 465, 482 (D. Md. 2014), *aff'd*, 885 F.3d 271 (4th Cir. 2018).

Federal Rule of Civil Procedure 37 permits parties to move for an order compelling

discovery after the movant "has in good faith conferred or attempted to confer with the person or

party failing to make . . . discovery in an effort to obtain it without court action." Fed. R. Civ. P.

37(a)(1). An order pursuant to Rule 37 is appropriate where a party "fails to produce documents."

*Id.* (a)(3)(iv). An order granting a motion to enforce the Court's prior order pursuant to Rule 37

rests within the sound discretion of the Court. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha

of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995).

The party asserting the attorney-client communication or work product doctrine privileges

bears "the burden of demonstrating the applicability of the privilege to specific documents." *Solis

v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 233 (4th Cir. 2011). The elements of the

attorney-client privilege, which must be shown in a privilege log for each document withheld, are:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person
> to whom the communication was made (a) is a member of the bar of a court, or is
> his subordinate and (b) in connection with this communication is acting as a lawyer;
> (3) the communication relates to a fact of which the attorney was informed (a) by
> his client (b) without the presence of strangers (c) for the purpose of securing
> primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some
> legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4)
> the privilege has been (a) claimed and (b) not waived by the client.

*N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501–02 (4th Cir. 2011).

The work-product doctrine only applies to documents prepared "in anticipation of litigation or for trial." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992); Fed. R. Civ. P. 26(b)(3) (emphasis added) (the work product protection is a qualified privilege for "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."). "The document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Id.*; *see In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004) (citation omitted) (document "should be deemed 'in anticipation of litigation' . . . if . . . [it] can be fairly said to have been prepared or obtained because of the prospect of litigation").

Where a party seeks *in camera* review to challenge an assertion of privilege, "it can advance 'a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged.'" *NLRB v. Interbake Foods, LLC*, Civil Action No. RDB–09–2081, 2011 WL 6736435, at *2 (D. Md. Dec. 21, 2011) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1074 (9th Cir.1992)). This standard derives from *United States v. Zolin*, 491 U.S. 554, 565 (1989), a case which arose in the context of the crime-fraud exception. There, the Supreme Court clarified that only a minimal evidentiary showing is necessary because "*in camera* inspection . . . is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure," and therefore the "threshold we set . . . need not be a stringent one." *Id*. at 572.

**ARGUMENT**

I.   **HOUSE DEFENDNATS FAILED TO CONDUCT A REASONABLE SEARCH FOR RELEVANT LEGISLATIVE INFORMATION**

A.   **House Defendants Should be Required to Collect Additional Documents**

In its February 10 Order, the Court ordered production of documents are "highly relevant to the intentional discrimination claims at the heart of the complaint, because the Legislature's decision making process itself 'is the case.'"  ECF 153 at 12 (quoting *Bethune-Hill*, 114 F. Supp. 3d at 339).  This is because "documents containing the opinions and subjective beliefs of legislators or their key advisors [are] relevant to the broader inquiry into" whether the House maps were drafted with discriminatory intent.  *Id.* (quoting *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 666 (E.D. Va. 2014)).  In other words, "it is clear discriminatory intent contained within legislative documents and communications is relevant to the intentional discrimination element of Plaintiffs' *prima facie* case."  *Id.* at 12-13.  In addition, any drafts of bill language or maps contained in the hard drives of key witnesses will also be critical to Plaintiffs' case.  If any material within House Defendants' hard drive, mobile device, or other mode of communication reflects their intent, those will be relevant to Plaintiffs' *prima facie* case.    Yet, as discussed above, House Defendants failed to conduct a reasonable search for materials responsive to Plaintiffs' requests for production or the Court's February 10 Order.

Defendants have failed to meaningfully comply with the Court's order to produce information concerning the circumstances and motivations surrounding the South Carolina Legislature's enactment of H. 4493.  Documents produced to date suggest that key people discussed the maps and H. 4493 through personal emails, text messages, and other forms of communication.  *See supra* p. 5.  Defendants have not disputed the existence or relevance of such materials, or provided any support for the notion that demand for relevant documents on their

14

personal devices would represent a "substantial infringement on the rights of" those lawyers' clients that categorically insulates those individuals from discovery obligations under the Federal Rules or Order of this Court.  *See* **Exhibit E** (March 18 email).  In any event, that argument does not explain the House Defendants' refusal to collect such materials from designated non-lawyer document custodians.

Courts regularly order parties to produce emails from personal email accounts and text messages, *see, e.g.*, *Modern Remodeling, Inc. v. Tripod Holdings, LLC*, No. CCB-19-1397, 2020 WL 1984338 at *1 (D. Md. 2020), and review and search computers, hard drives, and mobile devices for relevant information, *see, e.g.*, *Thomas v. Roberts*, Civil No. 1:16-cv-01581-AJT-MSN, 2017 WL 11503455, at *2-*3 (E.D. Va. May 18, 2017).  The Court should do the same here.

### B.     House Defendants Should be Required to Apply Additional Search Terms

As part of their discovery obligations under the Federal Rules, House Defendants bear the burden of demonstrating that their search of electronically stored information was reasonable.  *E. Bridge Lofts Prop. Owners Assoc., Inc. v. Crum & Forster Specialty Ins. Co.*, Civil Action No. 2:14-cv-2567-RMG, 2015 WL 12831731, at *3 (D.S.C. June 18, 2015) (Gergel, J.) (citing *Smith v. Life Invs. Ins. Co. of Am.*,  No. 2:07-cv-681, 2009 WL 2045197 at *7 (W.D. Pa. July 9, 2009)).  Such a search would require the application of a reasonable set of search terms.  *Id.*

Here, it is clear that the search terms applied by House Defendants were unduly narrow. *See* **Exhibit H** (Pls.' Mar. 11 email).  As already described, House Defendants did not search for basic redistricting concepts like compactness, communities of interest, or racially polarized voting. House Defendants also did not search cities where Plaintiffs alleged that racial gerrymandering and intentional discrimination occurred and the names of legislators were eliminated as a result of

discriminatory gerrymandering.[6]  The court should order House Defendants to apply the list of search terms that Plaintiffs proposed, or, at a minimum, to articulate in quantifiable terms the burden that applying those searches would impose.

### C.     House Defendants Should be Required to Conduct a Reasonable Review of Hard Drives

House Defendants, during the Parties' meet confers, described that search of legislative hard drives as one in which the House Defendants and custodians were asked to self-select relevant information.  *See* **Exhibit H** (Pls.' Mar. 11 email).  During the Parties' meet and confers, House Defendants declined to described what they believed is relevant and whether the House Defendants and custodians underwent a thorough and complete collection.  To abide by the Court's order to produce all relevant discovery, House Defendants should be ordered to conduct a forensic review of their legislative hard drives to ensure all relevant information contained therein are collected and reviewed.

### D.     House Defendants Should Be Required to Search the PST Files of Staffers

To the extent that House Defendants have not searched the PST files of key staffers, House Defendants' should be ordered to do so in order to meet their obligations under Rule 34.  Parties are required "to produce and permit the requesting party or its representative to inspect [or] copy . . . any designated documents or electronically stored information" or "any designated tangible things" within "the responding party's possession, custody, or control," Fed. R. Civ. P. 34(a)(1)(A)–(B), in order to obtain relevant information under Rule 26.  Moreover, "[a] party is charged with knowledge of what its agents know or what is in the records available to it." *Poole*

---

[6] House Defendants did offer to apply some, but not all, of Plaintiffs' proposed search terms, but have not shared a hit report or otherwise attempted to justify the burden imposed by additional terms.

*ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 501 (D. Md. 2000) (citing 8A Wright & Miller, Fed. Practice and Procedure: Civil 2d, § 2177). "It is well established that 'control' under Fed. R. Civ. P. 34 is to be broadly construed so that a party may be obligated to produce documents requested even though it may not actually possess the documents." *Id.* (citing *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 422–23 (N.D. Ill. 1977)).

    *Benisek v. Lamone* confirms that House Defendants are obligated to conduct a complete and thorough collection of communications and documents of key staffers by, for example, collecting PST files.  320 F.R.D. 32 (D. Md. 2017).   In *Benisek* plaintiffs moved to compel the production of redistricting-related documents of nonparty agencies, and the defendants (who were the legislature, the redistricting advisory committee, and the governor's office), asserted that the documents were not in their possession, custody, or control.  *Id.* at 33-34.  Like Plaintiffs here, the plaintiffs in *Benisek* sought documents reflecting the defendants' intent and motivations when it allegedly gerrymandered Maryland's congressional lines, including documents regarding alternate or revised maps.  *See id.* at 34.  The defendants responded by arguing that it did not withhold any of these documents because the documents were in "possession, custody, or control" of non-party state agencies.  *See id.*  The court held that the documents were in the defendants' "possession, custody, or control" because the defendants had "the practical ability to obtain the documents from another, irrespective of [its] legal entitlement to the documents."  *Id.* at 34 (quoting *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y. 1992)).   In the end, the defendants were ordered "to obtain [and produce] documents and other information from the various state agencies and actors included in Plaintiffs' discovery requests." *Id.* at 36.  Here, there is even less separation between House Defendants and their key staffers - they are employed by the House Defendants

within the South Carolina General Assembly. As a result, the PST files of key staffers would indeed be in House Defendants' possession, custody, and control.

### E. House Defendants' Should be Required to Produce Data Sufficient to Determine the Date and Time of Each Map and the Persons Involved in Submitting and Reviewing Them

This Court stated in its February 10 Order that all maps produced must contain "sufficient data to determine the date and time such maps were produced and the persons involved in submitting and reviewing them." ECF 153 at 17. The maps that have been produced by House Defendants to date does not contain such information. They are neither attached to an email nor do they contain identifying metadata. This lack of information prevents Plaintiffs from being able to use them in its *prima facie* case. As a result, the Court should order House Defendants to reproduce these maps to contain sufficient identifying information so Plaintiffs can understand, at the very least, when the maps were produced and who produced them.

*  *  *

The Court should order House Defendants to conduct a more fulsome search for responsive material. In particular, the Court should order House Defendants to collect and review their designated document custodians' personal emails, text messages and other instant messaging devices, and to apply the additional search terms Plaintiffs have proposed to the documents that they already collected and those they are in the process of collecting, such as other members of the Ad Hoc Committee. Further, House Defendants should be required to collect the PST files of staff members, and produce maps with identifying information, and conduct a more thorough review of legislative hard drives.

## II. HOUSE DEFENDANTS ARE NOT ENTITLED TO WITHHOLD DOCUMENTS BASED ON ANY PRIVILEGE

### A. House Defendants Failed to Demonstrate an Attorney-Client Relationship

18

House Defendants incorrectly maintain that an attorney-client relationship exists between legislators and legislative staff who happen to be attorneys. *See* **Exhibit G** (Pls.' Mar. 15 email). As courts in the Fourth Circuit have consistently maintained, the attorney-client privilege only applies if, among other things, the person asserting the privilege is the client and the attorney is "acting as a lawyer." *Bethune-Hill*, 114 F. Supp. 3d at 346 (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curiam)); *see supra* pp. 11-12. "Consultation with one admitted to the bar but not in that other person's role as lawyer is not protected' and requires the proponent of the privilege to 'present the underlying facts demonstrating the existence of the privilege in order to carry its burden.'" *In re Grand Jury Subpoena*, 542 F. App'x 252, 254 (4th Cir. 2013) (quoting *In re Lindsay*, 158 F.3d 1263, 1270 (D.C. Cir. 1998)).

For example, House Defendants presume an attorney-client privilege exists between Emma Dean, counsel to the House Judiciary Committee, and the members of the Judiciary Committee and the Ad Hoc Redistricting Committee, *see, e.g.*, **Exhibit I** (log numbers 1-75), and between Patrick Dennis, Chief of Staff and General Counsel to the Speaker, and all of the members of the House, *see, e.g.*, *id.* (log numbers 76-92).

Dean and Dennis are attorneys that work for the legislature, but House Defendants have not produced any evidence that there is an attorney-client relationship between them and all of the members of the legislature. For example, House Defendants have not specified when they retained counsel for the litigation surrounding the House's passage of H. 4493, nor have they identified any South Carolina statute, bar ruling, legislative practice manual, or any other authority suggesting that counsel for a committee or the legislature can serve as the individual attorney for a legislator. House Defendants have also not produced any redacted emails involving Dean and/or Dennis, whereby unredacted portions could provide the inference that redacted portions are privileged. In

other words, House Defendants have failed to establish the "underlying facts" to demonstrate an attorney-client relationship. *In re Grand Jury Subpoena*, 542 F. App'x at 254.

The privilege log also fails to establish that the withheld communications were for the purpose of obtaining or providing legal advice. Here precision is particularly important, because counsel could be providing other types of non-legal advice, such as on legislative procedure or political advice, i.e., were they are "acting as a lawyer." *Bethune-Hill*, 114 F. Supp. 3d at 346. For example, in Log number 53, which is an email from Chris Murphy (a member of the Ad Hoc Committee) to Emma Dean titled "Re: Updated draft" House Defendants describe the document as a "[c]onfidential communication from client to attorney regarding changes to draft document related to map room procedures."[7] Based on this description, this document does not appear to be one where there is a communication between an attorney and client for legal advice. Rather, it appears to be a communication requesting *legislative* guidance. The fact that Rep. Murphy is likely seeking advice regarding legislation does not mean that Dean is acting as her lawyer. *Cf. Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 422-23 (D. Md. 2005) ("When an individual acts in a dual capacity, but executes business documents in his capacity as a businessperson, privilege does not apply"); *United States v. Cohn*, 303 F. Supp. 2d 672, 684 (D. Md. 2004) (noting the necessity of distinguishing between communications of business advice and those of legal advice for questions of attorney-client privilege). Furthermore, House Defendants failed to meet its burden of demonstrating the applicability of the attorney client privilege. *Jones*, 696 F.2d at 1072.

------

[7] Other entries that may erroneously presuppose an attorney client privilege with Dean involving redistricting includes entries 1-2, 8, 12-75. This is also the case with entries involving Mr. Dennis including entries 76.

Likewise, there are a number of emails on the log titled "sine die adjournment" from Patrick Dennis to Representative Bill Taylor, Jay Lucas, and Haley Mottel. *See* **Exhibit I** (Log entries 77-79). House Defendants describe these documents as "[c]onfidential communication between staff counsel and legislator with attorney legal advice, mental impressions, and opinions regarding legislative procedure." *Id.* However, it appears that these emails are discussing legislative procedures and strategy. Similarly, there are a number of communications to or from Patrick Dennis labeled "confidential communication" regarding "legislative procedure," the "legislative process," legislative drafting," and "legislative language." *Id.* (Log entries 77-80, 83-89, 93). Again, these entries appear to concern the legislative process and not actual legal advice.[8] Because of this, it is appears that Dennis was not acting as the attorney for the individuals in his email communication, but rather as a legislative strategist. *See cf. Neuberger Berman*, 230 F.R.D. at 422-23; *Cohn*, 303 F. Supp. 2d at 684.

In short, the Defendants have not described log entries 1-93 in sufficient detail to establish their claim of attorney-client privilege, as required by Rule 26(b)(5). The Court should conduct an *in camera* review of these documents to determine whether an attorney-client relationship exists and whether the documents in the privilege log can be properly withheld.

**B.    House Defendants Improperly Claim Documents are Protected by the Attorney Work Product Doctrine Privilege**

---

[8] Further, entries involving media inquiries (Log nos. 81, 82, 90) are flatly not covered by the attorney client privilege. *See In re Signet Jewelers Ltd. Secs. Litig.*, 332 F.R.D. 131, 136 (S.D.N.Y 2019); *Lauth Group, Inc. v. Grasso*, No. 1:07-cv-0972-SEB-TAB, 2008 WL 926631, at *4 (S.D. Ind. Apr. 4, 2008) (quoting *City of Springfield v. Rexnord Corp.*, 196 F.R.D. 7, 9 (D. Mass. 2000)) ("[D]ocuments prepared by the defendants' attorneys 'in anticipation of media inquiries' were not protected by the attorney-client privilege.").

For a document to be withheld under attorney work product, it must be made "in anticipation of litigation or trial." *Nat'l Union Fire Ins. Co.*, 967 F.2d at 984. All the documents House Defendants have withheld on this basis (log entries 1, 3-38, 40, 42, 45, 46-50, 54-57, 60-69, 71-73, 77, 81-89, 93) fail to meet this element. This is because "[l]egislative counsel" cannot "withhold documents pertaining to pending legislation on the basis of the work product doctrine." *Bethune-Hill*, 114 F. Supp. 3d at 348. If counsel for a legislature could withhold documents on this basis, "the legislature could *always* have a reasonable belief that *any* of its enactments would result in litigation. That is the nature of the legislative process." *Id.* (emphasis in original) (quoting *Baldus v. Brennan*, 2011 WL 6385645, at *2 (E.D. Wis. Dec. 20, 2011)). In other words, in the context of a legislature, "the driving force behind the preparation of" a document is for legislation, not litigation. *Nat't Union Fire Ins. Co.*, 967 F.2d at 984.

It is clear from the House Defendants' privilege log that the documents were made over the "ordinary course of" legislation, not for litigation. *Bethune-Hill*, 114 F. Supp. 3d at 348 (quoting *Hickman v. Taylor*, 329 U.S. 508-10 (1947)). For example, in Log numbers 12-36, House Defendants claim as work product Emma Dean's emails with attachments to Representatives Elliot, Collins and, Newton. *See* **Exhibit I**. Each email is titled "public submissions" with attached PNG files of various maps submitted to the Ad Hoc Redistricting Committee. *Id.* The privilege description for these entries state that they are "confidential" documents that "convey legal advice in preparation of litigation." But these documents are quintessential legislative material because the entries reflect an analysis of map submissions. Further, is these emails were sent out on November 10, 2021 and the House did not pass H. 4493 until December 6, 2021.

House Defendants will likely argue that, because Plaintiffs filed its complaint on October 12, 2021, the parties were contemplating litigation and therefore the email and its attachments are

attorney work product.  This is wrong for two reasons.  One, Emma Dean never served as counsel in this litigation on behalf of the House Defendants.  Second, the fact that Plaintiffs filed an action is irrelevant.  Based on the descriptions provided by House Defendants in the privilege log, these documents would have been drafted irrespective of if Plaintiffs filed this action.  This can be gleaned from the privilege log given that the documents are analyses of maps submitted to the Committee by the public at large, including the SC NAACP.  The members of the Ad Hoc Redistricting Committee would have gone through this process as part of its duty to reapportion the House maps.  As a result, it appears that these documents were prepared over the "ordinary course" of the redistricting process.  *Bethune-Hill*, 114 F. Supp. 3d at 348.  In other words, the "driving force behind the preparation of" these documents were for legislation, not litigation.  *Nat't Union Fire Ins. Co.*, 967 F.2d at 984.

As another example, House Defendants assert work product protection for log numbers 61-69, which are emails relating to various redistricting amendments that were sent between November 29 and December 6, 2021.  House Defendants claim these are "[c]onfidential communication[s] between staff attorneys for House and Senate regarding legislative language." *Id.* Log No. 65.  These clearly do not fall under the ambit of attorney work product.  These were made in the "ordinary course" of redistricting, not litigation.  *Bethune-Hill*, 114 F. Supp. 3d at 348.  Once again, the "driving force behind the preparation of" these documents were to consider amendments to H. 4493 and other legislation relating to redistricting, not for litigation.  *Nat't Union Fire Ins. Co.*, 967 F.2d at 984

For the reasons above, these documents and others with similar descriptions (log entries 1, 3-38, 40, 42, 45, 46-50, 54-57, 60-69, 71-73, 77, 81-89, 93), are not attorney work product.  Based on the little information House Defendants have furnished on their privilege log, these documents

appear to have been created for the purpose of drafting and passing H. 4493, not for litigation. As a result, the Court should conduct an *in camera* review of these documents to determine whether these documents can be withheld on the basis of the attorney work product doctrine privilege.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order ordering House Defendants to comply with the Court's February 10 Order by ordering House Defendants to:

1) Collect and produce all responsive material contained in House Defendants' personal emails, text messages, instant messages, and any other form of instant messages;

2) Apply reasonably designed search terms, such as those proposed by Plaintiffs, or, at a minimum, to articulate in quantifiable terms the burden that applying those searches would impose such that the terms are not reasonable.

3) Collect the PST files of key staffers and produce relevant materials;

4) Produce maps containing identifying information pursuant to the Court's February 10 Order;

5) Review legislative hard drives of House Defendants and other designated custodians and produce relevant material; and

6) Provide a privilege log identifying documents which House Defendants and those they control refuse to produce based on other privileges, such as attorney/client privilege or work product doctrine and the specific grounds for that privilege, with sufficient factual information about the documents that Plaintiffs and the Court can make a meaningful assessment of the strength of the privilege claim.

Plaintiffs respectfully ask the Court to conduct an *in camera* review of privilege log entries 1-93 to determine whether documents are being properly withheld from Plaintiffs under the attorney client communication privilege and the work product doctrine privilege.

Dated: March 23, 2022

Leah C. Aden**
Stuart Naifeh**
Raymond Audain**
John S. Cusick**
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St, 5th Fl.
NY, NY 10006
Tel.: (212) 965-7715
laden@naacpldf.org

Antonio L. Ingram II**
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th St, Ste. 600
Washington, D.C. 20005
Tel.: (202) 682-1300
aingram@naacpldf.org

Adriel I. Cepeda Derieux**
Samantha Osaki**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org

John A. Freedman**
Elisabeth S. Theodore*
Adam Pergament**
Gina M. Colarusso**
John M. Hindley**
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel: (202) 942-5000
john.freedman@arnoldporter.com

*Motion for admission Pro Hac Vice
forthcoming
** Admitted Pro Hac Vice

Respectfully submitted,

/s/ Christopher J. Bryant
Christopher J. Bryant, Fed. ID 12538
BOROUGHS BRYANT, LLC
1122 Lady St., Ste. 208
Columbia, SC 29201
Tel.: (843) 779-5444
chris@boroughsbryant.com

Somil B. Trivedi**
Patricia Yan**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St., NW
Washington, DC 20005
Tel.: (202) 457-0800
strivedi@aclu.org

Allen Chaney, Fed. ID 13181
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA
Charleston, SC 29413-0998
Tel.: (843) 282-7953
Fax: (843) 720-1428
achaney@aclusc.org

Jeffrey A. Fuisz**
Paula Ramer**
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
jeffrey.fuisz@arnoldporter.com

Sarah Gryll**
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300
sarah.gryll@arnoldporter.com

Counsel for Plaintiffs the South Carolina
Conference of the NAACP and Taiwan Scott

Janette M. Louard*
Anthony P. Ashton*
Anna Kathryn Barnes*
NAACP OFFICE OF THE GENERAL
COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org

* Motion for admission *Pro Hac Vice*
forthcoming
** Admitted *Pro Hac Vice*

*Counsel for Plaintiff the South Carolina*
*Conference of the NAACP*