# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>      Plaintiffs,<br><br>   v.<br><br>THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,<br><br>      Defendants. | Civil Action No. 3:21-cv-03302-JMC-TJH-RMG<br><br><br><br>**REPLY IN FURTHER SUPPORT OF HOUSE DEFENDANTS' MOTION TO COMPEL DISCOVERY** |

    Defendants James H. Lucas (in his official capacity as Speaker of the South Carolina House of Representatives), Chris Murphy (in his official capacity as Chairman of the South Carolina House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee) (collectively, the "**House Defendants**"), by and through undersigned counsel and pursuant to Fed.

R. Civ. P. 37(a), hereby submit this Reply to the Motion to Compel ("**Motion**") (ECF No. 157), in order to reply to the opposition filed by Plaintiffs The South Carolina State Conference of the NAACP ("**SC NAACP**") and Taiwan Scott, on behalf of himself and all other similarly situated persons ("**Scott**") (collectively, "**Plaintiffs**") (ECF No. 194).

## INTRODUCTION

Although House Defendants attempted in good faith to resolve the discovery issues that underlie the Motion with Plaintiffs before proceeding with their filing, those efforts were unavailing—and House Defendants' efforts to compromise since that filing have been similarly unsuccessful. Plaintiffs' boldly claim in their latest filings to this Court the Motion should be rejected because it "transparently violates Local Rule 7.02." ECF No. 194, 1. House Defendants undertook a deliberate, written consultation with Plaintiffs[1] promptly upon receipt of Plaintiffs' written responses, evidenced by the letter attached as Exhibit A to House Defendants' Motion (ECF No. 157-1). House Defendants submit these engagements are more than sufficient evidence of compliance with L.R. 7.02. *See Allison v. McCabe, Trotter & Beverly, P.C.*, No.: 2:17-cv-1727-PMD, 2017 WL 6363635 *3, n.1 (D.S.C. Dec. 12, 2017) (finding exchange of written consultation letters was sufficient evidence demonstrating good faith effort to resolve dispute in compliance with local rule).

While Plaintiffs made some minimal corrections with their recently amended discovery responses, nearly every discovery response served by Plaintiffs is still deficient. As such, the Motion remains the appropriate vehicle for redress of Plaintiffs' insufficiencies in discovery. With that said, House Defendants have further narrowed the specific discovery responses at issue for

---

[1] The fact that Plaintiffs considered the writing to be an attempt at resolution is evidenced by the e-mail exchanges included as Exhibit 5 to Plaintiffs' Response (ECF No. 194-6) and Plaintiffs' written response attached as Exhibit B to the Motion (ECF No. 157-2).

ruling by the Court (**Appendix A** and **Appendix B** set forth the specific Requests for Admission ("RFA") (Ap'x A) and Requests for Production ("RFP") (Ap'x B) in dispute).[2]

## REPLY TO BACKGROUND

Plaintiffs' Reply offers a brief summary of the jurisdictional facts alleged (but largely unproven) in the Second Amended Complaint. In this filing, continuing the unsupported, naked assertion of associational standing by SC NAACP, Plaintiffs include the newest factual allegation that "SC NAACP has confirmed that at least one of its members is a registered voter in each of the Challenged Districts through a review process conducted by in-house counsel at the NAACP's national office." ECF No. 194, 3. This allegation is not set forth in the Second Amended Complaint, nor is there any affidavit or other credible evidence offered to support the allegation[3] such as an affidavit from the identified NAACP employee. To the extent Plaintiffs' discussion of standing suggests that the question of proof for the associational standing allegations goes only to House Defendants' Fourth Defense, they are mistaken.

Plaintiffs continue to incorrectly characterize the views of House Defendants[4] (such fundamental disagreement being exactly as reported to the Court in the Joint Status Report filed

---

[2] House Defendants continue to believe most, if not all, of the Plaintiffs' responses fail to comply with the applicable rules and do not waive their sufficiency challenges to other responses that may contain identical infirmities. However, in the interests of judicial economy and in respect of this Court's admonitions as to cooperation and expediency, House Defendants further curtail their Motion as to certain Responses or Interrogatory Answers as of this Reply.

[3] Plaintiffs reference the deposition of SC NAACP President Brenda Murphy with a parenthetical reference to page 177 of her testimony as "confirming that the SC NAACP has members who are registered voters in every Challenged District." ECF No. 194, 3-4. The transcript instead evidences that President Murphy *cannot* herself identify a specific member in each House District being challenged that has been harmed as a result of H. 4493. ECF No. 194-2, 177:1-179:2.

[4] The e-mail communications reflect that House Defendants take issue and objected (in writings and on calls) to Plaintiffs' discovery counsel's penchant for "memorializing" discussions in extremely one-sided narratives that suffer from material omissions and misstatements of the events as transpired. ECF Nos. 194-8, 194-9. Plaintiffs' spokesperson's response that House Defendants

3

on March 17, 2022) (ECF No. 187), and simply ignore the obligation to demonstrate why the requested discovery should not be had. "Discovery requests are undoubtedly proper when they lead to relevant or potentially relevant information that will advance the litigation by clarifying a party's contentions and apprising a party of what they must seek to disprove." *Capacchione v. Charlotte-Mecklenburg Schools*, 182 F.R.D. 486, 489 (W.D.N.C. 1998).

Plaintiffs also incorrectly suggest the Motion includes "issues not previously raised to Plaintiffs," which ignores that the timing for the discovery filing in relation to the status conference scheduled by the Court to be held on February 15, 2022, much less the intervening time from the stay and abeyance. Plaintiffs willingly conferred on the privilege issues and as of March 21, 2022, had produced all of two documents recognizing no privilege applied. As such, Plaintiffs' complaints as to "new issues" should be disregarded as moot.

## REPLY TO ARGUMENT

Plaintiffs' Response is separated into three parts, and House Defendants reply *ad seriatim*. Notably, Plaintiffs fail to include a standard of review. "[T]he party resisting a discovery request bears the burden of persuading the court that the requested information is outside the scope of discovery." *Mach. Sol., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 529 (D.S.C. 2018)[5].

---

should line item correct each such uninvited error (from memory) simply invited further disharmony. While the strategy was apparently the way in which Plaintiffs hoped to "document" discovery consultation for their own untimely filing, House Defendants strongly dispute that any unilateral writing of Plaintiffs is imputable to House Defendants, as they do not memorialize House Defendants' positions.

[5] Plaintiffs' purported reservation of a right to further brief issues not addressed in their response (ECF No. 194, n.5) is both unreasonable and unsupported. Plaintiffs enjoyed a significantly longer amount of time to prepare a response to the Motion, when compared to the forty-eight (48) hours afforded to House Defendants in response to Plaintiffs' Motion to Compel. *See* ECF Nos. 109, 8; 119; 134. There is no reason for Plaintiffs not to have fully and comprehensively responded to the Motion and no basis to overlook any failure to meet their burden.

4

## I.     INEFFECTIVE CLAIMS OF PRIVILEGE

The matter of consultation has already been addressed herein. Even if the pre-filing consultation did not (because it could not) address the not yet existing privilege logs, Plaintiffs concede that the privilege issues were discussed during the abeyance period, and consequently the objection as to pre-filing consultation has been mooted. Plaintiffs are obviously mistaken in claiming the Motion "failed to identify privilege log entries for which there is a live controversy," as the argument goes on to discuss "13 specific log entries" identified in the Motion (ECF No. 194, 10). Again, Plaintiffs seek to avoid the proper procedural path for discovery disputes, and instead chastise House Defendants for having "not articulated any specific pending or open disputes" when it is on Plaintiffs to respond to the filed Motion (having had extended time to do so).

Separate from waiver, Plaintiffs have not justified applicability of privilege to documents and communications voluntarily disseminated to third parties with whom no privilege exists. Plaintiffs' latest production of two previously withheld e-mails by Plaintiff Scott (but not the attached documents) does not end the issues raised at pages 15 and 16 of the Motion (ECF No. 157, 15-16). Notwithstanding that Plaintiffs have yet to produce the "revised log" long-promised, Plaintiffs fail to demonstrate the applicability of any privilege to entries numbered 5, 6, 9, 14, 15, 35, 36, 67, 68, 69, 70, 71, 72 on Plaintiff Scott's log (ECF No. 157-8) or any of the documents or communications withheld on the basis of "NAACP v. Alabama" on Plaintiff SC NAACP's log (*see id.*). "A party asserting the privilege or protection has the burden of demonstrating its applicability." *Oppenheimer v. Williams*, No. 2:20-cv-4219-DCN, 2021 WL 5359283 *3 (D.S.C. Nov. 17, 2021) (citing *U.S. v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curium)). As Plaintiffs have failed to make the requisite showing, the documents should be produced.

5

Finally, as to the issue of waiver, Plaintiffs' lengthy argument has little relevance to the actual underlying dispute. Through continued investigation by way of subpoenas directed to third parties (given Plaintiffs' noncompliance with discovery to date), it is clear that a "sword and shield" performance by SC NAACP is before the Court. Plaintiffs present in their Response that representatives of various civic organizations were simply independent participants at the "SC NAACP-led Reapportionment Committee Meeting[s]" who "spoke openly about their concerns at that time for the present redistricting cycle" (ECF No. 194, 11-12), and when doing so it was not in a privileged capacity. As such, it is necessarily true the underlying details and facts on which they base those concerns are similarly not privileged, regardless of these representatives' present role as legal counsel. *See In re Grand Jury Proceedings,* 717 F.2d 1352, 1356 (4th Cir. 1984).

In contrast, counsel for ACLU and NAACP LDF in objecting to Rule 45 subpoenas[6] explicitly stated: "Before this suit was filed and continuing through today, Litigation Counsel have developed and led trial strategy and motions practice," and accuse House Defendants of "targeting [] opposing counsel" in their attempt to obtain relevant documents through third party discovery, demanding that the subpoenas be withdrawn entirely. **Exhibit 2** (3/6/2022 Objection Letter to Rule 45 Subpoenas). Thus, in objecting to the subpoenas as well as throughout the Amended Objections and Answers[7], a broad cloak of privilege is spread by Plaintiffs, inconsistent with the public

---

[6] **Exhibit 1** (Rule 45 Subpoena to ACLU; Rule 45 Subpoena to NAACP LDF).

[7] Further example, Plaintiff SC NAACP's amended objections and answers to House Defendants' First Set of Interrogatories repeatedly place at issue the advice or conduct of counsel yet raise privilege to avoid further disclosure. In the latest response to Interrogatory No. 9, which asks Plaintiff SC NAACP to "[i]dentify each and every person involved in drawing the map presented in the Amended Complaint and who were involved in making decisions regarding the placement of district lines," Plaintiffs refused to answer on the basis of privilege. ECF No. 194-1, 22. Similarly, in response to the interrogatory directed to the written submissions by SC NAACP in conjunction with the ACLU and NAACP LDF, SC NAACP asserted privilege and stated only "non-privileged communications" had been produced.

commentary and conduct of current counsel as established through discovery that Plaintiffs deny as waiving privilege. As House Defendants explained in response to the Objection Letter from ACLU/NAACP LDF Outside Counsel, the thorny privilege issues attendant to the conduct of these organizations is a problem of their own making. **Exhibit 3**, 3/14/22 Response to Objection Letter.

Rather than the obfuscating comparison made by Plaintiffs in discussion of *Sedillos v. Board of Education of School District. No. 1 in City & County of Denver*, 313 F. Supp. 2d 1091 (D. Colo. 2004), it is not that Plaintiffs "raised the attorney-client privilege as to the Minutes" (ECF No. 194, 13), it is that Plaintiffs have raised counsel's advice and conduct as support for its factual allegations then would shield discovery of those facts using privilege. "[A] consistent line of cases has developed an exception to the work-product privilege where the party raises an issue which depends upon an evaluation of the legal theories, opinions and conclusions of counsel." *Coleco Indus., Inc. v. Universal City Studios, Inc.,* 110 F.R.D. 688, 690 (S.D.N.Y. 1986).

Plaintiffs' Response concludes its discussion of privilege by asserting that the only relevant discovery to be had in this case is discovery as to "House Defendants' intent," a position repeatedly taken during the recent consultation discussions. ECF No. 194, 13. Plaintiffs are wrong. "That is not how discovery works." *Kehoe Comp. Sales, Inc. v. Best Lighting Prod., Inc.*, No. 2:08-cv-752, 2010 WL 596501 at *4 (S.D. Ohio Feb. 16, 2010) (explaining each party must independently comply with its discovery obligations). "Discovery, in other words, is not a one-way proposition. It is available in all types of cases at the behest of any party, individual or corporate, plaintiff or defendant." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Plaintiffs have been on notice since the parties' Joint Rule 26(f) Report of the issues that House Defendants would pursue in discovery. ECF No. 109, 5-7. Plaintiffs did not pursue a protective order or otherwise obtain a limit to House Defendants' right to conduct discovery. "The scope of discovery permitted by Rule 26 is designed

to provide a party with information reasonably necessary to afford a fair opportunity to develop his or her case." *St. John Haney v. Kavoukjian*, No. 2:19-2098-RMG, 2020 WL 12762509 (D.S.C. Aug. 3, 2020).

Moreover, Plaintiffs materially misconstrue the pleadings filed to date, and wholesale ignore the dispositive motions that had been filed prior to the operative answer. (ECF Nos. 51, 91, 158). House Defendants continue to challenge the veracity and sufficiency of SC NAACP's showing for standing, and further preserved their defense of failure to state a claim, and did not concede the factual allegations related to requisite members and required personal harms asserted in the Second Amended Complaint. *See Ala. Legis. Black Caucus v. Ala.*, 575 U.S. 254, 263 (2015) ("Our district-specific language makes sense in light of the nature of the harms that underlie a racial gerrymandering claim. Those harms are personal…They directly threaten a voter who lives in the *district* attacked. But they do not so keenly threaten a voter who lives elsewhere in the State. Indeed, the latter voter normally lacks standing to pursue a racial gerrymandering claim.") (quotations omitted, cleaned up). Accordingly, any suggestion that discovery as to those matters would not be material is simply without merit.

## II.     INADEQUATE RESPONSES TO REQUESTS FOR PRODUCTION

Noted earlier, Appendix B sets forth the specific RFPs and Plaintiffs' amended responses that remain subject to the Motion. Plaintiffs' opposition primarily relies on a fabricated record made by Plaintiffs during the abeyance. *See* ECF Nos. 194, 14-16 & 194-4, -8, -9. Following receipt of each "memorializing" e-mail, House Defendants documented their objection to the writings and denied that they fairly represented the discussions held by counsel[8]. **Exhibit 4,**

---

[8] Plaintiffs disingenuously represent to the Court that production issues raised in the Motion are "moot" and suggest House Defendants have not "articulated any similar concern with the scope of materials SC NAACP has agreed to produce" or that "there is no live dispute as to those materials."

**Exhibit 5** (E-mail responses objecting to accuracy of summaries); ECF No. 194-8. As relates to the significance (if any) of the Plaintiffs' Amended Objections and Responses to House Defendants' RFP (ECF No. 194-3), Plaintiffs ignore the concerns raised in the Motion and the amended responses continue to be materially insufficient under the applicable rules of discovery. "The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case." *United States v. Town of Irmo*, S.C., 2020 WL 1025686, at *2 (D.S.C. Mar. 3, 2020) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc*., 967 F.2d 980, 983 (4th Cir. 1992)). The deficiencies in the Responses at Appendix B continue to be expansive, but most fall in the below categories.

      A.      Boilerplate Objections and Vague Assurance of Future Performance

It is well-settled in the District of South Carolina, like in many others, that boilerplate objections are "meaningless" and should be deemed "meritless." *Curtis v. Time Warner Ent. Advance/Newhouse P'ship*, 2013 WL 2099496, at *2 (D.S.C. May 14, 2013); *see also United States v. Town of Irmo*, S.C., 2020 WL 1025686, at *5 (D.S.C. Mar. 3, 2020) ("Parties are prohibited from asserting conclusory, boilerplate objections that fail to explain the precise grounds that make the request objectionable."). Plaintiffs continue blanket references to unspecified "continuing objections" and boilerplate objections in their amended responses to the RFPs, which fail to satisfy the specificity required by Federal Rule of Civil Procedure 34(b)(2).

Glaring examples of the improper boilerplate objections are RFP Nos. 2 and 3, in response

---

(ECF No. 194, 14). Indeed, evidencing some awareness that these statements are flagrantly false, Footnote 10 of the Response offers passing reference to what is in fact a detailed account of the continuing deficiencies in Plaintiffs' collection efforts, and reiterates issues discussed during earlier conferences (ignored in Plaintiffs' false chronicles) that were raised in the Motion and clearly remain unresolved. *See* Exhibit 5.

9

to which Plaintiffs assert an objection on the basis of privilege where the Request explicitly asks only for *non-privileged* documents and communications. And Plaintiffs inexplicably object to RFP No. 3 claiming that information sought is "outside Plaintiffs' knowledge, possession, custody, or control," when RFP No. 3 is explicitly limited to discoverable material "*in your possession custody or control.*" Multiple responses also continue to impermissibly offer vague assurances of some sort of production at an unknown future time. *See e.g.* RFP No. 2. As explained in the Motion, responses offering "vague assurance that the requested documents will be produced 'in the future at a mutually agreeable time and place'" are insufficient and "assures continued wrangling" between the parties. *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 655 (D. Md. 1997); *see also Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 246 (M.D.N.C. 2010) (explaining the promise to continue to search for records and supplement responses in the future, "is a completely inadequate response to a long standing discovery request."). As to each and every Request that Plaintiffs interposed boilerplate responses or vague assurances of future production, this Court should find Plaintiffs have waived any right to object and the responses treated as a failure to respond pursuant to FRCP 37(a)(3). *See Kinetic Concepts, Inc.*, 268 F.R.D. at 247.

    B.    <u>Incomplete Custodian and Collection Efforts</u>

The insufficiency of Plaintiffs' collection efforts was raised in House Defendants' consultation letter and further addressed in the Motion. ECF No. 157, 18. In the Amended Responses, Plaintiffs now remove the earlier language promising to search files of SC NAACP's President for any non-privileged documents, and in its place SC NAACP asserts that it has and will continue to produce "non-privileged electronic materials resulting from the custodian search and search term parameters disclosed to Defendants on March 7, 2022." *See e.g.*, ECF No. 194-3 at RFP No. 4. The inadequacy of the custodial searches undertaken by Plaintiffs was discussed during the consultation call on March 14, 2022, and is addressed at length in the March 18, 2022

e-mail to Plaintiffs' counsel. *See* Exhibit 5 (3/18/2022 E-mail)[9]. The record is replete with evidence that relevant, responsive information is in the possession of Executive Leadership and Branch Presidents of SC NAACP, and Plaintiffs have failed and to date refused to collect *any* discovery materials from these individuals[10]. Plaintiffs representation to this Court that no concerns exist with the search or scope of production is simply wrong and House Defendants continue to believe that Plaintiffs should be required to undertake the necessary investigation in response to properly propounded RFPs.

C.     Undisclosed Audio Recordings

As alluded in the Joint Status Report submitted on March 21, 2022, House Defendants were only just informed on March 18, 2022, by counsel for ACLU and NAACP LDF, that more than a dozen highly relevant and responsive audio recordings exist of the reapportionment meetings convened by SC NAACP that were never identified or disclosed by Plaintiffs in this litigation. *See* ECF No. 195, 3. House Defendants were advised that the recordings would be promptly produced "through party discovery" by Plaintiffs. House Defendants' RFP No. 3

---

[9] SC NAACP's discovery positions are inconsistent with its discovery responses, which for example state that "Executive leadership of the South Carolina State Conference of the NAACP, including Brenda Murphy, President" are persons believed to have knowledge of relevant facts, and that "feedback from organizational leadership like executive members and/or Branch presidents" of the SC NAACP was obtained during material parts of the underlying redistricting process, making it apparent that those individuals would be custodians for purposes of SC NAACP's discovery obligations. *See e.g.* ECF No. 194-1, Int. Nos. 2, 3, 5. The previously produced minutes of the SC NAACP Reapportionment Committee also evidence persons acting in their capacity as members/representatives of SC NAACP, all of whom are likely to have relevant, non-privileged information that should be collected and produced to House Defendants.

[10] Suggesting that collection of President Murphy's "SC NAACP" e-mail account is sufficient is nonsensical, given that not even President Murphy herself identifies that e-mail address as her contact. *See* ECF No. 157-9, 5. Indeed, her routine use of her personal e-mail account is found in the documents produced by the League of Women Voters in response to House Defendants' Subpoena. *See e.g.,* **Exhibit 6**, B. Murphy e-mail to J. Ruoff, *et al*.

*specifically* asks for audio recordings related to any claim or defense in this case. In the most recent answer at Appendix B, Plaintiffs made no mention of the withholding of this information.

D.     Misunderstanding of "Contention Discovery"

The case law affirming the use of the complained "contention" requests is that very case Plaintiffs erroneously reference in their initial and amended responses. House Defendants are "of course, entitled to seek discovery of documents that support the allegations of Plaintiffs' complaint". *Martinez v. First Class Interiors of Naples, LLC,* No: 3:18-CV-00583, 2020 WL 7027504 (M.D. Tenn. Nov. 30, 2020). Plaintiffs argue generally that the Requests are improper because they do not satisfy Rule 34's requirement of reasonable particularity, dismissing them as "mindlessly generated" or simply "plugged in" allegations of the Complaint. This is not so. At the time discovery was served, the operative pleading was the First Amended Complaint and consisted of 55 pages and 178 paragraphs, 159 of which were factual allegations. Plaintiffs complain that House Defendants are not permitted to "plug a pleading's allegations into boilerplate requests" but in fact, similar document as at issue here were approved in *Kinetic Co., Inc. v. Medtronic, Inc.,* No. 08-6062, 2010 WL 11561275 (D. Minn. Nov. 23, 2010), a case cited in *Martinez*. Rejecting a plaintiff's opposition to contention discovery in the form of both interrogatories and document requests, the court disagreed explaining: "The Federal Rules of Civil Procedure grant courts discretion to limit discovery where certain conditions are met. Absent a showing that one of these conditions has been met, there is no support in the [Rules] that contention discovery is somehow disfavoured or presumptively overly broad or unduly burdensome. This Court is not persuaded that [the requests] are premature, overbroad, or unduly burdensome." *Kinetic Co., Inc.*, at *3-4 (citing Fed. R. Civ. P. 1, 26(b)(2), 26(c), 33(a)(2)).[11]

---

[11] The challenged document requests found appropriate by the court each began with the following language: "All documents that support your contention in the Complaint that . . . ."

Plaintiffs have failed to demonstrate that the requests go beyond the scope of discovery, and their attempt to wholesale avoid providing a complete response and production of the information that supports the allegations of the Complaint should be rejected. The law in the Fourth Circuit is clear that a factual basis must exist before bringing claims for relief and House Defendants are entitled to obtain discovery of the factual basis for bringing the claims regardless of Plaintiffs' one-sided view of relevance. *See In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990).

E.     Improper Avoidance of Discovery

Plaintiffs' final argument related to the RFPs is a distortion of the proportionality requirement in FRCP 26. As explained in *Machinery Solutions*, "[t]he scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case." *Machinery Solutions*, 323 F.R.D. at 526. Plaintiffs' myopic focus on "House Defendants' actions and intent" ignores that discovery is an opportunity for *all parties* to obtain information necessary to prepare an appropriate record. "Unless limited by court order, the scope of discovery is governed by Federal Rule of Civil Procedure 26(b)(1) which states '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Patrick v. Teays Valley Trustees, LLC*, 297 F.R.D. 248, 256 (N.D. W.Va. 2013) (quoting Fed.R.Civ.P. 26(b)(1)). "While the pleadings will be important, it would be a mistake to argue that no fact may be discovered unless it directly correlates with a factual allegation in the complaint or answer." *Thompson v. Dep't of Housing and Urban Dev.*, 199 F.R.D. 168, 172 (D. Md. 2001). "[D]iscovery disputes involving boilerplate and other inappropriate objections [occur] far too frequently. . . . The days of ambushing one's opponent are gone, and were, in fact, never really in effect under the Federal Rules when properly applied." *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D. 522, 530 (S.D. W. Va. 2007).

### III. INSUFFICIENT RESPONSES TO REQUESTS FOR ADMISSION

Noted earlier, Appendix A sets forth the specific RFAs and Plaintiffs' amended responses that remain subject to the Motion.

#### A. The Requests for Admission Do Not Seek Admission as to Law

Plaintiffs' claim that numerous requests served by House Defendants improperly sought admission on matters of law is without merit. ECF No. 194, 17. In Plaintiffs' Amended Objections and Responses to House Defendants' RFAs, one or both Plaintiffs continue to assert an objection on such basis. *See* Ap'x A. Plaintiffs' extreme view loses reason and sense. "'Parties may not view requests for admission as a mere procedural exercise requiring minimally acceptable conduct. They should focus on the goal of the Rules, full and efficient discovery, not evasion and word play.'" *House v. Giant of Maryland, LLC*, 232 F.R.D. 257, 259 (E.D. Va. 2005) (quoting *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 936 (9th Cir. 1994)).

As clearly evidenced by examples such as RFA Nos. 23, 24 and 26, the remaining RFAs do not impermissibly seek admissions on matters of law; rather, the request at most presents "a straightforward application of law to fact. It asks the Plaintiffs to admit that if a certain factual situation is found to exist, a certain legal outcome results. This is precisely the kind of request contemplated by Rule 36(a)." *Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. 418, 423-24 (N.D. W.Va. 2006). Plaintiffs have not demonstrated that any single RFA is improper, therefore the objections should be disregarded and the RFAs deemed admitted unless a proper response is made promptly.

#### B. There are No Definitional Barriers to Proper Responses

In attempting to justify their objections based on undefined terms, Plaintiffs use the example of the term "BVAP." ECF No. 194, 18-19. As explained in the Motion, however, House

Defendant did in fact define many of the terms challenged by Plaintiffs (ECF No. 157-4, 5), or were words of ordinary meaning used by Plaintiffs in their pleadings. Plaintiffs now suggest that more than a definition is required—an expert calculation is necessary. Plaintiffs' positions continue to lack merit. *See Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. at 428 (addressing objection to interrogatory on the basis that answer requires expert opinion and/or conclusion of law).

  C. Interposing of Boilerplate Objections and Equivocation Does Not Comport with the Rules

Plaintiffs' last argument may well be the best representation of how objectionable their responses are to House Defendants' RFAs. Nothing short of incomprehensible in almost every circumstance, House Defendants request the Court not overlook what was raised as the threshold deficiency in Plaintiffs' responses to House Defendants' RFAs, which was the impermissible tactic of interposing "OBJECTIONS" in response to each and every Request, following which were separately stated varying iterations of "responses" for each Plaintiff. ECF No. 157, 8. "Parties must respond truthfully, fully, and completely to discovery or explain truthfully, fully, and completely why they cannot respond. Gamesmanship to evade answering as required is not allowed." *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) (citing *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D.Pa.1996)); *see also Henry v. Champlain Enter., Inc.*, 212 F.R.D. at 81 (describing party's unnecessary added verbiage as "an abomination and insulting in their effort to make a complicated matter worse.").

Similarly, still at issue in Appendix A are Responses that equivocate and impermissibly interject issues not asked by the RFA. "Where an issue had been raised in the request, a qualification meeting that issue was proper; otherwise, it was not." *U.S. ex rel. Bibby v. Mortgage Investors Corp.*, 323 F.R.D. 424, 430 (N.D. Ga. 2017). "Plaintiff should not unnecessarily

15

complicate its Response by indicating it cannot admit or deny things that it is not being asked to admit or deny." *City of Ann Arbor Empl. Ret. Sys. v. Sonoco Prod. Co.*, No.: 4:08-2348-TLW-SVH, 2011 WL 13199217 (D.S.C. Feb. 17, 2011). "The party to whom requests for admission are propounded acts at his own peril when answering or objecting. Gamesmanship in the form of non-responsive answers, vague promises of a future response, or quibbling objections can result in the request being deemed admitted or in a post-trial award of monetary sanctions without prior opportunity to correct the deficiency." *House v. Giant of Maryland, LLC*, 232 F.R.D. 257, 262 (E.D. Va. 2005).

## CONCLUSION

In response to a motion to compel, "the party resisting discovery bears the burden of showing why it should not be granted. Specifically, [Plaintiffs'] must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Mainstreet Collection, Inc.*, 270 F.R.D. at 241. Based on the foregoing, House Defendants respectfully request an order assessing the sufficiency of Plaintiffs' discovery responses and ordering compliance in accordance with the Federal Rules of Civil Procedure to issue, and for such other and further relief as the Court deems just and proper.

[*SIGNATURE PAGE FOLLOWS*]

Respectfully submitted,

/s/ Michael A. Parente
Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Erica H. Wells (Fed. ID No. 13206)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
EWells@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com

William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900
Greenville, SC 29601
Telephone: 864.370.2211
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com

*Attorneys for James H. Lucas, Chris Murphy, and Wallace H. Jordan*

March 25, 2022
Columbia, South Carolina