# Exhibit 2

**WILMERHALE**

**BY ELECTRONIC MAIL**

March 6, 2022

Matthew T. Jones

+1 202 663 6018 (t)
+1 202 663 6363 (f)
matt.jones@wilmerhale.com

Mark C. Moore
Nexsen Pruet, LLC
1230 Main Street, Suite 700
Columbia, SC 29201

Re:  *S.C. State Conf. of the NAACP v. McMaster*, No. 3:21-cv-03302-JMC-TJH-RMG (D.S.C.)

Dear Mr. Moore:

I write on behalf of my clients, the American Civil Liberties Union Foundation ("ACLU") and the NAACP Legal Defense and Educational Fund, Inc. ("NAACP LDF") (collectively, the "Litigation Counsel"), to object pursuant to Fed. R. Civ. P. 45 to the subpoenas emailed to Litigation Counsel on February 3, 2022 in connection with the above-referenced litigation (the "subpoenas").

As we have discussed by phone, the Litigation Counsel have made a good faith initial assessment of the scope of materials demanded by your subpoenas.  We are responding now to provide you in writing our objections before March 7, 2022, the agreed-upon return date for the subpoenas.  We are hopeful that upon review of these objections you will agree to withdraw the subpoenas.

To begin, the subpoenas do not specify, under any standard, how the information sought is relevant.  As you are aware, parties may obtain only discovery that is "*relevant* to the party's *claim or defense*[.]"  Fed. R. Civ. P. 26(b) (emphasis added).  We struggle to see how the information sought by the subpoenas about the communications and actions of private citizens is relevant to whether the South Carolina Legislature engaged in racial gerrymandering and intentional discrimination.  As the Court has made clear, these constitutional claims depend on the *Legislature's* decision-making process, which make the *Legislature's* communications and actions singularly important. ECF No. 153 at 12; ECF No. 161 at 4 ("[T]he racial gerrymandering claims here . . . turn on the intent and actions of the *legislators*, not of individual voters.").  By contrast, the communications and actions of Litigation Counsel—private parties with no constitutional authority to create electoral districts—have no bearing on the claims before the Court.

Even if the materials sought were relevant, the subpoenas' targeting of opposing counsel is highly disfavored because of its tendency to disrupt the adversarial system, lower the standards of the profession, and add to the burdens of litigation.  These subpoenas are even more troubling in their express demand for production of information protected by the attorney-client privilege, the work product doctrine, and the First Amendment associational privilege.  Beyond the weighty privilege issues implicated by your subpoenas, they are unusually burdensome,

Wilmer Cutler Pickering Hale and Dorr LLP, 1875 Pennsylvania Avenue NW, Washington, DC 20006
Beijing    Berlin    Boston    Brussels    Denver    Frankfurt    London    Los Angeles    New York    Palo Alto    San Francisco    Washington

ActiveUS 193460006v.1

WILMERHALE

March 6, 2022
Page 2

demanding that Litigation Counsel turn their attention away from numerous other discovery engagements and a fast-approaching trial to identify and review a broad scope of irrelevant materials. We respectfully request that you withdraw the subpoenas.

These subpoenas are highly unusual because they are directed to your opposing counsel of record. Before this suit was filed and continuing through today, Litigation Counsel have developed and led trial strategy and motions practice. Plaintiffs engaged Litigation Counsel to represent them in this lawsuit; subpoenas directed at Plaintiffs' counsel that target privileged legal advice and litigation materials disrupt the ability of Plaintiffs' counsel to litigate their clients' constitutional rights. Discovery of this nature—namely, attempting to obtain information shared between and among Plaintiffs and their counsel *in connection with the present litigation*—is strongly disfavored and, even in the unusual circumstances where it is permitted, requires a heightened showing of relevance. *See Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986); *see also* S.C. Rules of Prof'l Conduct R. 4.4(a) ("[A] lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.").

The subpoenas also implicate the First Amendment's associational privilege, as both targeted entities are policy organizations advocating for essential rights of disenfranchised Americans. *Cf. NAACP v. Alabama*, 357 U.S. 449, 460 (1958). Compelled disclosure of this privileged information would almost certainly run afoul of the First Amendment, as it would intrude on the constitutionally guaranteed privacy of association and would interfere with the entities' internal operations, effectiveness, and communications. Moreover, as is the case under the *Shelton* doctrine, any disclosure of privileged information protected by the associational privilege is subject to a heightened relevancy standard that cannot be met here.

Under Fed. R. Civ. P. 45(d)(1), an "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." And, under Fed. R. Civ. P. 26(g)(1), "[b]y signing" any discovery request, "an attorney or party certifies that" the request is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and that the request is "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B)(ii). The principles of Rule 26(g) apply with equal force to third-party subpoenas issued under Rule 45. *See* Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment ("Paragraph (c)(1) gives specific application to the principle stated in Rule 26(g) . . . . Abuse of a subpoena is an actionable tort.").

Considering the above, and as explained in more detail below, we must object. As third parties—and opposing counsel of record—to the underlying litigation, the Litigation Counsel's objections to the subpoenas are as follows:

**WILMERHALE**

March 6, 2022
Page 3

1. Litigation Counsel object to the subpoenas' requests to the extent the House Defendants have failed to make the heightened showing of relevance or, at minimum, that the proposed discovery would not entail an inappropriate burden or hardship or avoid privilege and work-product concerns, as required under applicable precedent for discovery requests to opposing counsel.

2. Litigation Counsel object to the subpoenas' requests to the extent that the requests seek information that is protected from disclosure by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege or protection.

3. Litigation Counsel object to the subpoenas' requests to the extent that the requests seek information that is protected from disclosure by the First Amendment associational privilege.

4. Litigation Counsel object to the subpoenas' requests for all communications with "any related organization or entity and their REPRESENTATIVES," with "national, regional, state, or local branches of the NAACP," or with "national, regional, state, or local partisan or political groups" to the extent that the targeted entities are not defined, and are therefore overly broad, unduly burdensome, or vague.

5. Litigation Counsel object to the subpoenas' request for all data related to redistricting in South Carolina to the extent that the terms "reports, analyses, [and] statistics" are not defined, and are therefore overly broad, unduly burdensome, or vague.

6. Litigation Counsel object to the subpoenas' requests for all communications regarding "redistricting in South Carolina" or the "redistricting process in South Carolina" to the extent the requests are undefined and not limited to the subject matter of the underlying litigation and are therefore overly broad, unduly burdensome, or vague.

7. Litigation Counsel object to the subpoenas' requests as being overly broad and unduly burdensome to the extent the requests seek publicly available information that is equally available to the parties in the underlying litigation as it is to the Litigation Counsel.

8. Litigation Counsel object to the subpoenas' requests as being overly broad, unduly burdensome, and non-proportional to the needs of the contested claims to the extent the scope of the requests encompasses subject matter beyond the scope and subject of, and thus not relevant to, the *causes of action* set forth in the litigation filings.

When reviewing subpoenas issued to third parties, courts balance "the relevance of the discovery sought, the requesting party's need [for the information], and the potential hardship" to the subpoena's target. *Heat and Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986). The "concern for the unwanted burden thrust upon third parties is a factor entitled to

WILMERHALE

March 6, 2022
Page 4

*special weight* in evaluating the balance of competing needs." *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) (emphasis added) (quotation marks and citations omitted). The burden imposed by the subpoenas is especially onerous given Litigation Counsel's status as opposing counsel of record—meaning extensive privilege reviews would be required in response to the requests, with the lion's share of materials likely privileged—and given that the House Defendants demonstrated no particular need for the information sought.

*The Subpoenas Fail to Meet the Demanding Standards for Opposing-Counsel Discovery*

Federal courts across the country follow the *Shelton* test when evaluating discovery requests to opposing counsel—a practice which "has long been discouraged." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)). The *Shelton* court established a three-part test for parties seeking to depose opposing counsel, which requires a showing that: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." *Ford Motor Co. v. Nat'l Indem. Co.*, Civil Action No. 3:12cv839, 2013 WL 3831438, at *2 (E.D. Va. July 23, 2013) (quoting *Shelton*, 805 F.2d at 1327).

Courts have applied the heightened *Shelton* standard not only for depositions, but also for Rule 45 subpoenas seeking non-deposition discovery. *See, e.g.*, *Monster Energy Co. v. Vital Pharm., Inc.*, Case No. 5:18-cv-01882-JGB (SHKx), 2020 WL 2405295, at *1 (C.D. Cal. Mar. 10, 2020); *Rygg v. Hulbert*, No. C11-1827JLR, 2013 WL 264762, at *1 (W.D. Was. Jan. 23, 2013). This judicially created framework was intended to combat a practice that "causes 'the standards of the profession [to] suffer'" and "disrupt[s] the adversarial nature of our judicial system." *Shelton*, 805 F.2d at 1327 (quoting *Hickman*, 329 U.S. at 513).

The House Defendants have not shown that their document subpoenas are "crucial" to the underlying litigation, nor that there are no other means—such as party discovery or subpoenas to the other third parties identified in the requests—to obtain the information. Indeed, the House Defendants have made no showing whatsoever as to the relevance of the materials sought. Moreover, as discussed below, the incredibly broad scope of these document requests clearly encapsulates information protected by *multiple* privileges. And to the extent that the requests seek any non-privileged information—at most, a miniscule fraction of the sweeping categories described—the House Defendants fail to show that "no other means exist to obtain the information than to depose opposing counsel." *Shelton*, 805 F.2d at 1327.

*The Subpoenas Specifically Target Information Protected by the Attorney-Client Privilege*

The subpoenas not only encompass, but expressly target, communications at the heart of the attorney-client privilege. The attorney-client privileges at issue include both those belonging to

WilmerHale

March 6, 2022
Page 5

the Plaintiffs in this litigation as well as legal advice provided by counsel of record to the subpoenaed entities. The defined time period for the subpoenas is "through the date of trial or disposition of this action," thereby seeking to discover in real time the legal advice and strategy of opposing counsel. Where applicable—as it is axiomatically so for these topics—the attorney-client privilege is absolute; it is not subject to a need-based balancing test. *See Swidler & Berlin v. United States*, 524 U.S. 399 (1998). Litigation materials that contain or reflect litigation strategy, which the subpoenas explicitly request, are similarly protected "absolutely." *Chase v. City of Portsmouth*, 236 F.R.D. 263, 269 (E.D. Va. 2006). There is no need that House Defendants could articulate for these materials that would overcome these absolute privileges.

*The Subpoenas Specifically Target Information Protected by the First Amendment's Associational Privilege*

Both the NAACP-LDF and the ACLU are policy advocacy organizations that have historically played—and continue to play—a critical role in advocating for the rights of disenfranchised Americans. As such, their communications fall squarely within the First Amendment's associational privilege. *Cf. NAACP v. Alabama*, 357 U.S. 449, 460 (1958); *United States v. Citizens State Bank*, 612 F.2d 1091, 1094 (8th Cir. 1980) (quoting *NAACP*, 357 U.S. at 460 for the proposition that "[i]t is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of" free speech, and noting that the privilege applies where a party makes a *prima facie* showing of "arguable First Amendment infringement"). Nearly all the subpoenas' requests seek information covered by the associational privilege held by the NAACP LDF and ACLU. Compelled disclosure of this information risks "intrud[ing] on the privacy of association . . . guaranteed by the First Amendment" and "seriously interfer[ing] with internal group operations and effectiveness." *AFL-CIO v. Fed. Election Comm'n*, 333 F.3d 168, 177–78 (D.C. Cir. 2003).

The associational privilege is well established and robust. "Effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *NAACP*, 357 U.S. at 460; *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984) ("An individual's freedom to speak, to worship, and to *petition the government for the redress of grievances* could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed.") (emphasis added). Thus, "[t]he First Amendment protects political association as well as political expression." *Buckley v. Valeo*, 424 U.S. 1, 15 (1976); *Perry v. Schwarzenegger*, 591 F.3d 1147, 1159 (9th Cir. 2010). "Implicit in the right to associate with others to advance one's shared political beliefs is the right to exchange ideas and formulate strategy and messages, and to do so in private." *Perry*, 591 F.3d at 1162; *see also AFL-CIO v. FEC*, 333 F.3d at 177–78 ("[W]here, as here, the Commission compels public disclosure of an association's confidential internal materials, it intrudes on the 'privacy of association and belief guaranteed by the First Amendment,' as well as seriously interferes with internal group operations and effectiveness.")

WilmerHale

March 6, 2022
Page 6

(quoting *Buckley*, 424 U.S. at 64). "A chilling effect need not be established with mathematical certainty" to invoke the associational privilege. *Pulte Home Corp. v. Montgomery Cnty.*, Case No. GJH-14-3955, 2017 WL 1104670, at *14 (D. Md. Mar. 24, 2017).

Although the privilege is subject to a balancing test, "[m]ere speculation that information might be useful will not suffice" to overcome the privilege. *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 4 (D.D.C. 2002). Information covered by the associational privilege is subject to a "heightened relevancy standard" and must "go to the heart of the matter" in order to be considered in this balancing test. *Pulte*, 2017 WL 1104670, at *12, *15 (citations omitted). House Defendants have failed to make a base showing of relevancy, let alone the heightened standard required to overcome this privilege.

Given the complexity, expense, and burden involved with these subpoenas to opposing counsel, which are highly disfavored and facially implicate a range of privileges, we respectfully request that House Defendants withdraw them. At a minimum, we request that House Defendants reassess (and explain to us) the need for any of the requested information, in particular the Litigation Counsel's confidential materials. As previously explained, we remain willing to consider more tailored requests, and to explore the Litigation Counsel's ability to search for and provide any relevant documents and information responsive to those requests. Given the burden, we would also welcome discussion of House Defendants' willingness to cover the costs of this effort.

By stating the above grounds for objection, the Litigation Counsel do not waive their right to assert other, additional grounds of objection in any enforcement proceeding or their right to obtain reimbursement for expenses incurred in the event they do produce information responsive to the subpoenas, either through agreement, or as the result of a court order.

Please feel free to reach out to me any time at (202) 663-6018.

Best regards,

Matthew T. Jones

Cc: Somil B. Trivedi, American Civil Liberties Union Foundation
Leah C. Aden, NAACP Legal Defense and Educational Fund, Inc.