**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and <br><br> TAIWAN SCOTT, on behalf of himself and all other similarly situated persons, <br><br>                        Plaintiffs, <br><br>         v. <br><br> THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission, <br><br>                   Defendants. | Civil Action No. 3:21-cv-03302-JMC-TJH-RMG <br><br><br> **HOUSE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE FEBRUARY 10, 2022 COURT ORDER (ECF NO. 153) AND FOR AN *IN CAMERA* REVIEW OF PRIVILEGE LOG MATERIALS** |

       Defendants James H. Lucas (in his official capacity as Speaker of the South Carolina House

of Representatives), Chris Murphy (in his official capacity as Chairman of the South Carolina

House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as

Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee)

(collectively, "House Defendants"), by and through undersigned counsel, respectfully submit this

Response in Opposition to Plaintiffs'[1] Motion to Enforce the February 10, 2022 Order (ECF No. 153) and for an *In Camera* Review of the documents on House Defendants' privilege log ("Motion") (ECF No. 198).

## INTRODUCTION

Despite Plaintiffs' unwarranted, and in some instances, uncivil attacks to the contrary, House Defendants have fully complied with their discovery obligations under the Federal Rules of Civil Procedure and this Court's February 10, 2022 Order (ECF No. 153). In fact, House Defendants have taken measures beyond their obligations under the discovery rules and are compiling and producing documents from additional legislators over whom they do not have control.[2] In addition, House Defendants are accommodating Plaintiffs' request for additional search terms across all custodians, despite use of comprehensive search terms in the initial productions. House Defendants' conduct stands in stark contrast to Plaintiffs' woefully deficient productions, which are largely described in the Reply filed March 25, 2022 in further support of House Defendants' Motion to Compel (ECF No. 201).

Ironically, Plaintiffs' Background more accurately describes the inadequacies and improprieties of Plaintiffs' discovery conduct, as it has little if any resemblance to the actions and participation of House Defendants in discovery to date. *See* ECF No. 198, 4-11. Unlike Plaintiffs, House Defendants have both transparently participated in the discovery processes, and judiciously followed the proper course for raising and resolving discovery disputes. *See e.g.*, ECF No. 157. In

---

[1] "Plaintiffs" is a collective reference to The South Carolina State Conference of the NAACP ("SC NAACP") and Taiwan Scott, on behalf of himself and all other similarly situated persons ("Scott").

[2] As House Defendants have repeatedly informed Plaintiffs, the documents that House Defendants agreed to gather from these additional custodians were not within House Defendants possession, custody, or control. As such, House Defendants went above and beyond the requirements of FRCP 34 by agreeing to gather and produce these documents.

contrast, Plaintiffs resort to gamesmanship and "hide-the-ball" tactics that serve only to frustrate and inhibit the truth-seeking function of the Court. Indeed, Plaintiffs are once again presenting an extensive false rhetoric to the Court about the discussions that occurred during the recent abeyance period, only this time[3] they do so with actual notice from House Defendants that Plaintiffs' unsolicited "summary" writings are inaccurate and incomplete descriptions of what took place during the lengthy discovery discussions. *See* ECF Nos. 198-5, 2-9;198-8, 8.

More fully addressed herein, there is no credible basis for Plaintiffs' claim that House Defendants have not complied with the Court's Order. Moreover, House Defendants have already agreed to add document custodians and expand term searches during the pre-filing discussions with Plaintiffs (which Plaintiffs inexcusably ignore in their Background) and there is no need for the Court to conduct an *in camera* review of privileged materials. *See* ECF No. 198, 5-10. As such, and in light of the below, Plaintiffs are not entitled to any of the demanded relief and the Motion should be denied.

## CORRECTION OF PLAINTIFFS' "BACKGROUND"

With a tone equal parts indignant and disgruntled, Plaintiffs present a Background discussion that has little to no resemblance to the facts and the actual procedural posture of the case. Presumably Plaintiffs' reasoning is their failure—yet again—to comply with the discovery rules and the Local Civil Rules of this jurisdiction. Indeed, Plaintiffs' "Motion to Enforce the

---

[3] Plaintiffs engaged in a similar tactic in their rush to overcome the legislative privilege, representing to the Court several "positions" purportedly taken by House Defendants during a conference call that were not only inaccurate representations of House Defendants' statements (*see* ECF No. 119, 6-7), but also representations of discussion that only occurred because Plaintiffs' counsel explained the inquiry was "unofficial" and just to assess matters "without having to guarantee a position." Unfortunately, Plaintiffs' false statements were incorporated as if accurate in the Order. *See* ECF No. 153, 4.

February 10, 2022 Order" is in fact an untimely[4] Motion to Compel. *See* L.R. 37.01(A) (requiring motion within twenty-one (21) days of receipt of written responses); *see also* ECF No. 198-5 at 6. Apparently in an effort to move the Court to action despite their delinquency in seeking relief, Plaintiffs manufacture allegations of inadequacy in House Defendants' compliance with the Court's Order, baldly misstating key facts related to, among other things, what has been produced by House Defendants and what transpired during meet and confer discussions between the parties.

### A.    Plaintiffs' Motion to Compel and this Court's February 10, 2022 Order.

Noted above, it was Plaintiffs' election to deal only with the matter of legislative privilege in their Motion to Compel filed on February 2, 2022. (*See* ECF Nos. 119; 198 at 2). Plaintiffs' Motion acknowledged that House Defendants had asserted substantive objections to scope on many of the document requests (ECF No. 119, n.2), and House Defendants explicitly expounded on their propounded objections related to scope in their Response (ECF No. 134, 8-10). These concerns were noted by the Court as "significant" in observing Plaintiffs' Motion sought only to address legislative privilege. ECF No. 153, n.1. Following the Court's February 10, 2022 ruling, Plaintiffs did not inquire with House Defendants on their collection efforts or otherwise raise concerns with the sufficiency of House Defendants' responses or productions[5]. Instead, during the recent consultation discussions on House Defendants' outstanding Motion to Compel, Plaintiffs

---

[4] House Defendants served their written responses to Plaintiffs' First Set of Requests for Production on January 24, 2022. ECF No. 119-1. The deadline to file a motion to compel responses was February 14, 2022; Plaintiffs did file such a motion, but chose to request only relief as to legislative privilege and did not raise any of the issues now brought to the Court under the guise of "enforcing" the Court's Order. *See* ECF No. 119, 16 (stating relief sought by Motion); ECF No. 153, n.1 ("[T]he court notes Plaintiffs' Motion is solely directed to the question of whether legislative privilege applies to the requested documents.").

[5] Notably, Plaintiffs have not identified any Federal Rule of Civil Procedure or Local Rule to serve as a basis for their latest Motion (*see* ECF No. 198), and in their Standard of Review make mention of various discovery principles without enunciating the basis for relief. *See id.* at 11-13.

first interrogated House Defendants on the manner and extent of their discovery collections to date, then discussed and memorialized in their unsolicited missives certain "concerns" held by Plaintiffs that House Defendants should do more in order to meet their discovery obligations. *See* ECF Nos. 198-6, 7, and 8; ECF Nos. 201-5, 6, and 7. Not once did Plaintiffs link these "concerns" to the actual discovery responses served by House Defendants, nor did Plaintiffs at any time support their demands for more by any legal authority.

Here again, Plaintiffs do not tie their alleged grievances to any specific responses of House Defendants to the First Set of Requests for Production. Instead, Plaintiffs seek to bootstrap their desire of wanting "more" to the Court's Order on legislative privilege. House Defendants fully understand that the Court granted in part Plaintiffs' Motion to Compel with respect to the following categories of documents and information subject to specific limitations:

1.  Depositions of all legislators, staff (including Map Room staff) and consultants involved in the development, design and/or revisions of H. 4493;

2.  All versions of maps and related documents produced during the course of the development, design, and/or revisions of H. 4493 and sufficient data to determine the date and time such maps were produced and the persons involved in submitting and reviewing them;

3.  All documents which relate in any manner to the intent behind any proposed design and/or revision of the H. 4493 or any individual district referenced in Plaintiffs' Amended Complaint;

4.  All documents related to any racially polarized voting analysis utilized in the development, design and/or revision of H. 4493;

5.  Documents which identify and/or describe any computer software utilized in the development, design and/or revising of H. 4493;

6.  Any documents produced and/or provided by persons not legislators or staff which relate to the development, design and/or revision of H. 4493; and

7.  All documents which address any changes in districts from the existing House Plan to H. 4493.

ECF No. 153 at 17. The plain language of the Order limits the requisite discovery entitlement to the seven categories of documents and information enumerated by the Court. *See id.* at 16-17 (explaining limitation would be to areas that would be "relevant to the broad issue of legislative motivation in the enactment of H. 4493, subject to the limitations discussed in this order."). The Order explicitly declined to address the "breadth, burden, scope, and proportionality" claims lodged to Plaintiffs' requests (ECF No. 153, 17), and Plaintiffs' poorly veiled attempts to shoehorn the Court's Order into a full-scale approval of their overbroad and excessive discovery requests should be rejected.

      **B.**     **House Defendants' Discovery Actions to Date.**

     Plaintiffs' Motion should be denied if for no other reason than their obvious failure to fairly apprise themselves of the specific productions made by House Defendants *in compliance with the Court's Order*. This is to say, Plaintiffs inexplicably make no mention of the productions made by House Defendants on February 14 and February 15, 2022 (as ordered by the Court), which were accompanied by a thorough explanation of the discovery material forthcoming to Plaintiffs as a result of the ruling on privilege. **Exhibit A**, 2/14/22 Production Letter; **Exhibit B**, 2/15/22 Production Letter. In fact, the February 14 letter to Plaintiffs not only detailed the documents and information that had been or was being produced pursuant to each item from the Court's Order, but also restated the details of the eight productions that had occurred as of that date. To date, House Defendants have made the following productions to Plaintiffs:

> First: Emails from the Redistricting@SCHouse.gov account
> (1,852 documents Bates labeled SC_HOUSE_0000001-0010047)
>
> Second: Documents and information from the House Redistricting websites from the 2001, 2011, and 2021 redistricting cycles
> (2,362 documents Bates labeled SC_HOUSE_0010047-0035735)
>
> Third: Legislative manuals dating to 1980 as requested in Plaintiffs' RFP No. 3

6

(158 documents Bates labeled SC_HOUSE_0035736-0061491)

<u>Fourth</u>: Videos of public hearings and election data obtained from the South Carolina Election Commission
(32 documents Bates labeled SC_HOUSE_0061492-0061523)

<u>Fifth</u>: Documents and information related to public hearings of the House Redistricting Ad Hoc Committee
(91 documents Bates labeled SC_HOUSE_0061524-0062043)

<u>Sixth</u>: Emails, documents and information of legislators and key staff related to the 2021 redistricting cycle and the development, design and/or revision of H. 4493
(2,031 documents Bates labeled SC_HOUSE_0062044-0091616)

<u>Seventh</u>: Emails, documents and information that compromise the files of House Defendants' expert witnesses
(245 documents Bates labeled SC_HOUSE_0091233-0092808)

<u>Eighth</u>: Draft maps of House Districts prepared by House Members and the population data worksheets that accompanied draft maps as maintained in the Map Room
(495 documents Bates labeled SC_HOUSE_0091617-0091232)

<u>Ninth</u>: The electronic versions of maps and related data created during the redistricting process prior to the enactment of Act No. 117
(6,172 documents Bates labeled SC_HOUSE_0093044-0100276)

<u>Tenth</u>: Additional e-mails, documents and information produced pursuant to the Court's Order of February 10, 2022
(963 documents Bates labeled SC_HOUSE_0100277-0102025)

Again, notwithstanding the absence of any deficiency notice or other indication that Plaintiffs believed House Defendants were not complying with the Court's Order, during the meet and confer discussions on House Defendants' Motion to Compel, House Defendants agreed to take additional steps to ensure a comprehensive production takes place on their part even while having to pursue the Court's assistance with Plaintiffs' lack of participation. These additional steps

include[6]:

- Interviewing each named House Defendant, as well as other custodians, regarding the use of personal emails and devices in the redistricting process;

- Obtaining express consent from every member of the Redistricting Ad Hoc Committee in order to collect, review, and produce relevant emails despite the fact that House Defendants do not have possession, custody, or control over these individual legislators' e-mail accounts.

- Expanding the scope of review to include search terms for the custodial PST files in addition to what was already a very expansive list of original search terms (a list that included the term "district*") to incorporate the relevant concepts requested by Plaintiffs[7]; and

- Further refining their privilege log to remove communications for which House Defendants will no longer assert attorney-client privilege or work product protection.

Despite the foregoing efforts and activities, Plaintiffs insist—for no discernable reason—that some hidden universe of communications must exist somewhere revealing that discriminatory intent existed in the enactment of H. 4493. In the last few weeks, Plaintiffs have been relentless in assuming these communications must exist and continue to insist – without any basis – that there **must be more documents somewhere** that House Defendants are refusing to collect and produce

---

[6] House Defendants anticipated producing the documents from these additional custodians and the expanded search terms this week, but have had to devote significant time and attention to briefing these discovery matters, which may impact the timing.

[7] House Defendants' initial search terms were: redistrict*, reapportion*, census w/3 map*, district*, "ad hoc committee," population, deviation, gerrymander*, pack*, crack*, "majority-minority", BVAP, "black voting age population", "map room", combine OR collapse, "voting rights act", and preclear*. House Defendants also added compact*, communit* w/3 (interest OR color), COI, split* w/3 (precinct* or communit*), Criteria w/3 (House OR District*), rac* w/3 vot*, "Black voters", NAACP, LWV, LWVSC, ACLU, LDF, "Young Democrats of South Carolina", YDSC, "York County Democratic Party", "Michael Roberts", "Republican National Committee", RNC, "Republican State Leadership Committee", RSLC, "National Republican Redistricting Trust", and NRRT.

in discovery.[8] Indeed, the reality is that the legislative process for redistricting occurred in the map room with legislators drawing concepts for their districts and surrounding districts in real time. Plaintiffs' own Motion observes that the redistricting process occurred over just four (4) months. The extensive road show of public hearings and subsequent committee hearings were personally attended by the Redistricting Ad Hoc Committee Members, allowing for face-to-face discussions between and among these legislators. And while it would make sense that very little business related to the redistricting process was done via e-mail, Plaintiffs' Motion is nothing short of ignorant in its representation of the extent of the custodial productions.[9] *See* ECF No. 198 at 5.

Plaintiffs claim that "it defies common sense that such a time-consuming, complex endeavor could produce such a small number of relevant emails." ECF No. 198 at 6. Inexplicably, Plaintiffs ignore that the more crucial (and privileged) evidence of legislators' motivations and intentions is found in the map room data House Defendants were required to produce to Plaintiffs over their objection following the Court's Order. With House Defendants' Ninth Production on February 15, 2022 (Exhibit B), Plaintiffs were in possession of the electronic versions of maps created by legislators during the redistricting process, in the protected and confidential forum of the map room, where one or more Members redrew House District lines based on the published Census data. It should not be difficult to fathom that there was no need for extensive or substantive

---

[8] In fact, Plaintiffs' theories of conspiracy are so expansive they include a belief that House Defendants are withholding relevant communications **with national partisan groups**. *See* ECF No. 198-8 at 6, 10-11 (including Republican State Leadership Conference, National Republican Redistricting Trust, and Republican National Committee as specifically sought third parties and search terms for communications). The fact of the matter is that Plaintiffs have not seen such communications because such communications do not exist.

[9] Another flagrant misrepresentation to this Court is Plaintiffs' exclusion of Emma Dean's custodial production from the custodians identified on page 5 of Plaintiffs' Motion. Ms. Dean is Chief Counsel to the House Judiciary Committee and was perhaps the most integral non-legislator staffer responsible for shepherding the Committees through the redistricting process—Ms. Dean is the custodian for **1,946 documents** in House Defendants' PST productions.

written exchanges regarding the lines drawn in H. 4493. Rather (and understandably), the majority of communications were administrative or procedural in nature, dealing with scheduling and logistics. That said, Plaintiffs ignore that there were instances where legislators discussed changes to their districts via e-mail, and those e-mails have been produced. *See, e.g.*, SC_HOUSE_00100277-00100280. However, these types of emails happened to be the exception, not the rule, when it came to how legislators discussed redistricting during the compressed circumstances of this most recent cycle.

### 1. House Defendants Have Agreed to More Than Sufficient Custodian Searches.

As discussed above, House Defendants have identified an expansive number of custodians for review of discovery materials beyond the three named members of the House of Representatives that have been sued in their official capacities,[10] including such key House staff as the General Counsel to the House, the key staff responsible to the House Judiciary Committee, and the Map Room GIS Director. For these eight (8) custodians, House Defendants conducted extensive key term searches of their electronic communications (and document attachments)[11] and collected hard copy documents and files from these custodians as well as inquired about the existence of any other potentially relevant materials to be collected. Bluntly, Plaintiffs' unwarranted demands for seizure and search of the House Defendants or their staffs' personal devices or e-mail accounts is wholly unjustified.

---

[10] In these late demands that House Defendants must do "more", Plaintiffs ignore that the three named House Defendants were sued in their official capacity, and the conduct at issue (approval of H. 4493) was the product of votes cast by the entire House of Representatives by well over 100 elected Representatives. Plaintiffs' right to discovery is necessarily framed by the manner in which they chose to bring their claims, and they are not automatically entitled to further expansive discovery that is essentially the demand of the Motion.

[11] Discussed further below, House Defendants sought and obtained consent from the remaining members of the Redistricting Ad Hoc Committee to collect and search their e-mails for discovery materials, an additional six (6) custodians.

House Defendants do not dispute the sporadic use of their personal e-mail accounts to receive redistricting-related communications and were transparent in producing such information (without redaction) in discovery. As each of the named House Defendants are practicing lawyers with busy law practices in addition to their service to the House—coupled with the unsurprising facts that House Members receive vast amounts of solicited and unsolicited communications to their official e-mail accounts each day and (particularly when the House is not in session) have less opportunity to cull through those communications for specific needs—the use of their business e-mail account in addition to the House e-mail accounts is logical. What matters more, however, is that relevant communications have been ***nonetheless captured*** as a result of the other custodians searched, namely the only House staff involved in the daily tasks of the redistricting process (Mr. Dennis, Ms. Dean, Mr. Hinson, Mr. Franklin and Mr. Hauger). There is simply no basis to believe that relevant communications have not be captured and collected through House Defendants' efforts to date, and it is exceedingly redundant, burdensome, and unnecessary to search additional accounts for the same e-mails that have already been produced. As further addressed below, Plaintiffs have failed to justify the burden attendant to further expanding discovery under FRCP 34.

### 2. House Defendants Have Made Expansive Custodian Designations.

Plaintiffs' Motion on the issue of the added custodian accounts is patently false—representing to the Court that "Plaintiffs served subpoenas on those members [of the Redistricting Ad Hoc Committee]" after House Defendants "stated their position that they cannot collect documents from those members without consent." ECF No. 198, 10. This is not true. During the meet and confer held on March 14, 2022, House Defendants confirmed they had only one outstanding Redistricting Ad Hoc Committee Member from whom they were waiting on for

consent to collect their electronic files and perform the key term search for responsive information (though House Defendants did not identify whose consent was outstanding[12]). The additional Members whose e-mails and documents are being reviewed (per Plaintiffs' request) are Rep. Beth Bernstein, Rep. Justin Bamberg, Rep. Neal Collins, Rep. Jason Elliot, Rep. Pat Henegan, and Rep. Weston Newton.

Despite asking House Defendants to undertake this inquiry and obtaining confirmation of all but one member within a matter of days, Plaintiffs proceeded to issue their subpoenas *after* notice that the consents had been obtained on March 17, 2022 to four of the six members (Rep. Bamberg, Rep. Collins, Rep. Elliot, and Rep. Newton). **Exhibit C** (Plaintiffs' Subpoenas). These deceptive distortions of the timeline are found throughout Plaintiffs' Motion and are frankly inexcusable.

### 3. House Defendants Have Produced Third Party Documents.

With absolutely zero support or authority, Plaintiffs summarily accuse House Defendants of making "no effort to collect documents from consultants or third parties they relied on in drafting the house maps, including the enacted map in H. 4493." ECF No. 198 at 10. To make this representation, Plaintiffs wholly ignore House Defendants' Seventh Production, which consisted of e-mails, documents and information that comprised the files of House Defendants' expert witnesses. *See* Exhibit A. House Defendants also included Thomas Hauger as a custodian from the beginning of their collection activities, GIS Director and supervisor of the Map Room. Plaintiffs should be chastised for such flagrant misrepresentations.

---

[12] Interestingly, in Plaintiffs' March 15 "summary" they both acknowledge that House Defendants "received consent from all but one of the Ad Hoc Redistricting Committee members to collect and produce the PST files" but also suggest the one member waiting on was a "him"—it was not. *See* ECF No. 198-5 at 11.

**4. House Defendants Have Produced Exactly What the Court Ordered.**

Plaintiffs' allegation that House Defendants have not complied with the Court's Order is outrageous, and their claims evidence an inexcusably inadequate investigation of the documents productions that have been made before bringing this Motion to the Court. In the Motion, Plaintiffs lodge the entirely false allegation that House Defendants "defied the Court's order" by not producing "all maps 'with sufficient data to determine the date and time such maps were produced and the persons involved in submitting and reviewing them.'" ECF No. 198 at 10-11. This is patently false.

First, the Court's order to produce "all versions of maps produced" during the redistricting process with sufficient identifying data is not an instruction to produce information that does not exist. Federal Rule of Civil Procedure 34 "does not require a party to create responsive documents if they do not exist in the first instance and the Court cannot compel a party to produce documents that do not exist." *Payless Shoesource Worldwide, Inc. v. Target Corp.*, No. 05-4023, 2008 WL 973118, at *4 (D. Kan. Apr. 8, 2008) (cited in *Machinery Sol., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 537 (D.S.C. 2018)). Plaintiffs complain that House Defendants have "produced hundreds of maps, but without information sufficient to allow Plaintiffs to determine when the maps were generated or who was involved in creating, submitting, or reviewing the map," and that "almost all of these maps have been produced unattached to any email or communication or metadata indicating who generated the map or when it was generated." ECF No. 198 at 10. Had Plaintiffs exercised minimal due diligence before filing their Motion, they would know from the February 14, 2022 production letter that the "259 draft maps of House Districts as prepared by House Members prior to the enactment of H. 4493, as well as the 236 population data worksheets that accompanied draft maps" were produced in the manner "maintained at the House in the Map Room in printed form". Exhibit A. Consequently, there is no "data" beyond the .pdf documents

that exists that could connect any particular map to any particular legislator,[13] as printed pieces of paper do not contain the metadata that Plaintiffs suggest is required.

That Plaintiffs' bold accusation of defiance is outrageously uninformed[14] is because it ignores the production of gigabytes worth of data made by House Defendants on February 15, 2022, representing the map files and attendant metadata from the Map Room computers—consisting of some 6,172 documents and 7,233 pages, Bates labeled SC_HOUSE_0093044-SC_HOUSE_0100276. *See* Exhibit B. It is demonstrably clear that House Defendants' Ninth Production contains the swaths of metadata and supporting information for each map that was drawn in the Map Room, including the time, date, and station at which each map was drafted, that was contemplated in the Court's Order and fully meets the instruction to produce all versions of maps produced during the course of redistricting with "sufficient data to determine the date and time such maps were produced and the persons involved in submitting and reviewing them." ECF No. 153 at 17.

## C.    House Defendants Agreed to Further Refine Their Privilege Log.

House Defendants and Plaintiffs have repeatedly engaged on questions of privilege and matters identified on privilege logs, with further reviews agreed to and ongoing plans to downgrade items from privileged to not privileged. Despite these continuing engagements and readily

---

[13] Again, with some time and attention, Plaintiffs presumably could surmise the person(s) who may have had a role in the maps based on the sign-in sheets for the map room, which contain relevant information such as the time, date, legislator's name, and district number.

[14] Plaintiffs also complain House Defendants have "[w]orse yet" produced maps "from not only the 2021 redistricting cycle, but the 2011 and 2001 cycles as well," which in Plaintiffs' view, "frustrates, rather than aids in" their discovery process. ECF No. 198, 10. The Court's Order expressly directed the production of "[a]ll documents which address any changes in districts from the existing House Plan to H. 4493" (ECF No. 153, 17), and Plaintiffs themselves defined their discovery demands to include all prior versions of maps. Plaintiffs' accusations of wrongdoing against House Defendants are exceedingly uninformed.

apparent good faith efforts on the part of House Defendants, Plaintiffs posit to the Court that the ruling as to legislative privilege is tantamount to finding House Defendants are not entitled to any privileges at all. *See* ECF No. 198 at 11. With all due respect, the Court's Order finding that legislative privilege must give way is not equivalent to a ruling that House Defendants are not entitled to assert attorney-client privilege or work product protection in the same manner as any other litigant. House Defendants further submit any such argument demanding unfettered access to communications between legislators and legal counsel using the Court's Order would be inconsistent with the Court's discussion of those types of communications:

> [I]t is important to note that different types of documents or communications implicate the independence interest in different ways. Communications between staff and legislators are particularly sensitive because they "are often devoted to discussing ideas to which neither party to the communication is committed for purposes of legislative action – such as testing the soundness of ideas by positing wide-ranging positions."

ECF No. 153 at 15 (quoting *Benisek v. Lamone*, 241 F. Supp. 3d 566, 576 (D. Md. 2017)). On this issue, the communications challenged by Plaintiffs are not between legislators, they are between legislators and staff counsel or between staff counsel in the performance of the duties as attorneys to a legislative body. *See* ECF No. 198 at 11 & 198-9. It is noteworthy that there is no suggestion by Plaintiffs that the communications—which are with and between persons who do not vote on legislation—are not alleged to be "direct evidence of specific intent" as defined in the Court's Order as the scope of disclosure for such communications. ECF No. 153 at 15.

## ARGUMENTS

### I.    RESPONSE TO LEGAL STANDARD

As noted earlier, it is apparent from the slipshod presentation of legal precedent that Plaintiffs lack a procedural basis to allow the expanded discovery they now seek. Presented as the "Standard for Motion to Enforce and for *In Camera* Review," Plaintiffs proceed to identify the

broad scope of discovery under FRCP 26, the definition of relevancy, and posit "the burden is on the party resisting discovery to clarify and explain properly why its objections are proper given the broad and liberal construction of the federal discovery rules." ECF No. 198 at 11-12 (quotation omitted). On this point it is clear, House Defendants have not "resisted discovery" nor have Plaintiffs pursued the sufficiency of House Defendants' objections or earlier productions. Instead, Plaintiffs waited nearly two months to inquire into the nature and extent of House Defendants' collection activities and passively complained of "concerns" without connecting them to any deficiency or providing legal authority to support expansion of discovery.

"Discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials. However, a litigant may not use discovery requests to annoy, embarrass, oppress, or cause an undue burden or expense to his opposing party. *Cunningham v. Wells Fargo & Co.*, No. 3:19-cv-00528-FDW, 2022 WL 109002 at *4 (W.D.N.C. Jan. 11, 2022) (quotations omitted). "[I]t is well-settled law that "[d]iscovery should not become a 'fishing expedition.'" *Id.* (quoting *Cohn v. Bond*, 953 F.2d 154, 159 (4th Cir. 1991)). Here, Plaintiffs have demonstrated nothing more than a desire to continue fishing.

## II.    HOUSE DEFENDANTS FULLY COMPLIED WITH ECF NO. 153

House Defendants have fully complied with the February 10, 2022 Order (ECF No. 153) by producing the documents and information ordered by the Court in their possession, custody, or control that relate to any alleged discriminatory intent behind the Challenged Districts enacted in Act No. 117, with only those documents protected by the attorney-client privilege and/or work product protection not produced. House Defendants have searched for, collected, and produced hard copy documents and information, map files and attendant metadata from the Map Room computers, ESI collected from 8 (soon to be 14) custodians, and maps and data from the last three

redistricting cycles. As noted above, Plaintiffs' shell game conspiracy theory that there "must" be more documents related to the issue of discriminatory intent—for no other reason than there is no basis to believe House Defendants acted with discriminatory intent—is not grounds to expand discovery even further beyond the applicable rules. Similarly, there is no basis to demand named House Defendants (parties in their official capacities) surrender for inspection their personal e-mail accounts used in their law practice or require them to obtain e-mails and other documents from non-party individual legislators that are clearly not within the named House Defendants' possession, custody, or control.

Other than the receipt of scheduling or administrative information by their non-House e-mail accounts (which have been captured and produced from the sending custodian's PST files), there is no evidence or indication of potential evidence of communications in personal e-mail accounts that "provide 'direct evidence of specific intent.'" ECF No. 153 at 16. Notably, this is a more stringent process than that which Plaintiffs' have employed for either Plaintiff Scott or Plaintiff SC NAACP.[15] Plaintiffs' conduct is particularly noteworthy because it demonstrates a refusal to undertake even minimal participation while seeking to impose on House Defendants expansive obligations above and beyond the requirements of the rules.

Federal Rule of Civil Procedure 26(b)(1) allows parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs

---

[15] No PST files were collected, no search terms were employed, and no attorneys were involved in the review of documents for relevancy or to determine whether documents were being inappropriately overlooked by Plaintiff Scott. *See* ECF No. 198, 4-5. For SC NAACP, Plaintiffs' counsel have refused to collect or produce discoverable information from any e-mail account other than an "SC NAACP" account, which was not used in a meaningful way during the redistricting activities that underlie this litigation. Plaintiff SC NAACP President Murphy's routine and regular use of her personal (non-business) e-mail account is clear from the wealth of e-mail communications produced by the South Carolina League of Women Voters in response to House Defendants' Subpoena. *See e.g.* ECF No. 201-8.

of the case . . . ." Fed. R. Civ. P. 26(b)(1). However, it is still incumbent on Plaintiffs to make some showing of discoverability of the information sought. *See, e.g., Waters v. Stewart*, C/A No. 4:15-4143-RBH-TER, 2017 WL 770535, at \*2 (D.S.C. Feb. 28, 2017) (citations omitted) ("Where a prima facie showing of discoverability has been made by the party seeking discovery, the burden shifts . . . to the resisting party to show lack of relevance . . . ."). Plaintiffs offer nothing more than uninformed hopes and pipedreams of supposedly hidden data, while simultaneously subverting and avoiding equal participation in the truth-seeking activities of discovery.

On the specific issue of the personal devices and e-mail accounts of the House Defendants, it is important to note that the two cases referenced by Plaintiffs have zero relevance to this proceeding. *See* ECF No. 198 at 15. In *Modern Remodeling, Inc. v. Tripod Holdings, LLC*, No. CCB-19-1397, 2020 WL 1984338 (D. Md. 2020), the parties were in agreement that relevant texts existed within the discovery at issue and there is no discussion of personal e-mail accounts at all. In *Thomas v. Roberts*, No. 1:16-cv-01581-ALJ-MSN, 2017 WL 11503455 (E.D. Va. May 18, 2017), an individual plaintiff was ordered to produce e-mails that were referenced in the complaint yet had not appeared within his discovery productions. Indeed, *Thomas* is much more applicable to Plaintiffs here and their discovery shortcomings than to the legislative officers being sued.

In contrast, more meaningful precedent would be a recent decision of United States Magistrate Judge Shiva V. Hodges in *Quillin v. Simon*, No. CV 3:20-3063-CMC-SVH, 2020 WL 6469269 (D.S.C. Nov. 3, 2020), in which the plaintiff sought "all mobile phone records for certain officers" for a discrete time period. *Id.* at \*2. The defendant, a police officer sued in his official capacity, objected on the basis that "the request is overly broad, unduly burdensome, seeks the production of documentation that is wholly irrelevant to the matters at issue in this litigation, and is not reasonably calculated to lead to the discovery of admissible evidence." *Id.* The defendant

also maintained that "[p]ersonal cell phone information would reveal countless personal information about these law enforcement officers, without any likelihood of producing relevant and/or admissible evidence, nor would it be likely to lead to the discovery of admissible evidence." *Id.* The court agreed, finding "Plaintiff has failed to identify, or discuss in briefing at all, the relevance of the information requested nor has Plaintiff addressed Defendant's argument that any potential relevance would be greatly outweighed by" the revelation of personal information, which could lead to safety concerns. *See id.*

In a recent decision from the District of Maryland, a plaintiffs' requests to a corporate defendant for "[a]ll emails, text messages, and other written or electronic communications . . ." of senior management were found overbroad and the court would "not order the production of text messages" on personal devices. *Shackleford v. Vivint Solar Dev., LLC*, No. CV ELH-19-954, 2020 WL 6273892, at *5 (D. Md. Oct. 26, 2020). The corporation did not have possession or custody of employees' personal devices and the court noted that even if it accepted a very expansive view of discovery, it was "unconvinced that plaintiff has met her burden to establish the text messages are proportional to the needs of the case." *Id.* "Not only would this be a potential invasion of privacy …, but it would be expensive and time-consuming," and it was "unclear whether it would yield any benefit to plaintiff." *Id.* The court concluded that "[t]o the extent a search of the phones did result in some relevant information, its likely benefit is outweighed by the burden and expense of obtaining it." *Id.*

Here, the House Defendants have House-issued desktop computers and any redistricting-related information has been produced from those computers. Similar to the facts in *Shackleford*, the House does not issue cell phones and the individual legislators may use their personal cell phones for House-related reasons. The personal cell phones and personal e-mail accounts of House

Defendants are the devices and accounts that they use in their profession—all three named House Defendants are attorneys by trade and long-standing members of the South Carolina Bar, and each regularly and routinely uses his cell phone and personal e-mail account in his practice of law to communicate with his clients and represent their legal interests. Akin to the circumstances in *Quillin*, there are very serious privacy concerns and ethical issues to consider before exposing the confidential information of attorneys (particularly given they have not been sued individually). Moreover, as in *Shackleford*, the burden of collecting, searching, and producing any potential communications, in this case at the cost of taxpayers, greatly outweighs any conceivable benefit to Plaintiffs. There is no showing or reasonable suggestion that text messages or personal e-mails of the named House Defendants would contain direct evidence of discriminatory intent of any kind as referenced in this Court's Order. Thus, the time, burden, cost and privacy concerns, not to mention the very difficult ethical issues surround their clients' rights to privilege, greatly weigh against the fishing expedition demanded by Plaintiffs.

### III.    HOUSE DEFENDANTS APPLIED COMPREHENSIVE SEARCH TERMS

District Courts in this Circuit require "reasonable search terms to be used to obtain responsive email communications . . ." *E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc.*, No. WMN-08-0984, 2012 WL 380048, at *4 (D. Md. Feb. 3, 2012). House Defendants not only applied comprehensive search terms in the first instance, but prior to Plaintiffs' filing of the Motion had agreed to implement additional search terms as requested during the meet and confer discussions. *See* ECF No. 198-5 at 7-8. House Defendants' original search terms more than encompassed the relevant universe of documents related to redistricting, including broad concepts such as "population," "deviation," "reapportion*," and "majority-minority." *See also infra*, n.7.

Evidenced by the e-mails attached to Plaintiffs' Motion (and nearly six weeks after House Defendants served their written responses to Plaintiffs' First Set of Requests for Production),

20

Plaintiffs for the first time on March 11, 2022 suggested that House Defendants should perform an additional review of the custodian files with ***41 additional search terms*** that included such commonplace terms as county names and last names of sitting legislators (including "Johnson"). *See* ECF No. 198-8 at 5. While House Defendants would have been within reason to reject the demand out of hand, they agreed to assess the proposed terms and thereafter notified Plaintiffs of additional terms that would be applied, which additional terms were more practical, non-redundant, and reasonably anticipated to capture the concepts sought by Plaintiffs. *See* ECF No. 198-5 at 7. Here again, Plaintiffs' Motion accuses House Defendants of being "unduly narrow" despite knowing the far more comprehensive list of terms first used by them, and then dismisses as insufficient that House Defendants had already articulated the specific additional terms that would be applied and which review is underway. *See id.*; *see also* ECF No. 198 at 15-16. Plaintiffs have failed to demonstrate in the first instance that even greater burden should be imposed, much less that such burden is obligated by the Court's Order.

## IV.    HOUSE DEFENDANTS HAVE COLLECTED RESPONSIVE DOCUMENTS ON HOUSE-ISSUED HARD DRIVES

Citing only to their own false narrative, Plaintiffs ask the Court to order House Defendants "to conduct a forensic review of their legislative hard drives to ensure all relevant information contained therein are collected and reviewed." ECF No. 198 at 16. There is no basis to support the time, cost, and burden of forensic review of the ***desktop*** computers maintained in the Blatt Building, as each of the named House Defendants has confirmed that there are no redistricting-related documents or communications saved or stored on those computers. Plaintiffs are in possession of the map files and attendant metadata from the Map Room computers, and there is no reasonable basis or credible reason to believe further "forensic review" activities would reveal new or different information. As explained to Plaintiffs, the named House Defendants did not use

their House-issued desktop computers to create, save, or otherwise preserve documents related to redistricting. The Challenged Districts (as all the other districts) were drawn in the Map Room. As noted above, the map files and attendant metadata from the Map Room computers have been produced. Particularly given it appears Plaintiffs have failed to perform even a cursory review of the more than 6,000 documents stored by the Map Room computers, there is plenty of material for Plaintiffs to review in preparation for depositions. A forensic collection and review of House Defendants' hard drives will not yield any benefit and would be extremely burdensome, expensive, and time-consuming. The Court should decline Plaintiffs' unsubstantiated request for more.

## V.    HOUSE DEFENDANTS HAVE SEARCHED PST FILES OF KEY STAFFERS

Plaintiffs next demand that "[t]o the extent that House Defendants have not searched the PST files of key staffers, House Defendants' should be ordered to do so in order to meet their obligations under Rule 34." ECF No. 198 at 16. It has been done; Plaintiffs should review the productions that have been made by House Defendants before burdening the Court with their unjustified demands, as House Defendants have complied with their discovery obligations[16] as it relates to key staff members and Plaintiffs' speculative conjecture otherwise lacks merit.

## VI.   HOUSE DEFENDANTS PRODUCED THE ELECTRONIC MAP DATA

As discussed above, House Defendants produced the electronic records comprising the maps drawn in the Map Room (gigabytes of electronic data), although it appears Plaintiffs have

---

[16] House Defendants' collection efforts in this regard stand in clear contrast to those of Plaintiffs, who have only collected the PST files of four custodians for Plaintiff SC NAACP: President Brenda Murphy (her @scnaacp.org account), two administrative assistants, and one custodial office manager account. There was no collection or review of Plaintiff Scott's PST file (a non-attorney party that simply self-selected from his e-mails) and no collection or review of the e-mail accounts used by SC NAACP's leadership, including (i) President Brenda Murphy; (ii) participants in the South Carolina Reapportionment Committee Meetings, such as Chair Steve Love, Chair Charles Boykin, and Dr. Eloise Fomby-Denson, (iii) attendees at the Executive Committee Meetings (*see* SCNAACP_001666), or (iv) any of those individuals identified as persons with knowledge or on whom SC NAACP relied in the discovery responses (*see* ECF No. 194-1).

egregiously failed to review this data in the nearly six weeks since production. *See* Exhibit B. Plaintiffs are inexplicably asleep at the wheel on their discovery obligations in this case. Their lack of diligence is not reason for this Court to find House Defendants have not more than satisfied their obligations under the discovery rules and the Court's Order.

## VII.  LAWYERS EMPLOYED BY THE SOUTH CAROLINA HOUSE OF REPRESENTATIVES PROVIDE LEGAL ADVICE TO THEIR LEGISLATOR CLIENTS

As a threshold matter, the Court should decline to undertake any assessment of privilege issues unless and until Plaintiffs are held to task for the privilege shenanigans they are presently engaged in (ECF No. 201, 5-9). Explored in House Defendants' Reply to their Motion to Compel, Plaintiffs are taking facially inconsistent positions with regard to privilege (and waiver). Moreover, House Defendants are further refining their privilege log in accordance with the previous discussions with Plaintiffs and intend to supplement and amend the log by April 4, 2022, with the expectation that additional items will be downgraded from the last circulated version.

### A. An Attorney-Client Relationship Exists Between Staff Attorneys and Legislators.

The South Carolina House of Representatives employs a number of attorneys who serve "as lawyers" for legislators and serve in other capacities providing legal services on behalf of the House. Because these employed attorneys serve "as lawyers" and provide legal advice to legislators, there is an attorney-client relationship and the occasion for an attorney-client privilege. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curiam). Plaintiffs' suggestion that these attorneys are not acting "as lawyers" is incorrect and insolent. For example, district courts in this Circuit have upheld claims of attorney client privilege on documents that were the subject of a subpoena issued to legal counsel to the Speaker of the Virginia House of Delegates. *See Page v. Virginia State Bd. of Elections*, 15 F. Supp. 3d 657, 660 (E.D. Va. 2014). Plaintiffs

23

presuppose that just because there is some connection to legislative conduct, the legal advice cannot be privileged; this is not so.

Plaintiffs supposition also ignores that the internal counsel, primarily General Counsel Mr. Dennis and Chief Counsel to Judiciary Ms. Dean, are a primary liaison between House Defendants and outside legal counsel. As discussed further in the following section on work product, Mr. Dennis and Ms. Dean would share legal advice and work product from outside counsel to House Defendants during the time period applicable to this litigation.

### B. Staff Attorneys and Outside Counsel Created Work Product in Anticipation of Litigation.

It should be no surprise that staff counsel and outside counsel prepared and disseminated to their clients work product containing attorney mental impressions and opinions in anticipation of and during this redistricting litigation. Indeed, House Defendants very reasonably anticipated litigation over this redistricting plan early on from these very Plaintiffs, clearly forewarned by the lengthy accusatory letters that first appeared on August 9, 2021, before any of the public hearings even began. It was clear from the tone of SC NAACP's letter, coupled with the well-known susceptibility to redistricting litigation in South Carolina (detailed in Plaintiffs' own writings) that litigation was certain regardless of what the House District boundaries looked like.

Consequently, a number of the privilege log entries represent work product drafted by outside counsel and disseminated to their clients. That the work product was first sent to Ms. Dean to then forwarded to the individual Ad Hoc Committee Members represented by outside counsel is all in the proper course and analogous to outside counsel sending legal advice or work product through an in-house counsel, who forwards it to the client. Work product protection is not waived by doing so. Plaintiffs offer no reason why House Defendants are not entitled to the work product protection and the Court should decline to conduct any review of privilege log entries at this time,

and certainly not without more credibility and candor by Plaintiffs.

## **CONCLUSION**

House Defendants have fully complied with the Court's February 10, 2022 Order (ECF No. 153) and will make good faith efforts to amend their privilege log. As such, no *in camera* review of the current privilege log is necessary. Therefore, based on the foregoing, the Court should deny Plaintiffs' Motion it its entirety.


*[SIGNATURE PAGE FOLLOWS]*

Respectfully submitted,


/s/ Mark C. Moore
Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Erica H. Wells (Fed. ID No. 13206)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
EWells@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com


William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900
Greenville, SC 29601
Telephone: 864.370.2211
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com


Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com


March 28, 2022                    *Attorneys for James H. Lucas, Chris Murphy, and*
Columbia, South Carolina          *Wallace H. Jordan*

26