# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>       Plaintiffs,<br><br>    v.<br><br>THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,<br><br>       Defendants. | Case No. 3-21-cv-03302-JMC-TJH-RMG<br><br>**THREE-JUDGE PANEL**<br><br>**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF ITS MOTION TO ENFORCE THE FEBRRUARY 10, 2022 ORDER AND FOR *IN CAMERA* REVIEW** |

## INTRODUCTION

Despite its caustic and needless rhetoric, House Defendant's Opposition ("Opp.") (ECF 202) fails to address or contest the central issues raised in Plaintiffs' Motion (ECF 198): specifically, (i) whether Defendants adequately collected or produced responsive materials to comply with the Court's February 10, 2022 Order (ECF 153); and (ii) whether Defendants' properly asserted privilege claims. House Defendants do not justify the paltry production of communications and correspondence from named Defendants or their key aides. Nor do they explain their failure to collect documents from key sources; the refusal to use basic search terms to cull electronic materials; or their overbroad assertions of privilege. In fact, their Opposition confirms that their production was padded with tens of thousands of pages of materials that are publicly available. Opp. at 6-7. Ultimately, House Defendants' complaints about Plaintiffs' productions are irrelevant "whataboutism"—they are not only untrue, but fail to answer the questions raised in the Motion.[1] *See generally League of Women Voters of Fla., Inc. v. Lee*, 4:21-cv-185 No. 422, 2022 WL 610400, at *5 (N.D. Fla. Jan. 4, 2022) ("Whatboutism, however, is not an argument").

Trial is set to commence in this case on May 16, with depositions of defense witnesses scheduled for much of the month of April. Only House Defendants are in possession of communications reflecting those witnesses' intent in drafting the maps on trial. Plaintiffs repeatedly raised these deficiencies with House Defendants in meet and confers prior to filing this Motion, *see* Mot. Exs. F, G, H, and only filed this Motion when it was clear that Defendants

---

[1] Plaintiffs addressed almost all of these issues in the opposition to Defendants' motion to compel. ECF 194.

continued to stonewall, *see* Mot. Ex. E.  The Court should direct House Defendants to complete their collections and productions and otherwise comply with the February 10 Order immediately.

## ARGUMENT

### I. HOUSE DEFENDANTS FAILED TO CONDUCT A REASONABLE SEARCH FOR RELEVANT LEGISLATIVE INFORMATION

#### A. House Defendants Should be Required to Collect Relevant Materials from Personal Email Accounts and Other Sources that Contain Relevant Materials

The Opposition confirms that House Defendants did not collect or produce materials responsive to Plaintiffs' requests following the Court's February 10, 2022 Order, including materials from their non-"official" email accounts, text messages, or other media.  Specifically, the Opposition concedes that "there were instances where legislators discussed changes to their districts via email," that House Defendants used their "personal e-mail accounts to receive redistricting-related communications," and that, based on the volume of materials sent to their "official" email accounts, "the use of their [personal] business e-mail account in addition to the House e-mail accounts is logical."  Opp. at 10-11.

This evidence goes to the core of Plaintiffs' claims, and is precisely the kind of discovery that the Court authorized in its February 10 Order.  *See* ECF No. 153, at 17.  Accordingly, House Defendants' rhetoric about "uninformed hopes and pipedreams" (Opp. at 18), rings hollow.  And it fails to justify House Defendants' refusal to collect relevant materials from any source other than those "official" House accounts.  *See, e.g.*, Mot. at 7 (citing Exhibits A, B, and C).  House Defendants note that the documents reflecting their use of personal email accounts were produced from the "official" House email accounts of five of House Defendants' designated custodians: Mr. Dennis, Ms. Dean, Mr. Hinson, Mr. Franklin, and Mr. Hauger.  Opp. at 11.  But this highlights that House Defendants' collections did not capture House Defendants' personal email

3

communications with anyone other than those five individuals. It did not capture even House Defendants' personal email communications with each other. Given this, House Defendants' assertion that there is "no basis to believe" there are relevant communications that have not been captured, and that additional searches would be "exceedingly redundant," Opp. at 11, makes no sense.

Likewise, House Defendants acknowledge that "individual legislators may use their personal cell phones for House-related reasons," Opp. at 19, but have refused to collect from their cell phones any correspondence covered by the Court's February 10 Order. House Defendants' cited authority does not support their assertion that they need not collect relevant records on the ground that "each regularly and routinely uses his cell phone and personal e-mail account in his practice of law to communicate with his clients and represent their legal interests." In *Quillin v. Simon*, No. CV 3:20-3063-CMC-SVH, 2020 WL 6469269, at *2 (D.S.C. Nov. 3, 2020), a case brought under 42 U.SC. § 1983, the plaintiff sought "all mobile phone records for certain officers," and in *Shackleford v. Vivint Solar Dev., LLC*, No. CV ELH-19-954, 2020 WL 6273892, at *5 (D. Md. Oct. 26, 2020), the court evaluated whether a corporation had control over employees' personal cell phones. In this case, Plaintiffs did not request, and the Court did not order, production of phone records or any records that contain irrelevant information, or production of any materials outside House Defendants' own possession, custody, and control. Defendants' obligation to preserve and produce relevant electronically stored information is governed by the requirements of Rule 34 and is standard practice in modern discovery. *See, e.g.*, The Sedona Conference, Commentary on Rule 34 and Rule 45 "Possession, Custody, or Control," 17 Sedona Conf. J. 467 (2016) ("If a responding party has possession, custody, or control of relevant Documents and ESI,

it has a duty to preserve and produce them in discovery. If a party fails to do so, it may be sanctioned.").

Plaintiffs have repeatedly requested specific information on which email and other accounts contain relevant correspondence and which do not. On March 14, Plaintiffs wrote: "Plaintiffs remain concerned by the lack of clarity – and absence of any written representations – as to which custodians you have conferred with regarding the existence of such communications and what representations you are making about the existence or lack of existence of such materials for each." Mot. Ex. E at 11. In their Opposition, House Defendants claim (for the first time) that they conducted supplemental measures such as "[i]nterviewing each House Defendant, as well as other custodians, regarding the use of personal emails and devices in the redistricting process." Opp. 8. However, House Defendants' representations concerning the lack of materials in such accounts remain vague and argumentative, seemingly based on the premise that Plaintiffs must prove the existence of relevant materials. *See* Opp. at 17 (arguing there is "no evidence" of relevant documents in personal emails); Opp. at 20 (arguing that there has been "no showing or reasonable suggestion" of relevant documents in personal emails or text messages). This argument, of course, ignores that Plaintiffs identified numerous instances in Defendants' productions to date indicating that there are additional sources of communications about the map that House Defendants should have identified and searched months ago. *See* Mot. Exs. A, B, C.

Ultimately, House Defendants are trying to turn their obligations under the discovery rules and the Court's February 10 Order on their head. Notably, House Defendants do not represent that any of the belated supplemental collection efforts they describe, Opp. at 8, took place following, or in response to, the discovery the Court ordered compelled on February 10. *See* Opp. at 8 n.6

5

(confirming these efforts were recent). This Court should order House Defendants to complete their collection and productions immediately.

### B. House Defendants Should be Required to Apply Additional Search Terms

In their Opposition, House Defendants do not dispute that they bear the burden of demonstrating that their search of electronically stored information was reasonable. *Compare* Opp. at 20-21, *with* Mot. at 15 (citing cases). Although House Defendants argue that they applied "comprehensive search terms" in the first instance, Opp. at 2, they do not dispute their terms did not include basic redistricting concepts like compactness, communities of interest, or racially polarized voting. Mot. at 9. Nor do they dispute that they failed to search for the names of communities where Plaintiffs alleged that racial gerrymandering occurred or failure to search the names of targeted legislators whose seats were eliminated as a result of discriminatory gerrymandering. *See id.* And House Defendants do not dispute the paltry volume of emails that they produced from key custodians. *Id.* at 6.

As Plaintiffs explained in their opening brief, in response to Plaintiffs' request, House Defendants offered to apply some, but not all, of Plaintiffs' proposed search terms but have not explained the refusal to apply additional terms. *See* Mot. at 16, n.2. House Defendants have not, for example, shared a responsiveness "hit" report or otherwise attempted to justify the burden imposed by additional terms. *See id.* The court should order House Defendants to apply the list of search terms that Plaintiffs proposed, or, at a minimum, to articulate, in quantifiable terms, the burden that applying those searches would impose.

### C. House Defendants' Should be Required to Produce Data Sufficient to Determine the Date and Time of Each Map and the Persons Involved in Submitting and Reviewing Them

Like they have previously done, *see* Status Report ECF 187 at 3, House Defendants emphasize the size of their production ("gigabytes of electronic data"), in the apparent hope that

this will distract the Court from their noncompliance with their discovery obligations and the February 10 Order.  For example, they fail to mention that, of the 6,172 documents in their production, almost all (4,980) are system files or design files for mapping or architectural data, which can only be used in their original native format and file structure using specific licensed design software. There are missing files that prevent maps from being loaded even into that software, Maptitude.  And no files were provided that would allow the maps to be loaded into any other software.  The Defendants did not produce these materials as they are maintained in their ordinary course, making it impossible for Plaintiffs to utilize this information.

On top of the fact that Plaintiffs cannot use the multitudes of documents and programs House Defendants have produced, Plaintiffs also cannot extract identifying metadata.  The only metadata that is generally available is the "date time last modified," "date time created," "file name," and the "file size." Almost all of the documents in the production have a creation date of January 20, 2022.  Further, for all of the documents, the "date time last modified" occurred *before* the supposed date of creation.  This data does not give Plaintiffs any ability to assess when a particular map was created.  Of the images that Plaintiffs can see, House Defendants have produced maps that are close to illegible.

For example, SC_HOUSE_0093637 is a grainy map of what appears to be House District 108.[2]  **Exhibit A**.  The only other metadata information that Plaintiffs can extract from the document is that it was last modified on 10/5/2021 at 1:17 AM.  From the metadata produced, Plaintiffs do not know when this document was created, who created the document, who edited the document, or whether or not it was sent to anyone over email because it is an isolated document.

---

[2] Plaintiffs assume that it is House District 108 because that is the file name.  There is no metadata associated with this file that confirms that this is the case.

7

The same can be said of SC_HOUSE_0097812 which is a panned out map of South Carolina that was last modified 12/1/2021 4:27 PM with the file name "FloorAmendmentGovan6.bmp." **Exhibit B.**

Despite House Defendants representations, the maps provide almost no useful metadata to determine when or by whom these maps were draft. This is critical information for Plaintiffs, and Defendants failure to produce these materials with metadata intact directly violates what this Court ordered on February 10. As a result, House Defendants need to go back and fix their work.

### D. House Defendants Should be Required to Conduct a Reasonable Review of Hard Drives

In response to Plaintiffs' argument that the desktop computers of House Defendants and custodians should undergo a forensic review, House Defendants responded by asserting that Plaintiffs should be satisfied with its files and metadata from the Map Room, which, as we explain above, has its own problem. *See supra* at 6-8. They do not try to explain what kind of collection was conducted for relevant material on desktop computers. During meet and confers, House Defendants described how they had House Defendants and custodians undergo a self-collection for relevant material without describing how House Defendants defined "relevant." Mot. Ex. G (Pls.' Mar. 15 email).

A self-collection for relevant documents by those who were integral to the redistricting process likely did not include *all* the relevant documents that a desktop may contain. Of course, Plaintiffs are not asking House Defendants to conduct a forensic review of all the desktops in the state house building. Though House Defendants have confirmed that there is no relevant material on the desktops of House Defendants, *see* Opp. at 21-22, they do not make the same assurance as it relates to other custodians. Counsel should be required to review the desktop servers of each

8

key custodian. This is especially the case given that House Defendants have not described what was informed to custodians as to what is relevant in this litigation.

## II. THE COURT SHOULD CONDUCT AN *IN CAMERA* REVIEW OF DOCUMENTS BEING WITHELD BY HOUSE DEFENDANTS

Plaintiffs note House Defendants' representation that they plan to serve a supplemental and amended privilege log on April 4, 2021 "with the expectation that additional items will be downgraded from the last circulated version." Opp. at 23.[3] That does not moot the issues raised with regard to House Defendants' log, and the Court should still plan on reviewing any and all documents identified in the March 13 amended privilege log that House Defendants are still maintaining privilege over. Given that House Defendants failed to meet their burden of demonstrating an entitlement to any privilege for any of the entries in their March 13 amended privilege log, all remaining withheld documents should be submitted for *in camera* review.

### A. House Defendants Failed to Meet its Burden of Demonstrating an Entitlement to the Attorney Client Privilege

House Defendants' brief confirms they have not met their burden of demonstrating that staffers like General Counsel Patrick Dennis and Chief Counsel to the Judiciary Emma Dean have an attorney-client relationship with the individual members of the Ad Hoc Redistricting Committee. *See United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (per curiam) ("The proponent must establish not only that an attorney-client relationship existed, but also that the particular communications at issue are privileged and that the privilege was not waived."). Just saying that attorneys are employed "as lawyers," Opp. at 23-24, does not create an attorney-client relationship between a staffer and legislator, nor does it establish that the communications at issue

---

[3] This offer was made for the first time in the opposition brief. House Defendants made no such commitment in the Parties' prior meet and confers.

9

were for the provision of legal advice, as opposed to some other purpose. *Id.* Instead of providing certain facts to demonstrate that there is indeed an attorney-client relationship, *see* Mot. at 19, House Defendants make conclusory assertions that there is an attorney client relationship.[4] *See In re Grand Jury Subpoena*, 542 F. App'x 252, 254 (4th Cir. 2013) (citation omitted) ("Consultation with one admitted to the bar but not in that other person's role as lawyer is not protected' and requires the proponent of the privilege to 'present the underlying facts demonstrating the existence of the privilege in order to carry its burden.'"). This is plainly insufficient.

House Defendants also assert that Plaintiffs "presuppose that just because there is some connection to legislative conduct, the legal advice cannot be privileged." Opp. at 24. That is not true. Rather, Plaintiffs rightly argue that the privilege log descriptions fail to demonstrate that certain communications were for the purpose of providing legal advice. *See* Mot. at 20-21. As explained in Plaintiffs' motion, the descriptions suggest that certain communications and work product were not for legal, but rather, legislative advice. *See id.* Advice regarding legislation is not legal advice and therefore cannot be withheld on the basis of the attorney client privilege. *Cf. Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 422-23 (D. Md. 2005); *United States v. Cohn*, 303 F. Supp. 2d 672, 684 (D. Md. 2004). Nothing

---

[4] House Defendants cite to *Page v. Virginia State Bd. of Elections* for the proposition that a court previously upheld the attorney client privilege assertions over documents between legal counsel and the Speaker of the Virginia House of Delegates in response to a third-party subpoena. Opp. at 23 (citing *Page v. Va. State Bd. of Elections*, 15 F. Supp. 3d 657, 660 (E.D. Va. 2014)). *Page* is easily distinguishable. First, the Court in *Page* upheld some of the third party's attorney client privilege assertions only *after* an *in camera* review of those documents. 15 F. Supp. 3d at 660. Second, the recipient of the subpoena was not an in-house staffer of the Virginia House of Delegates but rather a consultant and outside legal counsel to the Speaker and the Virginia House Republican Caucus. *Id.* If anything, *Page* further supports Plaintiffs' request for an *in camera* review.

in House Defendants' brief addresses this fundamental failing in their log to disclose information sufficient to "enable other parties to assess the claim" as required by Rule 26(b)(5).

House Defendants also suggest, for the first time, that staffers like Dean and Dennis acted as a conduit for legal advice between House Defendants and outside legal counsel. Opp. at 24. This assertion is certainly not supported by House Defendants' log. None of the entries in the privilege log descriptions suggest that a communication or document came from outside counsel or concerned the instant litigation, and none of the communications came from an outside counselors' email address. *See* Mot. Ex. I. None. The discrepancy between House Defendants' brief and their log suggests, at the very least, that there are additional relevant communications which have been withheld and have not been identified on a log. And in any event, this argument would not apply to the many communications with non-Defendant members of the Ad Hoc Redistricting Committee and various staffers.

Because neither House Defendants' log nor their brief even attempts to identify facts demonstrating an entitlement to the attorney client privilege as required by Rule 26(b)(5), the Court should conduct an *in camera* review of privilege log entries 1-93 to determine whether an attorney-client relationship exists and whether the documents in the privilege log are being properly withheld.

### B. House Defendants Failed to Meet its Burden of Demonstrating an Entitlement to the Attorney Client Privilege

House Defendants' position is that, because parties like SC NAACP threatened litigation over the redistricting plan and because redistricting is susceptible to litigation, the staffers anticipated litigation and, therefore, their work product is privileged. Opp. at 24. House Defendants' position is wrong as a matter of law.

As courts in the Fourth Circuit have recognized (and House Defendants have forgotten) the attorney work product privilege is only applicable to documents produced "because of" impending litigation, not to work product of lawyers where the lawyer is *aware of* potential litigation. *Neuberger*, 230 F.R.D. at 418. "Work product generally does not apply, unless the *primary motivating purpose for creating the document is to assist in pending or impending litigation*." *Id.* (emphasis added). In other words, the work product has to be "prepared principally or exclusively to assist in anticipated or ongoing litigation." *Id*. (citation omitted). Moreover, the attorney work product privilege "does not cover documents created in the ordinary course of business that later serve a litigation-related purpose." *E.I. Dupont de Nemours and Co. v. Kolon Indus., Inc.*, 269 F.R.D. 600, 604 (E.D. Va. 2010) (citation omitted).

For the attorney work product privilege to apply, the drafting lawyer cannot just merely believe litigation is anticipated, the work product itself has to be made for that anticipated litigation. Just because the legislature was on notice of a potential suit, that does not mean that all subsequent documents are work product privileged unless it is for the "primary motivating purpose" of the litigation. *Neuberger*, 230 F.R.D. at 418.

Otherwise, if a legislature could withhold documents because they think the legislation could be the subject of a suit in the future, then any piece of paper legislative counsel generates could be withheld. That is not the law. *See, e.g., Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 348 (E.D. Va. 2015). Courts have limited work product protections to documents where the "driving force behind the preparation of" them were for litigation, not for another reason.

*See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992).[5]

It is clear, based on the privilege log descriptions, that the documents being withheld as attorney work product were not drafted in anticipation of or because of litigation. For example, for Log Entry 71, there is a "communication" between Dean and Ms. Ashley Harwell-Beach on November 8, 2021 titled "redistricting" "regarding internal process planning." Mot. Ex. I. House Defendants assert attorney work product privilege over this document. Based on the information provided, the primary purpose of this document was for legislation, not litigation, given that "internal process planning" is presumably in regards to the passage of H. 4493 and not anything to do with the litigation. Documents like these were created as part of the redistricting process and would have been generated irrespective of whether the SC NAACP or some other plaintiff brought a lawsuit challenging H. 4493.

For the reasons above and those stated in the motion, the Court should conduct an *in camera* review of log entries 1, 3-38, 40, 42, 45, 46-50, 54-57, 60-69, 71-73, 77, 81-89, 93 to determine whether House Defendants properly invoked the attorney work product privilege.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order ordering House Defendants to comply with the Court's February 10 Order by ordering House Defendants to:

---

[5] Again, House Defendants suggest that many of these documents were sent from outside counsel, to staff counsel, then to the legislators. None of the entries provide this detail and this is the first time Plaintiffs have heard of this communication process between Nexsen Pruet and their clients. Because they have not provided sufficient facts that particular work product was made in anticipation of, and because of, litigation, the Court should conduct an *in camera* review of these documents.

1) Collect and produce all responsive material contained in the personal emails, text messages, instant messages, and any other form of instant messages of House Defendants and their key aides, agents, and consultants;

2) Apply reasonably designed search terms, including those proposed by Plaintiffs, or, at a minimum, to articulate in quantifiable terms the burden that applying those searches would impose such that the terms are not reasonable.

3) Produce maps containing identifying information required pursuant to the Court's February 10 Order;

4) Review legislative hard drives of House Defendants and other designated custodians and produce relevant material; and

5) Provide a privilege log identifying documents which House Defendants and their key aides, agents, and consultants refuse to produce based on other privileges, such as attorney/client privilege or work product doctrine and the specific grounds for that privilege, with sufficient factual information about the documents that Plaintiffs and the Court can make a meaningful assessment of the strength of the privilege claim.

Plaintiffs respectfully ask the Court to require expedited production of a new privilege log Defendants have indicated will be provided on April 4, and conduct an *in camera* review of any documents withheld (including those reflected on the March 13 amended privilege log at entries 1-93) to determine whether documents are being properly withheld from Plaintiffs under the attorney client communication privilege and the work product doctrine privilege.

Dated: March 30, 2022

Leah C. Aden\*\*
Stuart Naifeh\*\*
Raymond Audain\*\*
John S. Cusick\*\*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St, 5th Fl.
NY, NY 10006
Tel.: (212) 965-7715
laden@naacpldf.org

Antonio L. Ingram II\*\*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th St, Ste. 600
Washington, D.C. 20005
Tel.: (202) 682-1300
aingram@naacpldf.org

Adriel I. Cepeda Derieux\*\*
Samantha Osaki\*\*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org

John A. Freedman\*\*
Elisabeth S. Theodore\*
Adam Pergament\*\*
Gina M. Colarusso\*\*
John M. Hindley\*\*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel: (202) 942-5000
john.freedman@arnoldporter.com

*\* Motion for admission Pro Hac Vice
forthcoming
\*\* Admitted Pro Hac Vice*

Respectfully submitted,

/s/ *Christopher J. Bryant*
Christopher J. Bryant, Fed. ID 12538
BOROUGHS BRYANT, LLC
1122 Lady St., Ste. 208
Columbia, SC 29201
Tel.: (843) 779-5444
chris@boroughsbryant.com

Somil B. Trivedi\*\*
Patricia Yan\*\*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St., NW
Washington, DC 20005
Tel.: (202) 457-0800
strivedi@aclu.org

Allen Chaney, Fed. ID 13181
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA
Charleston, SC 29413-0998
Tel.: (843) 282-7953
Fax: (843) 720-1428
achaney@aclusc.org

Jeffrey A. Fuisz\*\*
Paula Ramer\*\*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
jeffrey.fuisz@arnoldporter.com

Sarah Gryll\*\*
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300
sarah.gryll@arnoldporter.com

*Counsel for Plaintiffs the South Carolina
Conference of the NAACP and Taiwan Scott*

15

Janette M. Louard\*
Anthony P. Ashton\*
Anna Kathryn Barnes\*
NAACP OFFICE OF THE GENERAL
COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org

\* Motion for admission *Pro Hac Vice*
forthcoming
\*\* Admitted *Pro Hac Vice*

*Counsel for Plaintiff the South Carolina
Conference of the NAACP*

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2022, a true and correct copy of the foregoing was served on all counsel of record by electronic mail.

/s/ *Christopher Bryant*
Christopher Bryant