# NEXSEN PRUET

**Mark C. Moore**
Member

April 22, 2022

**VIA ELECTRONIC FILING**

The Honorable Toby J. Heytens, United States Circuit Judge
The Honorable Margaret B. Seymour, Senior United States District Judge
The Honorable Richard M. Gergel, United States District Judge

> Re: Letter Brief of House Defendants Concerning the Court's Authority to Enter a Consent Decree – *The South Carolina State Conference of the NAACP and Taiwan Scott v. Thomas C. Alexander, et al.,* Civil Action No. 3:21-cv-03302-MBS-TJH-RMG

Dear Judge Heytens, Judge Seymour, and Judge Gergel:

This letter brief addresses the authority of the South Carolina Speaker of the House to enter into a settlement agreement, as well as the authority of the Court to approve a resultant consent decree in the above-referenced case.

## RELEVANT FACTUAL BACKGROUND

On February 15, 2022, this Court granted the parties a two-week stay to allow them to engage in settlement negotiations. (ECF No. 167). United States Magistrate Judge Mary Gordon Baker thereafter conducted a mediation held on March 1, 2022. (ECF No. 176). While the initial mediation did not result in settlement, counsel continued to engage in discussions concerning compromise and on April 19, 2022, the parties attended a second mediation with Magistrate Judge Baker. At the conclusion of the mediation, Defendants James H. Lucas (in his official capacity as Speaker of the South Carolina House of Representatives), Chris Murphy (in his official capacity as Chairman of the South Carolina House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee) (collectively, the "**House Defendants**"), together with Plaintiff The South Carolina State Conference of the

Austin
Charleston
Charlotte
**Columbia**
Greensboro
Greenville
Bluffton / Hilton Head
Myrtle Beach
Raleigh

1230 Main Street
Suite 700 (29201)
PO BOX 2426
Columbia, SC 29202
www.nexsenpruet.com

**T** (803) 540-2146
**F** (803) 727-1458
**E** MMoore@nexsenpruet.com
Nexsen Pruet, LLC
**Attorneys and Counselors at Law**

The Honorable Toby J. Heytens
The Honorable Margaret B. Seymour
The Honorable Richard M. Gergel
April 22, 2022
Page 2

NAACP ("**Plaintiff**"), entered into a Confidential Proposed Agreement to Resolve Plaintiffs' Claims Against House Defendants ("**Agreement**").[1]

Pursuant to the Agreement, House Defendants and Plaintiff agreed to submit briefing to the Court by April 22, 2022, regarding the authority of the Speaker of the House to resolve Plaintiff's claims by agreement, as well as the authority of the Court to approve and enter a consent decree effectuating the Agreement.

## AUTHORITY FOR THE SPEAKER OF THE HOUSE TO ENTER INTO A SETTLEMENT AGREEMENT

In an order from a noteworthy redistricting case (which was ultimately affirmed by the United States Supreme Court), a three-judge panel sitting in the Middle District of Florida concluded the state was "at liberty, ***acting through its lawfully empowered officials***, to consent to a legislative districting adjustment if (1) a material constitutional issue exists . . . and (2) the state prefers to act volitionally to avert both an expensive and protracted contest and the possibility of an adverse and disruptive adjudication." *Scott v. U.S. Dep't of Just.*, 920 F. Supp. 1248, 1252 (M.D. Fla. 1996) (emphasis added), *aff'd sub nom. Law. v. Dep't of Just.*, 521 U.S. 567, 576–77 (1997) (holding a state can exercise its "opportunity to make its own redistricting decision" by "entering into [a] settlement agreement"). Consequently, this Court must examine the authority by which the empowered officials may resolve the dispute by an agreement to alter challenged enacted districts.

Act 117 of the 124th Session of the South Carolina General Assembly sets forth not only the establishment of new districts for the House of Representatives, but also the authority of the Speaker of the House in litigation on behalf of the House of Representatives.[2]

Section 6(B)(2) of Act 117 provides:

> In a federal court action that challenges the constitutionality of this act, the validity of this legislation, or any action of the General Assembly, the

---

[1] Plaintiff Taiwan Scott does not challenge any of the newly enacted districts for the South Carolina House of Representatives and is, therefore, not a party to the Settlement Agreement.

[2] Similarly, Section 7 of Act 117 establishes concomitant authority for the Senate President on behalf of the South Carolina Senate.

The Honorable Toby J. Heytens
The Honorable Margaret B. Seymour
The Honorable Richard M. Gergel
April 22, 2022
Page 3

> Speaker of the House of Representatives has standing to intervene as a party on behalf of the House of Representatives, to file an amicus brief, or to provide evidence or argument, written or oral, in accordance with the federal rules of procedure, irrespective of whether any other officer of the State has appeared in the action. A federal court presiding over any action in which the State of South Carolina, or any state agency, is a named party is requested to allow the Speaker, on behalf of the House of Representatives, to participate in any such action as a party.

Section 6(B)(2), Act 117, 124th Sess., S.C. Gen. Assemb. (2021–2022); *see also* Section 6(A)(2), Act 117, 124th Sess., S.C. Gen. Assemb. (2021–2022).

In addition, Section 8 of Act 117 expressly provides that "[t]he Speaker of the House is authorized to initiate or otherwise participate in litigation on behalf of the House of Representatives regarding redistricting as the Chief Administrative Officer of the House of Representatives pursuant to [South Carolina Code] Section 2-3-110." Section 2-3-110 of the South Carolina Code provides that "[t]he Speaker is hereby designated as the department head and chief administrative officer of the House of Representatives." Rule 1.13 of the Rules of the House for the South Carolina House of Representatives references Section 2-3-110 of the South Carolina Code and further codifies the Speaker's designation and authority as the chief administrative officer.

Importantly, Act 117 does not provide authority for any other individual and/or officer associated with the South Carolina House of Representatives to intervene or otherwise act on behalf of the House of Representatives in relation to or in connection with a federal court action that challenges the constitutionality of redistricting legislation. Further, Act 117 provides no prohibition on the Speaker of the House from entering into a settlement agreement or seeking a consent decree from the Court on behalf of the House of Representatives.

Here, the Speaker of the House is a defendant and thus has the authority, on behalf of the House of Representatives, to resolve the claims regarding the enacted House Districts by way of a negotiated agreement. First, the Court should recognize the unique context of redistricting. It is within this context that the Speaker of the House has authority to enter into an agreement resolving the litigation on behalf of the House of Representatives, as specifically afforded to him within the express language of Act 117 detailed above. Conversely, Act 117 is just as telling in what is not expressed: (1) it

The Honorable Toby J. Heytens
The Honorable Margaret B. Seymour
The Honorable Richard M. Gergel
April 22, 2022
Page 4

does not provide authority for any other individual and/or officer associated with the South Carolina House of Representatives to intervene or otherwise act in relation to or in connection with a federal court action that challenges the constitutionality of the act, and (2) there is no prohibition on the Speaker of the House from entering into a settlement agreement or seeking a consent decree within Act 117. Thus, his authority is plenary in this context. House Defendants do not assert that the Speaker of the House could enter into such a resolution by himself that binds the House of Representatives in other contexts or circumstances. However, in this particular circumstance, regarding resolution of a challenge to the redistricting plan for the House Districts, the Speaker of the House is expressly authorized to act on behalf of the House in redistricting litigation. Because of this authority, there is no basis for concern that the Speaker of the House is granting himself power he otherwise does not hold.[3] *Cf. League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 846 (5th Cir. 1993) ("Courts must be especially cautious when parties seek to achieve by consent decree what they cannot achieve by their own authority. Consent is not enough when litigants seek to grant themselves powers they do not hold outside of court.").

As a corollary, the issue of the South Carolina legislative leaders' authority to litigate is an issue that has occurred recently. Since this issue arose, the General Assembly has operated carefully when outlining and clarifying their authority. In litigation following the South Carolina Electric & Gas and Santee Cooper announcement of the stoppage of construction of the new nuclear facilities at the V.C. Summer Nuclear Generating Station in July 2017, a question arose involving the Governor's recess-appointment power and the authority of the South Carolina Senate President Pro Tempore to bring a lawsuit on behalf of the Senate. Wm. Grayson Lambert, Bradley S. Wright, *Lawsuits and Legislative Leadership*, S.C. Law., July 2019, at 26 (discussing *Senate by & through Leatherman v. McMaster*, 425 S.C. 315, 821 S.E.2d 908 (2018)). The South Carolina Supreme Court had concerns with the

---

[3] Of note, House Defendants anticipate that neither the Senate Defendants, the Election Commission Defendants, nor the Governor of the State of South Carolina will object to this Agreement between House Defendants and Plaintiff. Therefore, even if the Court were to view these parties as intervenors or interested parties, their consent and/or failure to object to such an Agreement should resolve any concern that the Speaker of the House is overstepping his authority by consenting to terms that would otherwise require Senate approval and the Governor's signature. *Cf. Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986) (holding a consent decree "cannot dispose of the valid claims of nonconsenting intervenors; if properly raised, these claims remain and may be litigated by the intervenor").

The Honorable Toby J. Heytens
The Honorable Margaret B. Seymour
The Honorable Richard M. Gergel
April 22, 2022
Page 5

Senate President Pro Tempore's authority, and found "the manner in which" the Senate brings an action "must be determined by law." *Id.* at 28. After this case, the South Carolina General Assembly had on its mind the concerns expressed by the Court. Thus, from its text, it is clear that Section 8 of Act 117 is an outgrowth of that concern. Based on the foregoing, this Court should not share the same concerns as the court in the *Leatherman* decision.

In the *Scott* case referenced above (which is analogous to case at bar and was ultimately affirmed by the Supreme Court) the three-judge panel concluded that the state was "at liberty, ***acting through its lawfully empowered officials***, to consent to a legislative districting adjustment if (1) a material constitutional issue exists . . . and (2) the state prefers to act volitionally to avert both an expensive and protracted contest and the possibility of an adverse and disruptive adjudication." *Scott*, 920 F. Supp. at 1252. There, the court ensured the lawfully empowered officials "manifested both the authority to consent and actual consent to the terms of the proposed resolution." *Id.* at 1251; *see also* Brief for the State Appellees, *Law. v. Dep't of Just.*, 521 U.S. 567 (1997) (No. 95-2024), 1997 WL 2552, at *6, n.4 (stating "the court made specific inquiry, and received specific assurances, as to the authority of the Speaker of the Florida House and the President of the Florida Senate to represent their respective government bodies in the litigation"). As in *Scott*, the Speaker of the House here has the requisite authority and consent under Act 117 to enter into the Agreement.

Furthermore, the policy goals underlying consent decrees likewise support the Speaker of the House's authority in this context. After all, the principle of federalism would be undermined if, alone among federal court litigants, lawfully empowered officials were deprived of the ability to resolve cases. *See* Brief for the State Appellees, *Law. v. Dep't of Just.*, 521 U.S. 567 (1997) (No. 95-2024), 1997 WL 2552, at *37 (citing *Scott v. U.S. Dep't of Just.*, 920 F. Supp. 1248, 1252 (M.D. Fla. 1996) (quoting *Wygant v. Jackson Bd. of Education*, 476 U.S. at 290–91 (O'Connor, J., concurring in part and concurring in the judgment))). To the extent there is any concern that Act 117 does not provide for the express authorization for the Speaker of the House to resolve redistricting litigation on behalf of the House of Representatives short of a trial, it expressly provides for the authorization to initiate litigation. These same policy goals above demonstrate that the legislative grant of authority to initiate litigation or "otherwise participate in litigation" presupposes authority to settle as well. *See* Section 8, Act 117, 124th Sess., S.C. Gen. Assemb. (2021–2022).

Lastly, as demonstrated below, there are several cases in which courts have entered consent decrees in the redistricting context, which also supports the authority of House Defendants, specifically the Speaker of the House, to resolve disputes and

The Honorable Toby J. Heytens
The Honorable Margaret B. Seymour
The Honorable Richard M. Gergel
April 22, 2022
Page 6

propose enactment of the terms by consent decrees. This letter brief now turns to authority for this Court to enter a consent decree.

## AUTHORITY FOR THE COURT TO ENTER A CONSENT DECREE

"[A] consent decree 'has elements of both judgment and contract,' and is subject to 'judicial approval and oversight' generally not present in other private settlements." *Szaller v. Am. Nat. Red Cross*, 293 F.3d 148, 152 (4th Cir. 2002) (quoting *Smyth ex rel. Smyth v. Rivero*, 282 F.3d 268, 279–80 (4th Cir. 2002)). "In considering whether to enter a proposed consent decree, a district court should be guided by the general principle that settlements are encouraged. Nevertheless, a district court should not blindly accept the terms of a proposed settlement." *United States v. North Carolina*, 180 F.3d 574, 581 (4th Cir. 1999) (internal citations omitted). "[W]hen a settlement has been negotiated by a specially equipped agency, the presumption in favor of settlement is particularly strong." *League of Women Voters of Virginia v. Virginia State Bd. of Elections*, 481 F. Supp. 3d 580, 587 (W.D. Va. 2020) (quoting *Md. Dept. of Env't v. GenOn Ash Mgmt., LLC*, Nos. 11-cv-1209, 12-cv-3755, 2013 WL 2637475, at *1 (D. Md. June 11, 2013)).

"[B]efore entering a consent decree the court must satisfy itself that the agreement 'is fair, adequate, and reasonable' and 'is not illegal, a product of collusion, or against the public interest.'" *North Carolina*, 180 F.3d at 581 (quoting *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991)). This type of hearing is called a "fairness hearing." *See, e.g.*, *id.* at n.5; *Scott*, 920 F. Supp. at 1251. "In considering the fairness and adequacy of a proposed settlement, the court must assess the strength of the plaintiff's case." *North Carolina*, 180 F.3d at 581. "While this assessment does not require the court to conduct 'a trial or a rehearsal of the trial,' the court must take the necessary steps to ensure that it is able to reach 'an informed, just and reasoned decision.'" *Id.* (quoting *Flinn v. FMC Corp.*, 528 F.2d 1169, 1172–73 (4th Cir. 1975)).

The Fourth Circuit has held, prior to entering a consent decree, "the 'court should consider the extent of discovery that has taken place, the stage of the proceedings, the want of collusion in the settlement and the experience of plaintiffs' counsel who negotiated the settlement.'" *Id.* (quoting *Carson v. American Brands, Inc.*, 606 F.2d 420, 430 (4th Cir. 1979) (en banc) (Winter, J., dissenting), *adopted by Carson v. American Brands, Inc.*, 654 F.2d 300, 301 (4th Cir. 1981) (en banc) (per curiam). Likewise, a federal court in Alabama used similar factors in determining whether a proposed consent decree was fair in a civil rights case; those factors included: "(1) the views of the [plaintiffs]; (2) the views of [plaintiffs'] counsel; (3) the substance and amount of opposition to the settlement; (4) the possible existence of collusion behind

The Honorable Toby J. Heytens
The Honorable Margaret B. Seymour
The Honorable Richard M. Gergel
April 22, 2022
Page 7

the settlement; (5) the stage of the proceedings; (6) the likelihood of success at trial; (7) the complexity, expense, and likely duration of the lawsuit; and (8) the range of possible recovery." *Dillard v. City of Foley*, 926 F. Supp. 1053, 1063 (M.D. Ala. 1995).

The *Dillard* Court gave "considerable weight" to the views of the plaintiffs' counsel, who were all "experienced civil rights and voting rights lawyers who ha[d] shown to the court, through their long-term participation in this and related cases and through their continued monitoring, an enduring commitment to protecting the voting rights of the plaintiff class." *Id.* The *Dillard* Court ultimately approved and entered the underlying consent decree, and noted the consent decree resulted from "mediation talks conducted with a Magistrate Judge where [the] parties were instructed to consider the expense of pursuing the litigation and the relative strengths and weaknesses of their cases." *Id.* at 1064.

This Court has the authority to approve the consent decree in the pending case. As previously discussed, in an analogous redistricting case that was ultimately affirmed by the United States Supreme Court, a three-judge panel approved the consent decree after conducting a fairness hearing. *Scott*, 920 F. Supp. at 1251.

Further, other courts have also upheld consent decrees in the redistricting context. *See, e.g.*, *Rybicki v. State Bd. of Elections of State of Ill.*, 574 F. Supp. 1161 (N.D. Ill. 1983); *Kimble v. Cty. of Niagara*, 826 F. Supp. 664 (W.D.N.Y. 1993); *Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh, Pa.*, 727 F. Supp. 969 (W.D. Pa. 1989), *aff'd in part and reversed in part*, 964 F.2d 244 (3rd Cir. 1992); *Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988).

Lastly, House Defendants provide the foregoing factors for consideration not so much as to delve into the merits of the consent decree now, but to allay any concern that the Court would not have legal precedent by which to be guided during the fairness hearing.

## **CONCLUSION**

Based on the foregoing, the parties have the authority to enter into the Agreement, and this Court has the authority to approve and enter a resultant consent decree.

The Honorable Toby J. Heytens
The Honorable Margaret B. Seymour
The Honorable Richard M. Gergel
April 22, 2022
Page 8

Respectfully submitted,

s/ Mark C. Moore

Mark C. Moore

MCM/rdr

cc:     All Counsel of Record