

**April 22, 2022**

**VIA ELECTRONIC COURT FILING**

The Honorable Margaret B. Seymour
The Honorable Toby J. Heytens
The Honorable Richard Gergel
United States District Court
Matthew J. Perry Courthouse
Columbia, SC 29201

       RE:    *Authority of the Panel and Parties to Enter Binding Consent Decree to Resolve SC NAACP's Challenges to H.4493*
              *NAACP v. Alexander*, 3:21-cv-03302-MBS-TJH-RMG

Your Honors,

    Plaintiff South Carolina State Conference of the NAACP[1] ("SC NAACP") has entered an agreement in principle to resolve their litigation against South Carolina House of Representatives, Speaker James H. Lucas, Chairman Chris Murphy, and Chairman Wallace H. Jordan, sued in their official capacities, (collectively, "House Defendants") regarding certain House districts adopted in H. 4493. As requested by the Court, SC NAACP submits this brief in support of the Court's authority to accept and enforce the Plaintiff SC NAACP and House Defendants' (collectively, "Parties") forthcoming Agreement through a binding consent decree.

### Question Presented

    Do the Parties have authority to settle their litigation regarding the constitutionality of H. 4493 by entering an agreement to adopt, through consent decree, new district lines in three areas of the State?

---

[1] Plaintiff Taiwan Scott does not have any claims against Defendants regarding the challenged state House districts and is therefore not a party to the proposed consent decree.

*NAACP v. Alexander*, 3:21-cv-03302-MBS-TJH-RMG
April 22, 2022

### Short Answer

There is no legal impediment to the Court accepting the Parties' settlement agreement and enforcing the three Proposed Maps through consent decree.

It is well-established that redistricting litigation can be fully resolved by consent decree. Under the U.S. Supreme Court's holding in *Lawyer v. Dep't of Justice*, 521 U.S. 567 (1997), the Court has authority to adopt the Parties' Proposed Maps without making findings concerning the challenged state House districts ("challenged districts") adopted in H. 4493, so long as the Proposed Maps are approved by the State's representative(s) responsible for redistricting. Here, Speaker Lucas is the authorized State representative empowered with authority to accept settlement and resolve this matter. Section 8 of the House Redistricting Act, H. 4493, explicitly authorizes the Speaker of the House to "initiate or otherwise participate in litigation on behalf of the House of Representatives." That express authority to initiate or participate in litigation must necessarily confer authority to resolve it, including by settlement.

As with any consent decree, the Court has an obligation to ensure that the terms of the settlement are fair. But assuming its fairness—which the Parties will demonstrate at a fairness hearing—the Court has authority to adopt and enforce the Proposed Maps by consent decree.

### Discussion

There does not appear to be a separate body of law governing whether, and under what circumstances, a government defendant can agree to new redistricting maps by settlement. Instead, the answer is embedded in the principles that generally govern consent decrees.

**I.    Redistricting settlements are appropriately enforced through consent decrees.**

A consent decree is "a means by which parties settle their disputes without having to bear the financial and other costs of litigating." *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 528-29 (1986). By its terms, a consent decree substitutes the parties' concrete legal dispute on the merits for a mutual compromise that allows the court to enter judgment. *See United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). By entering a consent decree, the "parties waive their right to litigate the issues involved in the case, [saving] time, expense, and inevitable risk of litigation." *Id.* In exchange, they "each give up something they might have won had they proceeded with the litigation." *Id.* As a result, consent decrees "'have attributes both of contracts and judicial decrees.'" *Local No. 93*, 478 U.S. at 518 (quoting *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236 n.10 (1975)).

*NAACP v. Alexander*, 3:21-cv-03302-MBS-TJH-RMG
April 22, 2022

As the U.S. Supreme Court held in *Lawyer v. Dep't of Justice*, consent decrees are appropriate vehicles for settling redistricting cases. 521 U.S. at 567. In *Lawyer*, the Court affirmed a district court's approval of a consent decree between voters and state defendants, settling a challenge to a Florida legislative district. The Court rejected a voter's attack on the parties' agreement, which claimed that the settlement deprived the state of "primacy" in "redistricting responsibility." *Id.* at 576-77. Rather, the Court explained, the State had fully exercised its "opportunity to make its own redistricting decisions"—precisely "by entering into [a] settlement agreement, which . . . it had every right to do." *Id.* at 577.

Federal courts routinely enter consent decrees to resolve redistricting litigation. *See*, *e.g., Jones v. Jefferson Cnty. Bd. Of Educ.*, No. 2:19-cv-01821, Dkt. No. 21 (N.D. Ala Dec. 16, 2019) (entering an order settling claims under the U.S. Constitution and Voting Rights Act); *Ala. State Conf. of the NAACP, et al. v. City of Pleasant Grove, Ala.*, No. 2:18-cv-02056, Dkt. No 41 (N.D. Ala. Oct. 11, 2019) (entering consent decree settling claims under the U.S. Constitution and Voting Rights Act); *Ga. State Conf. of NAACP v. Fayette Cty. Bd. of Comm'rs*, No. 3:11-cv-00123, Dkt. No. 289 (N.D. Ga. Jan. 14, 2016) (approving consent decree on school board districts shortly before trial); *Guillory v. Avoyelles Parish Cnty. Sch. Bd.*, No. 1:03-cv-00285, Dkt. Nos. 41-42 (W.D. La. Aug. 2, 2006) (approving consent judgment on redistricting school board districts); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, No. 1:03-cv-502, Dkt. Nos. 117-18 (N.D.N.Y. Aug. 19, 2004) (entering consent decree in Voting Rights Act case without a hearing); *Kimble v. Cty. of Niagara*, 826 F. Supp. 664, 672-73 (W.D.N.Y. 1993) (approving consent decree settling claims under the U.S. Constitution and Voting Rights Act); *Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh, Pa.*, 727 F. Supp. 969, 971 (W.D. Pa. 1989), *aff'd in part and reversed in part*, 964 F.2d 244 (3rd Cir. 1992) (explaining that district court entered consent decree on constitutional and Voting Rights Act redistricting claims over objections after conducting fairness hearing); *Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988) (certifying class action and approving proposed settlement of certain claims under U.S. Constitution and Voting Rights Act after conducting fairness hearing and receiving evidence); *Moch v. E. Baton Rouge Parish Sch. Bd.*, 533 F. Supp. 556, 561 (M.D. La. 1980) (approving consent decree on school board districts);

In addition to showing that redistricting settlements are not anomalous, a review of these cases also shows that courts are flexible. Litigants are generally permitted to tailor consent decrees to fit the parties' interests. Some consent decrees, for example, require government actors to propose new maps. *See*, *e.g.*, *Pharr v. Harrison Cnty. Bd. of Supervisors*, 53 F.3d 670 (5th Cir. 1994) (requiring submission of new redistricting plan to DOJ within 60 days); *NAACP v. Albany Cnty.*, No. 91-cv-1288-CGC (N.D.N.Y. filed

*NAACP v. Alexander*, 3:21-cv-03302-MBS-TJH-RMG
April 22, 2022

Nov. 7, 1991) (mandating creation of new plan with an additional majority-minority district) (cited by *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 281 F. Supp. 2d 436, 440 (N.D.N.Y. 2003). Others ask the court to, by consent decree, adopt the maps agreed upon by the litigants. *See Rybicki v. State Bd. of Elections of State of Ill.*, 574 F. Supp. 1161, 1162 (N.D. Ill. 1983) (incorporating mutually agreed upon state maps into court-ordered redistricting plan). So long as the agreements are fair and executed by the proper parties, they are enforceable. *Cf. League of Women Voters of Mich. v. Benson*, 2019 WL 8106156 (E.D. Mich. 2019) (denying motion for consent decree where settlement was opposed by a party that would be bound by the decree—the Michigan Legislature).

## II. The proposed settlement between SC NAACP and House Defendants can be enforced through a valid consent decree.

After evaluating the risks and rewards of trial, the Parties have agreed to forego the time, expense, and risk of litigation in exchange for a mutually beneficial resolution. To consummate their forthcoming Agreement, the Parties ask the Court to adopt their three Proposed Maps through a consent decree, to refrain from making any findings related to Plaintiff's claims challenging certain districts adopted in H. 4493, and to dismiss these claims (Counts 1 and 2) with prejudice.

This forthcoming proposed settlement neatly aligns with the lineage of redistricting cases described above. SC NAACP has the authority to settle its own claims. Likewise, under state law and common practice, the Speaker of the House has exclusive authority to enter this settlement on behalf of the House of Representatives. Finally, *Lawyer* authorizes the Court to enforce the Proposed Maps without entering findings regarding the challenged districts in H. 4493.

In considering whether to enter a proposed consent decree, a district court should be guided by the general principle that settlements are encouraged." *United States v. N. Carolina*, 180 F.3d 574, 581 (4th Cir. 1999). With that in mind, a proposed settlement should be accepted so long as it "is fair, adequate, and reasonable" and "is not illegal, a product of collusion, or against the public interest." *Id.* For the reasons discussed below and as the Parties will establish at the fairness hearing, this consent decree meets those standards.

### A. SC NAACP and House Defendants are appropriate and sufficient parties to the Forthcoming Agreement.

The House Defendants, which include Speaker of the House ("Speaker") James H. (Jay) Lucas"), and SC NAACP, are appropriate and sufficient parties to a consent

*NAACP v. Alexander*, 3:21-cv-03302-MBS-TJH-RMG
April 22, 2022

decree that adopts certain new House districts. The language of H. 4493, the South Carolina Constitution, and longstanding practice, make this clear.

To start, State law assigns Speaker Lucas with responsibility to represent the House of Representatives in any redistricting litigation. H. 4493 authorizes the Speaker, as the Chief Administrative Officer of the House of Representatives, "to initiate or otherwise participate in litigation on behalf of the House of Representatives regarding redistricting." H. 4493, Section 8. Authority to "otherwise participate in litigation" necessarily includes authority to settle that litigation. *Cf. Bynum v. Barron*, 88 S.E.2d 67, 72 (S.C. 1955) ("[T]he legislative branch is vested with power" to enter into a settlement). H. 4493 also makes clear that in redistricting litigation, the House of Representatives and Senate "must function independently from each other in the representation of their respective bodies, unless otherwise agreed to by the President of the Senate and the Speaker of the House of Representatives." H. 4993, Section 6(E). This statute, which was passed by the House and Senate and signed by the Governor, makes clear that the Senate is not a necessary party to this consent decree, and H. 4493 does not contemplate any other party that is even allowed to resolve redistricting cases specific to the House of Representatives, much less required to do so. *Hinkle v. Safe-Guard Prods. Int'l, LLC*, 839 Fed. Appx. 770, 776 (4th Cir. 2020) (unpublished) ("negative implication" canon instructs that the inclusion of a particular member of a group necessarily excludes others).

The South Carolina Constitution also supports the legislature's—and in this case, the Speaker's—ability to direct redistricting legislation, including settling it. First, the legislature is granted the power to "provide for the nomination of candidates, regulate the time, place and manner of elections, provide for the administration of elections . . . and enact other provisions necessary to the fulfillment and integrity of the election process." S.C. CONST., Art. II, § 10. Second, under the separation of powers clause, the legislature is given the authority to act in order to discharge its duties "separate and distinct from" the other branches of government. *See* S.C. CONST., Art. I, § 8 ("In the government of this State, the legislative, executive, and judicial powers of the government shall be forever separate and distinct from each other, and no person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other."). As noted above, the South Carolina Supreme Court has recogized the legislature's power to settle lawsuits. *Barron*, 88 S.E.2d at 72. This power, in combination with H. 4493's grant of exclusive litigation authority to the Speaker in litigation regarding House redistricting, crystalizes why the Speaker is an appropriate and sufficient party.

Finally, Section 6(E) of H. 4493—which notes that the House and Senate must "function independently" of one another in redistricting litigation—reflects a longstanding tradition of each chamber controlling the creation, passage, and defense of

*NAACP v. Alexander*, 3:21-cv-03302-MBS-TJH-RMG
April 22, 2022

its own electoral maps. Following the 2020 Census, each chamber of the legislature established its own committee or subcommittee for the redistricting process, and these bodies limited itself to redistricting its own chamber. The House Redistricting Ad Hoc Committee and Senate Redistricting Subcommittee adopted separate (though substantively similar) redistricting guidelines, held separate hearings, and employed different information-gathering procedures. In particular, the House Redistricting Ad Hoc held hearings and received public input on only its proposed state House redistricting proposals. The public record indicates minimal, if any, involvement from the Senate or other government actors other than to pass H. 4493 through legislative procedures. The Senate, for example, did not propose any substantive amendments to H. 4493 before passing it one day before the Governor signed it.

These things, taken together, demonstrate that the consent of Speaker Lucas is both appropriate and sufficient to enter a binding consent decree with respect to the proposed forthcoming settlement.

> B. The forthcoming Agreement does not impose duties or obligations on nonconsenting third parties and Parties do not expect the remaining state defendants to contest their Agreement.

It is well-settled that one party (whether an original party, a party that was joined later, or an intervenor) cannot preclude other parties from settling their own disputes. *Local No. 93*, 478 U.S. at 529. But, conversely, "two parties who come to a settlement may not of course dispose of a third-party's claims or impose 'duties or obligations on a third party, without that party's agreement.'" *League of Women Voters of Virginia v. Virginia State Bd. of Elections*, 458 F. Supp. 3d 442, 459 (W.D. Va. 2020) (quoting *Local No. 93*, 478 U.S. at 529); *also see Fouts v. Harris*, 88 F. Supp. 2d 1351, 1353 (S.D. Fla. 1999), *aff'd sub nom. Chandler v. Harris*, 529 U.S. 1084 (2000) (denying plaintiffs' motion to enter into a consent decree invalidating a Congressional district because the governor, speaker, and secretary of state objected to the proposed agreement). Because the forthcoming agreement focuses narrowly on the House redistricting plan, and because South Carolina adheres to well-defined roles in the redistricting process, no such problems exist here.

Importantly, the proposed settlement *only* resolves SC NAACP's claims regarding challenged House districts adopted in H.4493, without imposing any duties or obligations on nonparties to the settlement. As discussed above, the Speaker has exclusive authority to litigate on behalf of the House regarding redistricting and thus can properly bind the House in settlement. *See* H. 4493, § 8. The other parties to this lawsuit need not consent to the settlement because they are not responsible for House redistricting. *See*, *e.g.*, ECF 94 at 8-14 (Governor's Second Motion to Dismiss) (disavowing any role in enforcing H.

*NAACP v. Alexander*, 3:21-cv-03302-MBS-TJH-RMG
April 22, 2022

4493). Additionally, because the Parties agree that the forthcoming proposed settlement is not evidence and cannot be used to prove any claims in a subsequent action, it cannot prejudice the Senate with respect to its own redistricting map (for which the Senate alone is responsible) or the Congressional map (for which the House and Senate are dually responsible).

In any event, based on their behavior during this litigation, there is no reason to expect that the Senate, State Election Commission, or Governor will object to the proposed settlement.[2] The Governor sought and received excusal from the litigation. It is therefore unlikely and unanticipated that he would or could intervene to try to block this settlement. For its part, the Election Commission has represented that it intends to abide by any maps that are the result of this litigation without issue, so long as the relief does not go into effect until 2024. SEC ROG No. 2 ("Election Defendants' primary position is that they collectively intend to implement the new districts as established by the legislature and/or the Courts[.]"). And the Senate, for their part, has not participated in claims related to H. 4493, engaged in settlement negotiations regarding the House maps, or otherwise signaled any intent to break from the long-observed tradition of the House and Senate exercising independent authority over their own redistricting maps.

    C.  Under *Lawyer*, the Court is authorized to accept the settlement without making a finding as to the constitutionality of challenged districts.

The Court need not make a finding on the merits of Plaintiff's dispute to enter relief. As the U.S. Supreme Court held in *Lawyer*, where the state has "ma[de] redistricting decisions in the first instance" then seeks to settle a dispute bearing on them, "there are no reasons . . . [to] requir[e] a formal adjudication of constitutionality." 521 U.S. at 578. Nor, for that matter, must defendants in a redistricting case admit liability to resolve litigation through consent agreement. "[T]he law allows for a consensual remedy in the absence of a public mea culpa[.]" *Scott v. Dep't of Justice*, 920 F. Supp. 1248, 1252 n.10 (M.D. Fla. 1996), *aff'd by Lawyer*, 521 U.S. at 574. In this circumstance, it is precisely "'the parties' agreement that serves as the source of . . . authority to enter any consent judgment at all.'" *Lawyer*, 521 U.S. at 579 n.6.

    D.  As will be demonstrated at a fairness hearing, the proposed settlement contains fair terms.

The Parties will provide a more robust defense of the forthcoming fairness of the proposed settlement and three Proposed Maps at a fairness hearing. For these purposes,

---

[2] The Parties are in active discussions with the Senate, Governor, and State Election Commission regarding their positions on the proposed settlement, but have not yet received final responses as of the filing of this letter.

*NAACP v. Alexander*, 3:21-cv-03302-MBS-TJH-RMG
April 22, 2022

however, each Proposed Map makes revisions that are fair to the Parties and satisfies the public interest. Each revision was negotiated at arm's length and in good faith, in an effort to address SC NAACP's 's concerns about the intentional dilution of Black voting power in H. 4493. Under the forthcoming proposed settlement, important communities of interest are reunited and Black voters are reapportioned to allow for greater opportunity to elect their preferred candidates and, ultimately, to impact the composition of the House of Representatives.

\*     \*     \*

SC NAACP, on behalf of its members, has reached a positive resolution in its claims against the House redistricting plan. Having agreed to a fair and just settlement with Speaker Lucas and the other House Defendants, SC NAACP respectfully asks the Court to conclude that it has authority, subject to a fairness hearing, to accept the proposed settlement and to enforce its terms through a consent decree.

Dated: April 22, 2022

Respectfully submitted,

*D. Allen Chaney Jr.*
Allen Chaney, Fed. ID 13181
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA
P.O. Box 1668
Columbia, SC 29202
Tel.: (843) 282-7953
achaney@aclusc.org

Leah C. Aden\*\*
Stuart Naifeh\*\*
Raymond Audain\*\*
John S. Cusick\*\*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St, 5th Fl.
NY, NY 10006
Tel.: (212) 965-7715
laden@naacpldf.org

Christopher J. Bryant, Fed. ID 12538
BOROUGHS BRYANT, LLC
1122 Lady St., Ste. 208
Columbia, SC 29201
Tel.: (843) 779-5444
chris@boroughsbryant.com

Antonio L. Ingram II\*\*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th St, Ste. 600
Washington, D.C. 20005
Tel.: (202) 682-1300
aingram@naacpldf.org

Somil B. Trivedi\*\*
Patricia Yan\*\*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

Adriel I. Cepeda Derieux\*\*
Samantha Osaki\*\*

*NAACP v. Alexander*, 3:21-cv-03302-MBS-TJH-RMG
April 22, 2022

AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org

John A. Freedman**
Elisabeth S. Theodore*
Adam Pergament**
Gina M. Colarusso**
John M. Hindley**
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel: (202) 942-5000
john.freedman@arnoldporter.com

*Motion for admission Pro Hac Vice forthcoming*
**Admitted Pro Hac Vice*

Janette M. Louard*
Anthony P. Ashton*
Anna Kathryn Barnes*
NAACP OFFICE OF THE GENERAL COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org

* Motion for admission *Pro Hac Vice* forthcoming
** Admitted *Pro Hac Vice*

*Counsel for Plaintiff the South Carolina Conference of the NAACP*

915 15th St., NW
Washington, DC 20005
Tel.: (202) 457-0800
strivedi@aclu.org

Jeffrey A. Fuisz**
Paula Ramer**
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
jeffrey.fuisz@arnoldporter.com

Sarah Gryll**
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300
sarah.gryll@arnoldporter.com

*Counsel for Plaintiffs the South Carolina Conference of the NAACP and Taiwan Scott*

*NAACP v. Alexander*, 3:21-cv-03302-MBS-TJH-RMG
April 22, 2022

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 22, 2022, a true and correct copy of the foregoing was served on all counsel of record by CM/ECF.

    /s/ *Allen Chaney*
    Allen Chaney