IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRCIT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| The South Carolina State Conference of the NAACP, and Taiwan Scott, *on behalf of himself and all other similarly situated persons*,<br><br>    Plaintiffs,<br><br>    v.<br><br>Thomas C. Alexander, *in his official capacity as President of the Senate Judiciary Committee;* James H. Lucas, *in his official capacity as Speaker of the House of Representatives*; Chris Murphy, *in his official capacity as Chairman of the House of Representatives Judiciary Committee*; Wallace H. Jordan, *in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee*; Howard Knabb, *in his official capacity as interim Executive Director of the South Carolina State Election Commission*; John Wells, *Chair*, Joanne Day, Clifford J. Elder, Linda McCall, and Scott Moseley, *in their official capacities as members of the South Carolina State Election Commission*,<br><br>    Defendants. | C/A No.: 3:21-cv-03302-TJH-MBS-RMG<br><br>**ORDER** |

    Before the Court are motions by Defendants James H. Lucas (in his official capacity as Speaker of the South Carolina House of Representatives), Chris Murphy (in his official capacity as Chairman of the South Carolina House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee) (collectively, the "House Defendants") and Plaintiff The South Carolina State Conference of the NAACP for the Panel to approve the parties' settlement of

1

Plaintiff's claims regarding certain House districts established by H. 4493. (Dkt. Nos. 234 and 235).

As a preliminary matter, the Court must determine if the House Defendants possess the authority to settle.

The Panel does not draw on a blank slate. To settle state-level reapportionment actions, *Lawyer v. Department of Just.*, 521 U.S. 567, 117 S. Ct. 2186, 138 L. Ed. 2d 669 (1997) requires the parties present evidence that both bodies which passed the challenged redistricting legislation—namely, the House and Senate—explicitly consent to the proposed settlement. *Id.* at 573. *Lawyer* further requires that the State itself—acting through the Governor or State Attorney General—consent to the proposed settlement. *Id.* at 577.

The House Defendants argue they have the required authority to settle Plaintiff's House claims because Defendant Lucas, Speaker of the South Carolina House of Representatives, consents to the proposed settlement. *See* (Dkt. No. 234 at 3); (Dkt. No. 235 at 4-6). The House Defendants do not indicate, however, that either the Senate or the Governor—a nonparty—have consented to the proposed settlement.

The Panel finds that the House Defendants have not established compliance with *Lawyer* and declines to approve the proposed settlement. Contrary to the parties' assertions otherwise, *see* (Dkt. No. 234 at 2-3); (Dkt. No. 235 at 4-6), the Speaker of the House has not demonstrated he has the necessary authority to settle on behalf of the entire legislature. Though H. 4493 confers standing on the Speaker of the House to "intervene as a party on behalf of the House of Representatives, [] file an amicus brief, or [] provide evidence" in federal redistricting litigation, it notably omits the authority to settle—and moreover provides identical powers to the President of the Senate. *See* § 6(B)(2), Act 117, 124th Sess., S.C. Gen. Assemb. (2021–2022); § 8 (allowing

Speaker "to initiate or otherwise participate in litigation on behalf of the House of Representatives regarding redistricting"); §§ 6(B)(1), 7 (granting the President of the Senate identical rights). *Cf. Bynum v. Barron*, 227 S.C. 339, 349, 88 S.E.2d 67, 69, 72 (1955) (with respect to county taxes, legislature had authority to pass bill which, after signed by governor, effectively settled pending litigation). Further, the House Defendants have not presented evidence that either the Senate or the Governor has consented to the proposed settlement. Thus, while *Lawyer* does provide authority under which the parties could settle Plaintiff's House claims, the present record does not support such relief. *See Scott v. United States Dep't of Just.*, 920 F. Supp. 1248, 1255 (M.D. Fla. 1996), *aff'd sub nom. Lawyer*, 521 U.S. 567, 117 S. Ct. 2186, 138 L. Ed. 2d 669 ("Foremost among the factors commending the proposed resolution in this action is the consent of Florida's Senate and House . . . and the concurrence of Florida's Attorney General and Secretary of State. While assisted tellingly by mediation, proposed District 21 . . . is *primarily a legislative action* and is advanced to this stage by this court preeminently for that reason.") (emphasis added); *Colleton Cty. Council v. McConnell*, 201 F. Supp. 2d 618, 626 (D.S.C. 2002), *opinion clarified* (Apr. 18, 2002) ("The primary responsibility for drafting and implementing a redistricting plan in South Carolina always rests with the South Carolina General Assembly, subject to the approval of the Governor.") (citing S.C. Const. art. III, § 3); *League of Women Voters of Michigan v. Benson*, No. 2:17-CV-14148, 2019 WL 8106156, at *2 (E.D. Mich. Feb. 1, 2019) ("In *Lawyer*, the Florida Senate and the Florida House *explicitly consented* to the relief contained in the consent decree. The Supreme Court emphasized the vital importance of the Florida legislature's support of the consent decree in its decision; it considered the legislature's approval of the consent decree as an acknowledgement by the legislature that it wanted the federal court, not the legislature, to remedy the challenged district."); *Id.* (rejecting proposed settlement in reapportion case because

intervenors, including Michigan Senate, opposed); *Fouts v. Harris*, 88 F. Supp. 2d 1351, 1353 (S.D. Fla. 1999), *aff'd sub nom. Chandler v. Harris*, 529 U.S. 1084, 120 S. Ct. 1716, 146 L. Ed. 2d 639 (2000) (rejecting proposed redistricting settlement where Governor, Speaker of the House, and Secretary of State opposed); *Id.* (rejecting plaintiffs' argument that *Lawyer* "supports the[] position that all parties need not agree to the settlement" and finding, to the contrary, that "*Lawyer* involves a narrow exception . . . reaffirm[ing] the general rule that a settlement agreement cannot be used to vitiate the rights of dissenting parties").

Mindful that *Lawyer* does establish precedent for permitting parties to settle redistricting claims where the parties can demonstrate the necessary authority, the Court would remind the House Defendants and Plaintiffs of their evidentiary burden at a subsequent fairness hearing to show that the map in the proposed settlement is constitutional. This would require a showing that the proposed plan does not subordinate traditional districting principles to race. *See Lawyer*, 521 U.S. at 580-82. And, should the record reflect the contrary, the House Defendants would need to show that the proposed plan is "narrowly tailored to serve a compelling governmental interest." *Cooper v. Harris*, 137 S. Ct. 1455, 1463-64, 197 L.Ed.2d 837 (2017).

Finally, the House Defendants and Plaintiff cite numerous cases for the general proposition that the Panel may enter a consent decree in the redistricting context. (Dkt. No. 234 at 7); (Dkt. No. 235 at 3-4). The referenced authorities, however, are often inapposite, involving defendant entities not subject to the comity or procedural considerations present in state-wide redistricting challenges. *See, e.g.*, *Kimble v. County of Niagara*, 826 F. Supp. 664, 666 (W.D.N.Y. 1993) (challenging county legislature's districting plan); *Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh, Pa.*, 727 F. Supp. 969 (W.D. Pa.1989), *aff'd in part and reversed in part*, 964 F.2d 244 (3rd Cir. 1992) (challenging method of electing members to city council).

4

5

For the reasons stated above, the Court **DENIES** the parties' motions for approval of settlement (Dkt. Nos. 234 and 235). Accordingly, though the Panel will conduct a status conference on Tuesday April 26, 2022 at 1:00 p.m., it will not hear arguments regarding the authority of the House Defendants and Plaintiff to settle their claims at that time. The trial, previously noticed to commence on May 16, 2022, will proceed as scheduled.

**AND IT IS SO ORDERED.**

United States Circuit Judge

United States District Judge

United States District Judge

April 25, 2022
Charleston, South Carolina