IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRCIT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| The South Carolina State Conference of the NAACP, and Taiwan Scott, *on behalf of himself and all other similarly situated persons*,<br><br>Plaintiffs,<br><br>v.<br><br>Thomas C. Alexander, *in his official capacity as President of the Senate Judiciary Committee;* James H. Lucas, *in his official capacity as Speaker of the House of Representatives*; Chris Murphy, *in his official capacity as Chairman of the House of Representatives Judiciary Committee*; Wallace H. Jordan, *in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee*; Howard Knabb, *in his official capacity as interim Executive Director of the South Carolina State Election Commission*; John Wells, *Chair*, Joanne Day, Clifford J. Elder, Linda McCall, and Scott Moseley, *in their official capacities as members of the South Carolina State Election Commission*,<br><br>Defendants. | C/A No.: 3:21-cv-03302-TJH-MBS-RMG<br><br>**ORDER** |

Before the Panel is the House Defendants' motion to compel. (Dkt. Nos. 157). Also before the Panel is Plaintiffs' motion to enforce the Court's February 10, 2022 Order and for *In Camera* Review. (Dkt. Nos. 198). In their respective motions, both sides challenge the adequacy of the opposing party's privilege log. Relevant here, the House Defendants also argue that Plaintiffs have waived any claim to attorney-client privilege in this matter. For the reasons stated below, and ruling only as to the privilege issues noted above, the Panel grants in part and denies in part the

1

House Defendants' motion to compel and grants in part and denies in part Plaintiffs' motion to enforce the Court's February 10, 2022 Order and for *In Camera* review.

## I. BACKGROUND

On February 12, 2022, Defendants James H. Lucas (in his official capacity as Speaker of the South Carolina House of Representatives), Chris Murphy (in his official capacity as Chairman of the South Carolina House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee) (collectively the "House Defendants") filed a motion to compel discovery. (Dkt. No. 157). Therein, *inter alia*, Defendants challenge the sufficiency of Plaintiff Taiwan Scott and Plaintiff The South Carolina State Conference of the NAACP's respective privilege logs and further argue that Plaintiffs have waived their claims to the attorney-client privilege in this matter. (*Id.* at 14-20); (Dkt. No. 201 at 7).

On March 23, 2022, Plaintiffs filed a motion to enforce the February 10, 2022 order and for *in camera* review. (Dkt. No. 198). Therein, *inter alia*, Plaintiffs challenge the adequacy of the House Defendants' privilege log. (*Id.* at 18-21). Plaintiffs ask that the Panel conduct an *in camera* review of all documents identified on the House Defendants' privilege log.

On April 12, 2022, the Panel conducted a telephonic hearing on the parties' respective motions to compel. (Dkt. No. 219).

On April 13, 2022, to document various rulings made during the hearing, the Panel issued an order which addressed, in part, the issues related to the parties' privilege logs. Specifically, the Panel found "[t]he privilege logs of the Plaintiffs and House Defendants provide insufficient information for the Panel to evaluate the merits of their privilege claims." (Dkt. No. 221 at 2). Accordingly, the Panel determined that *in camera* inspection of the documents on each party's

2

privilege log was necessary. (*Id.*). Because the "parties ha[d] advised the Panel that they wish[ed] to meet and confer once again regarding their privilege logs," the parties were ordered to deliver to the Court *in camera* all documents remaining on their privilege logs on or before April 15, 2022. (*Id.*).

On April 15, 2022, Plaintiffs and the House Defendants filed amended privilege logs. (Dkt. No. 223-1); (Dkt. No. 226-2). That same day, the parties provided to the Panel for *in camera* inspection all documents on their respective privilege logs.

## II.     LEGAL STANDARD

Parties to a civil litigation may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense" and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Courts broadly construe rules enabling discovery, but certain limits may be imposed. *See, e.g., Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The court "must limit the frequency or extent of discovery ... if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). "The scope and conduct of discovery are within the sound discretion of the district court." *Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995); *see also Carefirst of Md, Inc. v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 402 (4th Cir. 2003) ("Courts have broad discretion in [their] resolution of discovery problems arising in cases before [them]." (alternations in original and internal quotation marks omitted)).

If a party declines to answer an interrogatory or request for production, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R.

Civ. P. 37(a)(3)(B). The court will treat an "evasive or incomplete" discovery response as "a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Similarly, a party who has served a request for admission may move the court "to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served." Rule 36(a)(6). A document is under a party's possession, custody or control if the party has the "practical ability" or "legal right" to obtain the documents. *Wade v. Chase Bank USA, N.A.*, No. 2:12-cv-3565, 2013 WL 12154986, at *2 (D.S.C., Nov. 7, 2013) (surveying cases). The court may in its discretion "accept, at face value, a party's representation that it has fully produced all materials that are discoverable." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 637 (D. Minn. 2000).

### III.   DISCUSSION

#### A. Legal Standards—Attorney-Client Privilege and Work Product

The purpose of the attorney-client privilege is to "promote broader public interests in the observance of law and administration of justice ... [t]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *ePlus Inc. v. Lawson Software, Inc.,* 280 F.R.D. 247, 251 (E.D. Va. 2012) (quoting *Upjohn v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). As with all privileges, the attorney-client privilege is narrowly construed and only recognized "to the very limited extent that ... excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Rambus, Inc. v. Infineon Techs. Ag.*, 220 F.R.D. 264, 271 (E.D. Va. 2004) (quoting *Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir.1998)). The Fourth Circuit applies the "classic test" for determining the existence of the attorney-client privilege:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a

> member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones,* 696 F.2d 1069, 1072 (4th Cir.1982). The attorney-client privilege does not, however, "apply to the situation where it is the ... understanding of the client that the communication is to be made known to others." *See F.T.C. v. Reckitt Benckiser Pharm., Inc.,* No. 3:14MC5, 2015 WL 1062062, at *3 (E.D. Va. 2015) (citing *In re Grand Jury Proceedings,* 727 F.2d 1352, 1356 (4th Cir. 1984)). If the individual or entity requesting legal information had no expectation of confidentiality at the time of the communication, then that person cannot later seek to shield that information simply because it was regarding a legal issue.

The work-product doctrine protects an attorney's work done in anticipation of litigation. *Solis v. Food Employers Labor Relations Ass'n*, 644 F.3d 221, 231 (4th Cir. 2011). The doctrine is based on the principle that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Work product can be fact work product or opinion work product. *In re Allen*, 106 F.3d 582, 607 (4th Cir. 1997). Fact work product consists of materials prepared by an attorney that do not contain the fruit of his mental processes, while opinion work product contains an attorney's mental impressions, conclusions, opinions, or legal theories. *In re Grand Jury Proceedings # 5*, 401 F.3d 247, 250 (4th Cir. 2005). Fact work product is entitled to qualified immunity and "is discoverable upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *Allen*, 106 F.3d at 607 (internal quotation marks omitted). Opinion work product,

5

however, "can be discovered only in very rare and extraordinary circumstances." *Id.* The party invoking the protection of the work-product doctrine bears the burden of demonstrating its applicability. *Solis*, 644 F.3d at 232.

### B. Plaintiffs Have Not Waived the Attorney-Client Privilege

In their motion to compel, Defendants argue that Plaintiffs have waived the attorney-client privilege as to this case. Defendants argue that Ex. I, (Dkt. No. 157-9), constitutes a "blatant waiver of attorney/client privilege and necessitates significant supplementation by Plaintiffs of all discovery responses in this case." (Dkt. No. 157 at 16-17). Exhibit I are "Reapportionment Committee Meeting Minutes" from June 21, 2021. Defendants argue the release of these "meeting minutes reflect legal advice regarding redistricting challenges and strategies provided in the presence of third parties" such that Plaintiff has waived the attorney/client privilege in this redistricting litigation. (*Id.* at 17).

Exhibit I, (Dkt. No. 157-9), contains the SC State Conference NAACP's "Reapportionment Committee Meeting Minutes" from June 21, 2021. Meeting attendees including individuals from Plaintiff the South Carolina State Conference of the NAACP, and attendees from nonparties the NAACP Legal Defense and Education Fund, the ACLU, the SC AFL-CIO, the League of Women Voters-SC, and the Upstate Action Alliance. (*Id.* at 5).

The "Overview" section of the document describes the subject matter of the meeting—namely high-level strategy for redistricting. *See, e.g.*, (*id.* at 2) ("Attorney Cepeda [ACLU] stated their desire is to ensure that SC maps that come out of this cycle are as fair and equitable as possible. SC [BVAP] is 26.6% voting population. It is desired for representation to be proportional to the 26.6%. The current representational gap is 12%."); (*Id.*) (noting Attorney Aden [NAACP Legal Defense and Educational Fund, Inc.] stated that "following the 2010 Census the SC State

6

Conference and ACLU offered a Congressional Map that included 2 majority black districts and other proposal offered"); (*Id.* at 3) (noting Attorney Boykin [Co-Chair Reapportionment Committee] asked "would a second majority black district adversely impact the one we have and to what extent?"); *see also* (*id.*) (Attorney Boykin asking the group, "as a community-based organization how do . . . [we] better [] target our message, our people, our mobilization?").  At one point participants discuss creating a "public information campaign . . . around what we want to win." (*Id.*).  The participants further note that the data from the 2020 Census had not yet been released but should be "no later than the end of September" and that "[m]aps should be able to be shared by our next monthly meeting." *See* (*id.*).  The participants also discuss the "unpack[ing]" of Congressional District 6 to make surrounding districts (Congressional 1 & 7) more competitive. (*Id.*).  The parties then discuss making sure the organizations present were all "on the same page." (*Id.* at 4).

In opposition, Plaintiffs argue that the above minutes cannot constitute waiver because they do not contain privileged attorney-client communications.  (Dkt. No. 194 at 11).  Plaintiffs further state that although Defendants' motion cites "the Minutes, the Motion does not identify or cite ***any*** communications reflected in the Minutes as privileged." (*Id.*).  Plaintiffs also emphasize that the meeting minutes could not contain privileged communications regarding this redistricting litigation because, as of June 2021, the 2020 Census data had net yet been released, the Ad Hoc Committee had not yet adopted its guidelines and criteria for U.S. Congressional and state legislative redistricting, and Governor McMaster was over five months away from signing H. 4493 into law. *See also* (*id.* at 10-11).

In their reply, the House Defendants shift gears and argue that "Plaintiffs have *raised counsel's advice and conduct as support for its factual allegations*" in this case but that,

7

simultaneously, Plaintiffs "[are trying to] shield discovery of those facts using privilege." (Dkt. No. 201 at 7) (emphasis added). The House Defendants, however, do not provide citations showing *how* Plaintiffs are using counsel's "advice and conduct" as support for the "factual allegations" in this case.

The Court denies the House Defendants' motion on the above point. As Plaintiffs accurately note, the House Defendants' moving papers do not identify any privileged communications in Exhibit I. Simply put, the cases cited by both Plaintiffs and the House Defendants show that no privilege has been waived. For example, House Defendants cite *U.S. v. Jones*, 696 F.2d 1069 (4th Cir. 1982). In *Jones*, the court found that privilege was waived where defendants "included portions of their attorneys' letter opinions in brochures and other promotional printed material, which they distributed to third parties." *Id.* at 1071. Likewise, in *R.I. Seekonk Holdings, LLC v. McInerney*, No. CV 04-11682-NMG, 2007 WL 9797498, at *2 (D. Mass. Feb. 13, 2007), another case cited by House Defendants, the court held that the Town of Seekonk had waived privilege by releasing "executive session notes to the public" which "discussed the Town's litigation strategy regarding" a particular lawsuit. Further, in *Chinnici v. Cent. Dupage Hosp. Ass'n*, No. 89 C 07752, 1991 WL 127606, at *1 (N.D. Ill. July 10, 1991), the court ruled that certain documents were not protected by the privilege because the defendant had "voluntarily produced . . . minutes from a special condominium association meeting . . . disclos[ing] the advice of [their] attorney . . . concerning the applicability of the condominium declaration to restrict the practice of chiropractic." As made clear *supra*, no such scenario exits here because the minutes do not contain privileged information. *See also Sedillos v. Bd. of Educ. of Sch. Dist. No. 1 in City & Cty. of Denver*, 313 F. Supp. 2d 1091, 1093 (D. Colo. 2004) (privilege waived where defendant raised counsel's advice as a defense "while at the same time invoking the

8

attorney-client privilege to prevent the plaintiffs from exploring fully the substance and circumstances of that advice).

Further, to the extent the House Defendants argue that Plaintiffs have "raised counsel's advice and conduct as support for its factual allegations" in this litigation, Defendants fail to explain how this is in-fact true. The House Defendants do not cite any portion of the amended complaint to support this argument, rendering the case law cited by them inapposite. *See* (Dkt. No. 201 at 7); *Coleco Indus., Inc. v. Universal City Studios, Inc.*, 110 F.R.D. 688, 690 (S.D.N.Y. 1986) (work-product privilege waivable where "the party raises an issue which depends upon an evaluation of the legal theories, opinions and conclusions of counsel"); *Id.* at 691 ("Since the opinion of counsel raised a 'crucial issue' relevant to the defendant's good faith, the court held that it was essential to allow discovery of the prior work-product in order to afford plaintiff an opportunity to 'ascertain the basis and facts upon which the opinions' of counsel were based.").

Accordingly, the Court denies the House Defendants' motion to compel on the above point.

### C. Plaintiffs' Challenges to the House Defendants' Privilege Log

As noted *supra*, Plaintiffs challenge the adequacy of the House Defendants' privilege log. (Dkt. No. 198 at 18-21). The House Defendants' amended privilege log contains 15 entries. (Dkt. No. 223-1 at 2-3). The Panel has reviewed all 15 entries and finds as follows:

#### a. REL00011661, REL00011661.0003, REL00011670, and REL00011670.0001 Are Protected by the Attorney-Client Privilege and Work Product Doctrine

The Court has reviewed the noted documents. REL0011661 and REL0011670 are email correspondence between a staff attorney and a legislator. In both documents the staff attorney provides drafts letters to the legislator. REL00011661.0003 and REL00011670.0001 are attachments consisting of said drafts. The Court finds that the above four documents are protected

9

by the attorney-client privilege and work product doctrine. The emails contain attorney-client communications, and the draft documents are work product protected from disclosure. Accordingly, the House Defendants are not required to produce the above documents.

### b. REL00020087 Must Be Produced

This document is an email from Representative Beth Bernstein, member of the Ad Hoc Redistricting Committee, to Emma Dean, Chief Counsel to the House Judiciary Committee, asking as a "follow-up to the public hearing last week" for specific factual information, such as whether the "committee perform[ed] any racially polarized voting analysis when drawing the district." While Bernstein poses various factual questions, she does not ask Dean for legal advice or opinions. Accordingly, because there is no solicitation or giving of legal advice, the document is not protected and must be produced to Plaintiffs.

### c. REL00020355 Must Be Produced

This document is an email in which Dean sends Defendant Murphy a document for his review titled "Draft Map Room Procedures." Murphy responds that he "may want to make some changes" and directs Dean not to "send out until I authorize." Because Map Room Procedures are normal legislative business, and not legal in nature, the document is not protected by the attorney-client privilege or work product doctrine. *See Baldus v. Brennan*, No. 11-CV-1011 JPS-DPW, 2011 WL 6385645, at *2 (E.D. Wis. Dec. 20, 2011) (noting that "[m]aterials prepared in the ordinary course of a party's business,—here, the Legislature enacting laws—even if prepared at a time when litigation was reasonably anticipated, are not work product") (internal quotation marks omitted). Accordingly, the document is not protected by any privilege and must be produced to Plaintiffs.

### d. REL00028185, REL00028205, and REL00028206 Are Protected by the Attorney-Client Privilege and Work Product Doctrine

REL00028185 is an email from Patrick Dennis, General Counsel and Chief of Staff to the Speaker of the House, to Lucas. The email contains legal analysis related to *Sine Die* Adjournment. In REL00028205 and REL00028206, Dennis sends the same research to Representative Bill Taylor. The Court finds all three documents are protected from disclosure by the attorney-client privilege because they contain legal analysis and offer legal opinions. The House Defendants are therefore not required to produce said documents.

### e. REL00028277 and REL00028278 Must Be Produced

REL00028277 is an email from Dennis to Nicolette Walters, an individual who appears to be a Communications Director for Defendant Lucas, containing draft responses to inquiries from a journalist. The questions concern redistricting. In REL00028278, Dennis forwards his correspondence with Walters to Haley Mottel. The Court finds the documents are not protected by the attorney-client privilege or work product doctrine. Dennis' draft responses to a journalist's inquiries are political and not legal in nature. *See Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 348 (E.D. Va. 2015) (no work product protection for work produced "by an attorney . . . if it was created in the 'ordinary course of business.' Legislative counsel could not, for example, withhold documents pertaining to pending legislation on the basis of the work product doctrine because '[t]he [l]egislature could *always* have a reasonable belief that *any* of its enactments would result in litigation. That is the nature of the legislative process'") (first citation omitted, second citation quoting *Baldus*, 2011 WL 6385645, at *2). Accordingly, the House Defendants must produce both referenced documents.

### f. REL00028413 Must Be Produced

REL00028413 is an email chain. In the earlier email, Charles Reid, Clerk of the House, provides Dennis draft text for alerting House Members and Staff that a session will be called on

December 1, 2021 to complete the redistricting process. In the later email, Dennis approves the draft. The Court finds the document is not protected by any privilege because the document concerns legislative strategy. *See Bethune-Hill*, 114 F. Supp. 3d at 348. Accordingly, the House Defendants must produce the above document to Plaintiffs.

### g. REL00028439 and REL00028440 Must Be Produced

REL00028439 is an email from Ashely Harwell-Beach, Code Commissioner and Director, to Dennis and Reid asking if Harwell-Beach should set a "House Resolution setting the 2 redistricting bills for Special Order." Dennis responds, confirming that they will be looking at "special order." REL00028440 is a continuation of the email chain initiated in REL00028439 and discusses strategy as per procedural aspects of the special order. The Court finds that neither document is protected by any privilege given both correspondence concern legislative, not legal strategy and neither document seeks nor gives legal advice. Accordingly, the House Defendants must produce the above documents to Plaintiffs.

### h. REL00033189 is Protected by the Attorney-Client Privilege

REL00033189 is an email from Roland Franklin to Rep. Chip Huggins regarding legal research Franklin performed at Huggins' request. The document is protected by the attorney-client privilege because it concerns a request for legal advice. Accordingly, the House Defendants are not required to produce this document to Plaintiffs.

### D. House Defendants' Challenges to the Plaintiffs' Privilege Log

As noted *supra*, Defendants challenge the adequacy of the Plaintiffs' privilege log. (Dkt. No. 157 at 14-17).  The Plaintiffs' amended privilege log contains 23 entries.  (Dkt. No. 226-2).[1] The Panel has reviewed all 23 entries and finds as follows:

### a. KEY00000025 and KEY00000031.0001 Must Be Produced

KEY00000025 and KEY00000031.0001 are duplicate draft organizational descriptions of The South Carolina State Conference of the NAACP that describe the mission statement of the organization, discuss the organization's available resources to advocate for the South Carolina legislature to comply with the one-person one vote principle, and the number of branches and members of the organization.  The Court finds that Plaintiffs do not indicate these documents were prepared in anticipation of litigation, do not contain mental impressions of counsel related to the redistricting litigation, and state a general overview of the organization, its mission, allocation of resources, and membership. Accordingly, Plaintiffs are required to produce these documents.

### b. HC00000924 is Protected by Attorney-Client Privilege

HC00000924 is an email chain between Leah Aden, counsel for the NAACP Legal Defense and Educational Fund, to Brenda Murphy, President of The Carolina State Conference of the NAACP, Charles Boykin, Co-Chair Reapportionment Committee, and Edward Fenster, counsel for the NAACP.  The email copies several individuals with the ACLU and the SC Redistricting Team.  The subject line states "SC Redistricting-to dos-time sensitive."  On September 27, 2021 and October 1, 2021, Aden sent Murphy, Boykin, and Fenster emails regarding the feasibility of litigation surrounding South Carolina redistricting state maps and to identify prospective clients

---

[1] The documents Plaintiffs produced to the Court for *in camera* review are not bate-stamped.  The Court identifies Plaintiffs' documents by the "Control Number" associated with each document in the left column of Plaintiffs' amended privilege log.  (Dkt. No. 226-2).

who are members, registered voters, and reside in certain legislative districts. On December 17, Murphy forwarded the email chain to another individual with an SCNAACP email address.

Plaintiffs' counsel asserts that the document contains information protected by attorney-client privilege. (Dkt. No. 226-2 at 1). The Court finds that the document is protected by attorney-client privilege because it concerns and provides legal advice. Accordingly, Plaintiffs are not required to produce this document.

### c. KEY00000034.0006, KEY00000035.0006, KEY00000132.0007.0006, and KEY00000132.008.0006 Are Protected Work Product

KEY00000034.0006, KEY00000035.0006, KEY00000132.0007.0006, and KEY00000132.008.0006 are duplicate versions of talking points drafted by Elias on October 12, 2021. (Dkt. No. 226-1 at 2-3). Although the Plaintiffs label these documents as "Talking Points", the documents substantively discuss the redistricting litigation and contain the mental impressions of counsel. For example, the documents discuss the South Carolina legislature's failure to address congressional and state House legislative district maps that are disproportionate to their respective populations, and the impact this will have on South Carolina voters and communities. The Court finds these documents were drafted in anticipation of litigation, contain counsel's legal theories and mental impressions of the redistricting litigation, and are protected by the attorney-work product doctrine. Accordingly, Plaintiffs are not required to produce these documents.

### d. KEY00000038, KEY00000039, and KEY00000132.0001 Are Protected by Attorney-Client Privilege and Work Product

KEY00000038, KEY00000039, and KEY00000132.0001 are duplicate email chains between Leah Aden and Plaintiff Scott and Plaintiff Scott and his personal attorneys. (Dkt. No. 226-2 at 2). John Cusick, counsel for the NAACP Legal Defense and Educational Fund, is cc'd in some of the emails. Aden's October 9, 2021 email to Plaintiff Scott summarizes what Plaintiff Scott, Cusick, and Aden discussed to include information regarding the factual basis for the

14

redistricting litigation, the lawyers who will handle the case, and a draft portion of the complaint for Plaintiff Scott to review. On October 10, 2021, Plaintiff Scott forwarded this email chain to Rosa Raspaldo and Edward Pritchard, his personal attorneys with subject line "Federal Complaint Advice". Plaintiff Scott seeks legal advice from Pritchard and Raspaldo as to his involvement in the redistricting lawsuit. The Court finds the documents are protected by the attorney-client privilege because they concern legal advice between counsel and client, and client's request for legal advice. In addition, the Court finds the documents contain protected attorney-work product as they were drafted in anticipation of litigation, contain legal strategy, and counsel's mental impressions of the redistricting litigation. Accordingly, Plaintiffs are not required to produce these documents.

      e. **KEY00000065, KEY00000066, KEY00000134.0001, and KEY00000135.0001 Are Protected by Attorney-Client Privilege and Work Product**

KEY00000065, KEY00000066, KEY00000134.0001, and KEY00000135.0001 are duplicate emails sent from Leah Aden to Plaintiff Scott dated October 9, 2021. John Cusick is cc'd in the email thread. The emails summarize what Plaintiff Scott, Aden, and Cusick discussed to include information regarding the factual basis for the redistricting litigation and the lawyers who will handle the case. The Court finds that these documents are protected by the attorney-client privilege because they concern legal advice between counsel and client. In addition, the documents contain information protected by the attorney-work product doctrine as they were drafted in anticipation of litigation, contain legal strategy, and counsel's mental impressions of the redistricting litigation. Accordingly, Plaintiffs are not required to produce these documents.

      f. **KEY00000112, KEY00000113, KEY00000114, KEY00000115, KEY00000138.0017, KEY00000138.0018, KEY00000138.0019, and KEY00000138.0021 Are Protected by Attorney-Client Privilege and Work Product**

15

KEY00000112, KEY00000113, KEY00000114, KEY00000115, KEY00000138.0017, KEY00000138.0018, KEY00000138.0019, and KEY00000138.002 are duplicate emails between John Cusick, Leah Aden, and Plaintiff Scott between October 9 and October 12, 2021. The emails concern Plaintiff Scott's involvement in the redistricting litigation as a named Plaintiff. Plaintiff Scott seeks advice from Cusick and Aden regarding communications to his personal attorneys and his involvement in the redistricting litigation. Aden emails Plaintiff Scott regarding next steps in the redistricting litigation and attaches a non-time stamped copy of the complaint for Plaintiff Scott's review. The Court finds these documents contain information protected by the attorney-client privilege because they involve communications between counsel and the client where the client seeks legal advice. In addition, the Court finds the documents contain information protected by the attorney-work product doctrine because the documents were drafted in anticipation of litigation, contain legal strategy, and counsel's mental impressions of the redistricting litigation. Accordingly, Plaintiffs are not required to produce these documents.

### g.  KEY00000142.0014.0001 Must Be Produced

KEY00000142.0014.0001 is a Confidential Draft of Questions for S.C. House of Representatives dated August 2020. The document is a list of bullet points that pose a variety of questions for the legislature related to topics such as possible interference in South Carolina elections, gerrymandering, and health care issues. The Court finds that this document is not protected by the attorney-client privilege. The document contains a date of "8/20" which is prior to the release of the United States Census Data in 2021. Plaintiffs' amended privilege log does not indicate that the document was drafted in anticipation of litigation. (Dkt. No. 226-2 at 3). The document does not reference the redistricting litigation specifically and does not contain the mental impressions of counsel related to the redistricting litigation. Accordingly, Plaintiffs are required to produce the document.

## IV.    CONCLUSION

After careful consideration of the parties' briefing and the documents provided to the Panel for *in camera* review, the Panel **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion to enforce the Court's February 10, 2022 Order and for *In Camera* Review, (Dkt. No. 198), and **GRANTS IN PART** and **DENIES IN PART** the House Defendants' motion to compel as set forth herein, (Dkt. No. 157). The parties are each instructed to produce documents to opposing counsel consistent with this Order by 5:00 p.m. on April 29, 2022.

**AND IT IS SO ORDERED.**

*[signature]*

United States Circuit Judge

*[signature]*

United States District Judge

*[signature]*

United States District Judge

April 27, 2022
Charleston, South Carolina