# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>      Plaintiffs,<br><br>v.<br><br>THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,<br><br>      Defendants. | Civil Action No. 3:21-cv-03302-MBS-TJH-RMG<br><br><br>**MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY DEFENDANTS JAMES H. LUCAS, CHRIS MURPHY, AND WALLACE H. JORDAN** |

Defendants James H. Lucas (in his official capacity as Speaker of the South Carolina House of Representatives), Chris Murphy (in his official capacity as Chairman of the South Carolina House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee) (collectively, the "**House Defendants**"), by and through undersigned counsel and pursuant to Fed.

R. Civ. P. 26(c), hereby respectfully submit this Motion to Compel ("**Motion**") the production of documents responsive to their First Set of Requests for Production from Plaintiffs The South Carolina State Conference of the NAACP ("**SC NAACP**") and Taiwan Scott, on behalf of himself and all other similarly situated persons ("**Scott**") (collectively, "**Plaintiffs**").

## BACKGROUND

As fully set forth in the Relevant Factual Background of ECF No. 157, House Defendants' Motion to Compel Discovery, House Defendants served their First Requests for Production of Documents to Plaintiffs on January 19, 2022. Following extensive briefing and after a pause of litigation to allow the Parties an initial attempt at a mediated resolution, the Panel held a telephonic hearing on outstanding discovery motions on April 12, 2022. During that hearing, the Panel expressed the Court's views with regard to the view of the discovery disputes up to that date and explained that a subsequent order would issue addressing the then-pending motions. ECF No. 219. Thereafter, on April 26, 2022 the Panel held a status conference again inquiring into the status of discovery and the Parties were directed by the Panel to meet and confer as to remaining alleged discovery deficiencies, and, if unresolved, file any motions to compel by April 29, 2022. ECF No. 242. The Parties thereafter consulted on April 27 and 28, 2022, and while House Defendants were hopeful the Parties could work collaboratively to avoid the need for further contested motions, the Plaintiffs indicated earlier today that they would not accept House Defendant's efforts to reach a compromise on certain issues and they intended to file their own Motion to Compel. In addition, given the uncertainty that exists as to when and to what extent Plaintiffs would follow through on certain long-promised discovery deliverables, House Defendants are compelled to seek the relief of this Court within the ordered timeline.

## STANDARD OF REVIEW

A party is entitled to conduct discovery on "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Discovery, in other words, is not a one-way proposition. It is available in all types of cases at the behest of any party, individual or corporate, plaintiff or defendant." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). "The discovery process is subject to the overriding limitation of good faith. Callous disregard of discovery responsibilities cannot be condoned." *Asea, Inc. v. So. Pac. Transp. Co.*, 669 F.2d 1242, 1246 (9th Cir. 1981).

## ARGUMENT

**I.     PLAINTIFFS HAVE STILL FAILED TO PRODUCE RESPONSIVE DISCOVERY.**

   A.   <u>Despite assurances to the Court, Plaintiffs still have not collected or produced documents for applicable custodians shown to have relevant documents.</u>

Plaintiffs have been on notice for well over a month that their collection and production efforts have been deficient as to several email accounts that have been demonstrated to contain relevant, non-privileged communications. As House Defendants explicitly advised Plaintiffs on March 18, 2022 following one of a series of "meet and confer" discussions that:

> We **reiterate** our position that Plaintiff SC NAACP is required to produce relevant, responsive, non-privileged ESI that is in the possession, custody, or control of its Executive Leadership and/or Branch Presidents, including ESI that is maintained in these individuals' non-SC NAACP email accounts. These individuals should include, but not be limited to, the Co-Chairs of SC NAACP's Reapportionment Committee and the Branch Presidents for those areas contained within the Challenged Districts.

ECF No. 194-9 at 4-5 (emphasis added). Notably, this response of House Defendants was also following Plaintiffs' own recognition on March 15, 2022 of the deficiency concerns raised by House Defendants:

> Defendants have requested that SC NAACP produce documents from President Brenda Murphy's Gmail account. Plaintiffs have taken that request under advisement and will revert this week.
>
> Defendants also requested that SC NAACP produce documents for other individuals who served as committee chairs or otherwise appeared on the redistricting coalition minutes. We will revert, but our understanding has been that the only individuals whose email is contained in SC NAACP's systems are Ms. Murphy and certain administrative assistants.

*See id.* at 10. Still, in response to House Defendants' Motion to Compel challenging the sufficiency of Plaintiffs' custodial collections, Plaintiffs represented to the Panel, "Plaintiffs are investigating House Defendants' request" (ECF No. 194-14). Yet, no other custodial accounts have been produced.

Now, another six weeks has passed without Plaintiffs' compliance with their discovery obligations—and it was revealed during the deposition of Ms. Brenda Murphy (President, South State Conference of the NAACP), which was reconvened on April 14, 2022, that Plaintiffs are in possession of relevant, responsive discovery material—and they have failed to timely follow through on their discovery obligations.[1] During this deposition, President Murphy stated that (contrary to the representations made during earlier "meet and confer" discussions), she "***only*** use[d] brendacmurph@gmail.com for any business I transacted at home during COVID." **Exhibit A** (Excerpt of B. Murphy Depo. Tr., pp. 14-16) (emphasis added). In addition, President Murphy testified at her reconvened deposition on April 14, 2022 that her personal email account had been previously provided to her counsel and that her attorneys "searched the account" for responsive communications—yet no such communications have been produced as of this filing. *See id.* at 14. However, Plaintiff's counsel in the April 27, 2022 meet and confer stated they were not in

---

[1] On April 18, 2022, shortly following these depositions of President Murphy and before the status conference before this Panel, House Defendants sent a letter to all counsel of record detailing the discovery deficiencies noted herein. To date, House Defendants have not received any written response to that letter.

possession of President Murphy's email account and that they would produce relevant emails at an undetermined time.

In addition to President Murphy's primary email account, Plaintiffs have failed to produce responsive discovery information in the possession of Plaintiff SC NAACP's Executive Committee or Branch Presidents, including the Branch Presidents for those areas contained within Challenged Districts. To date, only two (2) PST files have been collected and produced by Plaintiff SC NAACP reflecting the SC NAACP email accounts of President Murphy and Office Manager (bmurphy@scnaacp.org and scofficemgr@scnaacp.org).[2] However, during President Murphy's reconvened deposition and the during the Rule 30(b)(6) deposition of her as the designated representative of the SC NAACP, a number of other decision makers who should be in possession of documents and information responsive to House Defendants' Requests for Production were identified. Indeed, President Murphy testified that the Executive Committee was responsible for decision-making for the SC NAACP, including reviewing and approving this lawsuit. **Exhibit B** at 40-41 (Excerpts of Rule 30(b)(6) Depo Tr.).

The Executive Committee consists of roughly 26 individuals according to President Murphy, yet Plaintiffs have only produced emails from the official account of one of those members: President Murphy. In addition, President Murphy identified several other employees including Amber Brooks, Laurie Gregory, Priscilla Smith, Shirley Able, Dr. Eloise Fomby-Denson, and Amelia Glisson who sent and received emails related to redistricting. *See* **Exhibit B** at pp. 12-17. While House Defendants have received a handful of emails with some of these individuals as a byproduct of emails collected from the above noted PST files and from a fulsome

---

[2] Plaintiff's counsel has represented that additional PST files including that of aglisson@scnaacp.org. However, the metadata for the productions received to date, only show the PST files of bmurphy@scnaacp.org and scofficemgr@scnaacp.org.

production from the League of Women Voters of South Carolina, a thorough and fulsome collection and production of these emails from each custodian has not occurred.[3] Moreover, as of the Parties' most recent conference, Plaintiffs have not identified a date by which such productions will be made nor have they identified exactly which email accounts will be produced. As such, House Defendants request that the emails of all employees and members of the Executive Committee and affected Branch Presidents be collected, searched, and produced as soon as possible. In particular, House Defendants have asked for Plaintiffs to collect and produce emails from Charles Boykin and Steve Love, the co-chairs of the Reapportionment Committee and members of the Executive Committee, in advance of their depositions, which are scheduled for May 3 and 4, 2022. Plaintiff's counsel represented in the April 27, 2022 meet and confer that certain Executive Committee members had consented to an email collection, but no date was given for the production of those documents.

    B. <u>Plaintiffs have failed to produce other relevant documents and information.</u>

Also disclosed by the testimony of President Murphy and is apparent by the other discovery that has been produced, Plaintiffs have failed to produce the other important discovery material relevant to the claims and defenses in this case, including but not limited to:

- Meeting minutes from several Reapportionment Committee Meetings including meetings on August 2, 2021, October 14, 2021, December 30, 2021, January 13, 2022, February 10, 2022, and February 17, 2022 for which agendas and/or videos have been produced;

- Video recordings of Reapportionment Committee Meetings in prior to August of 2021 and for those meetings in October and November of 2021 for which agendas and/or minutes have been produced;

---

[3] The productions also show that there are several other @scnaacp.org accounts including abrooks@scnaacp.org, psmith@scnaacp.org, and sable@scnaacp.org, as well as personal accounts such as stevelove1057@gmail.com, eloisefdenson@gmail.com, ekilgore@twc.net, cboykin@boykinlawsc.com, and ajbrooks@coastal.edu.

6

- Public testimony training materials including the attachments to SCNAACP_002583; and

- Video recording of the Annual Conference where redistricting training was given, a conference President Murphy testified was recorded.

Moreover, President Murphy testified to the existence and her receipt of at least one proposed map of the South Carolina House of Representative Districts drafted by ACLU demographers that was sent to her Gmail account and she forwarded to SC NAACP Branch Presidents prior to the version of the map submitted to the House Redistricting Website. **Exhibit B** at pp. 86-88. To date, House Defendants have not received *any* maps from the SC NAACP, much less any emails between President Murphy and the branch presidents particularly regarding proposed House District maps in party discovery. That such relevant information exists has been demonstrated by the only reasonably fulsome discovery production received by the House Defendants to date—that is by the League of Women Voters of South Carolina in response to a Rule 45 subpoena.[4]

The relevance and importance of the above material to the issues in dispute is demonstrated by the allegations in the Second Amended Complaint, including in the manner by which Plaintiffs directly assert the map submitted by Plaintiff SC NAACP is relevant and supportive of their constitutional challenges against House Defendants. Indeed, Plaintiffs assert this map submission was sufficient to put House Defendants on notice of certain issues raised in the lawsuit, and demonstrated a manner in which the Challenged Districts could be drawn to comply with federal law. These references to SC NAACP's map in the Second Amended Complaint (ECF No. 154)

---

[4] In contrast, the ACLU and NAACP LDF continue to refuse to produce *any* documents or information in their possession related to their very long involvement in South Carolina redistricting despite being in receipt of Rule 45 subpoenas since February 3, 2022. *See* **Exhibit C**, Ruoff Depo. Ex. 5, 2/4/2021 E-Mail ("…ACLUS's national folks want to prioritize work on South Carolina. They assume that they will be litigating racial gerrymanders when all is said and done.").

include:

- On October 8, 2021, Plaintiff South Carolina NAACP, along with other advocacy organizations, proposed two U.S. Congressional plans and a state House redistricting plan to the House Committee, along with a submission letter. These proposed plans corrected for population disparities between districts following the 2020 decennial Census and preserved majority-Black districts or otherwise developed districts that would have continued to be effective for Black voters (that is, enable them to elect candidates of their choice), among other considerations and requirements that complied with the House Redistricting Committee's criteria and the U.S. Constitution and other federal law. ECF No. 154 at 22; 31.

- [T]he map that Plaintiff South Carolina NAACP submitted on October 8, 2021 (below) keeps the Anderson community of interest largely whole, creating a single district which, based on an analysis of RPV patterns, provides that Black voters have a chance of electing or influencing the election of the candidate of their choice. By comparison, none of Districts 7, 8, 9, or 11 in Defendants' map has any realistic chance of doing so. ECF No. 154 at 51-52



- Defendants were on notice, via the map Plaintiffs submitted on October 8, that neighboring State House District 43 could have been drawn more compactly to include Chester County, the city of Chester, and potentially nearby Lancaster, to create a district in which Black voters would have greater influence. ECF No. 154 at 54.

- District 90 crosses county lines to pull in voters from the City of Orangeburg, which has a Black population of 76%, and pack the district at 56% BVAP. By contrast, for example, Plaintiffs' October 8 map demonstrates that District 90

>  can be drawn in such a way as to respect county lines and avoid extending upward into Orangeburg. Defendants increased District 93's BVAP an unusually high amount, from 43% to 51%, unnecessarily moving a large number of BVAP precincts into the area. By contrast, for example, Plaintiff South Carolina NAACP's October 8 map demonstrates that this district could easily be drawn in such a way as to avoid packing Black voters. ECF No. 154 at 68.

Clearly, Plaintiffs have failed to timely produce relevant and responsive discovery material in their possession, in stark contrast to the unreasonable positions they have taken with regard to their own right to expansive discovery, including privileged materials, from House Defendants. "The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case." *Town of Irmo, S.C.*, 2020 WL 1025686 at *2 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992)). House Defendants are entitled to conduct discovery into the averments of the Second Amended Complaint, and refusal of such discovery rights is reversible error. *Cf. Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 285 & n.9 (4th Cir. 2013) (reversing lower court summary judgment ruling in part of failure to allow government defendants to conduct discovery of plaintiff organization). Moreover, even should Plaintiffs continue to make nebulous assertions that they will "revert" to reviewing House Defendants' request for prompt production, responses merely offering "vague assurance that the requested documents will be produced 'in the future at a mutually agreeable time and place'" are insufficient and "assures continued wrangling" between the parties. *Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 655 (D. Md. 1997). The time has passed for Plaintiffs to comply with the discovery expectations of the Court, and an Order compelling performance should issue.

## **CONCLUSION**

Based on the foregoing, House Defendants are entitled to an Order directing Plaintiffs to produce all responsive documents in the possession, custody, or control of SC NAACP, including those categories and custodians identified herein, and for such other and further relief as deemed just and proper.

*[SIGNATURE PAGE FOLLOWS]*

Respectfully submitted,

/s/ *Michael A. Parente*
Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Erica H. Wells (Fed. ID No. 13206)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
EWells@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com

William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900
Greenville, SC 29601
Telephone: 864.370.2211
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com

April 29, 2022
Columbia, South Carolina

*Attorneys for James H. Lucas, Chris Murphy, and Wallace H. Jordan*

11