# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>       Plaintiffs,<br><br>    v.<br><br>THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,<br><br>       Defendants. | **Case No. 3-21-cv-03302-MBS-TJH-RMG**<br><br>**THREE-JUDGE PANEL**<br><br>**PLAINTIFFS' MOTION TO COMPEL PRODUCTION AND FOR FURTHER RELIEF** |

## INTRODUCTION

On April 13, 2022—just over a month before trial—deposition testimony revealed to Plaintiffs for the first time that House Defendants not only retained Nexsen Pruet in "spring or summer of 2021," **Exhibit A**, W. Jordan Dep. Tr. (Apr. 13, 2022) at 12:12-15, but that the House Redistricting Ad Hoc Committee relied on Nexsen Pruet attorneys and a still unidentified consultant retained through Nexsen Pruet during the 2021 map-drawing process, including to assist them with drawing proposed state House legislative maps, *id.* at 212:19-213:10.  House Defendants failed to disclose Nexsen Pruet or the consultant's involvement notwithstanding multiple discovery requests (separate interrogatories and document requests) that should have elicited that information, and failed to log any communications with either the firm or the consultant on any of their privilege logs.  In the past two days, House Defendants' counsel and witnesses have confirmed that Nexsen Pruet has worn multiple hats in this matter; in addition to providing legal advice, witnesses have confirmed that the firm played a role in mapmaking (its associates were trained on the mapmaking software used to draw the lines in H. 4493).  Defense counsel has also confirmed that there are hundreds of unproduced, unlogged communications with Nexsen Pruet dating back to early 2021.[1]

House Defendants failure to reveal Nexsen Pruet's role with regard to the challenged maps process violates the most fundamental Federal Rules of Civil Procedure governing discovery, and it has prejudiced and will continue to prejudice Plaintiffs.  Among other things, Plaintiffs have not had the opportunity to issue a subpoena to the consultant, or to examine witnesses with any Nexsen

---

[1] Pursuant to Local Rule 7.02, Plaintiffs state that the Parties, prior to this filing, met and conferred in good faith on April 27 and April 28.  The Parties were unable to resolve the issues raised in this motion.

Pruett communications that are not privileged. Plaintiffs therefore request that the Court order House Defendants to immediately: (1) supplement their interrogatory responses to account for Nexsen Pruet and the consultant's involvement; (2) produce all responsive, non-privileged correspondence with Nexsen Pruet; and (3) produce a log that accounts for all withheld responsive correspondence with Nexsen Pruet that House Defendants are withholding from production. Pending the production of a log, Plaintiffs will evaluate whether privilege claims appear to be validly asserted.

To be clear, this is not an effort to seek discovery from litigation counsel about their conduct of litigation; this is about Nexsen Pruet's substantive involvement in the origination, debate, and passage of the maps at issue in this litigation, including communications with legislators that likely bear directly on the questions of intent and racial predominance at the center of this case.

## **BACKGROUND**

### A. House Defendants Failed to Disclose—Through Discovery Responses and Otherwise—Nexsen Pruet's Substantive Role in the Mapdrawing Process Starting in June 2021

Plaintiffs filed their original complaint in this matter on October 12, 2021, ECF 1, and amended the complaint on December 23, 2021, ECF 84, and February 10, 2022, ECF 154.

On January 7, 2022 —almost four months ago—Plaintiffs served document requests and interrogatories on House Defendants relevant to Plaintiffs' intentional discrimination and racial gerrymandering claims. The Interrogatories requested basic information related to the process of drawing and adopting maps in H. 4493 designed to facilitate further discovery. For example, Plaintiffs' Interrogatory No. 8 sought "the name and, if known, the address and telephone number of each individual involved and their role in considering, creating, developing, drafting, and

proposing the maps adopted in H. 4493 and all Predecessor Maps." In response to this, House Defendants identified only the House Defendants and other legislators, and did not identify Nexsen Pruet personnel or any consultants. *See* ECF 119-2 (Responses and Objections to Plaintiffs' First Set of Interrogatories) at 10-11. Similarly, Plaintiffs' requests for production sought production requests included analysis, maps, memorandum, expert reports or analyses concerning the drawing of the districts adopted in H. 4493, Predecessor Maps, and redistricting in South Carolina, *see* **Exhibit B**, RFPs 1 and 3; documents and communications concerning the rationale(s) and purpose(s) behind the Challenged Districts and the Districts Bordering the Challenged Districts adopted in H. 4493 and any Predecessor Maps, *see* RFP 11; and redistricting-related documents and communications between House Defendants and other individuals, *see* RFP 18.

On January 24, 2022, House Defendants served responses to Plaintiffs' discovery requests. Nowhere did House Defendants disclose that Nexsen Pruet played any role in the redistricting and mapmaking process. Nor did House Defendants identify the mapdrawing consultant whom legislative leadership hired in June 2021 or earlier. *See* **Exhibit C** (June 29, 2021 email). On February 9, 2022, House Defendants served a privilege log, which they later amended several times, including on April 8 and April 15. None of the entries referenced Nexsen Pruet or the consultant.

      **B.**    **Although House Defendants Have Asserted Broad Privilege Claims, The Court Has Rejected Nearly All of Them**

On February 2, 2022, Plaintiffs filed their Motion to Compel Production of Documents and Information Requested from House Defendants. *See* ECF 119. The Motion was precipitated by House Defendants' broad invocation of the legislative privilege to prevent Plaintiffs from obtaining relevant material about Plaintiffs' allegations that House Defendants engaged in racial gerrymandering and intentional vote dilution of South Carolina's state house districts with the

4

passage of House Bill 4493 ("H. 4493"). *See id.* House Defendants opposed Plaintiffs' Motion and asserted privileged over "all documents, information, and communications exchanged throughout the entire redistricting process, from its inception to the adoption of H. 4493." ECF 153 at 4 (quoting ECF 119).

On February 10, 2022, the Court granted Plaintiffs' Motion to Compel, in part, holding that Plaintiffs were entitled to several categories of discovery, including "[a]ll documents which relate in any manner to the intent behind any proposed design and/or revision of the H. 4493 or any individual district referenced in Plaintiffs' Amended Complaint." *Id.* at 17. The Court ordered House Defendants to produce documents in all categories by 5:00 PM on February 14, 2022. *See id.* at 18.

On March 13, 2022, House Defendants served Plaintiffs an amended privilege log reflecting the withholding of 93 relevant documents on the basis of the attorney-client communication and work product doctrine privileges. None of the entries referenced Nexsen Pruet. On March 23, 2022, Plaintiffs filed their motion to enforce the Court's February 10, 2022 Order, arguing, in part, that the court should conduct an *in camera* review of the documents House Defendants were claiming privilege over because the House Defendants failed to demonstrate an entitlement to either the attorney client or work product privileges. *See* ECF 198 at 18-24. House Defendants filed their response in opposition on March 28, 2022, stating that they were "further refining" their privilege log. ECF 202 at 23. On April 8, 2022, in response to the Court's Text Order, ECF 215, House Defendants filed an amended privilege log where they downgraded 39 documents, ECF 216-1. And on April 15, 2022, House Defendants submitted to the Court a further amended privilege log that contained 15 entries. *See* ECF 244 at 9 (citing ECF 223-1, at 2-3). On April 27, 2022, the Court rejected 7 of the House Defendants' 15 privilege claims and ordered

5

those documents produced. *See* ECF 244, at 9-12. The Court rejected House Defendants' privilege assertions on multiple grounds, e.g., that withheld documents contained "no solicitation or giving of legal advice"; involved "normal legislative business"; were "political and not legal in nature"; or pertained to "legislative strategy." *See id.*

    **C.    Plaintiffs Did Not Learn of Nexsen Pruet's Role in Drawing the Challenged Maps Until April 13, 2022**

Plaintiffs first learned of Nexsen Pruet's involvement in the 2021 map-drawing process for the South Carolina House of Representatives legislative districts on April 13, 2022. Plaintiffs did not learn this from Nexsen Pruet attorneys themselves, despite countless formal and informal conversations stretching back to the fall of 2021. Rather, Plaintiffs learned this fact at the deposition of Defendant Jordan. Representative Jordan testified that the House Redistricting Ad Hoc Committee relied on Nexsen Pruet attorneys during the 2021 map-drawing process, including to assist them with assessing and analyzing proposed state House legislative maps. *See, e.g.*,

**Exhibit A**, Jordan Dep. at 212:19-213:10.[2] The same day, Representative Newton testified to the same effect.[3]

In an April 15, 2022 letter, Plaintiffs called attention to the April 13 testimony and House Defendants' failure to disclose Nexsen Pruet's substantive involvement in mapmaking. *See* **Exhibit E** (Pls.' Apr. 15, 2022 Ltr.). Plaintiffs asked House Defendants to supplement their discovery responses and privilege logs by 12:00 p.m. on Monday, April 18 to address any deficiencies and to ensure that those responses and privilege logs comply with the Court's orders in this case. *See id.* In an April 18, 2022 response, House Defendants declined to agree to amend or supplement their discovery responses or their privilege logs. *See* **Exhibit F** (Defs.' Apr. 18, 2022 Ltr.).

---

[2] *See also* Jordan Dep. at 75:9-17 ("Q. Who prepared the initial draft or proposed guidelines and criteria? A. That would have been counsel and consulting staff, I believe. Q. When you say counsel, who are you referring to? A. I believe -- this was one of the things that sort of everyone reviews. So, everyone from Dennis and Ms. Dean to Nexsen Pruet folk. I reviewed it. Lots of folks had a hand in it."); *id.* at 143:19-144:19 (Q. "Was anyone else outside of the Ad Hoc Committee involved in pulling together the initial plan working draft? . . . What about Nexsen Pruet? A. As counsel, legal counsel, they were really in and out of the entire process, so that's the easiest way to say that."); *id.* at 150:10-16 ("Q. Who within the Redistricting Committee was assessing whether a map complied with the Voting Rights Act? A. I would say we would chiefly rely on counsel for that. Q. That includes Nexsen Pruet? A. Yes."); *id.* at 169:1-10 ("Q. Were you at all briefed or did you have any understanding of whether Section 2 proposed any affirmative obligations on the Redistricting Committee? A. I have -- if I remember correctly, conversations related to that with counsel. Q. And that means Nexsen Pruet? A. Correct. Q. Mr. Dennis? A. I don't believe Mr. Dennis was in those conversations. I think that was primarily Nexsen Pruet."); *id.* at 182:21-183:3 ("Q. Who would have that information for who analyzed the seven plans? A. I'm guessing Nexsen Pruet would of probably had the summary of all that."); *id.* at 184:20-185:4 ("Q. Got it. So, I guess, if there were any analyses or written documents, where would those be stored or who would have access to them, on the comparison or the analysis of the seven publicly proposed maps? A. Either the House Judiciary or Nexsen Pruet, I think have assisted and, therefore, have the product.").

[3] **Exhibit D**, W. Newton Dep. Tr. (Apr. 13, 2022) at 58:11-59:13 ("Q. So you mentioned that staff and counsel would be in or around the map room. Who specifically are you referring to for staff? . . . And then Mark Moore or one or more of the outside counsel may have been in there.").

7

Plaintiffs met and conferred with House Defendants on April 27 and April 28. On April 27, counsel for House Defendants acknowledged for the first time that Nexsen Pruet did work on redistricting maps. Counsel further disclosed that Nexsen Pruet associates obtained technical expertise with the Maptitude software used to draw the maps in H. 4493. In subsequent communications, defense counsel has represented that they have identified over 800 email communications, dating back to early 2021

Although House Defendants have, since the meet and confer, agreed to provide a privilege log, they have not (i) committed to do so by a date certain, (ii) have proposed limiting the materials logged to their communications with the three named House Defendants (i.e., nothing with third parties or that might not otherwise be privileged), and (iii) have not agreed to produce any non-privileged communications, despite the panel's recent orders as guidance.

## **ARGUMENT**

House Defendants' failure to disclose Nexsen Pruet's substantive involvement in mapmaking and failure to produce documents or a privilege log reflecting documents withheld violates the Federal Rules of Civil Procedure's most basic rules of discovery. Federal Rule of Civil Procedure 26 provides the general rule regarding the scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06-CV-889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007). "Generally, the burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules." *Sky Angel U.S., LLC v.*

*Discovery Communications, LLC*, 28 F. Supp. 3d 465, 482 (D. Md. 2014), *aff'd*, 885 F.3d 271 (4th Cir. 2018). In particular, "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).

Federal Rule of Civil Procedure 37 permits parties to move for an order compelling discovery after the movant "has in good faith conferred or attempted to confer with the person or party failing to make . . . discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

House Defendants' failure to serve a privilege log that reflects communications with Nexsen Pruet and their refusal to produce non-privileged communications with Nexsen Pruet cannot be meaningfully justified under their discovery obligations. In their April 18 letter, House Defendants cited an agreement among counsel that emails between the parties and their counsel after the filing of the complaint on October 12, 2021 would not need to be logged individually. House Defendants' suggestion that such agreement excuses their failure to serve a privilege log or disclose the role of Nexsen Pruet is misplaced for multiple reasons.

First, such an agreement could not have been reasonably construed to excuse House Defendants from producing responsive, non-privileged documents reflecting their correspondence with Nexsen Pruet. Although House Defendants appear to be taking an overly expansive view that all correspondence involving Nexsen Pruet is privileged. This Court was twice rejected similarly broad invocations of privilege by defense counsel, and the latest one is simply not the law. *See,*

9

*e.g.*, *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501–02 (4th Cir. 2011) (outlining elements of attorney-client privilege); *In re Grand Jury Proceedings*, 102 F.3d 748, 750 (4th Cir. 1996) (enunciating the requirements for the attorney work product privilege). The privilege has to be established for each communication withheld, and communications in redistricting frequently involve communications with third parties that are not intended to be maintained in confidence. *See, e.g.*, *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 345-348 (E.D. Va. 2015). Here, it appears that there are non-privileged communications to produce. For example, Plaintiffs understand that Nexsen Pruet served as a conduit between legislative leadership and a mapdrawing consultant hired in June 2021 or earlier, *see* **Exhibit C** (June 29, 2021 email), but there has been no production of communications between Nexsen Pruet and the mapdrawing consultant. Similarly, defense counsel has acknowledged that Nexsen Pruet assisted with mapdrawing, including having its associates trained on the mapmaking software used to draw the maps; this is not an activity one would normally consider providing legal advice. The Court should not accept House Defendants' apparent position that all communications with Nexsen Pruet are privileged.[4]

Second, an agreement that emails between the parties and their counsel after the filing of the complaint on October 12, 2021 would not need to be logged individually has no bearing on emails dated prior to October 12, 2021. Deposition testimony has revealed that the House Defendants retained Nexsen Pruet months before then, in early 2021. *See, e.g.*, **Exhibit A**, Jordan Dep. at 212:19-213:10. Accordingly, House Defendants' failure to log communications prior to

---

[4] Relatedly, although counsel for House Defendants also have asserted that the House Defendants do not intend to rely on an advice of counsel defense, *see, e.g.*, **Exhibit F** (Defs.' Apr. 18, 2022 Ltr.), that does not resolve the issue, as Plaintiffs are entitled to production of responsive, non-privileged communications.

October 12, 2021 is completely inexplicable.  And defense counsel has represented that there are hundreds of relevant communications before this date

Third, and perhaps most importantly, at the time of the parties' agreement, House Defendants had not disclosed to Plaintiffs Nexsen Pruet's substantive involvement in the mapmaking process.  House Defendants' counsel cannot have reasonably believed that Plaintiffs would have agreed that House Defendants need not log emails that reflect Nexsen Pruet's substantive involvement in redistricting, as opposed to their litigation-specific communications.

As with their failure to produce correspondence from Defendants and members of the Ad Hoc Committee from non-governmental email accounts, House Defendants' failure to disclose Nexsen Pruet's substantive involvement in mapmaking up to the eve of trial has prejudiced and continues to prejudice Plaintiffs.  For example, Plaintiffs have had no opportunity to subpoena documents from or depose the mapmaking consultant retained through the Nexsen Pruet firm to determine what directions they were provided.  Plaintiffs did not have non-privileged communications from Nexsen Pruet for the depositions of five legislators and their staff, including Defendant Jordan, that have taken place to date.  It prejudices Plaintiffs' ability to schedule and prepare for next week's depositions, which include Speaker Lucas and Chairman Murphy, as well as their key staff.  Plaintiffs have not had the opportunity to evaluate, let alone challenge, House Defendants' assertions of privilege concerning Nexsen Pruet's non-legal role advising on mapmaking. And all of this has interfered with discovery and with trial preparation; Plaintiffs had to prepare and serve their Local Rule 26.07 exhibit list last evening without having the opportunity to identify trial exhibits concerning  Nexsen Pruet's role.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order House Defendants to immediately: (1) supplement their interrogatory responses to account for Nexsen Pruet and the consultant; (2) produce all responsive, non-privileged correspondence with Nexsen Pruet; and (3) produce a log that accounts for all withheld responsive correspondence with Nexsen Pruet.

| | |
|---|---|
| Dated: April 29, 2022 | Respectfully submitted, |
| | |
| Leah C. Aden** | /s/ Allen Chaney |
| Stuart Naifeh** | Allen Chaney, Fed. ID 13181 |
| Raymond Audain** | AMERICAN CIVIL LIBERTIES UNION |
| John S. Cusick** | OF SOUTH CAROLINA |
| NAACP LEGAL DEFENSE & | P.O. Box 1668 |
| EDUCATIONAL FUND, INC. | Columbia, SC 29202 |
| 40 Rector St, 5th Fl. | Tel.: (843) 282-7953 |
| NY, NY 10006 | Fax: (843) 720-1428 |
| Tel.: (212) 965-7715 | achaney@aclusc.org |
| laden@naacpldf.org | |
| | Christopher J. Bryant, Fed. ID 12538 |
| Antonio L. Ingram II** | BOROUGHS BRYANT, LLC |
| NAACP LEGAL DEFENSE & | 1122 Lady St., Ste. 208 |
| EDUCATIONAL FUND, INC. | Columbia, SC 29201 |
| 700 14th St, Ste. 600 | Tel.: (843) 779-5444 |
| Washington, D.C. 20005 | chris@boroughsbryant.com |
| Tel.: (202) 682-1300 | |
| aingram@naacpldf.org | Somil B. Trivedi** |
| | Patricia Yan** |
| Adriel I. Cepeda Derieux** | AMERICAN CIVIL LIBERTIES UNION |
| Samantha Osaki** | FOUNDATION |
| AMERICAN CIVIL LIBERTIES UNION | 915 15th St., NW |
| FOUNDATION | Washington, DC 20005 |
| 125 Broad Street, 18th Floor | Tel.: (202) 457-0800 |
| New York, NY 10004 | strivedi@aclu.org |
| Tel.: (212) 549-2500 | |
| acepedaderieux@aclu.org | Jeffrey A. Fuisz** |
| | Paula Ramer** |
| John A. Freedman** | ARNOLD & PORTER KAYE SCHOLER LLP |
| Elisabeth S. Theodore* | 250 West 55th Street |
| Adam Pergament** | New York, NY 10019 |
| Gina M. Colarusso** | Tel: (212) 836-8000 |
| John M. Hindley** | jeffrey.fuisz@arnoldporter.com |
| ARNOLD & PORTER KAYE SCHOLER LLP | |
| 601 Massachusetts Ave., N.W. | Sarah Gryll** |
| Washington, D.C. 20001 | ARNOLD & PORTER KAYE SCHOLER LLP |
| Tel: (202) 942-5000 | 70 West Madison Street, Suite 4200 |
| john.freedman@arnoldporter.com | Chicago, IL 60602-4231 |
| | Tel: (312) 583-2300 |
| *Motion for admission Pro Hac Vice forthcoming* | sarah.gryll@arnoldporter.com |
| ** *Admitted Pro Hac Vice* | |

13

<div style="display: flex;">
<div>

Janette M. Louard*
Anthony P. Ashton*
Anna Kathryn Barnes*
NAACP OFFICE OF THE GENERAL
COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org

\* Motion for admission *Pro Hac Vice*
forthcoming
\*\* Admitted *Pro Hac Vice*

*Counsel for Plaintiff the South Carolina
Conference of the NAACP*

</div>
<div>

*Counsel for Plaintiffs the South Carolina
Conference of the NAACP and Taiwan Scott*

</div>
</div>

14

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2022, a true and correct copy of the foregoing was served on all counsel of record by electronic mail.

*/s/ Allen Chaney*
Allen Chaney