# Exhibit F

NEXSEN|PRUET

**Mark C. Moore**
Member

April 18, 2022

**VIA ELECTRONIC MAIL**

Leah C. Aden
NAACP Legal Defense & Educational Fund, Inc.
40 Rector St., 5th Floor
New York, NY 10006
laden@naacpldf.org

> Re:   **Follow-Up Discussion Regarding Discovery in *S.C. State Conf. of the NAACP, et al. v. Alexander, et al.*, Case No.: 3:31-cv-03302-MBS-TJH-RMG (D.S.C.)**

Dear Ms. Aden:

Charleston

Charlotte

**Columbia**

Greensboro

Greenville

Hilton Head

Myrtle Beach

Raleigh

Thank you for your letter dated April 15, 2022 regarding a perceived discovery issue concerning Nexsen Pruet's "involvement" in the 2021 redistricting process for the South Carolina House of Representatives ("House"). Let me be clear at the outset—Nexsen Pruet did not draw the maps at issue and our involvement as outside legal counsel during the map drawing process has at all times been proper. Moreover, it has been (or should have been) well-known to you and your entire team for months. So, while we are willing to now work through these issues as best we can, Plaintiff's dilatory timing in raising this issue is directly attributable, in our view, to Plaintiffs' method of conducting discovery in this case—and also possibly due to miscommunications between and among Plaintiffs' large team of lawyers.

As Judge Gergel noted in last week's hearing, promptly taking depositions is a crucial part of obtaining discovery—and Plaintiffs waited to take their first depositions of potential fact (*i.e.* non-expert) witnesses until just last week—a week before discovery was set to close. Your letter's statement that Plaintiffs' team was "surprised" to learn that Nexsen Pruet may have advised and counseled the House Defendants during the map-drawing process is both peculiar and perplexing, as certainly Plaintiffs know that Nexsen Pruet has been involved in providing legal counsel to the Speaker of the House and others throughout the redistricting process. Indeed, one would clearly expect House members and staff to seek legal guidance through this process,

1230 Main Street
Suite 700 (29201)
PO BOX 2426
Columbia, SC 29202
www.nexsenpruet.com

**T** 803.540.2146
**F** 803.727.1458
**E** MMoore@nexsenpruet.com
Nexsen Pruet, LLC
**Attorneys and Counselors at Law**

**April 18, 2022**
Page 2

particularly given the letters you and your team sent to House leadership about your positions with respect to legal obligations attendant to the redistricting process —and then with Plaintiffs' premature filing of their initial complaint while the House was in the early stages of its process. Moreover, I and others on our team have had direct discussions with members of Plaintiffs' legal team about those letters and the staging of Nexsen Pruet's engagement as outside counsel during the redistricting process. In sum, Plaintiffs have been made aware – and at minimum all members of Plaintiffs' legal team should have known with reasonable inquiry – that Nexsen Pruet was involved in providing legal counsel to the House prior to and during the map-drawing process. Of course, providing legal advice and counsel does not equate to drawing, creating, or making decisions about the maps that were ultimately adopted by the House of Representatives. If some members of Plaintiffs' legal team had any potential concerns or questions about the scope or extent of Nexsen Pruet's involvement as outside counsel, a letter outlining those concerns should have issued months ago, not eight days before discovery was set to close.

Addressing your specific concerns about the House Defendants' responses to Interrogatories 1, 8, 9, and 15, the answers served set forth all of the applicable objections. Following the objections to scope and breadth (*i.e.*, overbroad, vague, confusing, compound, etc.), House Defendants specifically objected to these Interrogatories to the extent they sought information that was protected by applicable privileges, including the attorney-client privilege and the work-product doctrine. Plaintiffs' legal team never raised any concerns about those objections or sought any clarification on this issue during the multiple meet and confers on various discovery issues we have had since late January.

As to your point about alleged missing entries in our privilege logs, as we noted during last week's call with several members of Plaintiffs' team, counsel for all parties agreed that individual emails from outside counsel to their respective clients after the filing of the initial complaint on October 12, 2021 did not have to be logged, and we had discussed with Plaintiffs' counsel exchanging a summary log for e-mails prior to the date of filing. While some members on Plaintiffs' legal team may now feel differently about that agreement, it has been in effect for months. Nonetheless, we will work through those issues with your team if necessary as discussed below—although our concern about the failure to timely raise such a concern remains as outlined above.

With respect to your summary of the testimony given by Representatives Jordan and Newton during their depositions last week, we have yet to conduct any meaningful review of the transcripts from those depositions as we just received the rough transcript from Representative Jordan's deposition late this afternoon, and have not received the transcript from Representative Newton's deposition as of this writing—so we are not in a position to analyze that testimony today. That said, the House Defendants do not intend to rely on an advice of counsel defense, so outside counsel's legal advice to the

**April 18, 2022**
Page 3


House during the redistricting process is not relevant here This is particularly true when considering that any such communications with our client are protected by the attorney-client privilege, something your letter does not even acknowledge.

Lastly, it should be noted that when the House Defendants served subpoenas on the LDF and ACLU (addressed to the counsel that agreed to accept service), there were grave concerns raised by counsel for those entities that it appeared that House Defendants "were going after the lawyers." During the April 12, 2022 telephonic hearing, that specific issue was raised and Judge Gergel noted with respect to discovery generally that "going after somebody's attorney's privilege…is just the wrong way of going after it." Hearing Tr. 22:12-14. We must note that now, particularly given the positioning taken on discovery of legal advice and on the heels of Judge Gergel's admonition, we question why Plaintiffs are turning their attention to the lawyers for the House Defendants.

In sum, while we have conducted an initial review of our discovery responses and we do not currently believe they need to be amended or supplemented. However, House Defendants remain open to hearing from Plaintiffs further if this case does not resolve tomorrow. And if you are in possession of legal authority indicating: (1) that outside counsel in a redistricting matter must disclose their specific role in advising their client; and (2) that such information and communications are not otherwise privileged, please provide that authority to us immediately so that we may appropriately consider it.

While we have not agreed to amend or supplement House Defendants' discovery responses or privilege logs by the arbitrary deadline of 12:00 p.m. on April 18, 2022 set in your letter we did want to provide you with this response in advance of the settlement conference with Judge Baker. If we are unable to resolve this case during tomorrow's settlement conference, then we are open to discussing this issue further with Plaintiffs, as well as the issues raised in the separate letter regarding Plaintiffs' continued deficiencies with respect to their document collection efforts.

Sincerely,

Mark C. Moore

cc:    Jennifer Hollingsworth
       Andrew Mathias
       Konstantine Diamaduros
       John S. Cusick, NAACP LDF

**April 18, 2022**
Page 4


      Antonio Ingram, NAACP LDF
      Chris Bryant, Boroughs Bryant
      Allen Chaney, ACLU of South Carolina
      Somil Trivedi, ACLU
      John Freedman, Arnold & Porter