# Exhibit A

**(Transcript of April 12, 2022 Telephonic Motion Hearing)**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

SC STATE CONFERENCE OF THE    )
NAACP & TAIWAN SCOTT,         )
           Plaintiffs,        )     April 12, 2022
                              )
        -versus-              )     3:21-3302
                              )
THOMAS C. ALEXANDER, LUKE A.  )     Charleston, SC
RANKIN, JAMES H. LUCAS, CHRIS )
MURPHY, WALLACE H. JORDAN,    )
HOWARD KNAPP, JOHN WELLS,     )
JOANNE DAY, CLIFFORD J. ELDER, )
LINDA McCALL, SCOTT MOSELEY,  )
           Defendants.        )


TRANSCRIPT OF TELEPHONIC MOTION HEARING

BEFORE THE HONORABLE RICHARD M. GERGEL
UNITED STATES DISTRICT JUDGE
THE HONORABLE MARGARET B. SEYMOUR
SENIOR UNITED STATES DISTRICT JUDGE
THE HONORABLE TOBY J. HEYTENS
UNITED STATES APPELLATE JUDGE

A P P E A R A N C E S :

For the Plaintiffs:   CHRISTOPHER J. BRYANT, ESQ.
                      Buroughs Bryant LLC
                      1122 Lady Street, Suite 208
                      Columbia, SC 29201

                      JOHN M. HINDLEY, ESQ.
                      Arnold and Porter Kaye Scholer LLP
                      601 Massachusetts Avenue NW
                      Washington, DC 20001

                      JOHN CUSICK, ESQ.
                      NAACP Legal Defense and Educational
                          Fund Inc.
                      40th Rector Street, 5th Floor
                      New York, NY 10006

                      D. ALLEN CHANEY, JR., ESQ.
                      ACLU of South Carolina
                      1220 Laurens Road, Suite B
                      Greenville, SC 29607

```
                        ADRIEL I. CEPEDA DERIEUX, ESQ.
                        ACLU Foundation
                        125 Broad Street, 18th Floor
                        New York, NY 10004

                        SOMIL B. TRIVEDI, ESQ.
                        ACLU Foundation Inc.
                        915 15th Street NW
                        Washington DC 20005

For Defendants Alexander and Rankin:
                        ROBERT E. TYSON, JR., ESQ.
                        VORDMAN C. TRAYWICK, ESQ.
                        Robinson Gray Stepp and Laffitte LLC
                        1310 Gadsden Street
                        Columbia, SC 29201

                        JOHN M. GORE, ESQ.
                        Jones Day
                        51 Louisiana Avenue NW
                        Washington, DC 20001

For Defendants Lucas, Murphy and Jordan:
                        ANDREW A. MATHIAS, ESQ.
                        KONSTANTINE P. DIAMADUROS, ESQ.
                        Nexsen Pruet
                        PO Box 10648
                        Greenville, SC 29603

                        JENNIFER J. HOLLINGSWORTH, ESQ.
                        MARK C. MOORE, ESQ.
                        Nexsen Pruet
                        PO Box 2426
                        Columbia, SC 29202

For Defendants Knapp, Wells, Day, Elder, McCall & Moseley:
                        JANE W. TRINKLEY
                        Burr and Forman LLP
                        PO Box 11390
                        Columbia, SC 29211

                        THOMAS W. NICHOLSON, ESQ.
                        SC Department of Probation Parole
                            and Pardon
                        PO Box 207
                        Columbia, SC 29202
```

For Interested Party NAACP Legal Defense and Educational
Fund Inc.:

                          BESS J. DURANT, ESQ.
                          Sowell and DuRant LLC
                          1325 Park Street, Suite 100
                          Columbia, SC 29201

                          MATTHEW JONES, ESQ.
                          Willmer Cutler Pickering Hale
                            and Dorr LLP
                          1875 Pennsylvania Avenue NW
                          Washington, DC  20006

Court Reporter:        KAREN E. MARTIN, RMR, CRR
                        PO Box 835
                        Charleston, SC 29402

  Proceedings reported by stenographic court reporter.
  Transcript produced with computer-aided transcription
                    software.

4

```
1                    Tuesday, April 12, 2022
2           (Court was called to order at 3:01 PM)
3                JUDGE GERGEL:  This is Judge Gergel are my
4      colleagues on the line?
5                JUDGE HEYTENS:  This is Toby Heytens here as
6      well.
7                JUDGE GERGEL:  Judge Heytens sounds like we have
8      everyone on the line.
9                JUDGE HEYTENS:  This is Judge Heytens, Judge
10     Gergel and Judge Seymour are also on the line.
11               We are on the record in the case of South
12     Carolina State Conference of the NAACP vs. Alexander,
13     Civil Action No. 21-3302 to address the parties' various
14     motions to compel.
15               Could the counsel who will be speaking for the
16     plaintiffs please identify themselves for the record?
17               MR. HINDLEY:  Good afternoon, Your Honors.  This
18     is John Hindley of Arnold Porter on behalf of plaintiffs.
19               JUDGE HEYTENS:  Good afternoon.
20               And could counsel who will be speaking this
21     afternoon for the House Defendants please identify
22     themselves?
23               MS. HOLLINGSWORTH:  Good afternoon, Your Honor.
24     This is Jennifer Hollingsworth on behalf of the House
25     Defendants.
```

1          **JUDGE HEYTENS:**  Great.

2          Please make sure to identify yourselves every

3    time you speak to make things a little bit easier on the

4    court reporter.  And with that, I'm going to ask Judge

5    Gergel to address the issues on the motions to compel.

6          Judge Gergel?

7          **JUDGE GERGEL:**  Thank you, Judge Heytens.

8          Folks, first of all, thank you for your briefing

9    on these issues.  The panel has been through the various

10   briefs and we don't really need an argument-by-argument

11   objection because we have a good grasp of those.  But

12   there are areas of clarifications we need.  And I'm going

13   to raise questions, sort of have a list of questions that

14   I feel like we need a better understanding.

15         And let me just, first, in regard to the

16   defendant's motion to compel, that's Document No. 157,

17   there are a series of motions relating to the production

18   of issues concerning standing; and that is, whether the

19   plaintiff Conference of the NAACP has members in the

20   challenged districts.

21         Mr. Hindley, what have the plaintiffs actually

22   produced to defendants to establish standing?

23         **MR. HINDLEY:**  Thank you, Your Honor.  So the

24   issue of standing, as the Court made clear in its motion

25   to dismiss, we plan on a group of that upstanding at

1  trial.  But so far to date we have produced the deposition

2  of President Murphy, who testified and affirmed the

3  standing members in each challenged district.  And the

4  production we have made so far reveal emails and

5  communications that would also substantiate plaintiff's

6  standing.

7              JUDGE GERGEL:  Have you produced the names of

8  individuals who you claim reside in those districts?

9              MR. HINDLEY:  No, Your Honor.  And unless

10  ordered by the Court, we don't plan to.  Because we have

11  the First Amendment right not to produce member names.

12  And if need be, we can produce those names in camera.  But

13  at this time we have not produced the names of members in

14  each challenged district.

15              JUDGE GERGEL:  Well, let me just say this.  You

16  know, when you assert standing, I respect the issue of

17  privacy.  But there's got to be -- the defendants have a

18  right to be satisfied and not to be just told for the

19  first time at trial or to have some general certification.

20  So the question is, what can we do or what would be a

21  reasonable measure to protect the privacy of your members

22  but at the same time to demonstrate standing?  Would a

23  provision of names subject to a confidentiality order with

24  an attorneys' eyes only for attorneys be sufficient?

25              MR. HINDLEY:  Plaintiffs would be happy to

1   propose an affidavit on behalf of President Murphy.

2       JUDGE GERGEL:  With the names of the

3   individuals?  We don't need just a general certification.

4   We need names of people so that you can demonstrate you

5   actually have registered voters in the challenged

6   districts.

7       MR. HINDLEY:  We are open to an in camera

8   review.

9       JUDGE GERGEL:  I didn't ask in camera.  The

10  panel's not really set up to verify residence and

11  registration and all that.  And the defendants are

12  entitled to that.  I'm trying to find a balance.  The

13  panel is trying to find a balance between respecting the

14  privacy of membership, not interfering with association

15  rights, but at the same time for the plaintiff

16  organization to establish its standing.  So I'm asking you

17  again, would a statement -- would the provision of the

18  names for attorneys' eyes only, a confidentiality order,

19  address your concerns about privacy?

20      MR. HINDLEY:  Your Honor, unfortunately, I need

21  to defer to general counsel for the NAACP so that we can

22  have sign-off on whatever procedures we may have that

23  would allow the balance of equities to ensure that we

24  satisfy our standing requirements but ensure that --

25      JUDGE GERGEL:  Well, is your counsel on the

1    telephone?  I mean, we're here having an issue.  We're

2    trying to address the issue, Mr. Hindley.  I don't want to

3    give you a hard time.  This shouldn't be that hard.

4         **MR. HINDLEY:**  I think our counsel, Mr. Bryant,

5    will jump in and address your concerns, Your Honor.

6         **JUDGE GERGEL:**  Okay.

7         Mr. Bryant, you want to address this issue?

8         **MR. BRYANT:**  Yes, Judge Gergel.  Chris Bryant

9    for plaintiffs.  If the issue -- if it truly is -- so I

10   just -- setting the stage, we have -- it has been

11   represented to us that there may be a need to do some sort

12   of additional discovery or potentially subject potential

13   members or some set of members to fact depositions and

14   things of that nature.  Counsel for NAACP is going through

15   the process right now of identifying individuals in

16   each -- the process has been -- individuals have been

17   identified.  But the further processing, since it is our

18   understanding we have not received representations

19   otherwise, that individuals would be subject to not just

20   inquiries into their residences but also potentially

21   additional factual inquiries, looking for individuals who

22   are, frankly, willing to sit for depositions.  To the

23   extent that the only thing that the Court is -- to the

24   extent that the Court is requiring the production of at

25   least, you know, at least one member in each district and

1    information to enable the person to ascertain, you know,

2    whether that person is a voter, that is something that --

3    and again, as Mr. Hindley I think said, counsel for --

4    general counsel is not on the phone.  But to the extent

5    that that is the request, that is something that we can do

6    and will do and also recognize we have that need.  But to

7    the extent that it's individuals who will then be subject

8    to some other form of heightened, I guess, factual

9    inquiry, that is -- that -- we need to figure something

10    out for that.

11            JUDGE GERGEL:  Well, let's --

12            Ms. Hollingsworth, what are the defendants

13    seeking in standing beyond verifying that the organization

14    actually has a member in each challenged district?

15            MS. HOLLINGSWORTH:  Yes, Your Honor.  This is

16    Jennifer Hollingsworth.  Our position on standing is it

17    does go to the elements of standing, both that they have a

18    registered voter in each of the challenged districts that

19    have suffered the personal harms that underlie the

20    allegations of the complaint.  I don't believe there's

21    been any discussion that we would be taking full-fledged

22    discovery for all 29 of these individuals by any means.

23    But we certainly -- the threshold inquiry that we have yet

24    to have answered is are there registered voters, members

25    of the organization in each of these 29 districts that

1    have suffered the harms that are underlying the complaint?

2    **MR. BRYANT:** Judge Gergel, Chris Bryant for

3    plaintiffs. And I guess that is the -- this is sort of

4    the crux of the holdup and the dispute between the parties

5    on this issue. As Ms. Hollingsworth represented, she said

6    that the threshold inquiry is whether there were 29

7    individuals who lived in the district. And then the

8    important distinction is and suffered the individual

9    harms. It is plaintiff's -- underlying harms outlined in

10   the complaint.

11        It's plaintiff's position and understanding of

12   standing law in the area here that the simple fact of the

13   matter that an individual resides in the district and is a

14   registered voter would be sufficient to satisfy the

15   inquiry regarding standing. And that the sort of -- the

16   crux of the question is if each of these members are going

17   to be subject to fact discovery of some kind about the

18   impact of discrimination writ large and uninhabited --

19   onward from the requirements of the law, there's sort of a

20   heightened desire to protect --

21        **JUDGE GERGEL:** Why don't we do this. Why don't

22   we go ahead and identify individuals. And if the

23   defendants think there is a basis for organizational

24   standing beyond simply establishing members in each

25   district, we can brief that issue. But we need go ahead

1    and identify the registered voters that you claim are --

2    have standing in each of the districts.  And from that

3    point, we can then address the next issue if anymore is

4    necessary.  How long would it take you simply to produce

5    the names of individuals in the challenged districts?

6        **MR. BRYANT:**  Judge, this is Chris Bryant

7    speaking again on behalf of plaintiffs.  And I may rely on

8    my colleague, John Cusick, to correct me here.  I believe

9    that there are at least one or more individuals whose been

10   identified in each district.  And communications are

11   ongoing regarding whether they would be subject -- willing

12   to be subject to further communications.  So I would think

13   that -- today is Tuesday.  I would think it may not be a

14   24-hour thing.  It may be a 24-hour thing.  But it's one

15   of those things that the membership list is such that, you

16   know, even President Murphy does not have the entirety of

17   the membership list.  So 48 hours I would think would be

18   sufficient.

19       **JUDGE GERGEL:**  Ms. Hollingsworth, if you believe

20   that -- that the -- that you're entitled to do more for

21   organizational standing rather than just establishing

22   standing in the membership in the entity, I think you're

23   going to need to brief that issue.  Let the other side

24   quickly respond.  And then the Court will address it

25   whether any further discovery beyond that.  I, frankly,

don't know the answer to that question. Normally, just
simply establishing members in the district is normally
what's required. If there's something more, I think
you're going to need to establish that. I'm not saying
that's not correct.

So if you want to depose people beyond getting
the base information establishing that they are registered
voters, and I think they can establish that on documents,
I think you're going to need to move -- what kind of time
would you need to make a decision whether you're going to
move for the right to take their depositions to go beyond
the issue of their membership and their residence in the
challenged districts?

**MS. HOLLINGSWORTH:** Yes, Your Honor. This is
Jennifer Hollingsworth. That is perfectly acceptable to
us. And I would -- if we have -- we certainly would have
it within the next 48 hours. And today is April 12th. If
we could have at most three business days? So however
that may fall, we can get three days to look it over,
ascertain our position, and then we would present briefing
to the Court if we want to request any additional
discovery beyond the corroborating information of the
residencies and the voting standards, that they're
registered voters in these districts.

**JUDGE GERGEL:** And what I would want the

1    plaintiffs to do within -- and if y'all want to do it,

2    some of my complex litigation, we -- we get like a

3    letter -- a letter rather than a formal brief several

4    pages long laying out the position.  And we kind of

5    exchange letters as a way of not just burdening everybody.

6              So why don't we say that three days after the

7    plaintiffs provide the information, and they're going to

8    do it -- we're going to do it attorneys' eyes only,

9    Ms. Hollingsworth.  Do you have any objection to that,

10   confidentiality order, attorneys' eyes only?

11             **MS. HOLLINGSWORTH:**  I do not.  Yes, Your Honor,

12   understood.

13             **JUDGE GERGEL:**  Okay.  And then what we're going

14   to do is within three days after receipt, you're going to

15   advise the Court whether you seek to depose.  And you do

16   these letters, you file them.  We just don't need to be

17   burdening, everybody's got a lot of work to do in this

18   case.  And then three business days after, the plaintiff's

19   can reply.  And then we'll decide.  But we won't take

20   anybody's deposition.  But --

21             And let me give the plaintiffs a little

22   unsolicited advice.  If you've got more than one member,

23   don't pick just one member.  If you've got more, do a

24   couple.  Because there's always issues where you get

25   surprised, they don't live there, they're not registered,

1   whatever.  I'm thinking there's -- create for yourself a

2   little margin of error there, if it's not too burdensome,

3   as a way of -- I'm just trying to get beyond this issue,

4   folks.

5          Can the parties confer about a confidentiality

6   order with attorneys' eyes only?  And if there's a

7   problem, you can come back to us?

8          Mr. Bryant, can you do that?

9          **MR. BRYANT:**  Yes, we can.

10         **JUDGE GERGEL:**  Okay.  And I want to encourage

11  y'all, let's -- we're spending a lot of time on issues not

12  related to the really heartland of this case.  And if we

13  can move beyond all this, I really want to encourage you

14  to do it.

15         My panel, we don't know much about the facts of

16  this case.  We want to know more.  And we're spending a

17  lot of time on what I regard as kind of sideshow issues.

18  And I don't want to diminish the importance of some of

19  these issues, but they largely are not important.  And the

20  important issues we're really still left in the dark

21  about.  And that's where I want us to focus our attention

22  if we can.

23         Okay.  I think we've moved -- we've got

24  satisfaction on the issue of standing.  And hopefully,

25  within a week or so, we will have that issue behind us.

1    Let me move to the issue of attorney/client waiver of the

2    plaintiffs by this meeting of June 21st, 2021, of the

3    NAACP.

4           Ms. Hollingsworth, is it my understanding -- is

5    my understanding correct that this meeting occurred before

6    the census data was released?

7           MS. HOLLINGSWORTH:  Your Honor, this is Jennifer

8    Hollingsworth.  That document included with our motion was

9    an exemplar of a meeting.  What we have from discovery is

10   there was a number of meetings and there were very regular

11   meetings and videotapes of the meeting.  It was a

12   coalition led by the plaintiff association but that

13   involved a number of other associations, organizations,

14   and individuals interested in redistricting.  And these

15   were very regular meetings with a tone and tenor of

16   assessing, planning, preparing, and then pursuing

17   litigation both as to now --

18          JUDGE GERGEL:  Who is present at these -- let me

19   just say, I find the argument rather astounding, frankly.

20   And there's no precedent in any of the cases you cited for

21   it.  Who are these people at the meetings?  And first of

22   all, tell me who the meeting people are.

23          MS. HOLLINGSWORTH:  The meeting includes

24   organizations both the national level organizations, such

25   as the ACLU and NAACP; as well as South-Carolina-focused

1    organizations like the Progressive Network, League of

2    Women Voters; then individuals such as members of the

3    legislature, other elected officials.  Mayor Benjamin, for

4    example, frequented the meetings.  So it's a wide variety

5    of both individuals and organizations that --

6         JUDGE GERGEL:  This sounds like core First

7    Amendment.  You know, this is like really core First

8    Amendment.  Can you cite me any case in litigation,

9    anything like this where public discussion of issues that

10   are of public interest would constitute attorney/client

11   privilege?  Can you cite me any cases?

12        MS. HOLLINGSWORTH:  Your Honor, again, this is

13   Jennifer Hollingsworth.  Our issue here is it has to be

14   one or the other.  So the plaintiff's position is that

15   these statements and the discussion of legal strategy was

16   not privileged.  But then if that's the case, then either

17   representatives of these national organizations when we

18   sought to obtain discoverable information from these

19   organizations by way of subpoena, then we were told, no,

20   these are their attorneys.  You can't subpoena their

21   attorneys for information.  So we are in a position where

22   we're not able to access information at all.  So, again,

23   for example --

24        JUDGE GERGEL:  Why is it relevant?  Here's the

25   question, what is relevant -- what are you trying to get

1    here other than, frankly, just sort of giving the

2    plaintiff lawyers a hard time, going to war against the

3    lawyers, what is relevant about this?  This is what we're

4    all struggling with.  Why is this relevant?

5           MS. HOLLINGSWORTH:  Well, Your Honor, our

6    position would be that this discovery is relevant to being

7    able to ascertain the allegations being made in this

8    complaint.  The complaint is challenging these districts

9    that were drawn.  And we believe that there is evidence

10   and information even from these meeting minutes suggesting

11   that that wasn't necessarily a belief held by many people

12   that these lines were drawn in a way that was racially

13   discriminatory.

14          JUDGE GERGEL:  Well, you can take their

15   depositions.  The question is the idea that a group of

16   people aligned together in a legal case, these lawyers are

17   all combined together, they're lawyers of record, they're

18   having these public discussions on matters protected by

19   the First Amendment.  And I can't even figure what

20   about -- I mean, you've been spending a lot of time,

21   Ms. Hollingsworth, talking about the plaintiff's lawyers

22   and not about the plan.  If these lawyers, some of them

23   don't think there is -- I mean, I don't understand.  I

24   don't see the point.  The point is -- the case law tells

25   us we focus like laser beams on these plans.  That's what

1   we focus on.  And you're asking us to spend all this time

2   in which you're just basically arguing with the lawyers.

3       And let me say this, judges don't like this.

4   They don't like all this fussing about the lawyers.

5       And I'm straining to figure out what is relevant

6   about what you're trying to get?  Are you suggesting if a

7   Thurgood Marshall went to a meeting and spoke to a

8   community meeting that the lawyers of the other side of

9   the case can just take his file and look inside it?  Is

10  that really, really what you're arguing?

11      **MS. HOLLINGSWORTH:**  And Your Honor, the issue of

12  the specific meeting minutes was not -- that is not a

13  laser focused point of the motion.  What we are trying to

14  ascertain and understand is the scope and breadth of this

15  privilege that's being claimed.  Because when you review

16  --

17      **JUDGE GERGEL:**  You're trying to get -- what is

18  relevant you're trying to get?  What are you trying to get

19  at here?  We're spending a lot of time nitpicking people.

20  And I'm trying to figure out what's relevant about this to

21  this case?  It's not -- the rules aren't -- don't live in

22  abstraction.  They've got to be relevant to the case.

23  What is it you're trying to get from these meetings?

24      **MS. HOLLINGSWORTH:**  Well, Your Honor, so, for

25  example, a very important area of inquiry in our discovery

1   is understanding more about the maps that were drawn and

2   proposed by the plaintiff.  And actually, it was the

3   plaintiff and these other organizations, it was a

4   coalition of multiple organizations, only one of whom is

5   the plaintiff, the SC NAACP.

6          In the discovery responses, plaintiff has

7   refused to provide us any information about the maps that

8   they drew and the maps that they proposed.  So in the

9   complaint they describe to the Court that there's ways of

10  drawing the map that aren't impacted by these

11  considerations of race and that they did so and they

12  submitted it.  So we're trying to conduct discovery about

13  their maps and understand their maps, much like the way

14  that the maps that we've drawn are relevant to the

15  discussion --

16          **JUDGE GERGEL:**  But their maps aren't presented

17  to the Court -- now, if they present a map to the Court --

18  but you're spending all this time trying their maps.

19  Their maps aren't the subject of this litigation.  And can

20  you draw maps differently?  Sure.  We're not trying

21  everybody else's maps, Ms. Hollingsworth.  We're trying to

22  try the maps of the House plan, which may be perfectly

23  fine.  But you're spending all of your time on other

24  things.  And I'm just -- you know, and you want us to

25  chase the rabbit of some earlier drafted plan.  I don't

1    understand the relevance of it because they weren't

2    adopted by the House.  I mean, exactly what is the point?

3          MS. HOLLINGSWORTH:  Your Honor, to the extent

4    that there were maps or versions of maps drawn by the

5    plaintiffs, or whoever it was that drew the plaintiff's

6    maps, that are similar to the lines that are now being

7    challenged in this litigation, I would submit that's

8    highly relevant.  Because how could it be that when the

9    House drew a line that way that it was the outcome of

10    intentional racial discrimination, but if the plaintiffs,

11    SC NAACP, drew the line that way, it is not so?  So --

12          JUDGE GERGEL:  Well, that that -- you don't

13    have -- if you think those maps are relevant, that's one

14    issue.  But to say they have an unqualified waiver of a

15    privilege because they met together, I think you're going

16    to really run head on into the First Amendment here.

17          So the question is, if it's narrower than that,

18    let's talk about that issue.  But making a claim that you

19    just walk into their office and take their files because

20    they spoke at a meeting seems very unimpressive.  That's

21    an unimpressive argument.

22          Now, if you think some earlier plans are

23    potentially relevant to all of this -- and were they

24    publicly disclosed?

25          MS. HOLLINGSWORTH:  Yes, Your Honor.  What we

1    know --

2         JUDGE GERGEL:  Well, that's not subject to

3    privilege.  I mean, were they published this close at your

4    Ad Hoc Committee or in some other public way beyond just

5    the meeting -- these folks meeting together?

6         MS. HOLLINGSWORTH:  Yes, Your Honor.

7    Ultimately, there was -- the map was submitted to the Ad

8    Hoc Committee.  And then --

9         JUDGE GERGEL:  So that's not privileged.  You've

10   got the maps.  Why do we need to get into this head

11   banging about waiving privilege?  You've got the map.

12        MS. HOLLINGSWORTH:  I understand, Your Honor.

13   So what we were asking for in discovery is to be able to

14   ascertain individuals involved in drawing the maps, for

15   example, versions of the map, for example.  And in

16   response to all of those questions, we get a broad cloak

17   of privilege protection.

18        JUDGE GERGEL:  Well, you've got work product.

19   You've got people messing around with plans who are just

20   in their law offices and they're consultants doing it.

21   But if they presented it publicly, fair game.  Fair game.

22   Go for it.  But to sit there and, you know -- it just

23   seems to me y'all are really chasing rabbits that are

24   getting us away from the focus.  We want to focus on the

25   House plan.

1          And I started this conversation by saying we

2     don't have very much information.  We're spending a lot of

3     time on things very unrelated to the case at hand.  So if

4     they've made it public, you have a right -- if they

5     presented it -- do you have a copy of the map they

6     presented to the Ad Hoc Committee?

7          **MS. HOLLINGSWORTH:**  We have the version that was

8     ultimately submitted, yes.

9          **JUDGE GERGEL:**  Okay.  Well, then, there you go.

10    You've got it.  And you want to see -- if you want to

11    question could they have drawn it a different way, you

12    don't need to -- going after somebody's attorney's

13    privilege they met is just the wrong way of going after

14    this.  You know, it just doesn't make any sense to me.

15    So, you know, if it's publicly disclosed beyond meeting --

16    if you say a bunch of groups are working in coalition with

17    each other, they are all counsel of record here and

18    everything and they're meeting, we are not going to

19    have -- you're not going to say, okay, now the privilege

20    is waived.  If there's something they publicly presented,

21    you've got the map.  You've got it.  What else do you need

22    from -- you're trying to get from having them waive their

23    privilege?

24          **MS. HOLLINGSWORTH:**  And Your Honor, to be --

25    we're not trying to do some broad blanket waiver.  We've

23

1    been --

2        JUDGE GERGEL:  Well, that's what you presented,

3    Ms. Hollingsworth.  You presented a broad blanket waiver.

4    And I've been at the Bar 40 some odd years.  I've never

5    seen anything like this.  I've never seen such an

6    argument.

7        MS. HOLLINGSWORTH:  And Your Honor, we've

8    reviewed the discovery as it's been coming in and these

9    videos and meeting minutes.  We believe when there are

10   public presentations about the ways in which the strategy

11   can be pursued and which districts are being challenged

12   and why, and then back the underlying materials being

13   withheld now on the basis of privilege, we believe that

14   that is inconsistent with how you protect confidential

15   information.

16       JUDGE GERGEL:  You presented to us the minutes.

17   That's the forwarding your thing right now.  And you're

18   going to run flat into the First Amendment here.  And I

19   think it's a dead end for you.

20       I want you to be able to robustly defend your

21   plan.  But chasing -- this is just chasing rabbits.  It

22   really is.  And so, you know, what you've presented to us,

23   I just -- I don't see any legal basis to waive privilege.

24   And it would be unprecedented American law to do it in

25   litigation such as this.

1           Let me move on to the -- there were a series of

2       objections that defendants had.  The plaintiffs were

3       requested to provide information.  And they -- the answer

4       was, We're going to give you our expert reports.

5           I want to know from the plaintiffs, have you

6       actually given them the expert reports?

7           MR. HINDLEY:  Yes, the House Defendants have the

8       plaintiff's expert reports at this point.

9           JUDGE GERGEL:  Okay.  And on some of these,

10      like, they're asking on race predominance over traditional

11      districting principles, you said expert report.  Are you

12      intending to offer any evidence, Mr. Hindley, beyond the

13      expert report?

14          MR. HINDLEY:  Yes, Your Honor.  We hope that in

15      the case not only in addition to the expert reports, we'll

16      also provide hopefully communications that we will receive

17      from the House Defendants as part of the discovery

18      process.

19          JUDGE GERGEL:  Well, don't you need to answer

20      the discovery to say that?  I mean, the defendants need --

21      are entitled to notice.  Simply saying I'm going to give

22      you my expert report doesn't sound comprehensive to me if

23      you're planning to use other evidence.

24          MR. HINDLEY:  Your Honor, this is John Hindley

25      for plaintiffs.  I would ask -- during our meet and

1    confers, this wasn't an interrogatory that was discussed

2    during our meet and confers.  We're happy to meet and

3    confer with --

4        JUDGE GERGEL:  Well, no.  I mean, I'm just

5    saying these are the requests to produce.  They said give

6    us anything you've got on a variety of issues, 19 through

7    21, and 42, and y'all answered, Expert report.  Now, there

8    are cases where the only evidence in the case is really

9    going to come from an expert.  And I think giving the

10   expert report is just fine.  But if you're providing -- if

11   you're intending to use other evidence, you've got to

12   answer the request to produce with other documents that

13   you have that you intend to offer.  I mean, I think the

14   defendants are going to have a fair objection if you start

15   showing up with stuff and they'll say, Where the Bates

16   Stamp number?  I mean, y'all have got to produce it.  Do

17   you hear what I'm saying, Mr. Hindley?

18       MR. HINDLEY:  Yes, Your Honor.  This is John

19   Hindley for plaintiffs.  I think your point kind of hits

20   the nail on the coffin on our motion.  We have not

21   received documents or communications that would be

22   responsive to the interrogatories and in the end would

23   be --

24       JUDGE GERGEL:  No, no, no.  Don't give what

25   about.  I'm doing about theirs right now.  Don't give me

1    about what they haven't done for you.  They gave me that

2    same response.

3          I want to talk about your -- if you're -- I

4    think the plaintiffs need to go back.  And where you said

5    I'm giving you the expert report and that's basically all

6    you're giving, you're going to run into this problem at

7    trial of them objecting that they haven't received the

8    evidence and they have outstanding discovery requesting

9    it.  Do you hear what I'm saying?  You've got to --

10          MR. HINDLEY:  Yes, Your Honor.

11          JUDGE GERGEL:  They're entitled to having a full

12    discovery.  So I want y'all to go back over these and

13    supplement your responses on these things like race

14    predominance and racial polarized voting.  If you've got

15    other evidence, other documents, this is a request to

16    produce, you need to supplement.  And you need to do it

17    promptly.

18          I think there's a little coyness to some of

19    these plaintiff responses that aren't -- they are going to

20    bite you in the rear end at some point if you don't give

21    them the information.

22          MR. HINDLEY:  Yes, Your Honor.  We will -- we'll

23    review our responses and we'll present those to House

24    Defendants.

25          JUDGE GERGEL:  Okay.  There are also in requests

1    to produce 25 and 33, you said, Well, we -- the NAACP

2    already gave this to the Ad Hoc Committee on

3    Redistricting.  I think that's fine.  But if I were trying

4    your case, I would want to have a Bates Stamp on anything

5    I'm intending to offer.  And just because you gave it to

6    that committee, you don't want to dispute later on whether

7    you actually gave it or not.  I think you need to

8    supplement and produce the documents over again.  If they

9    get it twice, so be it.  But you've got a duty to make

10   sure they got the documents.  Okay?

11        **MR. HINDLEY:**  Yes, Your Honor.

12        **JUDGE GERGEL:**  Okay.

13        Let me turn to these requests to admit.  Folks,

14   a request to admit has a very limited purpose.  It is to

15   identify issues in which there's not really dispute and

16   which narrow the -- which narrow the issues in the case.

17   The requests to admit here are nothing -- are issues --

18   first of all, there are not enough facts in them.  So

19   we're asking the Court to evaluate whether -- whether

20   the -- a particular district race is a predominance.  And

21   we're supposed to deal with multiple factors.  And we

22   weigh them to determine whether race is or not a

23   predominant issue.  It's a multi-factorial issue.

24        Many of these requests to admit take one of

25   those factors and say is it possible that if -- you know,

1    is it possible that you could have a non-compact district

2    and still not have race?  Well, the answer is it depends.

3    It's not subject to a request to admit.

4            And I would say almost every request to admit

5    that's objected to is infected with that problem.  It

6    doesn't narrow the question.  It's a little bit of a

7    gotcha.  It's not enough information.  And in my view,

8    it's just a misuse of the requests to admit.

9            There's one case that talks about, you know, we

10   don't want to be unduly burdensome.  We don't want to go

11   to the heartland of cases, the information that's in

12   dispute.  That's all these requests to admit are.  And I

13   don't think it's a proper use of the requests to admit.

14           The key issue, does it help narrow the issues?

15   I can't see one of them that does.  And so, you know, I

16   think we need to move beyond that.  You've got other

17   methods of discovery that are more robust, more precise.

18   You can cross-examine these experts.  Just because it is

19   not compact, does it tell you -- you can ask all those

20   questions.  They are more appropriate for the examination

21   of experts than their requests to admit.

22           I'm going to tell you, you're kind of wearing us

23   out on all this.  It's not effective.  And, you know, I

24   think our view sort of is the requests to admit as

25   answered are fine.  There are better ways to get to this

1    information.  And the questions are just -- can't be

2    answered with a yes or no.  Too many of them have just

3    that very problem.

4            The plaintiff's privilege log.  I have a

5    communication from plaintiff's counsel they wanted for us

6    to examine it in camera.  Am I right about that?

7            **MR. HINDLEY:**  This is John Hindley for

8    plaintiff.  That is correct.

9            **JUDGE GERGEL:**  Okay.

10           Let me go back, Ms. Hollingsworth.  Exactly what

11   are you trying to get from these plaintiff's emails that

12   you're objecting to?  What do you think is in there that's

13   relevant to the case?

14           **MS. HOLLINGSWORTH:**  Well, Your Honor, this is

15   Jennifer Hollingsworth.  I'm not sure, Your Honor, because

16   I don't know what it is that was being discussed or

17   provided.  And when you look at the privilege log, it's

18   just exceedingly unclear how it's even privileged when it

19   includes people that aren't parties, it's documents from

20   many years ago.

21           **JUDGE GERGEL:**  Again, why is all this relevant?

22   I'm trying -- you know, y'all just like -- it's like

23   disembodied from the case.  Y'all are making all these

24   objections.  If it's relevant, fine.  But just because,

25   you know, you don't know what it is and you don't really

1    know why you want it doesn't -- I'm just struggling.  What

2    do you think is going to be in there that's relevant to

3    the case?

4            MS. HOLLINGSWORTH:  Your Honor, with respect,

5    the privilege log is created by the plaintiffs when

6    reviewing discovery.  They've compiled discovery that

7    presumably is responsive to what we've asked for.  And

8    then they put on the log because they believe it's

9    privileged.  I would submit the fact that it's even on the

10   log is the indication that it's necessary --

11           JUDGE GERGEL:  I think it's going to be very

12   obvious for all of these logs, we can't figure it out in

13   the abstraction.  So I'm just going to direct the

14   plaintiffs to produce their -- everything on their

15   privilege log in camera.  We'll do the same for the

16   defendants.  We can't figure it out.  There's just no way.

17   Y'all's descriptions are completely inadequate.  We can't

18   figure it out.

19           And I do -- I'm just trying to figure out what's

20   even relevant that the plaintiff's would know that's

21   particularly relevant to this case?  But whatever it is,

22   we'll look at it.  And if it's not privileged, we're going

23   to require it to be produced.  And if it's privileged,

24   we're going to protect it.

25           Let me now turn to the plaintiff's motion to

1    compel.  And there's much in doubt, Mr. Hindley, about --

2    first, about what you're seeking.  Is there a class or

3    group or pool of witnesses who you want their emails and

4    private communications?  Do we have an agreement who --

5    what that list is?  Who those people are?

6            MR. HINDLEY:  Yes, Your Honor.  This is John

7    Hindley for plaintiffs.  That would include the House

8    Defendants, the members and members of the Ad Hoc

9    Redistricting Committee.

10           JUDGE GERGEL:  Okay.  That's it?

11           MR. HINDLEY:  And key staffers who were involved

12   in drafting the maps as well.

13           JUDGE GERGEL:  Okay.  And who are they?  I can

14   identify the ad hoc.  I know who the House Defendants are.

15   Who are the key staffers?

16           MR. HINDLEY:  That would include Ms. Emma Dean,

17   Mr. Patrick Dennis.  That would include Mr. Thomas Hauger.

18           JUDGE GERGEL:  Anybody else?

19           MR. HINDLEY:  Your Honor, I do have a couple

20   additional names if that's okay with you.

21           JUDGE GERGEL:  Well, I just want them identified

22   because precision here is kind of important.  But y'all --

23           MR. HINDLEY:  Of course, Your Honor.

24           JUDGE GERGEL:  There's somebody else on your

25   team on the phone.  There's 20 some odd people.  Y'all

1    come up with that.  And then there is a question, first of

2    all, about the official email accounts of individual

3    legislators.  Have y'all worked that out, the members of

4    the Ad Hoc Committee?

5           **MR. HINDLEY:**  Yes, sir.  This is John Hindley

6    from plaintiffs.  I believe we have.  House Defendants

7    informed us that they received consent from the members of

8    the Ad Hoc Committee that there would be -- that counsel

9    asserts their legislative emails for relevant documents

10   communication.

11          **JUDGE GERGEL:**  Okay.  And then how about --

12   you've been wanting the private emails; that is, where

13   legislators were communicating on their private

14   communication devices, emails, texts, instant messaging,

15   whatever.  Have y'all worked out anything on that?

16          **MR. HINDLEY:**  No, Your Honor, we have not.

17          **JUDGE GERGEL:**  Okay.

18          Ms. Hollingsworth, to the extent there is

19   communications on private emails, why would the -- from

20   these legislators or their staffs, why would that not be

21   subject to discovery?

22          **MS. HOLLINGSWORTH:**  Well, thank you, Your Honor.

23   And this is Jennifer Hollingsworth.  Understanding that

24   before the Court is a motion to enforce the Court's order,

25   not a motion to compel.  I do want to make that point.

1    JUDGE GERGEL:  Let's not get too efficient about

2    this.  The order would cover that.  So let's just get

3    on -- you know, I am -- having been a former private

4    practitioner, I would not want anyone going through my law

5    firm's emails.  I'm very sympathetic to you on that.  The

6    question is isn't there a less intrusive way to identify

7    potentially relevant documents?  And if so, why wouldn't

8    that be required to be produced?

9        MS. HOLLINGSWORTH:  Understood, Your Honor.  And

10   I think I would certainly say that that's not at all been

11   even a possibility in the discussions with plaintiffs.  It

12   has been -- we've made it very clear, as the Court knows,

13   that requiring practicing lawyers --

14       JUDGE GERGEL:  That's off the table.  Don't even

15   waste your breath on that.  You sold me on that one.

16   Okay?  You're right.  But why couldn't they do this.  And

17   Judge Seymour had suggested this to the panel.  It's that

18   you would go to the identified group of people we were

19   talking about.  You would have them sign a -- they would

20   search their private communication devices, what they sent

21   and received.  And they would sign a certified statement

22   under oath under penalty of perjury that it had all the

23   reapportionment related communications.  They would do

24   their own search.  We would rely on their certification to

25   us.  Obviously, if later documents came forward that they

1   hadn't disclosed, we'd have to deal with that.  But

2   wouldn't that be a less intrusive way to have those

3   relevant documents produced?

4          **MS. HOLLINGSWORTH:**  Yes, Your Honor.  I would

5   want to ask the Court, though, in terms of this scope of

6   the individuals.  I mean, certainly understand we have

7   three named defendants that the staffers, we have searched

8   their work emails and these are employees, Ms. Dean,

9   Mr. Dennis and Mr. Hauger, and their emails have all been

10  produced.  So --

11         **JUDGE GERGEL:**  Including their -- I don't know,

12  were they doing any private communication?  I mean, I

13  haven't heard anything about that.

14         **MS. HOLLINGSWORTH:**  No, there's been nothing.

15  There's no indication -- there's nothing with personal

16  emails.  What we're dealing with are the legislators who

17  have their business emails that at times they've used to

18  receive information, at most just scheduling and

19  procedural issues.  But --

20         **JUDGE GERGEL:**  I'm -- that's why I started this.

21  I wanted to define who we're talking about.  We're talking

22  about the three named House party defendants and then the

23  Ad Hoc Committee.  That's a definable group.  And it seems

24  to me you could go to them and say, listen, we've got to

25  produce relevant documents relating to reapportionment

1    that you may have either received or transmitted on any of

2    your private communication devices.  And then you're going

3    to give that to us, the defense counsel.  And you're going

4    to sign a certification under oath for the Court.  I'll be

5    glad to attach it to an order that has the caption of the

6    case and I hereby certify under penalty of perjury this is

7    all I have.  And it seems to me that's a much less

8    intrusive, less troublesome way of producing the relevant

9    information without the party -- the third parties

10   rummaging through people's law firm accounts and so forth.

11        **MS. HOLLINGSWORTH:**  Yes, Your Honor.  I would

12   ask -- well, a couple of things in response.  One, is the

13   relevance as it's defined in the Court's order, which, of

14   course, is talking to, you know, evidence of intent and

15   evidence related to --

16        **JUDGE GERGEL:**  Well, listen, if it's related to

17   reapportionment, y'all have been producing communications

18   relating to reapportionment, I presume.  Just produce the

19   stuff.  I don't want to get into this nuance about, well,

20   does it reflect on intent?  We'll deal with that later.

21   What you don't think reflects on intent the plaintiff may

22   have a different view, Ms. Hollingsworth.

23        **MS. HOLLINGSWORTH:**  Absolutely.

24        **JUDGE GERGEL:**  So I don't want to get unduly --

25   I think it's just -- I haven't -- I'm not looking at their

1    interrogatories right now -- or requests to produce.  Go

2    look at them.  If it would include -- those requests

3    include information relevant to the reapportionment,

4    you've got to produce it, not start saying only as it

5    relates to intent.

6            MS. HOLLINGSWORTH:  Understood.

7            JUDGE GERGEL:  If you hear what I'm saying.  I'm

8    not looking at the -- I'm not trying to rewrite their

9    discovery.  Whatever their discovery says, you've got it.

10   You're telling me you've produced it from the legislative

11   official accounts.  Just go do the same thing for their

12   private accounts.  Whatever the --

13           MS. HOLLINGSWORTH:  Yes, Your Honor.  I do

14   have -- we did make it clear to the plaintiffs, although

15   we accommodated their earlier requests with the Ad Hoc

16   Committee members, those individuals are not parties.  And

17   we certainly can go and again ask their consent and ask

18   them to do this but --

19           JUDGE GERGEL:  I will -- if they don't want to

20   comply, we're not going to -- they're going to get

21   subpoenas.  This is potentially relevant information.

22   Let's get it over with so we can spend the time letting

23   y'all defend your plan, Ms. Hollingsworth.  All this sort

24   of obstruction, you know, it's not getting us anywhere.

25   We need to get on with whatever information they've got,

1    let's get it out there.  And then let's, you know, give

2    you guys a chance to defend your plan with the record.

3          MS. HOLLINGSWORTH:  Yes, Your Honor.  Again, I

4    hear Your Honor.  I don't think we've been obstructive.  I

5    think we've worked exceedingly hard and produced

6    everything that --

7          JUDGE GERGEL:  Y'all's response to our order was

8    excellent.  I mean, I've got to say, y'all really jumped

9    at it.  And we appreciate that.

10          But we've got to get on -- we've got to get

11    beyond this.  We've got to get the potential things in the

12    private accounts.  And then, you know, we'll -- and we'll

13    have a fuller record.  And if there's nothing to it, so be

14    it.  If there's something in there, fine.  You know, we

15    don't have any idea.  But, you know, I'm not looking at

16    their discovery and their interrogatories and requests to

17    produce.  Be guided by that and produce it.  If they've

18    asked for it, unless there's some reason to object, come

19    back to us.  But I think you need to go ahead and produce

20    the information.  You're telling me there's no -- race was

21    not a predominant thing.  That's your answer.  You believe

22    that.  This evidence shouldn't hurt you.

23          MS. HOLLINGSWORTH:  Yes, Your Honor.  I will say

24    to the -- to your point about being guided by their

25    discovery, I think, again, an issue that's just simply

1    never been addressed by plaintiffs is we did object on the

2    basis of breadth and scope.

3         **JUDGE GERGEL:**  Well, we don't have time for

4    this, frankly.  Just produce it.  This is major

5    litigation.  Breadth and scope is not going to be

6    particularly compelling for either side right now.  Y'all

7    need to produce it.  The problem is most of the relevant

8    knowledge your clients have, not the plaintiffs.  They

9    don't know much.  They're trying to discover it.  That's

10   what discovery is.  The defendants have most of the

11   relevant knowledge.  And objecting to scope and breadth on

12   a case like this is not going to be persuasive.  Just

13   produce it.  Let's get it over with.  Let's try the case

14   in May with a full record.

15        **MS. HOLLINGSWORTH:**  Yes, Your Honor.

16        **JUDGE GERGEL:**  Okay.  Now, let's turn to the

17   House --

18        **MR. HINDLEY:**  Your Honor, can I just --

19        **JUDGE GERGEL:**  Yes.

20        **MR. HINDLEY:**  Apologies.  I just want to make

21   one point before we move on --

22        **JUDGE GERGEL:**  Can you identify yourself for the

23   record, please?

24        **MR. HINDLEY:**  Oh, apologies.  This is John

25   Hindley on behalf of the plaintiff.  In response to

1    plaintiff's interrogatories, House Defendants identify a

2    number of relevant individuals.  We would hope the House

3    Defendants will search the personal emails of those

4    individuals that they have identified as relevant to the

5    redistricting process.

6              JUDGE GERGEL:  Well, who are -- that's what I

7    started off, Mr. Hindley.  I knew this was a little bit of

8    a cat and mouse thing here.  Who are these people?  You've

9    given me the three named defendants, the Ad Hoc Committee.

10   Is there anybody else?

11             MR. HINDLEY:  Well, in the broad response that

12   House Defendants that they also include Mr. Hauger,

13   Ms. Williamston, Mr. Degupe (phonetic) --

14             JUDGE GERGEL:  Who are these people?  We don't

15   know who these people are.

16             MR. HINDLEY:  These are staffers who work and

17   who were involved in drafting the House maps.  House

18   Defendants identified them as relevant individuals.  So I

19   assume as part of the -- that they know how involved they

20   were in the redistricting process.

21             JUDGE GERGEL:  Well, I mean, we're now talking

22   about getting their emails.  Are you saying these people's

23   emails have not been produced?  Have you asked for them?

24   I'm just confused.  I was focused in on the legislators.

25   These other people, the map makers, they don't have -- is

1    there a claim they have any kind of privilege?  I thought

2    we ordered they produce all the mapping information.

3         MR. HINDLEY:  They produced the maps and files

4    as of Friday.  But we don't have the communications and

5    their discussions on -- involving the redistricting

6    process.  And I just --

7         JUDGE GERGEL:  What does that mean?  I mean,

8    they have not produced the communications between these

9    mappers and third parties and the legislators?  Is that

10   what you're saying?

11        MR. HINDLEY:  Yes, Your Honor.  Because they

12   produced a lot of communications to and from legislators

13   but there's a lot of -- there's definitely communications

14   among staffers that we still do not have related to

15   redistricting.  And I would ask --

16        JUDGE GERGEL:  Give me an example of what you

17   think is missing.

18        MR. HINDLEY:  The Ms. Sarah Grace Williamson

19   they have identified as someone who was involved in the

20   redistricting process.  I have not seen any document

21   communication coming from her.

22        JUDGE GERGEL:  Is she a lawyer?  Mr. Hindley, is

23   she a lawyer?

24        MR. HINDLEY:  As far as they were employees in

25   the map room during the redistricting process.

41

1          JUDGE GERGEL:  Okay.  And have you noticed their

2    depositions?

3          MR. HINDLEY:  No, we have not, Your Honor.

4          JUDGE GERGEL:  Okay.  I mean, it seems to me

5    that to the extent you want their emails and they haven't

6    produced them, that seems to be pretty core material.  And

7    you could ask an -- and if there's a problem you could

8    move to compel if you've asked for that material.  If you

9    wanted you can take their deposition.  We've made it clear

10   you could depose these folks.  I know there was some

11   dispute about whether y'all had been given enough

12   information about when the maps were generated and who

13   produced them.  Have you gotten that -- have y'all

14   clarified that?

15         MR. HINDLEY:  No, Your Honor.  Just today we

16   still don't know who the map maker is.  And the

17   communications --

18         JUDGE GERGEL:  Well, the defendants say they've

19   given you the information.

20         Ms. Hollingsworth, what's the story on that?

21         MS. HOLLINGSWORTH:  Your Honor, Jennifer

22   Hollingsworth.  Quite frankly, it's just categorically

23   incorrect.  But all of the information from the map room

24   was provided to plaintiffs.  In that reply filing I think

25   last week was the first time we got any word that the data

1    that we produced pursuant to the Court's order on

2    February 15th that the ESI protocols that the plaintiffs

3    had in the Joint 26(f) Report had an impact on how that

4    data came across and they were unable to load it into the

5    Maptitude software.

6          JUDGE GERGEL:  Well, let me say, I get this

7    problem in my criminal cases all the time.  You know, the

8    Government will give evidence and the defense lawyers have

9    trouble downloading it and getting it.  And what the

10   lawyers do is they call each other and they help each

11   other to make sure -- I figured that was the explanation,

12   Ms. Hollingsworth.  When you said we've given it to them,

13   I believed you.  But they don't know it.  So rather than

14   do this roundabout with the panel, why don't y'all just

15   talk to each other and explain to them where it is.

16   Wouldn't that be the easier way to do it?

17         MS. HOLLINGSWORTH:  Your Honor, we gave it -- on

18   Friday we hand delivered a thumb drive and said didn't

19   know you had an issue.  Here you go.  We've done

20   everything that we can.  As soon as we found out there was

21   an issue, we gave it to them and wrapped it up, Your

22   Honor.  So it's been done.  If there are still issues,

23   we're happy to help these folks --

24         JUDGE GERGEL:  Ms. Hollingsworth, I don't think

25   you're trying to hide the ball.  I think -- Mr. Hindley,

1   you're hearing Ms. Hollingsworth.  Y'all call her up if

2   you've still got confusion and get it straight.  You know,

3   I just don't think this is something you need to be

4   bringing in front of the panel.  If you can't work it out,

5   let us know.  We will make sure.  But when

6   Ms. Hollingsworth said she gave it to y'all, it doesn't

7   mean y'all know she did.  It means you may not understand

8   how you got it.  Take a look at it.  And if it's not

9   worked out and she can't explain it to you, then come back

10  us to.  But we're trying to get beyond all this.

11          **MR. HINDLEY:**  Thank you, Your Honor.  This is

12  John Hindley from plaintiff.  We are in receipt of the

13  thumb drive and we've uploaded it on our end and had our

14  analysts look at it.  They're going to look at them.  But

15  at the same time our analysts on our side said that

16  there's no way of identifying who made these maps and when

17  they were created.  So we'd appreciate that information.

18          (Indiscernible crosstalk.)

19          **JUDGE GERGEL:**  Here's what I'll say.  I want

20  y'all to confer about it.  You may even get your tech

21  people and their tech people to talk to each other.  That

22  might be an amazing thing to do so they could explain it.

23  And it may be something that y'all -- I mean, listen, I'm

24  usually the victim of not knowing what I have in

25  technology.  So it may be there and y'all don't appreciate

1    it.  But work through this, folks.  They're telling me

2    they're not hiding it.  You're entitled to the

3    information.  Let's figure a way to get it.  Okay?

4            Let me turn to the House Defendants' privilege

5    log.  And I think I was just saying earlier, I don't know

6    any way to sort through -- they are fairly nuanced issues

7    about when lawyer staff members of legislators the matter

8    is subject to the attorney/client privilege and what is

9    not.  The information we have, we can't sort it out.  And

10   we're just going to have y'all, both sides just give us

11   your materials on your privilege log.  It's not something

12   we really want to do but we'll go through it.  And we'll

13   -- the things that don't appear privileged, we'll order

14   you to produce it.  And the things that appear privileged,

15   we will -- you know, we will protect it.

16           How long will it take, first of all, from the

17   plaintiffs, to get together your material on your

18   privilege log and submit it to the Court?

19           **MR. HINDLEY:**  Your Honor, I think we will be

20   able to submit that within 24 hours.

21           **JUDGE GERGEL:**  Okay.

22           How about the defendants?  How long on the

23   privilege log to submit it to the Court?

24           **MS. HOLLINGSWORTH:**  Your Honor, we would -- I

25   believe 24 hours should be fine.

1          JUDGE GERGEL:  Okay.  I want y'all to look

2    again, both of you, at what you claim to be privileged.

3    And if you on reflection don't think it is, go ahead and

4    produce it.  If it is privileged, submit it to us.  Okay?

5          MS. HOLLINGSWORTH:  Yes, Your Honor.  This is

6    Jennifer Hollingsworth.  I also think that there's --

7    there will be a range of documents that I would just

8    submit that there may be also a range of documents that we

9    may just agree with each other if we have the opportunity

10   to talk and would agree to things that may fall clearly

11   within the privilege and not --

12         JUDGE GERGEL:  Yeah, anyway, harmless, correct?

13   Without waiving the privilege.  Y'all want 48 hours then

14   so y'all can talk tomorrow about it?

15         MS. HOLLINGSWORTH:  Yes, Your Honor, if that's

16   okay with the Court.

17         JUDGE GERGEL:  That would be fine.  I'm really

18   trying to get y'all beyond all this so we can get on with

19   the merits.

20         I got this email yesterday about search terms.

21   And the -- Ms. Hollingsworth, what's your complaint about

22   the proposed search terms they want added?

23         MS. HOLLINGSWORTH:  Your Honor, it's excessive

24   and duplicative.  It's words like a county name and the

25   name of legislators.  We have -- the Court has in the

46

1    footnotes of the briefing, we've implemented initially 18

2    terms.  We took what the plaintiffs asked and we created a

3    list that captures all of those concepts but doesn't just

4    bring in a bunch of needless, irrelevant material.

5         A sitting member of the House, their name, they

6    are going to be on any email that they're on.  The name

7    Berkeley or just a county name, it doesn't connect it in

8    any way.  When we've done word -- and word terms, as

9    you'll see, Your Honor, have truly captured just the

10    widest net that we could possibly have captured.  Our

11    terms, Your Honor, are exceedingly broad and capture

12    everything related to the process, not merely intent but

13    everything related to the process.  I would just submit --

14         **JUDGE GERGEL:**  Let me ask you this.  Is there a

15    way to use terms, like, you could put Orangeburg and

16    redistricting and have to have both of them in there or

17    something like that so that we wouldn't get everything

18    from Orangeburg County Water and Sewer District and so

19    forth?

20         **MS. HOLLINGSWORTH:**  Right.

21         **JUDGE GERGEL:**  Is there a way to narrow it that

22    way?

23         **MS. HOLLINGSWORTH:**  So, Your Honor, what I would

24    submit is we've already done that because we simply

25    searched redistricting.  So we've already done that by

1    using -- without just trying to have a single county

2    named, we've done the part where we have redistricting and

3    district.  So the terms that we've already implemented and

4    reviewed capture everything that you would conceivably get

5    already.

6              JUDGE GERGEL:  Did you say to me that you used

7    the terms that the plaintiffs originally proposed to you?

8              MS. HOLLINGSWORTH:  No, Your Honor.  What I'm

9    saying is the few that are left, which are only a name of

10   a county and I believe the names of a few legislators in

11   isolation, as the Court has pointed out, if we did

12   something like Orangeburg and near the word district,

13   we've already done the search just looking for district.

14   So Orangeburg is already within the parameters of what we

15   would have reviewed and produced for discovery.

16             JUDGE GERGEL:  Before you did your word

17   searches, did you consult with the plaintiffs about the

18   scope of the words you were going to use?

19             MS. HOLLINGSWORTH:  Not at the initial one, Your

20   Honor, neither of us did.  Our discovery requests to each

21   other and our Joint 26(f) Report, we didn't have any

22   preset terms.  But then when we met in the consultations

23   after, I think the plaintiff had nine terms for the

24   associational plaintiffs.  There were no search terms for

25   Scott.  We, the House Defendants, implemented initially 18

1   search term's and concepts that we did.  And then when the

2   plaintiffs proposed to us a list of 41 additional terms,

3   we took that list and created what we believe is

4   additional search terms of concepts that captured --

5            JUDGE GERGEL:  You adopted the 41 recommended

6   by -- requested by the plaintiffs?

7            MS. HOLLINGSWORTH:  No, Your Honor, it wasn't

8   all 41.  The only ones we didn't adopt were the ones that

9   were emailed to the Court, which was just a first name of

10  a county and the name of a few legislators.  We did all of

11  the other terms including these national partisan groups.

12  We did that search as well.

13           JUDGE GERGEL:  Mr. Hindley, you know, we have

14  this search term issue come up in a lot of our very

15  complex litigation.  And there is an art to this.  It's as

16  equally bad to under-request as to over-request.  You know

17  what I'm saying?

18           MR. HINDLEY:  Yes, Your Honor.

19           JUDGE GERGEL:  You know, you get eight million

20  documents or you get four documents, right?  And there's

21  an art to it.  I've never been asked to get into the

22  precise search terms, I must confess.  But it does strike

23  me that if you have county names and nothing else, you

24  really do invite a massive amount of documents irrelevant

25  to the search.

1          **MR. HINDLEY:**  And that's why --

2          (Indiscernible crosstalk.)

3          **JUDGE GERGEL:**  I've been fuzzing about

4    relevance.  You're going to get everything from Anderson

5    County?  Good God.  I mean, it would be massive.

6          **MR. HINDLEY:**  This is John Hindley on behalf of

7    plaintiffs.  And that's why we asked to confer to narrow

8    or have a different variation of these search terms.

9    Because these county names are counties targeted -- as we

10   alleged are targeted by districts.  And these are names of

11   representatives who were also targeted to the

12   redistricting process.

13         **JUDGE GERGEL:**  I recognize enough of them to

14   figure out what you were up to.  I'm just saying if you

15   say Richland County, that's one of the state's largest

16   counties.  It has lots of things related -- unrelated to

17   districting.  Most of the material you would pick up on

18   Richland would be nothing to do with redistricting.

19   They've already got districting or redistricting

20   questioned.  Why adding the name of Richland does it not

21   duplicate what they've already asked for?

22         **MR. HINDLEY:**  Well, probably because we don't

23   know what we don't know.  And as part of the meet and

24   confer process with defense, we asked them for a hit

25   report.  And just for Your Honor's knowledge, a hit report

1    identifies how many documents a particular search term

2    identifies.  And they have not shared that hit report.

3    And that would have been a good basis for discussion on

4    narrowing these search terms.  But instead they just

5    refused to acknowledge those --

6         (Indiscernible crosstalk.)

7         JUDGE GERGEL:  Ms. Hollingsworth, I think you're

8    going to get a massive response.  Is there a way to do a

9    hit report and give a report back to the plaintiffs on

10   those terms?

11        MS. HOLLINGSWORTH:  If that's what the Court

12   would like us to do, certainly we can --

13        JUDGE GERGEL:  I think it's going to produce

14   what you think it's going to produce.  Okay?  Which is

15   going to be massive irrelevant documents.  But I think you

16   should share that with them.  I really don't like getting

17   as granular as this in telling y'all how to do the search

18   terms.  From your -- the search terms y'all have

19   exercised, what kind of document response did you get?

20        MS. HOLLINGSWORTH:  Your Honor, we've

21   produced -- I mean, we've produced thousands of emails and

22   communications.  I have -- let me put my hands on a list

23   where we've broken it down by productions.  It's been

24   thousands.  And in fact the most recent production, which

25   was the production that included the additional search

1    terms and the additional custodians, I believe was another

2    973 documents and emails.  So we've done -- we've produced

3    all of the emails from the redistricting portal itself.

4    Then the emails from all of the custodians that we

5    initially identified.  And then this most recent

6    production were the items that came off our privilege log,

7    the additional custodians and additional search terms.  So

8    all of those search terms we've identified have been

9    produced in discovery.  And it's thousands of emails, Your

10   Honor.

11          JUDGE GERGEL:  Well, I think you do the hit

12   report.  And if the plaintiffs still want it, they can

13   make another motion.  I'm not much impressed -- I think

14   this is one of those low-return-high-effort things.  And

15   again, I've tried to get the parties to focus on the

16   merits here.  And, you know, I'm not persuaded having

17   those county names will not give you such a massive

18   response, it'll be worthless.  But if you would do the hit

19   report, Ms. Hollingsworth?  And if the plaintiffs still

20   want it, they can come back to us, okay?

21          MS. HOLLINGSWORTH:  Yes, Your Honor.  I think

22   the only thing I'm just not sure of, Your Honor, a hit

23   report that shows X number of times the word Orangeburg

24   appeared in our production and X number of times it

25   appeared in documents that were non-responsive, just the

1    word Orangeburg -- it's the word Orangeburg isn't

2    indicative of anything related to the redistricting

3    process.  So I think --

4            **JUDGE GERGEL:**  What they think is you've got

5    documents that you think refer to the Orangeburg

6    districts, which I recall to be one of the cluster of

7    districts, and they think it didn't get picked up

8    elsewhere.  I'm kind of like you.  I think if you used

9    these other terms most probably it's not correct and

10   you're going to get everything about the Water and Sewer

11   District in Orangeburg and school board and all that.  But

12   I think if you'll just do the hit report, I think you'll

13   see that they may be -- the plaintiffs may be on a fool's

14   error in chasing this stuff.  So if it's not that

15   burdensome to do a hit report, just do it.

16           **MS. HOLLINGSWORTH:**  Yes, Your Honor.

17           **JUDGE GERGEL:**  And I think the point will be

18   made.

19           **MS. HOLLINGSWORTH:**  Yes, Your Honor.

20           **JUDGE GERGEL:**  There was also a confusion, the

21   plaintiffs were complaining they had not gotten documents

22   sent or received from third parties.  And the defendants

23   said they had produced it.  Is that issue still unsettled?

24           **MR. HINDLEY:**  Yes, Your Honor, because as part

25   of our review of the production, we have not encountered

1    any communications with third parties.  And that's why we

2    are asking for personal emails and text messages of

3    legislators and key staffers because there's a possibility

4    that they're communicating with third parties through that

5    avenue and not through the official state house email.

6            JUDGE GERGEL:  Okay.  Ms. Hollingsworth, you say

7    they produced third parties.  Are some of these documents

8    from third parties?

9            MS. HOLLINGSWORTH:  Absolutely, Your Honor.  And

10   I think part of the issue is I have a feeling plaintiffs

11   mean something very specific when they say third parties.

12   Because, of course, by virtue of producing the

13   redistricting portal, they have got all of the documents

14   and communications that came from any number of

15   constituents and organizations and persons interested in

16   the process.  And all of those terms were applied to our

17   custodian accounts as well.  And then even in this most

18   recent round of searches that we did for the plaintiffs,

19   we included these partisan organizations that they asked

20   for.  We did the searches.  There weren't documents, Your

21   Honor.  So I just don't know what it is that they claim

22   they don't have because --

23           JUDGE GERGEL:  Yeah.  I mean, it's always this

24   issue is one side thinks something exists and the other

25   side says it doesn't exist.  And we, as judges, sit there

1    and just say we don't have any way to figure out what --

2    you know, who is correct in that.  You can't require

3    somebody to produce something that, you know, they say

4    they don't have.

5         All I can say is if there have been such

6    communications and you're going to go to the private

7    emails and we're going to get that information, and if

8    there's, you know, from that leads you to other

9    information, the plaintiffs can pursue it.

10        Let me go back if I can to this pool of, you

11   know, we're talking about the private emails.  I need some

12   help.  I don't want to debate later about who is in the

13   this pool, who is going to be required to produce their

14   private emails.  Mr. Hindley, who do you want beyond the

15   three House named House Defendants and the Ad Hoc

16   Committee?  Anybody else for their private emails?

17        **MR. HINDLEY:**  Yes.  So understood we added to

18   our first interrogatories, which include Mr. Thomas

19   Hauger, Ms. Sarah Grace Williamson, Mr. Joey Deguit

20   D-E-G-U-I-T.

21        **JUDGE GERGEL:**  These are staffers?

22        **MR. HINDLEY:**  They were staffers involved in the

23   map room.

24        **JUDGE GERGEL:**  But do you have reason to believe

25   they were using their private emails?  We're talking about

1    private emails now.

2         MR. HINDLEY:  Many of these staffers we don't

3    even have their state house emails.

4         JUDGE GERGEL:  Okay.  What about their -- how

5    about the staff -- the mappers' state house emails,

6    Ms. Hollingsworth?

7         MS. HOLLINGSWORTH:  Your Honor, if I could?  So

8    Thomas Hauger is the GIS Director.  He was -- supervised

9    the map room.  We have provided all of his documents and

10   information and his custodial files.  We've done all that.

11   He's employed for the specific purpose of running the map

12   room.  And that's what he did and we provided all of his

13   information.

14        The three individuals were interns that we

15   identified in discovery.  They were, as we call them, map

16   room technician or clickers.  Their sole responsibility

17   was they just sat and they clicked the button at the

18   direction of a legislator who was asking them to operate

19   the software.  They were short-term employees.  They don't

20   have emails.  They didn't even speak.  So there isn't

21   anything, any information or discovery that these three

22   interns would have.  They clicked buttons at the direction

23   of a legislator.

24        JUDGE GERGEL:  What was your staff of people who

25   weren't interns?  Who was in the map room other than --

1    who was the person who was head of the map room?

2         **MS. HOLLINGSWORTH:**  Mr. Hauger.  This is

3    Jennifer Hollingsworth.  Thomas Hauger was the GIS

4    Director that oversaw the map room.  We've provided all of

5    his document and information.  Ms. Emma Dean, who is chief

6    counsel to the House Judiciary Committee, she was the sort

7    of lead attorney that oversaw the entire process.  And she

8    was the custodian of the most documents because that was

9    what she did.  And we produced nearly 2,000 records

10   related to her.  Then her sort of assistant counsel were

11   Roland Franklin and Jimmy Hinson.  Both of their files

12   were pulled and produced.  They are, again, staff

13   employees, staff counsel to the House Judiciary Committee.

14   And then Patrick Dennis, who is general counsel and Chief

15   of Staff to the Speaker of the House.  Again, an employee

16   of the House and we provided all of his documents and

17   information and communications in discovery.

18        **JUDGE GERGEL:**  And that includes their

19   legislative email?

20        **MS. HOLLINGSWORTH:**  Yes, Your Honor.  And they

21   are employees, so that is their email.  So, Your Honor,

22   our position, of course, would be that to the extent we're

23   dealing with personal emails, it only relates to

24   legislators who, by the way, are the only people that

25   could vote on, of course, the act at issue.  And because

1    they are not full-time employees of the House, that is the

2    reason why they would have had a non-house email where

3    they may or may not -- and they will undertake as the

4    Court's directed a search of what they have.  So the

5    suggestion that we should go outside of these legislators,

6    I just don't understand.

7          JUDGE GERGEL:  I hear you, Ms. Hollingsworth.

8          So, Mr. Hindley, help me with this.  Do you have

9    any indication -- I saw some of the evidence you pointed

10   out that certain legislators were sending things to and

11   from their law firms or their private emails.  I get that.

12   Do you have any evidence that any of these staff members

13   were using private emails?

14        MR. HINDLEY:  Well, Your Honor, I think it's

15   important to take a step back and say we need to

16   understand the subjective intent of the House when they

17   passed these -- passed the House lines.  And we don't know

18   what don't know.  And it's possible they could have been

19   discussing the redistricting, both the legislators and the

20   staff members, on the personal accounts and in text

21   messages given that --

22        (Indiscernible crosstalk.)

23        JUDGE GERGEL:  But, Mr. Hindley --

24        (Indiscernible crosstalk.)

25        JUDGE GERGEL:  This is what they call a fishing

1    expedition.  Here's what you need to do.  Take their

2    depositions and ask them, Did you communicate in private

3    emails?  If they did, request them.  But simply asking

4    these folks for their private emails when you don't have

5    any evidence they were communicating privately just

6    strikes me as overly intrusive.  I mean, to the extent you

7    have any indication like you pointed out that some of

8    these legislators were communicating to and from their law

9    firms, fair enough.  Good point.  But these staffers, just

10   go take -- Mr. Hindley, let me ask you, how many

11   depositions have the plaintiffs taken of these fact

12   witnesses?

13          MR. HINDLEY:  We've -- next week we're holding a

14   number of depositions on a number of individuals.  But

15   we're only limited to 15.  And I would want --

16          JUDGE GERGEL:  Why are you limited to 15?

17          MR. HINDLEY:  That's what the parties agreed on.

18          JUDGE GERGEL:  Well, that's your agreement.  I

19   mean, fine.  If that's what you want to do, that's your

20   business.  But, you know, just -- you know, people are

21   going to do everything on discovery -- I mean, on paper

22   discovery, go take people's depositions.  Ask them

23   questions.  They won't say anything to you.  It seems to

24   me the art of discovery is, you know, is not all like the

25   redcoats just marching down the center.  You've got to be

1    a little creative.  And, you know, I think you're close to

2    exhausting your written discovery.  Go get depositions.

3    And if you learn stuff that you need more and you haven't

4    captured it, that's when you come.  But just sending

5    everybody on a fishing expedition, I don't get it.

6            MR. HINDLEY:  Well, Your Honor, I would just add

7    that it was not a fishing expedition.  They admitted in

8    their filings and just now that members of the staff did

9    use personal communications --

10           JUDGE GERGEL:  I didn't hear them say that.

11       (Indiscernible crosstalk.)

12           MR. HINDLEY:  They also said that --

13       (Indiscernible crosstalk.)

14           JUDGE GERGEL:  I didn't hear that.

15           MR. HINDLEY:  Ms. Hollingsworth just said that

16   staffers used non-house emails because they were part-time

17   employees for the redistricting process.

18           MS. HOLLINGSWORTH:  I did not say that at all

19   actually, Your Honor.

20           JUDGE GERGEL:  I didn't hear you say it either,

21   Ms. Hollingsworth.

22           If you think these clickers were getting private

23   emails, go take their depositions.  And if they say, yeah,

24   I was using it, you got it.  You'll get it.  But I didn't

25   hear her say that.  She just said they were following the

1    instructions -- they were interns sitting there.  And they

2    said draw the map, put that precinct in, take that

3    precinct out.  I mean, suggesting that the interns are

4    going to be the key to your case, I mean, you better have

5    a better case than that.

6           **MR. HINDLEY:**  Apologies, Your Honor.  I misheard

7    Ms. Hollingsworth.

8           **JUDGE GERGEL:**  Yeah, I didn't hear her say

9    anything like that.

10          Okay.  I've kind of worked through the list that

11   my colleagues and I had been concerned about.

12          Judge Seymour, do you have any additional

13   questions?

14          **JUDGE SEYMOUR:**  I do not have any additional

15   questions.  Thank you very much.

16          **JUDGE GERGEL:**  Judge Heytens, do you have any

17   additional questions?

18          **JUDGE HEYTENS:**  I do not.

19          **JUDGE GERGEL:**  Okay.

20          Folks, thank you for this.  And please, y'all

21   talk to each other.  Show courtesy to each other.  Work

22   with each other.  I think a lot of this could be worked

23   out by y'all, you know, in a non-adversarial way working

24   with each other.  I don't know all of the counsel, but I

25   do know many of you.  And you are honorable, decent,

1    hardworking people.  And I think if y'all just talk to

2    each other, a lot of this conflict could be avoided.

3        Okay.  Are there further matters to come before

4    the Court at this point, Mr. Hindley?

5        **MR. HINDLEY:**  No, Your Honor.  We're all set on

6    plaintiff's side.

7        **JUDGE GERGEL:**  Okay.

8        And Ms. Hollingsworth?

9        **MS. HOLLINGSWORTH:**  Your Honor, if I could have

10    a question and then a request to clarify the timeframe?

11        **JUDGE GERGEL:**  Yes, ma'am.

12        **MS. HOLLINGSWORTH:**  In terms of for us to engage

13    with both the party defendants and then reaching out to

14    the Ad Hoc Committee members and asking them to undertake

15    the search and the certification, what timing is the Court

16    expecting of that?  I mean, we've -- part of the issue

17    here is written discovery.  We've got about -- all

18    discovery, I'm sorry, all discovery closes by next Friday.

19        **JUDGE GERGEL:**  Well, we can extend it to comply

20    with these instructions.  But the Ad Hoc Committee, how

21    much time do you need to get them to do their search?

22    What do you think is reasonable, Ms. Hollingsworth?

23        **MS. HOLLINGSWORTH:**  I would suggest maybe not

24    everyone -- we might need a little bit of time because I

25    don't want to make assumptions about the tech savvy

1    abilities of folks.  So I want to make sure that I and we

2    give them all the assistance they need to walk through the

3    process.  So I certainly think today I struggled with

4    dates, Your Honor.  Today's Tuesday.  So if we could have

5    a week?

6            JUDGE GERGEL:  One week is fine.  Okay.  And

7    what was your other question?  That's for your Ad Hoc

8    Committee and your House Defendants?  What else?

9            MS. HOLLINGSWORTH:  And Your Honor, my other

10   question was simply, I know the Court has reviewed all of

11   the motions.  Is the Court going to just otherwise rule on

12   the various issues?

13           JUDGE GERGEL:  Yeah, we've got -- you know,

14   we've -- we've -- you gave us enough information and we

15   will address those in an order, yes.

16           MS. HOLLINGSWORTH:  Thank you, Your Honor.

17           JUDGE GERGEL:  Anything further?

18       (There was no response.)

19           JUDGE GERGEL:  Okay, folks.

20           MS. HOLLINGSWORTH:  Your Honor, sort of a

21   housekeeping matter.  We did wonder -- one of my

22   colleagues is making me ask the question.  But does the

23   Court have an expectation whether or not the trial in May

24   may be held in Columbia or will it be in Charleston or

25   some other location?

63

1          **JUDGE GERGEL:**  It will be in Charleston.

2          **MS. HOLLINGSWORTH:**  Okay.  Thank you, Your

3      Honor.

4          **JUDGE GERGEL:**  Okay.

5          Very good, folks.  With that, this hearing is

6      adjourned.  Thank you.

7          **MS. HOLLINGSWORTH:**  Thank you.

8          **MR. BRYANT:**  Thank you, Your Honor.

9          (WHEREUPON, court was adjourned at 4:23 PM)

10                           * * *

11     I certify that the foregoing is a correct transcript from

12     the record of proceedings in the above-entitled matter.

13         s/Karen E. Martin                    4/15/2022

       _____       _____
14     Karen E. Martin, RMR, CRR            Date

15

16

17

18

19

20

21

22

23

24

25