# <u>Exhibit B</u>

**(Transcript of April 26, 2022 Telephonic Status Conference)**

```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF SOUTH CAROLINA
                    COLUMBIA DIVISION

SC STATE CONFERENCE OF THE    )
NAACP & TAIWAN SCOTT,         )
          Plaintiffs,         )     April 26, 2022
                              )
          -versus-            )     3:21-3302
                              )
THOMAS C. ALEXANDER, LUKE A.  )     Charleston, SC
RANKIN, JAMES H. LUCAS, CHRIS )
MURPHY, WALLACE H. JORDAN,    )
HOWARD KNAPP, JOHN WELLS,     )
JOANNE DAY, CLIFFORD J. ELDER,)
LINDA McCALL, SCOTT MOSELEY,  )
          Defendants.         )


         TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE

         BEFORE THE HONORABLE RICHARD M. GERGEL
               UNITED STATES DISTRICT JUDGE
             THE HONORABLE MARGARET B. SEYMOUR
            SENIOR UNITED STATES DISTRICT JUDGE
              THE HONORABLE TOBY J. HEYTENS
               UNITED STATES APPELLATE JUDGE

A P P E A R A N C E S:

For the Plaintiffs:   CHRISTOPHER J. BRYANT, ESQ.
                      Buroughs Bryant LLC
                      1122 Lady Street, Suite 208
                      Columbia, SC 29201

                      JOHN M. HINDLEY, ESQ.
                      JOHN A. FREEDMAN, ESQ.
                      Arnold and Porter Kaye Scholer LLP
                      601 Massachusetts Avenue NW
                      Washington, DC 20001

                      JOHN CUSICK, ESQ.
                      LEAH C. ADEN, ESQ.
                      NAACP Legal Defense and Educational
                          Fund Inc.
                      40th Rector Street, 5th Floor
                      New York, NY 10006
```

D. ALLEN CHANEY, JR., ESQ.
ACLU of South Carolina
1220 Laurens Road, Suite B
Greenville, SC 29607

ADRIEL I. CEPEDA DERIEUX, ESQ.
ACLU Foundation
125 Broad Street, 18th Floor
New York, NY 10004

PATRICIA YAN, ESQ.
ACLU Foundation Inc.
915 15th Street NW
Washington DC 20005

For Defendants Alexander and Rankin:
ROBERT E. TYSON, JR., ESQ.
Robinson Gray Stepp and Laffitte LLC
1310 Gadsden Street
Columbia, SC 29201

JOHN M. GORE, ESQ.
Jones Day
51 Louisiana Avenue NW
Washington, DC 20001

For Defendants Lucas, Murphy and Jordan:
ANDREW A. MATHIAS, ESQ.
KONSTANTINE P. DIAMADUROS, ESQ.
Nexsen Pruet
PO Box 10648
Greenville, SC 29603

MARK C. MOORE, ESQ.
HAMILTON B. BARBER, ESQ.
MICHAEL A. PARENTE, ESQ.
Nexsen Pruet
PO Box 2426
Columbia, SC 29202

For Defendants Knapp, Wells, Day, Elder, McCall & Moseley:
JANE W. TRINKLEY
Burr and Forman LLP
PO Box 11390
Columbia, SC 29211

Court Reporter:        KAREN E. MARTIN, RMR, CRR
                       PO Box 835
                       Charleston, SC 29402

     Proceedings reported by stenographic court reporter.
     Transcript produced with computer-aided transcription
                          software.

4

1          Tuesday, April 26, 2022

2      (WHEREUPON, court was called to order at 1:00 PM)

3          JUDGE HEYTENS:  Good afternoon.  This is Judge

4  Heytens.  I'm going to ask if Judge Gergel and Judge

5  Seymour are on the line?

6          JUDGE SEYMOUR:  Yes, this is Judge Seymour.  I'm

7  on the line.

8          JUDGE GERGEL:  Yes, I am on the line.

9          JUDGE HEYTENS:  Good afternoon, everyone.  As I

10  said this is Judge Heytens.  Judge Gergel and Judge

11  Seymour are also on the line.  We are on the record in the

12  case of the SC NAACP vs. Alexander, Civil Action

13  No. 21-3302 for a status conference.

14          I'd like to start with some very brief framing

15  remarks before we move into the status conference itself.

16  It seems very apparent to me that the parties very much

17  want to avoid doing two different things in this case.

18  One, it is apparent that the parties are not looking

19  forward to trying this case.  And second, it appears that

20  they don't want to just pass a new map.  If that is true,

21  then as the panel has already said, we think that several

22  things at minimum would have to happen to avoid either of

23  those two things happening if there's a chance of doing

24  that.  The panel is of the view, as the panel's already

25  said, that it would require the consent of the governor,

1    the attorney general, or both rather than simply a

2    representation by the parties that those individuals don't

3    oppose.

4           Second, as the panel has already explained, we

5    think it would require more fulsome consent of both the

6    House and the Senate than the letters that have currently

7    been provided.

8           And then last but not least, as the panel

9    indicated in its order, there would have to be a showing

10    to permit the Court to make a finding that the settlement

11    proposal itself complies with the equal protection clause.

12    Because if this were to be a consent decree, the panel

13    would have to make such a finding in order to enter it.

14           But as of now and pending any further

15    developments, trial as the panel has indicated is still on

16    for Monday the 16th of May.

17           Judge Seymour, do you have anything to add by

18    way of framing us up?

19           **JUDGE SEYMOUR:** I don't have anything to add and

20    I agree with you. Thank you.

21           **JUDGE HEYTENS:** Judge Gergel, do you have

22    anything to add?

23           **JUDGE GERGEL:** I don't. I agree with what

24    you've just said Judge Heytens.

25           **JUDGE HEYTENS:** Terrific. With that in mind,

1    I'm going to follow the course from our previous wannabes

2    and turn it over to Judge Gergel for him to conduct the

3    remainder of our conversation this afternoon.

4            **JUDGE GERGEL:**  Very good.  Good afternoon,

5    everyone.  In our -- I want to remind folks, and I think

6    we did this fairly early on, we will have having a status

7    conference in this case on the Friday before the Monday

8    trial, that's May 13th.  Since I know folks will probably

9    be using a fair amount of technology, I urge y'all to come

10   and we'll have the courtroom available for you to get

11   everything up and running.  My staff will be there to

12   assist.  Sometimes there are computer challenges when

13   you're using the court system.  And we'll work with you on

14   that.  But we'll do that at 10 a.m.

15           And I think last week we entered a text order

16   extending discovery until Friday.  That was -- that had

17   been requested jointly when the parties -- counsel met

18   with me, the House parties met with me and asked would it

19   be okay to have another week.

20           Let me just ask Mr. Moore and Mr. Bryant, is

21   that time sufficient?  Do you need anymore time, another

22   few days?

23           **MR. MOORE:**  Judge, this is Mark Moore for the

24   House Defendants.  I believe that we would need at least

25   another week to complete discovery.  We have talked and we

1   have tentatively scheduled some depositions this week.

2   But I think that we would need another week to conduct

3   discovery.

4              And I would tell the Court that there are a

5   couple discovery issues that have come up which we started

6   working through.  We paused that in order to take

7   advantage of trying to resolve this case.  And if at any

8   point the Court is willing to hear us on that issue, we'd

9   be glad to speak on it.  But I would say that at a

10   minimum, we would need an additional week for discovery.

11             **JUDGE GERGEL:**  Okay.  So you're asking --

12   basically, we were having it through the 22nd.  You're

13   asking to go to the 29th?

14             **MR. MOORE:**  Actually, Judge, I think it went

15   through the 29th.  If the discovery was originally

16   scheduled to close --

17             **JUDGE GERGEL:**  I've got you.  You're absolutely

18   right.  Yes.  So you're asking to go to the 6th?

19             **MR. MOORE:**  That is my ask.  And I don't know

20   what my colleagues from the plaintiff's side, what their

21   position is.  I do think that they want additional time

22   for discovery.  We had both also talked about asking the

23   Court for perhaps a brief -- you know, perhaps a move of

24   the trial date into June.  I don't know if the Court's

25   willing to --

1          JUDGE GERGEL:  We're not --

2          Judge Heytens, I don't think we're inclined to

3    do that, are we?

4          JUDGE HEYTENS:  I'm certainly not inclined to do

5    it.  And I understand my panelists are not inclined to do

6    it either; is that correct?

7          JUDGE SEYMOUR:  That's correct.

8          JUDGE GERGEL:  That's correct.

9          So I think we're on May 16th.  So, you know, the

10   only challenge is there are certain dispositive motions

11   that are due before then.  But, folks, this case is not

12   going away by dispositive motions.  I mean, there are

13   going to be factual issues that need to -- that, you know,

14   we're going to need to try.  So what do y'all propose in

15   terms of dispositive motions, if you're going to move the

16   thing to the 6th?  Mr. Moore?

17          MR. MOORE:  Judge, if you could give us until

18   the 13th for dispositive motions?  You know, I heard the

19   panel early on back in December of last year when you told

20   us that while we would -- we could file motions to dismiss

21   and final motions for summary judgment that those would

22   unlikely be granted.  We would just need time to file them

23   for purposes of the record.  I understand that the Court

24   may not be able to give us a decision.  So the 13th or

25   even the 12th is what I would propose.

1          JUDGE GERGEL:  Yeah.

2          Mr. Bryant, what's the plaintiff's view?

3          **MR. BRYANT:**  Judge, the plaintiffs would echo,

4    you know, at least that week for additional discovery.

5    I'm going to pass it to my colleague, John Freedman, to

6    discuss some of the outstanding discovery issues.

7          **JUDGE GERGEL:**  Okay.  Well, we're not ready to

8    go to the discovery --

9          **MR. BRYANT:**  I'm sorry, Judge.  Not the

10   discovery issues themselves, but sort of the need for time

11   and what has been scheduled.

12         **JUDGE GERGEL:**  Very good.

13         Mr. Freedman?

14         **MR. FREEDMAN:**  Thank you, Your Honor.  John

15   Freedman for the plaintiffs.  So in terms of outstanding

16   discovery from the plaintiff's end, when we suspended

17   there were six depositions that we needed to take.  We got

18   dates from the defendant's for two of them.  One Friday,

19   one next Monday, and still waiting for dates of the last

20   four.  That includes senior -- named defendants or senior

21   members of the House including Speaker Lucas.  So those

22   need to be done.

23         In addition, there was some outstanding

24   discovery issues, the most important of which is

25   defendant's compliance with Paragraph 4 of the April 13th

1    order in terms of the supplemental productions from

2    personal emails, text messages.  Assuming all that can get

3    done between now and May 6th, May 6th sounds fine as a

4    discovery cutoff.

5            I think as far as the dispositive motions

6    deadline, I think it's safe to say the plaintiffs are not

7    planning to file dispositive motions.  We are

8    contemplating filing certain in limine motions.  And do

9    believe that some adjustment on the schedule would be

10   helpful recognizing the Court is going to need time to

11   analyze those and rule on them at or before the start of

12   the trial.

13           **JUDGE GERGEL:**  Yeah.  Mr. Freedman, I always try

14   to remind lawyers when you have a panel -- a bench trial

15   as a posed to a jury trial, motions in limine are not so

16   critical, you know, I mean, frankly.  But if you've got

17   substantive motions in limine, what's the nature of those

18   motions?

19           **MR. FREEDMAN:**  They are largely by nature of

20   preclusion, Your Honor, where the defendants didn't turn

21   over certain information in discovery, or have not

22   stipulated things in discovery, or if certain explanations

23   for the map weren't contemporaneously raised in the

24   legislative record.  I hear what Your Honor's saying about

25   the point of this with a bench trial.  But I still think

1    in terms of framing trial presentation, getting some

2    guidance from the Court --

3            **JUDGE GERGEL:**  Yeah.  I mean, if you've got

4    motions in limine, you need to go ahead and give us --

5    those that are ripe right now, just go ahead and file

6    them.  I mean, you know, if you pile everything on us at

7    the last moment, you know, it's just very hard to process

8    it in a way that makes any sense.  So if you're going to

9    make a motion in limine, you have motions in limine, I

10   would say you do those by May 9.  And if something arises

11   after that, you can ask us, you know, if there's some good

12   cause for not meeting that deadline.

13           And then for, you know, the motion for summary

14   judgment, I think we've got to do that by the 11th.  We've

15   got to at least be able to look at it and have a response

16   from opposing parties, you know.  So I would say May 11th

17   and just turn it around in 24 hours and May 12th for

18   response.

19           And I say that, I understand why the defendants

20   would want to make the motion.  I think it's a legitimate

21   kind of point.  I just think we all know that there are

22   material factual disputes that we need to resolve.  But I

23   want to -- I know I want to afford them the right to file

24   it.  And some of it may be actually something they're

25   teeing up for basically argument in the case.  And I think

1    it's legitimate to raise those things.

2            So we will do the motion in limine, anything by

3    May 9.  And the motion for summary judgment by 11.  On the

4    motion in limine, I want a response by the 10th.

5            Folks, don't overdo it.  Don't over-nitpick this

6    thing.  We're three judges.  We're not going to be blown

7    away by something that arguably isn't admissible.  You can

8    just raise an objection to it.  Don't spend a lot of time

9    pouring over insignificant matters that you can raise

10   objection to at trial.

11           The -- there was a mention of getting these four

12   depositions scheduled within the time provided to the 6th.

13   Mr. Moore, is there going to be any problem getting those

14   other four depositions scheduled?

15           **MR. MOORE:**  No, sir, Your Honor, there's not.

16   There are also two other depositions that Mr. Freedman did

17   not mention that we had noticed that we are tentatively

18   scheduling this week.

19           **JUDGE GERGEL:**  Okay.  Okay.  Now, Mr. Moore, you

20   told me there are some discovery issues.  What -- not

21   getting into details, because we're not going to argue

22   them, I'm going to make you to file something, tell me the

23   nature of what the issue is.

24           **MR. MOORE:**  Well, so from our perspective, there

25   is an issue about the adequacy of the collection from the

1     Plaintiff South Carolina Conference -- South Carolina

2     State Conference of the NAACP of the emails from various

3     email boxes.  That's the primary issue.  That collection

4     deficiency was discovered in a Rule 30(b)(6) deposition of

5     President Murphy right before -- I guess at the end of --

6     not at the end of last week but the end of the previous

7     week.

8              JUDGE GERGEL:  You said collection, there are

9     emails that you think are relevant that haven't been

10    produced?

11             MR. MOORE:  That is correct, Your Honor.

12             JUDGE GERGEL:  Okay.

13             And Mr. Freedman, who wants to respond?  Without

14    getting into a lot of detail, tell me is there an issue

15    about that?

16             MR. FREEDMAN:  So, Your Honor, John Freedman for

17    the plaintiffs.  News to me.  Not previously raised, not

18    met and conferred on.  I'm happy to meet and confer with

19    the defendants and understand what their issue is.  And

20    I'm sure if there are documents they still -- documents

21    that they think we owe them, we're happy to make a

22    supplemental production.

23             JUDGE GERGEL:  Okay.  Here's what it is.  I want

24    y'all to meet and confer immediately.

25             And Mr. Moore, if you're not -- if you're not

1    satisfied by that, I want you to file a motion on April 29

2    on these NAACP production.  And then I want a response by

3    the plaintiff on May the 2nd.  But y'all try to resolve

4    it.  I mean --

5         (Indiscernible crosstalk.)

6         **MR. MOORE:**  I'm sorry, Judge.  I was going to

7    tell you, I don't think Mr. Freedman was on the call where

8    we had a -- where we began to have a discussion about it

9    or perhaps it's in the emails.  But a number of the folks

10   on the plaintiff's side are well aware of the issue.

11        **JUDGE GERGEL:**  Okay.  Good.  Just file it on the

12   29th.  Y'all meet and confer.  Try to resolve it.  If you

13   can't resolve it, then you file it on the 29th.  Plaintiff

14   will respond on the 2nd.

15        You both should have gotten the flavor that

16   we're going to make y'all produce the stuff.  So, I mean,

17   unless there's a serious objection to the plaintiffs, just

18   go ahead and produce it.  I mean, I've been through --

19   we're going to probably issue an order today or tomorrow

20   on this in camera stuff.  There's just not much on

21   anybody's there.  So y'all just go ahead and get it done

22   because y'all need to be spending your time getting ready

23   for trial and not on these issues that are, you know, in

24   my view largely unimportant.

25        **MR. BRYANT:**  Judge Gergel, this is Chris Bryant

1    for plaintiffs.  Plaintiffs also have an outstanding

2    discovery issue.  So I guess when Mr. Moore said from our

3    side, there is a plaintiff's discovery issue.  And I'm not

4    sure if you'd like us to briefly introduce that as well.

5         **JUDGE GERGEL:**  Tell me just very briefly.

6    You're going to be on the same schedule of the 29th and

7    response by the 2nd.

8         **MR. BRYANT:**  Okay.  I assumed it was the same

9    schedule.  Very briefly, you know, we had some discovery

10   requests that went out, you know, back in January

11   regarding individual involvement in the case, basically

12   identifying people involved with map drawing.  And it did

13   not come out -- it -- I guess the best way to say it is

14   their -- the written discovery -- the written discovery

15   does not identify any Nexsen Pruet attorneys as being

16   involved.  It did come out in depositions that took place

17   shortly before I guess we would say we took this pause

18   that there were attorneys -- you know, I think we asked

19   for people involved in evaluating, analyzing, et cetera,

20   the map and draft maps to sort of understand where they

21   came from.  And so we did not understand and have not

22   received information I guess from those -- from those

23   attorneys.  So that is the --

24        **JUDGE GERGEL:**  You know, I'm never crazy about

25   efforts to make lawyers -- the lawyers the witnesses.

1    Okay?  So take a hard look at them about relevancy here.

2    Because, you know, are you planning to put Nexsen Pruet

3    lawyers on the stand?  I mean, come on.

4         MR. BRYANT:  Your Honor, the deposition

5    testimony revealed that Nexsen Pruet attorneys were

6    substantively -- involved in substantive map drawing.  And

7    that sort of goes to the crux of the matter in the case.

8    We don't know personally how, but throughout testimony of

9    individual legislators, you know, indicated direct

10   communications regarding substantive map drawing --

11        JUDGE GERGEL:  Well, in the end, you know, y'all

12   are spending a lot of time on what other people did.  The

13   maps are very important, folks.  Okay?  Look at the maps.

14   And I'm just -- I'm just going to start off with saying I

15   am reluctant to convert the lawyers into witnesses.  I

16   mean, as a practical matter, you can't represent a party

17   where you are a material witness.  So I've never been

18   crazy at efforts to convert attorneys of record into

19   witnesses.  So if there's something there that's material,

20   fine.  File your motion on the 29th.  The House Defendants

21   can respond on May 2nd.

22        But I will start by saying, you know, the end

23   here is the maps.  That's really the important thing.  And

24   I agree, how they got there, you know, may be instructive.

25   But, um -- but I will just say a marked reluctance to

1    convert lawyers into witnesses on both sides, by the way.

2         **MR. MOORE:**  And Judge Gergel, this is Mark

3    Moore.  I hear Your Honor loud and clear.  I think I heard

4    you at the last status conference on that issue.  And when

5    we meet and confer with the plaintiffs, we will

6    converse -- we will meet and confer on all issues in hopes

7    that we can avoid the filing of motions from either side,

8    frankly.  At the time that the plaintiffs first raised

9    that issue with us, we had not seen the deposition

10   transcripts of these two witnesses.  I've seen one of them

11   now.  I don't think I have the other.  But I'm prepared to

12   have a substantive discussion with plaintiff's counsel in

13   hopes to resolve that issue.

14        **JUDGE GERGEL:**  Thank you.

15        I mean, folks, I have all these so called new

16   discovery issues.  None of them sound like they amount to

17   a lot one way or the other.  You know, we've got to look

18   at these maps.  What do the maps do?  You know, that's

19   going to drive this.  And surely there are details about

20   how the maps got there that would be relevant.  But, you

21   know, in the end, you know, I presume the experts are

22   going to be very important in a determination whether race

23   was predominant.  And if so, whether any remedy is

24   narrowly drawn to meet a compelling state interest.  I

25   mean, that's sort of the gravamen of these cases.

1          Okay.  Are there other matters that either

2     first, Mr. Bryant, you or Mr. Freedman need to raise with

3     the panel?

4          **MR. FREEDMAN:**  Your Honor, John Freedman.  Just

5     briefly.  We are waiting for compliance on the Paragraph 4

6     of the April 13th order.  If we can get a representation

7     from Mr. Moore when --

8          **JUDGE GERGEL:**  Mr. Moore, how about Paragraph 4?

9          **MR. MOORE:**  Well, Mr. Bryant and I talked about

10    that last week and we have the certifications.  And we

11    believe that we have most of the collections in house.  We

12    will get those documents out to plaintiffs as soon as

13    possible, well -- well before any deposition takes place

14    that might be affected by those productions and well

15    before the discovery deadline.

16         **JUDGE GERGEL:**  Very good.

17         Okay.  Mr. Freedman, does that satisfy you?

18         **MR. FREEDMAN:**  The representation that we'll

19    have them before the depositions I think is sufficient,

20    yes.

21         **JUDGE GERGEL:**  I thought it might be.  Okay.

22    Anything else from the plaintiff that you need to raise

23    with me?

24         **MR. BRYANT:**  Yes, Your Honor.  Chris Bryant from

25    the plaintiffs.  I guess one thing.  We understood Judge

1    Heytens, you know, loud and clear at the beginning of this

2    status conference regarding the sufficiency or lack of

3    sufficiency of I guess what was needed from the Senate and

4    the House as far as consenting or a more fulsome consent I

5    believe were the words.  Does the Court have direction --

6    I guess we're trying to figure out what -- what would make

7    that consent more --

8            **JUDGE GERGEL:**  Let me say, we're not going to

9    issue an advisory opinion because a lot of times the devil

10   is in the details.  But my colleague, Judge Seymour, has

11   asked the panel several times why don't they just pass a

12   new plan if they have consent?  And I've thought that was

13   a pretty good point myself.

14           **MR. MOORE:**  And Your Honor, do you want me to

15   try to answer that question?

16           **JUDGE GERGEL:**  Well, I think I know the answer.

17   But I'm saying -- or, you know, there may be other ways to

18   manifest assent by the bodies.  But, you know, Mr. Moore,

19   like you, I represented the legislative bodies.  And I was

20   always taught that a body can only act through its

21   majority.  And there needs to be some reflection, and

22   that, you know, one individual can't speak for the body.

23   And I understand there are issues we're late in the

24   session and all of that.  I get that.

25           But, you know, we've got -- as Judge Heytens

1    said, we need a clear manifestation of the consent of the

2    bodies, not just one or two leaders of the body.  And we

3    need an indication that an executive officer, which is

4    most logically here the governor, but could conceivably

5    under the state constitution be the attorney general comes

6    in and consents.

7            The case law makes it clear this is a

8    legislative -- this is not a plan of the House.  This is a

9    plan of the State involving the House Redistricting.  And

10   you can enter into consent decree, Lawyer teaches us that,

11   but under very strict standards.  And since then, in Fouts

12   and in Benson and in Madditt (phonetic) and, you know,

13   we've taken the -- we read that case law carefully.  And

14   we're not telling y'all you can't get the case settled,

15   you've just got to meet these standards.  And you're not

16   there yet.  And you might get there but you're not there

17   yet.

18           **MR. MOORE:**  Your Honor?

19           **JUDGE GERGEL:**  Yes?

20           **MR. MOORE:**  And I know that the Court is loathe

21   to give us advisory opinions and we understand that

22   completely.  And as Your Honors can tell, we're trying.  I

23   wish that we had time to pass the maps.  I don't think we

24   can.  But I hear you loud and clear on what you would

25   expect from the two legislative chambers.  And obviously,

1    the lawyers from the Senate are on this call.  And we will

2    be talking to the lawyers for the Senate and we will be

3    talking to our clients immediately on that point.

4            When Your Honor raises the issue of an

5    executive's consent, and I just -- I want to just raise

6    this issue with the Court.  The governor is no longer a

7    party to the action.  My understanding is that the

8    governor does not -- from discussions that my client has

9    had with the governor's office, my understanding is that

10   the governor has no intention to object to the settlement,

11   no intention to proceed as an intervenor to try to stop

12   this.  But he is no longer a party to the action and there

13   are issues concerning consent.

14           I also heard Your Honor loud and clear about the

15   attorney general.  And we will be glad to try to explore

16   that issue.  But I want to raise another issue.  Because

17   the governor isn't in this case, the attorney general

18   isn't in this case, the State Election Commission is in

19   this case.  And we've briefly spoken to the Election

20   Commission about this point.  And they don't have an

21   answer for us yet on their position.  But the State

22   Election Commission is empowered by statute with

23   conducting elections.  They have a chairman that is a

24   chief administrative officer for the elections of this

25   state.  And they are all appointed by the governor.  So we

1    query whether it's possible that the State Election

2    Commission could be the executive to consent as they are a

3    party?

4         **JUDGE GERGEL:**  The answer is they do not have

5    it.  Just like in Benson, the Secretary of State in

6    Michigan didn't have that authority.  She was the election

7    commissioner there.

8         You need to go get -- you know, what these cases

9    say, regardless of whether the governor is a party or the

10   attorney general has appeared, you can't modify -- this is

11   a legislative action.  You need the players at the table

12   consenting.  So saying I don't oppose it is not the

13   answer.  You need to have an executive -- you know,

14   preferably, frankly, the governor.  But there may be an

15   argument under the state constitution, the attorney

16   general could do this, to consent on behalf of the state.

17        But, you know, at this point you need -- you

18   know, I think the safer thing is to go to the governor and

19   just tell him that.  I know legislative leaders can go to

20   the governor and speak to him about that.  That's the

21   easier thing.  But the simplest thing would be to pass the

22   plan and everybody sign it.  There may be something short

23   of that that would work.  But leaving the governor out is

24   not an option.

25        **MR. MOORE:**  Thank you, Your Honor.  I wanted to

1   raise that issue and I appreciate your --

2           **JUDGE GERGEL:**  It's a fair question, Mr. Moore.

3   It is a fair question.

4           **MR. BRYANT:**  Thank you, Your Honor.  Chris

5   Bryant for plaintiff again.  And just wanted to sort of,

6   in a statutory issue, the legislation -- you know, passing

7   this -- the map expressly empowers the Speaker and the

8   President of the Senate to sort of act on behalf of those

9   bodies.  And I guess that is both in litigation and

10  related matters.  And so that is, you know, instead of

11  having the majority, that's why we went this route.

12          **JUDGE GERGEL:**  Yeah.  I understand your view.

13  We read the language.  You know, I'm very familiar with

14  authority language.  It might be in a will.  It might be

15  in a trust.  It might be in a statute.  And the omission

16  of the authority to settle is, to me, very notable.  And,

17  you know, he does not have the authority.  But he could go

18  and if he could -- if he could determine he has the assent

19  of his body that he gets that authority, that's fine.  It

20  could be a joint resolution or an individual resolution of

21  the bodies.  It could be something with a vote that would

22  make it clear.  But, generally, having him say, well, I'm

23  the Speaker, I get to settle, I don't believe he has -- we

24  don't read the statute to give him that authority.

25          **MR. BRYANT:**  Thank you, Your Honor.

1          **MR. MOORE:**  And Your Honor, I don't want to try

2     to force patience.  Here's a question that I feel like I

3     must ask.  I take it the Court would not be inclined to

4     give us extra time just to try to accomplish those things,

5     to give us a litigation pause to try to accomplish that?

6     And if we can't accomplish it, we'd be able to give Your

7     Honor a quick answer.  Is the Court willing to consider

8     that?

9          **JUDGE GERGEL:**  No.  You know, my experience

10    doing this job now for a dozen years, is that deadlines

11    have a way of helping resolve things.  And if you can get

12    the authority -- the legislature is going to be gone in a

13    couple of weeks.  They're either going to do it or not.

14    They can do it.  You know, if there's a will, there's a

15    way to do this.  If they actually have the support of the

16    body to do it, there is a way to do this.  The fact that

17    they may not want to do it, prefer not to do it, I get

18    that.  I do, I get that.  But that's not the way -- we

19    have to act with authority.  And we've got to deal with

20    people who have actual authority, not just people who

21    happen to be parties to this lawsuit.  In a typical

22    lawsuit the parties can settle cases.  But this is not a

23    typical lawsuit.  This is one of the most sovereign acts

24    of a state which is adopting a redistricting plan.

25          **MR. MOORE:**  I hear Your Honor loud and clear.

1    Again, this is Mark Moore.  So we will not come back to

2    this Court and ask this Court for any consideration

3    scheduling a fairness hearing or doing a pause of this

4    litigation until and unless we can get those items.  And

5    if we can't get them, we can't get them and we'll try this

6    case.

7            JUDGE GERGEL:  That's exactly right.  And every

8    Court would prefer the parties to figure a way to work it

9    out.  In this case, the parties are a little complicated

10   because it's the state itself.  And, you know, you've got

11   to satisfy the formalities to authorize the settlement in

12   this situation.  And I think y'all know the roadmap.

13           MR. MOORE:  I think we do.

14           JUDGE GERGEL:  I laid it out to you.

15           MR. MOORE:  I think the three of you began to

16   lay it out for us clearly yesterday.  Today has been very

17   helpful.  We understand what we have to do.  And if we can

18   do it, then we'll be back to the Court.  If we can't, then

19   we'll be prepared to try this case.

20           It's not -- speaking for the House Defendants,

21   it's not that we don't want to try this case.  It's that

22   we thought that a resolution would be fair and just for

23   everyone.  And we still believe that.  But if we can't get

24   it, and we can't get it in the manner that the Court

25   believes is necessary to consider moving forward to a

1   consent decree, then we'll be prepared to try this case.

2           **JUDGE GERGEL:**  I think that's where we are.

3   Mr. Moore, anything further from the defense?

4           **MR. MOORE:**  We have nothing further from House

5   Defendants, Your Honor.

6           **JUDGE GERGEL:**  Okay.

7           Okay.  Judge Heytens, I'll pass it back to you.

8           **JUDGE HEYTENS:**  Well, I was just going to say I

9   didn't have anything else.

10          Judge Seymour, do you have anything else?

11          **JUDGE SEYMOUR:**  No, I don't have anything else

12   to add.  I think it's all been covered.

13          **JUDGE HEYTENS:**  Great.

14          With that, then I guess we will recess the

15   hearing.  Thank you, everyone, for your time.  And we'll

16   look forward to getting back to you on some things that we

17   need to get back to you on and hearing from you on

18   anything you need from us as we proceed forward.  Thank

19   you all.

20          **ATTORNEYS IN UNISON:**  Thank you.

21      (WHEREUPON, court was adjourned at 1:33 PM)

22                              * * *

23   I certify that the foregoing is a correct transcript from

24   the record of proceedings in the above-entitled matter.

25          s/Karen E. Martin                    4/27/2022
     Karen E. Martin, RMR, CRR            Date