# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, <br><br> and <br><br> TAIWAN SCOTT, on behalf of himself and all other similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission, <br><br> Defendants. | Case No. 3:21-cv-03302-MBS-TJH-RMG <br><br> **THREE-JUDGE PANEL** <br><br><br> **HOUSE DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO MOTION TO DISMISS THIRD AMENDED COMPLAINT** |

Defendants James H. Lucas (in his official capacity as Speaker of the South Carolina House of Representatives[1]), Chris Murphy (in his official capacity as Chairman of the South Carolina

---

[1] On May 12, 2022, James H. Lucas stepped down as Speaker of the South Carolina House of Representatives. The current Speaker of the House is Representative G. Murrell Smith, Jr. House Defendants will either file or consent to a motion amending the caption to correct the named party.

House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee[2]) (collectively, the "**House Defendants**"), by and through their undersigned counsel, hereby briefly reply[3] to Plaintiffs' Response to House Defendants Motion to Dismiss Plaintiffs' Third Amended Complaint [ECF No. 275].

## REPLY ARGUMENTS

### I. Plaintiffs' allegations regarding alleged particularized harm to voters are not sufficient to establish standing.

While it is undisputed that Plaintiff Scott lives in Congressional District 1 and Plaintiff SC NAACP has stated that they intend to produce names of members who are voters in each of the Challenged Congressional Districts,[4] Plaintiffs still fail to properly allege, as required, the particularized harms associated with the alleged racial gerrymandering or alleged racial discrimination. Instead of specifying such harm or providing affidavits or declarations as is required to support standing, Plaintiffs instead assert that pertinent legal principles are "irrelevant" and cast unwarranted accusations that House Defendants "fundamentally misunderstand redistricting law." [ECF No. 275 at 8, 11]. The Supreme Court and the District of South Carolina have made it clear that it is not enough to simply allege the existence of voters in the challenged

---

[2] The Redistricting Ad Hoc Committee is the correct name of the Committee that was tasked with redistricting this cycle.

[3] While the local rules discourage such replies to responses, House Defendants feel compelled to briefly address some of the response argument made by Plaintiffs. *See* Local Rule 7.07.

[4] To date, SC NAACP has not produced such a list. These names were also requested in written discovery by both the House and Senate Defendants, but Plaintiffs have failed to provide those names in response to written discovery in a timely manner. Plaintiffs have stated they intend to produce such a list once an Attorneys' Eyes Only Protective Order is entered.

districts, but rather that a plaintiff must allege the personal harms that underlie a racial gerrymandering claim in order to satisfy standing requirements.

Indeed, as a three-judge panel in this district confirmed that following the last redistricting cycle, stating that "[i]t is not enough for plaintiffs to allege that … that the racial composition of their district would have been different absent the racial gerrymander." *Backus v. South Carolina*, 857 F. Supp. 2d 553, 560 (D.S.C.), *aff'd*, 568 U.S. 801 (2012) (citing *United States v. Hays*, 515 U.S. 737, 746 (1995)). More recently, the Supreme Court noted that a voter has standing where "specific evidence demonstrates that he has suffered the special harms that attend racial gerrymandering." *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 283, 135 S. Ct. 1257, 1275, 191 L. Ed. 2d 314 (2015) (Scalia, J., dissenting) (citing *United States v. Hays*, 515 U.S. 737, 744–745 (1995)). Indeed, the Supreme Court has discussed the harms caused by racial classification. In general, those harms "threaten to stigmatize individuals by reason of their membership in a racial group and to incite racial hostility." *Shaw v. Reno*, 509 U.S. 630, 631 (1993). Harms also may occur when "a district obviously is created solely to effectuate the perceived common interests of one racial group, elected officials are more likely to believe that their primary obligation is to represent only the members of that group, rather than their constituency as a whole." *Id*. at 648. Accordingly, the Supreme Court has clearly articulated that only a citizen who is "able to demonstrate that he or she, personally, has been injured by that kind of racial classification has standing to challenge the classification in federal court." *United States v. Hays*, 515 U.S. at 744. This is not difficult to understand.

Plaintiffs have not alleged facts sufficient to support a single injury to any person, and, thus, do not have standing to bring their claims. Instead, Plaintiffs rely upon a circular argument that Scott and some unidentified number of members of the SC NAACP have been generally

3

injured because they are located within an allegedly racially gerrymandered district. In other words, Plaintiffs allege Scott and some unspecified members of the SC NAACP are injured but do not say how. This bald allegation is not enough to support Plaintiffs' standing. *See Backus*, 857 F. Supp. 2d at 560 ("Plaintiffs cannot assert a generalized grievance and must show that they have been *personally* denied equal protection." (emphasis added)).

### II. Plaintiffs rely on a small section of Richland County and an undisclosed analysis to combat the idea that partisan gerrymander underlies their claims.

While Plaintiffs do not allege partisan gerrymandering (as such claims are no longer cognizable in federal court post-*Rucho*), it is clear that politics, not race, underlies their claims. In an attempt to try to fix this deficiency in their allegations, Plaintiffs rely on an alleged "analysis of primary gubernatorial elections" to claim that white and Black voters of the same party were treated differently in their placement in Congressional Districts. [ECF No. 275 at 15]. However, Plaintiff's "analysis" only point to a small section of Richland County and state that Black voters were left in Congressional District 2 and white voters were moved into Congressional District 6. [*See* ECF Nos. 267 at ¶ 150; 275 at 16]. Plaintiffs claim this movement dispersed Black voters across Congressional Districts 2, 5, and 7. However, Plaintiffs fail to note that the Black voting age population ("**BVAP**") in Congressional District 2 has increased roughly three percent since the 2011 redistricting cycle, despite an overall decrease in BVAP statewide. This increase in Congressional District 2 does not support the type of race-based sorting that Plaintiffs baldly allege.

Plaintiffs continue to suggest that the two maps they proposed on October 8, 2021 would create a second district where Black voters could have the opportunity to elect the candidate of their choice. [*See* ECF No. 267 at ¶ 146]. Plaintiffs compare this to the enacted plan and allege that the enacted plan "ensur[ed] that Black voters could neither elect a candidate of their choice

4

nor impact elections in a district *other than* CD 6." [ECF No. 275 at 16 (citing ECF No. 267 at ¶ 148) (emphasis in original)]. Plaintiffs wholly ignore where Black voters live in South Carolina. As evidenced by their submissions, Plaintiffs went to extreme lengths to create non-compact, racially gerrymandered districts that split up to 19 counties in an effort to manufacture a Congressional District with a 34% BVAP. This effort is a thinly veiled attempt to create a second Democratic voting Congressional District in South Carolina, and, thus, evidences the political nature of their claims.

Finally, Plaintiffs make much ado about the perceived need for a racial polarized voting analysis to determine Section 2 liability under the Voting Rights Act. *See* ECF No. 275 at 14-18. However, Plaintiffs fail to square those complaints with the fact that this is not a Section 2 case. In addition, Plaintiffs note that Senator Campsen confirmed for the Senate that his plan did not include a racial polarized voting analysis, but fail to argue how that furthers their claims against the House Defendants.

### III.     Plaintiffs incorrectly assume that core retention is not a race-neutral redistricting principle and is a *post hoc* justification.

Preserving the core of previous districts, or core retention, is a race-neutral traditional redistricting principle. *See Colleton Cnty. Council v. McConnell*, 201 F. Supp. 2d 618, 647 (D.S.C. 2002), *opinion clarified* (Apr. 18, 2002) ("traditional redistricting principles in South Carolina have directed courts to maintain, where possible, recognized communities of interest and the cores of existing districts") (citing *S.C. State Conf. of Branches of Nat. Ass'n for Advancement of Colored People, Inc. v. Riley*, 533 F. Supp. 1178, 1180 (D.S.C.) (1982)). While it necessarily relies on the prior district lines, "Legislators' use of the core retention principle should certainly receive some degree of deference." *Bethune-Hill v. Virginia State Bd. of Elections*, 141 F. Supp. 3d 505, 545 (E.D. Va. 2015), *aff'd in part, vacated in part*, 137 S. Ct. 788 (2017). Still, "where district

5

lines track a path similar to their predecessor districts or where 'core retention' seems to predominate, courts should also examine the underlying justification for the original lines or original district." Here, the prior Congressional Districts were precleared by the Department of Justice **and** withstood federal court challenge. *See Colleton Cnty. Council v. McConnell*, 201 F. Supp. 2d 618, 647 (D.S.C. 2002), *opinion clarified* (Apr. 18, 2002). Thus, retaining the cores of those Congressional Districts is appropriate and race-neutral as the Department of Justice and federal judicial branch found no racial discrimination or racial gerrymandering based on those lines.

Plaintiffs also argue that this is an improper *post hoc* justification. [*See* ECF No. 275 at 24]. However, Plaintiffs fail to acknowledge that the Congressional plan as passed in Act No. 118 was modeled after the Senate Subcommittee Staff plan and the Senate specifically listed in its criteria that "[p]reserving the cores of existing districts" should be considered. [ECF No. 267 at ¶56]. Thus, core retention is an appropriate justification that was considered at the time of passing the Congressional plan and predominated over alleged racial classifications.

**IV.     Plaintiffs fail to explain why they would be entitled to relief in areas such as Lake City when they have not challenged adjoining Congressional Districts.**

Plaintiffs maintain they are entitled to statewide relief despite the fact that they only challenge Congressional Districts 1, 2, and 5. [*See* ECF No. 275 at 25]. However, even if Plaintiffs were able to mount a successful challenge to the composition of these three districts, these districts can be redrawn in any number of ways, including in ways that only affect those districts—and perhaps Congressional District 6 because of its location between them.

Plaintiffs do not challenge Congressional Districts 3, 4, 6, or 7. Because they have failed to make allegations against these districts, any remedy here would not require that a location such as Lake City, which is located between Congressional Districts 6 and 7 (two unchallenged

6

districts), to be redrawn. Thus, Plaintiffs have insufficiently plead their claims to support a remedy in areas such as Lake City.

## CONCLUSION

For the foregoing reasons, House Defendants respectfully move this Panel to dismiss Plaintiffs' Third Amended Complaint [ECF No. 267] with prejudice.

Respectfully submitted,

*s/ Mark C. Moore*
Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Erica H. Wells (Fed. ID No. 13206)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
EWells@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com

William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900
Greenville, SC 29601
Telephone: 864.370.2211
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com

June 10, 2022
Columbia, South Carolina

*Attorneys for James H. Lucas, Chris Murphy, and Wallace H. Jordan*