IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> HENRY D. MCMASTER, *et al.*, <br><br> Defendants. | Case No.  3:21-cv-03302-MBS-TJH-RMG <br><br> **SENATE DEFENDANTS' COMBINED MOTION FOR PROTECTIVE ORDER AND MOTION TO QUASH** |

Thomas C. Alexander, in his official capacity as President of the Senate, and Luke A. Rankin, in his official capacity as Chairman of the Senate Judiciary Committee (collectively, the "Senate Defendants"), respectfully move under Federal Rule of Civil Procedure 26 for a protective order preventing the disclosure of confidential documents, materials, and information subject to legislative privilege and shielding them from providing testimony regarding their decisionmaking. The Senate Defendants further move to quash Plaintiffs' Notice of Deposition of Will Roberts (Ex. A)—the sole deposition notice issued to a Senate staffer to date—to the extent Plaintiffs seek to inquire into matters subject to legislative privilege. *See, e.g.*, *Backus v. South Carolina*, No. 3:11-cv-03120 (D.S.C. Feb. 8, 2012) ("*Backus* Order") (Ex. B) (privilege extends to communications involving legislators and their agents, information related to the drafting of legislation, and materials reflecting the motives of legislators and their agents).

This Court previously rejected legislative privilege claims raised by the House Defendants and supported by the Senate Defendants. *See* Dkt. No. 153. In particular, the Court ordered the House Defendants to produce "[a]ll documents which relate in any manner to the intent behind any proposed design and/or revision of [the House Plan] or any individual district referenced in Plaintiffs' Amended Complaint" and to submit to "[d]epositions of all legislators, staff (including

1

Map Room staff) and consultants involved in the development, design and/or revisions of [the House Plan]." *Id.* at 17–18.  The Court's order was limited to Plaintiffs' discovery requests regarding the South Carolina House Redistricting Plan enacted as part of H. 4993.  *See id.*  The Senate Defendants now bring this motion to present and preserve their arguments that legislative privilege and controlling precedent shield them and their staff members from the similar discovery requests Plaintiffs now have propounded related to the Congressional Plan enacted as S. 865.  The Court should uphold the legislative privilege and independence vital to the functioning of the South Carolina General Assembly and grant the motion.[1]

## BACKGROUND

Plaintiffs' operative Third Amended Complaint purports to plead two claims: a racial gerrymandering claim and an intentional discrimination claim against the Congressional Plan that the General Assembly enacted earlier this year.  *See* Dkt. No. 267 ¶¶ 160–173.  Plaintiffs served their first discovery requests on the Senate Defendants on March 7, 2022.  The Senate Defendants timely served their responses and objections to those requests on April 6, 2022.  Plaintiffs did not raise any objections to the Senate Defendants' responses until 43 days later.  *Compare* D.S.C. Loc. Civ. R. 37.01(A) ("Motions to compel discovery must be filed within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed" unless "counsel are actively engaged in attempts to resolve the discovery dispute").

Nonetheless, the Senate Defendants have proceeded in good faith in an attempt to resolve several discovery disputes with Plaintiffs.  To date, the Senate Defendants have produced more than 2,500 documents and are preparing to produce several thousand more.  The Senate Defendants

---

[1] Senate Defendants' counsel certifies that he conferred with Plaintiffs' counsel in good faith on June 15, 2022 but was unable to resolve this issue.  *See* D.S.C. Local Civ. R. 7.02.

2

have also withheld certain materials protected by legislative privilege, including (1) confidential communications amongst legislators and/or their agents concerning the Congressional Plan; and (2) non-public draft Congressional redistricting plans and associated data and documents. *See* Privilege Log (Ex. C). Plaintiffs have objected to the Senate Defendants' claims of legislative privilege with respect to these materials. Plaintiffs have also noticed the deposition of a Senate staffer, Will Roberts, *see* Ex. A, and they have indicated that they intend to seek the depositions of at least one member of the South Carolina Senate, Defendant Rankin, and additional Senate staff. The Senate Defendants maintain that legislative privilege and controlling precedent protect them and their staff against the production of documents and depositions that Plaintiffs seek.

## STANDARD OF REVIEW

"[A] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c)(1). "The court may, for good cause, issue an order to protect [the] party or person," including by "forbidding the disclosure or discovery," "forbidding inquiry into certain matters," or "limiting the scope of disclosure or discovery to certain matters." *Id.* A protective order is warranted when the requested discovery concerns privileged matters. *See* Fed. R. Civ. P. 26(b)(1), (2)(C) (only "nonprivileged matter[s]" are discoverable); Dkt. No. 153 at 5 (similar). An order quashing a deposition notice in whole or in part is likewise warranted to the extent the deposition seeks privileged information. *See* Fed. R. Civ. P. 26(b)(1), (2)(C); *Backus* Order at 2; *see also Fish v. Air & Liquid Sys. Corp.*, No. 16-cv-0496, 2017 WL 697663, at *21 (D. Md. Feb. 21, 2017).

## ARGUMENT

The Senate Defendants are entitled to a protective order preventing the disclosure of the withheld communications, draft Congressional redistricting plans, and associated documents and data and shielding them and their staff from depositions regarding internal deliberations and

3

communications regarding the Congressional Plan. The Senate Defendants are also entitled to an order quashing the Roberts deposition notice to the extent Plaintiffs seek to inquire into matters subject to legislative privilege. There can be no dispute that the discovery Plaintiffs seek implicates legislative privilege, which extends to confidential information about "legislative activities," such as materials reflecting the deliberations, analysis, and motivations of legislators and their agents with respect to the enactment of legislation. *EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 180–81 (4th Cir. 2011); *see also Backus* Order; *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 338 (E.D. Va. 2015). Accordingly, the Senate Defendants and their staff should be shielded from the discovery Plaintiffs seek for four reasons.

*First*, the legislative privilege implicated here is absolute. *Second*, even if legislative privilege is qualified in this context, it is subject to a stringent standard that Plaintiffs have not satisfied. *Third*, even if the Court again uses the five-factor test to evaluate qualified legislative privilege, each of the factors favors upholding the privilege. *Finally*, even setting aside legislative privilege, the Senate Defendants may not be deposed regarding their decisionmaking because this case does not present an extraordinary instance of bad faith or improper behavior. The Court should grant the combined motion and enter a protective order.

I.  **ABSOLUTE LEGISLATIVE PRIVILEGE PROTECTS AGAINST THE DISCOVERY PLAINTIFFS SEEK.**

The Court should grant the combined motion because—as the Senate Defendants explained in their brief supporting the House Defendants' privilege claims—legislative privilege is absolute in this context. *See* Dkt. No. 133 at 1–7. The Senate Defendants incorporate their prior arguments by reference, *see id.*, but acknowledge that the Court previously rejected them, *see* Dkt. No. 153 at 8–11.

4

## II. EVEN IF LEGISLATIVE PRIVILEGE IS QUALIFIED, IT IS SUBJECT TO A STRINGENT NECESSITY STANDARD THAT PLAINTIFFS HAVE NOT SATISFIED.

Even if the Court concludes that the Senate Defendants' legislative privilege is not absolute, they possess a qualified privilege that protects them against the discovery Plaintiffs seek. Even such a qualified privilege protects confidential documents, materials, and information from compelled disclosure unless Plaintiffs make the demanding showing that (1) they have a specific, substantial need for the document, material, or information sought, including that the item likely constitutes important evidence and that its substantial equivalent is not available through other means; and (2) this need outweighs the critical legislative interests protected by the privilege. This stringent standard is appropriate for several reasons.

*First*, a stringent necessity standard is mandated by *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977). The Supreme Court has long instructed that *Arlington Heights* provides the framework that courts should use to assess whether redistricting or other legislative decisions discriminated in violation of the Equal Protection Clause. *See Reno v. Bossier Par. Sch. Bd.*, 520 U.S. 471, 488–89 (1997) (collecting cases). And *Arlington Heights* "made clear that utilizing a legislator to prove intent would rarely if ever be available." *Dyas v. City of Fairhope*, No. 08-cv-0232, 2009 WL 3151879, at *9 n.9 (S.D. Ala. Sept. 24, 2009); *see Lee v. City of Los Angeles*, 908 F.3d 1175, 1187–88 (9th Cir. 2018). Indeed, under *Arlington Heights*, legislators may be required to testify only in "*extraordinary* instances," and "even then such testimony *frequently* will be barred by privilege." 429 U.S. at 268 & n.18 (citing, *inter alia*, *Tenney*, 341 U.S. at 71) (emphasis added). Recognizing that *Arlington Heights* thus "severely limit[s] … the possibility of piercing the privilege for state legislators in discriminatory-intent claims," courts have held that legislative privilege yields only if "absolutely necessary"—*i.e.*, only if a sufficiently great need outweighs the interests protected by the privilege.

5

*Veasey v. Perry*, No. 13-cv-0193, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014); *see Orange v. Cty. of Suffolk*, 855 F. Supp. 620, 623–24 (E.D.N.Y. 1994) (legislative privilege yields only when there is sufficient "need" and "compelling justification"); *Miles-Un-Ltd., Inc. v. Town of New Shoreham*, 917 F. Supp. 91, 100–01 (D.N.H. 1996) (similar); *see also N. Carolina State Conf. of the NAACP*, 2014 WL 12526799, at *4 (legislative privilege depends on "whether the need for disclosure and accurate fact finding outweighs the legislature's need to act free of worry about inquiry into its deliberations").

*Second*, this standard aligns legislative privilege with executive and judicial privileges, which yield only to a showing of particular necessity. *See, e.g.*, *In re Sealed Case*, 121 F.3d 729, 737, 754 (D.C. Cir. 1997) (executive privileges yield only to sufficient showings of "need," including that "each discrete group of … materials likely contains important evidence" and "this evidence is not available with due diligence elsewhere"); *Matter of Certain Complaints*, 783 F.2d 1488, 1522 (11th Cir. 1986) (judicial privilege yields only when a "sufficiently great" "need" outweighs the "intrusion" into the judiciary); *see also Murray Energy Corp. v. McCarthy*, No. 14-cv-0039, 2015 WL 7017009, at *2 (N.D.W. Va. Nov. 12, 2015) (collecting cases supporting that executive officials' mental-process privilege does not yield absent "special need"). A legislature "is not unlike other branches of government" when it comes to the "need for confidentiality." *Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections*, No. 11-c-5065, 2011 WL 4837508, at *8–9 (N.D. Ill. Oct. 12, 2011). Just like executive and judicial officials and their staffs, legislators and their staffs "must be able to confer with one another without fear of public disclosure." *Id.* Because legislators are "similar" to other officials in this this respect, *see id.*, legislative privilege should be subject to a similar necessity standard.

6

*Third*, a stringent standard comports with other comparable privileges. Under the work-product doctrine, for instance, even mere factual work product is protected from disclosure unless the opposing party shows that it has a "substantial need" for the materials and an "inability" to secure their substantial equivalent by alternate means without "undue hardship." *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017). And disclosure of *opinion* work product—which is comparable to the deliberative legislative materials here—requires a "far stronger showing of necessity and unavailability by other means," rendering such materials discoverable only in "'very rare and extraordinary circumstances.'" *United States v. Bertie Ambulance Serv., Inc.*, No. 14-cv-0053, 2015 WL 3932167, at *7 (E.D.N.C. June 25, 2015) (quoting *In re Doe*, 662 F.2d 1073, 1080 (4th Cir. 1981)); *see In re Grand Jury Subpoena*, 870 F.3d at 316. Like the work-product doctrine, other qualified privileges also yield only if necessity is shown. *See, e.g.*, *United States v. Zubaydah*, 142 S. Ct. 959, 967, 971 (2022) (state secrets privilege); *Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 380 (D. Md. 2014) (trade secrets privilege); *see also Horne v. WTVR, LLC*, 893 F.3d 201, 212–13 (4th Cir. 2018) (journalist's privilege).

Accordingly, even if the Court concludes that legislative privilege is not absolute here, it still should apply a stringent necessity standard to determine whether Plaintiffs can defeat the Senate Defendants' legislative privilege. Plaintiffs have not satisfied, and cannot satisfy, that standard. Indeed, the Senate Defendants already have produced more than 2,500 documents in response to Plaintiffs' requests and are preparing to produce thousands more. Moreover, the documents and information already made available in the public record—the maps, papers, data, letters, written public testimony, and videos of public hearings and debates in subcommittee, committee, and on the Senate floor—are "what was in the contemporaneous record in the redistricting process." *Bethune-Hill*, 114 F. Supp. 3d at 341. Plaintiffs have not attempted to

7

explain why this substantial available evidence is insufficient such that it is necessary to inquire into the motivations of the Senate Defendants and their staff. Nor could they, given that "the Supreme Court has never held that 'a legislative act may violate equal protection solely because of the motivations of the men who voted for it'" and, moreover, the Third Amended Complaint does not even allege that the Senate Defendants individually harbored impermissible motivations. Dkt. No. 153 at 12 (quoting *Palmer v. Thompson*, 403 U.S. 217, 224 (1971)); *see Meek v. Rideoutte*, No. 88-cv-3471, 1990 WL 322973, at *1 (D.S.C. Nov. 9, 1990) (granting motion for protective order because South Carolina legislators' motivations in enacting an allegedly discriminatory statute were "not relevant"). Because Plaintiffs have not made, and cannot make, the demanding showing required to defeat even a qualified legislative privilege, the Court should grant the combined motion.

### III.   THE FIVE-FACTOR TEST IS INAPPLICABLE AND FAVORS UPHOLDING THE PRIVILEGE IN ANY EVENT.

The Court previously applied a five-factor test to reject the House Defendants' claims of legislative privilege. *See* Dkt. No. 153 at 11–17. As the Senate Defendants previously explained, however, the five-factor test is inapplicable to this case as a matter of law. *See* Dkt. No. 133 at 4–7. And in any event, as the Senate Defendants further explained, each of the five factors—relevance, availability of other evidence, seriousness of the litigation and issues involved, role of government, and purpose of the privilege—point in favor of upholding the legislative privilege in redistricting cases such as this one involving claims of racial gerrymandering and intentional discrimination, particularly where, as here, the information demanded by the plaintiff would reveal the private internal deliberations of legislators and their aides. *See id.* at 7–10. For these reasons as well, the Court should grant the combined motion.

8

### IV. THE SENATE DEFENDANTS MAY NOT BE DEPOSED REGARDING THEIR DECISIONMAKING BECAUSE THIS CASE DOES NOT PRESENT AN "EXTRAORDINARY INSTANCE."

Finally, even setting aside legislative privilege, the Senate Defendants are entitled to a protective order shielding them from providing any deposition testimony regarding their decisionmaking. As *Arlington Heights* explains, courts assessing claims of intentional discrimination may consider various forms of "circumstantial and direct evidence of [legislative] intent as may be available." 429 U.S. at 266. But because "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government," requiring a legislator or other governmental decisionmaker to provide testimony "concerning the purpose of the official action" is "'usually to be avoided'" and may occur only in "some extraordinary instances" and "even then such testimony frequently will be barred by privilege." *Id.* at 268 & n.18 (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). Thus, even apart from privilege issues, *Arlington Heights* establishes that a plaintiff seeking testimony from a legislator regarding his or her decisionmaking must demonstrate that the case presents an "extraordinary instance." *See id.*; *see also Dyas v. City of Fairhope*, No. 08-cv-0232, 2009 WL 3151879, at *9 (S.D. Ala. Sept. 24, 2009) (*Arlington Heights* "require[s] both extraordinary circumstances and an exception to the privilege in order to question a legislator concerning intent" (emphasis added)).

*Arlington Heights* does not further delineate the "extraordinary instances" requirement, but its reliance on *Overton Park* makes clear what this requirement entails. *See Arlington Heights*, 429 U.S. at 268 & n.18. In *Overton Park*, just as in *Arlington Heights*, the Supreme Court explained that requiring governmental decisionmakers to provide testimony regarding their decisionmaking is "usually to be avoided." *Overton Park*, 401 U.S. at 420. Thus, the Court continued, a case presents the rare instance requiring "such inquiry" only if there is "a strong

9

showing of bad faith or improper behavior," *id.*—a "narrow exception" to the "general rule" against inquiring into government officials' decisionmaking, *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2573–74 (2019); *see also Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211–12 & n.3 (4th Cir. 1991) (the "extraordinary circumstances" necessary to compel a governmental decisionmaker to testify exist "[o]nly where there is a clear showing of misconduct or wrongdoing"); *In re McCarthy*, 636 F. App'x 142, 144 (4th Cir. 2015) (similar). Although *Overton Park* and most related cases are Administrative Procedure Act cases involving executive branch decisionmakers, *Arlington Heights* instructs that the same principles apply in constitutional cases involving legislative decisionmakers. *See* 429 U.S. at 268 & n.18. Accordingly, to demonstrate that a case presents an "extraordinary instance" requiring legislators to testify, a litigant must make a "strong showing of bad faith or improper behavior." *See Overton Park*, 401 U.S. at 420; *Franklin Sav. Ass'n*, 922 F.2d at 211–12.

Plaintiffs have not come close to satisfying this requirement. They have not made *any* evidentiary showing—much less a *strong* showing—of bad faith or wrongdoing by the Senate Defendants. The Third Amended Complaint's various allegations are just that—mere allegations, not the requisite showing—and in any event provide no basis to conclude that the Senate Defendants acted in bad faith or engaged in any individual misconduct. Indeed, in the few instances in which the Third Amended Complaint even mentions particular actions taken by the Senate Defendants, it generally alleges that they engaged in commonplace legislative activity, not extraordinary wrongdoing. *See* Dkt No. 267 ¶ 119 ("Sen. Rankin acknowledged that the Subcommittee just posted two proposals … less than 48 hours before the hearing."), ¶ 130 ("Sen. Rankin provided an overview of the Senate Redistricting Subcommittee's plan and a brief overview of the Senate's redistricting criteria.").

Nor does this case present an "extraordinary instance" merely because it is an Equal Protection challenge to alleged racial gerrymandering and discrimination, as some district courts have suggested. *See, e.g.*, *Bethune-Hill*, 114 F. Supp. 3d at 337. Contrary to that categorical view, only a case-specific showing of misconduct by governmental decisionmakers can establish that a case is "extraordinary." Indeed, it would defy the ordinary meaning of "extraordinary" to require legislators to testify in *every* Equal Protection case involving voting rights. And as the Ninth Circuit explained in holding that racial gerrymandering claims are not categorically "extraordinary," although such claims may be "serious" and implicate "important constitutional right[s]," *Arlington Heights* "itself also involved an equal protection claim alleging racial discrimination—putting the government's intent directly at issue—but nonetheless suggested that such a claim was *not*, in and of itself, within the subset of 'extraordinary instances'" requiring legislators to testify. *Lee*, 908 F.3d at 1188 (emphasis added); *see also Texas v. Holder*, No. 12-cv-0128, 2012 WL 13070061, at *1 (D.D.C. Apr. 20, 2012) (voting rights cases do not categorically constitute "extraordinary circumstances"); *Florida v. United States*, 886 F. Supp. 2d 1301, 1304 (N.D. Fla. 2012) (similar). So too, this case is not "extraordinary" merely because Plaintiffs allege racial gerrymandering and intentional discrimination claims.

## CONCLUSION

The Court should enter a protective order upholding the Senate Defendants' legislative privilege and shielding the Senate Defendants from providing testimony regarding their decisionmaking. The Court should also quash the Roberts deposition notice to the extent Plaintiffs seek to inquire into matters subject to legislative privilege.

June 16, 2022                                  Respectfully submitted,

                                                                  /s/Robert E. Tyson, Jr.
Robert E. Tyson, Jr. (7815)
Vordman Carlisle Traywick, III (12483)
La'Jessica Stringfellow (13006)
ROBINSON GRAY STEPP & LAFFITTE, LLC
1310 Gadsden Street
Post Office Box 11449 (29211)
Columbia, South Carolina 29201
(803) 929-1400
rtyson@robinsongray.com
ltraywick@robinsongray.com
lstringfellow@robinsongray.com

John M. Gore (admitted *pro hac vice*)
Stephen J. Kenny (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
skenny@jonesday.com

*Counsel for Senate Defendants*