IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS C. ALEXANDER, *et al.*,<br><br>Defendants. | Case No. 3:21-cv-03302- MBS-TJH-RMG<br><br>**THREE-JUDGE PANEL** |

### PLAINTIFFS' MOTION TO COMPEL PRODUCTION

### INTRODUCTION

This motion is necessary because Senate Defendants have taken the extraordinary position that this Court's prior discovery orders concerning legislative privilege (ECF 119) and personal email accounts (ECF 221) do not apply to them. In particular, this Court already rejected both House and Senate Defendants' (collectively, "Defendants") arguments (ECF 133 and 134) that legislative privilege is an adequate basis to withhold information that broadly addresses issues of a discriminatory intent during the redistricting cycle.

Although Plaintiffs and Defendants have collaborated productively on several discovery issues, Senate Defendants have drawn two bright lines that should already be resolved. First, they refuse to forego asserting legislative privilege over documents related to congressional redistricting. Second, they are not conducting searches of anyone's personal email accounts for relevant discovery. Considering this Court's prior rulings, and similar holdings by other federal courts, Plaintiffs ask that the Court grant their motion to compel.

1

## BACKGROUND

On February 10, 2022, after briefing from Plaintiffs and *both* Defendants, this Court ordered House Defendants to produce certain materials they claimed were protected by legislative privilege. After considering oppositions filed by both the Senate and the House Defendants (ECF 133 & 134), the Court found that privilege inapplicable "because the Legislature's decision-making process itself is the case." ECF No. 153 ("February 10 Order") at 12. The Court further announced that the "parties should refer to this order to clarify the permissible scope of discovery, which is hereby limited to documents, communications, and information which broadly address the issue of discriminatory intent in the present redistricting cycle, by individual legislators or the Legislature as a whole." *Id.* at 17.

Two months later, this Court ordered House Defendants to search the personal email accounts of named House Defendants and members of the Ad Hoc Committee on Redistricting and produce any responsive, non-privileged material found there. ECF No. 221 ("April 13 Order") at 3. The Court premised that decision on the information that "one or more of these legislators *may have* received or sent" redistricting-related information from personal email accounts. *Id.* (emphasis added). This Court further instructed House Defendants that any documents "claimed to be privileged" must be disclosed in a privilege log. *Id.* And this Court required each legislator who searched their personal accounts and devices to sign a certification form under penalty of perjury stating that they had done so. *Id.*

After Plaintiffs and House Defendants entered into an agreement to resolve the claims relating to the challenged state House districts, Senate Defendants have stymied reasonable discovery efforts about congressional redistricting in two ways. First, they refuse to acknowledge that this Court's February 10 order applies to them. Instead, Senate Defendants have sought to

revive arguments this Court already rejected. Second, they refuse to even search documents from Senate Defendants' personal email accounts despite the April 13 order.

Plaintiffs relied on these two orders during ongoing discovery discussions. But Senate Defendants have rebuffed Plaintiffs' attempts to resolve both of these issues outside of court.[1] As one example, Senate Defendants informed Plaintiffs in a May 20, 2022 letter that "Senate Defendants reserve the right to take all necessary and appropriate steps to preserve their claim of legislative privilege," and that "Senate Defendants . . . have not searched, and do not intend to search, any personal email accounts at this time." Ex. B (Senate Defs.' May 20, 2022 Letter to John Hindley) at 4-5. As an alternative route to seeking this information, Plaintiffs reached out to Senate Defendants in mid-May seeking deposition dates in late May or early June for certain staff that report to Senate Defendants. But Senate Defendants have refused to schedule depositions of witnesses they represent until June 29th at the earliest. Ex. D (Senate Defs.' June 3, 2022 Email to John Hindley) at 1. Therefore, Plaintiffs have been unable to access needed information via depositions either, forcing this motion instead.[2]

---

[1] In a May 19, 2022 letter, Plaintiffs asked Senate Defendants to clarify whether Senate Defendants would search custodians' personal accounts, in line with the Court's April 13 Order. Ex. A. The next day, Senate Defendants responded that they "d[id] not intend to search" personal email accounts. Ex. B. The parties discussed the issue of personal emails at a meet-and-confer on May 23, 2022, and Senate Defendants promised to consider the issue. On May 27, 2022, counsel for Senate Defendants wrote in an email, "We look forward to sharing our proposal on . . . personal email searches." Ex. C. However, Senate Defendants never committed to review or produce any documents other than those casually observed to exist during the regular course of making productions of documents from government accounts.

[2] Plaintiffs have satisfied their Local Rule 7.02 requirement through multiple written communications and phone conferences

# ARGUMENT

## I. This Court Has Established the Qualified Nature of Legislative Privilege in this Case

### A. Law of the Case Doctrine

Senate Defendants refuse to comply with the February 10 Order concerning legislative privilege. But that order is the "law of the case," a doctrine positing that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009) (quoting *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999)). The doctrine "serve[s] the goals of finality and predictability in the trial court," and applies "unless (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *TFWS, Inc.*, 572 F.3d at 191 (quoting *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999)); *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 807–08 (E.D. Va. 2007) (citing *Smith v. Bounds*, 813 F.2d 1299, 1304 (4th Cir. 1987)).[3] None of these exceptions applies, and therefore the February 10 Order is the law of the case.

*First*, no "substantially different" evidence has emerged since the Court's February 10 Order. The factual underpinning of Plaintiffs' claims of racial gerrymandering and intentional racial discrimination during the present redistricting cycle remain unchanged. *Compare* Third Am. Comp., ECF No. 267, *with* Second Am. Comp. ECF No. 116. No new evidence has emerged—either from Senate Defendants' productions to date, or from publicly available

---

[3] District courts in the Fourth Circuit routinely apply the law of the case doctrine and the three-pronged analysis from *TFWS, Inc. v. Franchot* to their own interlocutory orders. *United States v. Duke Energy Corp.*, No. 1:00CV1262, 2014 WL 4659479, at *4 n.5 (M.D.N.C. Sept. 17, 2014) (citing *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003)).

information regarding the redistricting process—that would call into question this Court's understanding of the facts at the time of its February 10 Order. Indeed, Senate Defendants have not identified anything to suggest otherwise.

*Second*, there is no intervening contrary authority. Instead, since the February 10 order, persuasive authority has been rendered that is consistent with it. As one example, when faced with an analogous situation in *La Union Del Pueblo Entero v. Abbott*,[4] a Texas district court explained that "the privilege accorded to state legislators is qualified." No. SA-21-CV-00844-XR, 2022 WL 1667687, at *2 (W.D. Tex. May 25, 2022) (citing *United States v. Gillock*, 445 U.S. 360, 373 (1980)). *See also League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00259-DCG-JES-JVB, 2022 WL 1570858, at *1 (W.D. Tex. May 18, 2022), *cert. denied sub nom. Guillen v. LULAC*, No. 21A756, 2022 WL 1738936, at *1 (U.S. May 31, 2022) (recognizing that legislative privilege "is, at best, one which is qualified.") (internal citations omitted). In response to plaintiff League of United Latin American Citizens' ("LULAC") motion to compel documents and communications withheld by state legislators on the basis of legislative privilege, the court applied a five-factor test analogous to the test the Fourth Circuit applied in *Bethune-Hill*. *Id*. ("The *Rodriguez* court articulated five factors to consider in making such a determination: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced

---

[4]    This action arose out of an omnibus voting bill, Senate Bill 1, the State of Texas enacted on August 31, 2021. Plaintiffs, League of United Latin American Citizens *et al*., claim, *inter alia*, that the Texas Legislature enacted Senate Bill 1 with the intent to discriminate against certain racial minorities, including Black and Latinx voters. *See La Union Del Pueblo Entero*, No. SA-21-CV-00844-XR, 2022 WL 1667687 at *1.9

to recognize that their secrets are violable.") (citing *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 100 (S.D.N.Y. 2003))).

The court concluded, *inter alia*, that on balance each factor weighed in favor of disclosure. *Id*. at *6-7 ("the Court finds that the need for accurate fact finding outweighs any chill to the legislature's deliberations.") (citing *Baldus v. Brennan*, No. 11-CV-562, 11-CV-1011, 2011 WL 612542, at *2 (E.D. Wis. Dec. 8, 2011))). Thus, the Texas court granted plaintiffs' motion to compel, ordering state legislators to produce the documents at issue, which included internal documents such as notes and drafts of election legislation as well as communications between the state legislators and their staff. *Id*. at *7-8 (ordering production of all documents, with the exception of one that the court deemed appropriately shielded by attorney-client privilege). The *La Union Del Pueblo Entero* court's order is consistent with this Court's February 10 Order. Plaintiffs are not aware of any controlling authority that counters the Court's February 10 Order, and Senate Defendants have not identified any while justifying their assertion of legislative privilege.

The third exception, regarding clear error or manifest injustice, also does not apply here. "Clear error occurs when [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *Duke Energy Corp.*, No. 1:00CV1262, 2014 WL 4659479, at *4 (citing *United States v. Woods,* 477 F. App'x 28, 29 (4th Cir. 2012)). "Manifest injustice" is "an error by the court that is direct, obvious, and observable." *Duke Energy Corp.*, No. 1:00CV1262, 2014 WL 4659479, at *5 (citing *Smith v. Waverly Partners, LLC,* No. 3:10-CV-28, 2011 WL 3564427, at *3 (W.D.N.C. Aug. 12, 2011) ("In the context of a motion to reconsider, manifest injustice is defined as 'an error by the court that is direct, obvious, and observable.'"); *see also Register v. Cameron & Barkley Co.,* 481 F. Supp. 2d 479, 480 n. 1 (D.S.C. 2007)). The Court's February 10

Order is consistent with numerous other circuit and district court rulings on this issue, and persuasive authority rendered since the Court's Order is consistent with it, and thus cannot be characterized as a "clear error" or "manifest injustice." *See* ECF No. 119 at 9-10; ECF No. 153 at 11, fn. 4 (listing numerous, consistently held circuit and district court opinions).

None of the three exceptions from *TFWS, Inc. v. Franchot* apply. This Court therefore has no reason to revisit its February 10 Order regarding the defendants' qualified legislative privilege in this case.

### B. Pursuant to the Court's February 10 Order, Senate Defendants are Required to Produce Requested Documents, Communications, and Information which are Relevant to the Broad Issue of Legislative Motivation in the Enactment of S. 865

The Court's February 10 Order should apply to Senate Defendants' duty to produce discoverable documents regarding congressional redistricting. In its Order, this Court recognized that "when cherished and constitutionally rooted public rights are at stake, legislative evidentiary privileges must yield" and established that Defendants' legislative privilege is qualified in this case. ECF No. 153 at 10-17. The Senate Defendants briefed this issue and claimed that "legislative privilege shields South Carolina legislators and their aides from compelled production of documents or of information or testimony 'concerning communications or deliberations involving legislators or their agents regarding their motives in enacting legislation.'" ECF No. 133 (Sen. Defs.' Resp. to Pls.' Mot. to Compel Prod. of Docs. and Info. Requested from House Defs.) at 3-4 (internal citations omitted). The Court explicitly rejected that argument. ECF No. 153 at 8-11. The Senate Defendants have not filed a motion for reconsideration and do not get a second bite at the apple.[5]

---

[5] If this were a new case against Senate Defendants, collateral estoppel would clearly apply. *See e.g., In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) ("Applying collateral estoppel 'forecloses the relitigation of issues of fact or law that are identical to issues

7

As noted, this Court applied the five-factor *Bethune-Hill* balancing test and determined that "each factor weighs in favor of at least some degree of disclosure," and thus "reject[ed] Defendants' broad conception of the legislative privilege, and orders Defendants to produce requested documents, communications, and information which are relevant to the broad issue of legislative motivation." ECF No. 153 at 16-17 (referring to *Bethune-Hill v. Va. State Bd. Of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015)).

Specifically, the Court found that "the evidence sought by Plaintiffs is highly relevant to the intentional discrimination claims at the heart of the complaint, because the Legislature's 'decision making process itself is the case' . . . thus, Plaintiffs' request for documents and communications which may demonstrate discriminatory intent by legislators or their key agents is, at a minimum, relevant under the first factor." ECF No. 153 at 12-23 (citing *Bethune-Hill*, 114 F. Supp. 3d at 339). Regarding the second factor, this Court found "no other evidence would be a probative of an unlawful legislative motive as potential direct or circumstantial evidence which could be obtained through the disclosure of the requested legislative materials." *Id*. at 13. Under the third factor, this Court concluded that "{i}t is beyond dispute that the allegations in Plaintiffs' complaint allege serious issues of constitutional law. The right to have one's vote counted is indispensable to individual liberty and enshrined within our Constitution." *Id*. at 14. And that "{i}t is difficult to overstate the importance of securing the fundamental right to vote for every South Carolina citizen in the coming decade." *Id*. at 15. The Court also found that factors four

---

which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate.'"); *cf. DBN Holding, Inc. v. Int'l Trade Comm'n*, 755 F. App'x. 993 (Fed. Cir. 2018) ("[W]here we have a continuation of the same proceeding, Investigation Number 338-TA-854, neither issue nor claim preclusion apply. The Commission might have more appropriately referred to the basis of its denial of the petition as barred by the 'law of the case doctrine', rather than generally invoking 'res judicata.'").

and five, on balance, suggest the legislative privilege out to yield and weighed in favor of disclosure. *Id*. at 15-16.

Plaintiffs again seek disclosure of information from state legislators and their staff that may provide evidence of intent related to congressional redistricting. Plaintiffs' claims regarding S. 865—that is, intentional discrimination and racial gerrymandering—are the same as those alleged against House Bill 4493. *See* ECF No. 119 (Pls.' Mot. to Compel Prod. of Documents and Information Requested from House Defs.'). Thus, at a minimum and like with House Defendants, the Court should order that Plaintiffs are entitled to the following discovery in its case against Senate Defendants:

1. Depositions of all legislators, staff (including Map Room staff) and consultants involved in the development, design and/or revisions of S. 865.

2. All versions of maps and related documents produced during the course of the development, design, and/or revisions of S. 865 and sufficient data to determine the date and time such maps were produced and the persons involved in submitting and reviewing them;

3. All documents which relate in any manner to the intent behind any proposed design and/or revision of the S. 865 or any individual district referenced in Plaintiffs' Third Amended Complaint;

4. All documents related to any racially polarized voting analysis utilized in the development, design and/or revision of S. 865;

5. Documents which identify and/or describe any computer software utilized in the development, design and/or revising of S. 865;

6. Any documents produced and/or provided by persons not legislators or staff which relate to the development, design and/or revision of S. 865; and

7. All documents which address any changes in districts from the previously existing Congressional Plan to S. 865.

ECF No. 153 at 17. The Court should find that the documents referenced above shall be produced by Senate Defendants by June 21, 2022—the date by which Senate Defendants have committed to substantial completion of production—or as soon as practically possible. To the extent that there

are any remaining documents for which the Senate Defendants deem protected from production under a theory of legislative privilege, Plaintiffs ask the Court to order Senate Defendants to produce a privilege log listing all of the documents by June 21, 2022 or as soon as practically possible as well.

**II.     The Court Should Compel Senate Defendants to Search Personal Emails or Else Certify that None Exist**

In addition to improperly refusing to produce documents described above pursuant to legislative privilege, Senate Defendants have thus far refused to collect—much less search, review, and produce—documents from the custodians' personal email accounts. Senate Defendants have also failed to make reasonable inquiries of their clients and their client's agents whether responsive materials exist. Senate Defendants base these decisions on counsel's misguided belief that, under this Court's April 13 Order, personal emails need not be collected or searched absent explicit evidence that those accounts were used to discuss redistricting matters, and that no such evidence has turned up. First, the April 13 Order contains no such requirement. At most, the April 13 Order notes that "the Panel is informed that one or more of these legislators *may have* received or sent" House-related redistricting information via personal accounts. April 13 Order at 3 (emphasis added). That observation in no way requires explicit evidence of personal email use ("may have"), and is not a directive required by the Court's order, which appears independently in the following sentence. *Id.*[6]

Further, even if such evidence were required, counsel have not conducted a proper inquiry into the existence of relevant personal emails and communications. Counsel's position is that they

---

[6]     Senate Defendants' reliance on the April 13 Order is not only misguided but all-too-convenient, given their simultaneous refusal to be bound by the Court's prior order on legislative privilege. *See supra* Part I.A.

have not personally observed any indication of personal email use among Defendants' prior productions. And when counsel asked the two named Senate Defendants whether they ever used their personal accounts, they said they "do not recall". But counsel has not asked Senate Defendants to review their personal emails to verify whether this is true, and (presumably for that reason) they remain unwilling to sign any certification of that fact.[7] Moreover, defense counsel has not made inquiries of any other Senators, Senate staff, or key aides or consultants to the Senate Defendants. The Senate Defendants have also refused to allow Plaintiffs to begin deposing the relevant parties, who could testify under oath with respect to personal email use, until late June and July. This effort falls short of Senate Defendants' obligations under the Federal Rules of Civil Procedure.

If relevant, non-privileged material is contained within custodians' personal emails, Plaintiffs are entitled it. *See Advantage Inspection Int'l, LLC v. Sumner*, No. 6:06-3466-HMH, 2007 WL 2973518, at *4 (D.S.C. Oct. 9, 2007) (ordering defendant to produce all responsive "documents or things" over which he "retains possession . . . or access"). Counsel's belief that no relevant material exists, and committee members' failure to recall, are no substitute for meaningful review of those files for responsive information. *Cf. StoreWorks Techs. v. Aurus, Inc.*, No. 19-cv-1527(HB), 2020 WL 12442099, at *3 (D. Minn. Dec. 23, 2020) ("Attorneys have a duty to oversee their clients' collection of information and documents, especially when ESI is involved . . . . Parties and clients, who are often lay persons, do not normally have the knowledge and expertise to understand their discovery obligations, to conduct appropriate searches, to collect responsive

---

[7]     *See* Ex. B at 4 ("The Senate Defendants are not aware of any evidence that they received or sent information relating to Congressional redistricting on personal email accounts. The Senate Defendants therefore have not searched, and do not intend to search, any personal email accounts at this time.").

discovery"). "Under the federal rules, the burden does not fall on plaintiff to learn whether, how and where defendant keeps relevant documents." *Green v. McClendon*, 262 F.R.D. 284, 290 (S.D.N.Y. 2009) (quoting *Tarlton v. Cumberland Cty. Correctional Facility*, 192 F.R.D. 165, 170 (D.N.J. 2000)). "It is not an excuse that defense counsel [does] not know" that relevant materials exist within their client's possession. *Tarlton*, 192 F.R.D. at 170.

In its April 13, 2022 Order, this Court required House Defendants to produce copies of personal emails, text messages, and instant messages in which House Defendants and members of the Ad Hoc Committee on Redistricting discussed state House reapportionment. *See* ECF No. 221. Moreover, the "use of private email accounts to conduct official business has become commonplace," *Brennan Ctr. for Justice v. U.S. Dep't of Just.*, 377 F. Supp. 3d 428, 436 (S.D.N.Y. 2019),[8] and Senate Defendants have already agreed to review custodians' text messages. Based on this recent experience and the case law above, Plaintiffs respectfully request that the Court order Senate Defendants to conduct a reasonable review of their custodians' personal email accounts, and subsequently either produce relevant, responsive documents contained therein, or sign a certification that no such documents exist.

## CONCLUSION

For the reasons above, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to compel.

---

[8] *See also* Daniel Pitcalm & Zoe Grotophorst, *The State of Internal Workplace Communication*, Government Executive (March 5, 2015), https://www.govexec.com/insights/state-internal-workplace-communication/106737/ (reporting that 33% of 412 government employees surveyed used personal email for government business).

Dated: June 16, 2022

Leah C. Aden**
Stuart Naifeh**
Raymond Audain**
John S. Cusick**
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St, 5th Fl.
NY, NY 10006
Tel.: (212) 965-7715
laden@naacpldf.org

Santino Coleman*** Fed. ID. 11914
Antonio L. Ingram II**
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th St, Ste. 600
Washington, D.C. 20005
Tel.: (202) 682-1300
scoleman@naacpldf.org
Adriel I. Cepeda Derieux**
Samantha Osaki**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org

John A. Freedman**
Elisabeth S. Theodore*
Gina M. Colarusso**
John M. Hindley**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel: (202) 942-5000
john.freedman@arnoldporter.com

*Motion for admission Pro Hac Vice forthcoming*
**Admitted Pro Hac Vice*
****Mailing address only (working remotely from South Carolina)*

Respectfully submitted,

/s/ Christopher J. Bryant
Christopher J. Bryant, Fed. ID 12538
BOROUGHS BRYANT, LLC
1122 Lady St., Ste. 208
Columbia, SC 29201
Tel.: (843) 779-5444
chris@boroughsbryant.com

Somil B. Trivedi**
Patricia Yan**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St., NW
Washington, DC 20005
Tel.: (202) 457-0800
strivedi@aclu.org

Allen Chaney, Fed. ID 13181
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA
Charleston, SC 29413-0998
Tel.: (843) 282-7953
Fax: (843) 720-1428
achaney@aclusc.org

Jeffrey A. Fuisz**
Paula Ramer**
Andrew R. Hirschel*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
jeffrey.fuisz@arnoldporter.com

Sarah Gryll**
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300
sarah.gryll@arnoldporter.com

*Counsel for Plaintiffs the South Carolina Conference of the NAACP and Taiwan Scott*

Janette M. Louard*
Anthony P. Ashton*
Anna Kathryn Barnes*
NAACP OFFICE OF THE GENERAL
COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org

* Motion for admission *Pro Hac Vice*
forthcoming or pending
** Admitted *Pro Hac Vice*

*Counsel for Plaintiff the South Carolina
Conference of the NAACP*