# Exhibit A

# Arnold & Porter

John Hindley
+1 202.942.5796 Direct
John.Hindley@arnoldporter.com

May 19, 2022

**VIA E-MAIL**

Mr. John Gore
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

    Re: *South Carolina State Conference of the NAACP v. Alexander*, 3:21-cv-03302-MBS-TJH-RMG (D.S.C.)

Dear Mr. Gore:

  Plaintiffs write this letter to describe in more detail their concerns regarding Senate Defendants' discovery to date in the congressional case. Please provide your response in writing before the Parties' meet and confer on Monday, March 23 at 10:00 a.m. EST.

**I.  Written Discovery**

  Plaintiffs have identified a number of deficiencies in Senate Defendants' interrogatory responses.

  Interrogatory 1 asks Senate Defendants to "[i]dentify" the individuals who were involved in redistricting-related data analysis and Interrogatory 3 asks Senate Defendants to "provide the name and . . . the address and telephone number of" each person involved creating the congressional map ultimately adopted in S. 865 and predecessor maps. Senate Defendants responded by stating "that various Senate staff and counsel were involved" in the redistricting process, "including Andy Fiffik and Will Roberts." Senate Defs.' Objs. and Resp. to Pls.' First Interrogs. at 4-5. These responses are plainly insufficient, as Senate Defendants admit that Senate staff beyond Mr. Fiffick and Mr. Roberts were involved in the redistricting process and the drafting of the map in S. 865. Nevertheless, Senate Defendants have thus far failed to identify these individuals. Senate Defendants need to identify these individuals by name in order to meet their discovery

**Arnold & Porter**

John Gore
May 19, 2022
Page 2

obligations. Senate Defendants obviously know the names of individuals involved in this process, and hiding those names for months while the parties prepare for depositions and a fast approaching trial wastes everyone's time.

Similarly, in Interrogatory 2, Plaintiffs asked Senate Defendants to identify "each person . . . having discoverable information . . . and state the subject matter of the information possessed by that person regarding S. 865 and all Predecessor Maps." Senate Defendants responded by "refer[ing] [Plaintiffs] to Senate Defendants' Initial Disclosures served . . . on March 29, 2022." *Id.* at 4. But Senate Defendants' Initial Disclosures do not identify anyone by name either (making those Initial Disclosures deficient as well). Once again, Senate Defendants need to amend their Interrogatory response by specifically identifying the individuals who have discoverable information and explaining what information these individuals possess responsive to the request.

Senate Defendants' response to Interrogatory 4, where Plaintiffs asked Senate Defendants to identify "each person who shared with You any South Carolina House of Representative amendment to maps in S. 865 or any Processor maps," is similarly non-responsive. *See id.* at 5-6. Senate Defendants once again did not identify any individuals by name. Senate Defendants must amend their response accordingly.

Interrogatories 5-7 ask Senate Defendants to describe various aspects of the redistricting process. Senate Defendants' responses are vague and insubstantial. For example, Interrogatory 6 asks Senate Defendants to "[d]escribe the process" they used "to consider, propose, and review drafts maps adopted in S. 865 and all Predecessor Maps through the Map Room and outside the Map Room." Senate Defendants responded by merely stating that they "used a map-making program called Maptitude" which "generated data, saved files, and allowed the Senate Defendants and staff to draw draft maps." *Id.* at 7. This response does not "describe the process" but merely states one fact about the overall redistricting process. To be sufficient, Senate Defendants' responses to Interrogatories 5-7 require more detail, including but not limited to: who was involved; how many draft maps were created; why drafts changed over time and in response to what input; what if any analyses, such as racially polarized voting analysis or performance analysis, were done; how criteria was used to develop the maps and how criteria were applied to the development of maps; how feedback from legislative members and the public was incorporated into draft maps; and so on.

Interrogatory 8 asks Senate Defendants to "[d]escribe how the information You conveyed to individuals in the Map Room was stored." Senate Defendants responded by stating that the "maps drawn in the Map Room were stored in Maptitude program." *Id.* at 8. The response is only sufficient as it relates to maps but not to other information that

**Arnold & Porter**

John Gore
May 19, 2022
Page 3

was conveyed in the Map Room process such as the data and communities of interest that were considered. Plaintiffs need to know what other information was conveyed in the Map Room process. If other information was conveyed, Senate Defendants also need to identify where that information was stored.

Like their responses in Interrogatories 1-4, Senate Defendants failed to identify any individuals in response to Interrogatory 13, which asks Senate Defendants to "[i]dentify the name, title, and professional address of each person consulted by You in answering these Interrogatories . . . ." Instead, Senate Defendants stated that "in-house counsel at the South Carolina Senate" was consulted. *Id.* at 11. Once again, Senate Defendants must specifically identify all the members of the Senate in-house counsel office who were consulted by Senate Defendants. Plaintiffs are not seeking the contents of any privileged communication between Senate Defendants and their in-house counsel; Plaintiffs seek only the names of counsel who were consulted or consultants who were retained through counsel, which are not privileged.

Senate Defendants' response to Interrogatory 14 is also non-responsive. Senate Defendants failed to "[i]dentify and explain" any "legislative inquiries, analyses, reports or findings" as to whether the map in S. 865 would lead to liability under Section 2 of the Voting Rights Act (VRA). Stating that maps in S. 865 were legally sufficient following the 2010 Census is non-responsive and misleading. *See id.* at 12. Plaintiffs ask that Senate Defendants identify and explain the analyses that were done as part of the post-2020 redistricting process. If none exist, Senate Defendants must state so.

Interrogatory 15 asked Senate Defendants whether the standard "to assess a vote-dilution claim under Section 2 of the [VRA] is the same standard used to assess preclearance compliance under Section 5 of the [VRA]" and to "explain and identify the evidence" supporting Senate Defendants' position. Senate Defendants did not answer the question that was asked. *See id.* at 13. Given that, as part of their defense, Senate Defendants argued in their Motion to Dismiss that the map in S. 865 was precleared by the Department of Justice and upheld by reviewing courts, including the United States Supreme Court, *see* ECF 178 at 21-22, it is relevant to know how Senate Defendants view the similarities and differences between Section 2 and Section 5 of the VRA. As a result, Senate Defendants' response to Interrogatory 15 needs to be amended.

### II.     Document Production

Senate Defendants have not produced a single document in this case, despite having received Plaintiffs' first set of document requests over 10 weeks ago. As described below, depositions are currently being scheduled, and discovery closes on

# Arnold & Porter

John Gore
May 19, 2022
Page 4

August 12, 2022.  Plaintiffs are prejudiced each day they do not receive documents from the Senate Defendants.  Plaintiffs want to know when Senate Defendants plan on producing documents, and the schedule for anticipated completion of your production.

Further, Plaintiffs need to know the custodians and sources from which Senate Defendants have collected, or will be collecting, documents.  In particular, in addition to the named Defendants, (i) are the Senate Defendants planning to collect materials from (a) staff, aides, and agents of the named Defendants (*e.g.,* Messrs. Fiffick and Roberts and other involved staff), and (b) other legislators central to the process, such as the other members of the Senate Redistricting Subcommittee (Campsen, Young, Sabb, Matthews, Talley, and Harpootlian), and (ii) if Senate Defendants are not collecting from these sources, are you authorized to accept subpoenas for the relevant individuals?

Additionally, Plaintiffs need to know whether Senate Defendants have searched both the governmental and personal emails of custodians.  Consistent with our approach with the House Defendants, our position is the Senate Defendants' collection efforts must also include personal emails, text messages, and other non-email messaging apps, such as Signal, Whatsapp, Telegram, and Microsoft Teams, from Defendants, Subcommittee members, and relevant staff.  As you know, in its April 13, 2022 Order (ECF No. 221), the Court required House Defendants to produce relevant these types of communications for House Defendants and members of the relevant House Committee.

Moreover, Plaintiffs ask Senate Defendants to confirm the search terms they have applied as part of its production process.  If Senate Defendants have not yet conducted their search—which would be a deficiency on its own, given the months that have gone by since they received these requests—Plaintiffs suggest that Senate Defendants apply the search terms contained in **Appendix A**.  The House Defendants applied all or some variation of the search terms contained in Appendix A.

In their objections and responses to Plaintiffs requests for production of documents, Senate Defendants stated that they have withhold documents "covered by the attorney-client privilege, the work-product doctrine, legislative privilege or any other applicable privilege or immunity."  Senate Defs.' Objs. and Resp. to Pls.' First Request for Documents at 1.  Under Federal Rule 26(b)(5), Senate Defendants must produce a log describing any document withheld for any reason.  Plaintiffs expect immediate production of that log.

Finally, Plaintiffs would like clarification whether Senate Defendants are withholding or intend to withhold documents on the basis of the legislative privilege, despite the Court's February 10, 2022 Order rejecting the House Defendants' broad

# Arnold & Porter

John Gore
May 19, 2022
Page 5

invocation of the legislative privilege. *See generally* ECF 153. Regardless of the propriety of such an assertion, any documents being withheld for any reason must be logged.

**III.     Depositions**

As noted above, Plaintiffs want to begin planning our first round of depositions. We would like to take depositions of the following people during the first or second week of June: Mr. Andy Fiffick, Mr. Will Roberts, and Ms. Paula Benson. Plaintiffs will propose some days for these depositions before our meeting on Monday. We would also like to schedule depositions during the month of June for Sen. Peeler, Sen. Young, Sen. Massey, Sen. Rankin, Sen. Campsen, and Sen. Talley. We also intend to propound a Rule 30(b)(6) notice to the South Carolina Senate to produce witness(es) in the same time frame. And please note that, if relevant documents related to these and other deponents have not been produced by the time of these depositions, Plaintiffs will be forced to hold them open.

*     *     *     *

In the meantime, please let us know if you have any questions. Plaintiffs look forward to discussing the above issues at our March 23, 2022 meet and confer.

                                                  Best regards,

                                                  */s/ John Hindley*

                                                  John Hindley

cc:     Counsel for Plaintiffs
        Counsel for Senate Defendants

**Arnold & Porter**

John Gore
May 19, 2022
Page 6

## APPENDIX A

"ad hoc committee"
"Black Voting age population"
"majority minority"
"voting rights act"
"bvap"
"census" /3 map*
collapse
combine
crack!
deviation
district!
gerrymander!
map /3 room
pack!
population
reapportion!
redistrict!
compact!
"communit! of color"
"communit! of interest"
COI
split!
racially polarized vot!"
"bloc voting"
"racial bloc voting"
Criteria
"House criteria"
"Senate criteria"
"Black voters"
NAACP
LWV
LWVSC
ACLU
LDF
"young democrats of south Carolina"
YDSC
"York County Democratic Party"
"Michael Roberts"

# Arnold & Porter

John Gore
May 19, 2022
Page 7

"republican national committee"
RNC
"Republican State Leadership Committee"
RSLC
"National Republican Redistricting Trust"
NRRT
RPV
(Charleston or Beaufort or Richland or Florence or Orangeburg or Sumter or Columbia or "North Charleston" or "West Ashley" or Dorchester) /50 (vot! or line or district! or precinct!)
CD /5 (1 or 2 or 5 or 6) /50 (vot! OR line OR district! OR precinct!)
"congressional district!" /5 (1 or 2 or 5 or 6) /50 (vot! OR line OR district! OR precinct!)