# Exhibit B

# JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001.2113

TELEPHONE: +1.202.879.3939 • FACSIMILE: +1.202.626.1700

Direct Number: (202) 879-3930

jmgore@jonesday.com

PRIVILEGED AND CONFIDENTIAL

May 20, 2022

VIA EMAIL

Mr. John Hindley
Arnold & Porter
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001

Re:   *South Carolina State Conference of the NAACP v. Alexander*,
      3:21-cv-03302-MBS-TJH-RMG (D.S.C.)

Dear Mr. Hindley:

I write in response to your letter of May 19, 2022. Please note that the Senate Defendants will be sending your team a letter outlining the deficiencies in Plaintiffs' discovery responses within the time provided by Local Civil Rule 37.01.

Your letter raises "concerns regarding Senate Defendants' discovery to date," including alleged "deficiencies" and the timing of Senate Defendants' discovery responses. Letter at 1. At the outset, the Senate Defendants note that your objections to their discovery responses are untimely. Local Civil Rule 37.01 required Plaintiffs to file any motion to compel discovery "within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed," unless "counsel are actively engaged in attempts to resolve the discovery dispute." Local Civil Rule 37.01(A) (D.S.C.). The Senate Defendants served their responses to Plaintiffs' various discovery requests on April 6, 2022—yet you waited 43 days, and only after the Senate Defendants requested that you state your concerns in writing, to send your letter.

Unfortunately, your letter also contains overheated and baseless allegations against the Senate Defendants. In particular, your letter accuses the Senate Defendants of "hiding" responsive information, of "wast[ing] everyone's time," and of hindering preparations for "a fast[-]approaching trial," Letter at 2, even though trial is more than four months away and you delayed sending your letter until May 19. In any event, your allegations are meritless and do nothing to advance this important case toward resolution.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Mr. John Hindley
Arnold & Porter
Page 2

Nonetheless, in a good-faith effort to move this case along, the Senate Defendants provide the responses below. We look forward to discussing these matters further during our meet-and-confer on Monday, May 23.

**I.      Written Discovery**

Your letter raises alleged "deficiencies" in the Senate Defendants' responses to Interrogatories 1–8 and 13–15. Letter at 1. The Senate Defendants have provided appropriate responses to all interrogatories and have objected to the interrogatories on various grounds. Moreover, the Senate Defendants' responses to various interrogatories track Plaintiffs' own responses to similar interrogatories propounded by the Senate Defendants.

For example, your letter complains that the Senate Defendants' response to Interrogatory 2 incorporates by reference the Senate Defendants' initial disclosures. *See id.* at 2. But that is precisely how Plaintiffs responded to similar interrogatories propounded by the Senate Defendants. *See* Plaintiff SC NAACP's Responses To Senate Defendants' First Set Of Interrogatories Re Congressional Map at 7–10, 31–34. And your contention that the Senate Defendants' initial disclosures "do not identify anyone by name," Letter at 2, is incorrect. The Senate Defendants' initial disclosures specifically identify "Taiwan Scott," "South Carolina State Conference of the NAACP," and "Brenda Murphy" and incorporate by reference the names of all "persons, individuals, or entities disclosed by any plaintiff [or] defendant . . . in this action." Senate Defendants' Initial Disclosures Regarding Plaintiffs' Challenges To The Congressional Plan at 2.

Similarly, your letter complains that the Senate Defendants' response to Interrogatory 13 states that "in-house counsel at the South Carolina Senate" was consulted on that response. Letter at 3. Plaintiffs' response to a similar interrogatory, however, was no more fulsome. *See* Plaintiff SC NAACP's Responses To Senate Defendants' First Set Of Interrogatories Re Congressional Map at 11. Frankly, we are confused by this "rules for thee and not for me" approach to discovery.

Your other complaints mischaracterize the Senate Defendants' responses and rest on faulty premises. First, you complain that the Senate Defendants' did not provide a longer list of individuals in response to Interrogatories 1 and 3. *See* Letter at 2–3. But the Senate Defendants objected to those interrogatories on a variety of grounds and are not obligated to disclose information already publicly available or known to Plaintiffs. Nonetheless, the Senate Defendants are willing to confer regarding these interrogatories and the information Plaintiffs seek.

Second, you point to the Senate Defendants' response to Interrogatory 4. But by definition, "any South Carolina House of Representatives amendment to maps adopted in S. 865," *id.* at 2,

JONES DAY

Mr. John Hindley
Arnold & Porter
Page 3

came from the South Carolina House of Representatives and, thus, is available through the public legislative record and the Senate Redistricting website.

Third, you complain about the Senate Defendants' responses to Interrogatories 5-8, but the robust and ordinary legislative process described in those responses *is* "the process" through which the Senate Defendants considered input regarding S. 865 and the Congressional Plan. *Id.* Further, as the Senate Defendants explained, the map drawers used Maptitude to consider, propose, and review draft maps and to store data regarding draft maps and the Congressional Plan. *See id.* And as for what "data and communities of interest were considered," *id.*, respectfully, such a request is not in any of Plaintiffs' interrogatories. Plaintiffs cannot rewrite their interrogatories and move the goalposts simply because they do not like the response.

Moreover, your complaints about these responses ignore information the Senate Defendants have provided and the overbreadth of your interrogatories. Indeed, as noted above, the Senate Defendants' responses describe how "feedback from . . . the public was incorporated into draft maps." *Id.* at 2. Your assertion that the Senate Defendants must describe "what if any analyses, such as racially polarized voting analysis or performance analysis, was done," *id.*, ignores that the Senate Defendants elsewhere stated "consistent with prior public statements, that no racially polarized voting analysis was conducted regarding S. 865 or any Predecessor Maps," Senate Defendants' Objections And Responses To Plaintiffs' First Set Of Interrogatories at 11. And your remaining complaints ignore either information the Senate Defendants already have provided, *see id.* at 9 (describing the Senate's redistricting criteria), or that your interrogatories seek information protected by legislative privilege, *see, e.g.*, *id.* at 6–9.

Your complaint regarding the Senate Defendants' response to Interrogatory 13 ignores that the response explains the Senate Defendants' view that the Congressional Plan complies with Section 2, that Interrogatory 13 seeks information protected by attorney-client privilege, that the Senate Defendants elsewhere stated that no racially polarized voting analysis was conducted, and that Plaintiffs have not brought a Section 2 claim. *See id.* at 11-12. Finally, your complaint regarding the Senate Defendants' response to Interrogatory 15 overlooks that the interrogatory calls for legal conclusions and positions, not factual information. *See id.* at 13. As the panel made clear in the House Plan litigation, this is not a proper use of written discovery.

## II.     Document Production

The Senate Defendants disagree with your self-serving characterization that "depositions are currently being scheduled" because your letter was the first time we have heard from anyone on Plaintiffs' team about scheduling depositions in the Congressional Plan challenge. The Senate Defendants also note that your allegation that "Plaintiffs are prejudiced each day they do not

JONES DAY

Mr. John Hindley
Arnold & Porter
Page 4

receive documents from the Senate Defendants," Letter at 4, rings hollow in light of your delay in sending the letter and raising alleged deficiencies in the Senate Defendants' discovery responses. The Senate Defendants also disagree that "any documents being withheld for any reason must be logged," *id.* at 5, since the parties already have agreed that no privilege log is required for attorney-client communications involving outside counsel that postdate the filing of Plaintiffs' original complaint on October 12, 2021.

Nonetheless, the Senate Defendants will make a first production of more than 2,500 documents on May 23, 2022. After investigation and custodial interviews, the Senate Defendants have also collected documents, including any official emails, official text messages, data, draft maps, and handwritten notes, from the following custodians:

    Senator Thomas Alexander
    Maura Baker
    Paula Benson
    Madison Faulk
    Andy Fiffick
    Breeden John
    Grayson Morgan
    Senator Harvey Peeler
    Senator Luke Rankin
    Will Roberts
    Map Room
    Public Redistricting Inbox

The Senate Defendants have applied the search terms listed in Appendix A to identify potentially responsive emails, and their review of the collected documents remains ongoing.

As you know, the Court's prior order directing searches and productions from personal email accounts was premised on evidence that "legislators may have received or sent information relating to House reapportionment on personal email accounts." Dkt. No. 221 at 3. Even then, the Court directed individuals to conduct searches of their own personal email accounts and to sign a certification "stating that they have searched their personal accounts and devices and have produced all communications relating to House reapportionment." *Id.* The Senate Defendants are not aware of any evidence that they received or sent information relating to Congressional redistricting on personal email accounts. The Senate Defendants therefore have not searched, and do not intend to search, any personal email accounts at this time.

JONES DAY

Mr. John Hindley
Arnold & Porter
Page 5

Moreover, the Senate Defendants reserve the right to take all necessary and appropriate steps to preserve their claims of legislative privilege. In all events, the Senate Defendants will produce an appropriate privilege log once review of all potentially responsive documents is complete.

Finally, the Senate Defendants have not searched for documents from, and are not authorized to accept subpoenas on behalf of, any other legislators.

### III.     Depositions

The Senate Defendants will work with Plaintiffs on a reasonable and appropriate schedule for conducting depositions within the discovery period for this case. Several discovery issues remain to be resolved, however, before depositions of fact witnesses can commence. Moreover, the Senate Defendants cannot commit to make witnesses available on any of the particular dates requested by Plaintiffs, and do not have control over several of the proposed deponents mentioned in your letter. The Senate Defendants also reserve the right to object to holding any deposition open, particularly if Plaintiffs insist on deposing fact witnesses before document production is complete.

The Senate Defendants believe that there is a more efficient and effective path forward for completing depositions in this case. For their part, the Senate Defendants plan to take the depositions of each of Plaintiffs' putative experts, Ms. Brenda Murphy, Mr. Taiwan Scott, and a Rule 30(b)(6) witness for the South Carolina State Conference of the NAACP. The Senate Defendants believe that, as in the House Plan litigation, the best way forward is to take expert depositions while document productions are ongoing, and then to depose fact witnesses once document productions have been completed. In particular, expert depositions should be scheduled for the month of June and any fact depositions to take place thereafter.

*     *     *     *

We look forward to discussing these issues with your team further during our meet-and-confer on Monday, May 23.

Very truly yours,

*John M. Gore*

John M. Gore

JONES DAY

Mr. John Hindley
Arnold & Porter
Page 6

**APPENDIX A**

Congress* w/3 District*
"Clyburn"
Nancy w/3 Mace
Tom w/3 Rice
Joe w/3 Wilson
Ralph w/3 Norman
Jeff w/3 Duncan
William /3 Timmons
"CD" w/2 1
"CD" w/2 2
"CD" w/2 3
"CD" w/2 4
"CD" w/2 5
"CD" w/2 6
"CD" w/2 7
"SC" w/2 1
"SC" w/2 2
"SC" w/2 3
"SC" w/2 4
"SC" w/2 5
"SC" w/2 6
"SC" w/2 7
"Republican National Committee"
"RNC"
"Republican State Leadership Committee"
"RSLC"
"National Republican Redistricting Trust"
"NRRT"
Act w/3 118
"S. 865"
"S.865"
"S865"
"H. 4492"
"H.4492"
"H4492"
"BVAP"
"Black voting age population"

JONES DAY

Mr. John Hindley
Arnold & Porter
Page 7

crack OR cracked OR cracking
pack OR packed OR packing
Gerrymander*
map w/3 room
redistrict* AND criteri*
"community of interest" OR "communities of interest"
COI
"community of color" OR "communities of color"
"racially polarized"
RPV
"bloc voting"
"racial bloc voting"
"voting rights act"
"VRA"
"majority-minority"
"Gullah"