# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRCIT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| The South Carolina State Conference of the NAACP, and Taiwan Scott, *on behalf of himself and all other similarly situated persons*,<br><br>    Plaintiffs,<br><br>v.<br><br>Thomas C. Alexander, *in his official capacity as President of the Senate Judiciary Committee;* James H. Lucas, *in his official capacity as Speaker of the House of Representatives*; Chris Murphy, *in his official capacity as Chairman of the House of Representatives Judiciary Committee*; Wallace H. Jordan, *in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee*; Howard Knabb, *in his official capacity as interim Executive Director of the South Carolina State Election Commission*; John Wells, *Chair,* Joanne Day, Clifford J. Elder, Linda McCall, and Scott Moseley, *in their official capacities as members of the South Carolina State Election Commission*,<br><br>    Defendants. | C/A No.: 3:21-cv-03302-TJH-MBS-RMG<br><br>**ORDER AND OPINION** |

Before the Court are motions to dismiss Plaintiffs' Third Amended Complaint ("TAC") by Defendants Thomas C. Alexander, in his official capacity as President of the Senate, and Luke A. Rankin, in his official capacity as Chairman of the Senate Judiciary Committee (the "Senate Defendants") (Dkt. No. 271) and Defendants James H. Lucas[1] (in his official capacity as Speaker

---

[1] On May 12, 2022, James H. Lucas stepped down as Speaker of the South Carolina House of Representatives. The current Speaker of the House of Representatives is G. Murrell Smith, Jr. The

1

of the South Carolina House of Representatives), Chris Murphy (in his official capacity as Chairman of the South Carolina House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee) (collectively, the "House Defendants") (Dkt. No. 272).¹ For the following reasons, the Panel denies both motions.

## Background

Per the TAC, Plaintiffs challenge the composition of three of South Carolina's congressional districts for the U.S. House of Representatives (Districts 1, 2, and 5) as unconstitutional racial gerrymanders. *See* (Dkt. No. 267 at 38 *et seq.*). Plaintiffs allege that these districts were also drawn with an intentionally discriminatory intent.

There are two Plaintiffs. Plaintiff Taiwan Scott is a Black South Carolina voter residing in South Carolina's first congressional district. (*Id.* ¶ 17.) Plaintiff South Carolina State Conference of the National Association for the Advancement of Colored People ("the State Conference") is a nonprofit civil rights organization that "seeks to remove all barriers of racial discrimination through democratic processes," including discrimination in voting rights. (*Id.* ¶ 13.) The State Conference is a subsidiary of the national NAACP. (*Id.* ¶ 12.) It has 77 branches across the state, "including at least one branch in each of South Carolina's 46 counties." (*Id.* ¶ 14.) It has over 13,000 total members, who "include registered voters in the Challenged Congressional Districts." (*Id.* ¶¶ 15, 16.)

---

¹ House Defendants indicate they will either file or consent to a motion amending the caption to correct the named party. (Dkt. No. 272 at 1 n.1).

**Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). The "court must accept as true all of the allegations contained in a complaint," but cannot accept mere "[t]hreadbare recitals of the elements of a cause of action." *Id.* The same standard generally applies to both a motion to dismiss for failure to state a claim under Rule 12(b)(6) and a motion to dismiss for lack of standing under Rule 12(b)(1). *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (standing "must be supported ... with the manner and degree of evidence required at the successive stages of the litigation"). But when a defendant presents a "factual challenge" by producing evidence that contradicts or undermines the complaint's allegations, the court has "discretion to go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quotation marks omitted).

**Analysis**

**A. Standing**

Racial gerrymandering claims apply "district-by-district," not "to a State considered as an undifferentiated 'whole.'" *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 262 (2015). When "a voter lives in" a particular electoral district that is the subject of an illegal racial gerrymander, that voter experiences "personal" harms, including being "subjected to a racial classification" and "being represented by a legislator who believes his primary obligation is to represent only the members of a particular racial group." *Id.* at 263 (quotation marks and alterations omitted). For that reason, a person has "standing to sue in his or her own right when that [person] resides in [a] district that he alleges was the product of a racial

3

gerrymander." *Alabama Black Caucus*, 575 U.S. at 269 (quotation marks omitted). Because these harms "do not so keenly threaten a voter who lives elsewhere," however, such a "voter normally lacks standing to pursue a racial gerrymandering claim." *Id.* at 263; *accord Gill v. Whitford*, 138 S. Ct. 1916, 1930 (2018) ("[A] plaintiff who alleges that he is the object of a racial gerrymander ... has standing to assert only that his own district has been so gerrymandered.").

Applying these principles, Scott has adequately alleged standing to challenge South Carolina's first congressional district by alleging that he is a Black voter living in that district. (Dkt. No. 267 ¶ 17). The House Defendants have offered no basis to question that straightforward factual allegation. That is "sufficient" to challenge the district in which Scott resides. *Alabama Black Caucus*, 575 U.S. at 263. Further, as to Districts 2 and 5, the House Defendants concede the State Conference has produced membership lists showing it has members in said districts. (Dkt. No. 272 at 8).

As for the State Conference, "an organization has standing to bring suit on behalf of its members when its members would have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires individual members' participation in the lawsuit." *Alabama Black Caucus*, 575 U.S. at 269 (quotation marks and italics omitted). The State Conference therefore has standing if it plausibly alleges (1) it has members who reside in a district that has been racially gerrymandered; (2) combatting racial gerrymandering is germane to its purpose; and (3) there is no need for individual members to participate in the litigation.

The House Defendants only seriously challenge factor 1, but, as shown above, Plaintiffs have adequately alleged in the TAC that they meet all factors to establish organizational standing. *Lujan*, 504 U.S. at 561 (noting standing must simply be "supported ... with the manner and degree

4

of evidence required at the successive stages of the litigation"). *Accord Hancock County Board of Supervisors v. Ruhr*, 487 Fed. Appx. 189, 198 (5th Cir. 2012) (noting that the court is "aware of no precedent holding that an association must set forth the name of a particular member in its complaint in order to survive a Rule 12(b)(1) motion to dismiss based on a lack of associational standing").

House Defendants also suggest that the members in question must not merely *reside* in the district, but must do so because of the change in boundaries in the most recent maps. (Dkt. No. 272 at 7). There is no basis for such a requirement, which runs counter to both binding precedent and common sense. *Alabama Black Caucus* held it is "sufficient" to establish standing if an "organization has members in all of the" challenged districts, without regard to whether they were newly added to those districts. 575 U.S. at 270. That makes sense given the primary injury in racial gerrymandering cases: being subjected to "racial classification." *Id.* at 263 (quotation marks omitted). An allegation that a district is racially gerrymandered is an allegation that everyone in the district has been subjected to a "racial classification," not just the most recent marginal additions. After all, legislators could not know where to make adjustments without considering the racial composition of the entire district.

### B. Failure to State a Claim

The Equal Protection Clause "prevents a State, in the absence of sufficient justification, from separating its citizens into different voting districts on the basis of race." *Cooper v. Harris*, 137 S. Ct. 1455, 1463 (2017) (quotation marks omitted). A plaintiff states a claim for discrimination by plausibly alleging that a State "'subordinated' other factors—compactness, respect for political subdivisions, partisan advantage, what have you—to 'racial considerations.'" *Id.* at 1464. This showing may be made by direct evidence of legislative intent

or circumstantial evidence, including a district's shape and demographics. *Id.* Once the plaintiff makes that showing, the burden "shifts to the State to prove that its race-based sorting of voters serves a 'compelling interest' and is 'narrowly tailored' to that end." *Id.*

The 51-page TAC describes, district-by-district, circumstantial evidence suggesting that South Carolina's legislature was heavily focused on race when drawing district lines, including eschewing traditional redistricting principles, splitting up contiguous Black communities (suggesting an intent to "crack" those voters to dilute their voting power), carefully tracing Black communities while excluding non-Black voters (suggesting an intent to "pack" those Black voters into as few districts as possible), and failing to conduct pre-enactment legislative analysis, including of racially polarized voting. The complaint also alleges various procedural irregularities in the process leading up to the adoption of the maps. Taken together, these detailed allegations, though far from conclusive, are sufficient to "plausibly" allege that race predominated the redistricting process in the challenged districts. Of course, the evidence at trial may tell a different story. But neither the House nor the Senate Defendants have provided a basis for dismissing Plaintiffs' serious allegations at this early stage.

Perhaps foreshadowing one of their defenses, both the House and Senate Defendants insist that the complaint is not *really* about racial gerrymandering at all, but rather constitutes a veiled effort to raise non-justiciable allegations of partisan gerrymandering. Defendants identify no authority for the proposition that the court can forcibly recharacterize the allegations of a plaintiff's complaint in ruling on a motion to dismiss. If Plaintiffs attempt to prove their claims of racial gerrymandering exclusively with evidence of partisan gerrymandering, that would cause their racial gerrymandering claims to fail on the merits rather than because the complaint, as pleaded,

6

failed to state a claim in the first place. And if Defendants wish to argue the districts they have drawn are a race-neutral partisan gerrymander, they can attempt to do so at trial.

Last, the House Defendants argue that because Plaintiffs challenge only Congressional Districts 1, 2, and 5, Plaintiffs "have foreclosed the opportunity for relief in [other] areas of the state." (Dkt. No. 272 at 19). The Panel rejects the contention. The House Defendants cite no case law in support of this assertion, *cf. Meeks v. Emiabata*, No. 7:14CV00534, 2015 WL 1636800, at *2 (W.D. Va. Apr. 13, 2015) ("[C]ourts . . .have recognized that Rule 12(b)(6) does not allow the dismissal of a request for a remedy."), which the Panel finds, on the case law presented to it by Plaintiffs, unconvincing, *Harris v. McCrory*, No. 1:13-CV-949, 2016 WL 3129213, at *2 (M.D.N.C. June 2, 2016), *aff'd sub nom. Harris v. Cooper*, 138 S. Ct. 2711, 201 L. Ed. 2d 1091 (2018) ("[A]lthough the defendants contend that this Court's review is limited to whether the new Congressional Districts 1 and 12 pass constitutional muster, precedent suggests that we have a responsibility to review the plan as a whole.").

## Conclusion

For the foregoing reasons, the Senate Defendants (Dkt. No. 271) and House Defendants (Dkt. No. 272)'s respective motions to dismiss are **DENIED**.

**AND IT IS SO ORDERED.**

United States Circuit Judge

_/s/ Margaret B. Seymour_

United States District Judge

_/s/_

United States District Judge

June 28, 2022
Charleston, South Carolina