IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS C. ALEXANDER, *et al.*, <br><br> Defendants. | Case No.  3:21-cv-03302-TJH-MBS-RMG <br><br> **THREE-JUDGE PANEL** |

**PLAINTIFFS' REPLY IN SUPPORT OF
THEIR MOTION TO COMPEL PRODUCTION**

Senate Defendants fail to convincingly address the legal question at hand: should they be allowed to ignore this Court's prior rulings on legislative privilege and personal emails, thereby hiding relevant evidence of racially discriminatory intent. Senate Defendants attempt to avoid this question by spending much of their Opposition to Plaintiffs' Motion to Compel, ECF 289 ("Opp.") asserting irrelevant, nearly personal attacks on Plaintiffs' counsel's conduct of discovery. They do the same in their related Reply In Support of Senate Defendants' Combined Motion for Protective Order and Motion to Quash ("PO Reply").

Senate Defendants' only "new" argument is that Plaintiffs waited too long to bring their Motion to Compel ("Motion to Compel"). However, Defendants raise the legislative privilege issues in their own Combined Motion for Protective Order and Motion to Quash ("PO Combined Motions"), so the Court will need to resolve this issue no matter what. Simultaneously asking the Court *not* to resolve the issue via Plaintiffs' Motion to Compel is nonsensical. Further, Senate Defendants have not identified any prejudice resulting from this short delay. Nor could they. On

the other hand, Plaintiffs and all South Carolinians will be harmed by the preclusion of this evidence, which speaks directly to whether their congressional map is the product of unconstitutional racial discrimination.

I.   **THE TIMING OF PLAINTIFFS' MOTION TO COMPEL IS JUSTIFIED AND HAS CAUSED SENATE DEFENDANTS NO PREJUDICE**

Plaintiffs regret that they missed the April 21, 2022 deadline for filing their Motion to Compel. Courts in this circuit, however, routinely excuse such lapses where there is an acceptable explanation. *See U.S. ex rel. Becker v. Westinghouse Savannah River Co.,* 305 F.3d 284, 290 (4th Cir. 2002); *Brown v. Lexington County*, CV 3:17-1426-MBS, 2021 WL 2949813, at *8 (D.S.C. July 14, 2021) (excusing failure to file motion to compel six months after deadline because, in part, parties were otherwise engaged in discovery); *United Prop. & Cas. Ins. v. Couture*, 2:19-CV-01856-DCN, 2020 WL 2319086, at *3 (D.S.C. May 11, 2020) (same); *Charleston Med. Therapeutics, Inc. v. AstraZeneca Pharms. LP*, No. 2:13-CV-2078-RMG, 2015 WL 12805685, at *1 (D.S.C. Mar. 4, 2015) (same). Courts in this circuit also allow late-filed motions to compel where the opposing party shows no prejudice, and where precluding the motion would harm the broader needs of the case. *Lexington County*, 2021 WL 2949813, at *8 ("Disallowing the motion to compel under the circumstances described here would elevate form over function to the detriment of the discovery process, which the court is not inclined to do."); *Brown-Thomas v. Hynie*, No. 1:18-CV-02191-JMC, 2021 WL 651014, at *2 (D.S.C. Feb. 19, 2021) (excusing untimely motion to compel where parties were "engaged in resolving these issues over the past five months," "discovery remain[ed] ongoing," and there was "lack of prejudice" to the non-moving party). This Court has also extended the time for a motion to compel under Rule 6(b), where the opposing party was unable to show prejudice and the delay would not impact relevant judicial proceedings. *ContraVest Inc. v. Mt. Hawley Ins. Co.*, 273 F. Supp. 3d 607, 626–27 (D.S.C.

2017); *cf.* Local Civ. Rule 37.01 (D.S.C.) (allowing extension of time to file motions to compel until 30 days before discovery cutoff).

Here, Plaintiffs were deeply and broadly engaged in both trial prep and settlement efforts in the state House case at the time a motion to compel on congressional issues would have been due. *See* Text Order, ECF No. 232 (extending fact and expert discovery by five days); ECF No. 243 (extending expert-discovery and trial-related deadlines); **Exhibit A** (Apr. 29, 2022 email chain exchanging trial exhibits); **Exhibit B** (Apr. 29, 2022 M. Charles email serving notices for depositions for Patrick Dennis and Chris Murphy). As this Court is aware, there was no litigation stay in place during April and May. Counsel for Plaintiffs and House Defendants were engaged in depositions and/or motion practice virtually every day between April 6 and the state House settlement. And contrary to Senate Defendants' self-serving assessment of Plaintiffs' internal resource allocation, all of Plaintiffs' counsel were engaged in the parallel state House litigation and settlement efforts, because they were intimately related.

Most significantly, all Parties including the Senate Defendants were set for trial in the state House case on May 16 and had established a separate discovery and trial schedule for the congressional case which would begin in earnest thereafter. Indeed, Senate Defendants themselves were participating in state House matter—*including briefing the legislative privilege issue*—and therefore not pressing any congressional discovery issues at this time. They did not reach out before or even after the April 21 motion-to-compel deadline asking whether Plaintiffs would address their responses and objections. Moreover, for weeks, Senate Defendants were not clear as to whether they would in fact abide by the Court's February 10, 2022 order concerning legislative privilege, *see* ECF No. 283-2 (May 20, 2022 Letter from Gore to Hindley) at 5 ("Senate Defendants reserve the right to take all necessary and appropriate steps to preserve their claims of

3

legislative privilege."), or the April 10, 2022 order concerning review of personal emails, *id.* at 4 (stating Senate Defendants "ha[d] not searched, and d[id] not intend to search, any personal email accounts *at this time*.").

The reality is that, soon after the settlement in principle in the state House case, and nearly three months before the discovery cutoff in the congressional case, Plaintiffs reached out to Senate Defendants and began addressing the disputes at issue in the instant Motion to Compel. Indeed, as of this filing, there are still over six weeks left before the discovery cutoff. In other words, Senate Defendants have not identified any prejudice incurred by Plaintiffs' justifiable, short delay in filing their Motion to Compel. Nor could they. *Avant v. Ahern Rentals, Inc.*, No. 3:20-CV-01884-JMC, 2021 WL 1783178, at *6 (D.S.C. May 5, 2021) ("Regardless [of untimeliness], in its discretion the court shall review the merits of the Motion based upon the alleged lack of prejudice to Defendant.").[1]

## II. SENATE DEFENDANTS ARE INCORRECT THAT THE LAW-OF-THE-CASE DOCTRINE APPLIES ONLY AFTER AN APPEAL

Senate Defendants attempt to avoid the law-of-the-case doctrine by claiming that it can only apply after an appellate ruling. Opp. at 11-13. This is incorrect, misreading a sufficient condition for a necessary one. As explained in *U.S. v. Duke Energy Corp.*: "To be sure, the issue often arises after an appellate court establishes the law of the case for both the district court and

---

[1] Senate Defendants cite a single case—*Cricket Store 17, LLC v. City of Columbia*, 97 F. Supp. 3d 737, 766 (D.S.C. 2015)—in support of their timeliness argument. However, as shown above, numerous, more analogous cases have found for movants in these circumstances. This case is also nothing like *Cricket Store*. There, movant made only a "vague reference" to a "crush of work" as its entire justification for untimeliness, and there is no evidence of a prejudice argument. 97 F. Supp. 3d at 766. Plaintiffs' justification is partially related to the amount of work, but more directly related to the timing and priority of that work. Put simply, all Parties were primarily focused on the state House case and knew there would plenty of time to address congressional issues afterwards. Also, the *Cricket Store* opinion, like Senate Defendants here, did not address prejudice, which Plaintiffs have.

4

itself. . . . Significantly, however, in *American Canoe* the Fourth Circuit spoke of the law of the case doctrine and application of the three circumstances in the context of 'a district court retain[ing] the power to reconsider and modify its interlocutory judgments, including partial summary judgment, at any time prior to final judgment when such is warranted.'" 2014 WL 4659479, at *4 (M.D.N.C. Sept. 17, 2014) (citations omitted) (collecting cases). *See also, e.g., In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, No. CV 6:15-MN-2613-BHH, 2018 WL 1101360, at *4 (D.S.C. Feb. 28, 2018) ("Plaintiff's argument that the law of the case doctrine only applies in the instance of an appellate ruling binding a trial court on the same issue in the same case is unavailing."); *City of Charleston, S.C. v. Hotels.com, LP*, 520 F. Supp. 2d 757, 774 (D.S.C. 2007) (district court finding that "[t]he law of the case doctrine holds that once a court has decided an issue, that same court should not revisit that issue and reverse its earlier decision.").

Senate Defendants quickly abandon this argument for an even weaker one: that the issues raised in its Opposition were not in fact previously decided. Opp. at 12-13. Tellingly, however, Senate Defendants do not even attempt to argue that the factual issues raised by Plaintiffs' requests sent to them in the congressional case are any different than those sent to the House Defendants in the state House case. As this Court recognized again and again, a central question in any redistricting case raising racial gerrymandering and intentional discrimination claims is the intent of the relevant decision-makers, namely legislators. *See* ECF No. 153 (February 10 Order on legislative privilege) at 12 ("[T]he Legislature's decision-making process itself is the case."); ECF No. 291 (June 28, 2022 Order and Opinion denying Senate Defendants' motion to dismiss the Third Amended Complaint) at 6 (showing of discrimination "may be made by direct evidence of legislative intent"). Therefore, the unavailability of legislative privilege is common to all defendant legislators across both the state House and congressional claims.

Implicitly conceding this factual point, Senate Defendants instead claim they are making "new" legal arguments in their Opposition to this Motion to Compel that they did not make previously. *Id.* However, these arguments—regarding the standard of proof, relevant factors, and exceptions related to legislative privilege—are not new at all. They are present in, and part and parcel of, every legislative privilege dispute, and Senate Defendants had a full and fair opportunity to brief them in the state House case. They failed. Senate Defendants cannot now manufacture or reword those arguments and call them new, simply to relitigate the underlying issue of legislative privilege and sidestep law-of-the-case. *See City of Charleston, S.C.*, 520 F. Supp. 2d at 774 (citation omitted) ("As most commonly defined, the doctrine posits that when a court decides upon a *rule of law*, that decision should continue to govern the same *issues* in subsequent stages in the same case.") ((emphasis added).

### III. SENATE DEFENDANTS' LATE-BREAKING PRODUCTION OF PERSONAL EMAILS FROM TWO CUSTODIANS PROVES THE NEED TO COLLECT AND SEARCH ALL RELEVANT PERSONAL ACCOUNTS

Senate Defendants admit that, as of May 20, 2022, they "ha[d] not searched, and d[id] not intend to search, any personal email accounts at th[at] time."[2] Indeed, Plaintiffs did not know that Senate Defendants had discovered evidence of personal email use by Defendant Rankin and Mr. Fiffick, and therefore searched their personal emails, until the filing of Senate Defendants' June 23 Opposition to this Motion to Compel.

---

[2] Senate Defendants claim that Plaintiffs did not satisfy Rule 7.02's meet-and-confer requirement. Opp. at 6-7. Yet Senate Defendants themselves recount at least three correspondences—May 20, May 25, and May 27. Senate Defendants' position throughout these interactions was that they would not search personal emails until they alone found evidence of its use. This position was and is unacceptable to Plaintiffs, so Plaintiffs moved to compel. But there is no serious question as to whether Plaintiffs satisfied the meet-and-confer requirement before doing so.

This unnecessary surprise aside, Senate Defendants' belated and begrudging review of these two custodians' personal emails proves the need for a review of the remaining custodians under their control.  This is for two reasons.  First, the Court's April 13, 2022 order, ECF No. 221 ("April 13 Order") directed production of numerous custodians based on evidence of personal email use by "one or more of these legislators."  Here, Senate Defendants have confirmed use by one key legislator (Mr. Rankin) and one key staffer (Mr. Fiffick).  This includes a series of correspondence Mr. Fiffick had with Adam Kincaid, the Executive Director of the National Republican Redistricting Trust (NRRT) shortly before the map that became S.865 was introduced (though even this limited production does not include the attachments Mr. Fiffick received from the NRRT or the correspondence he sent from his personal email).  *See* **Exhibits C, D, E, F**.[3] Moreover, the House Defendants' production and subsequent deposition testimony by House legislators since this Motion to Compel was filed has revealed personal email use by at least two more state senators regarding redistricting. *See, e.g.*, **Exhibit G**.  This is more than sufficient evidence to warrant a full review of personal email review—more than existed in the state House case at the time this Court ordered review there.

Second, Senate Defendants' unilaterally devised approach—to search personal emails only after "evidence" of that use appears elsewhere—remains insufficient and illogical.  Common sense dictates that redistricting conversations could have taken place entirely over personal email, and that custodians could be hiding or more likely failing to remember such conversations when asked

---

[3] Senate Defendants have designed Exhibits C, D, E, and F CONFIDENTIAL under the Parties' confidentiality agreement.  ECF No. 123.  House Defendants have done the same for Exhibit G. Also per the confidentiality agreement, Plaintiffs have met and conferred with counsel for House and Senate Defendants on this issue.  They are aware that Plaintiffs are attaching blank, placeholder versions of Exhibits C-G and sending true versions of the exhibits to the Court via email for *in camera* review.

by Senate Defendants' counsel. The Fiffick/Kincaid correspondence is particularly illustrative. Senator Campsen confirmed during the November 29, 2021 hearing that the Senate received input from Mr. Kincaid before it introduced the map that became S.865. Yet, despite this evidence coming to light *over six months ago*, Senate Defendants pressed their blinkered, unverifiable approach as to Mr. Fiffick's personal email until after this Motion to Compel was filed, and continue to press it as to the rest of the custodians they control.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Compel and deny Senate Defendants' parallel, superfluous Motion for Protective.

Dated: June 29, 2022

Leah C. Aden**
Stuart Naifeh**
Raymond Audain**
John S. Cusick**
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St, 5th Fl.
NY, NY 10006
Tel.: (212) 965-7715
laden@naacpldf.org

Santino Coleman*** Fed. ID. 11914
Antonio L. Ingram II**
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th St, Ste. 600
Washington, D.C. 20005
Tel.: (202) 682-1300
scoleman@naacpldf.org
Adriel I. Cepeda Derieux**
Samantha Osaki**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org

John A. Freedman**
Elisabeth S. Theodore*
Gina M. Colarusso**
John M. Hindley**
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel: (202) 942-5000
john.freedman@arnoldporter.com

*Motion for admission Pro Hac Vice forthcoming*
**Admitted Pro Hac Vice*
***Mailing address only (working remotely from South Carolina)*

Respectfully submitted,

/s/ Christopher J. Bryant
Christopher J. Bryant, Fed. ID 12538
BOROUGHS BRYANT, LLC
1122 Lady St., Ste. 208
Columbia, SC 29201
Tel.: (843) 779-5444
chris@boroughsbryant.com

Somil B. Trivedi**
Patricia Yan**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St., NW
Washington, DC 20005
Tel.: (202) 457-0800
strivedi@aclu.org

Allen Chaney, Fed. ID 13181
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA
Charleston, SC 29413-0998
Tel.: (843) 282-7953
Fax: (843) 720-1428
achaney@aclusc.org

Jeffrey A. Fuisz**
Paula Ramer**
Andrew R. Hirschel*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
jeffrey.fuisz@arnoldporter.com

Sarah Gryll**
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300
sarah.gryll@arnoldporter.com

*Counsel for Plaintiffs the South Carolina Conference of the NAACP and Taiwan Scott*

Janette M. Louard*
Anthony P. Ashton*
Anna Kathryn Barnes*
NAACP OFFICE OF THE GENERAL
COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org

* Motion for admission *Pro Hac Vice*
forthcoming or pending
** Admitted *Pro Hac Vice*

*Counsel for Plaintiff the South Carolina
Conference of the NAACP*