IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICIT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| The South Carolina State Conference of the NAACP, and Taiwan Scott, *on behalf of himself and all other similarly situated persons*,<br><br>Plaintiffs,<br><br>v.<br><br>Thomas C. Alexander, *in his official capacity as President of the Senate Judiciary Committee;* James H. Lucas, *in his official capacity as Speaker of the House of Representatives*; Chris Murphy, *in his official capacity as Chairman of the House of Representatives Judiciary Committee*; Wallace H. Jordan, *in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee*; Howard Knabb, *in his official capacity as interim Executive Director of the South Carolina State Election Commission*; John Wells, *Chair*, Joanne Day, Clifford J. Elder, Linda McCall, and Scott Moseley, *in their official capacities as members of the South Carolina State Election Commission*,<br><br>Defendants. | C/A No.: 3:21-cv-03302-TJH-MBS-RMG<br><br>**ORDER AND OPINION** |

Before the Court are the Senate Defendants' combined motion for protective order and order to quash (Dkt. No. 282) and Plaintiffs' motion to compel production (Dkt. No. 283). For the following reasons, the Panel denies the Senate Defendants' motion and grants in part and denies in part Plaintiffs' motion.

1

## Background

Per the Third Amended Complaint ("TAC"), Plaintiffs challenge the composition of three of South Carolina's congressional districts for the U.S. House of Representatives (Districts 1, 2, and 5) as unconstitutional racial gerrymanders. *See* (Dkt. No. 267 at 38 *et seq.*). Plaintiffs allege that these districts were also drawn with an intentionally discriminatory intent. Senate Bill 865 ("S. 865") enacted the allegedly unlawful congressional maps.

Previously, on February 10, 2022, this Panel issued an Order and Opinion granting in part and denying in part a motion to compel documents from the House Defendants (James H. Lucas, in his official capacity as Speaker of the South Carolina House of Representatives, Chris Murphy, in his official capacity as Chairman of the South Carolina House of Representatives Judiciary Committee, and Wallace H. Jordan, in his official capacity as Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee) filed by Plaintiffs. *S.C. State Conf. of NAACP v. McMaster*, No. 3:21-CV-03302-JMC, — F. Supp. 3d —, 2022 WL 425011 (D.S.C. Feb. 10, 2022) (the "Prior Order") (Dkt. No. 153). Though Plaintiffs did not seek relief against them, the Senate Defendants opposed Plaintiffs' motion. (Dkt. No. 133).

In the Prior Order, after rejecting the Senate Defendants' argument that legislative privilege is absolute, (Dkt No. 153 at 9-11), the Panel, applying *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015), found that the balance of interests weighed in favor of disclosure of material otherwise subject to the legislative privilege, (*id.* at 11-17).[1] The Panel held that Plaintiffs were entitled to, at a minimum, the following discovery as it related to Plaintiffs'

---

[1] The Panel considered the "*Bethune-Hill* factors," namely: (1) the relevance of the evidence sought, (2) the availability of other evidence, (3) the seriousness of the litigation, (4) the role of the State, as opposed to individual legislators, in the litigation, and (5) the extent to which the discovery would impede legislative action. *Benisek v. Lamone*, 241 F. Supp. 3d 566, 575 (D. Md. 2017) (citing *Bethune-Hill*).

challenge to House Bill 4493 ("H. 4493") and the allegedly illegal state house districts enacted under it:

> 1. Depositions of all legislators, staff (including Map Room staff) and consultants involved in the development, design and/or revisions of H. 4493;
>
> 2. All versions of maps and related documents produced during the course of the development, design, and/or revisions of H. 4493 and sufficient data to determine the date and time such maps were produced and the persons involved in submitting and reviewing them;
>
> 3. All documents which relate in any manner to the intent behind any proposed design and/or revision of H. 4493 or any individual district referenced in Plaintiffs' Amended Complaint;
>
> 4. All documents related to any racially polarized voting analysis utilized in the development, design and/or revision of H. 4493;
>
> 5. Documents which identify and/or describe any computer software utilized in the development, design and/or revision of H. 4493;
>
> 6. Any documents produced and/or provided by persons not legislators or staff which relate to the development, design and/or revision of H. 4493; and
>
> 7. All documents which address any changes in districts from the existing House Plan to H. 4493.

(*Id.* at 17-18). The Panel stated the "parties should refer to this order to clarify the permissible scope of discovery, which is hereby limited to documents, communications, and information which broadly address the issue of discriminatory intent in the present redistricting cycle, by individual legislators or the Legislature as a whole." (*Id.* at 17). No party sought reconsideration of the Prior Order.

On May 6, 2022, because of a settlement reached by Plaintiffs and the House Defendants, Plaintiffs voluntarily dismissed their claims challenging H. 4493. (Dkt. No. 266). That same day, Plaintiffs filed the TAC challenging only the maps drawn pursuant to S. 865. (Dkt. No. 267).

On June 15, 2022, the Senate Defendants moved for a protective order preventing disclosure of "confidential documents, materials, and information subject to legislative privilege" and further moved to quash Plaintiffs' notice of deposition of Will Roberts to the "extent Plaintiffs seek to inquire into matters subject to the legislative privilege." (Dkt. Nos. 282 and 290). The Senate Defendants argue that the Prior Order is not binding on them or is otherwise clearly erroneous. The House Defendants support the Senate Defendants' motion. (Dkt. No. 287). Plaintiffs oppose. (Dkt. No. 286).

On June 15, 2022, Plaintiffs filed a motion to compel production from the Senate Defendants. (Dkt. Nos. 283 and 298). Plaintiffs argue that the Prior Order is the "law of the case" and that it dictates the Panel reject the Senate Defendants' assertion of legislative privilege. Additionally, Plaintiffs argue that the Panel should compel the Senate Defendants to conduct a reasonable search of their custodians' personal email accounts and subsequently either produce relevant, responsive documents contained therein, or sign a certification that no such documents exist. The Senate Defendants oppose Plaintiffs' motion. (Dkt. No. 289).

The parties' respective motions are fully briefed and ripe for disposition.

## **Legal Standard**

### I. Motions to Compel

Rule 26 of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or defense, and (3) proportional to the needs of the case. *See*, *e.g.*, *Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 402 (D. Wyo. 2017).

If a party fails to make a disclosure required by Rule 26, "any other party may move to compel disclosure and for appropriate sanction" after it has "in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a). Specifically, a party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B).

"[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Oppenheimer v. Episcopal Communicators, Inc.*, No. 1:19-cv-00282-MR, 2020 WL 4732238, at *2 (W.D.N.C. Aug. 14, 2020); *see Basf Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, No. 2:17-cv-503, 2019 WL 8108060, at *2 (E.D. Va. July 3, 2019) (citation omitted).

The court has broad discretion in deciding to grant or deny a motion to compel. *See, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.") (internal citation omitted); *Erdmann v. Preferred Research Inc.*, 852 F.2d 788, 792 (4th Cir. 1988); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court."); *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, No. 3:15-cv-03447-JMC, 2018 WL 573158, at *2 (D.S.C. Jan. 26, 2018).

## II.    Legislative Privilege Generally

The federal system "has broadly recognized the right 'of legislators to be free from arrest or civil process for what they do or say in legislative proceedings.'" *EEOC v. Wash. Suburban Sanitary Comm'n* ("*WSSC*"), 631 F.3d 174, 180 (4th Cir. 2011) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951)). Legislative immunity for U.S. Senators and Representatives derives

from the Speech and Debate Clause, U.S. Const., Art. I, § 6, and extends broadly to bar criminal prosecution or civil suit based on "anything 'generally done in a session of the House [or Senate] by one of its members in relation to the business before it.'" *Gravel v. United States*, 408 U.S. 606, 624 (1972) (quoting *Kilbourn v. Thompson*, 103 U.S. 168 (1880)).

While the Speech and Debate Clause by its terms protects only federal officials, the Supreme Court has developed a similar doctrine of immunity that shields state, regional, and local officials from civil liability based on their actions taken "in the sphere of legitimate legislative activity." *Tenney*, 341 U.S. at 376; *see also Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998) (holding that the doctrine protects local officials); *Lake Country Estates v. Tahoe Reg'l Planning Agency*, 440 U.S. 391, 405 (1979) (same for regional officials); *Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732-33 (1980) (same for suits seeking injunctive relief). This common law doctrine is rooted in principles of comity and in a history of immunity for state legislators that predates the Constitution. *See Spallone v. United States*, 493 U.S. 265, 279 (1990) ("[A]ny restriction on a legislator's freedom undermines the 'public good' by interfering with the rights of the people to representation in the democratic process"); *Tenney*, 341 U.S. at 372 ("Freedom of speech and action in the legislature was taken as a matter of course by those who severed the Colonies from the Crown and founded our Nation").

Moreover, in order to "safeguard this [state] legislative immunity and to further encourage the republican values it promotes," courts have recognized a corresponding privilege "against compulsory evidentiary process" that can apply "whether or not the legislators themselves have been sued." *WSSC*, 631 F.3d at 181. Because legislative immunity and legislative privilege are motivated by the same policy of comity, courts apply them in a parallel manner. *See*, *e.g.*, *Gravel*,

6

408 U.S. at 608 (declining to quash grand jury subpoena for Senator's aide, relying on cases establishing legislative immunity from suit).

Still, the Supreme Court recognized that "[w]here important federal interests are at stake, ... comity yields." *United States v. Gillock*, 445 U.S. 360, 373 (1980). In certain cases, therefore, the court found the "recognition of an evidentiary privilege for state legislators for their legislative acts would impair the legitimate interest of the Federal Government ... with only speculative benefit to the state legislative process." *Id.* at 373. Applying the Supreme Court's guidance, district courts, including several in the Fourth Circuit, have held that "[w]hile legislative privilege is undoubtedly robust, the Supreme Court's decisions make clear that the privilege does not *absolutely* protect state legislative officials from discovery into communications made in their legislative capacity." *Benisek v. Lamone*, 241 F. Supp. 3d 566, 574 (D. Md. 2017); *see also Bethune-Hill*, 114 F. Supp. 3d at 336. "Drawing on these principles, courts ruling on claims of legislative privilege in redistricting cases have frequently adopted a five-factor standard that facilitates case-by-case evaluation of the competing interests at stake. This standard, which derives from cases on deliberative-process privilege for executive actors, requires a court evaluating a claim of legislative privilege to take into account the relative weight of: (1) the relevance of the evidence sought, (2) the availability of other evidence, (3) the seriousness of the litigation, (4) the role of the State, as opposed to individual legislators, in the litigation, and (5) the extent to which the discovery would impede legislative action." *Benisek*, 241 F. Supp. 3d at 575; *Bethune-Hill*, 114 F. Supp. 3d at 337-38 (characterizing the last factor as an inquiry into how discovery would affect the purpose of the privilege).

## **Analysis**

### I.     Plaintiffs' Motion to Compel is Procedurally Proper

The Senate Defendants argue that Plaintiffs' motion to compel must be denied because (1) it is untimely under D.S.C. Local Civ. R. 37.01(A) and (2) Plaintiffs failed to meet and confer in accord with Local Civ. R. 7.02.

Local Civil Rule 37.01(A) provides that motions to compel must be filed within 21 days after receipt of the discovery response to which the motion is directed.  The Senate Defendants served their discovery on April 6, 2022, and Plaintiffs filed the instant motion to compel on June 15, 2022, roughly 43 days later. "[A] district court has discretion to consider an untimely motion to compel if the movant offers an acceptable explanation for the motion's tardiness." *United States ex rel. Becker v. Westinghouse Savannah River Co.,* 305 F.3d 284, 290 (4th Cir. 2002) (citation omitted).  While "under a strict interpretation of Local Civil Rule 37.01 the court could find [Plaintiffs' motion] untimely . . . South Carolina district courts have discretion to consider an untimely motion to compel if the movant offers an acceptable explanation for the motion's tardiness." *United Prop. & Cas. Ins. v. Couture*, No. 2:19-CV-01856-DCN, 2020 WL 2319086, at *3 (D.S.C. May 11, 2020) (internal quotation marks omitted) *citing U.S. ex rel. Becker*, 305 F. 3d at 290.  Here, the Panel finds that Plaintiffs have presented an acceptable explanation for their tardiness—namely that during the period in question all parties were actively engaged in discovery and preparation for the May 16, 2022 trial on the state house case. (Dkt. No. 298 at 3) (noting "[c]ounsel for Plaintiffs and House Defendants were engaged in depositions and/or motion practice virtually every day between April 6 and the state House Settlement" and further noting that "*all* Parties including the Senate Defendants were set for trial in the state House case . . . and had established a separate discovery and trial schedule for the congressional case") (emphasis added);

*see Couture*, 2020 WL 2319086, at *3 (excusing failure to file motion to compel within 21 days where the parties were engaged in continued discovery); *Brown-Thomas v. Hynie*, No. 1:18-CV-02191-JMC, 2021 WL 651014, at *2 (D.S.C. Feb. 19, 2021) (excusing untimely motion to compel where parties were "engaged in resolving these issues over the past five months," "discovery remain[ed] ongoing," and there was "lack of prejudice" to the non-moving party). Further, the Panel finds that Plaintiffs satisfied Local Civil Rule 7.02 prior to filing their motion. As Plaintiffs note, the Senate Defendants themselves recount numerous meet-and-confers between the parties leading up to Plaintiffs' June 29, 2022 motion to compel. *See* (Dkt. No. 298 at 6 n.2) ("Senate Defendants themselves recount at least three correspondences—May 20, May 25, and May 27."); (Dkt. No. 289 at 1-2) (noting meet and confers on May 31 and June 15, 2022).

Accordingly, the Panel addresses the merits of Plaintiffs' motion.

## II.     Legislative Privilege

Having carefully considered the parties' respective arguments, the Panel reaffirms the analysis articulated in the Prior Order, denies the Senate Defendants' combined motion for protective order and motion to quash, and grants Plaintiffs' motion to compel regarding documents withheld by the Senate Defendants based on legislative privilege.

The Senate Defendants previously opposed Plaintiffs' February 2, 2022 motion to compel. *See* Senate Defendants' Opposition, (Dkt. No. 133) (arguing that legislative privilege is absolute, that *Bethune-Hill* and *Benisek* were "wrongly decided," but that, to the extent the Panel considered the *Bethune-Hill* factors, said factors weighed in favor of upholding the privilege). In deciding the Prior Order in Plaintiffs' favor, the Panel explicitly considered and rejected both the Senate and House Defendants' arguments, *see* (Dkt. No. 282 at 4) ("The Senate Defendants incorporate their prior arguments by reference, but acknowledge that the Court *previously rejected them*.")

9

(emphasis added)—arguments the Senate Defendants merely rehash here, *e.g.*, (*id.* at 8) ("As the Senate Defendants previously explained . . . the five-factor test is inapplicable to this case as a matter of law.")  The TAC adequately alleges Congressional Districts 1, 2, and 5 are unconstitutional racial gerrymanders or were otherwise drawn with an intentionally discriminatory intent. *See* Order and Opinion, (Dkt. No. 291) (denying the House and Senate Defendants' respective motions to dismiss the TAC). Further, the TAC's allegations regarding S. 865 are indistinguishable from those previously asserted regarding H. 4493 and which underpinned the Prior Order's findings with regard to legislative privilege—a fact the Senate Defendants do not even attempt to dispute in their briefing. *See generally* (Dkt. No. 289).  In sum, for the reasons articulated in the Prior Order—reasons which the Panel adopts by reference—the Panel finds that the *Bethune-Hill* factors weigh in favor of disclosure as to Plaintiffs' discovery requests concerning S. 865. *See* (Dkt. No. 153 at 12-17). Plaintiffs are thus entitled to, at the least:

  1. Depositions of all legislators, staff (including Map Room staff) and consultants involved in the development, design and/or revisions of S. 865;

  2. All versions of maps and related documents produced during the course of the development, design, and/or revisions of S. 865 and sufficient data to determine the date and time such maps were produced and the persons involved in submitting and reviewing them;

  3. All documents which relate in any manner to the intent behind any proposed design and/or revision of S. 865 or any individual district referenced in Plaintiffs' TAC;

  4. All documents related to any racially polarized voting analysis utilized in the development, design and/or revision of S. 865;

  5. Documents which identify and/or describe any computer software utilized in the development, design and/or revision of S. 865;

  6. Any documents produced and/or provided by persons not legislators or staff which relate to the development, design and/or revision of S. 865; and

> 7. All documents which address any changes in districts from the existing Congressional Plan to S. 865.

*See* (Dkt. No. 153 at 17-18).

Accordingly, the Senate Defendants' combined motion for protective order and motion to quash are denied on this point and Plaintiffs' motion to compel is granted on this point.

### III.    Personal Email Searches

Plaintiffs argue that the Senate Defendants have refused to search, review, or produce responsive emails allegedly found on custodians' personal email accounts. (Dkt. No. 283 at 10 *et seq.*). Plaintiffs point to the Panel's April 13, 2022 Order[2] for the proposition that the Senate Defendants must search custodians' personal email and messaging accounts for responsive material even "absent explicit evidence that [personal] accounts were [in-fact] used to discuss redistricting matters." (Dkt. No. 283 at 10). *But see* Plaintiffs' Motion to Enforce February 10, 2022 Order, (Dkt. No. 198 at 6-7) (noting "materials produced reflect that the three named House Defendants used non-legislative email accounts to engage in redistricting discussion").

In opposition, the Senate Defendants argue, *inter alia*, that Plaintiffs' motion is moot because the Senate Defendants are voluntarily complying "with the Court's approved protocol related to personal email accounts." (Dkt. No. 289 at 7); *see* (Dkt. No. 289-1 at 2) (Certification Under Penalty of Perjury of Luke A. Rankin); (Dkt. No. 289-2 at 2) (Certification Under Penalty of Perjury of Andy Fiffick); *see also* (Dkt. No. 289 at 9) (noting that, in the "interest of providing a comprehensive review and production to Plaintiffs, counsel for the Senate Defendants have

---

[2] (Dkt. No. 221 at 3) (noting the Panel was "informed" that one or more legislators may have used personal email accounts or text messaging services to send or receive information related to reapportionment and ordering said legislators or legislative staff to sign a certification under penalty of perjury that all personal accounts and devices had been searched for relevant communications and that said communications had been given to South Carolina House counsel).

11

reviewed tens of thousands of documents collected from the custodians, including for evidence of personal email accounts. Counsel has identified no such use by most of the custodians and only sporadic use by two custodians, Senator Rankin and Mr. Fiffick").

In their reply, Plaintiffs argue that documents recently produced by the House Defendants reveal "personal email use by at least two more state senators regarding redistricting." (Dkt. No. 298 at 8) *citing* Ex. G., (email from Beaufort County South Carolina Republican Party to, *inter alia*, Sen. Tom Davis and Sen. Chip Campsen, attaching a "notice . . . of the Public Hearing on SC Congressional Re Districting" and encouraging members to "send an email voicing your opinion on How Congressional District lines are drawn"). Plaintiffs also argue that "a full review of personal email" is justified because of correspondence produced showing Fiffick used a personal email account to contact Adam Kincaid, the Executive Director of the National Republican Redistricting Trust "shortly before the map that became S. 865 was introduced." (Dkt. No. 298 at 7).

The Panel grants Plaintiffs' motion in part on this final point. The Senate Defendants represent that they have voluntarily adopted the protocol articulated in the Panel's April 13, 2022 Order for searching personal email accounts for responsive documents. To date, however, the Senate Defendants have only produced certifications for two custodians, Rankin and Fiffick. (Dkt. No. 289 at 9) (noting that, in the "interest of providing a comprehensive review and production to Plaintiffs, counsel for the Senate Defendants have reviewed tens of thousands of documents collected from the custodians, including for evidence of personal email accounts. Counsel has identified no such use by *most* of the custodians and only sporadic use by two custodians, Senator Rankin and Mr. Fiffick") (emphasis added). Accordingly, the Panel orders the Senate Defendants to produce to Plaintiffs on or before July 7, 2022, Certifications for all such "identified custodians"

which the Senate Defendants "interviewed . . . including regarding any use of personal email accounts to send or receive information related to the Congressional redistricting process." (Dkt. No. 289 at 9).

## Conclusion

For the foregoing reasons, and as detailed herein, the Senate Defendants' combined motion for protective order and motion to quash (Dkt. No. 282) is **DENIED** and Plaintiffs' motion to compel production (Dkt. No. 283) is **GRANTED IN PART AND DENIED IN PART.**

**AND IT IS SO ORDERED.**

United States Circuit Judge

United States District Judge

United States District Judge

July 5, 2022
Charleston, South Carolina