## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, <br><br> and <br><br> TAIWAN SCOTT, on behalf of himself and all other similarly situated persons, <br><br>                 Plaintiffs, <br><br>        v. <br><br> THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission, <br><br>                 Defendants. | Case No. 3:21-cv-03302-MGL-TJH-RMG <br><br> **THREE-JUDGE PANEL** <br><br> **JOINT MOTION OF SENATE AND HOUSE DEFENDANTS FOR CONFIDENTIALITY ORDER SPECIFIC TO LEGISLATIVELY PRIVILEGED MATERIALS** |

      Defendants Thomas C. Alexander (in his official capacity as President of the Senate), Luke A. Rankin (in his official capacity as Chairman of the Senate Judiciary Committee) (collectively, the "**Senate Defendants**"), and James H. Lucas (in his official capacity as Speaker

of the South Carolina House of Representatives[1]), Chris Murphy (in his official capacity as Chairman of the South Carolina House of Representatives Judiciary Committee), and Wallace H. Jordan (in his official capacity as Chairman of the South Carolina House of Representatives Redistricting Ad Hoc Committee) (collectively, the "**House Defendants**"), by and through their undersigned counsel, hereby jointly move this Panel to enter a separate Confidentiality Order specifically to deem legislatively privileged materials as confidential. Counsel for Howard Knapp (in his official capacity as interim Executive Director of the South Carolina State Election Commission), John Wells (Chair), Joanne Day, Clifford J. Elder, Linda McCall and Scott Mosely (in their official capacities as members of the South Carolina Election Commission) (collectively, the "**Election Defendants"**) have indicated that the Election Defendants consent to the Motion. Plaintiffs do not consent.

## BACKGROUND

On February 2, 2022, all parties jointly moved for a confidentiality order to be entered in this case. [ECF No. 121]. On the same day, the Honorable J. Michelle Childs, formerly a member of this Panel, entered a standard Confidentiality Order, which expressly allowed a party to "designate documents as confidential but only after review of the documents by an attorney who has, in good faith, determined that the documents contain information protected from disclosure by statute, sensitive personal information, trade secrets, or confidential research, development, or commercial information." [ECF No. 123 at ¶ 3].

---

[1] On May 12, 2022, James H. Lucas stepped down as Speaker of the South Carolina House of Representatives. The current Speaker of the House is Representative G. Murrell Smith, Jr.

That Order did not address materials protected by the legislative privilege as it was entered prior to Judge Childs' Order and Opinion granting in part Plaintiffs' Motion to Compel the production of items otherwise subject to the legislative privilege on February 10, 2022. [ECF No. 153]. Following Judge Childs' February 10, 2022 Order, House Defendants made copious productions of materials subject to the legislative privilege, marking all such documents that were legislatively privileged "CONFIDENTIAL" [2]—and noted that the productions were made in compliance with Judge Childs' February 10, 2022 Order and reserving all arguments previously made with respect to legislative privilege. Thereafter, depositions of House members and legislative staff were conducted. In those depositions, Plaintiffs used as exhibits and as a basis for questions multiple documents that are legislatively privileged, and had been marked "CONFIDENTIAL," when produced as described above.

Following the depositions in the House District portion of this litigation, House Defendants sent four letters to the Plaintiffs' counsel with confidentiality designations pertaining to certain portions of the depositions of Speaker Lucas, Chairman Murphy, Emma Dean, and Thomas Hauger within the five-day time period allowed by the Confidentiality Order. [*See* ECF No. 123 at ¶4]. Plaintiffs' counsel responded to each of those letters challenging the majority, or, in some cases, all of the confidentiality designations. Plaintiffs' stated reason for challenging these designations was that the exhibits (*i.e.* documents previously marked as "CONFIDENTIAL" and whose designation as such Plaintiffs had failed to challenge earlier) or transcript excerpts listed by

---

[2] However, Senate and House Defendants did not mark every document confidential as the Confidentiality Order did not cover "[i]nformation or documents which are available in the public sector" to be designated as confidential. Plaintiffs on the other hand have marked every document they have produced, except for one, with a confidential designation. Neither the House nor the Senate Defendants have challenged the confidential designations of Plaintiffs' productions to date.

3

House Defendants did not "contain information protected from disclosure by statute,[3] sensitive personal information, trade secrets, or confidential research, development, or commercial information," as is required by Paragraph 3 of the Confidentiality Order. Rather, Plaintiffs argued that "each of these exhibits/transcript excerpts reflects discussion of the House's processes, which are matters of public record." This position is, however, incorrect—as the information that Plaintiffs challenge is exempt from disclosure by statute and is subject to legislative privilege.

As this Panel is aware, the state House District portion of this litigation was settled and a stipulation was entered to toll the response time concerning confidentiality designations on May 18, 2022. *See* ECF No. 270.[4] On the afternoon of Friday, July 1, 2022, Plaintiffs' counsel sent an email again noting their challenges to House Defendants' confidentiality designations.

---

[3] The South Carolina Freedom of Information Act (S.C. Code Ann. § 30-4-10 et seq.) provides the right to inspect or copy public records, except for the enumerated matters that are expressly exempt from disclosure by statute. Such statutory exemptions include for "[m]emoranda, correspondence, and working papers in the possession of individual members of the General Assembly or their immediate staffs…" S.C. Code Ann. § 30-4-40(a)(8), "[c]orrespondence or work products of legal counsel for a public body and any other material that would violate attorney-client relationships," S.C. Code Ann. § 30-4-40(a)(7), and "[i]nformation of a personal nature where the public disclosure thereof would constitute unreasonable invasion of personal privacy" from disclosure, S.C. Code Ann. § 30-4-40(a)(2). The confidentiality designations made by House Defendants thus far fit these statutory exemptions, and, therefore, are protected from disclosure under the terms of the February 2, 2022 Confidentiality Order. However, out of an abundance of caution, Senate and House Defendants now seek a new confidentiality order expressly covering legislatively privileged materials.

[4] The Joint Stipulation stated that "the five-day deadline to move for an Order confirming confidentiality designations, as provided for in Paragraph 8(b) of the Confidentiality Order (ECF No. 123), shall be tolled while the legislative process related to the enactment of the Settlement Maps remains ongoing." [ECF No. 270 at 2]. The joint stipulation was valid until either the "enactment of the Settlement Maps or July 31, 2022, whichever is earlier." *Id.* The Settlement Maps were signed into law by Governor McMaster on June 17, 2022 and was enacted in Act No. 226 on June 28, 2022.

Senate[5] and House Defendants and Plaintiffs participated in a meet and confer on July 8, 2022, but were unable to resolve their differences. During this meet and confer, Plaintiffs' counsel suggested that the public should have access to all of the depositions and documents in this case that deal with the legislative process. House Defendants disagreed with that position and explained in a letter sent on July 13, 2022 that the confidentiality designations were proper under the existing Confidentiality Order because of the statutory exemptions to the South Carolina Freedom of Information Act. *See* S.C. Code Ann. § 30-4-40(a). Attached to that letter was a draft of the instant Motion.

All parties then participated in another meet and confer on July 22, 2022 and Senate and House Defendants and Plaintiffs participated in a second meet and confer, but were again unable to resolve their issues. Plaintiffs declined to consent to the instant motion, but agreed that House Defendants should have until Monday, August 1, 2022 to file a motion with respect to the challenged confidentiality designations under the current Confidentiality Order. Plaintiffs also declined to consent to the relief sought in the instant Motion—and so Senate and House Defendants felt compelled to seek an additional Confidentiality Order.

**ARGUMENT**

As noted in earlier pleadings, legislative privilege "protect[s] legislators from liability for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 48-49 (1998). This robust protection is premised on the bedrock principle that "the exercise of legislative discretion should not be inhibited by judicial interference." *Bogan,* 523 U.S. at 52. Indeed, the South Carolina Supreme Court has explicitly stated, "South Carolina recognizes the longstanding doctrine of

---

[5] Senate Defendants have produced legislative privileged documents subject to the Panel's July 8, 2022 Order and anticipate similar issues arising. Plaintiffs have begun deposing Senate staff and have just begun scheduling depositions of Senators.

legislative immunity for legislators carrying on their legislative duties." *S.C. Pub. Int. Found. v. Courson*, 420 S.C. 120, 125 (2017). The Supreme Court has noted that "[l]egislative immunity protects legislators from 'deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence, but for the public good.'" *Id.* (quoting *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)). Indeed, the legislative privilege may be employed to "prevent [the legislature's] decision-making process from being swept up unnecessarily into the public domain." *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 339 (E.D. Va. 2015) (citing *Comm. for a Fair & Balanced Map,* No. 11 C 5065, 2011 WL 4837508, at *8 (N.D. Ill. Oct. 12, 2011) (internal brackets and citations omitted). While the legislative privilege "may become qualified based on the nature of the claim at issue," it only gives way for purposes of the litigation and does not mean that such materials should be put in the public domain. *Bethune-Hill*, 114 F. Supp. at 334.

The Orders on legislative privilege issued on February 10, 2022 [ECF No. 153] and July 8, 2022 [ECF No. 299] did not vitiate the legislative privilege, but rather held that it was a qualified privilege that only yields for the purposes of this litigation when competing interests of Plaintiffs are evaluated against a five-factor standard. *See* ECF No. 153 at 11-16; ECF No. 299 at 7 (citing *Benisek v. Lamone*, 241 F. Supp. 3d 566, 574 (D. Md. 2017); *Bethune-Hill*, 114 F. Supp. 3d at 336). While the Orders allowed Plaintiffs to take depositions of legislators and staff and obtain certain document discovery, Judge Childs' February 10 Order (which was incorporated into the Panel's July 8 Order) took special note that the "court must be wary of any intrusion which subjects legislators to unnecessary and burdensome disclosure requirements and detracts from their representative functions." *Id.* at 15. In addition, Judge Childs' February 10 Order, expressly limited "the disclosure of such documents…to those which provide direct evidence of specific intent." *Id.*

6

at 16. Therefore, the legislative privilege is not nullified, but only curtailed during this litigation to the extent any documents, communications, or information address the issue of discriminatory intent in the present redistricting cycle, by individual legislators or the Legislature as a whole. *Id.* Any suggestion that any deposition testimony and confidential documents used as exhibits should be publicized or used for a purpose other than this specific case would violate the spirit and intent of the Orders.

In addition, Senate and House Defendants need to preserve the confidentiality of legislatively privileged materials in the event an appeal is necessary. Disclosure to the public or third parties by the Plaintiffs could arguably waive the legislative privilege completely. Therefore, this Panel should expressly include legislatively privileged materials in a separate Confidentiality Order.

Although this Panel has held the legislative privilege is qualified and ordered the production of documents and depositions of legislators and staff, the legislative privilege must still be preserved outside of this litigation. Public disclosure of legislatively privileged documents could have serious ramifications on future deliberations of the Legislature, so "it is necessary to consider the potential for 'future timidity' within the halls of the legislature that may 'inhibit frank and full deliberations' in legislative activity." *Page v. Virginia State Bd. of Elections*, 15 F. Supp. 3d 657, 667 (E.D. Va. 2014). Indeed, there may be "a great…chilling effect" when there is a "forced disclosure of deliberations between two legislators." *Id.* In addition, "any effort to disclose the communications of legislative aides and assistants who are otherwise eligible to claim the legislative privilege on behalf of their employers threatens to impede future deliberations by the legislature." *Id.*

Several courts have considered the chilling effect and "potential for timidity" stemming from disclosure and have taken this "threat…seriously" in the redistricting context. *Bethune-Hill*, 114 F. Supp. 3d at 342.[6] In fact, the court in *Bethune-Hill* found that, when weighing the purpose of the legislative privilege, the analysis for this factor, the purpose of the privilege, "weigh[ed] against disclosure." *Id.* The court in *Bethune-Hill* also cited a case from the Northern District of Illinois where the court partially quashed a subpoena in the redistricting context on the basis of legislative privilege because legislators must "be able to confer with one another without fear of public disclosure." *Comm. for a Fair & Balanced Map*, 2011 WL 4837508, at *8. That court noted that a "legislator's need for confidentiality is similar to the need for confidentiality in communications between judges, between executive officials, and between a President and his aides." *Id.* (citing *In re Grand Jury*, 821 F.2d 946, 957 (3d Cir. 1987).

Similar concerns about a future chilling effect and timidity of legislative activity weighs against public disclosure of legislatively privileged documents here. Plaintiffs have received legislatively privileged documents and can use them in this litigation as there is already a process in place by which a party may use confidential documents in this litigation. [*See* ECF No. 123 at ¶ 6].[7]

---

[6] A court in the Eastern District of New York found that while the five-factors used in *Bethune-Hill* and in this case "generally support overcoming the privilege, the threat of inhibiting legislative deliberations hangs in the air." *Favors v. Cuomo*, 285 F.R.D. 187, 220 (E.D.N.Y. 2012). Importantly, the court found that there was an actual "chill in legislative deliberations since the previous redistricting cycle" and that drawing "back the legislative curtain has the potential, outside the redistricting context, to deter legislators from open and honest deliberations with one another, with their staffs, and with retained experts, for fear that any such communications will be discoverable in future litigation." *Id*.

[7] Indeed, the Plaintiffs have already used this process in a recent filing and submitted confidential documents to the court via email for an *in camera* review. [*See* ECF No. 298 at 7 n.3; Exhibits C-G].

8

Finally, this Panel has entered two separate "Attorney's Eyes Only" confidentiality orders to protect the membership lists of the South Carolina State Conference of the NAACP. [ECF Nos. 227 and 284]. These Orders strictly limited the review, use, and disclosure of these membership lists, despite the fact that this information is not in any way privileged—and both the House and Senate defendants consented to and have abided by those Orders. Similarly, the internal deliberations and processes of the Legislature that are normally covered by legislative privilege should be afforded at least the same protections as those membership lists. Despite the fact that House and Senate Defendants consented to those Orders, Plaintiffs have refused to consent to the instant Motion.

For all of these reasons, House and Senate Defendants respectfully submit that a separate Confidentiality Order should be entered to expressly cover such materials in order to protect the legislative process as discussed above. A proposed Order will be provided to the Court for its consideration.

## CONCLUSION

For the foregoing reasons, Senate and House Defendants respectfully request this Panel enter a new Confidentiality Order covering legislatively privileged materials, including deposition transcripts and exhibits.

*[signature pages follow]*

Respectfully submitted,

*s/Robert E. Tyson, Jr.*
Robert E. Tyson, Jr. (7815)
Vordman Carlisle Traywick, III (12483)
La'Jessica Stringfellow (13006)
ROBINSON GRAY STEPP & LAFFITTE, LLC
1310 Gadsden Street
Post Office Box 11449 (29211)
Columbia, South Carolina 29201
(803) 929-1400
rtyson@robinsongray.com
ltraywick@robinsongray.com
lstringfellow@robinsongray.com

John M. Gore (admitted *pro hac vice*)
Stephen J. Kenny (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
jmgore@jonesday.com
skenny@jonesday.com

*Attorneys for Senate Defendants*

*s/ Mark C. Moore*
Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com

William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900
Greenville, SC 29601
Telephone: 864.370.2211
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com

*Attorneys for House Defendants*

July 26, 2022
Columbia, South Carolina

10

**WITH THE CONSENT OF:**

*/s/Jane Trinkley*
M. Elizabeth Crum (Fed. Bar #372)
Jane Trinkley (Fed. Bar #4143)
Michael R. Burchstead (Fed. Bar #102967)
BURR & FORMAN LLP
Post Office Box 11390
Columbia, SC  29211
Telephone: (803) 799-9800
jtrinkley@burr.com

*Attorneys for Election Defendants*