IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, <br><br> and <br><br> TAIWAN SCOTT, on behalf of himself and all other similarly situated persons, <br><br>       Plaintiffs, <br><br>   vs. <br><br> THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. ELDER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina State Election Commission, <br><br>       Defendants. | Case No. 3:21-cv-03302-MGL-TJH-RMG <br><br> **SENATE DEFENDANTS' AND HOUSE DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' IMPROPER SUPPLEMENTAL DISCLOSURES AND EXCLUDE UNTIMELY WITNESSES** |

   On August 9, 2022—three days before the close of written discovery—Plaintiffs served two supplemental disclosures on the Senate Defendants and the House Defendants. The first, Plaintiffs' Second Supplemental Initial Disclosures, added seven new witnesses to Plaintiffs' case. The second, the Supplemental Expert Report of Plaintiffs' putative expert Moon Duchin, added

1

new analysis not contained in Dr. Duchin's original report or discussed at her deposition regarding the Congressional Plan. Both of these supplemental filings violate Federal Rule 26 and this Court's local rules. The Court should strike them and exclude the witnesses. Given that document discovery already has closed and trial is imminent, Senate Defendants and House Defendants ask the Court to expedite the briefing and its ruling on this motion.[1]

## I. THE COURT SHOULD STRIKE PLAINTIFFS' SECOND SUPPLEMENTAL INITIAL DISCLOSURES

Plaintiffs' Second Supplemental Initial Disclosures served on August 9 identify seven new witnesses in Plaintiffs' case. Six of those witnesses are part of the "Executive leadership" of Plaintiff "South Carolina Conference of the NAACP": Dorothy Scott, Elizabeth Kilgore, Phillip Scott, Henry Griffin, Oveta Glover, and James L. Felder. Pls. Second Supp. Initial Discl. at 2-3 (Ex. A). The other, Anjene Davis, can be contacted through Plaintiffs' counsel of record, the NAACP Legal Defense and Education Fund. *See id.* at 7.

All seven of these individuals are well-known to Plaintiffs. *See* Emails Between R. Audain & J. Gore at 1 (Ex. B). Moreover, Plaintiffs' counsel confirmed on the August 15, 2022 meet-and-confer that their "theory of the case all along" has contemplated calling individual fact witnesses to testify regarding the alleged effect of the Congressional Plan on their communities. But Plaintiffs waited until the eve of discovery closing to disclose these individuals to Defendants.

Local Rule 16.02(D)(2) directs:

> Witnesses who are not timely identified may be excluded. All witnesses should be identified as early in the discovery process as is feasible. Witnesses identified within the last twenty-eight (28) days

---

[1] On August 12, 2022 and August 15, 2022, movants' counsel conferred with Plaintiffs' counsel and attempted in good faith to resolve the matters contained in the motion. *See* Loc. Civ. R. 16.02. The parties were unable to resolve the matters.

>of the discovery period will be presumed not to be timely identified, absent a showing of good cause.

Loc. Civ. R. 16.02(D)(2).

Plaintiffs' counsel has confirmed that Plaintiffs intend to call these seven individuals as witnesses at trial. *See* Emails Between R. Audain & J. Gore at 2 (Ex. B). But Plaintiffs have not even attempted to show "good cause" for their delay in disclosing them, even when opposing counsel asked them to do so. *See id.* at 1-2. Nor could they make that showing, for at least three reasons.

*First*, at least six of these individuals are part of Plaintiffs' "Executive leadership" team, Pls. Second Supp. Initial Discl. at 2-3 (Ex. A), and all seven are well known to Plaintiffs, *see* Emails Between R. Audain & J. Gore at 1 (Ex. B). Indeed, Plaintiffs' counsel confirmed on the August 15, 2022 meet-and-confer that their "theory of the case all along" has contemplated calling fact witnesses to discuss the alleged effect of the Congressional Plan on their communities. Accordingly, Plaintiffs could have, and should have, disclosed these individuals months ago—and even now, they have failed to offer any reason for their failure to do so.

*Second*, Plaintiff SC NAACP has vigorously sought to defend its members and officers from discovery throughout this litigation. Defendants have worked collaboratively and in good faith to accommodate SC NAACP's concerns, including by agreeing to an attorneys' eyes only protective order to facilitate disclosure of the identities of members upon whom SC NAACP intends to base its standing. *See, e.g.*, Dkt. No. 278.[2] SC NAACP's belated effort to use its members' testimony offensively to prove its claims contravenes its prior discovery positions in

---

[2] Notably, Plaintiffs did not identify these members of executive leadership pursuant to that Confidentiality Order, which only raises the question of why that order was even necessary in the first place. It was not.

3

this case. Refusing to disclose members and then, at the last minute, disclosing members as witnesses at trial makes no sense. SC NAACP cannot have it both ways. The Court should not countenance Plaintiffs' wildly inconsistent positions because they circumvent both the rules and the Scheduling Order.

*Third*, as to Mr. Davis in particular, Plaintiffs have offered no coherent explanation of the substance of his testimony. To the extent Mr. Davis intends to offer testimony about "the impact of the redistricting process on South Carolina's communities" in general, Pls. Second Supp. Initial Discl. at 7 (Ex. A), as opposed to his own specific community, such testimony appears to be a backdoor attempt at belatedly disclosing a purported expert more than four months after the April 4, 2022 deadline for expert disclosures, *see* Dkt. No. 210. Plaintiffs have not articulated, and cannot articulate, any good cause for such a lengthy delay.

The prejudice to Senate Defendants and House Defendants from Plaintiffs' belated attempted disclosures is obvious. Plaintiffs' belated disclosure of their own officers and another witness known to them—on a theory they have been contemplating "all along" in this case—constitutes "unfair surprise" against Senate Defendants and House Defendants. *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). Moreover, the pending close of discovery renders Senate Defendants and House Defendants unable "to cure that surprise" through depositions and document discovery. *Id.* To be sure, Senate Defendants and House Defendants agreed "to schedule a limited number of depositions during the week of August 15." Dkt. No. 307 at 2. But given the existing deposition schedule, there is not sufficient time to complete seven additional depositions this week. And completing those depositions beyond this week would jeopardize "the deadlines set in the Court's scheduling orders," including the August 19 deadline for dispositive motions. *Id.*; *see also* Loc. Civ. R. 6.01 ("Motions for extensions of

4

time for completion of discovery will be granted only in unusual cases and upon a showing that the parties have diligently pursued discovery during the originally specified period.").

Permitting these witnesses to testify would severely "disrupt the trial" and even jeopardizes the current pretrial and trial schedule. *S. States Rack & Fixture*, 318 F.3d at 596. Indeed, allowing Plaintiffs' untimely disclosure to stand would necessitate significant new discovery, including depositions, after the discovery period has closed—and could even require delaying trial. *Compare* Loc. Civ. R. 6.01 (extension of time to complete discovery granted only in "unusual cases and upon a showing that the parties have diligently pursued discovery during the originally specified period."). Moreover, to date, Plaintiffs have represented that the purported evidence in support of their claims will be supplied at trial by their five expert witnesses. *See* Pls. Objs. & Resps. To Senate Defs.' First Set Of Interrogatories at 22-25 (Ex. C). Even if Plaintiffs also called SC NAACP President Brenda Murphy and Plaintiff Taiwan Scott to testify, their total number of witnesses would be seven. Permitting Plaintiff to call these seven new witnesses thus would *double* the number of Plaintiffs' witnesses in this matter, significantly extending Plaintiffs' case-in-chief and the trial. The Court, however, has already indicated that the trial of this "limited" matter should be brief. *See* Dkt. No. 210 at 2 n.2 ("The Panel doubts the parties will require 10 days of trial time because of the limited scope of the challenge to the congressional reapportionment plan."). Presumably, Plaintiffs are adding new witnesses at this late stage because they realize the weakness of their case. That does not amount to good cause, nor does it give Plaintiffs license to disregard the rules.

Plaintiffs have provided no "explanation for [their] failure to name the witness[es]" until now. *S. States Rack & Fixture*, 318 F.3d at 596; Emails Between R. Audain & J. Gore at 2 (Ex. B). Plaintiffs have claimed that these individuals' testimony is "important," *see* Emails Between

5

R. Audain & J. Gore at 2 (Ex. B); *see also S. States Rack & Fixture*, 318 F.3d at 596, but they have offered no explanation or substantiation as to why. Nor is any such explanation or substantiation obvious. On the one hand, Plaintiffs already had designated two witnesses, President Murphy and Mr. Scott, to testify "regarding (i) South Carolina's redistricting process and the state's history of redistricting; and (ii) South Carolina's voting population, including voting patterns and demographics." Pls. Second Supp. Initial Discl. at 2-3 (Ex. A). Accordingly, there is no basis for Plaintiffs to designate *six more NAACP officials* to offer redundant testimony regarding those same topics. *See id.* On the other hand, Plaintiffs had also designated six third-party individuals or organizations "who may have information on the redistricting process in South Carolina and the impact of the redistricting process on South Carolina's communities," underscoring that Mr. Davis's testimony is unnecessary. *Id.* at 7.

In all events, if Plaintiffs are correct that the testimony of these seven individuals—who were well known to Plaintiffs and part of their longstanding theory of the case—is "important," then Plaintiffs could have and should have disclosed them earlier. And Plaintiffs' other attempts to explain away their belated disclosures likewise fail. For example, Plaintiffs assert that prior iterations of their initial disclosures "generically identified [NAACP] branch presidents as potential witnesses." Emails Between R. Audain & J. Gore at 2 (Ex. B). Even if such "generic" disclosures had occurred, they would not have been sufficient to satisfy the requirements of Rule 26. *See* Fed. R. Civ. P. 26(a) (requiring disclosure of "the name . . . of each individual likely to have discoverable information"). That is particularly true of Mr. Felder and Mr. Davis, who are not NAACP branch presidents. *See* Pls. Second Supp. Initial Discl. at 3, 7 (Ex. A). But this is debate is academic because the prior versions of Plaintiffs' initial disclosures did not make any

6

"generic" disclosures of "branch presidents." *See* Pls. Initial Discl. (Ex. D); Pls. First Supp. Initial Discl. (Ex. E).

Finally, Plaintiffs have asserted, without substantiation, that the six SC NAACP branch presidents (but not Mr. Davis) "have appeared in meeting minutes and/or were referenced during President Murphy's deposition." Emails Between R. Audain & J. Gore at 2 (Ex. B). But if that is the case, Plaintiffs could have and should have disclosed them earlier. And any mention of these individuals in President Murphy's deposition was also untimely because that deposition took place on August 8, 2022, which "was already past the twenty-eight (28) day threshold imposed by Local Civ. Rule 16(D)(2)." *Haynes v. South Carolina Waste, LLC*, No. 5:21-cv-01544-JMC, 2022 WL 2595243, *2 (D.S.C. July 6, 2022). The Court should strike Plaintiffs' Second Supplemental Initial Disclosures and preclude the newly identified individuals from testifying at trial.

## II. THE COURT SHOULD STRIKE MOON DUCHIN'S SUPPLEMENTAL EXPERT ANALYSIS OF THE JESSAMINE PLAN

Federal Rule of Civil Procedure 26(e)(2) provides:

> For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition.

Fed. R. Civ. P. 26(e)(2). Rule 26 "does not grant a license to supplement a previously filed expert report because a party wants to, but instead imposes an obligation to supplement the report when a party discovers the information it has disclosed is incomplete or incorrect." *Coles v. Perry*, 217 F.R.D. 1, 3 (D.D.C. 2003). In other words, the rule does not permit supplementation to "cover failures or omissions because the expert did an inadequate or incomplete preparation." *Akeva LLC v. Mizuno Corp.*, 212 F.R.D. 306, 310 (M.D.N.C. 2002); *see also Palmetto Pharms. LLC v. AstraZeneca Pharms. LP*, 2012 WL 4369259, *2 (D.S.C. July 18, 2012). "To construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions

7

would reek havoc in docket control and amount to unlimited expert preparation." *Akeva LLC*, 212 F.R.D. at 310; *see also Palmetto Pharms. LLC*, 2012 WL 4369259, *2.

Dr. Duchin's supplemental expert report is not limited to "information included in the report" or "information given during [her] deposition" on the Congressional Plan, which took place on July 14, 2022. *Palmetto Pharms. LLC*, 2012 WL 4369259, *3. To the contrary, Plaintiffs admit that Dr. Duchin's supplemental expert report includes entirely new analysis of the "Jessamine Plan." *See* Emails Between L. Aden & J. Gore at 2 (Ex. F); Duchin Supp. Expert Report at 1, 3-6, 8-10 (Ex. G). This new analysis is "not a proper supplementation" and should be stricken. *Palmetto Pharms. LLC*, 2012 WL 4369259, *3; *see also Coles*, 217 F.R.D. at 3; *Akeva LLC*, 212 F.R.D. at 310.

The Jessamine Plan also is a sideshow irrelevant to this case. Mr. Adam Kincaid, executive director of the National Republican Redistricting Trust ("NRRT"), sent via email three draft Congressional Plans, the Palmetto, Wren, and Jessamine Plans, to a Senate staffer, Mr. Andy Fiffick, after the deadline for public submissions of draft Congressional redistricting plans. Accordingly, none of those plans was published as a public submission on the Senate Redistricting Website. In fact, Mr. Kincaid emailed the Jessamine Plan on November 24, 2021, after the Senate Staff Congressional Plan was posted publicly on November 23, 2021. *See* A. Kincaid Dep. 49-60 (Ex. H); A. Fiffick Dep. 89-90, 184-189, 205-207, 213, 216-218 (Ex. I); W. Roberts Dep. 15-16, 251 (Ex. J); B. John Dep. 47, 195-199 (Ex. K).

Every witness with first-hand knowledge—including Mr. Kincaid, Mr. Fiffick, Senate Cartographer Will Roberts, Staff Attorney Mr. Breeden John, Senator Chip Campsen, Senator Shane Massey, and Senator Luke Rankin—has confirmed that no official or employee of NRRT ever spoke to any member of the General Assembly regarding the Congressional redistricting plan.

Every senator and Senate staff member also has confirmed that no senator ever saw, reviewed, or considered any of the NRRT plans. And every Senate staff member has confirmed that the NRRT plans had no effect on the Congressional Plan or any draft plan the staff drew or the Senate considered. *See* A. Kincaid Dep. 49-60 (Ex. H); A. Fiffick Dep. 89-90, 184-189, 205-207, 213, 216-218 (Ex. I); W. Roberts Dep. 15-16, 251 (Ex. J); B. John Dep. 47, 195-199 (Ex. K); G. Campsen Depo. 93, 151-152 (Ex. L).[3]

Plaintiffs assert that Dr. Duchin may supplement her expert report to analyze the (irrelevant) Jessamine Plan because the Jessamine Plan was not produced in discovery until after Dr. Duchin filed her original expert report. *See* Emails Between L. Aden & J. Gore at 2 (Ex. F). But Plaintiffs, the House Defendants, and the Senate Defendants agreed to the scheduling order placing expert reports before fact discovery. *See* Dkt. No. 210. To allow Plaintiffs to renege on that schedule and to introduce new expert analysis now "would reek havoc in docket control and amount to unlimited expert preparation." *Akeva LLC*, 212 F.R.D. at 310. The Court should strike Dr. Duchin's new analysis of the Jessamine Plan.[4]

## CONCLUSION

In sum, Plaintiffs' eleventh-hour disclosures are improper. *See generally J.R. v. Walgreens Boots All., Inc.*, 470 F. Supp. 3d 534, 548 n.2 (D.S.C. 2020) ("In local parlance, this strategy would

---

[3] No transcript of Senator Massey's or Senator Rankin's deposition is available at this time. If this motion remains pending, transcript excerpts confirming these witnesses' testimony will be filed once they become available.

[4] Plaintiffs apparently intend to supplement the report of Dr. Joseph Bagley as well. *See* Emails Between L. Aden & J. Gore at 2 (Ex. F). Although Dr. Bagley was deposed over a month and a half ago on June 29, 2022, Defendants still have not received this alleged supplemental report. Document discovery closed last Friday, August 12, 2022. Seeking to supplement Dr. Bagley's report is indefensible. Defendants reserve all rights to file another motion as to Dr. Bagley in the event Plaintiffs continue to insist upon ignoring the Federal Rules of Civil Procedure and the Local Civil Rules of the District of South Carolina.

be called 'sandbagging.'"). The Court should strike Plaintiffs' Second Supplemental Initial Disclosures, prevent the untimely disclosed individuals from testifying as witnesses at trial, and strike all portions of Moon Duchin's Supplemental Expert Report discussing the Jessamine Plan.

August 16, 2022

Respectfully submitted,

/s/Robert E. Tyson Jr.
Robert E. Tyson, Jr. (7815)
Vordman Carlisle Traywick, III (12483)
La'Jessica Stringfellow (13006)
ROBINSON GRAY STEPP & LAFFITTE, LLC
1310 Gadsden Street
Post Office Box 11449 (29211)
Columbia, South Carolina 29201
(803) 929-1400
rtyson@robinsongray.com
ltraywick@robinsongray.com
lstringfellow@robinsongray.com

John M. Gore (admitted *pro hac vice*)
Stephen J. Kenny (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
skenny@jonesday.com

*Counsel for Senate Defendants*

/s/ Andrew A. Mathias
Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Erica Wells Shedd (Fed. ID No. 13206)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com

EShedd@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com

William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900
Greenville, SC 29601
Telephone: 864.370.2211
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com

*Attorneys for James H. Lucas, Chris Murphy, and Wallace H. Jordan*