*SC NAACP v. Alexander,*
D.S.C. Case No.  3:21-cv-03302-MGL-TJH-RMG

# Exhibit I

Page 1

1           UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF SOUTH CAROLINA
2                COLUMBIA DIVISION
3

4

5    THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP,
     et al.,

6

                   Plaintiffs,
7

          vs.     CASE NO.:  3:21-CV-03302-MGL-TJH-RMG
8

     THOMAS C. ALEXANDER, et al.,
9

                   Defendants.
10

11

12   DEPOSITION OF:    SENATOR LUKE A. RANKIN
                       (APPEARING VIA VIRTUAL ZOOM)
13

     DATE:             August 2, 2022
14

     TIME:             10:52 AM
15

     LOCATION OF
16   THE DEPONENT:     Rankin & Rankin Law Firm
                       201 Beaty Street
17                     Conway, SC
18   TAKEN BY:         Counsel for the Plaintiffs
19   REPORTED BY:      TERRI L. BRUSSEAU
                       (APPEARING VIA VIRTUAL ZOOM)
20

21

22

23

24

25

```
                                                  Page 2
 1      APPEARANCES OF COUNSEL:
 2           ATTORNEYS FOR THE PLAINTIFFS
                  THE SOUTH CAROLINA STATE CONFERENCE OF
 3                THE NAACP, et al.:
 4                AMERICAN CIVIL LIBERTIES UNION
                  FOUNDATION
 5                BY:  SOMIL B. TRIVEDI
                       (APPEARING VIA VIRTUAL ZOOM)
 6                     PATRICIA YAN
                       (APPEARING VIA VIRTUAL ZOOM)
 7                     LILY BAGGOTT, LAW CLERK
                       (APPEARING VIA VIRTUAL ZOOM)
 8                915 15th Street NW
                  Washington, DC  20005
 9                (202) 457-0800
                  strivedi@aclu.org
10                pyan@aclu.org
11                and
12                AMERICAN CIVIL LIBERTIES UNION
                  FOUNDATION
13                BY:  ADRIEL I. CEPEDA DERIEUX
                       (APPEARING VIA VIRTUAL ZOOM)
14                125 Broad Street, 18th Floor
                  New York, NY  10004
15                (212) 549-2500
                  acepedaderieux@aclu.org
16
                  and
17
                  NAACP LEGAL DEFENSE & EDUCATIONAL
18                FUND, INC.
                  BY:  JOHN S. CUSICK
19                     (APPEARING VIA VIRTUAL ZOOM)
                       LEAH C. ADEN
20                     (APPEARING VIA VIRTUAL ZOOM)
                       GENEVA GUADALUPE, LEGAL INTERN
21                     (APPEARING VIA VIRTUAL ZOOM)
                  40 Rector Street #5
22                New York, NY  10006
                  (212) 965-7715
23                jcusick@naacpldf.org
                  laden@naacpldf.org
24
        (Continued)
25
```

Page 3

```
 1          ATTORNEYS FOR HOUSE DEFENDANTS, SPEAKER
                 JAMES H. LUCAS, CHAIRMAN CHRIS MURPHY
 2          AND CHAIRMAN WALLACE JORDAN:
 3          NEXSEN PRUET, LLC
            BY:  MARK C. MOORE
 4               (APPEARING VIA VIRTUAL ZOOM)
                 KONSTANTINE DIAMADUROS
 5               (APPEARING VIA VIRTUAL ZOOM)
            1230 Main Street, Suite 700
 6          Columbia, SC  29201
            (803) 253-8221
 7          mmoore@nexsenpruet.com
            kdiamaduros@nexsenpruet.com
 8
            ATTORNEYS FOR ELECTION DEFENDANTS:
 9
            BURR FORMAN, LLP
10          BY:  MICHAEL R. BURSTEAD
                 (APPEARING VIA VIRTUAL ZOOM)
11               M. ELIZABETH CRUM
                 (APPEARING VIA VIRTUAL ZOOM)
12          1221 Main Street, Suite 1800
            Columbia, SC  29201
13          (803) 799-9800
            mburstead@burr.com
14          ecrum@burr.com
15          ATTORNEYS FOR THE SENATE DEFENDANTS:
16          JONES DAY
            BY:  JOHN M. GORE
17               (APPEARING VIA VIRTUAL ZOOM)
                 CINDY NYGORD, PARALEGAL
18               (APPEARING VIA VIRTUAL ZOOM)
            51 Louisiana Avenue NW
19          Washington, DC  20001
            (202) 879-3939
20          jmgore@jonesday.com
21          (INDEX AT REAR OF TRANSCRIPT)
22
23
24
25
```

Page 4

1              SENATOR LUKE A. RANKIN

2      being first duly sworn, testified as follows:

3                      EXAMINATION

4      BY MR. TRIVEDI:

5          Q.   Good morning, Mr. Rankin.  Nice to see

6      you again.

7          A.   Good morning.

8          Q.   My name is Somil Trivedi.  As you know,

9      I represent the plaintiffs in this suit.  Even

10     though you just did for the court reporter, could

11     you please state your full name for the record,

12     spelling your last name.

13         A.   Luke Rankin.  L-U-K-E, R-A-N-K-I-N.

14         Q.   Great.  For today's deposition, I just

15     want to start with some basic ground rules, which

16     you probably are already familiar with, but just so

17     that we're on the same page.  You understand that

18     you're testifying under oath today, is that right?

19         A.   Yes, sir.

20         Q.   Is there any reason you aren't able to

21     truthfully answer my questions today?

22         A.   No.

23         Q.   Are you on any medication or anything

24     else that might inhibit your capacities or anything

25     like that?

Page 122

```
 1      by.   That's my only goal, so let's continue on.
 2            Q.    Okay.
 3                  MR. TRIVEDI:  And, John, I'm just
 4      asking you, do you agree I've got to reserve my
 5      rights that if Senator Rankin absolutely has to go,
 6      then we'll hold this open for the remainder of the
 7      time that I need that I hope won't be the entire
 8      time allowed?
 9                  MR. GORE:  Well, I don't know that we
10      need an agreement on that because I don't think
11      Senator Rankin said that he has to go at a
12      particular time.  I think he's expressed that he'd
13      like to be done at five o'clock and I think we'd
14      all like to be done as expeditiously as possible.
15      So I don't think we need an agreement and we
16      certainly don't have one at this point because I
17      don't know what the rest of the question is going
18      to be.
19                  And I don't think you'd be entitled to
20      restart the deposition, which is what I think you
21      said before, whether there might be an entitlement
22      to resume it subject to existing time limits.
23      That's something we can discuss if and when we get
24      to that point.
25                  MR. TRIVEDI:  Okay.  Great.
```

Page 123

1    BY MR. TRIVEDI:

2          Q.    So, Senator Rankin, I have put an

3    exhibit that I have marked as Exhibit 1 into

4    Exhibit Share.

5                (EXHIBIT 1, 2021 Redistricting

6    Guidelines, was marked for identification.)

7    BY MR. TRIVEDI:

8          Q.    Are you able to see that?

9          A.    Not from this screen, no.  You got to

10   hit share screen or do I?

11               MR. TRIVEDI:  It's not really a share

12   screen situation, but if you have Exhibit Share

13   through Veritext open, you ought to be able to just

14   see it.

15               Can we go off the record for a moment,

16   Madam Court Reporter?

17               COURT REPORTER:  Yes.

18               (Off-the-record conference.)

19   BY MR. TRIVEDI:

20         Q.    Senator, I'm showing you what I've

21   marked as Exhibit 1.  Do you see that?

22         A.    I do.

23         Q.    Have you seen this document before?

24         A.    I have.

25         Q.    What is it?

Page 124

```
 1              A.   That's the guidelines that we adopted
 2         September 17th.
 3              Q.   Okay.  And these are the guidelines
 4         governing redistricting?
 5              A.   Correct.
 6              Q.   Okay.  I'm just going to call these the
 7         guidelines going forward if that's okay.
 8              A.   All right.
 9              Q.   So were you involved in creating these?
10              A.   No.
11              Q.   Who was?
12              A.   Charlie and Andy, based -- and these
13         were very similar to what we had done in South
14         Carolina every ten years.
15              Q.   Okay.  Did you have any input in what
16         should and shouldn't be a guideline?
17              A.   Well, we voted on these, so, yeah.
18              Q.   Okay.  But did you have any input on
19         the draft that was considered by the committee?
20              A.   No.  No.
21              Q.   That was just Andy and Will?
22              A.   No, Andy and Charlie.
23              Q.   Oh, I'm sorry about that.  Andy and
24         Charlie.
25              A.   I assume.  Again, those would be
```

Page 125

1    questions to ask those two gentlemen.
2         Q.   Okay.  Do you know if Andy and Charlie
3    consulted with any outside lawyers?
4         A.   Do not.
5         Q.   Okay.  Do you know if Andy and Charlie
6    conducted any legal research before they submitted
7    this to the committee?
8         A.   Do not.
9         Q.   Did you ever ask them to to make sure
10   that you were getting the law right in here?
11        A.   Directly, probably not.  Again, Paula's
12   been involved in redistricting before.  They
13   attended CL -- not CLE's, but seminars on these
14   across the country.  Charlie again has been either
15   a litigant or representing some party, at least
16   three of these, if not four, which may be -- seem
17   odd, but it's maybe because he's perhaps around my
18   age and so maybe -- but, anyway, he's familiar with
19   this.
20        Q.   Okay.  Do you know the parties that
21   Charlie's represented in redistricting litigation
22   by any chance?
23        A.   The Senate the last time, I believe.
24        Q.   Okay.  He's never represented
25   plaintiffs in a redistricting case?

Page 126

1          A.    Not to my knowledge.

2          Q.    Okay.  You just mentioned Paula.  So

3     was Paula also involved in creating these

4     guidelines for your review in committee?

5          A.    She would have been consulted with Andy

6     and Paula and Charlie, I'm sure.

7          Q.    Okay.  Did the guidelines include input

8     from members of the public?

9          A.    To the degree that we discussed, I

10    mean, we voted on, I would say yes, but this was

11    not a topic for public hearings, no.

12         Q.    Was the hearing at which you adopted

13    them public?

14         A.    Yeah.

15         Q.    Okay.  I think we covered it before,

16    but I just want to ask it again.  Did you consider

17    these guidelines binding on the process?

18         A.    All considerations to be adhered to.

19         Q.    Okay.  So when you say to be adhered

20    to, you did not feel like you could violate a

21    guideline if you felt like it?

22         A.    They were all to be considered.

23         Q.    Okay.  But if a map that the staff

24    proposed violated a guideline, would that be

25    grounds to not pass that now?