*SC NAACP v. Alexander,*
D.S.C. Case No. 3:21-cv-03302-MGL-TJH-RMG

# Exhibit M

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF SOUTH CAROLINA
 2                       COLUMBIA DIVISION
 3     THE SOUTH CAROLINA STATE
       CONFERENCE OF THE NAACP,
 4     et al.,
 5          Plaintiffs,
 6     vs.                CASE NO.:  3:21-CV-03302-MBS-TJH-RMG
 7     THOMAS C. ALEXANDER,
       et al.,
 8
            Defendants.
 9     _____
       VIDEOTAPED            (Appearance via Video Conference)
10     DEPOSITION OF:        PAULA BENSON
11     DATE:                 July 13, 2022
12     TIME:                 10:04 a.m.
13     LOCATION:             Robinson Gray
                             1310 Gadsden Street
14                           Columbia, South Carolina
15     TAKEN BY:             Counsel for the Plaintiffs
16     REPORTED BY:          Mary K. Stepp, Court Reporter
                             (Appearance via Video Conference)
17     _____
18
19
20
21
22
23
24
25
```

**APPEARANCES OF COUNSEL:**

    ATTORNEY FOR PLAINTIFFS:

        (Appearance via Video Conference)
        AMERICAN CIVIL LIBERTIES UNION
        ADRIEL I. CEPEDA DERIEUX, ESQUIRE
        125 Broad Street
        New York, New York 10004
        212.284.7334
        acepedaderieux@aclu.org

and

        NAACP
        JOHN CUSICK, ESQUIRE
        LEAH ADEN, ESQUIRE
        GENEVA GUADALUPE, LEGAL INTERN
        (Legal Defense Fund)
        40 Rector Street #5
        New York, New York 10006
        212.965.2200

    ATTORNEY FOR HOUSE DEFENDANTS, SPEAKER JAMES H. LUCAS, CHAIRMAN CHRIS MURPHY, and CHAIRMAN WALLACE JORDAN:
        (Appearance via Video Conference)
        NEXSEN PRUET, LLC
        MICHAEL PARENTE, ESQUIRE
        1230 Main Street, Suite 700
        Columbia, South Carolina 29201
        803.253.8247
        mparente@nexsenpruet.com

Page 3

APPEARANCE OF COUNSEL CONTINUED:

ATTORNEY FOR ELECTION DEFENDANTS:

(Appearance via Video Conference)
BURR FORMAN, LLP
JANE TRINKLEY, ESQUIRE
1221 Main Street, Suite 1800
Columbia, South Carolina 29201
803.799.9800
jtrinkley@burr.com


ATTORNEYS FOR SENATE DEFENDANTS:

(Appearance via Video Conference)
ROBINSON GRAY
ROBERT E. TYSON, ESQUIRE
ALEXANDER RANKIN, ESQUIRE
CYNDI NYGARD, PARALEGAL
1310 Gadsden Street
Columbia, South Carolina 29201
803.231.7845
cnygard@robinsongray.com

ALSO PRESENT:

Rodney Myers, Videographer

(INDEX AT REAR OF TRANSCRIPT)

Page 4

1    THE VIDEOGRAPHER:  All right.  Good
2    morning.  We are going on the record at 10:04 a.m. on
3    July 13th, 2022.  Please note that this deposition is
4    being conducted virtually.  Quality of the reporting
5    depends on the quality of camera and Internet
6    connection of the participants.  What is seen from
7    the witness and heard on the screen is what will be
8    recorded.  Audio and video recording will continue to
9    take place unless all parties agree to go off the
10   record.
11           This is media unit number 1 of the
12   video-recorded deposition of Paula Benson taken by
13   counsel for the plaintiff in the matter of the South
14   Carolina State Conference of the NAACP versus
15   Alexander, Thomas C., filed in United States District
16   Court, District of South Carolina, Columbia Division.
17   The case number is 3:21-CV-03302-MBS-PJH-RMG.
18           This deposition is being conducted
19   remotely using virtual technology.  My name is Rodney
20   Myers, representing Veritext and I am the
21   videographer.  The court reporter is Mary Stepp from
22   the firm Veritext.  I am not authorized to administer
23   an oath.  I am not related to any party in this
24   action, nor am I financially interested in the
25   outcome.

Page 5

1             If there are any objections to proceeding,
2    please state them at the time of your appearance.
3    Counsel and all present, including remotely, will now
4    state their appearances and affiliations for the
5    record, beginning with the noticing attorney.
6             MR. CEPEDA:  Hi, good morning, this is
7    Adriel Cepeda Derieux for Plaintiff.
8             MS. GUADALUPE:  Good morning.  This is
9    Geneva Guadalupe, ACLU intern for the Plaintiff.
10            MR. PARENTE:  This is Michael Parente from
11   Nexsen Pruet.  I represent the House Defendants,
12   Speaker Lucas, Chairman Murphy, and Chairman Jordan.
13            MS. TRINKLEY:  This is Jane Trinkley with
14   Burr & Forman.  I represent the Election Defendants.
15   Hey, Paula.
16            MS. BENSON:  Hello, Jane.
17            MR. TYSON:  And this is Rob Tyson.  I'm
18   across the table from Ms. Benson and I represent
19   Senators Alexander and Senator Rankin.
20            THE VIDEOGRAPHER:  Will the court reporter
21   now please swear in the witness and then we may
22   proceed.
23            (Witness sworn.)
24                 PAULA BENSON,
25   having been duly sworn, testified as follows:

Page 6

1                    EXAMINATION
2    BY MR. CEPEDA:
3         Q.    Thank you.  Good morning, Ms. Benson.  My
4    name is Adriel Cepeda.  I represent the plaintiff in
5    this lawsuit, as I just said.  Can you please state
6    your name for the record?
7         A.    Paula Benson.
8         Q.    Can you spell that last name?
9         A.    B-e-n-s-o-n.
10        Q.    Thank you so much.  Ms. Benson, I know
11   you're an attorney.  Do you understand that you're
12   under the same oath today, as if you were in a
13   courtroom?
14        A.    I do.
15        Q.    So, I'll be asking you most of the
16   questions today.  You may also hear Mr. Tyson object
17   to some of my questions.  If he does the objection
18   will be noted in the record, but you still have to
19   answer unless Mr. Tyson tells you not to.  Is that
20   okay?
21        A.    I understand, yes.
22        Q.    Thank you.  I'm going to assume that you
23   understand the question that I ask you unless you
24   tell me that you don't understand.  Is that fair?
25        A.    Yes.  Thank you.

Page 109

1    people would be able to be heard.  That it will be
2    able to be recorded, so that we would have the record
3    of the recordings.
4             There were many, many details that had to
5    be taken care of.  I can remember things even as
6    small as going and purchasing signs which would
7    direct people to the place where the redistricting
8    public hearing was taking place.
9             And some of it, as we went through that --
10   that first process, even if you've been through it
11   before, there are small details that all of a sudden
12   somebody brings it to your attention that -- that it
13   was confusing to know which building to go to.  And
14   you realize you needed signs to help you out there.
15            Those were the kind of things that -- that
16   those staff meetings were -- were dealing with.  And,
17   also, to figure out indeed who we needed as staff
18   and -- and what kind of equipment they were going to
19   need to facilitate the process.
20       Q.   Okay.  At the meeting you did have, did
21   outside counsel ever participate in those?
22       A.   Uhm, Charlie would have been the only
23   person who was not a -- employed as a staff member.
24       Q.   Do you remember Mr. John Gore
25   participating in any of them?

Page 110

1        A.    No.
2        Q.    You did not observe -- strike that.
3              You did not participate in any meetings
4     where John Gore spoke to the group, either in person
5     or by Zoom?
6        A.    I -- I did participate in meetings which,
7     I believe, occurred following the time when we had
8     those weekly staff meetings.  Basically, I can
9     remember being in contact with Mr. Gore on -- on
10    legal advice.
11       Q.    On legal advice as to what?
12       A.    And I -- it may have been questions that
13    we had about an interpretation of a precedent.  It
14    may have been how people were dealing with census
15    information.  Uhm, it -- it -- it may have been on --
16    on particular -- and, again, this was not the
17    congressional, this was in the Senate portion of
18    the -- the process, where we were hearing proposals
19    by senators for particular types of maps that we had
20    some questions, if, uhm -- if -- if those would meet
21    legal guidelines and -- and the guidelines that we
22    had.
23       Q.    What about other outside lawyers?  Did
24    folks from Robinson Gray ever do the same?
25       A.    You know, I don't remember talking with --

Page 111

1    with Rob or with Lisle until we actually had the
2    lawsuit.
3        Q.    And -- and just to -- to pinpoint it a
4    little more, you said the -- the meeting or the
5    meeting you recall with -- where Mr. Gore
6    participated in was after you were having the weekly
7    meetings, so that would have been around when?
8        A.    Around the first of the year.
9        Q.    Okay.  I just have a few more --
10       A.    And -- and -- now, please, that's my
11   recollection.  You may want to -- to confer with
12   Andy, may have had meetings with him at earlier time
13   periods.  That's -- that's my recollection of
14   whenever I came into meetings.
15       Q.    Of course.  No, no, no.  I understand.
16   Thank you.  I just have a few more questions and I
17   think then we can break.
18             Was any single person in charge of
19   memorializing staff meetings, taking minutes, for
20   example?
21       A.    No.
22       Q.    Nobody served as a secretary, whether by
23   title or in practice?
24       A.    No.
25       Q.    Did you take notes at these meetings?