# Exhibit 3

*Adopted September 17, 2021*

## 2021 REDISTRICTING GUIDELINES
### SOUTH CAROLINA SENATE JUDICIARY COMMITTEE
### REDISTRICTING SUBCOMMITTEE

The South Carolina Senate Judiciary Redistricting Subcommittee adopts the 2021 Redistricting Guidelines to aid the Redistricting Subcommittee and interested parties in developing and evaluating redistricting plan proposals. These Guidelines are drawn in part from the guidelines adopted for prior redistricting, the 2002 opinion of the three-judge court in *Colleton County Council v. McConnell*, the 2012 opinion of the three-judge court in *Backus v. South Carolina*, other court decisions, and input received in public hearings across the State.

## I. REQUIREMENTS OF FEDERAL LAW

### A. Population equality

#### 1. Legislative districts

The Fourteenth Amendment to the U.S. Constitution requires an honest and good faith effort to construct legislative districts as nearly of equal population as is practicable. The good faith effort required by the Fourteenth Amendment does not preclude the pursuit of legitimate redistricting policies such as making districts compact, respecting political subdivision boundaries, preserving the cores of prior districts, and avoiding contests between incumbent legislators. Any redistricting plan with population deviation ranges of greater than ten percent (10%) between the most-populous and least-populous districts is presumptively unlawful unless the good faith effort required by the Constitution is proven. So that the State may avoid assuming this additional burden under federal law, population deviations of individual districts shall be within plus (+) or minus (-) five percent (5%) of the ideal population and within an overall range of less than ten percent (10%). This guideline does not affect the requirement of an honest and good faith effort to construct districts as nearly of equal population as is practicable.

#### 2. Congressional districts

Under the apportionment clause of Article I, Section 2 of the U.S. Constitution, any population deviation among congressional districts, no matter how small, must be justified through a showing that the specific deviation is required by legitimate redistricting policies such as making districts compact, respecting political subdivision boundaries, preserving the cores of prior districts, and avoiding contests between incumbent representatives. So that the State may avoid assuming this additional burden under federal law, a congressional redistricting plan should not have population deviations greater than one (1) person.

**B. Voting rights.** A redistricting plan for the General Assembly or Congress must not have either the purpose or the effect of diluting minority voting strength and must otherwise comply with Section 2 of the Voting Rights Act, as expressed through *Thornburg v. Gingles* and its progeny, and the Fourteenth and Fifteenth Amendments to the U.S. Constitution.

**C. Avoidance of racial gerrymandering.** All plans must comply with the Fourteenth Amendment to the U.S. Constitution, as interpreted by the United States Supreme Court in *Shaw v. Reno* and subsequent cases. Under those cases, while consideration of race is permissible, race must not be the predominant factor in that race-neutral considerations are subordinated to racial considerations, unless that subordination is narrowly tailored to serve a compelling state interest.

## II. CONTIGUITY.
All legislative and congressional districts should be composed of contiguous geography. Contiguity by water is acceptable to link territory within a district provided that there is a

SCSENATE_00003047

reasonable opportunity to access all parts of the district and the linkage is designed to meet the other criteria stated herein. Point-to-point contiguity is acceptable so long as adjacent districts do not use the same vertex as points of transversal.

**III. ADDITIONAL CONSIDERATIONS.**   Other criteria that should be given consideration, where practical and appropriate, in no particular order of preference, are:

   **A. Communities of Interest.**   Communities of interest should be considered. Areas defined by geographic, demographic, historic or other characteristics that cause people to identify with one another, including economic, social, cultural, language, political, and recreational activity interests common to the area's population may constitute communities of interest. Communities of interest may be overlapping and may consist of one or more formally, or informally, defined geographic areas with unifying common interests.

   **B. Constituent Consistency.**   Preserving the cores of existing districts, keeping incumbents' residences in districts with their core constituents, and avoiding contests between incumbent legislators should be considered.

   **C. Minimizing Divisions of County Boundaries.**

   **D. Minimizing Divisions of Cities and Towns**.

   **E. Minimizing Divisions of Voting Precinct Boundaries.**   Voting precinct boundaries are represented by the Census Bureau's Voting Tabulation District (VTD) lines. Both existing lines and pending precinct boundary realignments should be considered. If precincts are split, every effort should be made to divide precincts along recognizable and demonstrable boundaries.

   **F. District Compactness.**   In determining the relative compactness of a district, consideration should be given to geography, demography, communities of interest, and the extent to which parts of the district are joined by roads, media outlets, or other means for constituents to communicate effectively with each other and with their representative.

**IV. DATA.**   The total state population and the population of the defined subunits thereof, as reported by the 2020 Federal Decennial Census, shall be the exclusive permissible population database used for the development, evaluation, and analysis of proposed redistricting plans. Other succinct and importable sources of demographic and political information may be considered in drafting and analyzing proposed redistricting plans.

SCSENATE_00003048