IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS C. ALEXANDER, *et al.*, <br><br> Defendants. | Case No. 3:21-cv-03302-MGL-TJH-RMG <br><br> **SENATE DEFENDANTS AND HOUSE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF SEAN P. TRENDE** |

In 2021, the Supreme Court of Virginia appointed Sean Trende to serve as one of two special masters responsible for redrawing the maps governing Virginia's elections for the U.S. Congress, state House of Delegates, and state Senate. *See In Re: Decennial Redistricting*, Redistricting Final Order and Approved Maps at 1 (Va. Dec. 28, 2021) ("VA Order"), https://bit.ly/3RacZO2. The Supreme Court of Virginia "unanimously" found that Mr. Trende and his co-special master "followed the Court's instructions and have fully complied with federal and state law" in the three maps they drew. *Id.* at 2. The Supreme Court of Virginia therefore "approved and adopted" those maps without change, *id.*, and the maps were lauded by observers from across the political spectrum, *see* Trende Rep. 3-4 (Ex. 1).

In this case, Plaintiffs' own putative experts do not dispute any of—and, in fact, in some instances *agree* with—Mr. Trende's calculations and statistics related to the Congressional Plan's compliance with traditional districting principles. *See, e.g.*, Liu Rebuttal 2 (Ex. 2); Liu Tr. 156:7-157:8 (Ex. 3); Ragusa Rebuttal 2 (Ex. 4). Moreover, Mr. Trende's evaluation of whether the Congressional Plan comports with traditional districting principles is "relevant to the task at hand," *Daubert v. Merrell Dow Pharmaceuticals., Inc.*, 509 U.S. 579, 597 (1993), because it directly

bears on whether the Congressional Plan complied with such principles or "subordinate[s] [them] to racial considerations," *Miller v. Johnson*, 515 U.S. 900, 916 (1995).

Against this backdrop, Plaintiffs' motion to exclude Mr. Trende's testimony (Dkt. No. 324) offers plenty of bark but no bite. Plaintiffs take issue with Mr. Trende's use of certain adjectives and complain that they cannot replicate his calculations—even though Plaintiffs' own putative experts do not dispute those calculations. Moreover, Plaintiffs' attack on Mr. Trende's qualifications misconstrues the governing law and ignores Mr. Trende's service as a court-appointed special master and appearance as an expert in numerous other cases, including redistricting cases.

As explained more fully below, Mr. Trende's testimony is readily admissible under Federal Rule of Evidence 702 and *Daubert*. The Court should deny Plaintiffs' Motion.

## BACKGROUND

In 2021, the Supreme Court of Virginia appointed Mr. Trende to serve as one of two special masters responsible for redrawing the maps governing Virginia's elections for the U.S. Congress, state House of Delegates, and state Senate. Trende Rep. 3-4 (Ex. 1); VA Order at 1. Mr. Trende's maps were accepted by the Supreme Court of Virginia and lauded by observers from across the political spectrum. Trende Rep. 3-4 (Ex. 1); VA Order at 2.

Mr. Trende has provided expert testimony, expert evidence, and/or expert consultation in numerous redistricting and voting rights cases, including:

- *Dickson v. Rucho*, No. 11-CVS-16896 (N.C. Super Ct., Wake County) (expert report)

- *Covington v. North Carolina*, No. 1: 15-CV-0399 (M.D.N.C.) (expert report)

- *NAACP v. Husted*, No. 2:14-CV-0404 (S.D. Ohio), and *Ohio Democratic Party v. Mated*, No. 15-CV-1802 (S.D. Ohio) (expert reports)

- *Lee v. Virginia Board of Elections*, No. 3:15-cv-357 (E.D. Va.) (expert consultation)

- *Mecinas v. Hobbs*, No. 19-CV-5547 (D. Ariz. 2020) (expert report and expert testimony)

- *Feldman v. Arizona*, No. 16-CV-1065 (D. Ariz.) (expert report and expert testimony)

- *Pascua Yaqui Tribe v. Rodriguez*, No. 4:20-CV-00432 (D. Ariz.) (expert report and expert testimony)

- *Philip Randolph Institute v. Smith*, No. 1:18-CV-00357 (S.D. Ohio), *Whitford v. Nichol*, No. 15-CV-421 (W.D. Wisc.), and *Common Cause v. Rucho*, No. 1:16-CV-1026 (M.D.N.C.) (expert reports)

- *Ohio Organizing Collaborative v. Ohio Redistricting Comm'n*, No. 2021-1210 (Ohio), *League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, No. 2021-1192 (Ohio), and *Bria Bennett v. Ohio Redistricting Comm'n*, No. 2021-1198 (Ohio) (expert report).

- *NCLCV v. Hall*, No. 21 CVS 15426 (N.C. Sup. Ct.), and *Harper v. Hall*, No. 21 CVS 500085 (N.C. Sup. Ct.) (expert reports)

- *Montana Democratic Party v. Jacobson*, DV-56-2021-451 (Mont. Dist. Ct.) (expert reports)

- *Carter v. Chapman*, No. 464 M.D. 2021 (Pa.), and *Gressman v. Chapman*, No. 465 M.D. 2021 (Pa.) (expert report)

- *Harkenrider v. Hochul*, No. E2022-0116CV (N.Y. Supreme Ct.) (expert report and testimony)

- *Szeliga v. Lamone*, No. C-02-CV-21-001816 (Md. Cir. Ct.), and *In the Matter of 2022 Legislative Redistricting of the State*, Misc. No. 25 (Md. Ct. App.) (expert report and testimony)

- *Graham v. Adams*, No. 22-CI-00047 (Ky. Cir. Ct.) (expert report and testimony)

*See* Trende Rep. 4–6 (Ex. 1).

Senate Defendants' counsel provided Plaintiffs' counsel with the data Mr. Trende used in his report on April 27. *See* J. Gore Email (Ex. 5). Plaintiffs' experts have not disputed the calculations or statistics in Mr. Trende's report. In fact, Dr. Ragusa does not challenge any of Mr. Trende's "summary statistics," does not dispute Mr. Trende's core-retention calculation, and even agrees with Mr. Trende's core-retention calculation for District 7. Ragusa Rebuttal 2 (Ex. 4). Dr.

3

Liu also does not dispute Mr. Trende's calculations of core retention or county or voting district splits, and even agrees with Mr. Trende that the Congressional Plan makes District 1 "meaningfully more Republican." Liu Rebuttal 2 (Ex. 4); Liu Tr. 156:22-157:8 (Ex. 3).

Two of Plaintiffs' putative experts, Dr. Liu and Dr. Duchin, analyzed historical election data from the 2020 election under the new lines adopted in the Congressional Plan. To conduct that analysis, Dr. Liu and Dr. Duchin relied upon an ACLU dataset that reconstitutes the 2020 election results in the new Congressional districts. That dataset attempts to allocate vote totals in split VTDs in proportion to the population in each area of the split. *See* Liu Rep. 41-42 (Ex. 6); Duchin Rep. 22-27 (Ex. 7); Duchin Tr. 171:16-172:3 (Ex. 8).

## ARGUMENT

The Court should deny Plaintiffs' motion because Mr. Trende's proposed testimony and evidence satisfy Rule 702 and *Daubert*.

### I. MR. TRENDE'S TESTIMONY IS RELIABLE

Raising a variety of scattershot objections, Plaintiffs contend that Mr. Trende's testimony is "plainly" and "clearly" unreliable. Dkt. No. 324 at 1; *see id.* at 5–11. This contention lacks merit: Mr. Trende, as a (previously court-appointed) expert in redistricting, "evaluate[d]" the Congressional Plan's compliance with traditional districting principles, including continuity, core preservation, and politics. Trende Rep. 6 (Ex. 1). His testimony regarding the Congressional Plan's compliance with traditional districting principles will "help" the Court determine, Fed. R. Civ. P. 702(a), whether the Plan "subordinate[s]" traditional districting principles to race, *Miller*, 515 U.S. at 916. Mr. Trende also relied upon "sufficient facts or data," "reliable principles and methods," and a reliable "appli[cation]" of those principles and methods to the facts of the case. Fed. R. Civ. P. 702(b)-(d). Indeed, Mr. Trende relied upon the data, programs, and methods

4

common for redistricting and map drawing experts in his field. *See* Trende Rep. 7-8 (Ex. 1); Trende Tr. 86:4-23, 162:7-24 (Ex. 9).

Plaintiffs do not seriously argue otherwise. Plaintiffs do not dispute the accuracy of Mr. Trende's calculations or any of the statistics he provides—and, in fact, do not dispute the reliability of his method of analyzing the Congressional Map's performance on traditional principles. Instead, they quibble with his use of certain adjectives, his factual description of this Court's decision in *Backus v. South Carolina*, and his analysis of voter movements that mirrors the political analysis conducted by Plaintiffs' own putative experts. The Court should deny the Motion.

### A. Mr. Trende Properly Characterized the Continuity and Core Retention Achieved by the Congressional Plan

Plaintiffs first take issue with the adjectives Mr. Trende used to describe the Congressional Plan's core-retention performance and his factual recitation of the Court's holding in *Backus*. These issues provide no basis to exclude *any* of Mr. Trende's opinions, let alone his entire testimony and report.

Plaintiffs contend that Mr. Trende improperly characterized the Congressional Plan as reflecting only "modest" changes from the Benchmark Plan and achieving "high" core retention rates. Dkt. No. 324 at 5. In Plaintiffs' view, these characterizations are "entirely subjective" and lack sufficient "methodological rigor" to be admissible. *Id.* at 5–6. But Plaintiffs *agree* that the Congressional Plan "does the bare minimum to correct for population deviations," Dkt. No. 267 ¶ 147, or, in other words, effectuates only "modest" changes to the Benchmark Plan. Plaintiffs' putative experts also used similar adjectives to describe their own analyses. *See, e.g.*, Liu Rep. 9 (describing "high level of racially polarized voting") (Ex. 6); *id.* at 11 ("extremely high level of RPV"); Duchin Rep. 11 (describing an "extremely low Polsby-Popper score" in a district); *id.* at 25 (describing a district's black voting-age population as "especially low"); *id.* at 25 (describing

5

certain proposed districts as "highly *effective* from the point of view of black electoral opportunity") (Ex. 7); Duchin Tr. 140:15-141:5 ("The term 'especially' is not meant to be a term of art.") (Ex. 8). Plaintiffs thus have no basis to object to Mr. Trende's characterization of the Congressional Plan's core-preservation performance and continuity.

Moreover, as Mr. Trende explained, the Congressional Plan's core-retention rates are manifestly high, ranging from 82% to 99% with five of seven districts exceeding 94% and three districts exceeding 98%. *See* Trende Tr. 91:16–92:11 (Ex. 9); *see also* Trende Rep. 18 (Ex. 1). As even Plaintiffs do not dispute, those rates are higher than the rates achieved by Plaintiffs' alternative plans, which generally hover in the 45–85% range. *See* Dkt. No. 323 at 13; *see also* NAACP Plan 1 Core Preservation Report (Ex. 10); NAACP Plan 2 Core Preservation Report (Ex. 11).

Perhaps recognizing that the Congressional Plan's core retention rates are in fact "high," Plaintiffs alternatively argue that Mr. Trende is "silent" as to how he calculated the rates and thus the rates "cannot be replicated" and may even be "[in]accurate." Dkt. No. 324 at 7. But Mr. Trende specifically explained that he calculated each rate as "the percentage of a district's residents who are kept in a district from one redrawing to the next," Trende Rep. 17 (Ex. 1), as he reiterated in his deposition, *see* Trende Tr. 89:7-91:2, 96:11-102:16 (Ex. 9). Moreover, Mr. Trende's calculations are easily replicated using "the shape file of" the Congressional Plan and the statistical program R, *id.* at 89:24-91:2, all of which are available to or were even used by Plaintiffs' putative experts, *see* Liu Tr. 21:11-25 (Ex. 3); J. Gore Email (Ex. 5). Mr. Trende's core-preservation calculations are also easily replicated using the undisputed statistics and figures in Mr. Trende's report. For instance, although Plaintiffs plead ignorance as to how Mr. Trende calculated the core-retention rates for District 1 (82.84%) and District 6 (87.55%) and even worry that they may be

"significantly overstated," Dkt. 324 at 7, they are the product of simple math.[1] Perhaps for this reason, Plaintiffs' putative experts do not dispute Mr. Trende's core-preservation calculations. *See, e.g.*, Ragusa Rebuttal 2 (Ex. 4); Liu Rebuttal 2 (Ex. 2); Liu Tr. 156:22-157:8 (Ex. 3). Plaintiffs' attempt to muddy this straightforward method should be rejected out of hand.

Plaintiffs also assert that Mr. Trende's core-retention calculations "bear no resemblance to the contemporaneous core retention calculations of the" General Assembly, Dkt. 324 at 7, but they are wrong. Indeed, Senator Campsen recited the *exact same* core-preservation statistics during the Senate floor debate on the Congressional Plan. *See* Jan. 20, 2022 Floor Tr. 23:8-24:19 (Ex. 12). Moreover, the core-preservation statistics provided in reports on the Senate and House Redistricting websites, on the one hand, and by Senator Campsen on the floor and Mr. Trende in his report, on the other hand, are "just two different ways of looking at the [core retention] concept." Trende Tr. 102:7–15 (Ex. 9). Because neither method is "intrinsically better" than the other, Mr. Trende's choice of method is permissible expert testimony. *Id.* 102:7–8; *see also id.* at 102:16 (Plaintiffs' counsel calling Mr. Trende's position on the two methods of measuring core preservation "[f]air enough").

Plaintiffs next assert that Mr. Trende could not properly assess continuity and core retention because he misconstrued *Backus*. In particular, Plaintiffs take issue with Mr. Trende's statement that the Congressional Plan "'retains high percentages of the cores of all of the Benchmark Districts, which the Court upheld against racial gerrymandering and other challenges

---

[1] District 1: 678,404 (818,893 total residents under the prior plan minus 140,489 residents moved out) divided by 818,893 total residents under the prior plan = 82.84%. *See* Trende Rep. 9 tbl. 1, 18 tbl. 4 (Dkt. No. 324-1).

District 6: 565,994 residents kept in under the Congressional Plan (646,463 total residents under the prior plan minus 80,469 residents moved out) divided by 646,463 total residents under the prior plan = 87.55%. *See id.*

7

in *Backus*.'" Dkt. 324 at 8 (quoting Trende Rep. 35 (Ex. 1)). This was mistaken, Plaintiffs argue, because *Backus* upheld only District 6, not "all of the Benchmark Districts." *Id.*

In fact, it is Plaintiffs who are mistaken. The *Backus* plaintiffs challenged *all* of the Benchmark Districts and asked this Court to order newly drawn districts. *See* Second Amended Complaint ¶¶ 42, 57-62, 68-77, 81-83 & p. 21, *Backus v. South Carolina*, No. 3:11-CV-3120 (D.S.C.) (Dkt. No. 122). This Court rejected the challenges to Districts 1 through 5 because the plaintiffs "lack[ed] standing," Dkt. No. 324 at 7 (quoting *Backus*, 857 F. Supp. 2d at 564), and upheld District 6 against a racial gerrymandering claim on the merits. Thus, the Court "upheld . . . all of the Benchmark Districts," just as Mr. Trende said. Trende Rep. 35 (Ex. 1); *see Backus v. South Carolina*, 857 F. Supp. 2d 553, 560, 570 (D.S.C. 2012), *aff'd*, 568 U.S. 801 (2012).

Moreover, even setting aside Plaintiffs' revisionist reading of *Backus*, Plaintiffs are grasping at straws. Simply put, Mr. Trende's understanding of *Backus* has no effect on his ability to assess the undisputed continuity and core-retention data presented in his report. That assessment is wholly independent of *Backus*. In other words, regardless whether *Backus* upheld "all of the Benchmark Districts," the population and movement data Mr. Trende cited enabled him to calculate the Congressional Plan's core-retention rates. *See* Trende Rep. 9, 17–18 (Ex. 1).

Finally, contrary to Plaintiffs' last-gasp argument, *see* Dkt. 324 at 8–9, Mr. Trende's understanding of *Backus* is not an impermissible legal opinion. In stating that *Backus* upheld the Benchmark Districts, Mr. Trende—just like Plaintiffs' putative expert—simply described what happened in the 2012 proceedings in this Court. *See* Bagley Rep. 18–20 (Ex. 17) (five paragraphs describing the 2012 proceedings). Mr. Trende did not purport to interpret "the meaning and applicability" of the Constitution or any other legal provision. Dkt. 324 at 8 (quoting *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986)). The Court should deny the Motion.

### B. Mr. Trende Properly Characterized the Consistency of District Cores in South Carolina

Plaintiffs raise another objection to Mr. Trende's use of adjectives: that he did not reliably opine that district cores in South Carolina have remained "'surprisingly consistent'" over the past century, because this opinion is "based on nothing more than his subjective comparisons of a noncomprehensive set of redistricting maps." Dkt. No. 324 at 9–10 (quoting Trende Rep. 10 (Ex. 1)). But Plaintiffs ignore Mr. Trende's explanation: his assessment of the consistency of South Carolina's district cores was based on the district maps depicting redistricting changes since 1902, the publicly available shapefiles for the historic districts, and the specific location where each district has been historically "anchored" (such as a key city or county). Trende Rep. 8, 10–16 (Ex. 1); *see* Trende Tr. 116–128 (Ex. 9). This explanation, ignored by Plaintiffs, confirms that Mr. Trende's assessment was well within the province of an expert map drawer, not some "subjective" speculation regarding "noncomprehensive maps." Dkt. No. 324 at 9–10; *see also SEC v. Ustian*, No. 16-C-3885, 2020 WL 416289, at *10 (N.D. Ill. Jan. 26, 2020) (denying motion to exclude portion of expert report because the movant "ignores the explanations [the expert] provides that precede or follow the [challenged] portions"); *Exeltis USA Inc. v. First Databank, Inc.*, No. 17-CV-4810, 2020 WL 7025089, at *6 (N.D. Cal. Nov. 30, 2020) (similar); *Hall v. Nettles*, No. 1:08-CV-2437, 2010 WL 11493784, at *7 (N.D. Ga. Jan. 7, 2010) (similar).

### C. Mr. Trende Properly Analyzed Voter Movements Under the Congressional Plan

Plaintiffs next argue that Mr. Trende failed to justify his method for analyzing the "Net Movement of Biden Voters" under the Congressional Plan, particularly his assessment that "10,808 Biden voters were moved from the First to the Sixth Congressional Districts." Dkt. No. 324 at 10 (citing Trende Rep. 23 & tbl. 9 (Ex. 1)). According to Plaintiffs, Mr. Trende did not identify his "data source" or "methodology" for assessing the political affiliations of moved voters,

9

and thus his approach "cannot be replicated," and Mr. Trende did not "acknowledge[]" that his calculations are "estimates." *Id.*

Yet again, however, Plaintiffs ignore the explanation that is readily available in Mr. Trende's report. As the report explains, Mr. Trende's calculations were based on redistricting and election data drawn from the General Assembly's block assignment files and the shapefiles for South Carolina census blocks, precincts, and counties. *See* Trende Rep. 8 (Ex. 1). Tacitly admitting that Mr. Trende could use such data to calculate the political affiliations of moved voters where "whole precincts were shifted (because election results in South Carolina are reported at the precinct level)," Plaintiffs suggest that such calculations were not possible here because some precincts are split under the Congressional Plan. Dkt. No. 324 at 10. But Mr. Trende addressed this issue too, explaining that "[w]hen precincts are split, … it is necessary to estimate how many votes a candidate earned from each portion of the precinct," which "is accomplished by taking the precinct-wide votes for each candidate and assigning them to census blocks" "proportionally to the voting age population in each block." Trende Rep. 8 (Ex. 1). "Separate sums for each portion of the precinct are then calculated by adding up the blocks in each precinct segment." *Id.*

Indeed, *all* experts in this and any redistricting case must use a similar "reconstituted" elections method to analyze past elections in newly drawn districts—just as Dr. Liu and Dr. Duchin did here. *See* Liu Rep. 41-42 (Ex. 6); Duchin Rep. 22-27 (Ex. 7); Duchin Tr. 171:16-172:3 (Ex. 8). Thus, contrary to Plaintiffs' assertions, Mr. Trende identified his data sources and methodology such that his calculations can be replicated, and he expressly acknowledged that his assessments relied on certain estimates. *See* Trende Rep. 8 (Ex. 1). His testimony is based on "sufficient … data" and "reliable principles and methods." Fed. R. Evid. 702(b)–(c); *see Ustian*, 2020 WL 416289, at *10; *Exeltis USA Inc.*, 2020 WL 7025089, at *6; *Hall*, 2010 WL 11493784, at *7.

Finally, Plaintiffs suggest that Mr. Trende attempts to "imply" the General Assembly's rationales or motives for "changes to lines" in the Congressional Plan. Dkt. No. 324 at 10. Mr. Trende, however, does no such thing. Mr. Trende merely describes the political *results* of the changes to District 1, *see* Trende Rep. 7, 29 (Ex. 1) (cited at Dkt. No. 324 at 10), which are easily verifiable from public reports posted on the Senate Redistricting website, *see* Benchmark Congressional Districts with 2020 Data – Partisan Analysis (Ex. 13); House Plan 2 Senate Amendment 1 (Ex. 14). The Court should deny the Motion.

## II. MR. TRENDE'S ANALYSIS IS RELEVANT TO THIS CASE

Mr. Trende's evaluation of the Congressional Plan's compliance with traditional districting principles is "relevant to the task at hand," *Daubert*, 509 U.S. at 597, because it directly bears on whether the Plan "subordinate[s]" such principles "to racial considerations," *Miller*, 515 U.S. at 916.

Nonetheless, Plaintiffs briefly contend that Mr. Trende's analysis is "irrelevant" to "whether the challenged Districts were racially gerrymandered." Dkt. No. 324 at 12. This is so, Plaintiffs assert, because Mr. Trende "does not consider what it means to constitute a racial gerrymander." *Id.* But Plaintiffs cite nothing requiring Mr. Trende's testimony to address that issue in order to be relevant, *see id.*, nor could they. Indeed, Mr. Trende was under no obligation to opine on whether the Congressional Plan "constitute[s] a racial gerrymander" because that would amount to a legal conclusion, which Plaintiffs acknowledge is beyond the ken of an expert, *see* Dkt. No. 324 at 8–9. Nor was Mr. Trende required to opine on "whether any serious political scientist would consider the adopted map to have been racially gerrymandered," *id.* at 12, because that is not the standard of relevance or reliability under *Daubert*. And Plaintiffs' observation that Mr. Trende had no "contact with the map drawers" and therefore cannot address the map drawers' subjective "intent," *id.* at 12–13, applies with equal force to Plaintiffs' own putative experts, who

11

also have had no contact with any legislator, staffer, or map drawer, *see, e.g.*, Duchin Tr. 47:16-22, 212:13-16, 269:14-17 (Ex. 8). Plaintiffs thus have no basis to maintain that Mr. Trende's testimony is "[ir]relevant to the task at hand," and their Motion should be denied. *Sardis*, 10 F.4th at 281.

### III. MR. TRENDE IS WELL-QUALIFIED TO SERVE AS AN EXPERT IN THIS CASE

Plaintiffs do not inform the Court that Mr. Trende has served as a court-appointed special master to draw redistricting plans or that he has appeared as an expert witness in numerous redistricting cases. *See supra* at 2-3; *e.g.*, *Common Cause v. Rucho*, 318 F. Supp. 3d 777, 878 n.34 (M.D.N.C. 2018) (expert on congressional elections, electoral history, and redistricting); *Ohio Org. Collaborative v. Husted*, No. 15-CV-1802, 2016 WL 8201848, at *7 (S.D. Ohio May 24, 2016) (expert on campaigns, elections, voter behavior, voter turnout, demographic trends, and political history); *Whitford v. Gill*, 218 F. Supp. 3d 837, 861 (W.D. Wis. 2016) (expert on voting trends and political geography). They also do not discuss his substantial educational and professional credentials. Trende Rep. 2 (Ex. 1); Trende Curriculum Vitae (Ex. 15); *see also* Fed. R. Evid. 702 (an expert may be qualified by "knowledge, skill, experience, training, or education"). Instead, they offer three arguments that Mr. Trende is "plainly" unqualified to offer his opinions, all of which fail.

*First*, Plaintiffs observe that Mr. Trende has not yet received his doctoral degree. Dkt. No. 324 at 13. But the lack of a doctoral degree does not render an expert unqualified—particularly here, where Mr. Trende has significant practical experience as a map drawer, holds multiple graduate degrees in the critical fields, and has completed all doctoral coursework and passed comprehensive examinations in both methods and American politics. Trende Rep. 3–4 (Ex. 1); Trende Curriculum Vitae (Ex. 15); *see Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) (*Daubert* "do[es] not require that expert witnesses be academics or

PhDs"); *Georges v. Novartis Pharms. Corp.*, No. 06-cv-5207, 2012 WL 9064768, at *4 (C.D. Cal. Nov. 2, 2012) (similar); *Bernstein v. Vill. of Wesley Hills*, 95 F. Supp. 3d 547, 565 n.23 (S.D.N.Y. 2015) (a master's degree is sufficient); *see also United States v. Jawara*, 474 F.3d 565, 583 (9th Cir. 2007); *Mathis v. Exxon Corp.*, 302 F.3d 448, 460 (5th Cir. 2002); Fed. R. Evid. 702. In fact, courts recognized that Mr. Trende is an expert even before he completed his *graduate* degrees. *See Ohio Org. Collaborative*, 2016 WL 8201848, at *6; *Whitford*, 218 F. Supp. 3d at 913 n.319.

*Second*, Plaintiffs assert that the "community of actual political experts" has not "pass[ed] judgment" on Mr. Trende's work because he has not authored a "peer-reviewed article in political science or concerning elections." Dkt. No. 324 at 14. Plaintiffs are incorrect: Mr. Trende recently published a peer-reviewed article which the Senate Defendants produced to Plaintiffs. *See* S. Trende, et al., Reconsidering Bellwether Locations in U.S. Presidential Elections, Presidential Studies Quarterly (2022) (Ex. 16); Trende Curriculum Vitae (Ex. 15). In all events, it is well-established that "peer review" is "not dispositive" under *Daubert*, *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 594), and an expert witness need not be "a member of a recognized professional community," 29 Fed. Prac. & Proc. Evid. § 6264.1 (2d ed.). That is particularly true here, where Mr. Trende has served as a court-appointed special master to draw districting maps, has testified in other cases, and is qualified as a redistricting expert by his practical, professional, and educational experience. *See* Trende Rep. 3–4 (Ex. 1); Fed. R. Evid. 702; *see also Ohio Org. Collaborative*, 2016 WL 8201848, at *7 ("Trende's lack of peer-reviewed articles in political science or elections ... does not disqualify him as an expert."); *Whitford*, 218 F. Supp. 3d at 913 n.319 (similar).

*Third*, Plaintiffs identify one case in which Mr. Trende's opinion was excluded. *See* Dkt. No. 324 at 15 (citing *Fair Fight Action v. Raffensperger*, No. 1:18-cv-5391 (N.D. Ga.)). But that

case was not a redistricting or racial gerrymandering case; as Plaintiffs acknowledge, it involved "*election administration*," *id.* (quoting Trende Rep. 5 (Ex. 1)) (emphasis added), and the court merely found that Mr. Trende was not an expert on "polling place wait times," *Fair Fight Action v. Raffensperger*, No. 1:18-cv-5391 (N.D. Ga. Nov. 16, 2020) (Dkt. No. 568 at 22). In fact, the court acknowledged that "[p]erhaps Mr. Trende *would* be qualified to testify on … political history, United States voting laws, *redistricting*, and the study of campaigns and elections." *Id.* (emphasis added; internal quotation marks omitted).

Plaintiffs also cite a handful of cases in which courts ultimately did not accord dispositive weight to Mr. Trende's testimony or excluded aspects of it, *see* Dkt. No. 324 at 15–16, but they mischaracterize two of those cases. *Ohio Org. Collaborative v. Husted*, No. 2:15-CV-1802, 2016 WL 8201848 (S.D. Ohio May 24, 2016), was *not* "a redistricting case." Dkt. No. 324 at 15. *North Carolina State Conference of the NAACP v. McCrory*, 182 F. Supp. 3d 320, 382 n.71, 530 (M.D.N.C.), did *not* "exclude all opinion [testimony];" it denied the exclusion motion as moot. Dkt. No. 324 at 15. Moreover, several of the cases expressly held that Mr. Trende was qualified to testify as an expert. *Ohio Org. Collaborative*, 2016 WL 8201848, at *5–7; *Whitford*, 218 F. Supp. 3d at 912 n. 319. And none of the others found that Mr. Trende was unqualified to testify. *See N. Carolina State Conf. of the NAACP*, 182 F. Supp. 3d at 530; *Democratic Nat'l Comm. v. Reagan*, 329 F. Supp. 3d 824, 837 (D. Ariz. 2018).

Anyway, no court has *ever* excluded Mr. Trende from offering the type of analysis of a redistricting map he offers here—and, in fact, the Supreme Court of Virginia *appointed* him as an expert map drawer just last year. And, of course, that numerous *other* courts have deemed Mr. Trende qualified to testify as an expert underscores that the Court should do here. *See* Trende Rep. 4–6 (Ex. 1). Mr. Trende is well-qualified to serve as an expert witness in this case.

## CONCLUSION

The Court should deny Plaintiffs' motion in limine to exclude the testimony of Mr. Trende.

September 2, 2022

Respectfully submitted,

/s/ Robert E. Tyson Jr.
Robert E. Tyson, Jr. (7815)
Vordman Carlisle Traywick, III (12483)
La'Jessica Stringfellow (13006)
ROBINSON GRAY STEPP & LAFFITTE, LLC
1310 Gadsden Street
Post Office Box 11449 (29211)
Columbia, South Carolina 29201
(803) 929-1400
rtyson@robinsongray.com
ltraywick@robinsongray.com
lstringfellow@robinsongray.com

John M. Gore (admitted *pro hac vice*)
Stephen J. Kenny (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
skenny@jonesday.com

*Counsel for Senate Defendants*

/s/ Mark C. Moore
Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com

William W. Wilkins (Fed. ID No. 4662)

15

Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900
Greenville, SC 29601
Telephone: 864.370.2211
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com

*Counsel for House Defendants*