# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>      Plaintiffs,<br><br>      v.<br><br>THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,<br><br>      Defendants. | Case No. 3-21-cv-03302-MBS-TJH-RMG<br><br>**THREE-JUDGE PANEL**<br><br>**PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE OR ARGUMENT SUPPORTING RATIONALES FOR CONGRESSIONAL MAP THAT ARE NOT IN LEGISLATIVE RECORD** |

## INTRODUCTION

Plaintiffs move the Court in limine to preclude Defendants from introducing certain evidence or argument concerning purported justifications for the congressional map as passed in Senate Bill 865 ("S. 865") that either are irrelevant to or would improperly confuse the issues. Specifically, Defendants should be precluded from arguing that the map can be defended as a partisan gerrymander because that claim is contrary to the evidence and was expressly rejected by legislative sponsors.[1]

## LEGAL STANDARD

Under Federal Rule of Evidence 401, evidence is relevant at trial if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also* Fed. R. Evid. 402 Advisory Comm. Notes ("[E]vidence which is not relevant is not admissible."). Rule 403 then gives the Court discretion to exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Rule 403 analysis requires courts to examine whether the introduction of certain evidence would be "distracting" to the "search for truth." *Doali-Miller v. SuperValu, Inc.*, 855 F. Supp. 2d 510, 522 (D. Md. 2012).

---

[1] Pursuant to Local Rule 7.02, Plaintiffs state that the Parties, prior to this filing, met and conferred in good faith on September 1, 2022. The Parties were unable to resolve the issues raised in this motion.

# ARGUMENT

**I.     Defendants Cannot Introduce Evidence or Argument That Partisan Advantage Motivated the Congressional Map in S. 865**

Both Plaintiffs' racial gerrymandering and intentional discrimination claims require an assessment of the State's underlying intent in passing its congressional map. For Plaintiffs' racial gerrymandering claim, once Plaintiffs demonstrate that racial considerations were a predominant factor in drafting the congressional map, "[t]he burden . . . shifts to the State to prove that its race-based sorting of voters serves a 'compelling interest' and is 'narrowly tailored' to that end." *Cooper v. Harris*, 137 S. Ct. 1455, 1464 (2017) (quoting *Bethune-Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788, 800–01 (2017)). Similarly, once Plaintiffs demonstrate that race was a motivating factor after weighing the factors laid out in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), "the burden . . . 'shifts to the law's defenders to demonstrate that the law would have been enacted without this factor.'" *N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 233 (4th Cir. 2016) (quoting *Hunter v. Underwood*, 471 U.S. 222, 228 (1985)). "A court assesses whether a law would have been enacted without a racially discriminatory motive by considering the substantiality of the state's proffered non-racial interest and how well the law furthers that interest." *McCrory*, 831 F. 3d at 233–34.

Over the course of the redistricting process, the sponsors and leading proponents of S. 865 advanced a variety of justifications—sometimes written, sometimes publicized—for the map. But they also expressly disclaimed others. Of particular significance, leading sponsors in both the Senate and the House expressly denied that the map was a partisan gerrymander or that the map was motivated by partisanship. For example, Representative Wallace "Jay" Jordan, who chaired

3

the House Ad Hoc Redistricting Committee and was the leading sponsor of S.865, defended the map on the floor stating:

> So, I will tell you that no partisan group, national or otherwise, were involved in the drafting of this plan. None of that outside partisan stuff took place in this process.

**Exhibit A**, SCNAACP_CD_006560 (Jan. 12, 2022 House Proc.) at 55:24–56:10.[2]

Similarly, Senator George Campsen, a member of the Senate Judiciary Committee and one of the three Senators who led the effort to pass S. 865, expressly denied that the map was a partisan gerrymander:

> So those two, District 6 and 1, underwent fairly significant changes in population and -- but the demographic and partisan makeup of each district is substantially similar to the benchmark, meaning the 2012 plan.
>
> . . . .
>
> Now I want to also address the issue of some allegations of partisan gerrymandering. I'd like to give some numbers that I think will demonstrate that that's really not the case.
>
> In the 1st District, if you look at the Trump vote in the 1st, under the benchmark it was 53.03 percent.
>
> That's the benchmark Trump vote in 2020.
>
> Under Amendment 1, the vote would be 54.39 percent. That's an increase of only 1.36 percent. If you look at Amendment 2 that's going to be presented later, it goes from 53.03 percent Trump to 48.17 percent Trump, as far as the political numbers go.

**Exhibit B,** SCNAACP_CD_006914 (Jan. 20, 2022 Senate Proc.) at 9:7–11, 25:20–26:6.

---

[2] Relatedly, at the January 19, 2022 Senate Judiciary Committee meeting, in response to a question from Senator Bright Matthews as to whether the "House Plan to Senate Amendment 1" is "the same map that was presented and recommended by the National Republican Party," Senator George "Chip" Campsen responded: "No, it's not." **Exhibit C**, SCNAACP_CD_006846 (Jan. 19, 2022 Senate Judiciary Comm. Proc.) at 29:10–30:1.

Even during his deposition, which took place after S. 865 was signed into law, Representative Jordan described how partisanship did not factor into congressional redistricting:

> Q. I know we talked earlier about partisan considerations. Was maintaining a 6:1 Republican advantage in congress at all a criteria factor for the Ad Hoc Committee in creation of this map?
>
> A. No.
>
> ….
>
> Q. And why do you think it was beneficial to not have partisan groups involved in the drafting of the plan?
>
> A. To me, it's always made more sense, you know, as members of the General Assembly, we are tasked with the responsibility of completing redistricting. Now, certainly we'll take input, as we did in this process, through various organizations, but ultimately the responsibility falls to the General Assembly. And it's not a partisan task; it's a statewide process, that we didn't necessarily need any help from a partisan group.

**Exhibit D**, W. Jordan Dep. (July 21, 2022) at 279:17–21, 280:5–25, 282:22–283:18, 375:12–16, 419:12–25.[3]

Additionally, throughout the redistricting process, Senator Luke Rankin, the Chair of the Senate Judiciary Committee and Senate Judiciary Redistricting Subcommittee, repeatedly emphasized that congressional redistricting was a "bipartisan" process. *See, e.g.*, **Exhibit E**, SCNAACP_CD_005454 (Oct. 21, 2021 Senate Jud. Redistricting Subcomm. Meeting) at 2:19–22 ("And as I've said over and over and it bears repeating again, again, this is a bipartisan group representing all parts of the State."). Key legislative staff also disclaimed that the map was drawn for partisan advantage. *See*, *e.g*., **Exhibit F**, A. Fiffick Dep. (July 21, 2022) at 136:3–9.

---

[3] Pursuant to the consent confidentiality order, House Defendants designated certain portions of Mr. Jordan's deposition as confidential. Plaintiffs noted their objections. Plaintiffs are attaching blank, placeholder versions of Exhibit D and sending a true version of the relevant deposition transcript pages to the Court via email for *in camera* review.

These statements are significant because Defendants have indicated that, contrary to this evidence, they intend to defend the map as a partisan gerrymander. For example, their summary judgment brief advances the argument that the General Assembly intended to create a "political advantage" that "animated the General Assembly's line-drawing decisions" and constituted a "'legitimate political objective' . . . when it pursued the goal of preserving and strengthening the 6-1 Republican-Democratic composition that existed under the Benchmark Plan." ECF 323 at 16, 20.

Contrary to Defendants' current, *post-hoc* position, S. 865's supporters expressly disclaimed that their map was a partisan gerrymander.[4] Evidence about how legislators sought to maintain a "political advantage" is therefore irrelevant.[5] Here, the justification of S.865 as partisan is contrary to the evidentiary record and is irrelevant. Given the record from the congressional redistricting process, Defendants should be precluded from presenting evidence or argument that S. 865 serves any interest that was directly denied and refuted by those who advanced the legislation through the General Assembly during its consideration.

Alternatively, even if the Court finds that evidence or argument regarding Defendants' partisan interests when drafting the congressional map in S. 865 has some relevance to Plaintiffs'

---

[4] *See* Pls.' Mot. in Limine to Preclude Defs. From Introducing Evidence or Argument Regarding *Post Hoc* Rationales for Congressional Map at 4–5.

[5] Even under rational basis review, the Supreme Court has repeatedly held that "a court may . . . reject the government's proffered interest as the motivation behind challenged legislation . . . where legislative history . . . makes clear that the government is running afoul of the legislation's true purpose." *Associated Builders & Contractors, E. Pa. Chapter, Inc. v. Cnty. of Northampton*, 376 F. Supp. 3d 476, 500 (E.D. Pa. 2019), *aff'd sub nom. Associated Builders & Contractors E. Pa. Chapter Inc. v. Cnty. of Northampton*, 808 F. App'x 86 (3d Cir. 2020) (collecting cases). For instance, in *Jimenez v. Weinberger*, the Supreme Court rejected the state interest that the government articulated during litigation to the extent that it contradicted statements made by the Legislature. 417 U.S. 628, 636 (1974).

claims, this evidence should be excluded under Rule 403.  Here, evidence or argument related to the Defendants' partisan motivations have minimal probative value because S. 865's supporters expressly denied that partisanship was a driving factor during the redistricting process. *See, e.g.*, *League of Women Voters v. Hargett*, 400 F. Supp. 3d 706, 722 (M.D. Tenn. 2019) (emphasizing "the importance of actual state interests" in evaluating voting restrictions).  Evidence and arguments leveraged to support a state interest that was expressly rejected by legislators risk "distracting" away from the genuine motivation behind S. 865. *Doali-Miller*, 855 F. Supp. 2d at 522.

Accordingly, Defendants should not be allowed to introduce any evidence or argument that "political advantage" was an interest underlying S. 865.

## **CONCLUSION**

For the reasons stated above, Plaintiffs' motion in limine should be granted.

Dated: September 2, 2022

Leah C. Aden**
Stuart Naifeh**
Raymond Audain**
John S. Cusick**
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St, 5th Fl.
NY, NY 10006
Tel.: (212) 965-7715
laden@naacpldf.org

*/s/ Santino Coleman*
Santino Coleman*** Fed. ID. 11914
Antonio L. Ingram II**
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th St, Ste. 600
Washington, D.C. 20005
Tel.: (202) 682-1300
aingram@naacpldf.org

Adriel I. Cepeda Derieux**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org

John A. Freedman**
Elisabeth S. Theodore*
Gina M. Colarusso**
John M. Hindley**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel: (202) 942-5000
john.freedman@arnoldporter.com


*\* Motion for admission Pro Hac Vice forthcoming*
*\*\* Admitted Pro Hac Vice*

Respectfully Submitted,

Christopher J. Bryant, Fed. ID 12538
BRYANT LEGAL, LLC
126 W. Henrietta St.
Baltimore, MD 21230
Tel.: (843) 779-5444
chris@bryant.legal.com

Somil B. Trivedi**
Patricia Yan**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St., NW
Washington, DC 20005
Tel.: (202) 457-0800
strivedi@aclu.org

Allen Chaney, Fed. ID 13181
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA
Charleston, SC 29413-0998
Tel.: (843) 282-7953
Fax: (843) 720-1428
achaney@aclusc.org

Jeffrey A. Fuisz**
Paula Ramer**
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
jeffrey.fuisz@arnoldporter.com

Sarah Gryll**
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300
sarah.gryll@arnoldporter.com

*Counsel for Plaintiffs the South Carolina Conference of the NAACP and Taiwan Scott*

8

*\*\*\* Mailing address only (working remotely from South Carolina)*

Janette M. Louard*
Anthony P. Ashton*
Anna Kathryn Barnes**
NAACP OFFICE OF THE GENERAL
COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org

* Motion for admission *Pro Hac Vice*
forthcoming
** Admitted *Pro Hac Vice*

*Counsel for Plaintiff the South Carolina Conference of the NAACP*

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 2, 2022, a true and correct copy of the foregoing was served on all counsel of record by electronic mail.

                                      */s/ Santino Coleman*
                                      Santino Coleman