# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>      Plaintiffs,<br><br>      v.<br><br>THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,<br><br>      Defendants. | Case No. 3-21-cv-03302-MGL-TJH-RMG<br><br>**THREE-JUDGE PANEL**<br><br>**PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE THE USE OF THE U.S. DEPARTMENT OF JUSTICE'S 2011 PRECLEARANCE DECISION AND *BACKUS v. SOUTH CAROLINA* DECISION FOR IMPROPER PURPOSES** |

**INTRODUCTION**[1]

Plaintiffs file this motion in limine to exclude testimony used for improper purposes about the U.S. Department of Justice's preclearance of the 2011 Congressional plan and the review of part of that plan in *Backus v. South Carolina*, 857 F. Supp. 2d 553 (D.S.C. 2012), *aff'd*, 568 U.S. 801 (2012). To the extent Defendants offer testimony in their case in chief that they did not unlawfully use race because they relied on the 2011 Congressional plan—that was precleared under Section 5 of the Voting Rights Act ("VRA") and partially reviewed in the *Backus* decision—as the benchmark to develop Senate Bill 865 ("S. 865"), this Court should preclude that testimony.

Plaintiffs have every reason to believe that Defendants will employ this strategy at trial because House and Senate Defendants made these claims during public hearings on proposed congressional plans, throughout discovery, and in recent briefings. But the 2011 Congressional plan—and the legal standards it was evaluated under—differ substantially from the Challenged Districts and claims before this Court in this case. Arguments relying on the irrelevant and inapplicable facts and legal standards occasioning a Section 5 preclearance review and at issue in the *Backus* case are far more likely to lead to confusion and waste time on unnecessary issues. And any legal interpretations related to the assessment of the 2011 Congressional plan, and opinions based on those interpretations, are impermissible lay and expert testimony. This Court should exclude such testimony because it is irrelevant under Federal Rules of Evidence ("FRE") 401, unfairly prejudicial under FRE 403, exceeds the scope of FRE 701, and does not meet the requirements of FRE 702.[2]

---

[1] Pursuant to Local Rule 7.02, Plaintiffs state that the Parties, prior to this filing, met and conferred in good faith on September 1. The Parties were unable to resolve the issues raised in this motion.
[2] Pursuant to the consent confidentiality order, House Defendants designated certain portions of Mr. Jordan's and Mr. Hauger's depositions as confidential. Plaintiffs noted their objections.

**ARGUMENT**

I. **The 2011 Preclearance and *Backus* Decisions are not Relevant to Assessing the Constitutionality of the Challenged Districts in This post-2020 Redistricting Cycle.**

Under FRE 401, evidence is relevant at trial if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also* Fed. R. Evid. 402, advisory committee notes ("[E]vidence which is not relevant is not admissible."). Testimony about the 2011 Congressional plan preclearance and *Backus* decisions is irrelevant to this Court's assessment of whether S. 865 reflects recent demographic trends or complies with the U.S. Constitution.

As an initial matter, a prior precleared map can still be subject to a challenge under Section 2 VRA and the U.S. Constitution. That is because preclearance determinations made by the federal government were based on compliance with Section 5 of the VRA, which employs a different legal standard than the standard that courts use to assess Section 2 vote dilution statutory claims, as well as constitutional racially gerrymandering, and racial intent claims.[3] Under Section 5, the federal government objects to maps that are "retrogressive," meaning that the new map would weaken the

---

Plaintiffs are attaching blank, placeholder versions of Exhibits 2 and 8 and sending true versions of the relevant deposition transcript pages to the Court via email for *in camera* review.

[3] Defendants conceded that they did not conduct a racially polarized voting ("RPV") analysis before S. 865 was enacted. *See*, *e.g.*, **Exhibit 1**, (Transcript of Proceedings S.C. Senate Jud. Comm., Jan. 19, 2022) (SCNAACP_CD_013197) at 32:13–17 (Sen. Harpootlian); **Exhibit 2**, (Deposition of Wallace H. Jordan, Jr., July 21, 2022) at 285:24–286:5, 397:13–15. An RPV analysis is a central element in a Section 2 analysis to demonstrate that a legislature's decisions were narrowly tailored to comply with the VRA. *See N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 221 (4th Cir. 2016) (RPV is "[O]ne of the critical background facts of which a court must take notice" in Section 2 cases); *Collins v. City of Norfolk, Va.*, 816 F.2d 932, 936–38 (4th Cir. 1987) (RPV is a "cardinal factor" in determining Section 2 liability). And "a legislature undertaking a redistricting must assess whether the new districts it contemplates . . . conform to the VRA's requirements." *Cooper v. Harris*, 137 S. Ct. 1455, 1471 (2017).

2

ability of Black voters to participate in the democratic process, as compared to the previous map.[4] *Beer v. United States*, 425 US 130, 141 (1976); *see also About Section 5 of the Voting Rights Act*, U.S. Dept. of Justice (July 14, 2022), https://www.justice.gov/crt/about-section-5-voting-rights-act.

But the Section 5 non-retrogression standard is inapplicable in this case. Consistent with U.S. Supreme Court and Fourth Circuit caselaw, this Court will rely on the framework articulated by the Supreme Court in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 22, 252, 265–68 (1977) to assess Plaintiffs' intentional racial vote dilution claims under the Fourteenth and Fifteenth Amendments of the U.S. Constitution. *See* ECF 274 at 21–22. Along the same lines, this Court will employ a two-step inquiry to determine whether the Challenged Districts are unconstitutionally racially gerrymandered. *Id.* at 4–5. As Senator Campsen conceded, a racial gerrymandering analysis involves a different legal standard than what is required for preclearance assessment.[5] **Exhibit 3**, (Deposition of Sen. George E. Campsen III, Aug. 5, 2022) at 146:25–147:13; *see also* **Exhibit 4**, (Deposition of Charles Terreni, Aug. 16, 2022) at 19:16–22-6, 22:7–17, 189:4–190:5. It is therefore irrelevant that Defendants allegedly took steps to preserve a 2011 Congressional plan that was upheld under an inapplicable legal standard (Section 5), especially in light of the drastic population shifts in South Carolina following the 2020 U.S. Census results. Indeed, as Plaintiffs' expert, Dr. Moon Duchin reports, 2020 Census data reveals that "South Carolina has been growing less White overall, with the [white voting-age

---

[4] In *Shelby County Alabama v. Holder*, the Supreme Court found another provision of the VRA unconstitutional which identified where Section 5 functioned. *Id.*, 570 U.S. 529 (2013). Section 5, therefore, remains unconstitutional, it just does not apply to (most) jurisdictions it once did.

[5] Senator Campsen is a member of the Senate Judiciary Committee and Senate Redistricting Subcommittee, which the Senate created to focus on redistricting during this cycle. He was the lead sponsor of the congressional amendment plan that ultimately became S. 865.

population] WVAP share dropping from 66.7% in 2010 to 64.9% in 2020" and that "[g]reater Charleston and the Lowcountry region have seen some of the greatest increases in [Black voting-age population] BVAP overall." **Exhibit 5**, (Report on South Carolina Congressional Districts, May 4, 2022) at 4 n.4.

House and Senate Defendants should also be precluded from misrepresenting the *Backus* decision and invoking it at trial as a basis to justify S. 865's racially discriminatory infirmities. Plaintiffs are justified in their belief that Defendants intend to misrepresent *Backus* at trial given that Defendants employed this strategy in their motion for summary judgment. They claimed, for example, that the "Congressional Plan is largely a continuation of the Benchmark Plan that this Court . . . upheld against racial gerrymandering" in *Backus*. ECF 323 at 2. Key legislators, staff, and Defendants' expert also repeated these statements during the legislative cycle and throughout discovery. Sen. Campsen, for example, incorrectly claimed that the 2011 Congressional plan was "approved by a federal court . . . in the *Backus* decision" during the Senate floor debate. **Exhibit 6**, (Transcript of Proceedings S.C. Senate Floor, Jan. 20, 2022) (SCNAACP_CD_006914) at 25:1–4. Defendants' expert Mr. Sean Trende makes the same claim, which is subject to Plaintiffs' pending *Daubert* motion. ECF 324 at 8–9.

But the *Backus* court did no such thing. Specifically, the *Backus* court expressly limited its analysis to a claim that Congressional District ("CD") 6 was unconstitutionally gerrymandered because the legislature set out to pack Black voters into it. *Backus*, 857 F. Supp. 2d at 564. The court did not consider evidence "relating to other specific districts" because the court held that those plaintiffs "lack[ed] standing to challenge those districts" because "no Plaintiff lived in them." *Id.* Here, however, Plaintiffs challenge CDs 1, 2, and 5—not CD 6. ECF 267 ¶ 9. And, even still for the only district the *Backus* court upheld (CD 6), that district differs significantly from what it

4

was after last cycle's redraw. Indeed, Defendants' expert's analysis acknowledges that over a third of the population of the new CD 6 is different the old CD 6, with 80.469 people (11%) moving out and 165,210 people (22.6%) moving into CD 6. **Exhibit 7**, (Expert Report of Sean P. Trende) at 18 Table 4; *see generally* ECF 324 at 7.

### II. Testimony About the 2011 Congressional Plan Preclearance and *Backus* Decision Should be Excluded Under 403.

Rule 403 gives this Court discretion to exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. FRE 403's "major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Bates*, 865 F.2d 255 (Table), *6 (4th Cir. 1988) (per curiam).

Here, even if this Court were to find some testimony concerning the 2011 Congressional plan preclearance and *Backus* decisions to be marginally relevant, it should exclude such evidence under 403 because any probative value is substantially outweighed by the danger of "confusing the issues, misleading the [panel]" and "wasting time." Fed. R. Evid. 403.

For the reasons explained *infra*, such testimony "would inevitably 'waste time and distract from the key issues in the lawsuit.'" *IA Labs CA, LLC v. Nintendo Co.*, 857 F. Supp. 2d 550, 552 (D. Md. 2012) (quoting *CardioVention, Inc. v. Medtronic, Inc.*, 483 F. Supp. 2d 830, 843 (D. Minn. 2007)); *see also United States v. LaRouche*, 896 F.2d 815, 826 (4th Cir. 1990) (evidence is excluded when its "potential relevance [is] outweighed by the distraction" from the "real" issues in the case). At best, such testimony does not provide any insight into the central racial gerrymandering inquiry: "*which* voters the legislature decides to choose" this cycle when sorting them inside or outside of a district. *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254,

5

273 (2015) (emphasis in original). Nor does it give any insight into the *Arlington Heights* factors to assess a discriminatory motive. At worst, however, the introduction of such evidence risks confusing the relevant facts at issue and legal standards for racial gerrymandering and discriminatory intent claims, thereby wasting time on unnecessary issues.

### III. Defendants Cannot Admit Lay or Expert Testimony About the 2011 Congressional Plan Preclearance and *Backus* Decisions.

#### A. Defendants May Not Admit Undisclosed Expert Testimony.

Opinions on compliance with redistricting criteria and other quantitative assessments of a map require specialized knowledge and expertise and fall within the ambit of Rule 702. To that end, Defendants disclosed expert reports for only Mr. Trende. *See* ECF 324–1 & 324–4. Although subject to a pending *Daubert* challenge, (ECF 324), Mr. Trende purports to apply his knowledge and skill to form opinions on S. 865, which rely, in part, on his interpretation of the *Backus* decision and core retention of CD 6. Defendants have not provided any other expert reports or disclosed additional expert witnesses. *See* Fed. R. Civ. P. 26(a)(2)(B) & (C).

As detailed in the pending *Daubert* motion, any assessment of this Court's holding in *Backus* or DOJ's preclearance assessment of the 2011 Congressional plan fundamentally involves questions of law, which are the exclusive province of this Court. "[U]nder our system it is the responsibility—and the duty—of the court," not an expert, "to [determine] the meaning and applicability of the appropriate law." *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366, 368 (4th Cir. 1986) (excluding expert opinion "on the governing law"). "[E]xpert testimony on law is excluded because 'the tribunal does not need the witness' judgment . . . [T]he judge . . . can determine equally well . . .'" how to analyze legal questions. *Marx & Co. v. Diners' Club, Inc.*, 550 F. 2d 505, 510 (2d Cir. 1977) (citing VII Wigmore on Evidence § 1952). "[T]estimony that states a legal conclusion is not admissible." *Allstate Ins. Co. v. Rochkind*, 381 F. Supp. 3d 488,

6

510 (D. Md. 2019); *see also United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) ("[I]t does not help the jury for an expert to give testimony that 'states a legal standard or draws a legal conclusion by applying law to the facts.'") (quoting *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006)). Defendants proffered testimony on the 2011 preclearance and *Backus* decisions are merely attempts to supplant the judge's role in interpreting the law. As such, opinions offering legal interpretations of the 2011 Congressional plan preclearance and *Backus* decisions should be excluded.

### B. Defendants Cannot Admit Lay Witness Testimony on the 2011 Preclearance and *Backus* Decisions.

Rule 701 limits lay opinion testimony to opinions that are, *inter alia*, "rationally based on the witness's perception" and "not based on scientific, technical or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(a) & (c). House and Senate Defendants witnesses cannot meet those thresholds for admitting lay opinion testimony on such subjects relating to the 2011 Congressional plan preclearance and *Backus* decisions.

Under Rule 701, a lay witness may not "express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000) (quoting *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979)); *see also Village of Freeport v. Barrella*, 814 F.3d 594, 611 (2d Cir. 2016) (noting that the purpose of Rule 701 is "to protect 'against the admission of opinions which would *merely tell the jury what result to reach*', rather than providing information that would assist the jury in drawing its own conclusions") (emphasis in original); *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005) (The purpose of the foundation requirement is to ensure that a lay witness cannot be conferred "an aura of expertise"). As a result, if a witness were to offer an opinion, it must be "rationally based

on [his] perception." *United States v. Smith*, 962 F.3d 755, 766 (4th Cir. 2020) (internal quotations omitted). Even lay testimony from a witness' personal experience with the law is impermissible when their opinion serves "lend[] the [factfinder]" their legal "knowledge" or "provide definitive commentary" on legal issues. *United States v. Vega*, 813 F.3d 386, 395 (1st Cir. 2016).

Relatedly, lay opinions must not be "based on scientific, technical or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). By proffering Mr. Trende as an expert under Rule 702, Defendants have conceded that lay opinion testimony the on the 2011 Congressional plan and *Backus* decision are inadmissible under Rule 701.[6] During discovery and the redistricting process, key House and Senate legislators and staff who were involved in the redistricting process sought to offer lay opinions on the 2011 preclearance and *Backus* decisions.[7] These depositions and legislative transcripts demonstrate that the various fact witnesses that House and Senate Defendants have identified would offer inadmissible lay opinions about those decisions.

## CONCLUSION

For each reason stated herein, this Court should preclude Defendants from introducing witness testimony at trial related to the 2011 Congressional plan preclearance and *Backus* decisions because Defendants have failed to satisfy the requirements under FREs 401, 403, 701, and 703.

---

[6] Nevertheless, as explained above, discussions about assessment of this Court's holding in *Backus* or DOJ's preclearance of the 2011 map would be impermissible expert testimony.

[7] *See*, *e.g.*, **Exhibit 6** at 25:1–4, 28:11–14 (Sen. Campsen); **Exhibit 2** at 383:14–384:6; **Exhibit 8**, (Deposition of Rep. Thomas Hauger, June 28, 2022) at 61:4–62:1 (describing that preclearance assessment as encompassing a racial gerrymandering analysis); **Exhibit 9**, (Deposition of Breeden John, Aug. 9, 2022) at 266:25–268:23. Each of these witnesses have been identified on Defendants' Rule 26(a)(3)(A)(i) disclosures. ECF 328 & 329.

Dated: September 2, 2022

Respectfully submitted,

Leah C. Aden\*\*
Stuart Naifeh\*\*
Raymond Audain\*\*
John S. Cusick\*\*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St, 5th Fl.
NY, NY 10006
Tel.: (212) 965-7715
laden@naacpldf.org

/s/ Santino Coleman
Santino Coleman\*\*\* Fed. ID. 11914
Antonio L. Ingram II\*\*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th St, Ste. 600
Washington, D.C. 20005
Tel.: (202) 682-1300
aingram@naacpldf.org

Adriel I. Cepeda Derieux\*\*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org

John A. Freedman\*\*
Elisabeth S. Theodore\*
Gina M. Colarusso\*\*
John M. Hindley\*\*
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel: (202) 942-5000
john.freedman@arnoldporter.com

*\* Motion for admission Pro Hac Vice forthcoming*
*\*\* Admitted Pro Hac Vice*
*\*\*\* Mailing address only (working*

Christopher J. Bryant, Fed. ID 12538
BRYANT LEGAL, LLC
126 W. Henrietta St.
Baltimore, MD 21230
Tel.: (843) 779-5444
chris@bryant.legal.com

Somil B. Trivedi\*\*
Patricia Yan\*\*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St., NW
Washington, DC 20005
Tel.: (202) 457-0800
strivedi@aclu.org

Allen Chaney, Fed. ID 13181
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA
Charleston, SC 29413-0998
Tel.: (843) 282-7953
Fax: (843) 720-1428
achaney@aclusc.org

Jeffrey A. Fuisz\*\*
Paula Ramer\*\*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
jeffrey.fuisz@arnoldporter.com

Sarah Gryll\*\*
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300
sarah.gryll@arnoldporter.com

*Counsel for Plaintiffs the South Carolina Conference of the NAACP and Taiwan Scott*

9

*remotely from South Carolina)*
Janette M. Louard*
Anthony P. Ashton*
Anna Kathryn Barnes**
NAACP OFFICE OF THE GENERAL
COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org

* Motion for admission *Pro Hac Vice*
forthcoming
** Admitted *Pro Hac Vice*

*Counsel for Plaintiff the South Carolina Conference of the NAACP*

10

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2022, a true and correct copy of the foregoing was served on all counsel of record by filing with the Court's CM/ECF service.

*/s/ Santino Coleman*
Santino Coleman