*SC NAACP v. Alexander,*
D.S.C. Case No. 3:21-cv-03302-MGL-TJH-RMG

# EXHIBIT 3

```
                                                              Page 1

 1              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF SOUTH CAROLINA
 2                   COLUMBIA DIVISION
 3
     THE SOUTH CAROLINA          )
 4   STATE CONFERENCE OF         )
     THE NAACP, et al.,          )
 5                               )
                                 )
 6           Plaintiffs,         )   Case No. 3:21-CV-03302-MGL-
                                 )   TJH-RMG
 7   vs.                         )
                                 )
 8   THOMAS C.                   )
     ALEXANDER, et al.,          )
 9                               )
                                 )
10           Defendants.         )
                                 )
11
12
13
14         Videotaped Remote Deposition of
15        SENATOR GEORGE EARLE CAMPSEN, III
16              (Taken by Plaintiffs)
17           Isle of Palms, South Carolina
18              Friday, August 5, 2022
19
20
21
22
23
24          Reported in Stenotype by
          Lauren M. McIntee, RPR, CRR
25   Transcript produced by computer-aided transcription
```

| | |
|---|---|
| Page 146<br>1   MR. TRAYWICK:  Object to the form.<br>2   A.   Well, least change is actually like the case,<br>3   but it's actually a -- we would -- a reapportionment<br>4   plan in the -- it was in the '80s, the federal court<br>5   said least change is good.  If -- if you can meet all<br>6   other redistricting criteria, that's -- that's<br>7   preferable.  But least change reflects constituent<br>8   consistency.<br>9        It also reflects, another reason I thought<br>10  least change was good, because it -- this plan, the<br>11  benchmark plan was approved by the -- was precleared by<br>12  the Obama administration, upheld by federal courts, and<br>13  even confirmed by the United States Supreme Court in<br>14  2012.  So that's a pretty good starting point.<br>15  BY MR. CUSICK:<br>16  Q.   But having the plan previously precleared by<br>17  DOJ isn't a redistricting guideline, correct?<br>18  A.   I took -- no, but I took -- I'd be a fool not<br>19  to weigh that.  Districting guidelines are guidelines.<br>20  They're not absolutes.  There's no guideline that<br>21  says that I need to comply with any specific Supreme<br>22  Court case either.  The only one mentioned is Thornburg<br>23  v. Gingles -- Gingles, and there's plenty other case law<br>24  we need to comply with.<br>25  Q.   Are you aware that this case involves claims | Page 148<br>1   A.   No, and there's nothing in the guidelines to<br>2   shore up a 5 to 2 Republican/Democrat split that Senator<br>3   Harpootlian offered either.<br>4   BY MR. CUSICK:<br>5   Q.   Anything in the guidelines requiring CD1 to<br>6   be less politically competitive for either party?<br>7   A.   No, that's not in the guidelines.<br>8   Q.   Do you recall shoring up a Republican<br>9   advantage in CD1 as coming up in the map drawing<br>10  process?<br>11  A.   Yes.  I was -- I took political factors into<br>12  account, and that was part of the process.<br>13  Q.   Was the partisan gains --<br>14  A.   It wasn't dominant.  It didn't control<br>15  everything, but it was part of the process.  I could<br>16  have drawn a map much more Republican.<br>17  Q.   So would you say partisan gain was something<br>18  that motivated the map that you drew?<br>19       MR. TRAYWICK:  Object to the form.<br>20  A.   It was a fact- -- it was a factor.<br>21  BY MR. CUSICK:<br>22  Q.   During any of the times you presented the map<br>23  publicly, did you ever state that?<br>24  A.   I -- I can't recall whether I did or not.<br>25  Q.   Would there be any reason you wouldn't state |
| Page 147<br>1   about racial gerrymandering?<br>2   A.   Yes.<br>3   Q.   And do you understand that's a different<br>4   legal question for the standard that's used than<br>5   preclearance?<br>6   A.   Yes.<br>7   Q.   And so could a map have been precleared, but<br>8   still operated as a racial gerrymander map?<br>9   A.   Well, it -- it could, but it's -- I think<br>10  it's much more unlikely when you have the Supreme Court<br>11  affirm it.  I mean, I'm not going to -- I did not -- I<br>12  did not think the Supreme Court would have affirmed a<br>13  racial gerrymandering law in 2012.<br>14       THE VIDEOGRAPHER:  Sorry.  Will you repeat<br>15    that, Senator?  It kind of was a little faint on my<br>16    end.<br>17  A.   I found it very unlikely that the US Supreme<br>18  Court and the -- and the Obama Justice Department would<br>19  have precleared a racially gerrymandered map in 2012.  I<br>20  found that very unlikely.<br>21  BY MR. CUSICK:<br>22  Q.   Is there anything in the guidelines that<br>23  prioritizes shoring up a 6 to 1 Republican split for<br>24  congressional districts?<br>25       MR. TRAYWICK:  Object to the form. | Page 149<br>1   that as one of the factors that was influencing your<br>2   drawing of a map?<br>3   A.   Not -- not really.  I mean, the -- the<br>4   Supreme Court has held that it's -- that you use<br>5   political -- the political gerrymandering is a<br>6   non-justiciable question and it is permissible.  And<br>7   it -- and I -- the map that Senator Harpootlian offered<br>8   was -- took that into account obviously.  He understands<br>9   it is a non-justiciable question as well.  So he drew a<br>10  map on a Democratic district, and the Republican<br>11  majority in the Senate adopted a map with a Republican<br>12  majority in the 1st.<br>13  Q.   Are you aware that even given your<br>14  explanation of federal case law, that a map could still<br>15  be challenged in state court as a partisan gerrymander?<br>16       MR. TRAYWICK:  Object to the form.<br>17  A.   Yes, I'm -- I'm aware that that could happen.<br>18  BY MR. CUSICK:<br>19  Q.   You've talked about some of the Supreme Court<br>20  case law.  Are you aware of any case law that harming<br>21  racial minorities for political advantage could run<br>22  afoul of federal law?<br>23  A.   Can you say that question again?<br>24  Q.   Yeah.  If -- if you were using partisanship<br>25  as a way to harm racial minorities, could that also run |