# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>        Plaintiffs,<br><br>      v.<br><br>THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,<br><br>        Defendants. | **Case No. 3-21-cv-03302-MGL-TJH-RMG**<br><br>**THREE-JUDGE PANEL**<br><br>**PLAINTIFFS' MOTION IN LIMINE PRECLUDING EVIDENCE CONCERNING THE CONSTITUTIONALITY OR LEGALITY OF MAPS DRAFTED OR SUBMITTED BY THE SC NAACP OR INTERNAL DELIBERATIONS** |

# INTRODUCTION

Plaintiffs move to preclude the admission of all evidence concerning the constitutionality or legality of maps drafted or submitted on behalf of South Carolina State Conference of the NAACP ("SC NAACP") during the South Carolina congressional redistricting process, as well as the internal deliberations of the SC NAACP or other third parties (*e.g.*, the League of Women Voters ("the League")) who submitted maps for consideration during the legislative process. Such evidence has no relevance at trial and risks confusing the issues and wasting time if introduced as it relates to Defendants' intent and the process they engaged in during the redistricting process.[1] In this case, the only map that matters for any assessment of its constitutionality is Senate Bill 865 ("S. 865"), the map that passed both chambers of the General Assembly and was signed by the Governor. Plaintiffs allege that map (and only that map) is racially and intentionally discriminatory against South Carolina's Black citizens. The maps submitted by the SC NAACP and the League are not on trial, nor are the purposes and intent that motivated the submissions of those maps.

The House and Senate Defendants seem to center at least part of their trial strategy on evidence and testimony concerning the maps drafted and submitted by the SC NAACP and the League. Defense counsel (particularly for the House Defendants) expended extensive effort during discovery to elicit evidence concerning the SC NAACP and League maps, and the House Defendants have included on their witness list current or former data scientists or analysts

---

[1] As a result, Plaintiffs' motion in limine would not prevent the admission of letters submitted by SC NAACP or the expert report of Plaintiffs' expert Dr. Moon Duchin who assessed how the enacted plan cracks South Carolina's Black communities to dilute their vote by comparing it to other maps that were submitted during the redistricting process, including the maps submitted by SC NAACP. Nor does it prevent the admission and discussion of these maps to the extent they are being shown as alternative maps that were available to the General Assembly.

employed by the American Civil Liberties Union ("ACLU"); between them, the Senate and House Defendants have listed approximately 260 trial exhibits (House Exs. 67–148, 169–188, 199, 204, 206–213, 215–235, 237–252, 256–265, Senate Exs. 131–222) concerning internal deliberations of the SC NAACP, the League, and the ACLU.  Apparently, the House and Senate Defendants seek to attack those maps and organizations in a misguided effort to buttress their own map.  But, as is established in redistricting cases, the S. 865 map must rise or fall on its own, regardless of the SC NAACP or League maps, and regardless of the deliberations of the SC NAACP, the League, the ACLU, or other organizations.

Even if the Court finds this evidence to be marginally relevant, its probative value would be substantially outweighed by the risk of "unfair prejudice, confusing the issues, misleading the [Panel], undue delay, [and] wasting time . . . ." Fed. R. Evid. 403.  Any attempt to introduce evidence about the validity of SC NAACP's or the League's maps would be an inappropriate attempt by Defendants to engage in "whataboutism." *League of Women Voters of Fla., Inc. v. Lee*, No. 4:21cv186-MW/MAF, 4:21cv187-MW/MAF, 4:21cv201-MW/MJF, 4:21cv242-MW/MAF, 2022 WL 610400, at *5 (N.D. Fla. Jan. 4, 2022) ("Whataboutism, however, is not an argument.").

In the end, the maps submitted into the legislative record by the SC NAACP and the League do not make the map contained in S. 865 any more or less constitutional or legal.  Neither do the deliberations of Plaintiffs, their counsel, or other advocates.  The map passed by Defendants has to stand on its own merit.  For these reasons, the Court should exclude all evidence and testimony concerning the legality and constitutionality concerning the SC NAACP or League maps or the internal deliberations of the SC NAACP, the League, or the ACLU.[2]

---

[2] Pursuant to Local Rule 7.02, Plaintiffs state that the Parties, prior to this filing, met and conferred in good faith on September 1, 2022. As a result of the meet and confer, the House Defendants

## BACKGROUND

During the redistricting process, SC NAACP submitted to both the Senate Judiciary Redistricting Subcommittee and the House Judiciary Ad Hoc Redistricting Committee two proposed congressional maps for their consideration. *See* **Exhibit 1**, SCNAACP_CD_004896–SCNAACP_CD_004947 (correspondence with Senate Judiciary Redistricting Subcommittee); **Exhibit 2**, SCNAACP_CD_004948–SCNAACP_CD_005006 (correspondence with House Judiciary Ad Hoc Redistricting Committee). The maps the SC NAACP submitted were collaboratively prepared by the ACLU and the NAACP Legal Defense and Educational Fund, Inc. on its behalf. In its public comments and the letter submissions, SC NAACP explained that it proposed these maps to encourage Defendants to comply with the U.S. Constitution and Section 2 of the Voting Rights Act's prohibition on racial discrimination and non-dilution of Black South Carolinians' voting strength. The maps proposed by SC NAACP complied with the House and Senate redistricting guidelines by, among other things, keeping communities of interest together and maintaining contiguity and compactness.[3] The League similarly proposed a map to encourage Defendants to comply with their obligations and ensure fair and competitive congressional districts. Ultimately, the General Assembly did not pass either map proposed by SC NAACP or the map proposed by the League.

---

agreed to withdraw from their list of "if need arises" witnesses five of the six ACLU data scientists and analysts, but the Parties were unable to resolve the issues raised in this motion.

[3] These maps were posted and available on the websites of both redistricting committees. *See 2021 Senate Plan Proposals*, South Carolina Redistricting 2021 - Senate Judiciary Committee, https://redistricting.scsenate.gov/planproposal.html (last visited Aug. 23, 2022); *2021 Public Submissions*, South Carolina House of Representatives Redistricting 2021, https://redistricting.schouse.gov/publicsubmissions.html (last visited Aug. 23, 2022).

## LEGAL STANDARD

Under Federal Rule of Evidence 401, evidence is relevant at trial if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also* Fed. R. Evid. 402 Advisory Comm. Notes ("[E]vidence which is not relevant is not admissible."). Rule 403 then gives the Court discretion to exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The "major function" of Rule 403 is to "exclude[e] matter[s] of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001).

## ARGUMENT

I. **The Constitutionality or Legality of the SC NAACP and League Proposed Maps, the Internal Deliberations of the SC NAACP and League, and Related Testimony Have No Relevance**

The SC NAACP and League maps—and those organizations' internal deliberations—have no relevance to the ultimate questions in this case and therefore should be excluded for those purposes under Rule 401. For their racial gerrymandering claim, Plaintiffs must first prove that race was the predominant factor in placing voters within or outside of a particular district. *Cooper v. Harris*, 137 S. Ct. 1455, 1463–64 (2017). Second, if race did predominate, then courts apply strict scrutiny, and the defendants bear the burden of proving that the use of race was "narrowly tailored" to satisfy a "compelling interest." *Id.* at 1464. This inquiry disregards "*post hoc* justifications the legislature in theory could have used but in reality did not." *Bethune-Hill v. Va. State Bd. of Elections*, 137 S. Ct. 788, 799 (2017).

5

As to their intentional racial discrimination claim, Plaintiffs must prove that race was an improper "motivating" factor in enacting S. 865. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265–68 (1977). Under *Arlington Heights*, assessing discriminatory purpose requires the Plaintiffs to prove that "[t]he impact of the official action" "bears more heavily on one race than another." *Id.* at 266 (quotation marks and citation omitted). "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.*. This analysis looks to certain "evidentiary source[s]" that should be considered in the "evidentiary inquiry." *Id.* at 266–67. In addition to evidence of discriminatory impact, these evidentiary sources include, but are not limited to: (1) "[t]he historical background of the [challenged] decision"; (2) "[t]he specific sequence of events leading up to the challenged decision"; (3) "[d]epartures from normal procedural sequence"; and (4) "the legislative history of the decision." *Id.*; *see also N.C. State Conf. of NAACP v. McCrory*, 831 F.3d 204, 220 (4th Cir. 2016).

Neither the intent behind the maps drafted and submitted by the SC NAACP and the League, nor the internal deliberations of those organizations, nor the testimony of consulting expert data scientists employed by the ACLU, have any bearing on the analyses of whether S. 865 satisfies either claim.[4] The question of whether alternative maps submitted by SC NAACP or the League comply with the Equal Protection Clause or federal law would not provide a pertinent answer. To answer those questions, the Court would have to look into *Plaintiffs*' intent in drawing maps with no legal effect, when, in fact, the only intent that matters is that of Defendants when they drafted and passed the map contained in S. 865. *See* Order & Op., ECF 161 at 4. Moreover, whether the SC NAACP or League maps are constitutional or legal cannot justify Defendants' unconstitutional

---

[4] *See supra* n.1.

6

and unlawful maps. Requiring this Court to evaluate whether the SC NAACP or League's submissions meet constitutional and federal standards would fail to touch upon how Defendants impermissibly considered race when they drafted and evaluated the congressional map contained in S. 865.

It is apparent that Defendants intend on introducing irrelevant evidence to distract this Court and confuse the issues. A central argument of the Senate Defendants' motion to dismiss the Third Amended Complaint and Defendants' joint motion for summary judgment is their justification of the S. 865 map by drawing comparisons to SC NAACP's maps. *See* ECF 271 at 14–15; ECF 323 at 7–8, 24. In their witness list, House Defendants identified ACLU data analysts and a League consultant that could be called at trial "[i]f the need arises." *See* ECF 328 at 4. The Defendants have also listed approximately 233 exhibits that reflect internal deliberations of the SC NAACP, the League, or the ACLU, including recordings and minutes of internal meetings and internal emails. ECF 328 at 13–21 (House Exs. 67–148, 169–188, 199, 204, 206–213, 215–235, 237–252, 256–265); ECF 329-2 at 10–16 (Senate Exs. 131–222). Moreover, both House and Senate Defendants designated portions of the deposition of Mr. Benjamin Fifield, ACLU's former Senior Data Scientist. *See* ECF 328 at 5; ECF 329-1 at 11–12. During his deposition, counsel asked questions concerning Dr. Fifield's racial bloc voting analysis for South Carolina, *see* **Exhibit 3**, B. Fifield Dep. (Aug. 15, 2022) at 162:6–165:23, and who at ACLU was involved in drawing maps, *see id.* at 188:3–189:14. House and Senate Defendants also designated portions of SC NAACP President Brenda Murphy's transcript where Defendants solicited information concerning the maps that SC NAACP submitted into the legislative record. *See* ECF 328 at 6; ECF 329-1 at 32–36; *see also* **Exhibit 4**, B. Murphy Dep. (Aug. 8, 2022) at 68:8–70:10 (questions concerning how SC NAACP considered race when drafting the maps they submitted during the redistricting

7

process); **Exhibit 5**, B. Murphy 30(b)(6) Dep. (Aug. 8, 2022) at 43:24–44:16 (question concerning whether SC NAACP's maps applied the House and Senate redistricting criteria).  Further, fact witnesses used their testimony to criticize maps submitted by SC NAACP and the League and the organizations' representatives.[5]  During discovery, House Defendants, in particular, were insistent on Plaintiffs producing certain draft maps that were purportedly considered by SC NAACP, despite their lack of relevance to this case.  See **Exhibit 9**, House Defs.' June 3, 2022 Ltr.[6]  Of course, the standard for whether something ought to be produced in discovery has no bearing on whether something is ultimately admissible at trial.

Before this Court is the legality and constitutionality of the S. 865 map.  Neither the maps proposed by the SC NAACP nor the League are directly relevant to that inquiry and therefore should be ruled inadmissible for those purposes in an attempt to shield Defendants of liability.

---

[5] See, e.g., **Exhibit 6**, W. Newton Dep. (June 22, 2022) at 165:2–13 (comparing the House Alternative Plan 1 with the SC NAACP map: "And this plan ultimately . . . had a fewer total number of splits, I know as compared to some of the other maps that were available, whether it was a lead map or whether it was one of the two NAACP maps."); 209:4–210:4 ("Q. When Lynn Teague told you and other members of the Ad Hoc Committee that it was her opinion that there were racial gerrymandering concerns with staff plan number two, did you accept that and did you see any evidence to support her opinion?  [A.] I did not."); **Exhibit 7,** N. Collins Dep. (July 28, 2022) at 50:16–51:8 ("Q. So did you ever evaluate a map and find that it didn't comply with the guidelines?  A. Honestly, I thought some of the maps by third parties did not go by the guidelines like we had to.  Q. And did you ever -- did the committee ever consider a map that might have contradicted the guidelines?  A. Yes. In my opinions, the [League] and the ACLU provided such maps.  Q. And why do you believe the [League] provided a map that contradicted the guidelines?  A. They wanted a higher deviation, and they also obviously did not care about incumbency.  Q. And why did you believe the NAACP's map contradicted the guidelines?  A. Similar -- similar reasons."); **Exhibit 8**, L. Rankin Dep. (Aug. 2, 2022) at 130:8–16 ("[T]here's a document you've generated, I hadn't seen it before yesterday, I think, about the various plans that the lead that NAACP, perhaps even Senator Harpootlian's, that compare that -- the split of counties and [precincts], but it wouldn't -- it wouldn't make sense to upset that and undo what has been effectively abided by and adopted by the courts for ten years.").

[6] Despite Plaintiffs' reservations as to relevance of SC NAACP's draft maps, Plaintiffs, in good faith, produced them.  See, e.g., **Exhibit 10**, SCNAACP_CD_011115–SCNAACP_CD_011116.

Similarly, the internal deliberations of the SC NAACP, the League, and the testimony of any ACLU data scientist is similarly irrelevant.

**II.     Even if the Court Finds the Constitutionality and Legality of SC NAACP and the League Maps or the Internal Deliberations of Plaintiffs or Their Counsel Relevant, They Should Be Excluded Under Rule 403**

Even if the Court were to find evidence concerning the constitutionality and legality of the SC NAACP's and the League's maps to be marginally relevant, it should nonetheless exclude such evidence under Rule 403 because their probative value is substantially outweighed by the danger of "confusing the issues, misleading the [Panel]," and "wasting time." Fed. R. Evid. 403. As explained above, this evidence "would inevitably 'waste time and distract from the key issues in the lawsuit.'" *IA Labs CA, LLC v. Nintendo Co.*, 857 F. Supp. 2d 550, 552 (D. Md. 2012) (quoting *CardioVention, Inc. v. Medtronic, Inc.*, 483 F. Supp. 2d 830, 843 (D. Minn. 2007)); *see also Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 813 (11th Cir. 2020) (evidence is excluded when it is "distracting" from the "central obligation to decide the issue").

The key issue in this lawsuit is Defendants' intent when they drew and passed the map contained in S. 865. *See* Order & Op., ECF 161 at 4. By introducing evidence concerning the constitutionality or legality of the SC NAACP or League maps or the internal deliberations of the SC NAACP, the ACLU, or the League, Defendants would distort SC NAACP's burden by requiring it to justify its own maps rather than make its case against the map contained in S. 865.

## CONCLUSION

For the reasons stated above, the Court should grant Plaintiffs' motion in limine. The Defendants should be precluded from calling as witnesses any ACLU data scientist or analyst and the League's consultant, introducing House Exhibits 67–148, 169–188, 199, 204, 206–213, 215–235, 237–252, 256–265, and Senate Exhibits 131–222, and introducing evidence or argument

9

concerning the constitutionality or legality of SC NAACP or League maps or regarding the internal deliberations of the SC NAACP, the ACLU, or the League.

Dated: September 2, 2022

Respectfully Submitted,

Leah C. Aden\*\*
Stuart Naifeh\*\*
Raymond Audain\*\*
John S. Cusick\*\*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St, 5th Fl.
NY, NY 10006
Tel.: (212) 965-7715
laden@naacpldf.org

*/s/ Santino Coleman*
Santino Coleman\*\*\* Fed. ID. 11914
Antonio L. Ingram II\*\*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th St, Ste. 600
Washington, D.C. 20005
Tel.: (202) 682-1300
aingram@naacpldf.org

Adriel I. Cepeda Derieux\*\*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org

John A. Freedman\*\*
Elisabeth S. Theodore\*
Gina M. Colarusso\*\*
John M. Hindley\*\*
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel: (202) 942-5000
john.freedman@arnoldporter.com

*\* Motion for admission Pro Hac Vice forthcoming*
*\*\* Admitted Pro Hac Vice.*
*\*\*\* Mailing address only (working*

Christopher J. Bryant, Fed. ID 12538
BRYANT LEGAL, LLC
126 W. Henrietta St.
Baltimore, MD 21230
Tel.: (843) 779-5444
chris@bryant.legal.com

Somil B. Trivedi\*\*
Patricia Yan\*\*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St., NW
Washington, DC 20005
Tel.: (202) 457-0800
strivedi@aclu.org

Allen Chaney, Fed. ID 13181
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA
Charleston, SC 29413-0998
Tel.: (843) 282-7953
Fax: (843) 720-1428
achaney@aclusc.org

Jeffrey A. Fuisz\*\*
Paula Ramer\*\*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
jeffrey.fuisz@arnoldporter.com

Sarah Gryll\*\*
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300
sarah.gryll@arnoldporter.com

*Counsel for Plaintiffs the South Carolina Conference of the NAACP and Taiwan Scott*

*remotely from South Carolina)*

Janette M. Louard\*
Anthony P. Ashton\*
Anna Kathryn Barnes\*\*
NAACP OFFICE OF THE GENERAL COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org

\* Motion for admission *Pro Hac Vice* forthcoming
\*\* Admitted *Pro Hac Vice*

*Counsel for Plaintiff the South Carolina Conference of the NAACP*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2022, a true and correct copy of the foregoing was served on all counsel of record by electronic mail.

*/s/ Santino Coleman*
Santino Coleman