**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>      Plaintiffs,<br><br>      v.<br><br>THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,<br><br>      Defendants. | **Case No. 3-21-cv-03302-MGL-TJH-RMG**<br><br><br>**THREE-JUDGE PANEL**<br><br><br>**PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE OR ARGUMENT REGARDING *POST HOC* RATIONALES FOR CONGRESSIONAL MAP** |

## INTRODUCTION

Plaintiffs move to preclude Defendants from introducing certain *post hoc* evidence or argument that is either irrelevant to, or would improperly confuse, the issues regarding the State's interest in the congressional map as passed in Senate Bill 865 ("S. 865"). Because both Plaintiffs' racial gerrymandering and intentional discrimination claims require heightened scrutiny, Defendants should be precluded from arguing that that the congressional map in S. 865 serves any state interest that was not contemporaneously identified by the General Assembly during the congressional redistricting process.[1]

## LEGAL STANDARD

Under Federal Rule of Evidence 401, evidence is relevant at trial if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; *see also* Fed. R. Evid. 402, advisory committee notes ("Evidence which is not relevant is not admissible."). Rule 403 then gives the Court discretion to exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." The "major function" of Rule 403 is to "exclude[e] matter[s] of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001).

## ARGUMENT

---

[1] Pursuant to Local Rule 7.02, Plaintiffs state that the Parties, prior to this filing, met and conferred in good faith on September 1. The Parties were unable to resolve the issues raised in this motion.

When assessing legislation under heightened scrutiny, courts look only to the actual motivations of the legislature. In *Shaw v. Hunt*, 517 U.S. 899 (1996), the Supreme Court found irrelevant "what 'may have motivated' the legislature" to create a redistricting plan; instead, the Court held that "the State must show that the alleged objective was the legislature's 'actual purpose'" to be considered a "compelling interest." *Id.* at 908 n.4 (emphasis added) (quoting *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 730, n.16(1982)).  The plaintiffs in *Shaw* alleged that North Carolina's congressional districts were racially gerrymandered, *see id.,* 517 U.S. at 901-903, and Courts regularly apply *Shaw*'s "actual purpose" requirement to evaluate Equal Protection Clause violations under the *Village of Arlington Heights v. Metropolitan Housing Development Corp*., 429 U.S. 252 (1977) ("*Arlington Heights*") framework.  *See*, *e.g.*, *Prejean v. Foster*, 227 F.3d 504, 509, 514, n.18 (5th Cir. 2000); *see also Glenn v. Brumby*, 663 F. 3d 1312, 1321 (11th Cir. 2011); *Floyd v. City of New York*, 959 F. Supp. 2d 540, 570-71, n.88 (S.D.N.Y. 2013).  Inquiries under the Equal Protection Clause disregard "*post hoc* justifications the legislature in theory could have used but in reality did not." *Bethune-Hill v. Va. State Bd. of Elections*, 580 U.S. 178, 137 S. Ct. 788, 799 (2017).

In sum, because courts are only concerned with the "actual purpose" motivating official action under heightened scrutiny, only state interests that were contemporaneously identified by the legislature are relevant to Plaintiffs' racial gerrymandering and intentional discrimination claims.  This would mean, in practice, that legislators cannot justify a congressional map based on partisanship when they did not identify this justification during the legislative process.

Nevertheless, based on their pre-trial strategy, it appears that Defendants plan to defend the map primarily using a *post hoc* rationale that was not contemporaneously identified during the

3

redistricting process—that the map was a partisan gerrymander drawn to advantage the Republican party by locking in a 6-1 delegation.  For example, defense expert Mr. Sean Trende attributes several of the line changes to "increase its Republican vote share," or to "add Democratic-leaning voters" to the CD 6.  ECF 324-1 at 7, 29, 35.  Moreover, in their Joint Motion for Summary Judgment, Defendants defend the congressional map by arguing that it was Defendants' intent to create a "political advantage" and this "animated the General Assembly's line-drawing decisions and is embodied in the map that was ultimately enacted, which maintains the pro-Republican composition of six districts."  ECF 323 at 16.  According to Defendants, they engaged in a "legitimate political objectives . . . when it pursued the goal of preserving and strengthening the 6-1 Republican-Democratic composition that existed under the Benchmark Plan." *Id.* at 20.  For example, Defendants described how CD 1 was redrawn in a way to be more Republican-leaning. *See id.* at 21.  In support of Defendants' purported justification, Defendants cite to deposition transcripts taken during discovery in this case *after* S. 865's enactment.  *See id.* at 21 (citing ECF 323-22, 323-23, ECF 323-24).  To be clear, Defendants only cite to the record created *after* the General Assembly passed S. 865 for this partisan monopoly defense.  Nowhere in their summary judgment papers do Defendants cite to the legislative record created during the actual congressional redistricting process.

Defendants' putative explanation that the map passed in S. 865 is a partisan gerrymander is a *post hoc* justification.  This is because nowhere in the legislative record did Defendants justify the congressional map on the basis that it would solidify Republicans' 6-1 advantage in South Carolina.  In fact, supporters of the bill explicitly stated that partisanship did *not* factor into the drawing of the map in S. 865.  *See*, *e.g.*, **Exhibit A**, SCNAACP_CD_006560 (Transcript of

4

Proceedings, S.C. House Floor, Jan. 12, 2022) at 55-56 (Rep. Jordan: "So, I will tell you that no partisan group, national or otherwise, were involved in the drafting of this plan. None of that outside partisan stuff took place in this process."). Senator George Campsen, a member of the Senate Judiciary Committee and one of the three Senators who led the effort to pass S. 865, expressly denied that the map was a partisan gerrymander:

> So those two, District 6 and 1, underwent fairly significant changes in population and -- but the demographic and partisan makeup of each district is substantially similar to the benchmark, meaning the 2012 plan….

> Now I want to also address the issue of some allegations of partisan gerrymandering. I'd like to give some numbers that I think will demonstrate that that's really not the case.

> In the 1st District, if you look at the Trump vote in the 1st, under the benchmark it was 53.03 percent.

> That's the benchmark Trump vote in 2020.

> Under Amendment 1, the vote would be 54.39 percent. That's an increase of only 1.36 percent. If you look at Amendment 2 that's going to be presented later, it goes from 53.03 percent Trump to 48.17 percent Trump, as far as the political numbers go.

**Exhibit B,** (SCNAACP_CD_006914 (Transcript of Proceedings, S.C. Senate Floor, Jan. 20, 2022)) at 9:7-11, 25:20-26:6; *see also* **Exhibit C**, SCNAACP_CD_006254 (Transcript of Proceedings, S.C. Senate Floor, Dec. 7, 2021) at 2:5-19, 33:6-12 (Sen. Rankin describing the redistricting process as "bipartisan"); **Exhibit D**, (Congressional Rebuttal Report of Joseph Bagley, Ph.D) at 3-7 (describing the legislative process in which partisanship was not a justification for the congressional map). As a result, maintaining the Republican's advantage was not a contemporaneous justification contemplated by legislative members and staff *before* S. 865's passage.

Any other statement of S. 865's purpose is a *post hoc* rationalization for the statue. And rationalizations "hypothesized or invented *post hoc* in response to litigation" are irrelevant to ascertain the "genuine purpose" of the legislature. *See United States v. Virginia*, 518 U.S. 515, 533 (1996). Therefore, any evidence or argument unrelated to the State interests contemporaneously identified by the General Assembly should be excluded or disregarded in considering the Defendants' defense of S. 865.  *See* Fed. R. Evid. 402.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs' motion in limine should be granted.


*[Signatures on next page]*

6

Dated:  September 2, 2022

Leah C. Aden**
Stuart Naifeh**
Raymond Audain**
John S. Cusick**
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St, 5th Fl.
NY, NY 10006
Tel.: (212) 965-7715
laden@naacpldf.org

*/s/ Santino Coleman*
Santino Coleman*** Fed. ID. 11914
Antonio L. Ingram II**
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th St, Ste. 600
Washington, D.C. 20005
Tel.: (202) 682-1300
aingram@naacpldf.org

Adriel I. Cepeda Derieux**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org

John A. Freedman**
Elisabeth S. Theodore*
Gina M. Colarusso**
John M. Hindley**
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel: (202) 942-5000
john.freedman@arnoldporter.com

*\* Motion for admission Pro Hac Vice*

Respectfully Submitted,

Christopher J. Bryant, Fed. ID 12538
BRYANT LEGAL, LLC
126 W. Henrietta St.
Baltimore, MD 21230
Tel.: (843) 779-5444
chris@bryant.legal.com

Somil B. Trivedi**
Patricia Yan**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St., NW
Washington, DC 20005
Tel.: (202) 457-0800
strivedi@aclu.org

Allen Chaney, Fed. ID 13181
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA
Charleston, SC 29413-0998
Tel.: (843) 282-7953
Fax: (843) 720-1428
achaney@aclusc.org

Jeffrey A. Fuisz**
Paula Ramer**
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
jeffrey.fuisz@arnoldporter.com

Sarah Gryll**
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300
sarah.gryll@arnoldporter.com

*Counsel for Plaintiffs the South Carolina
Conference of the NAACP and Taiwan Scott*

7

*forthcoming*
*\*\* Admitted Pro Hac Vice*
*\*\*\* Mailing address only (working*
*remotely from South Carolina)*

Janette M. Louard\*
Anthony P. Ashton\*
Anna Kathryn Barnes\*\*
NAACP OFFICE OF THE GENERAL
COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org

\* Motion for admission *Pro Hac Vice*
forthcoming
\*\* Admitted *Pro Hac Vice*

*Counsel for Plaintiff the South Carolina*
*Conference of the NAACP*

8

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 2, 2022, a true and correct copy of the foregoing was

served on all counsel of record by electronic mail.


*<u>/s/ Santino Coleman</u>*
Santino Coleman