# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, and<br><br>TAIWAN SCOTT, on behalf of himself and all other similarly situated persons,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>THOMAS C. ALEXANDER, in his official capacity as President of the Senate; LUKE A. RANKIN, in his official capacity as Chairman of the Senate Judiciary Committee; JAMES H. LUCAS, in his official capacity as Speaker of the House of Representatives; CHRIS MURPHY, in his official capacity as Chairman of the House of Representatives Judiciary Committee; WALLACE H. JORDAN, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee; HOWARD KNAPP, in his official capacity as interim Executive Director of the South Carolina State Election Commission; JOHN WELLS, Chair, JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL, and SCOTT MOSELEY, in their official capacities as members of the South Carolina Election Commission,<br><br>　　　　Defendants. | **Case No. 3-21-cv-03302-MGL-TJH-RMG**<br><br>**THREE-JUDGE PANEL**<br><br>**PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE INTENT-RELATED TESTIMONY RELIANT ON PRIVILEGED COMMUNICATIONS** |

## INTRODUCTION

Plaintiffs move to preclude the admission of testimony that would allow Defendants to use legal privileges as both a sword—to defeat the racially discriminatory intent required to establish Plaintiffs' claims—and a shield—to prevent Plaintiffs from proving those claims. Throughout document discovery and depositions, Defendants claimed legislative, attorney-client, and work product privilege over conversations with attorneys. Yet Defendants' witnesses repeatedly testified that the advice of those same attorneys gave them comfort that the Enacted Map was not a racial gerrymander or intentionally discriminatory. The Court should not allow this to occur at trial. The fairest result is that witnesses be precluded from testifying in the first instance that they relied on attorneys to provide comfort as to the legality of their maps. Alternatively, any such testimony should operate as a waiver, and Plaintiffs should be free to inquire as to the substance of the relevant conversations, and to receive documents previously withheld on the waived privilege. But the status quo, with Defendants having their cake and eating it too, cannot stand.[1]

## ARGUMENT

### I. Defendants May Not Use Privilege as Both a Sword and a Shield

It is well established that parties cannot use privilege as both a "shield" to prevent discovery and a "sword" to present evidence or claims related to the privileged information. *See*, *e.g.*, *MAG Mut. Ins. Co. v. Brown*, No. 6:14-cv-353, 2015 WL 13648556, at *13 (D.S.C. July 24, 2015) (citing *In re Martin Marietta Corp.*, 856 F.2d, 619, 626) (4th Cir. 1988) (work product is discoverable when the "litigant will attempt to use a pure mental impression or legal theory as a sword and as a shield in the trial") (internal quotation marks omitted); *Burlington Indus. v. Exxon Corp.*, 65 F.R.D.

---

[1] Pursuant to Local Rule 7.02, Plaintiffs state that the Parties, prior to this filing, met and conferred in good faith on September 1, 2022. The Parties were unable to resolve the issues raised in this motion.

26, 46 (D. Md. 1974) ("[P]rivileges cannot be used as both a sword and a shield. A party cannot choose to disclose only so much of allegedly privileged matter as is helpful to his case. Once the party begins to disclose any confidential communication for a purpose outside the scope of the privilege, the privilege is lost for all communications relating to the same matter.") (citing 8 Wigmore, Evidence § 2327 (McNaughton Rev. 1961)). "In other words, '[a] defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes.'" *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994) (alteration in original) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *Cf. Singleton v. Merrill*, 576 F. Supp. 3d 931, 940 (N.D. Ala. 2021) (applying sword/shield doctrine where legislators sought "to use their unique position as [the law's] principal drafters as a sword to defend the law on its merits, but intermittently seek to retreat behind the shield of legislative privilege when it suits them").

Attempting to use privileges as both sword and shield can also result in waiver. *See*, *e.g.*, *United Bank v. Buckingham*, 301 F. Supp. 3d 547, 558 (D. Md. 2018) ("[A] party waives his attorney-client privilege when the party relies on the advice of counsel as an element of his defense. In other words, the client cannot use the advice of counsel as a sword to prove his case but then assert the privilege as a shield to prevent disclosing harmful information.") (quoting *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387, 435 (2012). This is similar to asserting "advice of counsel" or "injecting" that legal advice into the case as a defense; such an assertion or injection must result in waiver and allow the opposing party to probe the advice. *United Bank*, 301 F. Supp. 3d at 558–59 ("[A] client . . . inject[s] advice of counsel into the case when she attempts to defend a charge of bad faith by referencing specific communications with attorneys that purportedly

provided a good-faith basis for certain actions, and then refuse to allow any further investigation into those communications.") (citation and quotation marks omitted).[2]

## II. Defendants Have Both Asserted Privilege Over Relevant Communications and Posited Those Same Communications as Proof of the Absence of Discriminatory Intent

Both House and Senate Defendants have claimed work product protection, attorney-client privilege, and legislative privilege over dozens of communications from the period when the Enacted Map was being created. *See, e.g.*, ECF 322-3 (Ex. C, Senate Defs.' Aug. 10, 2022 Revised Privilege Log) (submitted *in camera* on August 18, 2022). Many of these withholdings came despite this Court's multiple prior rulings that (1) the "the balance of interests weighed in favor of disclosure of material otherwise subject to the legislative privilege," *see* ECF 299 at 2; ECF 153 at 11–17, and (2) several documents over which Defendants asserted attorney-client and/or work product privilege in the House case were not, in fact, privileged.[3] Defendants have also objected to deposition questions that they believe implicate certain privileges. **Exhibit A**, L. Rankin Dep. (Aug. 2, 2022) at 198:5–10 (asserting privilege objection to question asking whether counsel ever told Mr. Rankin to conduct a racially polarized voting analysis); **Exhibit B**, C. Terreni Dep. (Aug. 16, 2022) at 190:21–191:8 (asserting attorney-client privilege objection to question seeking who,

---

[2] Because Plaintiffs' claims contain intent elements, Defendants use of privilege as both sword and shield is also much like a criminal defendant invoking an "advice of counsel" defense. When that occurs, the privilege is waived. *See*, *e.g.*, *U.S. ex rel. Lutz v. Berkeley Heartlab, Inc.*, No. 9:14-cv-00230-RMG, 2017 WL 1282012, at *4 (D.S.C. Apr. 5, 2017) ("By pleading an affirmative advice of counsel defense to the Government's complaint, Defendants placed their communications with counsel at issue and so waived attorney-client privilege as to all information relating to their communications with counsel during the OIG investigation about the conduct at issue in this case.").

[3] Indeed, Senate Defendants asserted privilege over a certain communication between the Senate and House before realizing that House Defendants had previously produced it. *See* ECF 332-4, 332-5 (Exs. D, and E) (SC_HOUSE_0105039–0105041) (submitted *in camera* on August 30, 2022).

4

if anyone, would have instructed staff to consider race during congressional redistricting); **Exhibit C**, E. Dean Dep. (July 6, 2022) at 49:3–12 (when asked whether she recalled "reviewing any materials on the legal definition of intentional discrimination," Ms. Dean responded, "I don't want to waive any attorney-client privilege here."); **Exhibit F**, A. Fiffick Dep. (July 21, 2022) at 284:12–285:3 (asserting attorney-client privilege objection in response to questions about the depth of outside feedback and review of draft maps by John Gore and Charlie Terreni). .

At the same time, Defendants and their witnesses have made their purported "good faith" central to their defense of this case. *See, e.g.,* ECF 323 at 1. To that end, defense witnesses have repeatedly testified that they relied on the advice of counsel, both in-house and external, to gain comfort that the Enacted Map and previous iterations they published complied with state law, federal law, and Defendants' redistricting principles, including that the maps were not racially gerrymandered or intentionally discriminatory. **Exhibit D**, G. Campsen Dep. (Aug. 5, 2022) at 134:12–16 ("[C]ompliance with federal law or the US Constitution . . . would have been a question for Mr. Gore or Mr. Terreni."); **Exhibit A**, L. Rankin Dep. at 57:13–17 ("[O]bviously we relied on the opinion of Charlie [Terreni] and others that what we advanced complied with both the guidelines that we adopted and the law."); **Exhibit F**, A. Fiffick Dep. (July 21, 2022) at 255:18–25 (noting, in relation to who would be responsible for determining district compactness: "all this would have gone on the back end up to Charlie Terreni and John Gore"); *id.* at 18:7–10 (testifying that Mr. Gore would "just look at the map and talk to us and say thumbs up, thumbs down").[4]

Counsel, conveniently, did not object to these questions on privilege grounds. **Exhibit A**, L. Rankin Dep. at 56:5–6 ("What kind of questions did you ask [Mr. Terreni]?") (no privilege

---

[4] Despite testimony that Mr. Gore "look[ed] at . . . map[s]," Senate Defendants' privilege log contains no entries indicating that Mr. Gore received maps via email.

5

objection). Indeed, House Defendants' counsel affirmatively elicited such testimony by asking Representative Wallace Jordan to confirm that he tasked counsel to make sure "the new districts, congressional districts, complied with the United States Constitution." **Exhibit E**, W. Jordan Dep. at 431:23–432:17.  Senate Defendants' counsel did the same during his examination of Mr. William Roberts, the primary Senate mapmaker.  *See* **Exhibit G**, W. Roberts Dep. (July 7, 2022) at 257:4–9 ("Q: And did complying with those recommendations or implementing those recommendations require you to violate any of the criteria in the senate redistricting guidelines? A: That's going to be up to the legal team to decide."); *see also id.* at 251:23–252:10 (defense counsel inquiring as to his communications with the witness).  As another example, Defendant Luke Rankin—chair of both the Senate Judiciary Committee and the Senate Redistricting Subcommittee—was asked how he became comfortable that maps were legally compliant, and he testified: "in deference to counsel, Charlie Terreni and perhaps John Gore." **Exhibit A**, L. Rankin Dep.. at 117:3–11.  When asked again whether "legal opinions" from counsel gave Mr. Rankin "comfort," he responded "Correct." *Id.* at 120:1–4.  Andrew Fiffick, himself an attorney and part of the staff team that created maps in the first instance, also testified that he relied on other attorneys for comfort.  Indeed, Mr. Fiffick said he sent several proposed maps to counsel to determine "whether or not . . . they were kosher." **Exhibit F**, A. Fiffick Dep. at 58:18–59:8.

In the face of all this testimony that lawmakers and mapmakers relied on counsel to bless Defendants' maps, Plaintiffs and the Court have no idea whether that blessing was unsound or biased.  This is particularly true considering Defendants' testimony that they hired and paid these attorneys themselves, and the fact that Defendants have never produced any publicly-available written or data-based analyses that would corroborate Defendants' alleged comfort.

Defendants' use of privilege as both a sword to defeat intent and a shield to protect harmful information is a textbook abuse of the privilege and cannot continue at trial. *Buckingham*, 301 F. Supp. 3d at 558 ("[A] party waives his attorney-client privilege when the party relies on the advice of counsel as an element of his defense. In other words, the client cannot use the advice of counsel as a sword to prove his case but then assert the privilege as a shield to prevent disclosing harmful information.").

## CONCLUSION

For the reasons stated above, Plaintiffs' motion in limine should be granted, and Defendants should be precluded from testifying as to their consultations with their counsel or the fact that they gained comfort from such consultations. If that relief is not granted, any such testimony should waive any privilege preventing Plaintiffs from probing the relevant conversations.

Dated:  September 2, 2022

Leah C. Aden\*\*
Stuart Naifeh\*\*
Raymond Audain\*\*
John S. Cusick\*\*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St, 5th Fl.
NY, NY 10006
Tel.: (212) 965-7715
laden@naacpldf.org

*/s/ Santino Coleman*
Santino Coleman\*\*\* Fed. ID. 11914
Antonio L. Ingram II\*\*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th St, Ste. 600
Washington, D.C. 20005
Tel.: (202) 682-1300
aingram@naacpldf.org

Adriel I. Cepeda Derieux\*\*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel.: (212) 549-2500
acepedaderieux@aclu.org

John A. Freedman\*\*
Elisabeth S. Theodore\*
Gina M. Colarusso\*\*
John M. Hindley\*\*
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Tel: (202) 942-5000
john.freedman@arnoldporter.com

*\* Motion for admission Pro Hac Vice
forthcoming
\*\* Admitted Pro Hac Vice
\*\*\* Mailing address only (working*

Respectfully Submitted,

Christopher J. Bryant, Fed. ID 12538
BRYANT LEGAL, LLC
126 W. Henrietta St.
Baltimore, MD 21230
Tel.: (843) 779-5444
chris@bryant.legal.com

Somil B. Trivedi\*\*
Patricia Yan\*\*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th St., NW
Washington, DC 20005
Tel.: (202) 457-0800
strivedi@aclu.org

Allen Chaney, Fed. ID 13181
AMERICAN CIVIL LIBERTIES UNION
OF SOUTH CAROLINA
Charleston, SC 29413-0998
Tel.: (843) 282-7953
Fax: (843) 720-1428
achaney@aclusc.org

Jeffrey A. Fuisz\*\*
Paula Ramer\*\*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
Tel: (212) 836-8000
jeffrey.fuisz@arnoldporter.com

Sarah Gryll\*\*
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Tel: (312) 583-2300
sarah.gryll@arnoldporter.com

*Counsel for Plaintiffs the South Carolina
Conference of the NAACP and Taiwan Scott*

*remotely from South Carolina)*

Janette M. Louard\*
Anthony P. Ashton\*
Anna Kathryn Barnes\*\*
NAACP OFFICE OF THE GENERAL
COUNSEL
4805 Mount Hope Drive
Baltimore, MD 21215
Tel: (410) 580-5777
jlouard@naacpnet.org

\* Motion for admission *Pro Hac Vice*
forthcoming
\*\* Admitted *Pro Hac Vice*

*Counsel for Plaintiff the South Carolina Conference of the NAACP*

9

**CERTIFICATE OF SERVICE**

  I hereby certify that on September 2, 2022, a true and correct copy of the foregoing was served on all counsel of record by electronic mail.

                    */s/ Santino Coleman*
                    Santino Coleman