**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS C. ALEXANDER, *et al.*,<br><br>Defendants. | Case No. 3:21-cv-03302-MGL-TJH-RMG<br><br>**SENATE DEFENDANTS' & HOUSE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE THE USE OF THE U.S. DEPARTMENT OF JUSTICE'S 2011 PRECLEARANCE DECISION AND *BACKUS V. SOUTH CAROLINA* DECISION FOR IMPROPER PURPOSES** |

Senate Defendants and the House Defendants[1] (collectively, "Defendants") by and through their undersigned counsel, hereby respond in opposition to Plaintiffs' Motion in Limine to Exclude the Use of the U.S. Department of Justice's 2011 Preclearance Decision and *Backus v. South Carolina* for Improper Purposes ("Motion"). (ECF No. 349).

**INTRODUCTION**

Plaintiffs seek a pre-trial order excluding testimony that Defendants:

> did not unlawfully use race *because* they relied on the 2011 Congressional plan—that was precleared under Section 5 of the [VRA] and partially reviewed in the *Backus* decision—as the benchmark to develop Senate Bill 865 ("S. 865") . . .

(ECF No. 349 at 2) (emphasis added).

---

[1] The Senate Defendants are Thomas C. Alexander, in his official capacity as President of the Senate, and Luke A. Rankin, in his official capacity as Chairman of the Senate Judiciary Committee. The House Defendants are James H. Lucas, in his official capacity as Speaker of the House of Representatives, Chris Murphy, in his official capacity as Chairman of the House of Representatives Judiciary Committee, and Wallace H. Jordan, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee. On May 12, 2022, James H. Lucas stepped down as Speaker of the South Carolina House of Representatives. The current Speaker of the House is Representative G. Murrell Smith, Jr.

At the threshold, Plaintiffs' Motion is not a proper motion in limine. Indeed, it simply rehashes Plaintiffs' various *legal* arguments regarding preclearance of the Benchmark Plan and this Court's and the Supreme Court's decisions in the *Backus* case, and does not seriously engage any *evidentiary* issues that are the province of a motion in limine. After all, a claim that the Enacted Plan "did not unlawfully use race *because* [the General Assembly] relied on the 2011 Congressional plan," *id.*, is a legal argument, not factual evidence.

In other words, Plaintiffs misconstrue or misunderstand the record of Defendants' representations, which they claim is the basis for the Motion. Defendants have never taken the *legal* position that they "did not unlawfully use race *because*" the 2011 Congressional plan served as a starting point for drafting the newly enacted districts. Defendants also have not proffered any *testimony* making that statement.[2] Rather, the drafters' use of the 2011 Congressional plan as a starting point is relevant to how the Enacted Plan was adopted, the sequence of events leading to its enactment, and the drafters' state of mind and the alternatives they might have considered in adopting the Enacted Plan. *See, e.g.*, *Cooper v. Harris*, 137 S. Ct. 1455, 1492 (2017) (Alito, J., dissenting) ("When a new census requires redistricting, it is a common practice to start with the plan used in the prior map and to change the boundaries of the prior districts only as needed to

---

[2] For instance, Plaintiffs misconstrue language from Defendants' recent motion for summary judgment (ECF No. 323). They claim Defendants have argued the newly enacted Congressional districts are legal *because* the plan drafters started with the benchmark plan. To support this, they quote from Defendants' motion, arguing Defendants "claimed, for example, that the 'Congressional Plan is largely a continuation of the Benchmark Plan that this Court . . . upheld against racial gerrymandering' in *Backus*." (ECF No. 349 at 4). What Defendants actually argued was Plaintiffs cannot carry their burden and illustrated this point by saying, "*Plaintiffs acknowledge* that the Congressional Plan is largely a continuation of the Benchmark Plan that this Court and the Supreme Court upheld against racial gerrymandering and other challenges in *Backus* . . ." (ECF No. 323 at 2) (emphasis added). Plaintiffs' selective quotation and argument is wildly misleading and permeates the Motion. Defendants are preparing for trial and believe it an unnecessary waste of time to properly contextualize all of Plaintiffs' mischaracterizations, but provide this one example as illustrative of the larger pattern.

2

comply with the one-person, one-vote mandate and to achieve other desired ends."). For instance, some witnesses might testify that, when attempting to draw new and legal Congressional districts, the prior plan was a logical starting place because it survived some degree of race-focused scrutiny by the executive (pre-clearance) and judicial (*Backus*) branches of the federal government. Indeed, anybody who testifies along these lines will be a fact witness and will make statements such as this to explain—as *they* understand—what they did, what happened, and why it happened. Such testimony is commonplace and entirely proper in redistricting cases, *see id.*, and, in fact, mere run-of-the-mill lay testimony based upon a witness's personal knowledge or firsthand perception. The Court should deny the Motion.

## STANDARD OF REVIEW

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is generally admissible. Fed. R. Evid. 402; *see also United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003) (holding that relevance "typically presents a low barrier to admissibility"). In the context of a bench trial, the standards set forth in Rule 403 are relaxed, as the Fourth Circuit has expressed confidence that "the district court can hear relevant evidence, weigh its probative value and reject any improper inferences." *See Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994); *see also id.* (holding that "evidence should not be excluded under 403 on the ground that it is unfairly prejudicial" in the context of a bench trial); *Moats Constr., Inc. v. New Beach Constr. Partners, Inc.*, No. 8:17-CV-02009-JDA, 2020 WL 13076115, at *3 (D.S.C. Oct. 13, 2020) (citing *Schultz* and recognizing that Rule 403 "is relaxed during a bench trial").

3

## ARGUMENT

As this Court recently made clear, "The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the jury will consider." *UFP E. Div., Inc. v. Selective Ins. Co. of S.C.*, 2017 WL 1293446, at 2 (D.S.C. Apr. 6, 2017) (quoting *United States v. Verges*, 2014 WL 559573, at 2 (E.D. Va. Feb. 12, 2014)). In contrast, Plaintiffs' Motion creates delay, does little—if anything—to ensure an even-handed and expeditious trial, and confuses the issues the Court will consider.

Plaintiffs' Motion creates delay because it is legal argument masquerading as an evidentiary objection. Defendants have not proffered, and do not intend to proffer, any witness testimony that the Enacted Plan is constitutional and legal merely "because" it is based on the constitutional and legal Benchmark Plan upheld by the Department of Justice, this Court, and the Supreme Court. Moreover, in the extremely unlikely event that any witness's testimony veers from a factual description of events into this territory, this is exactly the type of objection counsel could quickly and easily make at trial. The Court could, perhaps even more quickly and easily, dispose of the speaking motion. Plaintiffs' Motion therefore does little—if anything—to ensure an even-handed and expeditious trial

Finally, Plaintiffs' Motion does not focus the issues. In fact, if anything, this Motion might confuse the issues. Defendants have never taken the position that the enacted map is legal *because* the 2011 Congressional plan survived pre-clearance and judicial scrutiny in *Backus*. Plaintiffs' suggestion otherwise is a troubling distraction.

### I.   Rule 403 of the Federal Rules of Evidence

Again, contrary to Plaintiffs' misrepresentations, Defendants do not intend to introduce testimony that the enacted plan is not discriminatory because the drawing process started with a benchmark plan that survived scrutiny from the executive and judicial branches of the federal government. And, again, a witness might testify that he or she knew the benchmark plan was pre-cleared by the Department of Justice and survived some judicial scrutiny in *Backus*. But, the relevance of such testimony will be how this knowledge was used: because the 2011 Congressional plan survived some race-focused scrutiny, it seemed like a logical starting place to draw new, legal Congressional districts. *See, e.g.*, *Cooper*, 137 S. Ct. at 1492 (Alito, J., dissenting). Such testimony is relevant and carries no risk that "any probative value is substantially outweighed by the danger of 'confusing the issues, misleading the [panel]'[3] and 'wasting time.'" (ECF No. 349 at 5).

The potential testimony described above is nothing more than textbook state of mind evidence—explaining what happened and why the witness believes it happened. In this case, where Plaintiffs must prove intent, this testimony's value is 100% probative and there is little to no risk of prejudicial effect. And, finally, the only way testimony on this issue will waste time is if Plaintiffs' counsel continues to misunderstand or misconstrue what is being said and belabors the point on cross examination.

### II.  Lay Testimony

Again, in the event a lay witness testifies concerning the fact that the 2011 Congressional plan was pre-cleared by the Department of Justice and that the *Backus* plaintiffs did not prevail at trial, it will be in the context of explaining what their state of mind was and what they saw take

---

[3] The word "panel" is in brackets in Plaintiffs' Motion. As this Court is aware, Rule 403 uses the words "misleading the *jury*." Fed. R. Evid. 403 (emphasis added). There is a difference.

place during the relevant map drawing process. As Rule 701 provides, this potential testimony would be "rationally based on the witness's perception" and "not based on scientific, technical or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Indeed, some of the witnesses who might provide this type of testimony would likely admit they do not understand the ins-and-outs of the preclearance process or federal redistricting litigation—they just knew the 2011 Congressional plan survived some form of race-focused scrutiny, and therefore the benchmark plan was a good starting place to draw new districts. They will not testify that their use of the benchmark plan in this manner automatically renders the Enacted Plan legal and constitutional. They knew what they knew and they did what they did, and they should be permitted to explain it to the Court.

### III. Expert Testimony

Plaintiffs argue this Court should exclude "undisclosed" opinion testimony from the Defendants' expert concerning the legal significance of the 2011 pre-clearance process and the *Backus* litigation. This opinion is not so much "undisclosed" as it is nonexistent. In the monumentally unlikely event this issue materializes at trial, the Court is well-equipped to deal with it efficiently and expeditiously.

### CONCLUSION

Plaintiffs' Motion is based on a misconstruction or misunderstanding of Defendants' position in this litigation. The Court should deny it.

*[Signature Pages Follow]*

6

September 9, 2022                                    Respectfully submitted,

/s/ Mark C. Moore
Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com

William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900
Greenville, SC 29601
Telephone: 864.370.2211
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com

*Counsel for House Defendants*


/s/Robert E. Tyson, Jr.
Robert E. Tyson, Jr. (7815)
Vordman Carlisle Traywick, III (12483)
La'Jessica Stringfellow (13006)
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400
rtyson@robinsongray.com

7

8

       ltraywick@robinsongray.com
       lstringfellow@robinsongray.com

       John M. Gore (admitted *pro hac vice*)
       Stephen J. Kenny (admitted *pro hac vice*)
       JONES DAY
       51 Louisiana Avenue, N.W.
       Washington, D.C. 20001
       Phone: (202) 879-3939
       Fax: (202) 626-1700
       jmgore@jonesday.com
       skenny@jonesday.com

       *Counsel for Senate Defendants*