IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THOMAS C. ALEXANDER, *et al.*, <br><br> Defendants. | Case No. 3:21-cv-03302-MGL-TJH-RMG <br><br> **SENATE AND HOUSE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE INTENT-RELATED TESTIMONY RELIANT ON PRIVILEGED COMMUNICATIONS** |

The Senate Defendants and the House Defendants,[1] by and through the undersigned counsel, submit this response in opposition to Plaintiffs' Motion in Limine to Preclude Intent-Related Testimony Reliant on Privileged Communications. *See* ECF No. 354. For the reasons that follow, the Court should deny Plaintiffs' motion.

## INTRODUCTION

Trial is less than a month away. In advance of trial, all parties unsurprisingly moved in limine to exclude each other's experts. Where the parties parted company, however, was on the issue of other evidentiary motions in limine. During the parties' (apparently partial) meet-and-confer on September 1, 2022, the House and Senate Defendants (1) urged Plaintiffs to table several of these matters until the parties can conduct the meet, mark, and exchange conference, *see* Local

---

[1] The Senate Defendants are Thomas C. Alexander, in his official capacity as President of the Senate, and Luke A. Rankin, in his official capacity as Chairman of the Senate Judiciary Committee. The House Defendants are James A. Lucas, in his official capacity as Speaker of the House of Representatives, Chris Murphy, in his official capacity as Chairman of the House of Representatives Judiciary Committee, and Wallace H. Jordan, in his official capacity as Chairman of the House of Representatives Elections Law Subcommittee. As previously noted, Jay Lucas is no longer Speaker of the House.

1

Civ. Rule 26.07 (D.S.C.), so the parties will have the benefit of seeing each other's pretrial disclosures and objections to properly frame the issues; (2) reminded Plaintiffs the Panel is more than capable of dealing with evidentiary issues in real time during this bench trial, and the absence of a jury renders most of their concerns either moot or unfounded; and (3) told Plaintiffs they were arguing over nonissues. Plaintiffs filed their motions anyway. *See* ECF Nos. 348, 349, 350, 351, 352, 353, 354, 355, 356 & 357. Plaintiffs' ten motions, some of which raise issues that were never discussed, are a waste of both the parties' and the Court's time.

What is perhaps most striking about Plaintiffs' motions, though, is that they largely concern topics on which *Plaintiffs* were laser-focused during document discovery and depositions. Take this one. Here, Plaintiffs argue it is unfair for the House and Senate Defendants to use the attorney–client privilege as both a sword and a shield. ECF No. 354 at 2. But *Plaintiffs* are the ones who asked every single defense witness about the role of outside counsel and tried to elicit testimony on precisely what advice was given. *E.g.*, *id.* at 5 (citing depositions of Andy Fiffick, Emma Dean, Sen. Rankin, and Sen. Campsen). The House and Senate Defendants remained patient with Plaintiffs and afforded some leeway, while objecting where appropriate to maintain the privilege, even though Plaintiffs spent hours of depositions on this distraction. But that still wasn't enough: Plaintiffs demanded more—ignoring the previously agreed upon 60+ search terms—and filed a motion for in camera review and a surprise motion to compel with the Court. *See* ECF No. 322. Now, after all that wasted time, Plaintiffs have moved in limine to exclude any mention of legal advice at trial. *See* ECF No. 354 at 7. In the alternative, Plaintiffs curiously ask the Court to find the attorney–client privilege waived. *See id.*

To be clear, Plaintiffs rang this bell first. All the House and Senate Defendants' witnesses did was respond to their questions without vitiating the attorney–client privilege. Contrary to

Plaintiffs' misrepresentations, those responses do not make the advice itself fair game, particularly where, as here, Plaintiffs had already sued the General Assembly before it even drew the first map. A party cannot file a lawsuit and then demand unfettered access to the legal advice given by opposing counsel as the case unfolded. In any event, in defending Plaintiffs' unsupported racial gerrymandering and intentional racial discrimination claims, the House and Senate Defendants have not once made "advice of counsel" a defense. Look no further than their answers and the briefing filed in this case.

Plaintiffs are trying to knock down a strawman. The reason, of course, is that Plaintiffs' other conspiracy theories have not panned out. So they are now left with making the unseemly assertion that leaders of the General Assembly and their staff somehow laundered racist motivations through communications with outside counsel. Indeed, Plaintiffs' entire motion rests on the false assumption that the House and Senate Defendants are shielding evidence of racially discriminatory intent by asserting the attorney–client privilege. That is wholly unsupported by the record, and Plaintiffs know it.[2]

As the Court has recognized, "the case law tells us we focus like laser beams on these plans. That's what we focus on." ECF No. 224 at 17–18. Having to respond again to Plaintiffs' "fussing about the lawyers," *id.* at 18, is a waste of time and does nothing to advance the ball in this case. The Court should deny Plaintiffs' motion.

---

[2] Once again, however, Plaintiffs seek to improperly raise tardy objections to the Senate Defendants' productions. *See* ECF No. 354 at 5 n.4; *cf.* Local Civ. Rule 7.01, 7.02, 7.03, 37.01 (D.S.C.). And once again, Plaintiffs' suspicions are unfounded. In the year 2022, Plaintiffs' counsel hardly need reminding that there is no need to email maps that can be pulled up on a shared screen in real time during a Zoom meeting. Further, as Plaintiffs already know, the Senate Defendants' witnesses testified that they met with outside counsel via Zoom to discuss maps. *E.g.*, Ex. A, Breeden John Dep. Tr. at 21:14–23. Plaintiffs notably withheld that information from the Court. *See* ECF No. 354 at 5 n.4.

**STANDARD**

When ruling on a motion in limine, a district court exercises "wide discretion." *United States v. Aramony*, 88 F.3d 1369. 1377 (4th Cir. 1996) (quoting *United States v. Heyward*, 729 F.2d 297, 301 n.2 (4th Cir. 1984)).

"The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial . . . to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the *jury* will consider." *Springs ex rel. C.S. v. Waffle House, Inc.*, No. 3:18-CV-03516-JMC, 2021 WL 119303, at *1 (D.S.C. Jan. 13, 2021) (emphasis added) (quoting *United States v. Verges*, No. 1:13-cr-222-JCC, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014)).  But "[t]he rationale underlying pre-trial motions in limine does not apply in a bench trial, where it is presumed that the judge will disregard inadmissible evidence and rely only on competent evidence." *Alan L. Frank L. Assocs., P.C. v. OOO RM Inv.*, No. 16-22484-CIV, 2016 WL 9348064, at *1 (S.D. Fla. Nov. 30, 2016). *Id.*  In other words, "any concern about juror confusion is obviated, and the Court is well-positioned to make judgments regarding the admissibility of evidence within the context of the trial itself." *Buhler Versatile, Inc. v. GVM, Inc.*, No. 1:17-cv-00217, 2018 WL 6062307, at *5 (M.D. Pa. Nov. 20, 2018).

Thus, "courts are advised to deny motions in limine in non-jury cases." *Alan L. Frank L. Assocs., P.C.*, 2016 WL 9348064, at *1; *see also Accident Ins. Co., Inc. v. U.S. Bank Nat'l Ass'n*, No. 3:16-CV-02621-JMC, 2019 WL 2566950, at *5 (D.S.C. June 21, 2019) (finding in a case "set for bench trial," that "it would be imprudent to exclude" evidence on a motion in limine).

**ARGUMENT**

The Court should deny Plaintiffs' Preclude Intent-Related Testimony Reliant on Privileged Communications for at least five reasons.

4

*First*, contrary to Plaintiffs' intentional misrepresentations to the Court, the House and Senate Defendants are not asserting "advice of counsel" as a defense in this action "much like a criminal defendant." ECF No. 354 at 4 n.2. For one, this is not a criminal case. And despite the tortured comparison, the standards and defenses in a criminal tax fraud case or a qui tam action involving a kickback scheme do not map onto a civil case involving unsupported and charged claims of racial discrimination and racial gerrymandering. For another, the House and Senate Defendants have not "plead[ed] an affirmative advice of counsel defense to the [] complaint." *Id.* (quoting *U.S. ex rel. Lutz v. Berkeley Heartlab, Inc.*, No. 9:14-cv-00230-RMG, 2017 WL 1282012, at *4 (D.S.C. Apr. 5, 2017)); *see also* ECF Nos. 301 & 302. Nor does it appear in a single brief filed by the House and Senate Defendants on their Motions to Dismiss the Third Amended Complaint or their Joint Motion for Summary Judgment. *See* ECF Nos. 271, 272, 276, 277, 323. Plaintiffs' almost exclusive reliance on inapposite criminal cases, *see* ECF No. 354 at 2–4, and misrepresentations of the record are thus unavailing.

*Second*, Plaintiffs are the ones who have tried relentlessly to inject the advice of counsel into this case. During discovery, the House and Senate Defendants had to go back and forth numerous times with Plaintiffs over privileged documents. Notably, defense counsel has asked Plaintiffs' counsel for the better part of a year now to cite one case in which a court has held the attorney–client privilege falls to the wayside because a legislative body hired outside counsel for redistricting. Plaintiffs never did—and still cannot—cite a single case.[3] Nevertheless, Plaintiffs badgered the House and Senate Defendants' witnesses with hours of questioning designed solely

---

[3] Instead, they are trying to borrow concepts from criminal cases, *see supra* at 4, and a case involving legislative privilege. *See* ECF No. 354 at 3 (citing *Singleton v. Merrill*, 576 F. Supp. 3d 931, 940 (N.D. Ala. 2021)). Needless to say, Plaintiffs are trying to compare apples to oranges, and their arguments are without merit.

to obtain privileged information, forcing defense counsel to repeatedly object, waive the flag so to speak, or simply instruct the witness not to answer Plaintiffs' inappropriate questions.[4] After discovery concluded, Plaintiffs then filed a dilatory motion for in camera review and motion to compel (on which they failed to meet and confer) to further try to vitiate the Senate Defendants' attorney–client privilege. ECF No. 322. Yet now Plaintiffs throw their hands up and try to project this obsession with legal advice onto the House and Senate Defendants. But the House and Senate Defendants do not "intend[] to make affirmative and testimonial use" of counsel's opinions. *MAG Mut. Ins. Co. v. Brown*, No. 6:14-cv-353-TMC, 2015 WL 13648556, at *14 (D.S.C. July 24, 2015). All the House and Senate Defendants' witnesses did was answer Plaintiffs' questions.

*Third*, to that end, although defense witnesses have confirmed that they received legal advice—as well as answered confusing hypothetical questions from Plaintiffs' counsel about what they "would have" done, ECF No. 354 at 5 (citing Terreni's deposition as an example), in various situations—they have never disclosed the *substance* of the advice to put that substance in issue, much less to trigger a waiver of the privilege. *E.g.*, ECF No. 325 at 15 (citing Exhibits A–E). In fact, the Senate Defendants did exactly what was required of them during discovery. *Cf. Beaufort Reg'l Chamber of Com. v. City of Beaufort*, No. 9:18-CV-02565-RMG, 2019 WL 2150930, at *2 (D.S.C. May 16, 2019) (stating "each entry" on a privilege log "should have a description, such as 'discussion regarding X' or other similarly general description, that does not reveal the privileged

---

[4] *Cf. Hickman v. Taylor*, 329 U.S. 495, 507–08 (1947) ("[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides, further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."). The Court has been inundated with exhibits of deposition excerpts in this case. The House and Senate Defendants do not wish to clutter the docket anymore. For purposes of this response, the Court can see even from the selective and incomplete excerpts provided by Plaintiffs that they would not let up on this issue.

6

information"). Answering a question "regarding X" (whether outside counsel "would have" evaluated the constitutionality or legality of maps) does not make "X" (the actual evaluations themselves) discoverable.[5]

After all, only "nonprivileged matter" is discoverable. Fed. R. Civ. P. 26(b)(1). And documents and communications may be withheld on the basis of attorney-client privilege if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or is his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 501–02 (4th Cir. 2011) (citation omitted). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.*

Applying a "narrow scope" to "the attorney–client privilege . . . not only makes it difficult for [an entity's] attorneys to formulate sound advice when their client is faced with a specific legal problem but also threatens to limit the valuable efforts of [the entity's] counsel to ensure their

---

[5] Indeed, Plaintiffs' position on waiver is the *exact opposite* of the one they took in the pending motion for in camera review and motion to compel. There, Plaintiffs contend the Senate Defendants have not provided sufficient information to allow them to evaluate whether claims of privilege are adequate. *See* ECF No. 322 at 20. Here, Plaintiffs take the position that the House and Senate Defendants have let the cat out of the bag on the substance of communications. Both cannot be true.

client's compliance with the law." *Id.* at 392.  And the Supreme Court has recognized that an attorney holding "inviolate the confidences and secrets of his client not only facilitates the full development of facts essential to proper representation of the client but also encourages laymen to seek early legal assistance." *Id.* at 391 (cleaned up).

Here, application of the privilege "puts [Plaintiffs] in no worse position than if the communications had never taken place.  The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Id.* at 395.  Plaintiffs were given access to the underlying facts: the maps under consideration and the accompanying data points for those maps are in the record.[6]  More importantly, Plaintiffs have deposed every single key player who drew—or contributed feedback to—the Congressional Plan.  Under these circumstances, the only thing left is outside counsel's legal opinion as to whether the enacted Congressional Plan is constitutional.  As a practical matter, Plaintiffs are well aware of the House and Senate Defendants' legal arguments.  The House and Senate Defendants have made their position quite known in their briefs filed with the Court.  So what more do they want?  The truth is Plaintiffs have no evidence to support their claims, and this is a last-ditch effort to try to save their case.

*Fourth*, and finally, Plaintiffs ignore the work-product doctrine because it is inconvenient to their waiver arguments.  *See United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975) (observing

---

[6] Some of Plaintiffs' arguments on this front are nonplussing.  Why would a client ever post "publicly-available written or data-based analyses" from their counsel for the world to see?  ECF No. 354 at 6.  That makes no sense.  More to the point, Plaintiffs once again cannot point to a shred of evidence showing such analyses exist.  If they did, the House and Senate Defendants would have identified them on a privilege log.  They do not.  Further, respectfully, the Court should not put up with Plaintiffs questioning defense counsel's motives and abilities simply because the House and Senate Defendants "hired and paid these attorneys themselves."  ECF No. 354 at 6.  A client paying his lawyer is hardly a novel concept, and Plaintiffs' implication from that fact is both unseemly and nonsensical.

"the work-product doctrine is distinct from and broader than the attorney-client privilege"). As the Supreme Court has recognized for over seventy-five years, "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman*, 329 U.S. at 510. Here, the advice at issue—which is unquestionably an opinion, not facts—was given to defend against *existing* litigation. *See Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 509 F.2d 730, 734 (4th Cir. 1974) (stating "no showing of relevance, substantial need or undue hardship should justify compelled disclosure of an attorney's mental impressions, conclusions, opinions or legal theories").

It was perfectly appropriate for the House and Senate Defendants to retain counsel for the purpose of receiving legal advice on the defensibility of a Congressional Plan before proceeding to enactment. That is especially so where, as here, legislative leaders were sued before the General Assembly even began drawing the first map for South Carolina's Congressional districts. Put simply, the prospect of litigation was not some abstract fear. Rather, the parties were in litigation. Plaintiffs cannot sue the House and Senate Defendants and then demand access to opposing counsel's advice with respect to that litigation. *See In re Doe*, 662 F.2d 1073, 1077 (4th Cir. 1981) (stating the work-product doctrine "is a critical attribute of our adversary judicial system" and "[a]n attorney must be free to advise clients and prepare their cases for trial without undue interference from the opposition"). Plaintiffs have no one to blame but themselves for filing a meritless and premature lawsuit. *See* ECF No. 1 (filed Oct. 12, 2021).

*Finally*, in all events, the Panel is more than capable of resolving these issues as they arise—if they do at all—in this bench trial. *E.g.*, *Alan L. Frank L. Assocs., P.C.*, 2016 WL 9348064, at *1; *Accident Ins. Co., Inc.*, 2019 WL 2566950, at *5; *Buhler Versatile, Inc..*, 2018 WL 6062307, at *5.

**CONCLUSION**

The Court should deny Plaintiffs' Motion in Limine to Preclude Intent-Related Testimony Reliant on Privileged Communications.

September 9, 2022

Respectfully submitted,

/s/Robert E. Tyson, Jr.
Robert E. Tyson, Jr. (7815)
Vordman Carlisle Traywick, III (12483)
La'Jessica Stringfellow (13006)
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400
rtyson@robinsongray.com
ltraywick@robinsongray.com
lstringfellow@robinsongray.com

John M. Gore (admitted *pro hac vice*)
Stephen J. Kenny (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
skenny@jonesday.com

*Counsel for Senate Defendants*

/s/Mark C. Moore
Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com

William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900
Greenville, SC 29601
Telephone: 864.370.2211
BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com

*Counsel for House Defendants*