IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THE SOUTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THOMAS C. ALEXANDER, *et al.*,<br><br>Defendants. | Case No. 3:21-cv-03302-MGL-TJH-RMG<br><br>**SENATE & HOUSE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE OR ARGUMENT REGARDING *POST HOC* RATIONALES FOR CONGRESSIONAL MAP AND MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM INTRODUCING EVIDENCE OR ARGUMENT SUPPORTING RATIONALES FOR CONGRESSIONAL MAP THAT ARE NOT IN LEGISLATIVE RECORD** |

The Senate Defendants and the House Defendants (collectively, "Legislative Defendants"), by and through the undersigned counsel, submit this response in opposition to Plaintiffs' related Motions *in Limine* to preclude evidence or testimony regarding post hoc rationales for the Congressional map (ECF No. 351) or rationales that are not in the legislative record (ECF No. 348).

"Politics and political considerations are inseparable from districting and apportionment." *Gaffney v. Cummings*, 412 U.S. 735, 753 (1973). "The reality is that districting inevitably has and is intended to have substantial political consequences." *Id.* Plaintiffs' Motions nonetheless ask the Court to preclude Legislative Defendants from offering evidence that one of the General Assembly's primary objectives in drafting the Congressional Plan was politics and partisan performance, particularly in Congressional District 1. But Plaintiffs misconstrue the governing

1

law, ignore that they have put politics in issue through their own theory of the case, and omit the undisputed record evidence demonstrating that politics in fact drove the Congressional Plan. Indeed, Plaintiffs' Motions are yet another attempt to use mischaracterizations of the law and facts to unfairly hamstring Legislative Defendants' ability to defend this case. The Court should deny the Motions.

## STANDARD

When ruling on a motion in limine, a district court exercises "wide discretion." *United States v. Aramony*, 88 F.3d 1369. 1377 (4th Cir. 1996) (quoting *United States v. Heyward*, 729 F.2d 297, 301 n.2 (4th Cir. 1984)).

"The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial . . . to avoid delay, ensure an even-handed and expeditious trial, and focus the issues the *jury* will consider." *Springs ex rel. C.S. v. Waffle House, Inc.*, No. 3:18-CV-03516-JMC, 2021 WL 119303, at *1 (D.S.C. Jan. 13, 2021) (emphasis added) (quoting United States v. Verges, No. 1:13-cr-222-JCC, 2014 WL 559573, at *2 (E.D. Va. Feb. 12, 2014)). But "[t]he rationale underlying pre-trial motions in limine does not apply in a bench trial, where it is presumed that the judge will disregard inadmissible evidence and rely only on competent evidence." *Alan L. Frank L. Assocs., P.C. v. OOO RM Inv.*, No. 16-22484-CIV, 2016 WL 9348064, at *1 (S.D. Fla. Nov. 30, 2016). *Id.* In other words, "any concern about juror confusion is obviated, and the Court is well-positioned to make judgments regarding the admissibility of evidence within the context of the trial itself." *Buhler Versatile, Inc. v. GVM, Inc.*, No. 1:17-cv-00217, 2018 WL 6062307, at *5 (M.D. Pa. Nov. 20, 2018).

Thus, "courts are advised to deny motions in limine in non-jury cases." *Alan L. Frank L. Assocs., P.C.*, 2016 WL 9348064, at *1; *see also Accident Ins. Co., Inc. v. U.S. Bank Nat'l Ass'n*,

2

No. 3:16-CV-02621-JMC, 2019 WL 2566950, at *5 (D.S.C. June 21, 2019) (finding in a case "set for bench trial," that "it would be imprudent to exclude" evidence on a motion in limine).

### ARGUMENT

The Court should deny Plaintiffs' Motions for at least five reasons. *First*, Plaintiffs bear the burden to defeat political explanations for the Congressional Plan *regardless* of the state of the legislative or discovery record in this case. That is because "[p]olitics and political considerations are inseparable from districting and apportionment," and "districting inevitably . . . *is intended to have* substantial political consequences." *Gaffney*, 412 U.S. at 753. Moreover, *Plaintiffs* contend (and their putative experts assert) that race "is highly correlated with political affiliation," ECF No. 323-20 at 170:4–8; ECF No. 323-17 at 153:15–154:4, so they have assumed the demanding burden to decouple race from politics and demonstrate that "race *rather than* politics *predominantly*" motivated the Congressional Plan. *Easley v. Cromartie*, 532 U.S. 234, 243 (2001). Plaintiffs ask the Court to let them have it both ways: they wish to invoke the correlation between race and political affiliation as part of their affirmative case but to preclude Legislative Defendants from using that correlation in defense of the Congressional Plan. Merely to point out Plaintiffs' effort to unfairly tilt the playing field in their favor is to demonstrate that the Court should deny the Motions.

*Second*, Plaintiffs misconstrue the law on "post hoc" justifications. To be sure, the Supreme Court has clarified that "[t]he racial predominance inquiry concerns the actual considerations that provided the essential basis for the lines drawn, not *post hoc* justifications the legislature in theory could have used but in reality did not." *Bethune-Hill v. Va. Bd. of Elecs.*, 137 S. Ct. 788, 799 (2017). Plaintiffs, however, suggest that "only state interests that were contemporaneously identified by the legislature are relevant to Plaintiffs' racial gerrymandering

3

and intentional discrimination claims" and, thus, that "legislators cannot justify a congressional map based on partisanship when they did not identify the justification through the legislative process." ECF No. 351 at 3; *see also* ECF No. 348 at 6.

That suggestion is incorrect—which is presumably why Plaintiffs cite no authority for it. *See* ECF No. 351 at 3; *see also* ECF No. 348 at 6. Indeed, Plaintiffs conflate the legislature's contemporaneous "actual considerations" with contemporaneous *disclosure* of those considerations. *See* ECF No. 351 at 3; *see also* ECF No. 348 at 6. The former is required, but the latter is not. In other words, the governing case law focuses on the "actual considerations" that animated the legislature's decision-making, but does not require the legislature to make those considerations public in the legislative record or at the time of the challenged action. *Bethune-Hill*, 137 S. Ct. at 799. Thus, the legislature's "actual considerations" need not be contained in the legislative record and may be *disclosed* after the fact for the first time in litigation or "at trial." *Bethune-Hill v. Va. Bd. of Elecs.*, 326 F. Supp. 3d 128, 142 (E.D. Va. 2018) (citing *Cooper v. Harris*, 137 S. Ct. 1455, 1473–78 (2017)).

That is particularly true here. Plaintiffs sought—and the Court ordered the Legislative Defendants to produce—a substantial volume of private legislative materials regarding the Congressional Plan and the actual considerations that drove the General Assembly to adopt it. *See* ECF Nos. 153, 299. Plaintiffs have also deposed numerous legislators and legislative staffers regarding the drawing and adoption of the Congressional Plan. Plaintiffs specifically sought that evidence because, in their view, it might reveal "direct evidence" of legislators' knowledge and "motivation" for enacting redistricting plans. ECF No. 119 at 3; *see also id.* at 11 ("Documents from the Legislators could be direct evidence of their intent to pack and crack Black-majority districts."); *see also* ECF No. 283 at 7–10. Thus, Plaintiffs believed—and the Court agreed—that

non-public evidence not contained in the legislative record or made public before enactment of the Congressional Plan could nonetheless reveal the General Assembly's "actual considerations" at the time it considered and adopted the Plan. *Bethune-Hill*, 137 S. Ct. at 799; *see also* ECF No. 119 at 3, 11; ECF No. 153; ECF No. 283 at 7–10; ECF No. 299.

Indeed, there would have been no *reason*, let alone basis, to order discovery into private legislative materials and deliberations if the only "actual considerations" the Court could consider were those "contemporaneously identified" in the legislative record. ECF No. 351 at 3; *see also* ECF No. 348 at 6. Moreover, Plaintiffs' selective embrace of later-discovered non-public evidence is untenable: they cannot rely upon non-public evidence produced in discovery to support their case and then block Legislative Defendants from doing the same.

*Third*, in all events, Plaintiffs grossly distort the legislative and discovery record on the General Assembly's political motivations for enacting the Congressional Plan. Legislative Defendants *have* adduced substantial evidence—both in the contemporaneous public record and in the broad-ranging legislative discovery related to contemporaneous events—that politics drove the Congressional Plan. *See* ECF No. 323 at 20–21. For one thing, the Senate Guidelines authorized the General Assembly to maintain "political" communities of interest and to use "political" data to draw the Congressional Plan. ECF No. 323-3 at 2. The House Guidelines likewise authorized the General Assembly to maintain communities of interest around "political beliefs" and "voting behavior." ECF No. 323-43 at 2. For another, throughout the redistricting process, legislative staff generated and publicly disclosed extensive data on the political make-up of districts under a variety of plans. *See* ECF No. 323 at 21. Moreover, numerous legislators and staffers—including Representative Justin Bamberg, an African-American Democrat—have testified that politics drove the Congressional Plan. *See id.* at 20–21. All of this evidence of what

legislators and staffers did *at the time* establishes that politics was an "actual consideration[] that provided the essential basis for the lines drawn," not a "*post hoc* justification[] the legislature in theory could have used but in reality did not." *Bethune-Hill*, 137 S. Ct. at 799.  And it merely confirms the "inevitabl[e]" truth that the Congressional Plan "*is intended to have*" political consequences. *Gaffney*, 412 U.S. at 753 (emphasis added).

Plaintiffs' one-sided and inaccurate recitation cannot change this record.  Plaintiffs contend that "supporters of the bill explicitly stated that partisanship did *not* factor into the drawing of the map in S. 865." ECF No. 351 at 4; *see also* ECF No. 348 at 3.  But that is incorrect, as Plaintiffs' own citations to the record demonstrate.  Representative Jordan testified (accurately) that no "outside partisan . . . *group*" was involved in the drafting of the Congressional Plan, *see* ECF No. 351 at 4–5; ECF No. 348 at 3–5 & n.2, but that is not the same thing as stating that the General Assembly and legislators did not consider *partisanship* or politics in enacting the Plan.  Moreover, Senator Campsen testified (accurately) that the Congressional Plan is not a "partisan gerrymander." ECF No. 351 at 5; ECF No. 348 at 4.  Of course, "partisan gerrymander" is a legal term of art referring to a redistricting plan found to have "subordinated . . . traditional redistricting criteria . . . to considerations of partisan advantage" in a way that "makes it systematically more difficult for a voter to aggregate his or her vote with other likeminded voters." *Harper v. Hall*, 868 S.E.2d 499, 552–53 (N.C. 2022), *certiorari granted*, 142 S. Ct. 2901 (June 30, 2022).  It therefore is analytically distinct from the General Assembly's "inevitabl[e]" consideration of "politics" and partisanship in the Congressional Plan. *Gaffney*, 412 U.S. at 753.  Thus, Senator Campsen's statement that the Congressional Plan is not a "partisan gerrymander" is entirely consistent with his deposition testimony that the General Assembly sought to make District 1 a more Republican district politically.  *See* ECF No. 323 at 20–21.

6

Plaintiffs also mischaracterize Andy Fiffick's testimony when they suggest that he "disclaimed that the map was drawn for partisan advantage." Dkt. No. 348 at 5. In fact, the portion of Mr. Fiffick's deposition that Plaintiffs cite recounts only that Mr. Fiffick did not recall being expressly *instructed* to preserve a 6-1 Republican advantage in the Plan. *See* Dkt. No. 348-6. Moreover, Mr. Fiffick testified that politics *was* a consideration in the Congressional Plan in portions of his deposition that Plaintiffs conveniently omit. *See* Dkt. No. 323 at 20–21.[1]

*Fourth*, Plaintiffs engage in semantics when they ask the Court to preclude the Legislative Defendants from referring to the General Assembly's political motivation as a goal to maintain a "6-1 Republican advantage" in the Congressional Plan. ECF No. 350 at 4. But given that five of South Carolina's districts are invariably Republican and one is invariably Democratic, the "6-1 Republican advantage" is the inevitable consequence of pursuing the political goal to make District 1 more Republican. In other words, maintaining the "6-1 Republican advantage" is simply a shorthand expression of the General Assembly's political motivation in the Congressional Plan.

*Finally*, for all of these reasons, the evidence that Plaintiffs seek to exclude is relevant to Plaintiffs' claims, probative of the issues presented in the case, and will clarify, rather than confuse, the task before the Court. *See* Fed. R. Evid. 401, 403. And if there is any doubt on this score, the Court can resolve any issues as they arise in this bench trial. The Court should deny Plaintiffs' Motions (ECF Nos. 348 & 351).

---

[1] Plaintiffs also misstate the record when they say that defense expert Sean Trende "attributes" several line changes in the Congressional Plan to political motivations. ECF No. 351 at 4. Mr. Trende made no attributions and offers no evidence regarding the General Assembly's motivation. Instead, he offers evidence regarding the political effect of the Congressional Plan and changes in lines from the Benchmark Plan. *See* ECF No. 324-1.

September 9, 2022                    Respectfully submitted,

/s/ Robert E. Tyson, Jr.
Robert E. Tyson, Jr. (7815)
Vordman Carlisle Traywick, III (12483)
La'Jessica Stringfellow (13006)
ROBINSON GRAY STEPP & LAFFITTE, LLC
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400
rtyson@robinsongray.com
ltraywick@robinsongray.com
lstringfellow@robinsongray.com

John M. Gore (admitted *pro hac vice*)
Stephen J. Kenny (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
jmgore@jonesday.com
skenny@jonesday.com
**Counsel for Senate Defendants**

/s/ Mark C. Moore
Mark C. Moore (Fed. ID No. 4956)
Jennifer J. Hollingsworth (Fed. ID No. 11704)
Hamilton B. Barber (Fed. ID No. 13306)
Michael A. Parente (Fed. ID No. 13358)
NEXSEN PRUET, LLC
1230 Main Street, Suite 700
Columbia, SC 29201
Telephone: 803.771.8900
MMoore@nexsenpruet.com
JHollingsworth@nexsenpruet.com
HBarber@nexsenpruet.com
MParente@nexsenpruet.com

William W. Wilkins (Fed. ID No. 4662)
Andrew A. Mathias (Fed. ID No. 10166)
Konstantine P. Diamaduros (Fed. ID No. 12368)
NEXSEN PRUET, LLC
104 S. Main Street, Suite 900
Greenville, SC 29601
Telephone: 864.370.2211

BWilkins@nexsenpruet.com
AMathias@nexsenpruet.com
KDiamaduros@nexsenpruet.com

Rhett D. Ricard (Fed. ID No. 13549)
NEXSEN PRUET, LLC
205 King Street, Suite 400
Charleston, SC 29401
Telephone: 843.720.1707
RRicard@nexsenpruet.com

***Counsel for House Defendants***

9