# Exhibit 3

3:21-cv-03302-MGL-TJH-RMG  Date Filed 09/09/22  Entry Number 378-3  Page 2 of 5

Moon Duchin, PhD July 14, 2022
The South Carolina State Conf vs. McMaster/Alexander

Page 1

1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF SOUTH CAROLINA
2                        COLUMBIA DIVISION
3     THE SOUTH CAROLINA STATE
      CONFERENCE OF THE NAACP
4
            and
5
      TAIWAN SCOTT, ON BEHALF OF HIMSELF
6     AND ALL OTHER SIMILARLY SITUATED
      PERSONS,
7
                 Plaintiffs,
8
          vs.            Case No. 3:21-CV-03302-JMC-TJH-RMG
9
      THOMAS C. ALEXANDER, IN HIS OFFICIAL
10    CAPACITY AS PRESIDENT OF THE SENATE;
      LUKE A. RANKIN, IN HIS OFFICIAL CAPACITY
11    AS CHAIRMAN OF THE SENATE JUDICIARY
      COMMITTEE; MURRELL SMITH, IN HIS OFFICIAL
12    CAPACITY AS SPEAKER OF THE HOUSE OF
      REPRESENTATIVES; CHRIS MURPHY, IN HIS
13    OFFICIAL CAPACITY AS CHAIRMAN OF THE HOUSE
      OF REPRESENTATIVES JUDICIARY COMMITTEE;
14    WALLACE H. JORDAN, IN HIS OFFICIAL CAPACITY
      AS CHAIRMAN OF THE HOUSE OF REPRESENTATIVES
15    ELECTIONS LAW SUBCOMMITTEE; HOWARD KNAPP,
      IN HIS OFFICIAL CAPACITY AS INTERIM
16    EXECUTIVE DIRECTOR OF THE SOUTH CAROLINA
      STATE ELECTION COMMISSION; JOHN WELLS,
17    JOANNE DAY, CLIFFORD J. EDLER, LINDA MCCALL,
      AND SCOTT MOSELEY, IN THEIR OFFICIAL
18    CAPACITIES AS MEMBERS OF THE SOUTH CAROLINA
      STATE ELECTION COMMISSION,
19
                 Defendants.
20    _____
21
22    DEPOSITION OF:    MOON DUCHIN, PHD
                        (Via Videoconference)
23
      DATE:            Tuesday, July 14, 2022
24
      TIME:            10:13 a.m.
25

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com

3:21-cv-03302-MGL-TJH-RMG   Date Filed 09/09/22   Entry Number 378-3   Page 3 of 5

Moon Duchin, PhD                                July 14, 2022
The South Carolina State Conf vs. McMaster/Alexander

## Page 2

1  LOCATION:    Barnum Hall
               Packard Avenue
2              Medford, Massachusetts
3  TAKEN BY:   Counsel for Thomas Alexander
               and Luke Rankin
4
   REPORTED BY:   Elaine L. Grove-DeFreitas,
5                 Independent Professional Reporter
                  (Via Videoconference)

## Page 3

1  APPEARANCES OF COUNSEL:
2
      ATTORNEYS FOR THE PLAINTIFFS
3     THE SOUTH CAROLINA STATE CONFERENCE OF
      THE NAACP AND MOON DUCHIN, PHD:
4
      NAACP LEGAL DEFENSE & EDUCATIONAL FUND,
5     INC.
         BY:  LEAH ADEN
6        BY:  JOHN CUSICK
      40 Rector Street
7     Fifth Floor
      New York, New York 10006
8     917-858-2870
      laden@naacpldf.org
9     jcusick@naacpldf.org
      (Via Videoconference)
10
11
      ATTORNEYS FOR THOMAS C. ALEXANDER AND
12    LUKE A. RANKIN:
13    JONES DAY
         BY:  JOHN M. GORE
14    51 Louisiana Avenue, N.W.
      Washington, D.C. 20001
15    202-879-3930
      jmgore@jonesday.com
16    (Via Videoconference)
17
18    ATTORNEYS FOR THE AMERICAN CIVIL LIBERTIES
         UNION:
19
      AMERICAN CIVIL LIBERTIES UNION
20       BY:  ADRIEL I. CEPEDA DERIEUX
      125 Broad Street
21    18th Floor
      New York, New York 10004
22    212-549-2500
      ACepedaDerieux@aclu.org
23    (Via Videoconference)

## Page 4

1  APPEARANCES OF COUNSEL:
2
      ATTORNEYS FOR THE HOUSE DEFENDANTS:
3
      NEXSEN PRUET, LLC
4        BY:  ANDREW MATHIAS
      104 South Main Street
5     Suite 900
      Greenville, South Carolina 29601
6     864-370-2211
      AMathias@nexsenpruet.com
7     (Via Videoconference)
8
9     ATTORNEYS FOR ELECTION DEFENDANTS:
10    BURR & FORMAN, LLP
         BY:  JANE W. TRINKLEY
11    1221 Main Street
      Suite 1800
12    Columbia, South Carolina 29201
      803-799-9800
13    jtrinkley@burr.com
      (Via Videoconference)
14
15
16 ALSO PRESENT: Cyndi Nygord (via videoconference)

## Page 5

1           I N D E X
                                         Page Line
2  EXAMINATION
3  BY MR. GORE.................................... 6/3
4  BY MS. TRINKLEY................................ 222/5
5  BY MR. MATHIAS................................. 222/23
6  BY MS. ADEN.................................... 257/13
7  BY MR. GORE.................................... 269/1
8  CERTIFICATE OF REPORTER........................ 270
9
10          E X H I B I T S
11                                       Page Line
12 EXHIBIT 1, Senate Defendants' Notice Of Taking
   Videoconference Deposition Of Dr. Moon Duchin.. 10/25
13
   EXHIBIT 2, April 11, 2022 Report on South
14 Carolina Congressional Districts............... 26/14
15 EXHIBIT 3, 2021 Guidelines and Criteria for
   Congressional and Legislative Redistricting.... 41/23
16
   EXHIBIT 4, 2021 Redistricting Guidelines....... 49/19
17
   EXHIBIT 5, No Exhibit Introduced...............  --
18
   EXHIBIT 6, Curriculum Vitae of Moon Duchin, PhD 195/24
19
   EXHIBIT 7, Expert Report of Sean P. Trende..... 196/16
20
   EXHIBIT 8, May 4, 2022 Response to the Expert
21 Report of Sean P. Trende dated April 18, 2022.. 197/17

2 (Pages 2 - 5)

3:21-cv-03302-MGL-TJH-RMG    Date Filed 09/09/22    Entry Number 378-3    Page 4 of 5

Moon Duchin , PhD                                                            July 14, 2022
The South Carolina State Conf vs. McMaster/Alexander

Page 6

1        MOON DUCHIN, PHD,
2    being first duly sworn, testified as follows:
3              DIRECT EXAMINATION
4   BY MR. GORE:
5       Q.  Good morning, Dr. Duchin.  My name is
6   John Gore.  I'm with the Law Firm of Jones Day.  I
7   represent the Senate Defendants, Thomas Alexander
8   and Luke Rankin in connection with the redistricting
9   challenge that has been brought in the United States
10  District Court for the District of South Carolina.
11  And you understand that you're appearing in
12  connection with that case today.  Correct?
13      A.  Yes.
14      Q.  And will you say and spell your first
15  and last names for the record, please?
16      A.  Sure.  It's Moon Duchin.  That's
17  M-O-O-N, D-U-C-H-I-N.
18      Q.  And you understand that you're under
19  oath and have an obligation to tell the truth today.
20  Correct?
21      A.  I do.
22      Q.  We have a court reporter here to take
23  down your testimony.  The court reporter does need
24  verbal answers, so please give a verbal answer to
25  each question, a yes or a no.  The court reporter

Page 7

1   cannot record a nod or a headshake.  Does that sound
2   fair?
3       A.  Yes.
4       Q.  And you're being defended in this
5   deposition today by Ms. Aden, I believe.  Is that
6   right?
7       A.  Yes.
8       Q.  And Ms. Aden may object to a question
9   that I pose, such as an objection to form or
10  something like that.  Unless you're instructed not
11  to answer, you can go ahead and answer my question.
12  Does that make sense?
13      A.  Yes.
14      Q.  And the most important rule here today
15  is if you don't understand a question, will you ask
16  me to clarify the question?
17      A.  Yes.
18      Q.  And if you do answer a question, I will
19  assume that you understood it.  Is that fair?
20      A.  Yes.
21      Q.  Also, this is not a marathon.  It may
22  feel a little bit like a slog at times, but if you
23  need to take a break for any reason, at any time
24  just let me know and we can do that.  The only thing
25  that I ask is that if a question is pending, you

Page 8

1   answer the question before we go to the break.  Is
2   that fair?
3       A.  Yes.
4       Q.  Okay.  Thank you.  So Dr. Duchin, where
5   are you today?
6       A.  I'm at Tufts University in
7   Massachusetts.
8       Q.  And is anyone in the room with you?
9       A.  No.
10      Q.  And do you have any papers with you
11  where you are?
12      A.  I do not.
13      Q.  What did you do to prepare for today's
14  deposition?
15      A.  I did two preparation sessions with
16  counsel in which we reviewed the materials and
17  discussed some likely questions.
18      Q.  And when did the first of those two
19  sessions take place?
20      A.  Late last week.  I believe it was
21  Friday.
22      Q.  And how long did it last?
23      A.  One to two hours.
24      Q.  Who was present?
25      A.  Leah Aden and John Cusick, both of whom

Page 9

1   are on the call today, and myself.
2       Q.  And when did the second preparation
3   session take place?
4       A.  Tuesday, the day before yesterday.
5       Q.  And how long did that last?
6       A.  I would estimate that was about an hour.
7       Q.  Who was present?
8       A.  The same people.
9       Q.  And did you review any documents in
10  preparation for today's deposition?
11      A.  Yes.
12      Q.  And which documents did you review?
13      A.  We reviewed my two reports that I
14  believe are dated April 11th and May 4th.  We may
15  have briefly reviewed the House and the Senate
16  Guidelines on redistricting.  That is all that I
17  recall.
18      Q.  Do you know why you were retained to
19  provide a report in this case?
20      A.  Yes.  I discussed the assignment with in
21  my first report, but -- so can we pull that up?
22      Q.  We can.  Just one second.  Let me ask
23  you a question, first, if that's okay.
24      A.  Sure.
25      Q.  Do you recall who first contacted you

3:21-cv-03302-MGL-TJH-RMG   Date Filed 09/09/22   Entry Number 378-3   Page 5 of 5

Moon Duchin , PhD                                                    July 14, 2022
The South Carolina State Conf vs. McMaster/Alexander

Page 102

1  language minority group. That's just an example.
2  But --
3      Q. Right. I'm sorry. Finish your answer.
4      A. Just that there are very few
5  restrictions of that kind in the law that I'm aware
6  of.
7      Q. But even in that example it's not the
8  fact that that criterion is private.
9      A. That's correct.
10     Q. It's that it's illegal.
11     A. That's correct. It's not the fact of
12 having been private, but in some possibilities the
13 nature of the private motivation.
14     Q. And so focusing just on the fact that
15 something is private, does the fact that a criterion
16 is private mean a map drawer or General Assembly is
17 prohibited from considering it?
18     A. I think -- just to answer the question
19 technically first, I think they can consider
20 anything at all. However, I do think that when
21 those considerations start to come at a cost to the
22 ones that are named in law, that that's where you
23 could run into trouble. But I truly -- in an honest
24 effort to address your question as you asked it,
25 anything can be considered. But if those

Page 103

1  considerations come at a cost to the traditional
2  principles, that might start to invite scrutiny.
3      Q. Well, it might invite scrutiny, but is
4  it illegal?
5          MS. ADEN: Objection.
6          THE WITNESS: I would say that, in my
7  understanding, that just really depends on the
8  nature of what is being prioritized. At a cost to
9  what?
10 BY MR. GORE:
11     Q. But that analysis, in your experience,
12 doesn't turn on whether the criterion is private or
13 public?
14     A. Okay. Let me -- let me disambiguate two
15 things. So one is whether something might be
16 legally suspect, and another is whether it might be
17 against the law. So I think there is a special role
18 in the law around redistricting related to -- I
19 think race, generally, is treated with a whole host
20 of special provisions in the law. In particular,
21 the role of intent versus results is special for
22 race in current law.
23         And so to your question about whether
24 private considerations are prohibited, I find that
25 question too general to answer.

Page 104

1      Q. May I try to rephrase it, then?
2      A. Please.
3      Q. Would that be okay?
4          Are you aware of any prohibition on a
5  map drawer or General Assembly considering a legal
6  criterion that it has kept private and not disclosed
7  publicly?
8      A. Just to repeat, I think they are
9  allowed, legally, to consider anything that is
10 legally permissible.
11     Q. Okay. Thank you. And then my next
12 question on this is, are you aware of any
13 prohibition on a map drawer or General Assembly
14 prioritizing a legal criterion that it has kept
15 private over criteria it has made public?
16     A. Well --
17     Q. It's a yes or no, if that's possible.
18     A. You're asking if I know of a law.
19 Right?
20     Q. Yes.
21     A. I do not know of such a law.
22         MR. GORE: Can we maybe take a minute to
23 go off the record for a second?
24         THE WITNESS: Fine with me.
25 (Discussion Off The Record)

Page 105

1  (Break In Proceedings)
2          MR. GORE: Back on the record.
3  BY MR. GORE:
4      Q. Dr. Duchin, did you discuss this case
5  with anyone during your break?
6      A. No, I didn't talk to anyone during the
7  break.
8      Q. All right. Let's go back to your report
9  that I have pulled up here. Can you see this on
10 your screen?
11     A. Yes.
12     Q. Let's go to page 17, Figure 5.
13     A. Yes.
14     Q. Can you just tell me what these red and
15 black lines are?
16     A. Yes. The red lines are the municipal
17 boundaries of Charleston and North Charleston, and
18 the black ones are district boundaries.
19     Q. So these are not county boundaries,
20 then. Is that right?
21     A. That's right. They are municipal and
22 district boundaries.
23     Q. And I think you say here, in heading D,
24 "Charleston County split erratically."
25     A. That's right.