# Exhibit 4

Page 1

1
2
3
4
5
6
7          South Carolina Legislature Hearings
8              Transcription of Audio File
9     20210917SJudiciaryRedistrictingSubcommittee11530_1
10              Audio Runtime:   1:26:35
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Confidential

SCNAACP_CD_005366

```
                                                       Page 16
1    basis for the lines drawn, not post hoc.
2            So without -- for instance, we don't
3    have racially polarized data -- voting data,
4    we'll never meet the Section 2 analysis a
5    court would require.  So I would move that
6    the staff --
7            SENATOR MATTHEWS:  I have a
8    question -- I have a question as I did
9    before.
10           SENATOR HARPOOTLIAN:  Yes, ma'am.
11           SENATOR MATTHEWS:  And I guess I
12   should ask this of Mister -- of you, Mr.
13   Chair, and the attorneys that we have there,
14   Mr. Terreni and John.  Has the staff produced
15   or been able to produce a memo in reference
16   to this particular voting rights issue that
17   Senator Harpootlian is referring to as it
18   relates block voting, as it relates to 1, 2,
19   and 3 of the Voting Rights Act?  And if not,
20   can -- can be.
21           CHAIRMAN RANKIN:  Mr. Terreni.
22           MR. TERRENI:  Thank you, Mr. Chairman.
23   We do not have a racial block voting analysis
24   that has been conducted.  And I don't know
25   that one would be productive at this time.
```

Confidential

SCNAACP_CD_005381

```
                                                        Page 17
 1             The -- the peril of doing an analysis
 2   of that type upfront is that you might be
 3   artificially setting yourself up to meet
 4   certain racial targets where you don't need
 5   to meet them.
 6             My recommendation to the subcommittee
 7   would be to go ahead and proceed with the
 8   restricting following the guidelines,
 9   traditional redistricting criteria.  The
10   courts have said that race may be a factor
11   but not the predominant factor.  And you
12   should -- you should heed to that.
13             And then once you have a plan that you
14   are considering to adopt, if needed at that
15   point, you could conduct a racial block
16   voting analysis if necessary.
17             It may be that you consider that
18   following the guidelines, you won't need one.
19   I don't know.  We're not at that point.
20             But until you have districts analyzed,
21   I don't know if this going to be particularly
22   useful because the state is not a monolith.
23   And that was the issue in the Bethune-Hill
24   case that -- that Senator Harpootlian
25   referred to is at least at an arbitrary
```

Confidential      SCNAACP_CD_005382

```
                                                       Page 18
 1   target of 55 percent for their Congressional
 2   Districts.
 3            And actually, one district was upheld
 4   and it was upheld without a racial block
 5   voting analysis because it was informed.  It
 6   was informed on the -- on the basis of the --
 7   of the incumbent who expressed an opinion as
 8   to what was necessary for that incumbent --
 9   the incumbent felt would be necessary to
10   elect a candidate of choice in his
11   minority/majority district.
12            Then also you had given the staff
13   evidence about communities of interest and so
14   forth.  The error in Bethune-Hill was that
15   they took that incumbent's testimony and
16   extended it to everybody else.  And so
17   respectfully, my advice would be, follow the
18   redistricting print guidelines, traditional
19   guidelines.  Draw your districts as you see
20   fit.  And then if we have a legal issue with
21   it, we can identify it before you adopt.
22            CHAIRMAN RANKIN:  Senator, let me --
23   let me -- Senator Matthews, does that address
24   your question?
25            SENATOR MATTHEWS:  Yes, I don't have a
```

Confidential

SCNAACP_CD_005383